UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA      )
                              )
            v.                )      No. 2:01-CR-12-01
                              )
DONALD FELL                   )

## OPINION AND ORDER

Donald Fell was indicted on four counts arising out of the abduction and murder of Teresca King in late November 2000.  Counts 1 and 2 charge Fell with carjacking and kidnapping, both with death resulting.  These two counts are charged as capital crimes.  This Opinion and Order explains the decision of the Court on several outstanding issues.  First, the Court considers the *in Limine* motions that Fell filed on March 29, 2005 (Docs. 90, 91, 93, 94, 95, 96 & 97).  Second, the Court examines the Government's Motion to Reconsider the Rule 12.2 Order (Doc. 100) and Fell's Motion *in Limine* Regarding Testimony of Michael Welner, M.D. (Doc. 107).  The Court denies the Government's Motion to Reconsider and also denies Fell's Motion *in Limine* as premature.  Finally, the Court grants in part and denies in part the Government's Motion *in Limine* requesting that the Court issue an order barring Donald Fell from introducing, at any stage of the trial, information about the parties' unsuccessful settlement negotiations (Doc. 103).

I.  **Motions *in Limine***

On March 29, 2005, defendant Donald Fell filed a Motion *in Limine* to Exclude Certain Evidence from 135 Robbins Street, No. 3, Rutland, VT (Doc. 90), a Motion *in Limine* to Exclude Lee's Statements at Trial (Doc. 91), a Motion *in Limine* to Exclude Evidence of Prior Acts (Doc. 93), a Motion *in Limine* to Exclude Officer's Statements (Doc. 94), a Motion *in Limine* to Exclude Mention of Aggravating Factors (Doc. 95), a Motion *in Limine* to Exclude Evidence of Inflammatory and Cumulative Photographs (Doc. 96), and a Motion *in Limine* to Exclude Evidence of Robert Lee's Death (Doc. 97).  On April 29, 2005, the Government filed an Opposition of the United States to Defendant's *in Limine* Motions for the Guilt Phase of the Trial (Doc. 112).

   A.   **Fell's Motion *in Limine* to Exclude Certain Evidence from 135 Robbins Street, No. 3, Rutland, VT (Doc. 90)**

Fell seeks to exclude the admission of certain evidence from 135 Robbins Street and requests that the Government be prohibited from offering evidence or eliciting testimony that makes reference to the condition of the bodies of victims Debra Fell and Charles Conway, their autopsies, the alleged murder weapons or potential motive for their murders.  Fell

claims this evidence is not relevant to the indictment[1] and will unfairly prejudice him during the guilt phase of the trial.  Fell argues that his statements admitting his presence and actions at 135 Robbins Street are sufficient to establish his actions.

The Government has agreed to limit its proof as to the crime scene at 135 Robbins Street to address any potential concerns of undue prejudice or cumulative evidence.  The Government agreed to offer no photographs of the victims' autopsies unless requested by the medical examiner, no photographs of any victim after they were moved from the scene, no close-up photographs of the bodies of Charles Conway or Debra Fell, and no photographs of the victims' faces.

The series of photographs that the Government intends to offer show where the victims' bodies were found in the living room and the murder weapons found at the scene.  The Government also plans to offer testimony of the medical examiner as to the victims' cause of death and a general, line drawn anatomical chart showing the approximate location of the victims' wounds.

The close-up photographs of the victims are excluded by

_____

[1]The indictment provides that "[o]n or about November 27, 2000, inside the residence of Debra Fell in Rutland, Vermont, the defendants Donald Fell and Robert Lee killed Debra Fell and Charles Conway."  (Doc. 21).

agreement of the parties.  Without reviewing the remaining
photographs of Conway and Debra Fell, the Court is unable to
rule on their admissibility.  Therefore, the Court will permit
introduction of those photographs only with the consent of the
Court.  Prior to showing the jury any pictures relating to 135
Robbins Street, the Government should submit them for Court
review.  The testimony of the medical examiner as to the
victims' cause of death and the anatomical chart showing the
approximate location of the wounds is admissible because it is
relevant to the Government's case to show how Conway and Debra
Fell died.  The deaths of Conway and Debra Fell are
intertwined with the kidnapping, carjacking, and firearm
violations facing Fell and the series of events that led to
the death of King.  The medical examiner's testimony regarding
the cause of death of Conway and Debra Fell will not be so
prejudicial as to outweigh its probative value.  Accordingly,
Fell's motion is granted in part and denied in part.

