```
                    UNITED STATES DISTRICT COURT
                            FOR THE
                       DISTRICT OF VERMONT

                                    :
UNITED STATES OF AMERICA            :
                                    :
        v.                          :         2:01-CR-12-01
                                    :
DONALD FELL                         :
                                    :
```

**MEMORANDUM OPINION AND ORDER**

At the close of prospective juror 184's voir dire, Defendant Donald Fell challenged the juror for cause. Fell argued that juror 184 would not be able to fairly consider certain kinds of mitigating evidence and could not impartially weigh expert testimony from psychiatrists or psychologists. The Court took the challenge under advisement to review the transcript of juror 184's voir dire. This opinion explains the Court's decision and further outlines the Court's approach to challenges for cause. For the reasons set forth below, the Court grants Fell's challenge and excuses juror 184 for cause.

**Discussion**

**A.   Mitigating Evidence and Challenges for Cause**

A capital defendant is entitled to present any relevant mitigating evidence in support of a sentence less than death. Payne v. Tennessee, 501 U.S. 808, 822 (1991). This is because "consideration of the character and record of the individual offender and the circumstances of the particular offense [is] a constitutionally indispensable part of the process of inflicting

the penalty of death." Woodson v. North Carolina, 428 U.S. 280, 304 (1976) (plurality opinion).

The Supreme Court applies a broad relevance standard to mitigating evidence. See McKoy v. North Carolina, 494 U.S. 433, 440-41 (1990). A trial court should apply the same relevance standard in the context of mitigating evidence introduced in a capital sentencing hearing as is applied in other contexts. Tennard v. Dretke, _ U.S. _, 124 S. Ct. 2562, 2570 (2004). This means that the general standard outlined in Federal Rule of Evidence 401 should be applied. In the capital sentencing context, "[r]elevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value." Id. (quotation marks and citation omitted).

This rule does not give the defendant unfettered discretion to present mitigating evidence. Trivial or unimportant evidence should still be excluded. See id. at 2571. However, the Court must allow any evidence that "is of such a character that it might serve 'as a basis for a sentence less than death.'" Id. (quoting Skipper v. South Carolina, 476 U.S. 1, 5 (1986)).

While the range of potential mitigating evidence is broad, the Supreme Court has noted that some types of evidence will be pertinent in almost all cases. In particular, the Court has concluded that information about a defendant's background and

2

upbringing may be introduced as mitigating evidence.  The Court explained that evidence "about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background ... may be less culpable than defendants who have no such excuse."  Penry v. Lynaugh, 492 U.S. 302, 319 (1989) (Penry I) (quotation marks and citation omitted).

Importantly, a capital defendant is entitled to more than an opportunity to present mitigating evidence.  The defendant is also entitled to a sentencer that will consider such evidence.  This principle was developed and established by a line of Supreme Court cases consisting of Lockett v. Ohio, 438 U.S. 586 (1978), Eddings v. Oklahoma, 455 U.S. 104 (1982) and Penry I.[1]

In Lockett, the Supreme Court considered an Ohio death penalty statute which mandated capital punishment upon a finding of one aggravating circumstance unless one of three statutory mitigating factors were present.  438 U.S. at 593-54.  This statute "did not permit the sentencing judge to consider, as mitigating factors, [the defendant's] character, prior record, age, lack of specific intent to cause death, and her relatively

---

[1] Penry I was abrogated in part by Atkins v. Virginia, 536 U.S. 304 (2002) which held that the Eighth Amendment prohibits executions of mentally retarded defendants.  Atkins did not disturb any holding of Penry I that is relevant here.

3

minor part in the crime." Id. at 597.  A plurality of the Court held the Ohio statute unconstitutional on this basis.  The plurality held that the Eighth Amendment requires that the sentencer "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Id. at 604 (emphasis in original).

A majority of the Supreme Court adopted this plurality holding in Eddings.  In that case, the Oklahoma statute allowed the defendant to introduce evidence of any mitigating circumstance, but the sentencing judge concluded, as a matter of law, that he was unable to consider mitigating evidence of the youthful defendant's troubled family history, beatings by a harsh father, and emotional disturbance.  Eddings, 455 U.S. at 112-13.  The court below had "found that the evidence in mitigation was not relevant because it did not tend to provide a legal excuse from criminal responsibility." Id. at 113.  The Supreme Court rejected the view that evidence must tend to support a legal excuse from criminal liability to be valid mitigation evidence.  Id.

The Eddings Court held that the trial judge had violated the rule established in Lockett requiring the sentencer to consider mitigating evidence.  The Court held that "[j]ust as

4

the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence." Id. at 113-14.

