UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

|                         |   |                |
|-------------------------|---|----------------|
| UNITED STATES OF AMERICA | : |                |
|                         | : |                |
| v.                      | : | 2:01-CR-12-01  |
|                         | : |                |
| DONALD FELL             | : |                |
|                         | : |                |

**OPINION AND ORDER: EVIDENTIARY STANDARDS**

I.    **Introduction**

The jury has found Donald Fell guilty on all four counts of
the Superseding Indictment.  Counts One and Two carry a
potential sentence of death.  Accordingly, this case has
proceeded to a sentencing phase.  This opinion outlines the
evidentiary standards that apply at a sentencing hearing
conducted pursuant to the Federal Death Penalty Act, 18 U.S.C. §
3591 et seq. ("FDPA").  As the parties have filed a variety of
motions in limine concerning hearsay, this opinion focuses on
hearsay issues.  The Court also discusses its ruling on the
Government's motion in limine to admit statements of Debra Fell.

This is a preliminary order intended to provide guidance to
the parties.[1]  At the conclusion of trial, the Court will issue a
modified opinion explaining these general issues and other
evidentiary rulings that may be required during the sentencing

_____

    [1]As this opinion explains the Court's thinking on some
issues, such as the use of limiting instructions, that have not
yet been extensively argued by the parties, the Court will
entertain any arguments or motions seeking reconsideration.

phase.

II.  **Evidentiary Standards at the Sentencing Phase**

A trial court has an especially important gatekeeping role at the sentencing phase of a capital trial.  The Supreme Court has repeatedly emphasized that, given the final and severe consequences of a death verdict, *heightened* reliability is required in a capital sentencing hearing.  See, e.g., Caldwell v. Mississippi, 472 U.S. 320, 329 (1985); United States v. Fell, 360 F.3d 135, 143 (2d Cir. 2004) (Fell II) (collecting cases).  The Court has explained that the jury should "have as much information before it as possible when it makes the sentencing decision."  Gregg v. Georgia, 428 U.S. 153, 203-04 (1976).  Although the jury should be exposed to a wide range of information, a district court must take special care to avoid admitting any evidence that will unfairly prejudice the defendant.  See United States v. Gilbert, 120 F. Supp. 2d 147, 151 (D. Mass. 2000); United States v. Davis, 912 F. Supp. 938, 943 (E.D. La. 1996).

A.   The Scope of Admissible Evidence

Title 18 U.S.C. § 3593(c) outlines what evidence may be admitted at the sentencing phase of a trial conducted pursuant to the Federal Death Penalty Act ("FDPA").  Section 3593(c) is worded broadly in that it allows evidence to be presented as to "*any matter* relevant to the sentence."  18 U.S.C. § 3593(c)

2

(emphasis added).  This language is not found in the other federal death penalty statute, the Anti-Drug Abuse Act of 1988 which provides that "information may be presented as to matters relating to any of the aggravating or mitigating factors."  21 U.S.C. § 848(j).  <u>See</u> 21 U.S.C. § 848(j).  Thus, it might be thought that the FDPA allows a broader range of evidence to be admitted at the sentencing phase.  However, when the entire text of the FDPA is examined, it is clear that the FDPA, like the Anti-Drug Abuse Act, limits the parties to the introduction of evidence that is relevant to an aggravating or mitigating factor.  <u>Compare</u> 18 U.S.C. §§ 3593(c), (e); 21 U.S.C. § 848(j).

Under the FDPA, when the jury deliberates regarding the sentence it must,

> consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death.

18 U.S.C. § 3593(e).  Thus, the jury will be instructed to base its verdict on a consideration of the aggravating and mitigating factors found to exist.  Unless information is relevant to an aggravating or mitigating factor, that information should not play a part in the jury's sentencing deliberations.  This means that information must be relevant to an aggravating or mitigating factor to be "relevant to the sentence" within the meaning of 18 U.S.C. § 3593(c).

