```
                  UNITED STATES DISTRICT COURT
                           FOR THE
                      DISTRICT OF VERMONT
```

```
UNITED STATES OF AMERICA       :
                               :
          v.                   :   Criminal No. 2:01-CR-12-1
                               :
DONALD FELL,                   :
          Defendant.           :
```

### MEMORANDUM AND ORDER

Following a jury trial, the Defendant, Donald Fell, was convicted of carjacking with death resulting and kidnapping with death resulting, as well as two additional offenses. After a penalty phase trial, the jury reached the unanimous conclusion that a sentence of death should be imposed upon Fell for the carjacking and kidnapping crimes. For the reasons set forth below, the government's request to designate Indiana as the state in which the sentence shall be implemented is GRANTED.

### DISCUSSION

**A. Background and applicable law**

On June 24, 2005, Fell was convicted on four counts: carjacking with death resulting, in violation of 18 U.S.C. § 2119(3) (Count 1); kidnapping with death resulting, in violation of 18 U.S.C. § 1201(a)(1) (Count 2); brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 3); and being a fugitive in possession of a firearm, in violation of 18 U.S.C. § 922(g)(2) (Count 4). The convictions stemmed from the events of November 27, 2000, when Fell and

Robert Lee abducted Teresca King in Rutland, Vermont, drove her car to Dover, New York, and then beat her to death. Fell and Lee used a .12 gauge shotgun during the abduction. Prior to abducting King, Fell and Lee also killed Fell's mother, Debra Fell, and her friend, Charles Conway; those deaths were not charged as part of the instant case.

Because Counts 1 and 2 were capital offenses, a penalty phase trial was held to determine whether Fell should be sentenced to death. On July 14, 2005, the jury unanimously concluded that a sentence of death should be imposed as to Counts 1 and 2.

The Court is required to sentence a defendant in accordance with the jury's verdict. See 18 U.S.C. § 3594 ("Upon a recommendation under section 3593(e) that the defendant should be sentenced to death or life imprisonment without possibility of release, the court shall sentence the defendant accordingly."). If the law of the state in which the sentence is imposed provides for implementation of a sentence of death, the sentence must be implemented pursuant to that state's law. 18 U.S.C. § 3596(a). If, on the other hand, that state's law makes no provision for implementing such a sentence, "the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law." Id.

Although Vermont has a capital punishment statute that is technically still on the books, see Vt. Stat. Ann. titl. 13, §§ 7101-07, the government recognizes that "it has been void and unlawful for over 30 years." Sentencing Mem. of the United States at 2 (Doc. 240). The Supreme Court's decision in Furman v. Georgia, 408 U.S. 238 (1972) is widely recognized as having struck down the existing death penalty statutes in Vermont and in every other state. See, e.g., John C. Cunningham, Death in the Federal Courts: Expectations and Realities of the Federal Death Penalty Act of 1994, 32 U. Rich. L. Rev. 939, 948 (stating that Furman "effectively abolished the death penalty in the United States, overturning death penalty laws on the books in the forty-one states [with such laws] and the federal government"). In the intervening decades, Vermont has not amended any part of its death penalty statute to bring it into compliance with Furman or the rest of the Supreme Court's substantial body of contemporary Eighth Amendment jurisprudence. Accordingly, the Court agrees with the government that pursuant to Section 3596(a), it must "designate another State, the law of which does provide for the implementation of a sentence of death[.]"

The government requests that the Court designate Indiana as the location of Fell's execution. Its request is based chiefly on the fact that the United States Penitentiary in Terre Haute, a Bureau of Prisons facility designated for federal capital

offenders, is located in Indiana.  As discussed below, the Court is of the view that the state of New York would be a more appropriate choice.  However, in light of the substantial uncertainty regarding the current validity of the death penalty in New York, the Court will grant the government's request, with the understanding that either party may move for reconsideration of this designation if the validity of New York's death penalty statute is subsequently clarified.

**B. Considerations favoring the designation of New York**

Section 3596(a) does not set forth specific factors for a court to consider in designating a state for the implementation of a death sentence.  However, a useful model is provided by Judge Wolf's thorough consideration of the issue in United States v. Sampson, 300 F. Supp. 2d 278 (D. Mass. 2004), a case presenting a similar set of facts to this one.  In Sampson, the defendant had committed carjacking and murder in Massachusetts and then traveled to New Hampshire, where he killed another victim.  Because Massachusetts was a non-death penalty state, the government requested that the court designate Indiana as the state of execution.  Judge Wolf declined to grant this request, holding instead that the execution should take place in New Hampshire.  Sampson, 300 F. Supp. 2d at 280.  He recognized the strong interest in ensuring that to the extent possible, all litigation relating to the defendant be consolidated in a single

jurisdiction, the First Circuit.  Id. at 281.  He noted that after Massachusetts, New Hampshire was the state with the closest connection to the defendant's crimes.  Id.  Finally, Judge Wolf observed that as a neighboring state, New Hampshire would be more convenient and accessible for defense and government counsel, friends and family of the defendant and the victims, and the media.  Id. at 281-82.

