UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA

v.

DONALD FELL

NO. 01-00012

RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION FOR
DISCLOSURE, RETURN AND PRECLUDING USE OF RECORDS AND INFORMATION

The United States responds herewith to "Donald Fell's Motion for (A) Disclosure and (B) Return of Information and Records in Government's Possession to Permit Rulings Protecting Mr. Fell's Rights and Privileges," filed May 4, 2015. Fell's motion essentially seeks (1) the return of documents that he provided to the government in discovery during the 28 U.S.C. § 2255 litigation, and (2) an inventory of the documents that he provided to the government in connection with his ineffective assistance of counsel claims. He further requests the return and the prohibition of the use of any and all materials relating to his mental condition generated by either side in the course the 15 year history of this case.

The documents Fell seeks to recover fall essentially into two categories: documents generated by his 2005 trial attorneys, provided by Fell to the government in 2013 to defend against his claim that those trial attorneys were ineffective, and mental health reports provided by Fell to the government for various purposes since the 2002.

During Fell's § 2255 case, he urged that his 2005 trial counsel was constitutionally ineffective. By putting his counsel's performance at issue, he waived his attorney-client privilege. To proceed on his ineffectiveness claim, the § 2255 discovery process required Fell to provide the documents he now seeks to have inventoried and returned. "The rule that a litigant

1

waives the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation dates back" over a century. *Bittaker v. Woodford*, 331 F.3d 715, 718 (9th Cir. 2003), *citing* to *Hunt v. Blackburn*, 128 U.S. 464, 470-71 (1888) ("When Mrs. Blackburn entered upon a line of defense which involved what transpired between herself and Mr. Weatherford [her lawyer], and respecting which she testified, she waived her right to object to his giving his own account of the matter").

The United States is in lawful possession of attorney documents Fell produced after electing to waive his attorney-client privilege. The documents were not provided subject to a protective order.[1] Fell directs the Court's attention to a one-sentence footnote in a defense filing to suggest the parties agreed to protect the confidentiality and limit the use of the documents in question. This was not the understanding of the attorneys for the government. See Docket # 425, pg 2, fn.2. The documents and files were provided to the government to allow preparation for the depositions of Fell's trial attorneys in regard to his claimed ineffective assistance of counsel. In turning over these files, Fell's then counsel expressed the concern that inadvertently privileged documents, unrelated to the claim, might also have been provided. It was these potential inadvertent disclosures to which the agreement in the footnote referred. The necessity for these contested documents was abated when the Court granted Fell's requested relief on the claim of juror misconduct.

Notwithstanding the above, as a practical matter, since the § 2255 litigation is over, the government has little interest in the documents Fell provided regarding his 2005 counsel. While

---

[1] By contrast, the Ninth Circuit ordered that the State of California was precluded from using attorney files provided in discovery during post-conviction proceedings where there was a protective order in place. *Bittaker v. Woodford*, 331 F.3d 715, 722 (9th Cir. 2003).

not acknowledging any prior agreement, or legal obligation, the government agrees to return those documents to Fell if in fact the § 2255 litigation is moribund.[2]

Fell also moves the Court to order the United States to inventory the foregoing documents he provided to the government during the § 2255 litigation. The government protests this request. If for some reason Fell desires an inventory of his 2005 attorney documents, he can and should inventory them himself. Alternatively, he can request his § 2255 counsel – a major New York law firm – provide its inventory of the documents. Fell provided the documents to the government in 2013 in digital, PDF files without an index or inventory, requiring each individual file to be opened separately to ascertain its contents. The government's effort to sort through the documents was abandoned when the § 2255 parties agreed to litigate the juror misconduct issues first. In addition to being unduly burdensome for the United States to now have to review and inventory Fell's § 2255 discovery, such a course is at cross purposes with Fell's insistence that the documents are (once again) privileged, and presents a risk the government will review inadvertently disclosed material subject to privilege.

Fell's request for the return and the prohibition of the use of the mental health reports generated in the course of the last fifteen years of litigation is a different matter. As is not uncommon in the development of any defense, when facing serious allegations and potential lifelong incarceration a defendant's mental health may come under consideration. This becomes ever more likely in capital eligible litigation. As such, experienced defense counsel recognize the wisdom in exploring this area of potential mitigation early in the case and then face a decision of when it is strategically advantageous to disclose any evidence developed during the investigation.

---

[2] On May 19, 2015, Fell filed motions urging that unresolved § 2255 issues remain pending and should be litigated. If so, it may be premature to return § 2255 discovery either voluntarily or pursuant to a court order.

Fell placed his mental condition at issue during multiple stages of this protracted case. One of the first steps taken by Fell's trial attorneys in 2001 was to obtain evaluations of Fell by three mental health experts: Dr. Mark J. Mills, Dr. Wilfred G. van Gorp, and Dr. Jonathan J. Lipman.  See "Amended Opposition of the United States to Fell's § 2255 Motion," filed December 21, 1011 (Document 338), pp. 98 - 147 (summarizing the findings and discussing potential testimony).  Fell's then attorneys provided the three evaluations to the government as mitigation, seeking to avert capital prosecution.  The information was presented first to the United States Attorney, then to the Attorney General's Committee on capital eligible cases, in an effort to sway their respective recommendations to the Attorney General as to the appropriateness of seeking the death penalty.  Further, in 2002 Fell agreed to allow two mental health experts retained by the government, Dr. Richard Wetzel and Dr. John Rabun, to examine him, also in the hopes of circumventing capital prosecution.  The results of all five of these early mental health examinations were submitted to the Attorney General as part of the government's capital consideration.   In short, Fell's first defense team made the considered choice to disclose, at an early stage, mental health information, including government examinations, in the hope it would persuade the Attorney General not to seek the death penalty.

When Fell's 2001-02 effort to avert capital prosecution failed, as trial approached he filed a Fed. R. Crim. 12.2 notice of intent to rely upon evidence of mental condition.  In so doing, the law provided the government the opportunity to develop rebuttal evidence with its own, more complete, mental health examination.[3]  On the eve of trial and during the 2005 trial Fell

---

[3] The government's motion for discovery related to Fell's mental health was filed at Docket # 34; the defendant filed his notice of intent to present mental health evidence at Docket # 74; the government's supplemental motion for discovery related to the mental health evidence was filed at Docket # 77; the defendant's response and the government's reply regarding the mental health discovery were filed at Docket #'s 78 and 79, respectively; after a hearing, the Court granted, in part, the government's mental health discovery motion at Docket # 99.  These matters are

produced in discovery information regarding his fourth defense mental health expert, psychologist Mark Cunningham, and the government produced to Fell a mental health evaluation by its third mental health expert, Michael Welner, M.D.  Ultimately, at trial Fell decided not to present evidence of mental condition.

As part of Fell's § 2255 claim, he engaged additional mental health experts, in support of his contention that his 2005 trial counsel was ineffective.  To proceed on his claim, once again, Fell disclosed the new expert reports to the government to allow it the opportunity to consider the claims and prepare to rebut them as appropriate.  Ultimately, this § 2255 claim was not resolved, because the Court granted the relief sought in Fell's §2255 petition on grounds of juror misconduct.

In the wake of the Court's 2014 order vacating the 2005 verdict, Fell's new mental health experts were relied upon in a renewed effort to persuade the United States Attorney, the Attorney General's Review Committee on Capital Cases, and the Attorney General, to avert another capital trial and resolve the case with a plea to life imprisonment.  In January of this year, Attorney General Holder rebuffed that effort.

Having pressed mental health evidence on the government for multiple purposes over the long history of this case, Fell now urges the Court to order the government to return all that evidence to him and preclude the government from using it.  His request, to resort to the cliché, seeks to "un-ring the bell," or, mixing metaphors, to "put the genie back in the bottle."  The evidence at issue has been the subject of detailed consideration during multiple phases of this case – each time as urged or invited by Fell.  He seeks to justify his claim primarily on a negative: because he has yet to file a Rule 12.2 notice of its intent to present evidence of mental

---

discussed in detail in the above-cited § 2255 filing, Fell's initial § 2255 motion, and Fell's "Reply to the Government's Amended Opposition . . ." filed August 20, 2012 (Document 358).

condition, mental health evidence has no relevance at this point in the proceedings. While literally true, it strains credulity for him to have attacked his 2005 trial counsel for *failing* to present mental health evidence at trial, while urging that current counsel may also decline to present it at trial.

In any event, Fell's request is superfluous. Unless he decides to introduce evidence of his mental condition, the government cannot present rebuttal evidence. The government may only use mental condition information, whether generated at the defendant's instigation or by experts on the government's behalf, in rebuttal. This right of rebuttal is well recognized. In *Buchanan v. Kentucky*, 483 U.S. 402, 423-24 (1987), the Supreme Court noted if a defendant puts his mental state at issue, the prosecution may present psychiatric evidence for the purpose of "limited rebuttal." As the Court explained more recently, "[a]ny other rule would undermine the adversarial process, allowing a defendant to provide the jury with a one-sided and potentially inaccurate view of his mental state at the time of the alleged crime." *Kansas v. Cheever*, 134 S.Ct. 596 (2013).

A similar allegation was made in the District of Massachusetts in *United States v. Sampson*. There, the 12.2 notice was not yet filed when the defense sought to preclude the use of mental condition information presented in trial and in support of Sampson's post-conviction ineffective assistance of counsel claim.[4] Judge Wolf held, "[t]hat it is most appropriate to allow the experts for Sampson and the government to review all of the other relevant information so they can make well-informed evaluations of his mental condition and prepare to testify as to their decisions." Docket # 1664, page 45-46. Judge Wolf also ruled against the defense in their

---

[4] The defense team in the Sampson retrial also sought to prevent a competency report, completed at the court's direction, from being provided to the United States. The Sampson court acceded in this request. However, it should be noted, it was never in the possession of either party and only quoted by the court briefly in support of its ruling of the defendant's competency to proceed to retrial.

request to disqualify government team members because of their exposure to privileged or confidential information and material.

Fell implies his successful § 2255 petition mandates the return of anything generated by his experts, and prohibits the use of the government expert reports, or any information the government would not have, but for his claims. It should be noted the Court's decision to overturn the verdict and sentence had no basis in conduct or actions of the government or its attorneys. Requiring the government to forget what it knows is neither feasible nor fair. Nonetheless, Fell now argues his successful post-conviction petition requires him to be restored to the position he held in 2001. To the extent the defendant argues some of the mental condition evidence in the government's, and defendant's possession, resulted from a violation of a previous court order, a more appropriate remedy would be a motion in limine and a hearing should Fell file notice under F.R.C.P. 12.2.

The Court has considerable discretion in devising equitable remedies, but "the remedy should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'" *United States v. Gordon*, 156 F.3d 376, 381 (2nd Cir. 1998) (quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981)). A remedy tailored to the constitutional violation is "*one that as much as possible restores* [a defendant] to the circumstances that would have existed had there been no constitutional error." *United States v. Carmichael*, 216 F.3d 224, 227 (2nd Cir. 2000). (Emphasis added.) This does not mean turning the clock back such that all previous history is erased. Competing interests are an inherent part of the adversarial process and it is in the interests of justice that the system operates well. For such to happen, the jury must be fairly informed by that process. As the Supreme Court noted in *Cheever*, when upholding the government's right to present rebuttal evidence, "any other rule

would undermine the adversarial process, allowing a defendant to provide the jury . . . a one-sided and potentially inaccurate view." *Cheever*, 134 S.Ct at 601.

WHEREFORE the United States asks the Court to deny Fell's motion. The United States, without acknowledging any requirement by law, agrees to return trial counsel's files, mooting this portion of the motion. A Court ordered inventory of these attorney files would be unduly burdensome and potentially problematic and should be denied. Finally, neither the law nor equitable considerations require the return of documents or reports, generated by either side, related to mental condition and provided during the pendency of this litigation for either strategic purposes or in satisfaction of disclosure obligations.

Dated at Burlington, in the District of Vermont, May 19, 2015.

Respectfully submitted,

UNITED STATES OF AMERICA

EUGENIA A.P. COWLES
Acting United States Attorney

By:

JULIE B. MOSLEY
Trial Attorney
1331 F Street NW
Washington D.C.  20530
Julie.Mosley@usdoj.gov


WILLIAM B. DARROW
Assistant U.S. Attorney
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725
Bill.Darrow@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 19th, 2015, the foregoing was electronically filed with the Clerk of the court.  The CM/ECF system will provide notification of such filing to counsel for the defendant:  Michael N. Burt, Esq., Kerry B. DeWolfe, Esq., and John T. Philipsborn.

                                                     s/
                                            JULIE B. MOSLEY
                                            Trial Attorney