U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 JUN 23 AM 9: 38

CLERK
BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 5:01-cr-12-01 |
| ) | |
| DONALD FELL ) | |

### DECISION AND ORDER ON MOTION FOR DISCLOSURE AND RETURN OF INFORMATION AND RECORDS IN GOVERNMENT'S POSSESSION
(Doc. 548)

In the early going of this case following the decision granting a new trial, it will be necessary to divide issues which arose in the prior phases—both the original trial and the § 2255 proceeding—between those which remain relevant to the retrial and those which have no further effect. The defendant's motion concerning prior discovery (Doc. 548) raises these types of questions.

### BACKGROUND

The court starts with a review of the motions and rulings about discovery which lead to where the parties are today.

I.   **Discovery in the § 2255 Proceeding**

In the course of the § 2255 case, the parties exchanged discovery. The process commenced with the petitioner's motion to conduct discovery filed pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts. (Doc 309.) Through his attorneys Fell sought to investigate claims of ineffective assistance of counsel and prosecutorial misconduct. While opposing the motion, the Government voluntarily produced some of the material requested by the defense. The court granted the motion to conduct discovery in part. (Doc. 369.)

On June 10, 2013, the Government responded with broad discovery requests of its own. The Government's memorandum noted that in its view, Fell had waived his attorney client privilege when he placed his attorneys' conduct at issue by asserting claims of ineffective

assistance of counsel. The Government sought disclosure of all files maintained by counsel during the course of the first trial. (Doc. 375.)

On June 28, 2013, the Government filed a second motion for discovery. The motion sought disclosure of the substance of interviews and other information concerning potential juror misconduct. (Doc. 382.)

The parties held a discovery conference on August 26, 2013. The defense agreed to produce non-privileged materials.

In a motion filed on September 19, 2013, the Government renewed its demand for a complete, unredacted disclosure of the attorney files from the original trial. (Doc. 409.)

On October 24, 2013, the court entered a stipulated discovery order which established a process for correcting the inadvertent disclosure of privileged materials. (Doc. 423.)

On December 19, 2013, the court ruled on the outstanding discovery motions. The court allowed discovery of both Fell and the prosecutors involved in the original trial. In Fell's case, any deposition was limited to questions about his interactions with his attorneys concerning issues raised at the penalty phase such as his background, his mental health, his relationship with codefendant Robert Lee and a prison disciplinary incident. These interactions were relevant to a claim of ineffective assistance of counsel. They were placed at issue by Fell's § 2255 petition. The Government was not permitted to question Fell about the underlying facts of the offense. (Doc. 458.)

Discovery proceeded after the December 2013 order including depositions of Fell's trial counsel and his jury consultant. When a dispute arose concerning the scope of the deposition of the jury consultant, the court issued an order permitting an inquiry, including an inquiry into work-product materials, with respect to the three jurors whose conduct was at issue. The court did not allow a broader inquiry into all facts related to the selection of the jury. (Doc. 488.)

Following hearings conducted between August 2013 and May 2014, the court issued a decision on July 24, 2014 granting the motion to vacate the prior judgment of conviction and granting a new trial to Fell. The decision was based on juror misconduct and did not reach the other claims in the § 2255 petition. (Doc. 514.)

## II.     The Controversy over Dr. Welner

In the course of the § 2255 case, Fell's attorneys also sought relief on the ground that one of the Government's experts had violated a court order limiting the Government to existing psychological experts and denying the Government's request for a new psychological evaluation.

Following the disclosure by the defense of three expert witnesses on the issue of penalty on May 18, 2001, the Government selected Richard Wetzel, Ph.D. and John Rabun, M.D. as its experts on these issues. Both conducted in-person interviews of Fell during the spring and summer of 2002. Trial preparations were delayed between September 2002 and March 2004 while the parties appealed from a decision of this court declaring the federal death penalty to be unconstitutional. The Second Circuit issued a decision reversing the trial judge on this issue in March 2004. *United States v. Fell*, 360 F.3d 125 (2d Cir. 2004).

In December 2004 both sides filed formal notices pursuant to Fed. R .Crim..P. 12.2 regarding their intent to offer expert testimony about Fell's mental condition on the penalty issue only. (Docs. 74, 77). At this time the Government disclosed that it had retained a third expert: Michael Welner, M.D. It sought an unrestricted examination of Fell by Dr. Welner, including questions concerning offense conduct. It sought to apply recent amendments to Rule 12.2 which permitted the sealing of such an examination with release to the Government only if the case proceeded to a penalty phase.

The defense sought to limit the Government to the two experts previously disclosed and to rule out any further examination of Fell. (Doc. 78.)

By order dated April 7, 2005, the court ruled that the Government was entitled to have a mental health expert interview Fell concerning his mental condition at the time of the alleged offense. The court required that any new examination be carried out by either Dr. Wetzel or Dr. Rabun because they have previously conducted an assessment. The order also required prior notice to the defense of any additional mental health testing. (Doc. 101.)

On June 12, 2005, Dr. Wetzel interviewed Fell for eight hours. (Doc. 236 at 8.) Trial started on June 20, 2005. The jury returned a guilty verdict in the first phase on June 24, 2005. The penalty phase commenced on June 28, 2005.

3

On July 5, 2005, the defense received Dr. Welner's report which indicated that he had conducted additional psychological testing and had supplied specific questions to be asked by Dr. Wetzel.

On July 8, 2005, the defense entered into a stipulation that Fell suffered from no mental disease or defect and had normal cognitive and neurological function. This stipulation was admitted in the course of the penalty phase, (Doc. 203), and neither side called any mental health experts.

On July 14, 2005, the jury returned a verdict in favor of the death penalty.

The defense asserted that Dr. Welner had violated the court's order dated April 7, 2005, both in a motion in limine to exclude Dr. Welner's testimony (Doc. 182) and in a later motion for judgment of acquittal. (Doc. 209.) The court concluded that the issue was moot because neither side introduced evidence at trial concerning Fell's mental condition. (Doc. 238 at 20.) Although the court concluded that the actions of the Government and Dr. Welner combined to violate the April 7 order, the court took no further action.

The issue of Dr. Welner's proxy examination arose again in the course of the § 2255 petition. Fell claimed that his attorneys failed to provide effective representation when they abandoned his mental health case and stipulated that he did not suffer from a mental disease or defect. He claimed that they failed to obtain a pre-trial ruling which would have excluded testimony from Dr. Welner.

The court allowed inquiry into "whether government counsel, Dr. Welner, and/or Dr. Wetzel violated the Court's April 7 Order." (Doc. 458 at 5.) Because the court granted a new trial on the basis of juror misconduct, the issue of the violation of the April 7 order was never resolved. (*See* Doc. 514 at 93.) The court invited additional briefing regarding how the case should proceed in light of the remaining unaddressed claims in Fell's § 2255 motion.

New attorneys appeared on behalf of Fell in March 2015. At the initial status conference on April 10, 2015, the court advised that it would not reopen the § 2255 proceeding to resolve other issues left pending by the court's decision vacating the conviction and ordering a new trial.

4

The court advised that issues which arose at the first trial would be considered in the course of preparation for the second only if they remained relevant to the preparation of the second trial.

## ANALYSIS

Drawing upon this narrative, the defense now seeks an order providing the following relief:

1. The return of all files and materials disclosed during the § 2255 litigation supplemented by an order prohibiting the Government from making use of any of these materials;

2. The return of all expert reports, psychological or psychiatric in nature, developed during the first trial or the § 2255 proceeding, as well as an order prohibiting the Government from using any such materials;

3. Creation and delivery of a description of all defense files and records provided to it by the defense in the § 2255 litigation which is protected by the attorney-client, work-product, or self-incrimination privilege.

(*See* Doc. 548 at 1-2.)

In explaining and justifying its request, the defense raises several concerns. First, because new counsel have taken over Fell's defense, they were not involved in the § 2255 production and cannot determine what materials were provided to the Government. Second, they contend that when Dr. Wetzel used Dr. Welner's questions at least in part to examine Fell and when Dr. Welner used Dr. Wetzel's exam and other materials for testing purposes, the Government and its experts violated a court order and by extension Fell's Fifth Amendment privilege. Third, they argue that Fell never waived his attorney-client and work-product privilege by filing ineffective-assistance claims because these claims were never reached in the § 2255 case. Fourth, they argue that unless and until Fell provides notice of an intent to present testimony about his mental condition, he has a Fifth Amendment privilege against disclosure of his statement to an examiner as well as procedural rights under Fed. R.Crim. P. 12.2.

In summary, Fell seeks to be returned to the legal position he was in in the first trial *before* he placed his mental condition at issue by filing a Rule 12.2 notice. Similarly, he seeks to be returned to the legal position he was in *before* he filed the ineffective assistance of counsel claims and before his attorneys provided limited disclosures to the Government on this issue.

5

The Government opposes Fell's motion in part. (Doc. 555.) Fell filed a reply on May 28, 2015. (Doc. 557.) The court heard argument on the Motion at a hearing on June 5, 2015.

### I.     Indexing and Return of All Files Disclosed During the § 2255 Litigation

The first and third requests by the defense addresses the problem of materials turned over by Fell to the Government in the course of the § 2255 case. Federal courts have long recognized that a prisoner who files a § 2255 petition alleging ineffective assistance of counsel waives as a matter of implication his or her attorney-client privilege and work-product privilege with respect to the files and testimony of prior counsel. *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword. . . . Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications."); *see also Strickland v. Washington*, 466 U.S. 668, 691 (1984) (recognizing that "inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's . . . litigation decisions"); *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003) (en banc). The rule of fairness requires that the Government be permitted to examine the work of prior counsel, including privileged information, in order to defend that work as effective advocacy.

The implied waiver is limited to the release of the information necessary to respond to the petitioner's claim. It is not a wholesale waiver of all privilege. It is a limited waiver, created by operation of law, which goes no further than it must to allow the Government a fair opportunity to respond to the specific claims raised by the petitioner. *See Bittaker*, 331 F.3d at 720. The waiver is limited both in its scope—to issues raised in the § 2255 case—and with respect to use. Information which is highly relevant to the ineffective assistance claim may be unfairly damaging on retrial. The limited waiver serves only to give the Government access to the defense attorney files for use in the § 2255 case. It does not "open the door" for all purposes. When grounds are present for § 2255 relief, the goal of the § 2255 court is to return the defendant to his or her original position to the extent possible after allowing both sides full access to the information needed to evaluate trial counsel's conduct. This goal may require the exclusion of privileged information on retrial. *See id.* at 723-24 ("[A]llowing the prosecution at retrial to use information gathered by the first defense lawyer—including defendant's statements to his lawyer—would give the prosecution a wholly gratuitous advantage."). Id. at 724.

Operating in a manner consistent with these general principles, § 2255 counsel in this case provided the Government with discovery of the files of the original defense team. (Docs. 548-8; 548-9.) From these files, petitioner's counsel withheld documents determined to be privileged. Counsel supplied a privilege log describing the documents which were not produced. (Doc. 548-8.)

The Government has agreed to return all copies of defense attorney files which it received from petitioner in the § 2255 discovery. These files are on computer discs. The Government has advised that it has neither copied nor indexed these materials. A partial index created by a legal assistant working for the prosecution was never completed. It shall be destroyed, and counsel for the Government shall confirm its destruction by letter.

Since the Government has agreed to return all defense attorney files produced in the course of the § 2255 proceeding, there is no need to require the preparation of an index of these materials. The return of the computer discs plus the destruction of any partial list already in existence is sufficient.

## II. Return of All Expert Reports

In this request, the defense seeks the return of reports and other materials generated by the Government and its witnesses in preparation for a potential mental health issue raised at either phase of the first trial or as part of the § 2255 case. Privilege does not apply since these are not materials prepared by the defense. The defense argues instead that the essential purpose of an order under § 2255 vacating a judgment of conviction requires the court to take steps to return the defendant—and the Government—to the position they were in at the beginning of the first case. The defense also argues that the special sealing provision in Fed. R. Crim. P. 12.2—which permits the Government to prepare for a possible penalty phase by conducting a mental health examination on condition that the results are sealed unless and until the defendant is found guilty at the first phase—requires the return of any such materials upon re-trial.

In response, the Government points out that it obtained the expert reports in the course of preparing for the first trial and that it cannot destroy the memory of those reports from the attorneys and others who reviewed them.

In an ideal world, the court would restore Fell to the exact position he was in prior to the start of the first trial. The Government would not have access to mental health information concerning issues of insanity or any other issue relevant to the guilt/innocence phase until after a

7

Rule 12.2 disclosure by the defense. The prosecution would have no access to the work of its own experts on penalty issues until after a determination of guilt and notice from the defense that it intends to offer expert evidence in the mitigation phase.

In an effort to come as close as possible to the protections accorded the accused by Fed. R. Crim. P. 12.2(c)(2), the court orders that any reports and related materials concerning testing and examination of Fell by the defense or by experts retained by the Government be sealed at this time. Sealing shall be accomplished by placing such reports in a carton or file cabinet which is sealed with tape and kept in a secure location where it cannot be accessed without prior notice to the defense and to the court.

Documents which exist in electronic form present a special problem. It is not so easy to place them in a sealed box. The court does not wish to create a complex order for the limited category of documents at issue. If any of the materials at issue exist in electronic form, the parties are directed to confer and select an appropriate sealing procedure.

The Government shall describe the measures it has taken to provide this protection in a letter to the defense. Materials in the hands of expert witnesses retained by the Government shall be returned to the prosecution and kept under seal in the same arrangement. Upon filing of a notice under Rule 12.2 by the defense of its intent to make use of mental health evidence on any issue, the court will issue a ruling after a hearing which provides for the release of the appropriate reports and other records to the prosecution and its expert witnesses. Similarly, materials covered by this section of the court's decision which have been sent to supervising attorneys and others at the Department of Justice shall be returned and kept with trial counsel's copies.

Mental health materials provided by the defense to the Government in the course of settlement talks fall into a different category. These were not provided pursuant to the procedure created by Rule 12.2. They were provided voluntarily in the sense that they were provided outside of the supervision of the court and without any legal requirement that they be turned over. Absent some agreement limiting their use, the Government was free to review them when received and to use them as it saw fit in the original case. The court does not require that these materials be sealed because no court order or court rule limited their use when they were originally furnished to the Government. (If there was some agreement between the parties about their use, the parties are free, of course, to bring that to the court's attention.)

The court rejects the proposal by the defense that the psychological material developed by the Government's experts be handed over to the defense. As materials are handed back and forth without copies, the risk of loss of a document or a misunderstanding about whether a document exists grows. There are a variety of circumstances under which the materials now in the possession of the Government may be released and may be used in the Government's case. The protection afforded to the defendant by sealing these materials and leaving them in the possession of the Government is as close as it is possible to come to the protection originally afforded him by Rule 12.2.

### III.  Other Issues Relating to Mental Health Examinations

#### A.  The Alleged Misconduct by Dr. Welner

In a filing dated May 19, 2015, the defense seeks dismissal of the death notice or to bar retrial of this case based, in part, on the Dr. Welner-Dr. Wetzel controversy. (*See* Doc. 550.) This is a broader claim than the claim raised here that the alleged violation of the court order operates to bar use of the results of Dr. Welner's investigation. The court will resolve all claims concerning Dr. Welner when it rules on Document 550 Motion to Complete § 2255 Litigation).

#### B.  No Waiver of 5th Amendment for Mental Health Exam

The court rejects the argument that Fell never waived his Fifth Amendment protection against a government-sponsored mental health exam because these claims were not reached in the § 2255 decision by Judge Sessions. The waiver occurred when the § 2255 claims were filed. Waiver does not depend upon whether the claims actually became the basis for the court's final ruling.

#### C.  Effect of Rule 12.2

As already discussed, the court agrees with the defense that Fell remains entitled to the protection of Rule 12.2. There will be no additional mental health examination by the Government unless he places his mental health at issue as he did in the course of the first trial. But as already discussed, Rule 12.2 does not reach as far as the defense suggests. It is does not require the extirpation of examinations previously conducted in preparation for the first trial. Similarly, since Fell waived his Fifth Amendment protection against self-incrimination in the course of the first trial, he cannot return and revoke his waiver today. He retains the Fifth Amendment protection with respect to any future examination, but the past exam—conducted

pursuant to a valid implied waiver—cannot be suppressed solely on the ground that a retrial is ordered.

## CONCLUSION

The court GRANTS the motion for return of information and records in the Government's possession with respect to defense attorney files. The court DENIES the motion requiring the Government to turn over all reports and other materials related to mental health evaluations of Fell by either side and requires instead that these materials be sealed and remain in the possession of the Government at this time. The court DENIES the motion for creation of a list or index of the materials produced in discovery in the § 2255 proceeding and provided by petitioner to the Government.

Dated at Rutland, in the District of Vermont, this 23 day of July, 2015.

Geoffrey W. Crawford, Judge
United States District Court