UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 JUL 17 AM 11: 55

CLERK
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 5:01-cr-12-01 |
| | ) | |
| DONALD FELL | ) | |

## DECISION AND ORDER ON MOTION TO COMPLETE § 2255 LITIGATION AND MOTION TO COMPEL § 2255 DISCOVERY
### (Docs. 550 and 551)

In a pair of Motions (Docs. 550 and 551), the defense seeks to return to the claims of prosecutorial misconduct raised in the § 2255 case and left unresolved when an order granting a new trial was issued (Doc. 514). The defense seeks to use those unresolved claims to bar a retrial and to obtain dismissal of the charges against Fell, or to obtain a dismissal of the death notice. Specifically, the defense has filed a Motion to Complete § 2255 Litigation (Doc. 550) and a Motion to Compel § 2255 Discovery "so that there can be a final resolution of all of the allegations contained in the § 2255 petition." (Doc. 551 at 1.) The Government opposes both Motions. (Doc. 562.) Fell filed a Reply on June 19, 2015. (Doc. 574.) The court has also considered the Government's Surreply. (Doc. 588.) For the reasons discussed below, the court concludes that the claims raised by the defense are legally insufficient to bar a retrial or the death notice, and accordingly DENIES both Motions.

## Background

In his Amended § 2255 Motion, Fell argued—among other things—that he was entitled to relief because of prosecutorial misconduct and juror misconduct. (*See* Doc. 512 at 21 (asserting that Fell's trial was "marred by prosecutorial misconduct"); *id.* at 343 (alleging "[s]everal instances of juror misconduct").) For relief, Fell sought to have his convictions and sentences vacated and to be retried. (*Id.* at 403.) He also sought "such further and additional relief as may be just." (*Id.* at 404.)

The court granted Fell a new trial based solely on the basis of juror misconduct, without reaching Fell's prosecutorial-misconduct or other claims. (Doc. 514 at 93.) In its July 24, 2014 Opinion and Order granting a new trial, the court noted that "there are remaining claims in Fell's amended motion," and ordered the parties to confer and supply briefing "on or before September 30, 2014" regarding "their respective positions as to how this matter should proceed." (*Id.*) The Government appealed to the Second Circuit on September 22, 2014—before the parties filed additional briefing on the topic of the remaining § 2255 claims. (*See* Doc. 515.) Nor was there additional briefing on that issue after the Second Circuit granted the Government's motion to withdraw its appeal. (*See* Doc. 517.)

In its Motion to Complete the § 2255 Litigation and its Motion to Compel, the defense now seeks to return to the issue of alleged prosecutorial misconduct in Fell's 2005 trial. Fell contends that the alleged prosecutorial misconduct could entitle him to relief beyond the retrial he has already obtained. (*See* Doc. 550 at 1, asserting that relief could "potentially include dismissal of the charges and/or dismissal of the death notice".) The specific claims of prosecutorial misconduct include the following:

1.   In its closing argument in the penalty phase, the prosecutor greatly exaggerated the nature and result of the alleged assault by Fell on a young man named Eike. The prosecution argued that Fell assaulted Eike intentionally, violently, and with utter depravity and kicked him until Eike fell into a coma. Judge Sessions, who presided over the first trial, has already determined that these statements were untrue. (Doc. 367 at 87.) The prosecution exaggerated the seriousness of the assault and failed to acknowledge that it may have been provoked. At most Eike was unconscious for less than an hour. (*See id.*)

2.   Certain records relating to Fell's codefendant Robert Lee were not disclosed in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

3.   Similarly, the Government failed to disclose some records related to Dr. Welner's review of the case, some social service agency records related to Fell, and some FBI materials—all of which should have been produced to the defense.

4.   The Wetzel/Welner controversy previously described in this court's Opinion and Order dated June 23, 2015. (*See* Doc. 576 at 3-4.)

The defense seeks to conduct discovery on these claims in an effort to prove the type of intentional prosecutorial misconduct which would bar a retrial. In seeking legal authority for what amounts to a dismissal of the case or the death penalty notice, the defense relies upon decisions which recognize the flexible and equitable nature of the § 2255 remedy.

## Analysis

In the event of "such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). In this case, the court has already granted the defendant a new trial. The two primary questions before the court are whether there is legal authority for granting the defendant additional relief such as an order barring a retrial and, if so, whether these claims meet the standard for such relief, or are otherwise sufficient to warrant discovery. First, however, there are a number of preliminary issues.

A.   **Applicability of § 2255, Default, and Law of the Case**

The Government raises preliminary issues regarding the applicability of § 2255. According to the Government, § 2255 only provides a remedy for a prisoner "in custody under sentence," and since Fell's conviction and sentence were vacated in the course of granting him relief for juror misconduct, he cannot satisfy that precondition. (*See* Doc. 562 at 6-8.) The court rejects that argument because, as Fell points out (Doc. 574 at 8), "custody" is evaluated at the time the application for habeas corpus is *filed*. *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994) (quoting *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)). Here, Fell was plainly in custody under sentence when he filed his application for habeas corpus.

The Government also argues that Fell has failed to comply with § 2255(h)'s requirement that a "second or successive" § 2255 motion be certified by the Court of Appeals. (Doc. 562 at 8.) The court rejects that argument because Fell is seeking the *completion* of § 2255 litigation; he is not leveling a second or successive attack on his conviction. As the Second Circuit has explained, "a § 2255 petition will not be considered second or successive unless a prior § 2255 petition was adjudicated *on the merits*." *Villanueva v. United States*, 346 F.3d 55, 60 (2d Cir.

2003). Here, there is no "prior" § 2255 petition—Fell is seeking to continue litigating issues that were raised but not decided in his original habeas petition (as amended in April 2014) (Doc. 512), on the theory that he is entitled to more relief than he obtained when he prevailed on the juror-misconduct issue. The additional issues on which he seeks additional relief were not previously adjudicated on the merits.

The Government also argues that the doctrines of procedural default and abuse of the writ should apply. (Doc. 562 at 9-10.) Those two doctrines are related: "Failure to adequately present an argument in the initial proceedings (including direct appeal) is classified as procedural default, . . . while failure to present an argument on an earlier collateral attack is characterized as 'abuse of the writ.'" *Bloomer v. United States*, 162 F.3d 187, 191 (2d Cir. 1998). For the same reasons that § 2255(h) does not apply, the procedural default and abuse-of-the-writ doctrines do not apply either: there is no "earlier" petition or "initial" proceeding at which Fell failed to present the arguments he now seeks to continue litigating.

The claims of prosecutorial misconduct appear for the first time in the § 2255 Motion and resulted from an extensive investigation by § 2255 counsel following the death penalty verdict. In the amended § 2255 Motion (Doc. 512), Fell and his counsel presented mixed claims of prosecutorial misconduct and ineffective assistance of trial counsel. These included alleged *Brady* violations, the exaggeration of the Eike incident in closing argument, and the Wetzel/Welner dispute. In each case, the petition alleged that Fell's rights were violated through a combination of misconduct by the prosecution and his attorneys' failure to conduct an adequate investigation.

The Wetzel/Welner issue was raised on direct appeal, but in a relatively narrow context. The panel recognized that Fell had waived any defense based on mental illness when he entered into a stipulation that neither side would present such evidence to the jury. *See United States v. Fell*, 531 F.3d 197, 226-27 (2d Cir. 2008). On direct appeal, the claim was that the trial judge had erred in failing to issue a ruling about the Wetzel/Welner dispute *before* Fell had to make a decision about whether to put on mental health testimony. On this limited question, the panel ruled that the trial judge acted sensibly in deferring any ruling on the admissibility of Dr. Welner's testimony until the court heard Fell's evidence on mental health. *Id.* at 227.

The issue which Fell raised in the § 2255 Motion—that the Government's conduct in combination with his own lawyers' failure to pursue the Welner-Wetzel issue at trial provides a basis for habeas relief—was not placed before the appellate panel due to what the decision described as "the compelling case for waiver." *Id.* It was only in the context of the habeas petition and the claim of ineffective assistance of counsel that Fell's attorneys have been in a position to address the Wetzel/Welner issue directly. Since the claim is presented in the habeas case in a more complete light and without the limits imposed by the waiver argument on direct appeal, the court is satisfied that this aspect of Fell's claim is not barred by the doctrine of procedural default.

The *Brady* issues and the Eike issue were not raised in the direct appeal. If the only claims made in the 2255 filing were ones of prosecutorial misconduct, the Government's position that these claims could and should have been raised on appeal would be strong. But the related claim of ineffective assistance of counsel which were associated with each claim of prosecutorial misconduct is sufficient to permit Fell to avoid the operation of the procedural default rule. Since he claims both that the prosecutor acted improperly and that his defense team failed to investigate and develop these issues before the trial court, he is permitted to raise them for the first time in the context of the habeas case. *See Harrington v. United States*, 689 F.3d 124, 130 (2d Cir. 2012) (ineffective-assistance-of-counsel claims are not subject to procedural default objections).

To the extent that the Government contends that Fell failed to argue for the *relief* he now seeks, the court concludes that Fell's request for "such further and additional relief as may be just," (Doc. 512 at 404), encompasses potential dismissal of the charges or the death notice. Finally, the Government argues that Fell has defaulted on the claims he is now pursuing because he failed to respond to the court's July 24, 2014 Order that the parties confer and brief the court about how to proceed with the remaining § 2255 claims. The court concludes that default is not appropriate, especially where the case went to the Second Circuit on appeal before the deadline for filing briefs passed, and where it appears that the Government also filed no supplemental briefing.

Fell raises his own preliminary issue: he contends that the court's July 24, 2014 Order is the law of the case and that it requires continued litigation of the remaining § 2255 issues. (*See*

Doc. 550 at 6-7.) "The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). The law-of-the-case doctrine does not require continued litigation of the remaining § 2255 issues because nothing in the court's July 24, 2014 Order constituted a ruling on whether those issues needed to be litigated. The court merely noted that there were remaining claims in Fell's § 2255 petition and sought briefing from the parties as to how the case should proceed. The court considers the parties' filings on the pending Motions to constitute that previously requested briefing, and turns now to the question of how the unresolved prosecutorial-misconduct claim affects this case.

## B.  Legal Authority for Relief Beyond a New Trial

In cases of trial error, a defendant whose conviction is reversed on direct appeal or obtains collateral relief vacating the judgment is subject to retrial. The Double Jeopardy Clause does not bar a second trial in cases of trial error. *Burks v. United States*, 437 U.S. 1, 14-16 (1978). But there are exceptions. One exception is that the Double Jeopardy Clause precludes a second trial if a reviewing court "has found the evidence legally insufficient." *Id.* at 18. That exception does not apply in this case. A second exception is that, under certain conditions, reversals or relief based upon prosecutorial misconduct can result in a bar to retrial.

*Oregon v. Kennedy*, 456 U.S. 667 (1982), set the standard for vacating a judgment of conviction and barring a retrial in the context of a defendant's motion for mistrial on grounds of prosecutorial misconduct. Misconduct alone does not bar a retrial under the Double Jeopardy Clause. *See id.* at 675-76 ("Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause."). Instead, the Supreme Court limited cases in which retrial was unavailable to "those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Id.* at 679; *see also United States v. Huang*, 960 F.2d 1128, 1133 (2d Cir. 1992) ("'Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial' is the

defendant who has moved for a mistrial protected from retrial by the Double Jeopardy Clause." (quoting *Kennedy*, 456 U.S. at 676)).

Fell recognizes that his case differs from *Kennedy* in some respects. He points out that his case ended in a conviction, not a mistrial, and that the Second Circuit has expressed "some doubt" as to whether the holding in *Kennedy* "extend[s] beyond the context of a trial that ends with the granting of a defendant's motion for a mistrial." *United States v. Wallach*, 979 F.2d 912, 915 (2d Cir. 1992). But Fell insists that "there are circumstances in the absence of a mistrial where the Double Jeopardy Clause provides [a] bar to retrial in the event of prosecutorial misconduct." (Doc. 550 at 13.) Thus Fell relies upon the pronouncement in *Wallach* that:

> If any extension of *Kennedy* beyond the mistrial context is warranted, it would be a bar to retrial only where the misconduct of the prosecutor is undertaken, not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct.

979 F.2d at 916.

As Fell recognizes, courts applying that extension of *Kennedy* have in several cases declined to bar retrial. *See United States v. Pavloyianis*, 996 F.2d 1467, 1474 (2d Cir. 1993) (prosecutorial misconduct did not bar retrial where it was unclear that there was deliberate misconduct during the trial in question, and where there was "no evidence that this misconduct was perpetrated with the specific objective of avoiding an acquittal that the prosecutor viewed as likely"); *Wallach*, 979 F.2d at 916-17 (retrial not barred where it was unrealistic to think that the prosecution apprehended an acquittal due to the strong evidence against the defendant, and where the misconduct was not the sort of deliberate misconduct that might invoke a double jeopardy bar); *United States v. Gambino*, 838 F. Supp. 744, 746 (S.D.N.Y. 1993) (retrial not barred because there was "no support for the defendants' allegations that the prosecutor believed acquittal was probable"). But Fell maintains that his case is different because: (1) his is a capital case; (2) "there are repeated instances of intentional misconduct alleged and the court has already found that the government knew or should have known that it presented evidence that was false or misleading"; and (3) "there is reason to believe, due to the passage of time, that witnesses will have become unavailable and evidence will have disappeared." (Doc. 550 at 12-13.) The court addresses those assertions below.

7

In addition to his reliance on the Double Jeopardy Clause as interpreted by *Kennedy* and *Wallach*, Fell asserts that the Due Process Clause of the Fifth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment also bar retrial in certain cases of prosecutorial misconduct. (Docs. 550 at 8; 574 at 5.)  However, since the Double Jeopardy Clause (so interpreted) appears to be an explicit textual source of protection against prosecutorial misconduct, the court focuses its analysis on the *Kennedy/Wallach* standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (applying the Fourth Amendment instead of employing a substantive due process approach because the Fourth Amendment in that case provided an "explicit textual source of constitutional protection").  In any case, Fell does not articulate how the analysis might be different under the Fifth or Eighth Amendments.

## C.   Application of the *Kennedy/Wallach* Standard

Here, the alleged misconduct occurred during the penalty phase, by which time acquittal was necessarily no longer on the table. Fell insists, however, that the "logical synthesis" of the *Wallach* line of cases is that "where prosecutorial misconduct was deliberate and committed in the sentencing phase of a capital case with the anticipation that a sentence of less than death was likely, Double Jeopardy bars a second capital sentencing." (Doc. 574 at 5.)  That position is difficult to square with the *Wallach* court's explicit pronouncement that any extension of *Kennedy* would be limited to prosecutorial misconduct designed to prevent an *acquittal* that the prosecutor believed was likely.  For purposes of a decision here, the court accepts the defense's position that prosecutorial misconduct can in theory bar a retrial whether it occurs in the guilt or in the penalty phase.  The court also assumes, without deciding, that *Teague v. Lane*, 489 U.S. 288 (1989), does not apply to bar the relief that Fell seeks. Turning to the particular claims in this case, however, the court concludes that Fell's claims are insufficient to bar retrial or the death notice.

First, the court considers the argument that a different rule applies in a death penalty case. Just because this is a capital case, it does not follow that prosecutorial misconduct must *necessarily* result in barring retrial. As Judge Sack observed in this case—"Members of the Supreme Court have commented with some frequency that 'death is different.'" *United States v. Fell*, 571 F.3d 264, 295 (2d Cir. 2009) (Sack, J., dissenting from denial of rehearing *en banc*). The court is mindful of that perspective but concludes that the rules and principles which govern

8

non-capital cases continue to apply in many respects to capital cases. *See United States v. Frank*, 11 F. Supp. 2d 314, 319 (S.D.N.Y. 1998) (concluding that Supreme Court's "death is different" jurisprudence was no reason to disregard basic and integral tenets of the criminal justice system).

Fell asserts that the Government's alleged misconduct is particularly egregious because it has effectively delayed trial and prejudiced Fell insofar as potentially favorable witnesses may have become unavailable or evidence might have disappeared. (*See* Doc. 550 at 13.) Fell offers no authority, however, for the proposition that the *Kennedy/Wallach* standard depends on whether less evidence might be available at a retrial.

Fell argues that the Government engaged in misconduct repeatedly, and that the court has already found that the Government knew or should have known that it presented evidence that was false or misleading. The court concludes, however, that none of the misconduct Fell has identified—individually or in the aggregate—was deliberately committed to provoke a mistrial and avoid an anticipated sentence of less than death. The material "objective facts" are ascertainable on the record, and do not support a contrary conclusion. *Pavloyianis*, 996 F.2d at 1475.

The *Kennedy* case created an exception to the general rule of retrial for a particular type of misconduct – what it described as "goading" behavior intentionally designed to interfere with the trial process. This is misconduct occurring in the presence of the jury and the judge which results in a breakdown or miscarriage of the trial itself. *Kennedy* does not purport to create a broad exception to the rule that mistrials and attorney misconduct at other stages of the litigation may support a dismissal with prejudice. *Kennedy* and the decisions which follow it are limited to misconduct which occurs in the courtroom. In addition, the misconduct must be undertaken "to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." *Wallach*, 979 F.2d at 916.

In this case only the prosecutor's statements about the Eike incident occurred at trial. The alleged *Brady* violations necessarily occurred prior to trial as did the conduct giving rise to the Wetzel/Welner dispute. Even accepting Fell's interpretation of these events, the withholding of *Brady* material and the violation of Judge Sessions's order concerning the scope of mental health exams cannot be seen as conduct at trial which "goaded" the defense into moving for a

mistrial. Nor can these actions be seen as motivated by a belief that an acquittal or a decision favorable to the defendant in the penalty phase was otherwise inevitable. The thrust of the habeas petition is that the defense team did not do enough in response to these instances of misconduct—not that they were goaded into seeking a mistrial. For purposes of argument, the court is prepared to accept Fell's position that these violations were severe enough to support a retrial. But they do not fall within the limited exception for misconduct in the trial setting sufficient under *Kennedy* to trigger the operation of double jeopardy and to bar a second trial.

The remaining issue is the Eike matter. Accepting Fell's version as true, the court faces a situation in which the prosecutor intentionally exaggerated the severity of the injuries sustained by Eike and omitted information which would suggest that there was justification for the violence against Eike. This is the type of misconduct which could support a decision vacating the conviction and setting the matter for a new trial. But there is no indication that the prosecution exaggerated the Eike conduct in order to force the defense into a motion for a mistrial.

The record contains no indication that the government anticipated a sentence of less than death. It is true that, at the penalty phase, Fell presented "extensive mitigation evidence." *Fell*, 531 F.3d at 231. But, as the Second Circuit also noted, the government's case in the penalty phase was strong. *See id.* at 230 (eliciting evidence of Fell's satanic beliefs and tattoos was not prejudicial error in light of "[t]he strength of the government's case"). The undersigned's review of the record reveals the same. Nothing in the record remotely suggests that the prosecution anticipated at any time that the penalty case was listing irretrievably toward a non-capital sentence.

The court is satisfied that the claims made by the defense of prosecutorial misconduct when accepted as true for purposes of the Motions are not the types of claims which could ever bar a retrial of this case. Under such circumstances, the defendant has already received the greatest possible relief available to him through the § 2255 process, which is the order vacating his conviction and setting the matter for re-trial.

**D.      The "Wetzel/Welner Issue"**

The court previously summarized the "Wezel/Welner issue" in its July 23, 2015 Decision and Order (Doc. 576), familiarity with which is presumed.[1] For the reasons discussed above, the court concludes that the Welner issue is not a basis for barring retrial or the death notice. However, as the court previously observed, Fell also asserts that the violation of the court's April 7, 2005 Order (Doc. 101) operates to bar the use of the results of Dr. Welner's investigation. (Doc. 548 at 2.) For its part, the Government maintains that "a more appropriate remedy would be a motion in limine and a hearing should Fell file notice under F.R.C.P. 12.2." (Doc. 555 at 7.)

Here, assuming that Fell does file a Rule 12.2 notice, the court concludes that barring the use of the results of Dr. Welner's investigation is not the proper remedy. The court's April 7, 2005 Order was a housekeeping order intended to limit the length of time and trouble taken up by the re-examination of the defendant. The court cannot conclude that violation of that Order should result in permanent excision of Dr. Welner's report. This ruling is consistent with Judge Sessions's prior Order dated December 19, 2013 in which he ruled that the Government retained the right to choose its own experts in the § 2255 proceedings, including Dr. Welner. (*See* Doc. 458 at 9.)

The court has already indicated that, if Fell does file a Rule 12.2 notice, the court will hold a hearing and issue a ruling providing for the release of "appropriate" reports and records. (Doc. 576 at 8.) If any remedy short of barring use of the results of Dr. Welner's investigation is appropriate, the court will accordingly take up that issue in connection with that hearing.

By leaving Dr. Welner in the mix of potential experts, the court does not indicate that the apparent violation of Judge Sessions's April 7, 2005 Order will be without consequences. It is an issue which may be relevant to credibility on cross-examination. It is also an issue which may affect any arrangements for re-examination of the defendant by the Government. In fairness to Dr. Welner, however, these are issues on which neither he nor the Government has been heard, and any sanction or other relief imposed in the context of this re-trial cannot be ordered without

---

[1] The Second Circuit also recounted the "complicated" series of events giving rise to the Welner issue in its 2008 decision in this case. *See Fell*, 531 F.3d at 225-26.

such an opportunity and in the context of a motion filed after his potential disclosure as an expert witness.

## **Conclusion**

Fell's Motion to Complete § 2255 Litigation (Doc. 550) and Motion to Compel § 2255 Discovery (Doc. 551) are DENIED.

Dated at Rutland, in the District of Vermont, this 17th day of July, 2015.

Geoffrey W. Crawford, Judge
United States District Court