### B.   Fell's Motion *in Limine* to Exclude Lee's Post-Arrest Statements (Doc. 91)

Fell has moved "to exclude the admission of, or reference
to, the custodial statements of Robert Lee" during the guilt
phase of the trial.  (Doc. 91).  The Government has indicated
that it will not offer the substance of Lee's statements in
its case in chief at the guilt phase of the trial.  Rather the
Government seeks to introduce the fact that Lee made a

4

statement to put Fell's statements in context, to counter an assertion that Fell accepted responsibility without prompting from external factors.

Lee's statements on December 1 and 2, 2000 are clearly inadmissible.  See Crawford v. Washington, 541 U.S. 36 (2004). However, the existence of the statements and timing of the statements are relevant to put Fell's confession in context. Thus, the content of Lee's statements is inadmissible, but the evidence concerning the existence and timing of Lee's statements are admissible.

**C.   Fell's Motion *in Limine* to Exclude Evidence of Prior Acts (Doc. 93)**

Fell seeks to exclude the admission of evidence relating to prior acts that are not charged in the indictment or do not meet the criteria of Federal Rule of Evidence 404(b). Specifically, Fell requests that the Government be prohibited from offering evidence or eliciting testimony that makes reference to prior acts of Fell until Fell's counsel has been given a chance to object outside the presence of the jury.

On February 26, 2002, the Government filed a Notice of Intent to Introduce Evidence of Other Crimes, Wrongs and Acts on February 26, 2002 (Doc. 35).  The nature of the evidence the Government sought to introduce include

> 1.  That Donald Fell and Robert Lee murdered Debra
> Fell and Charles Conway.
> 2.  All other crimes, wrongs or bad acts mentioned

> by Donald Fell in his several interviews with law
> enforcement during the period of November 30-
> December 2, 2000.  Copies of tapes and reports of
> those interviews have previously been turned over to
> the defendant.
> 3.  All other crimes, wrongs or bad acts mentioned
> in the testimony of Christian Kolojeski and Michael
> Leight, copies of which have previously been turned
> over to counsel for the defendant.  (Doc. 35).

In the Government's Opposition to the *in Limine* Motions, it

specifies the prior acts committed by Fell that it would like

to introduce (Doc. 112).  The Court presently has no access to

the relevant interviews in which the prior bad acts are

described.  Fell has not responded to the Government's

Opposition.  If Fell has any objection to the specific acts

that the Government seeks to introduce, he should file a

motion to let the Court know what prior acts he seeks to

exclude.  At this time, the Court denies Fell's motion without

prejudice.

### D.  Fell's Motion *in Limine* to Exclude the Officer's Statement (Doc. 94)

This motion seeks to "exclude the admission of, or

reference to, statements made by Detective Sergeant James

Cruise of the Vermont State Police during the interrogation of

Donald Fell on December 2, 2000, for the reason that they are

not relevant to the indictment and will unfairly prejudice the

defendant during trial."  (Doc. 94).  Fell requests that the

Government be prohibited from offering evidence or eliciting

testimony that makes reference to Sergeant Cruise's statements

6

until his counsel has been given a chance to object outside the presence of the jury, or those statements be redacted from the tape and transcript before any attempt is made to offer them into evidence.  In the Government's opposition, it agrees to redact Sergeant Cruise's comments and will present those proposed redactions to the defense counsel prior to offering Fell's statements at trial.  Therefore, the Court grants Fell's Motion.

> **E.   Fell's Motion *in Limine* to Exclude Mention of Aggravating Factors (Doc. 95)**

In this motion, Fell claims that reference to the aggravating factors is not relevant to any issue during the guilt phase of the trial and will unfairly prejudice Fell. The Government agrees that mention of those factors should not be presented to the jury during the guilt phase of the trial. Accordingly, the Court grants Fell's Motion *in Limine* to Exclude Mention of Aggravating Factors.

> **F.   Fell's Motion *in Limine* to Exclude Evidence of Inflammatory and Cumulative Photographs (Doc. 96)**

This motion seeks to exclude the admission of any photographs of Teresca King taken after her death that are beyond what is necessary to establish the Government's case. The Government has agreed not to present any autopsy photographs of King or any photographs of King after her body was moved at the crime scene.  The Government has also agreed

7

not to show any close-up photographs of King.  Such photographs are therefore excluded.

However, the Government does seek to introduce photographs of the crime scene, including photographs of King taken from a distance of 10 to 15 feet.  Without reviewing the photographs, the Court is unable to rule on their admissibility.  Therefore, the Court will reserve judgment on those photographs.  Prior to showing the jury any pictures relating to the death of King, the Government should submit them for Court review.

### G.   Fell's Motion *in Limine* to Exclude Evidence of Robert Lee's Death (Doc. 97)

Fell seeks to exclude evidence relating to the death of Lee, arguing that such evidence is not relevant to the indictment and will unfairly prejudice Fell.  The Government does not anticipate presenting evidence of Lee's death at trial, however if the defense makes his absence at trial relevant, the Government claims that advising the jury about his death may be necessary.  At this time, any evidence relating to Lee's death is inadmissible.  If the Government seeks to introduce evidence relating to Lee's death, it should make a proffer to the Court describing the purpose for which the evidence is being introduced.

## II.   Motion to Reconsider Rule 12.2 Order

On April 7, 2005, the Court issued an Order (Doc. 100)

permitting the Government to have its two initial experts, John Rabun, M.D. and Richard Wetzel, Ph.D., interview Defendant Donald Fell about his mental state at the time of the offense, subject to certain conditions.  On April 14, 2005, the Government filed a Motion to Reconsider Rule 12.2 Order (Doc. 105), claiming that the Government will make appropriate concessions to address the Court's concern about its new mental health expert, Michael Welner, M.D.[2]  The Government also argues that the previous two experts were not retained to prepare the case for trial, but were chosen to advise regarding the defense settlement offer.  In his Motion *in Limine* Regarding Testimony of Michael Welner, M.D. (Doc. 107), Fell addresses his opposition to the Government's Motion to Reconsider.  For the reasons that follow, the Court denies the Government's Motion to Reconsider.  The Court also denies Fell's Motion *in Limine* as premature.

**A.  Background**

A full chronological review is necessary to understand in what capacity Drs. Rabun and Wetzel were retained by the Government.  In 2001, the defense submitted to the Government a number of expert reports concerning Fell's mental condition, as well as mitigating factors that warranted a determination

---

[2]Dr. Welner is preparing to respond to testimony by Fell's mental health experts at the penalty phase.

not to seek the death penalty.  The defense did this in an attempt to dissuade the United States Attorney from recommending that the Attorney General seek the death penalty. A proposed plea agreement was drafted and submitted to the Attorney General in late 2001.  On January 30, 2002, the Attorney General rejected the plea agreement and ordered the United States Attorney to file a Notice of Intent to Seek the Death Penalty (Doc. 32).  At that point, it became clear to both sides that the case was to proceed consistent with the Government seeking the death penalty.

On February 13, 2002, the Government moved for Discovery of Mental Health Evidence, asking the Court to order Fell to file notice with the Court if he intended "to introduce evidence or information concerning a mental condition or his mental health at the trial or at a sentencing hearing in this case."  Gov't Mot. for Disc. of Mental Health Evid. at 1 (Doc. 34).  In this motion, the Government represented that it wanted unnamed mental health experts to address aggravating and mitigating circumstances for the penalty phase of the trial.  The Government further noted that "Donald Fell is quite likely to raise his mental health during the sentencing hearing in this case," and cited the death penalty statute to support its claim that "when the mitigating factor is supported by evidence or information regarding the defendant's

10

mental health," the "Government's 'fair opportunity' requires
that the defense provide," among other things, "an opportunity
for Government experts to conduct their own mental health
evaluation of the defendant."  Id. at 9-10.  The Government
also cited numerous cases supporting the position that the
Government has the right to an examination of the defendant in
order to rebut the defendant's sentencing presentation of
mental health-related information.  See id. at 10-11.  The
Government sought an order from the Court seeking permission
to select its own mental health experts to address these
aggravating and mitigating circumstances and have those
experts interview Fell.  It sought permission based on
existing case law, since Rule 12.2 did not address the issue
at that time.  Thus, it is quite clear that the Government
intended to have these experts provide testimony at trial or
sentencing.

In early 2002, the parties entered into an agreement
whereby the Government could select two experts, both of whom
could interview Fell.  The Government selected as its experts
Drs. Rabun and Wetzel.  It was made very clear to at least one
of those experts that the purpose of their interviews was to
provide testimony for the Government at the penalty phase of

11

the trial.[3]  Pursuant to that agreement, the Court did not
have to address the Government's motion, and the interviews of
Fell by Drs. Rabun and Wetzel proceeded.  Since the procedural
protections of the current Rule 12.2 did not exist at that
time, statements made by a defendant concerning the offense
would not have been shielded from use by the Government at the
trial, so that the defense did not permit the expert
interviews of Fell to include any questioning regarding the
events involved in the murders and his state of mind at the
time of the murders.

In its April 7, 2005 Order (Doc. 100), the Court
recognized that the Government was entitled to an independent
examination of Fell by a mental health expert concerning his
mental condition at the time of the alleged offense.  The
Court noted that since the Government had chosen Drs. Rabun
and Wetzel as their experts previously, they should be
permitted to complete their evaluation of Fell.

**B.  Discussion**

**1.  Motion to Reconsider**

---

[3]Dr. Wetzel notes in a letter to AUSA Gregory Waples
(dated October 11, 2002) that, "I was asked to review the
reports of three reports (Drs. Mills, Van Gorp and Lipman)
retained by the Federal Defender's Office, to review documents
relevant to the charges against Mr. Fell and to perform an
examination on him in order to prepare rebuttal testimony, if
clinically warranted, for the penalty phase of this capital
murder trial."  Fell's Mot. *in Limine* Regarding Test. of
Michael Welner, M.D. at 3 (Doc. 107).

The standard for deciding a motion to reconsider in the civil context is relevant for deciding a motion to reconsider in a criminal case.  See United States v. D'Armond, 80 F. Supp. 2d 1157, 1170 (D. Kan. 1999).  "'The standard for granting [a motion to reconsider] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"  Latouche v. North Country Union High School Dist., 131 F. Supp. 2d 568, 569 (D. Vt. 2001) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). Moreover, a motion to reconsider should not be granted in situations where the moving party seeks to relitigate an issue already decided.  Id.

In its motion to reconsider, the Government makes two arguments.  First, the Government reiterates its claim that the purpose for which the Government chose the 2002 experts was to advise the defense settlement offer, not for trial. Second, the Government claims that Dr. Welner has conducted a far more comprehensive study of Fell than either of the 2002 experts.

With the exception of the affidavit of Assistant United States Attorney Gregory L. Waples, the Government has offered

13

no new evidence to support its view that the 2002 mental health experts were selected to solely advise the defense settlement offer.  Indeed, the Government's Motion for Discovery of Mental Health Evidence (Doc. 34), filed on February 13, 2002, demonstrates that the Government wanted an examination of Fell by the 2002 mental health experts in preparation for trial.  In the Court's mind, there is absolutely no question that these experts were selected by the Government pursuant to its request in 2002 and that one of the purposes of those interviews was to permit the Government to have its experts present its own theories regarding penalty phase issues.  The only reason there was not a Court order requiring these interviews of Fell by Drs. Rabun and Wetzel was because the parties stipulated to have those interviews conducted.

To say that these interviews were *only to* advise the Government concerning plea negotiations misrepresents what the experts were hired to do.  Indeed, the affidavit of Assistant United States Attorney Waples states that "[m]y primary goal in engaging Drs. Rabun and Wetzel was to obtain neutral, professional opinions about the strength and legitimacy of the mitigating evidence that had been proffered by defense mental health experts in order to inform what I perceived to be the continued possibility of a plea deal."

14

Aff. of AUSA Gregory L. Waples (Doc. 113, Ex. A).  However, Waples acknowledges that "[w]hen retaining the 2002 experts I was aware that, ultimately, it was possible that this case would proceed to a capital trial . . . [b]oth Rabun and Wetzel were aware of my intentions."  Id.  Thus, Drs. Rabun and Wetzel were selected with the knowledge that the case could go to trial and that they may be called to testify  the penalty phase.

The language in the Government's Motion for Discovery of Mental Health Evidence (Doc. 34) makes it quite clear that the Government sought an examination of Fell by mental health experts for the trial, not for a settlement offer.  In its motion, the Government repeatedly refers to its need to prepare a rebuttal case regarding mental health evidence. The Government also urged the Court to employ procedures to accommodate the Government's "legitimate need to prepare for mental health mitigation at sentencing while protecting the defendant's trial rights."  Gov't Mot. for Disc. of Mental Health Evid. at 18 (Doc. 34).  Nothing was mentioned in the motion limiting the purpose of experts to assist in the plea bargaining process.

Here, the Government and defense knowingly and voluntarily entered into an agreement permitting the Government to select experts to evaluate Fell and report

15

their findings regarding issues relevant to the penalty phase
of the proceeding.  The criminal justice system functions
best when litigating parties enter into stipulations to
resolve differences regarding process.  Agreements of this
sort are basic to the sound administration of justice.
Implicit within the agreement was the representation that
these were the experts whom the Government chose.  To permit
the Government to enter into an agreement of this sort with
Drs. Rabun and Wetzel, and then decide, for whatever reason,
it wanted a different expert to go through the same process
two to three years later, violates the spirit, if not the
language, of the agreement.  From the perspective of the
criminal justice system, such a finding would discourage
agreements between the parties.  Simply put, such a finding
would be unfair.

The Government's second argument is its claim that Dr.
Welner has conducted a far more comprehensive study of Fell
than either of the Government's 2002 experts and that it
"would be difficult and resource consuming at this point to
prepare them for the interview and trial."  Gov't Mot. to
Reconsider at 5 (Doc. 105).  The Court's April 7, 2005 Order
permits Drs. Rabun and Wetzel to interview Fell without
restriction in light of the Fifth Amendment protections
provided by Rule 12.2.  Drs. Rabun and Wetzel are already

16

familiar with this case.  The Government is in no way
prejudiced since it gets to call the experts it selected, and
those experts will have wide access to Fell.  Thus, the
Government's Motion to Reconsider is denied.

### 2.    Fell's Motion *in Limine* Regarding the Testimony of Michael Welner, M.D.

In this motion (Doc. 107), Fell argues that since the
defense is not calling a mental health expert, nor raising a
mental health defense, there is no role for Dr. Welner during
the innocence/guilt phase of the trial, as well as at the
sentencing hearing.   The Government has acknowledged that it
has no intention of calling Dr. Welner at the guilt phase.
At this point, it is unclear what the nature and scope of Dr.
Welner's rebuttal testimony will be at the penalty phase.  He
will not have interviewed Fell, however his testimony may
shed light on Fell's upbringing and other relevant factors
concerning sentencing.  The Court can address the
admissibility of his testimony only after disclosure of the
subject of that testimony.  Accordingly, this motion is
denied as premature.

### III. Plea Negotiations

On April 8, 2005, the Government filed a Motion *in
Limine* requesting that the Court issue an order barring
Donald Fell from introducing, at any stage of the trial,
information about the parties' unsuccessful settlement

negotiations (Doc. 103).  In his opposition to the
Government's motion (Doc. 108), Fell argues that the proposed
plea agreement is admissible at the penalty phase of the
trial.  For the reasons that follow, the Government's motion
is granted in part and denied in part.

**A.   Background**

In 2001, the Government and Fell's counsel considered a
plea agreement whereby Fell would plead guilty to Count 2 of
the original Indictment in exchange for a sentence of life
imprisonment.  Federal prosecutors drafted a plea agreement
with these terms.  The proposed plea agreement detailed the
"substantial mitigating evidence" that led the United States
Attorney for the District of Vermont to be willing to agree
to this settlement.  Plea Agreement at 1 (Doc. 40, Ex. A).
This mitigating evidence related to Fell's mental health and
impaired capacity at the time of the events as well as his
mental health history; his youth; his remorse; his assistance
to authorities; and his lack of any substantial prior
criminal history.  Id.  Fell and his attorneys signed the
agreement on October 24, 2001.  Federal prosecutors did not
sign the proposed plea agreement.  In accordance with
Department of Justice ("DOJ") protocol[4], the proposed

---

[4]The DOJ has adopted "policy and procedures to be
followed in all federal cases in which a defendant is charged
with an offense subject to the death penalty."  United States

agreement was expressly conditioned on approval by the
Attorney General or his delegate.  Only then would the United
States Attorney for the District of Vermont sign the
agreement.  Although the local prosecutors recommended
accepting the plea deal, the Attorney General rejected the
proposed agreement.  Subsequently, on January 30, 2002, the
Government filed a Notice of Intent to Seek Death Penalty
(Doc. 32).

On May 14, 2002, Fell filed a Motion to Dismiss the
Notice of Intent to Seek Death Penalty (Doc. 40).  In that
motion, Fell argued that the Government's statements in the
proposed plea agreement concerning the mitigating factors
present in his case were admissions, and that Fell should be
permitted to introduce the statements as evidence.  Although
Fell's motion argued that the Government's statements were
evidentiary admissions, at oral argument he limited his
motion to the claim that the statements were judicial
admissions.  Accordingly, the Court did not rule as to

---

Attorneys' Manual § 9-10.01.  The protocol requires a federal
prosecutor to prepare a prosecution memorandum, including a
comprehensive discussion of, among other information relevant
to the charging decision, evidence relating to any aggravating
or mitigating factors and the defendant's background and
criminal history.  Id., § 9-10.04.  The material is reviewed
by a Committee appointed by the Attorney General, which makes
a recommendation to the Attorney General, who then decides
whether the Government shall seek the death penalty.  Id., §
9-10.05.

whether the Government's statements would be admissible at trial.  See Mem. Op. and Order dated June 27, 2002 (Doc. 56). However, the Court did reject Fell's claim that the Government's statements were judicial admissions.  Id.

In its Motion *in Limine*, the Government argues that information about the parties' settlement negotiations would be inadmissible at both the guilt and penalty phase of the trial.  In his opposition, Fell agrees that this evidence is inadmissible at the guilt phase.  However, Fell argues that the proposed plea agreement should be admitted at the penalty phase.  Fell does not argue that any other information related to the settlement negotiations should be admitted.

**B.   Discussion**

Under the Federal Death Penalty Act ("FDPA"), the Federal Rules of Evidence do not apply at the penalty phase of a trial.  18 U.S.C. § 3593(c).  The FDPA provides that information relevant to the sentence, including any mitigating or aggravating factor, "is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."  Id.  Thus, the Court must determine whether the proposed plea agreement meets this test.

### 1.    Admissibility of the Proposed Plea Agreement

The Government's statements during settlement negotiations, such as those contained in the proposed plea agreement, are of little, if any, relevance.  If there is a penalty phase, the jury will be asked to determine the presence or absence of aggravating and mitigating factors. The proposed plea agreement contains some statements regarding these factors.  Nevertheless, a prosecutor's statements of personal belief regarding these factors should have no bearing on the jury's independent evaluation of the evidence.

It is well settled that a prosecutor's belief in the defendant's guilt is not relevant.  See, e.g., Berger v. United States, 295 U.S. 78, 88-89 (1935).  Other assertions of personal belief by a prosecutor are also irrelevant.  As the Supreme Court has noted, "assertions of personal knowledge [by a prosecutor] are apt to carry much weight . . . when they should properly carry none."  Id. at 88.  Thus, any statements made by prosecutors in a proposed plea agreement should properly carry no weight with the jury.

It is also significant that any statements made by the local prosecutors in the proposed plea agreement were conditional.  The party in this case is the United States, represented by the Attorney General.  Pursuant to DOJ

regulations, any statements or offers made by the local prosecutors were subject to acceptance by the Attorney General.  As the Attorney General rejected the proposed plea agreement, the Government never adopted the statements contained in that document.[5]

Fell presents a variety of arguments suggesting that the proposed plea agreement is relevant.  These arguments are unpersuasive.  For example, Fell claims that the local prosecutors drafted the proposed plea agreement after a thorough investigation of the facts of the case and the prosecutors believed that their statements were true.  This may be correct.  Nevertheless, with all due respect to the prosecutors then assigned to this case, federal prosecutors are not expert witnesses.  Thus, their opinions would not assist the jury in its independent deliberations concerning these issues.  Fell has not explained how the opinions of the prosecutors make the existence or non-existence of any mitigating factor more probable or less probable.  Without such a showing, Fell has failed to demonstrate the relevance of such evidence.  See Fed. R. Evid. 401 (defining "relevant

---

[5]Fell argues that the draft plea agreement was written with actual authority.  This is correct but it misses the point.  The prosecutor assigned to the case, and the United States Attorney for the District of Vermont, had authority to make a *conditional* offer.  As the proposed offer was rejected by the Attorney General, it was never adopted by the United States.

evidence").

Fell also suggests that, under Federal Rule of Evidence 801(d)(2), the Court does not need to consider the probative value of statements made by the Government because those statements should simply be admitted as admissions.  This argument is misplaced.  Fell only seeks to admit the proposed plea agreement at the penalty phase.  The FDPA mandates that the Federal Rules of Evidence do not apply at the sentencing phase.  18 U.S.C. § 3593(c).  In place of these rules, the Court is specifically directed to consider the probative and prejudicial value of evidence.  Id.

While the Government's statements in the proposed plea agreement have little or no relevance, this evidence would be very likely to distract the jury.  The Court agrees with the Government's claim that information regarding settlement negotiations is likely to lead the jury to second-guess the Government's in-house plea deliberations.  The jury should be focused on its independent assessment of the evidence regarding mitigating and aggravating factors.

The Court's decision to exclude evidence concerning the plea negotiations also finds strong support on policy grounds.  The Court is mindful of the danger that the admission of plea negotiations can discourage settlement efforts.  "The disposition of criminal charges by agreement

23

between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice." Santobello v. New York, 404 U.S. 257, 260 (1971). The Supreme Court has declared that plea bargaining "is to be encouraged." Id. This means that the Court should take care to avoid admitting evidence that would deter plea bargaining.

Admitting the proposed plea agreement in this case would clearly discourage plea bargaining. DOJ policy requires local prosecutors to forward any proposed plea agreement to the Attorney General for approval. Thus, whenever a United States Attorney recommends leniency in a capital case there is the possibility that his or her recommendation will be overruled by the Attorney General. United States Attorneys would be discouraged from proposing plea deals if the defense could show any rejected plea agreements to the jury. "[J]ust as the accused may be dissuaded from trying to make a deal by the prospect that failure will be costly, so might the prosecutor be less willing to bargain for the same reason." Christopher B. Mueller and Laird C. Kirkpatrick, 2 Federal Evidence § 149 (2d ed. 2004).

Overall, it is clear to the Court that Fell should not be allowed to introduce the proposed plea agreement or any other evidence concerning the Government's statements during

24

plea negotiations.  This evidence has little or no relevance
and is likely to confuse the jury.  Moreover, admitting this
evidence would discourage similar plea negotiations in the
future.

### 2.   Fell's Offer to Plead Guilty

In 2001, Fell offered to plead guilty to Count 2 of the
original Indictment in exchange for a sentence of life in
prison without the possibility of parole.  Fell argues that
this plea offer is relevant to the mitigating factor of
acceptance of responsibility.  The Court agrees.  However, as
noted above, the Court does not agree with Fell's claim that
the Government's statements in the proposed plea agreement
are relevant to Fell's acceptance of responsibility.  It is
Fell's *offer* to plead guilty that bears on his acceptance of
responsibility.  The Government's *response* to Fell's offer is
not relevant.

If presented separately from other evidence concerning
the plea negotiations, information relating to Fell's offer
to plead guilty is unlikely to confuse the jury.[6]  Thus, as it

---

[6]Obviously, if Fell informs the jury that he offered to
plead guilty to Count 2, then the jury will know that the
Government ultimately rejected this offer.  This may lead some
jurors to speculate as to the content of the negotiations and
to second-guess the Government's decision to reject the plea
offer.  Nevertheless, the danger that the jury will be
distracted by this evidence is far less serious than the
danger created by admitting the Government's internal
deliberations.  The jury would be much more likely to be
confused and distracted by evidence suggesting that the

is relevant to acceptance of responsibility, Fell's offer to plead guilty is admissible at the sentencing hearing under 18 U.S.C. § 3593(c).

There is not an absolute bar on the defendant introducing his or her own statements during settlement negotiations.[7]  For example, the Second Circuit has allowed the introduction of such evidence when it was relevant to the defendant's state of mind.  In United States v. Biaggi, 909 F.2d 662 (2d Cir. 1990) the court held that the defendant should be allowed to introduce evidence relating to his refusal to accept an offer of immunity.  In that case, the Government had offered immunity to the defendant if he came forward with information concerning his co-defendants.  Id. at 690.  The defendant claimed that he had refused this offer because he lacked any knowledge of wrongdoing.  Id.  The defendant claimed that the fact that he refused the immunity offer was evidence of a "consciousness of innocence."  Id. at 692.  The Second Circuit held that the defendant should be permitted to present such evidence.  Id. at 690-92.

This case differs from Biaggi in that Fell intends to

_____

Attorney General overruled a recommendation by local prosecutors.

[7]Federal Rule of Evidence 410 provides that statements made in the course of plea discussions are inadmissible "against" the defendant, and thus leaves open the possibility that a defendant may offer such statements.

offer evidence supporting acceptance of responsibility rather than consciousness of innocence.  However, this case is similar to <u>Biaggi</u> in that Fell's plea offer is relevant to his state of mind.  Thus, under <u>Biaggi</u>, Fell should be allowed to introduce this evidence.

## IV.  Conclusion

For the foregoing reasons, the Court grants in part and denies in part Fell's Motion *in Limine* to Exclude Certain Evidence from 135 Robbins Street, No. 3, Rutland, VT (Doc. 90), grants in part Fell's Motion *in Limine* to Exclude Lee's Statements at Trial (Doc. 91), denies Fell's Motion *in Limine* to Exclude Evidence of Prior Acts (Doc. 93) without prejudice, grants Fell's Motion *in Limine* to Exclude Officer's Statements (Doc. 94), grants Fell's Motion *in Limine* to Exclude Mention of Aggravating Factors (Doc. 95), grants in part Fell's Motion *in Limine* to Exclude Evidence of Inflammatory and Cumulative Photographs (Doc. 96), and grants Fell's Motion *in Limine* to Exclude Evidence of Robert Lee's Death (Doc. 97).

The Court denies the Government's Motion to Reconsider Rule 12.2 Order (Doc. 105).  The Court also denies Fell's Motion *in Limine* Regarding the Testimony of Michael Welner, M.D. (Doc. 107) as premature.  Finally, the Government's Motion *in Limine* (Doc. 103) requesting that the Court issue

27

an order barring Donald from introducing, at any state of the trial, information about the parties' unsuccessful settlement negotiations is granted in part and denied in part.  Fell may not introduce the proposed plea agreement in this case nor any other evidence relating to the statements or actions of Government attorneys during settlement negotiations.  Fell may introduce evidence showing that he offered to plead guilty to Count 2 of the original Indictment in exchange for a sentence of life in prison without the possibility of parole.

    Dated at Burlington, Vermont this 25th day of May, 2005.


                            /s/ William K. Sessions III
                            William K. Sessions III
                            Chief Judge, U.S. District Court