The Supreme Court explained these holdings further in Penry I. In Penry I, as was the case in Eddings, the defendant had been given an opportunity to present mitigating evidence. 492 U.S. at 320. Nevertheless, the Supreme Court found that the jury was not provided an adequate opportunity to consider or act upon that evidence. Penry, who was twenty-two years old at the time of the crime, had offered evidence of serious child abuse and severe mental retardation. See id. at 309-310. However, the jury "was never instructed that it could consider the evidence offered by Penry as *mitigating* evidence and that it could give mitigating effect to that evidence in imposing sentence." Id. at 320. Rather, the jury was restricted to answering three questions relating to intent, provocation and future dangerousness. Id.

The Court found that Penry's "mitigating evidence of mental retardation and childhood abuse ha[d] relevance to his moral culpability beyond the scope" of the three questions posed to the jury. Id. at 322. Thus, the jury instructions were unconstitutional because they precluded the jury from acting upon the mitigating evidence Penry introduced. Id. at 319-22.

The Supreme Court noted that, under Lockett and Eddings, the "sentencer must . . . be able to consider and give effect to that evidence in imposing sentence." Id. at 319; see also Penry v. Johnson, 532 U.S. 782, 797 (2001) (Penry II) (holding that "the key under Penry I" is that the jury be able to consider and give effect to a defendant's mitigating evidence in imposing sentence).

When considering challenges for cause, a trial court should evaluate whether a prospective juror's views would "prevent or substantially impair" the juror's ability to follow the Court's instructions. Wainwright v. Witt, 469 U.S. 412, 424 (1985). The Court should excuse a juror if it is left with a "definite impression that a prospective juror would be unable to faithfully and impartially apply the law." Id. at 426. Therefore, as a part of its inquiry, the Court must evaluate whether a juror would be able to faithfully and impartially apply the law regarding mitigating factors. This law requires the sentencer, whether judge or juror, to consider mitigating evidence. Eddings, 455 U.S. at 114; see also Buchanan v. Angelone, 522 U.S. 269, 276 (1998). Overall, Lockett, Eddings and Penry I make it clear that a prospective juror should be excused for cause if he or she is unwilling to fairly consider mitigating evidence.

This is especially important in the context of a trial

conducted pursuant to the Federal Death Penalty Act (FDPA).  The FDPA encourages the defendant to list each mitigating factor separately for the jury's consideration.  See 18 U.S.C. § 3593(d).  The jurors must then consider whether the defendant has established the existence of each mitigating factor by a preponderance of the information.  18 U.S.C. § 3593(c), (d).  "[A]ny member of the jury who finds the existence of a mitigating factor may consider such factor established . . . regardless of the number of jurors who concur that the factor has been established."  18 U.S.C. § 3593(d).  As a result, the FDPA requires jurors to make an individual finding regarding each mitigating factor proposed by the defense.  Thus, it is important for the Court to ensure that every prospective juror is able to fairly and impartially consider the categories of mitigating evidence that the defendant would introduce at a penalty phase.

    **B.**    **Fell's Challenge of Prospective Juror 184**

Applying this test to juror 184, the Court finds that he should be excused for cause.  Although juror 184 expressed moderate and balanced views on the death penalty, he indicated that he would not consider certain categories of mitigating evidence.  In particular, he indicated that he would not consider mitigating evidence relating to drug and alcohol use during the time of the offense unless somebody forced the

defendant to take drugs or alcohol.  Juror 184 also indicated that he could not consider evidence relating to the defendant's upbringing or childhood sexual abuse as mitigating evidence. The juror explained his feelings on these issues as relating to "personal responsibility."  He explained that "you have to be responsible for who you are" and that he did not think the defendant should be able to blame someone else for his actions.

   As the Court explained in its prior order regarding voir dire, it is important to recall that prospective jurors may be unfamiliar with the complicated concepts discussed at voir dire. For example, a juror might confuse mitigating evidence with evidence that could support a defense at the guilt phase.  For this reason, the Court will not automatically excuse a juror simply because he or she expresses some reluctance relating to one or two mitigating factors.  However, juror 184 was a sophisticated and thoughtful juror who did not appear confused about the relevant concepts of mitigation as compared to evidence supporting a defense.  For example, juror 184 unreservedly agreed that he could consider a capital defendant's lack of a significant prior criminal history as a mitigating factor.  In contrast, when he was asked if he would have difficulty considering mitigating evidence relating to Fell's background, juror 184 said that he would have difficulty.  In fact, he went further and said that "I just don't feel that I

would consider those [factors]."  Moreover, he related this conclusion to his belief about acts being personal choices.  Considering the entirety of the juror 184's testimony, together with his demeanor, the Court concludes that this testimony was a clear statement of a strongly held belief.[2]

Standing alone, these statements might not be sufficient to justify a challenge for cause given jurors 184's assurances, at other points in voir dire, that he would consider all the evidence and be fair and impartial.  However, juror 184 also expressed strong views about expert testimony from psychiatrists or psychologists.  In his questionnaire, juror 184 wrote "I believe you can find a psychologist or psychiatrist that will support whatever side of the case you want."  Moreover, juror 184 explained that he would have a predisposition to believe that a psychiatrist would be a biased witness.

It is legitimate for a juror to analyze an expert witness's testimony for bias.  This is why courts allow parties to examine an expert witness's compensation in an effort to impeach for bias.  See, e.g., Cary Oil Co., Inc. v. MG Refining & Marketing,

---

[2] It is noteworthy that juror 184's view is almost identical to the trial judge's error in Eddings.  In Eddings, the trial judge had refused to consider the defendant's background because this information did not support a legal excuse for the conduct. 455 U.S. at 113.  Similarly, juror 184 would not consider Fell's background because it does not alter Fell's responsibility for his conduct.  Both views conflict with the Supreme Court's holding that evidence may be mitigating even if it could not support a legal defense.  See id.

9

Inc., 257 F. Supp. 2d 751, 756-57 (S.D.N.Y. 2003). Nevertheless, the fact-finder should not begin with an assumption that an expert witness will be biased. Expert witness testimony should be judged for credibility and bias on the same basis as other testimony. See, e.g., Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627-28 (1944). Juror 184's personal beliefs about psychological or psychiatric testimony could interfere with his responsibility to weigh such expert testimony impartially.

The Court finds that, taken together, juror 184's views on mitigation evidence and expert testimony would substantially interfere with his ability to fairly and impartially consider the evidence in this capital case. Fell intends to introduce mitigating evidence relating to his background and childhood. Moreover, much of this evidence is likely to be introduced through the expert testimony of psychiatrists. Thus, Fell would face a double hurdle in any attempt to convince juror 184 that this evidence was relevant. This suggests that the juror's personal views would be an obstacle to fair and impartial consideration of Fell's case. Thus, juror 184 will be excused for cause. See Wainwright, 469 U.S. at 434 (holding that a juror should be excused if his or her views would "create an obstacle" or significantly interfere with impartial consideration of the law and facts).

**C.   The Form of Questions Regarding Mitigating Factors**

Finally, the Court turns to Fell's request to ask prospective jurors if they could "give effect" to mitigating factors. Fell argues that, under Penry I, the fact-finder must be able to give effect to mitigating evidence. Accordingly, Fell requested an opportunity to ask jurors directly if they could do this. The Court finds that such inquiries are likely to be interpreted as stake-out questions and should be prohibited.[3]

Penry I dealt specifically with the trial court's failure to instruct the jury that it may rely on mitigating evidence in reaching its verdict. 492 U.S. at 319-29. Accordingly, the focus of that part of the decision was on jury instructions rather than voir dire. Penry I stands for the proposition that a jury must be told that it can give effect to mitigating evidence.

When the Supreme Court held that a jury must be able to give effect to mitigating evidence, it meant that the jury must have a "vehicle for expressing the view that [the defendant] d[oes] not deserve to be sentenced to death based upon his mitigating evidence." Id. at 326. Thus, the jury would give

---

[3]In its earlier Opinion and Order regarding voir dire, the Court defined "stake-out question" and explained why such questions are improper. See Op. and Order: Voir Dire at 9-11 (Doc. 130).

11

effect to mitigating evidence if it based a life verdict on such evidence. Accordingly, if a prospective juror is asked if he or she could "give effect" to a type of mitigating evidence, that juror is being asked if he or she could return a life verdict based on that evidence. This is too close to a stake-out question as it inquires as to how a juror might vote.

It is better for counsel to ask a juror if he or she could consider mitigating evidence. This question does not ask the juror how he or she might vote based on such evidence. However, the Court will instruct the jury that it may base its verdict upon mitigating evidence.[4] Thus, any juror who is able to fairly and impartially consider mitigating evidence will be able to give effect to this evidence.

### Conclusion

Under the Eighth Amendment, a capital defendant is entitled to a sentencer who will consider any relevant mitigating evidence. Accordingly, the defendant can challenge a prospective juror for cause on the ground that the juror would not consider certain kinds of relevant mitigating evidence. Fell raised this challenge against prospective juror 184. After reviewing juror 184's testimony, the Court concludes that this juror could not fairly and impartially consider mitigating

---

[4] The FDPA requires each juror to determine which mitigating factors exist and to weigh these factors when reaching his or her verdict. See 18 U.S.C. § 3953(d), (e).

evidence relating to Fell's background and upbringing.  Thus, Fell's motion is granted and juror 184 is excused for cause.

Dated at Burlington, Vermont this 8th day of June, 2005.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge, U.S. District Court