3

This conclusion finds further support in the text of § 3593(c).  That provision also states that the Government may present "information relevant to an aggravating factor for which notice has been provided."  18 U.S.C. § 3593(c).  Similarly, the defendant "may present any information relevant to a mitigating factor."  Id.  The parties are also "permitted to rebut any information received at the hearing."  Id.  This shows that the parties are limited to presenting evidence relating to aggravating and mitigating factors.

This structure places greater limitations on the Government than on the defendant.  This is because the scope of mitigation evidence is generally much broader than evidence concerning aggravating factors.  As one court has explained, "even though virtually no limitation can be placed on proffered mitigation evidence, limitations can and should be placed on proffered aggravation evidence to assure the death sentence is not arbitrarily imposed."  Davis, 912 F. Supp. at 944 n.9.

Aggravating factors must satisfy a variety of requirements. See generally Gilbert, 120 F. Supp. 2d at 150-51.  For example, aggravating factors must be sufficiently serious to be relevant to the sentencing decision and they must genuinely narrow the class of persons eligible for the death penalty.[2]  Id.; United

_____

[2]A more thorough discussion of aggravating factors can be found in the Court's Opinion and Order dated April 7, 2005 at 21-25 (Doc. 100).  In that Order, the Court rejected the defendant's

States v. Friend, 92 F. Supp. 2d 534, 540-41 (E.D. Va. 2000).
Also, the Government must provide notice of any aggravating
factor it intends to prove.  18 U.S.C. § 3592(c).  Thus, during
its case in chief at the sentencing phase, the government is
limited to providing information that is relevant to a valid
aggravating factor for which it has provided notice.

The defendant has much wider discretion with respect to
mitigating factors.  "[T]he Eighth and Fourteenth Amendments
require that the sentencer ... not be precluded from
considering, as a mitigating factor, any aspect of a defendant's
character or record and any of the circumstances of the offense
that the defendant proffers as a basis for a sentence less than
death."  Lockett, 438 U.S. at 604.  Consequently, the defendant
must be given the opportunity to introduce any information that
bears on a potential mitigating factor.  See Eddings v.
Oklahoma, 455 U.S. 104, 110-13 (1982).  Moreover, "[v]irtually
no limits are placed on the relevant mitigating evidence a
capital defendant may introduce concerning his own
circumstances."  Payne v. Tennessee, 501 U.S. 808, 809 (1991).

B.   The FDPA's Exclusionary Rule

Title 18 U.S.C. § 3593(c) provides that information
relevant to the sentence "is admissible regardless of its

---

challenge to the non-statutory aggravating factors alleged in
this case.

admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). Thus, the Federal Rules of Evidence are suspended during the sentencing phase.

Although the Federal Rules of Evidence are suspended during the sentencing phase, § 3593(c) allows district courts to exclude evidence that may lead to unfair prejudice. Significantly, § 3593(c) outlines a broader standard for excluding evidence than is found in the catch-all Federal Rule of Evidence 403. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. Thus, Rule 403's balancing test requires that probative value be "substantially outweighed" by the danger of unfair prejudice. In contrast, § 3593(c) requires only that the probative value be "outweighed" by the danger of unfair prejudice, confusing the issues, or misleading the jury.[3]

---

[3]This aspect of the FDPA can be contrasted with the evidentiary provisions of the Anti-Drug Abuse Act. Under the Anti-Drug Abuse Act, evidence is admissible at the sentencing phase of a capital trial "regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information may be excluded if its probative value is

The omission of the word "substantially" is important.  A party seeking to exclude evidence under Rule 403 faces the heavy burden of showing that unfair prejudice clearly and significantly outweighs the probative value of the contested evidence.  See, e.g., United States v. Wong, 40 F.3d 1347, 1378 (2d Cir. 1994).  Under § 3593(c), however, a party need only show that the unfair prejudice outweighs the probative value of the evidence.  Thus, as many other courts have noted, the FDPA provides the Court with wider discretion to exclude evidence.  See Gilbert, 120 F. Supp. 2d at 151; United States v. Davis, 904 F. Supp. 554, 561 (E.D. La. 1995) ("[E]vidence that would be admissible under the Federal Rules of Evidence, may well not be admissible under the heightened scrutiny of the penalty phase.").

C.   The Constitutional Parameters of Admissible Evidence

Ordinarily, few constitutional limitations apply to the evidence presented at a sentencing proceeding.  See Williams v. New York, 337 U.S. 241, 251 (1949) ("The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure.").  For

---

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  21 U.S.C. § 848(j) (emphasis added).  Thus, unlike the FDPA, the Anti-Drug Abuse Act tracks the language of Federal Rule of Evidence 403. This means that district courts have greater discretion to exclude evidence at the penalty phase of a capital trial conducted pursuant to the FDPA.

example, a defendant usually does not have a Sixth Amendment right to confront witnesses at a sentencing hearing.  See id. at 251-52.  Similarly, illegally obtained evidence may be admissible at a sentencing hearing even though it would be inadmissible at trial.  See, e.g., United States v. Tejada, 956 F.2d 1256, 1263 (2d Cir. 1992) (holding that a district judge may not refuse to consider relevant evidence at sentencing absent a showing that officers obtained evidence expressly to enhance the sentence, even if that evidence has been seized in violation of the Fourth Amendment).  Traditionally, a sentencing judge's inquiry has been "largely unlimited either as to the kind of information he may consider, or the source from which it may come."  United States v. Tucker, 404 U.S. 443, 446 (1972).

Recent Supreme Court authority suggests that the Court should not adopt this traditional laissez faire approach.  The relevant cases explore the application of the jury trial guarantee of the Sixth Amendment.  See Ring v. Arizona, 536 U.S. 584 (2002); Apprendi v. New Jersey, 530 U.S. 466 (2000); Jones v. United States, 526 U.S. 227 (1999).  This line of authority is founded on the principle that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a

reasonable doubt." Jones, 526 U.S. at 243 n.6.  These cases
have profound implications for the distinction between
sentencing factors and elements of the offense.  As a result,
Jones, Apprendi, and Ring have changed the constitutional
landscape of many sentencing proceedings.

In Jones, the Court considered the federal carjacking
statute, 18 U.S.C. § 2119, which provided that the offender was
subject to imprisonment for up to 15 years, but if serious
bodily injury resulted, the offender was subject to imprisonment
for up to 25 years, and if death resulted, the offender was
subject to imprisonment for life.  The issue before the Court
was whether the statute effectively created three separate
offenses, thereby making the existence of serious injury or
death elements of an offense, or whether those facts were merely
sentencing considerations.  See Jones, 526 U.S. at 239.  The
Court held that the statute created separate offenses and did
not make serious injury or death merely sentencing
considerations.  Id.  The Court was motivated by a concern that
a different ruling would violate the constitutional principle
that an element of an offense must be charged in the indictment,
submitted to a jury and proven by the government beyond a
reasonable doubt.  Id. at 239-243.

The Court further clarified these issues in Apprendi.  In
that case, the Court definitively held that if "an increase in a

defendant's authorized punishment [is] contingent on the finding
of a fact, that fact . . . must be found by a jury beyond a
reasonable doubt."  <u>Apprendi</u>, 530 U.S. at 482-83.  Thus,
whenever a factor is required for an increase beyond the maximum
authorized statutory sentence, "it is the functional equivalent
of an *element* of a greater offense than the one covered by the
jury's guilty verdict."  <u>Id.</u> at 495 (emphasis added).

In <u>Ring</u>, the Court applied these principles to the capital
context.  The <u>Ring</u> Court considered Arizona's death penalty
sentencing scheme.  Under Arizona's first-degree murder statute,
a defendant could be sentenced to death only after a finding by
a judge, at a separate sentencing hearing, of certain
aggravating circumstances.  <u>Ring</u>, 536 U.S. at 596.  The Supreme
Court reasoned that, under <u>Apprendi</u>, such aggravating factors
were the functional equivalent of elements of an offense.  <u>Id.</u>
at 609.[4]

The FDPA shares key features with the death penalty statute
considered in <u>Ring</u>.  Like the Arizona statute, the FDPA
conditions death penalty eligibility on findings of fact made at
a sentencing hearing.  Under the FDPA, two conditions must be
satisfied before the defendant can be sentenced to death.
First, the jury must find beyond a reasonable doubt that the

---

[4]In so holding, the Supreme Court overruled <u>Walton v.
Arizona</u>, 497 U.S. 639 (1990).

defendant acted with one of four mental culpability factors,
ranging from an intentional killing to intentionally engaging in
violence knowing that the act created a grave risk of death with
the victim's death as a direct result.  18 U.S.C. §
3591(a)(2)(A)-(D).  Second, the government must prove at least
one of sixteen statutory aggravating factors.  18 U.S.C. §
3592(c)(1)-(16).  Unless the jury makes both of these findings,
a life sentence is the maximum penalty the defendant can face.
Accordingly, under Ring, "the facts concerning a defendant's
state of mind and aggravating factors that the Federal Death
Penalty Act requires be proven for a defendant to be eligible
for the death penalty must be treated procedurally as elements
of the offense alleged."  United States v. Sampson, 245 F. Supp.
2d 327, 332 (D. Mass. 2003).

     In a previous order, this Court considered the implications
of Jones, Apprendi, and Ring in detail.  See United States v.
Fell, 217 F. Supp. 2d 469 (D. Vt. 2002) (Fell I), overruled by
United States v. Fell, 360 F.3d 135, 143 (2d Cir. 2004) (Fell
II).  This Court noted that the FDPA's sentencing proceeding
satisfies Ring's requirement that each element be submitted to a
jury and proven by the government beyond a reasonable doubt.
Fell I, 217 F. Supp. 2d at 482.  However, the Court was
concerned that the FDPA's relaxed evidentiary standard failed to
protect other constitutional rights.  In particular, the Court

held that the FDPA's evidentiary standard at sentencing would allow the introduction of hearsay that violated the defendant's rights under the Confrontation Clause. <u>See</u> <u>id.</u> at 489.

In overruling this Court's decision, the Second Circuit did not reject the conclusion that the FDPA's mental culpability factors and statutory aggravating factors should be treated as offense elements under <u>Ring</u>. <u>See</u> <u>Fell II</u>, 360 F.3d at 142. Similarly, the Second Circuit did not decide whether the Confrontation Clause applies at a capital sentencing hearing. <u>Id.</u> at 145 (noting that the court takes "no position" regarding whether this Court should admit the statement of Fell's codefendant at any sentencing phase). Rather, the Second Circuit rejected the view that the FDPA would allow unconstitutional evidence to be admitted at sentencing. <u>Id.</u> at 144-145. The court noted that:

> [A]s was true before the [Federal Rules of Evidence ("FRE")] were promulgated in 1972 and is true under the FRE, it remains for the court, in the exercise of its judgment and discretion, to ensure that unconstitutional evidence otherwise admissible under applicable evidentiary rules is excluded from trial. The FDPA does not eliminate this function of the judge as *gatekeeper of constitutionally permissible evidence*; nor does it alter or eliminate the constitutional baseline for the admissibility of evidence in a criminal trial.

<u>Id.</u> at 145 (quotation marks and citation omitted) (emphasis added). Accordingly, the Second Circuit has directed this Court to apply the FDPA's evidentiary rule in a manner consistent with the Constitution.

As part of this task, the Court must decide a question that the Second Circuit left unaddressed, namely, whether the Confrontation Clause applies at the sentencing proceeding in this case.  For the reasons stated in its original order - reasons left undisturbed by the Second Circuit - the Court holds that the Confrontation Clause does apply with respect to the FDPA's mental culpability factors and statutory aggravating factors.  See Fell I, 217 F. Supp. 2d at 485-490.  In this context, there is no principled reason for drawing a distinction between the jury trial rights and confrontation rights guaranteed by the Sixth Amendment.  Where a defendant is entitled to a trial by jury, the defendant should also be entitled to confront and cross-examine any witnesses against him.  Otherwise, the jury trial would not provide the fair fact-finding process guaranteed by the Constitution.[5]

Other courts that have considered this question have reached the same conclusion.  The United States District Court for the Eastern District of Virginia applied Fell II in holding

---

[5]As the Supreme Court has noted, "the absence of proper confrontation at trial calls into question the ultimate integrity of the fact-finding process."  See Ohio v. Roberts, 448 U.S. 56, 64 (1980) (quotation marks and citation omitted), overruled by Crawford v. Washington, 541 U.S. 36 (2004).  Although Crawford radically revises the Roberts approach to the Confrontation Clause, it does not alter the Supreme Court's view that confrontation is crucial to the integrity of the trial process. See Crawford, 541 U.S. at 62 ("Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty.")

that the Confrontation Clause should apply at the penalty phase of a capital trial.  United States v. Jordan, 357 F. Supp. 2d 889, 901-903 (E.D. Va. 2005).  The court held that, as Ring's jury trial requirement applies, "the Confrontation Clause is equally applicable."  Id. at 903.  Similarly, another court held that "Congress's decision in 18 U.S.C. section 3593(c) to make the Federal Rules of Evidence inapplicable to the penalty phase cannot alter the bedrock Confrontation Clause principles identified by the Crawford Court."  United States v. Corley, 348 F. Supp. 2d 970, 978 (N.D. Ind. 2004) (citing the Supreme Court's recent decision in Crawford v. Washington, 541 U.S. 36 (2004)); see also United States v. Lee, 374 F.3d 637, 649 (8th Cir. 2004) (finding defendant's confrontation rights were not violated at sentencing phase of capital trial because defendant had waived his confrontation rights by stipulating to the admission of the hearsay).

    D.   Applying the Confrontation Clause

Having found that the Confrontation Clause applies at sentencing, the Court must address two complicated issues. First, the Court must apply the Confrontation Clause at a sentencing hearing that will involve some factors that are elements under Ring and other factors that are not elements. Second, the Court must address testimonial and non-testimonial hearsay in the aftermath of the Supreme Court's groundbreaking

14

decision in <u>Crawford</u>.

    1.   <u>Elements and Non-elements</u>

Under <u>Ring</u>, only the FDPA's mental culpability factors and statutory aggravating factors (collectively "gateway factors") are the functional equivalent of elements.  Non-statutory aggravating factors and mitigating factors need not be considered elements as they are not prerequisites for an increase in the maximum penalty.  Thus, it appears that the defendant enjoys confrontation rights with respect to some, but not all, of the factors that may be contested at the sentencing phase.  This creates the possibility that certain hearsay evidence will be admissible for some purposes at sentencing even though it cannot be used to prove any of the gateway factors.  The Court may be faced with the difficult task of balancing the defendant's confrontation rights against the principle that the jury should "have as much information before it as possible when it makes the sentencing decision."  <u>Gregg</u>, 428 U.S. at 203-04.

Some hearsay evidence will be admissible and relevant solely with respect to non-statutory aggravating factors or mitigating factors (collectively "non-gateway factors").  For example, victim impact evidence is unlikely to be relevant to any gateway factors as it will concern the unique personal characteristics of the victim and her family.  Thus, hearsay concerning the victim's life and character can be admitted

without raising any Confrontation Clause concerns.  See United States v. Martinez, _ F.3d _, 2005 WL 1492079 (2d. Cir. June 24, 2005) (holding that Crawford does not apply to ordinary sentencing factors).  Indeed, in this case, members of Terry King's family gave poignant impact testimony that included hearsay evidence.  Clearly, none of this testimony violated the defendant's confrontation rights.  Similarly, in its rebuttal case, the Government may seek to introduce evidence concerning the defendant's childhood.  Such evidence is unlikely to bear on any of the gateway factors and will not implicate the Confrontation Clause.

     The situation is more complex when hearsay evidence is relevant to both gateway factors and non-gateway factors.  For example, the Government may wish to introduce hearsay evidence to rebut the defendant's claim that his capacity to appreciate his conduct was significantly impaired.  Some of this evidence may also be highly relevant to a gateway factor such as intent to kill.  If the jury were to consider the hearsay when deciding the gateway factor, it would raise a Confrontation Clause concern.  In this situation, the Court must consider issuing a limiting instruction or excluding the evidence entirely.

     A limiting instruction would inform the jurors that they may consider certain hearsay only with respect to non-statutory and mitigating factors.  Such an instruction cannot be used,

16

however, if the jury is still likely to consider the evidence for an improper purpose. See United States v. Reyes, 18 F.3d 65, 70 (2d Cir. 1994) (noting that the non-hearsay use of evidence together with a limiting instruction is not acceptable if the jury is "likely to consider the statement for the truth of what was stated with significant resultant prejudice"). Moreover, limiting instructions are sometimes inadequate as a matter of law in the Confrontation Clause context. See Bruton v. United States, 391 U.S. 123 (1968). In Bruton, the Supreme Court held that the Confrontation Clause prohibits the introduction of the confession of a non-testifying codefendant that implicates the defendant in a crime. Id. at 126. A trial court cannot cure the introduction of such evidence through a limiting instruction. Id. at 137. Thus, a limiting instruction might not be sufficient to allow the introduction of a codefendant's confession at a unitary sentencing hearing.[6]

In effect, the risk that the jury might use hearsay for an improper purpose is a "danger of creating unfair prejudice" under 18 U.S.C. § 3593(c). Consequently, the Court must weigh this risk against the probative value of any hearsay evidence. Moreover, as this risk implicates a constitutional right, the

---

[6]Although Bruton was decided in the context of joint trials, it is clearly applicable here. The Bruton Court concluded that a jury is unlikely to be able to disregard a codefendant's confession even if instructed to do so. See 391 U.S. at 135-36.

17

Court must accord it significant weight.

     2.   Testimonial and Non-testimonial Hearsay

     For many years, Ohio v. Roberts was the key case on the
interaction between the Confrontation Clause and the hearsay
rules.  Under Roberts, hearsay of an unavailable witness could be
admitted if it fell within a firmly-rooted hearsay exception or
bore particularized guarantees of trustworthiness.  448 U.S. at
66.  Crawford overruled Roberts with respect to prior *testimonial*
statements.  Under Crawford, such statements may not be admitted
against a defendant unless he has an opportunity to cross-examine
the declarant, irrespective of whether the statement falls within
a firmly-rooted hearsay exception or bears particularized
guarantees of trustworthiness.

     Crawford does not "spell out a comprehensive definition of
'testimonial.'"  541 U.S. at 68.  Nevertheless, the Court held
that "[w]hatever else the term covers, it applies at a minimum to
prior testimony at a preliminary hearing, before a grand jury, or
at a former trial; and to police interrogations."  Id.  Possible
definitions of testimonial include "extrajudicial statements . .
. . contained in formalized testimonial materials, such as
affidavits, depositions, prior testimony, or confessions" or
"statements that were made under circumstances which would lead
an objective witness reasonably to believe that the statement
would be available for use at a later trial."  Id. at 51-52.  The

18

Second Circuit has focused on whether the declarant believes that the statement might be used at trial:

> <u>Crawford</u> at least suggests that the determinative factor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statements may later be used at a trial.  The opinion lists several formulations of the types of statements that are included in the core class of testimonial statements . . . .  All of these definitions provide that the statement must be such that the declarant reasonably expects that the statement might be used in future judicial proceedings.

<u>United States v. Saget</u>, 377 F.3d 223, 228-229 (2d Cir. 2004).

With respect to non-testimonial statements, <u>Crawford</u> leaves in place the <u>Roberts</u> approach to determining admissibility.  <u>Id.</u> at 227.  <u>Crawford</u> did suggest the possibility of "an approach that exempted [non-testimonial] statements from Confrontation Clause scrutiny altogether."  <u>Id.</u> at 68.  Nevertheless, the Court explicitly declined to overrule <u>White v. Illinois</u>, 502 U.S. 346 (1992), which rejected a view of the Confrontation Clause that would place no constitutional limits on the admissibility of non-testimonial statements.  <u>See</u> <u>Crawford</u>, 541 U.S. at 61 ("Although our analysis in this case casts doubt on that holding, we need not definitively resolve whether [<u>White</u>] survives our decision today . . . .").  This means that "<u>Crawford</u> leaves the <u>Roberts</u> approach untouched with respect to nontestimonial statements." <u>Saget</u>, 377 F.3d at 227.

The <u>Roberts</u> trustworthiness analysis overlaps with the FDPA's balancing standard.  Both tests require the Court to

consider the probative value of the proffered evidence.  Under 18

U.S.C. § 3593(c), the Court must balance the probative and

prejudicial value of all proffered evidence at the sentencing

phase.  See also United States v. Fatico, 603 F.2d 1053, 1057 (2d

Cir. 1979) (Due Process Clause requires that hearsay introduced

at sentencing be reliable).  Under Roberts, the Court will be

required to pay even closer attention to the trustworthiness of

non-testimonial hearsay that is introduced to prove a gateway

factor.

     E.   Overview of the Evidentiary Standards

     The Court must adopt a multi-step procedure to apply the

principles outlined above.  The Court will approach proffered

hearsay by asking the following questions:

1.   Is the proffered evidence relevant to an aggravating or mitigating factor?

2.   Is the hearsay offered to prove a gateway factor?

3.   If it is offered to prove a gateway factor, is the hearsay testimonial?

4.   If testimonial hearsay is offered to prove a gateway factor, was there a prior opportunity to cross-examine?

5.   If non-testimonial hearsay is offered to prove a gateway factor, does it fall within a firmly-rooted hearsay exception or show other indicia of reliability?

6.   If the hearsay is offered to prove a non-statutory or mitigating factor, does its probative value outweigh its prejudicial effect (including the danger that the jury will improperly use the hearsay when considering a gateway factor)?

III. **The Hearsay of Debra Fell**

The Court now turns to the Government's motion to admit statements of Debra Fell.  The Government sought to admit hearsay through three different witnesses: Jeffrey Vanburen, Vertith Cindy Oberle and Marsha Thompson.  These witnesses knew Debra Fell in the weeks and months leading up to her death.  Each reported that Debra Fell had expressed fear of her son Donald Fell.[7]

The Government sought to introduce these statements, in part, to prove Donald Fell's intent to kill his mother.  This means the statements were offered to prove a gateway factor and the Confrontation Clause applies.  The Government also claimed that Debra Fell's statements were relevant to non-gateway factors.  In particular, her statements of fear were relevant to impeach claims made by Donald Fell in his confession concerning his relationship with his mother.  The defendant has suggested that the fact that he gave a truthful confession should be considered by the jury as a mitigating factor.  The Government is entitled to rebut this claim.

---

[7]These witnesses could also testify to their personal observations of Debra Fell and Donald Fell.  They reported hearing arguments and, in some cases, witnessing assaultive behavior by Donald Fell.  The Court allowed the introduction of this testimony as relevant to the relationship between Donald Fell and his mother, as placed at issue by the defense, and to Donald Fell's intent.

A.   <u>Vanburen and Oberle</u>

The Court first considered Debra Fell's statements to Vanburen and Oberle.  These witnesses were personal friends of Debra Fell.  They reported that Debra Fell had made generalized statements about her fear of Donald Fell in the weeks prior to her death.  These statements were hearsay communicated in social conversations or over the phone.  As such, these statements were non-testimonial hearsay.  <u>See</u> <u>Saget</u>, 377 F.3d at 228-229.

The Court had a number of concerns about this testimony. First, as these statements described Debra Fell's state of mind, they had little relevance to Donald Fell's intent or state of mind.  <u>See, e.g.</u>, <u>United States v. Brown</u>, 490 F.2d 758, 774-80 (D.C. Cir. 1973) (state of mind of victim generally cannot be used to prove the state of mind of an accused).  Second, as the statements were proffered to prove a gateway factor, they raised a significant Confrontation Clause concern.  Vanburen and Oberle were unable to give many details regarding the context or timing of Debra Fell's statements.  Accordingly, it was difficult for the Court to evaluate the reliability of these statements and apply the Confrontation Clause.  <u>See</u> <u>Idaho v. Wright</u>, 497 U.S. 805, 819 (1990) (When assessing reliability, "the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief.").  The Government did not provide a basis for the Court

to conclude that these statements were sufficiently reliable to satisfy the Roberts test.  In light of these concerns, the Court excluded this hearsay under both the Confrontation Clause and the balancing test outlined in 18 U.S.C. § 3593(c).  The statements had minimal probative value and there was a danger that they could be used, improperly, to decide a gateway factor.

        B.   Marsha Thompson

        The Court reached a different conclusion regarding Thompson's testimony.  Thompson is an employee of the Stop Lite Bar where Debra Fell was a regular.  Thompson was an eye-witness to an altercation, between Debra Fell and her son, at the bar.  This confrontation was described in Donald Fell's confession.  Donald Fell had claimed that he was not the aggressor.  In contrast, Thompson claimed that the son was the aggressor.  She said that Debra Fell returned to the bar immediately after the altercation.  Debra Fell was visibly upset and stated that she was afraid to return home because she feared her son.

        This testimony was highly relevant to impeach aspects of Donald Fell's confession.  As such, its primary relevance was not to any gateway factor, but to impeachment and to the rebuttal of a potential mitigating factor.  In particular, it was relevant to rebut the defense's claim that Donald Fell gave a truthful confession.

        Importantly, this testimony had the particularized

guarantees of trustworthiness that were lacking in the hearsay described by Oberle and Vanburen. Debra Fell expressed her fear shortly after being assaulted by her son. Moreover, Thompson testified that Debra Fell was visibly upset and crying. This means that this statement falls within the "excited utterance" hearsay exception. Fed. R. Evid. 803(2) (an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."); see also United States v. Jones, 299 F.3d 103, 112 (2d Cir. 2002). An excited utterance need not be contemporaneous with the startling event to be admissible under Rule 803(2) as long as the declarant is still under the stress of the event. See, e.g., United States v. Scarpa, 913 F.2d 993, 1017 (2d Cir. 1990). It is clear that Debra Fell's statement satisfies this test. An assault is a startling event. Also, Debra Fell was still upset because of this event when she talked to Marsha Thompson. The excited utterance exception is a firmly-rooted hearsay exception under Roberts. See United States v. Tocco, 135 F.3d 116, 127 (2d Cir. 1998). The Court found no Confrontation Clause problem with the admission of Debra Fell's non-testimonial statement to Marsha Thompson.

After applying the Confrontation Clause, the Court turned to the FDPA's balancing of probative value versus unfair prejudice. Debra Fell's statement to Marsha Thompson is both reliable and

relevant to impeach aspects of Donald Fell's confession.
Moreover, this statement has minimal prejudicial effect within
the context of the altercation of the Stop Lite bar.  Thus, it
satisfied the standard set forth in 18 U.S.C. § 3593(c).
Accordingly, the Court admitted the statement.

**IV.   <u>Conclusion</u>**

The Court is required to apply a multi-step test when
evaluating proffered evidence.  The Court must consider,
relevance, the FDPA's balancing test and the Confrontation
Clause.  These evidentiary standards ensure that the jury hears a
broad range of evidence without undue prejudice to either party
and without violating the defendant's constitutional rights.

The Court applied these evidentiary standards to the
statements of Debra Fell.  For reasons set forth above, the
Government's motion to admit statements of Debra Fell (Doc. 162)
is granted in part and denied in part.  Debra Fell's statement to
Marsha Thompson at the Stop Lite Bar is admitted.  All other
hearsay of Debra Fell is excluded.


Dated at Burlington, Vermont this 30th day of June, 2005.


<u>/s/ William K. Sessions III</u>
William K. Sessions III
Chief Judge, U.S. District Court