Just as the above factors led Judge Wolf to designate New Hampshire, a similar set of considerations leads this Court to conclude that New York would normally be the most appropriate state in which to carry out the imposition of Fell's death sentence.  First, the interests of justice would be served by keeping litigation relating to Fell's case within the Second Circuit whenever possible.  The interests of the parties and notions of judicial economy will be served by the significant familiarity with Fell's case that the Second Circuit can be expected to develop during the direct appeal and any postconviction proceedings under 28 U.S.C. § 2255.  See 28 U.S.C. § 2255 (permitting a prisoner to "move the court which imposed the sentence to vacate, set aside, or correct the sentence").  Moreover, affording the government wide latitude to select a jurisdiction unconnected with the defendant's crimes runs the risk of creating an incentive for forum shopping.  It is important to recognize the interest of each circuit in

"develop[ing] and apply[ing] the law relating to federal capital cases involving crimes committed within its jurisdiction in the way that it deems to be proper, which may differ from the way other Circuits interpret and apply the same law." Sampson, 300 F. Supp. 2d at 281.

The Court recognizes that if the government chooses to incarcerate Fell at Terre Haute while his appeals are pending, any litigation concerning the conditions of his confinement will likely take place within the Seventh Circuit. See 28 U.S.C. § 2241. However, this fact does not diminish the strong interest in ensuring consolidation of as much litigation as possible in this circuit. Even if Fell were confined in Indiana for a certain period of time, implementing the execution in New York would ensure that any litigation concerning the manner in which the execution is to be carried out would take place within the Second Circuit.

The second factor supporting the designation of New York is that after Vermont, it is the state with the strongest connection to Fell's crimes. Of all the acts that made up the offenses of which Fell was convicted, the most heinous--the killing of Terry King--occurred in New York. In addition, by traveling through the state during the commission of a crime and while in possession of a dangerous weapon, Fell presented a substantial threat to the safety and security of New York's residents. These

6

connections present a strong justification for designating New York as the site of the execution and the source of the law governing its implementation.

Third, New York's close proximity to Vermont would render it a convenient location for counsel and other individuals with an interest in Fell's case.  Although the government represents that King's family joins in the request for a designation of Indiana, it remains the case that numerous other interested parties, including Fell's Albany, New York-based attorneys and the families of Fell's two other victims, are located in or near Vermont and have not made such a request.  In addition, as was the case in Sampson, the local media and concerned citizens have followed this case closely and would benefit from the selection of a neighboring state.

## C. The uncertainty surrounding New York's death penalty

In light of the considerations discussed above, the Court would ordinarily conclude that New York is the most appropriate state to be designated under Section 3596(a).  As the government stresses, however, New York's capital punishment framework is currently in a state of uncertainty.  New York has a death penalty statute on the books, see N.Y. Correct. Law §§ 650-62, and at least four individuals were on death row in the state as of 2004.  See William Glaberson, A 4-3 Ruling Effectively Halts Death Penalty in New York, N.Y. Times, June 24, 2004, at A1.

However, in June 2004, the New York Court of Appeals struck down the state's death penalty statute.  People v. LaValle, 783 N.Y.S.2d 485 (2004).  Although one inmate remains on death row pending the outcome of an appeal, and although attempts have been made in the New York Legislature to reinstate the statute by remedying the constitutional flaws identified by the Court of Appeals, the future of the death penalty in New York is far from clear.  See, e.g., Michelle O'Donnell, Legal Struggle Over a Death Row Case May Decide More Than an Inmate's Fate, N.Y. Times, Feb. 26, 2006, at § 1 (discussing the case of New York's remaining death row inmate, John Taylor); Patrick D. Healy, Death Penalty is Blocked by Democrats, N.Y. Times, Apr. 13, 2005, at B1 ("Democrats in the State Assembly closed the door Tuesday on reviving the death penalty in New York State this year[.]").

In light of this uncertainty, New York does not qualify as a suitable state for designation under Section 3596(a) at this time, and for this reason, the Court will grant the government's request to designate Indiana.  However, because New York would otherwise be favored, either party may seek reconsideration in the event that the uncertainty surrounding New York's death penalty statute is resolved prior to the implementation of the sentence.

8

**CONCLUSION**

For the foregoing reasons, the government's request to designate Indiana as the state in which Fell's sentence shall be implemented is GRANTED.

Dated at Burlington, Vermont this 16th day of June, 2006.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge