UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:01-CR-00012 |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD FELL | ) | Dept: Hon. Geoffrey W. Crawford |
| | ) | District Court Judge |
| Defendant. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DONALD FELL'S FIRST MOTION FOR BILL OF PARTICULARS
<u>AND FOR FIFTH, SIXTH, AND EIGHTH AMENDMENT NOTICE</u>**

# **TABLE OF CONTENTS**

A.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.  THE SPECIFIC REQUESTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   1.  Specify, for all of the allegations contained in the Superseding
       Indictment, and consistent with the government's evidence and
       arguments at the first trial, the exact actions and roles taken by Donald
       Fell and Robert Lee in the charged offenses and Special Findings.. . . . . . . 6

   2.  Specify, consistent with the government's evidence and arguments at
       the first trial, that the "intent to cause death and serious bodily harm"
       alleged in Count One was formed at least some four hours after the initial
       taking of the vehicle.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

   3.  Specify, consistent with the Superseding Indictment, but inconsistent
       with the government's evidence and arguments at the first trial, that the
       phrase "the death of Teresca King resulted from such taking of the
       automobile" alleged in Count 1 does not include death resulting from
       other actions or conduct.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

   4.  Specify, consistent with the Superseding Indictment, but inconsistent
       with the government's evidence and arguments at the first trial, that
       the phrase "Donald Fell unlawfully seized, kidnapped, abducted and
       carried away Teresca King and held her for ransom, reward and
       otherwise, and willfully transported her..., resulting in the death of
       Teresca King" alleged in Count 2 does not include death resulting from
       actions or conduct other than the kidnaping.. . . . . . . . . . . . . . . . . . . . . . 22

   5.  Specify, consistent with the government's evidence and arguments at
       the first trial, that the phrase "ransom, reward, and otherwise" alleged in
       Count 2 only means "for the purpose of assisting escape." . . . . . . . . . . . . 24

   6.  Specify, consistent with the government's evidence and arguments at
       the first trial, that the allegation that Mr. Fell "possessed and brandished
       a firearm" alleged in Count 3 only means "possessed", and not
       "brandished.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

7.    Specify, consistent with the government's evidence and arguments at the first trial, that the allegation that Mr. Fell "transported" a firearm in Count 4 means that he transported it or caused it to be transported interstate, and not merely that he "possessed" the firearm... . . . . . . . . . . . 27

8.    Specify that the allegation that Mr. Fell "intentionally killed Teresca King" as alleged in  paragraph 16(a) of the Notice of Special Findings, means that Mr. Fell must have actually killed Teresca King and done so with a specific intent to kill, and not merely that he performed some "deliberate" action which caused the death *of Mrs King*. . . . . . . . . . . . . . 28

9.    Specify the "serious bodily injury" that Mr. Fell intentionally inflicted that "resulted in the death" of Teresca King as alleged in  paragraph 16(c) of the Notice of Special Findings.. . . . . . . . . . . . . . . . . . . . . . . . . . 30

10.   Specify the "one or more acts" that Mr. Fell intentionally participated in that were the "direct result" of the death of Teresca King as alleged in paragraph 16(d) of the Notice of Special Findings.. . . . . . . . . . . . . . . . 31

11.   Specify the "one or more acts of violence" that Mr. Fell intentionally engaged in that were the "direct result" of the death of Teresca King as alleged in  paragraph 16(e) of the Notice of Special Findings.. . . . . . . . 32

12.   Specify that the allegation that Mr. Fell "caused the death of Teresca King during the commission of a violation of 18 U.S.C. § 1201 (kidnapping)" as alleged in  paragraph 16(f) of the Notice of Special Findings, means that Mr. Fell must have actually caused the death during the commission of the crime of kidnapping, and not merely that the death resulted during the kidnapping.. . . . . . . . . . . . . . . . . . . . . . . . 33

13.   Specify the particular conduct of Mr. Fell (as opposed to Mr. Lee) that supports the allegation that Mr. Fell "committed the offense in an especially heinous, cruel, or depraved manner in that it involved serious physical abuse of Teresca King" as alleged in  paragraph 16(g) of the Notice of Special Findings.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

14.   Identify the "more than one person" that Mr. Fell (as opposed to Mr. Lee) intentionally killed or attempted to kill in a single criminal episode, as alleged in  paragraph 16(h) of the Notice of Special Findings.. . . . . . . 38

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*United States v. Feliciano*
   998 F.Supp. 166 (D.Conn., 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Enmund v. Florida*
   458 U.S. 782 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 36

*Holloway v. United States*
   526 U.S. 1 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lockett v. Ohio*
   438 U.S. 586 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 34, 36

*Russell v. United States*
   369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). . . . . . . . . . . . . . . . . . . . . 5, 21

*Sheppard v. Rees*
   909 F.2d 1234 (9th Cir., 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tison v. Arizona*
   481 U.S. 137 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Agnello*
   367 F. Supp. 444 (E.D.N.Y. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12, 32

*United States v. Allen*
   247 F. 3d 741 (8th Cir., 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Basciano*
   763 F.Supp.2d 303 (E.D.N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Beckford*
   962 F. Supp. 804 (E.D.Va., 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16

*United States v. Bin Laden*
   126 F.Supp.2d 290 (S.D.N.Y. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Bin Laden*
    156 F.Supp.2d 359 (S.D.N.Y., 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Bin Laden*
    92 F.Supp.2d 225 (S.D.N.Y., 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Bortnovsky*
    820 F.2d 572 (2nd Cir., 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

*United States v. Childress*
    26 F.3d 498 (7th Cir., 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Ebron*
    683 F. 3d 105 (5th Cir., 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Edelin*
    134 F. Supp. 2d 45 (D.D.C., 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Feola*
    651 F. Supp. 1068 (S.D.N.Y. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*United States v. GAF Corp.*
    928 F.2d 1253 (2nd Cir., 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17

*United States v. Hall*
    152 F. 3d 381 (5th Cir., 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Hall*
    2014 WL 1356698, at *12 (W.D. Mo. Feb. 11, 2014). . . . . . . . . . . . . . . . . . . . 34

*United States v. Harris*
    420 F.3d 467 (5th Cir., 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Healy*
    376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964). . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Johnson*
    377 F.Supp.2d 689 (N.D.Iowa 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Kaczynski*
    1997 WL 34626785, at *20 (E.D.Cal. Nov. 7, 1997) . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Karake*
    281 F. Supp. 2d 302 (D.D.C. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Karake*
    370 F.Supp.2d 275 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

*United States v. Lecco*
    2007 WL 486614 (S.D.W.Va. Feb. 9, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Llera Plaza*
    179 F. Supp. 2d 464 (E.D. Pa., 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Lujan*
    530 F. Supp. 2d 1224 (D.N.M. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Mannino*
    480 F.Supp. 1182 (S.D.N.Y. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*United States v. Moussaoui*
    282 F. Supp. 2d 480 (E.D.Va., 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Mucciante*
    21 F.3d 1228 (2d Cir., 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Ortiz*
    315 F.3d 873 (8th Cir., 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Salerno*
    937 F.2d 797 (2nd Cir., 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Stitt*
    760 F.Supp.2d 570 (E.D. Va, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Torres*
    901 F.2d 205 (2nd Cir., 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Umana*
    2010 WL 1740487, at *4 (W.D.N.C. Apr. 28, 2010). . . . . . . . . . . . . . . . . . . 16

*United States v. Walker*
    910 F. Supp. 837  (N.D.N.Y. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Wilson*
        493 F.Supp.2d 364  (E.D.NY, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Woodson v. North Carolina*
        428 U.S. 280 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## United States Constitution

Eighth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 25, 34

Sixth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 21, 23, 25, 34

## Rules

Federal Rule of Criminal Procedure 7(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 6

## Statutes

18 United States Code § 3592(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 United States Code § 3592(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-16

18 United States Code § 3592(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

18 United States Code § 3592(c)(16) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39

18 United States Code § 3592(c)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

21 United States Code § 848(j). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

21 United States Code § 848(m)(8). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DONALD FELL'S FIRST MOTION FOR BILL OF PARTICULARS
AND FOR FIFTH, SIXTH, AND EIGHTH AMENDMENT NOTICE**

## A.    INTRODUCTION

As permitted by Federal Rule of Criminal Procedure 7(f), Mr. Fell is moving for

an order granting a bill of particulars.  Especially because this case carries with it the

potential for imposition of the death penalty, Donald Fell needs "...to identify with

sufficient particularity the nature of the charge pending against him, thereby enabling

[him] to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy

should he be prosecuted a second time for the same offense." *United States v.

Bortnovsky*, 820 F.2d 572, 574 (2nd Cir., 1987). See also, *United States v. Torres*, 901

F.2d 205, 234 (2nd Cir., 1990)("The function of a bill of particulars is to provide [the]

defendant with information about the details of the charge against him if this is necessary

to the preparation of his defense, and to avoid prejudicial surprise at the trial.")

A good summary of Rule 7(f) principles is provided in *United States v. Agnello*,

367 F. Supp. 444, 450 (E.D.N.Y. 1973):

> Certainly the fact that an indictment or information conforms to the
> simple form suggested in the rules is no answer or defense to a motion for a
> bill of particulars under Rule 7(f). Rule 7(f) necessarily presupposes an
> indictment or information good against a motion to quash or a demurrer. Its
> proper office "is to furnish the defendant *further* information respecting the
> charge stated in the indictment when necessary to the preparation of his
> defense, and to avoid prejudicial surprise at the trial", and when necessary
> for those purposes, is to be granted even though it requires "the furnishing
> of information which in other circumstances would not be required because
> evidentiary in nature", and the accused is entitled to this "as of right."
> *United States v. U. S. Gypsum*, D.C., 37 F.Supp. 398, 402. To the same
> effect are *Singer v. United States*, 3d Cir., 58 F.2d 74, *United States v.*

1

*Allied Chemical & Dye Corp*., D.C., 42 F.Supp. 425, 428; *Fontana v. United States*, 8 Cir., 262 F. 283. It seems quite clear that "where charges of an indictment are so general that they do not sufficiently advise defendant of the specific acts with which he is charged, a bill of particulars should be ordered." Cases cited and *United States v. Grossman*, 2 Cir., 55 F.2d 408; *Chew v. United States*, 8 Cir., 9 F.2d 348, 353. [1]

---

[1] It has been ruled in the Second Circuit that "[b]ecause a bill of particulars confines the Government's proof to particulars furnished, requests for a bill of particulars should not be granted where the consequence would be to restrict unduly the Government's ability to present its case." *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987) aff'd, 875 F.2d 857 (2nd Cir., 1989). But the government is always free to seek leave to amend a bill of particulars if circumstances change, although, if it does so, the original bill of particulars is admissible against it as a party admission. *United States v. GAF Corp*., 928 F.2d 1253, 1260 (2nd Cir., 1991). As explained by the Second Circuit :

> The jury [are] at least entitled to know that the government at one time believed, and stated, that its proof established something different from what it currently claims. Confidence in the justice system cannot be affirmed if the government is free, wholly without explanation, to make a fundamental change in its version of the facts between trials, and then conceal this change from the final trier of the facts.

*Id.* See also, *United States v. Salerno*, 937 F.2d 797, 811–812 (2nd Cir., 1991), rev'd on other grounds, 505 U.S. 317, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992)(judge abused discretion in excluding statements in Federal prosecutor's opening statement and closing argument at earlier trial that characterized defendant as victim of extortion rather than participant in fraudulent bid-rigging, concluding, "The government, at different times, has urged both [that the defendant was a "culpable bid-rigger" and a "puppet on a string"]—and the jury [were] entitled to know that, because the jury, and not the government, must ultimately decide which he was.")

In federal capital cases, it has been held that prosecutors are precluded, or estopped, from asserting inconsistent positions. See, *United States v. Basciano*, 763 F.Supp.2d 303, 344 (E.D.N.Y. 2011); *United States v. Stitt*, 760 F.Supp.2d 570, 582 (E.D. Va, 2010); *United States v. Johnson*, 377 F.Supp.2d 689, 694 (N.D.Iowa 2005). Whether the prosecutors in this case are in fact asserting inconsistent positions must await resolution of the present motion as well as the submission of any amended notice of intent to seek the death penalty that the government may seek permission to file.

Generally, "if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky*, 820 F.2d at 574. See also, *United States v. Feola*, 651 F. Supp. 1068, 1133 (S.D.N.Y. 1987) ("In deciding whether the bill of particulars is needed, the court must determine whether the information sought has been provided elsewhere, such as in other items provided by discovery, responses made to unobjected requests for particulars, prior proceedings, and the indictment itself."). The Second Circuit has cautioned, however, that the prosecution does not fulfill its obligations "merely by providing mountains of documents to defense counsel who were left unguided" as to the nature of the charges pending. *Id.,* at 575.  See also *United States v. Bin Laden*, 92 F.Supp.2d 225, 234 (S.D.N.Y.2000) ("It is no solution to rely solely on the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars.) (death penalty case); *United States v. Kaczynski*, 1997 WL 34626785, at *20 (E.D.Cal. Nov. 7, 1997) (although government had provided discovery regarding prior acts of violence, court also required the government to provide specification regarding the acts that it intended to rely on during the penalty phase so that the defendant would not "be forced to defend against these allegations for the first time ... at sentencing. This raises the specter of unfair surprise and potentially prejudices Defendant's ability to defend against the government's efforts to impose the death penalty.")

Rule 7(f) does not explicitly provide for a bills of particulars as to the sentencing phase of a capital trial. However, courts in the Second Circuit and elsewhere "have found

authority under Fed.R.Crim.P. 7(f) to order bills of particulars in connection with aggravating factors the Government intends to prove at the sentencing phase of a capital prosecution for the same reason that bills are authorized with respect to charges in an indictment, i.e. to ensure that a criminal defendant is able to adequately prepare his defense." *United States v. Wilson*, 493 F.Supp.2d 364, 375  (E.D.NY, 2006)(directing the government pursuant to Rule 7(f)  to provide specifics on the nature, extent, and scope of the harm suffered by the victims' family members whom the Government alleges to have suffered severe and irreparable harm.). See e.g., *United States v. Bin Laden*, 126 F.Supp.2d 290, 304–305 (S.D.N.Y.2001) (ordering bill of particulars pursuant to Rule 7(f) specifying the particularized categories of "injury, harm, and loss" that will be proffered through victim impact evidence at sentencing); *United States v. Walker*, 910 F. Supp. 837, 855-56  (N.D.N.Y. 1995)(ordering bill or particulars pursuant to Rule 7(f) as to non-statutory aggravating circumstances).

Further, due process, the several rights guaranteed by the Sixth Amendment, and the need for "heightened reliability" in capital sentencing, see, e.g., *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)(plurality opinion), and simple concern for fundamental fairness demand that the Government provide a capital defendant with sufficient detail as to the basis for its case in support of the death penalty that the defendant is able to prepare his defense. See, *United States v. Wilson*, 493 F.Supp.2d, at 375 ("In the absence of authority pursuant to Rule 7(f), courts have nonetheless ordered bills supplementing noticed aggravating factors on

4

Constitutional grounds. These courts have found that the Constitution—either in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment—guarantees criminal defendants a meaningful opportunity to present a complete defense and that this guarantee grants authority to order bills of particulars in connection with aggravating factors in the sentencing phase of a death penalty case.")(collecting cases) [2]; *United States v. Karake*, 370 F.Supp.2d 275, 279–80 (D.D.C.2005) ("it has been uniformly recognized that if the death penalty [notice] provides insufficient notice to the defendant, the Court retains inherent authority to require the government to provide more specifics in order to give the defendant the opportunity to prepare for the penalty phase")(stressing the Eighth Amendment requirement of "heightened reliability"); *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 472 (E.D. Pa., 2001)("[T]he Constitution requires that the defendants be given some notice of the type of evidence the government intends to introduce at the sentencing phase.").

---

[2] Not mentioned in *Wilson*, but equally important to the present motion,  is the fact that the Sixth Amendment also guarantees a criminal defendant the fundamental right "to be informed of the nature and cause of the accusations" against the accused so that he may have a meaningful opportunity to prepare an adequate defense against every issue raised by the accusations. See *Sheppard v. Rees*, 909 F.2d 1234, 1237-38 (9th Cir., 1990) ("A trial cannot be fair unless the nature of the charges against a defendant are adequately made known to him or her in a timely fashion").  Notice must be sufficiently detailed to enable a defendant to address all the relevant issues in his defense. *Russell v. United States*, 369 U.S. 749, 766–68, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) (Sixth Amendment violated where an indictment left the "chief issue undefined," thereby allowing "the prosecution free to roam at large" and present the defendant "with a different theory, or ... no theory at all" at every stage of the criminal proceedings).

Finally, this Court's scheduling order has imposed obligations on the defense to disclose its mental health evidence if it intends to rely on it at trial. It was held in *United States v. Edelin*, 134 F. Supp. 2d 45, 54-55 (D.D.C., 2001) that

> In order to insure that discovery related to the sentencing phase of the trial is not unbalanced, the Court finds that the Government shall provide a proffer of the evidence it intends to offer on the aggravating factors it will seek to prove at sentencing. The proffer shall be provided to the defendant when the jury begins deliberations regarding the guilt or innocence of the defendants.   The information included in the Government's proffer will allow the defense to carefully weight the desirability of presenting mental health information during sentencing.

Thus, whether by way of Rule 7(f), the Constitution, the *Edelin* analysis, or this Court's inherent authority, for reasons now to be discussed this Court can and should order the bill of particulars that Mr. Fell seeks.

**B.    THE SPECIFIC REQUESTS**

> *1.    Specify, for all of the allegations contained in the Superseding Indictment, and consistent with the government's evidence and arguments at the first trial, the exact actions and roles taken by Donald Fell and Robert Lee in the charged offenses and Special Findings.*

Each of the four Counts in the Superseding Indictment (D.E. 57) alleges a violation of 18 U.S.C. § 2, as well as substantive counts, thus ambiguously and inconsistently alleging that Mr. Fell is both an actual killer and an aider and abettor. This inconsistency is carried through in the factual allegations of the indictment in which it is alleged on the one hand in introductory allegations  that "Fell and Lee intentionally killed Mrs. King by punching and kicking her in the head and by smashing her head with rocks ", and that they both performed various other acts together, (Id. at 1-2), and on the other

that Donald Fell alone carjacked the victim and kidnapped her (Counts 1 and 2), that he alone possessed and brandished a shotgun (Count 3), that he alone transported the same firearm (Count 4), and that he alone intentionally killed the victim (Special Findings).

In its opening statement at trial, the government continued to blur the distinction between what Mr. Fell had done and what Lee had done, sometimes even asserting that both parties performed acts that only one person could have accomplished. Thus although there was only one shotgun at issue, the government initially told the jury that there were "two men armed with a 12-gauge shotgun, who were waiting, waiting for someone just like Terry King." Trial Transcript of June 20, 2005, at 18. Moments later, the government told the jury that it was "Donald Fell [who] took his 12-gauge Mossberg shotgun out into the night...." *Id.,* at 21.

The government vaguely asserted that "[e]arlier that night, these two men slit the throats of two people in a nearby apartment." (*Id.*) In that incident, the government asserted:

> Armed with knives from the kitchen, Donald Fell and Robert Lee attacked their defenseless victims, stabbing both of them dozens of times, ultimately slitting one's throat and making stabs to the neck of the other, and then leaving them to bleed to death on the living room floor.

*Id.,* at 20-21.

Later, however, the government relied upon Mr. Fell's confessions to establish what happened, telling the jury that

> [A]ccording to Fell, out of the blue, he just got up, got a knife from the kitchen, and started stabbing Charlie. At the same time Robert Lee took another knife, followed Donald Fell and attacked Donald Fell's mother.

Charlie was in the chair in the living room and he had no time to react. Donald Fell stabbed him and stabbed him. Again during the assault, Debra Fell turned and spoke to his son but he did nothing to save her. Fell admitted to the killings. But he claimed not to know why he had killed Charlie. He claimed not to know why his best friend had attacked his mother. According to Donald Fell, it just happened.

*Id.*, at 35.

The government also told the jury that "Donald Fell admitted that he did nothing to stop Robert Lee from killing his mother, even as she was stabbed to death right in front of him." *Id.*, at 39.

The government asserted that following these murders

They were looking for an unsuspecting victim just as Terry King pulled into her parking space. The men attacked her, brandishing the shotgun, and demanding her keys. She resisted, but they were too strong. They subdued her. They forced her back towards the car, and they wrestled her into the backseat. They took her keys, one of them started the car, and they drove away with Terry King now held hostage in the back.

*Id.*, at 18.

Getting more specific, the government asserted that it was "Donald Fell [who] drove all of them back to the apartment where everything had started that night." *Id.*, at 19. At the apartment,

Terry King remained in the car, and Robert Lee pointed and trained the shotgun at her while she stayed. Donald Fell walked back into the apartment, quietly got the bags, turned around, brought them back to the car....All this time, Terry King sat helpless in the back of the car, the shotgun pointed at her chest. At that point, Donald Fell got back in the car and they began to drive south, away from Rutland. He was calm. He was focused. They had nearly made their escape. Donald Fell drove them far from Rutland. As he did, Terry King sat alone in the backseat as Robert Lee continued to point the shotgun at her. Fell just kept driving south through the morning darkness, for mile after mile.

8

*Id*., at 22.

The government further asserted that "Fell and Lee kept driving Terry King south for hours. They would take turns behind the wheel. One of them would drive, the other would hold the shotgun on her." *Id.,* at 23.

The government further asserted that "[t]hey had driven for about four hours when they finally decided to do it. Terry King was still in the backseat, and she had been thinking the same thing for hours. Donald Fell was driving the car when they decided to kill her." Trial Transcript of June 20, 2005, at 23-24. "Donald Fell and Robert Lee talked about it, and they ultimately agreed they needed to get rid of her. Now after his arrest, you will learn that Donald Fell said that they had talked about letting her go, and they may have even told her that they were going to let her go, but ultimately, they decided she had to die." *Id.,* at 24-25.

According to the government, "[a]fter driving through the village of Dover, Donald Fell saw a pull-off on the other side of the road. It was just a short distance ahead. He made the decision to slow down and cross the road into this pull-off area. He was driving at the time....This was the place that Donald Fell chose to deal with Terry King." *Id.,* at 24.

The government further asserted

So they took her from the car, up the path into the old gravel pit. They went far enough into the woods so that cars from the road couldn't see them. At one point, Terry started to run, and they chased her. They caught her and there was a struggle. Donald Fell shoved her to the ground, in a thicket of brush and small trees. Donald Fell then stood over her, and

9

along with Robert Lee, they began to assault her. Donald Fell kicked her in the head. Robert Lee picked up a stone and also hit her in the head.

*Id*., at 25.

Ultimately, however, the government asserted that it was Mr. Fell alone who killed Terry King :

[T]he man who kidnapped Terry King and carjacked her to escape from a double murder, the man who ultimately took Terry King's life, is that man, Donald Fell, the defendant in this case.

*Id.*, at 19. See also *Id.*, at 38. ("He knew full well what he was doing when he committed the murders, particularly when he committed the murder of Terry King....[T]he evidence will show in this case that he then went out, kidnapped and carjacked and later viciously killed Terry King rather than turn himself in.").

After all the evidence was in, the government momentarily backed off the theory that Mr. Fell was solely responsible for the murder of Mrs. King, but then came back to its contention that he was the actual killer.  It argued in summation that:

Ladies and gentlemen, the evidence establishes without any doubt that Donald Fell, that man, carjacked Terry King, he kidnapped her, he took her to New York from Vermont, and with his friends Bobby Lee he brutally murdered her. Why did he do that? He did that because she was a witness who could connect him to the scene of his prior murder that same night in Rutland. She got between him and what he wanted. He wanted to get out of town so he wanted her car. And he wanted to get out of town without leaving, without leaving behind any witnesses. *So he killed her.*

Trial Transcript of June 24, 2005, at 41-41 (emphasis added).  See also *Id.*, at 64. ("He remembered what he ate for breakfast that morning at the Burger King after killing Terry

King."); *Id.*, at 67-68 ("And, fifth, that the defendant's acts resulted in the death of Terry King. We don't need to say any more about that.")

As in the opening, the government again used Mr. Fell's confessions to argue that he was the actual killer of Terry King and Charlie Conway, and that Lee killed Fell's mother: "He admitted to killing Charlie Conway. He admitted that Lee, with him in the same apartment, murdered his mother while he was there. He admitted car jacking and kidnapping Terry King and driving her into New York State and beating her to death." *Id*. at 51. The government also drew attention to Mr. Fell's "steel toed boots that Donald Fell was wearing, the boot that he says he kicked Terry King in the head with and used to kill her." *Id.,* at 56. The government also continued to maintain based on Mr. Fell's confessions that Lee had murdered Fell's mother, arguing that he had lied to the police "knowing full well that his mother had been murdered right in front of him." *Id.*, at 50.

In the penalty phase opening statement, the government began by asserting that the death penalty was appropriate for Mr. Fell because "the evidence has established, and will establish, that Mr. Fell murdered Terry King because she was a witness." Trial Transcript of June 28, 2005, at 32. [3] In its closing, it began its presentation with the statement that Mrs. King's life " came to an end, for no reason, without mercy, at the

---

[3] As at the guilt phase, the government in its opening at one point briefly argued that "Fell and Lee killed Terry during the commission of another crime, namely the kidnapping." *Id.,* at 34.

hands of that -- Donald Fell." Trial Transcript of July 13, 2005, at 13. Later in its closing, the government asserted: "Is there is no question in this case that Donald Fell savagely kicked Terry King to death?" *Id*., at 20. See also *Id.,* at 22 ("As Donald Fell told you, he used his feet to kill Terry King, and after stomping her to death, he and Robert Lee went to have breakfast."). *Id.*, at 120 ("[H]e killed that first person, and when he did that, he did more than kill Terry King....") .

 It has been held in a *non-capital* case that "the Government need not specify which defendants are charged as principals and which are charged as aiders and abettors, since this would reveal the Government's theory underlying those counts of the indictment." *United States v. Mannino*, 480 F.Supp. 1182, 1185 (S.D.N.Y.1979). [4] However, this rationale has on application in a retrial context where, as here, the government has already revealed its theories. Moreover, as several cases demonstrate, in a capital case it is absolutely critical to the defendant's defense against the death penalty

---

[4] But see, *United States v. Agnello*, 367 F. Supp. 444, 450 (E.D.N.Y. 1973) in which the government was ordered to provide a bill of particulars as follows:

>     A. Of all the defendants in counts one through thirteen, specify which of them are alleged as actually having committed the offense and specify which of them are alleged as having aided, abetted, counseled, commanded, induced, procured, or caused the commission of the offense.
>     B. If any of the defendants are alleged as having aided, abetted, caused, counseled, commanded, induced or procured the commission of any of the offenses:
> (I) State specifically whether he aided, abetted, caused, counseled, commanded, induced or procured the commission of the offense.
> (ii) State specifically the means by which he performed one of the latter acts.

that he be informed of the exact actions and roles allegedly performed by himself or any

co-conspirator, accomplice, or co-defendant.

For instance, In *United States v. Beckford*, 962 F. Supp. 804, 825-26 (E.D.Va.,

1997), the Court ordered the Government to provide to the defense

> ...all evidence ... relating to the commission, in furtherance of the
> [alleged] CCE or drug conspiracy, of any murder or other death-eligible
> offense by any co-conspirator or co-defendant, charged or uncharged, who
> will not be punished by death.

It did so based on its conclusion that "[t]here is, at least, 'a substantial basis for

claiming' that evidence of that ilk is 'relevant to' the (m)(8) mitigating factor within the

meaning of Section 848(j)." [5] *Id.* Indeed, the Court reached that conclusion in no small

part because "[t]he Government concedes, as well it should, that the defense advances a

'substantial basis for claiming' that Section 848(j) would permit the defendants to admit,

at the sentencing phase, mitigation evidence relating to the commission, in furtherance of

the Poison Clan CCE or drug conspiracy, of any  murder or other death-eligible offense

---

[5] 21 U.S.C. § 848(m)(8) states as a mitigating circumstance that "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death." The exact same provision is contained in 18 U.S.C. § 3592(a)(4). See also, 18 U.S.C. § 3592(a)(3)(listing as a mitigating factor that "[t]he defendant is punishable as a principal in the offense, which was committed by another, but the defendant's participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge.")

§ 848(j) provides in part: "In the sentencing hearing, information may be presented as to matters relating to any of the ... mitigating factors set forth in subsection[] (m) of this section, or any other mitigating factor ...."  It also states that: "Any other information relevant to such mitigating ... factors may be presented ...." The same provisions are contained in 18 U.S.C. §§ 3592 and 3593.

by any co-conspirator or co-defendant, charged or uncharged, against whom the Government does not seek the death penalty." *Id.,* at 825-26.

Following *Beckford* in a FDPA case, the court in *United States v. Feliciano*, 998 F.Supp. 166, 172 (D.Conn., 1998) ordered the government to produce "[a]ll evidence in the government's possession regarding the commission by any co-conspirator or co-defendant, charged or uncharged, of a death-eligible offense in furtherance of Los Solidos enterprise against whom the government has not decided to seek the death penalty." As in *Beckford*, the court reasoned that "[e]vidence that co-defendants or co-conspirators committed a death-eligible offense in furtherance of the enterprise charged in the indictment and the government has not sought the death penalty therefor is closely related to the statutory "equally culpable" mitigating factor. Defendants may be able to argue in mitigation of death that other members of Los Solidos killed in furtherance of the enterprise and are equally culpable with respect to the overall enterprise but were not charged with a capital offense." *Id.,* at 172-73.

Also following *Beckford* in a FDPA case, the court in *United States v. Bin Laden*, 156 F. Supp. 2d 359, 369 (S.D.N.Y., 2001), concluded that Congress' deliberate inclusion of the 18 U.S.C. § 3592(a)(4) factor in the legislative scheme "calls for a more broad interpretation of the range of permissible nonstatutory mitigating factors than the Government suggests. The circumstance that others who are equally culpable will not be subject to the death penalty is a comparative factor which reflects a determination by

14

Congress that it is appropriate for jurors to consider questions of proportionality and equity when they are evaluating whether a death sentence is appropriate."

Again in a FDPA case, the court in *United States v. Karake*, 281 F. Supp. 2d 302, 307 (D.D.C. 2003), pointing out that "courts uniformly interpret 'defendants' within the meaning of § 3592(a)(4) to include co-conspirators and accomplices", and that "this factor is not limited to evidence that demonstrates that others were responsible for the criminal conduct with which the defendants have been charged, nor is it dispositive that others who may be equally culpable may be dead or their whereabouts are unknown," the court concluded that "the government is obligated to disclose any information that reflects that defendants are equally or less culpable than other co-conspirators, and the assertion that the government's investigation is ongoing is, without more, insufficient to overcome the need for disclosure," and accordingly that "the Court will grant defendant Karake's request to the extent that he seeks information that indicates that others were equally or more culpable than the defendant with respect to the planning, financing, directing, organizing or executing of the attacks which are the subject of this indictment." See also, *United States v. Karake*, 370 F.Supp.2d, at 281 ("[I]f the government intends to elicit evidence unrelated to the events [charged in the indictment] in an effort to justify the imposition of the death penalty, any contradictory information, including information that suggests that a defendant was not an active or willing participant over the seven years at issue, would be favorable evidence, since it could justify a sentence of life imprisonment as opposed to death.")

15

In the FDPA case of *United States v. Umana*,  2010 WL 1740487, at *4 (W.D.N.C. Apr. 28, 2010), the court applied the reasoning of *Beckford* to the capital crime itself, ruling that "in this case, any mitigating evidence under § 3592(a)(4) relates only to co-defendants Lopez and Castillo, charged under 18 U.S.C. §§ 3 and 2 as accessories after the fact to the Greensboro murders. Although the evidence has shown that neither participated directly in the murders, their liability as accessories after the fact is sufficiently similar to that of an accomplice to allow the defendant to present mitigating evidence of their conduct under § 3592(a)(4)."

These cases all explain why in this death penalty case the defense needs a bill of particulars that will describe the exact actions and roles taken by Donald Fell and Robert Lee in the course of events that were the subject of the first trial. Unlike in *United States v. Mannino*, 480 F.Supp. 1182, 1185 (S.D.N.Y.1979), the government cannot claim that providing this information in a bill of particulars would reveal the Government's theories underlying the indictment, since those theories have already been revealed at the first trial. A bill of particulars is needed to  identify with sufficient particularity the nature of the roles played by Mr. Fell and Mr. Lee, thereby enabling him to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense. Lastly, a bill of particulars that will describe the exact actions and roles taken by Donald Fell and Robert Lee is needed so that in the event the government alters its theories at the retrial, the defense will have a document that is

admissible as a party admission. See, *United States v. GAF Corp.*, 928 F.2d 1253, 1260

(2d Cir.1991).

> 2.    *Specify, consistent with the government's evidence and arguments at the first trial, that the "intent to cause death and serious bodily harm" alleged in Count One was formed at least some four hours after the initial taking of the vehicle.*

Count 1 of the Superseding Indictment alleges that " on or about November 27,

2000, in the District of Vermont, the defendant Donald Fell, with intent to cause death

and serious bodily harm, took by force and violence and by intimidation from the person

and presence of Teresca King a 1996 Plymouth Neon automobile..."

In *Holloway v. United States*, 526 U.S. 1, 8, 12 (1999) the Supreme Court

concluded that the carjacking statute "directs the factfinder's attention to the defendant's

state of mind at the precise moment he demanded or took control over the car 'by force

and violence or by intimidation'", and that therefore "[t]he intent requirement of section

2119 is satisfied when the Government proves that at the moment the defendant

demanded or took control over the driver's automobile the defendant possessed the intent

to seriously harm or kill the driver if necessary to steal the car . . ." [6]

---

[6] In his instructions on this element, Judge Sessions told the jury:

> To establish this element, the government must prove that at the moment the defendant demanded or took control over the vehicle, the defendant possessed with (sic) the intent to seriously harm or kill the driver if necessary to steal the car or for any other reason....In some cases, intent is conditional. That is, a defendant may intend to engage in certain conduct only if a certain event occurs. In this case, the government contends that the defendant intended to cause death or serious bodily injury if the victim had refused to turn over her car. If you find beyond a reasonable doubt that the defendant had such an intent, the government has satisfied this element of the offense.

17

Because the timing of the formation of intent is so critical to a carjacking charge, this Court should require the Government to specify,  consistent with the government's evidence and arguments at the first trial, that the "intent to cause death and serious bodily harm" alleged in Count One was not formed until approximately four hours after the taking of the vehicle.

At that trial, in its opening statement the government asserted that "[t]hey had driven for about four hours when they finally decided to do it. Terry King was still in the backseat, and she had been thinking the same thing for hours. Donald Fell was driving the car when they decided to kill her." Trial Transcript of June 20, 2005, at 23-24. The government further asserted that "Donald Fell and Robert Lee talked about it, and they ultimately agreed they needed to get rid of her. Now after his arrest, you will learn that Donald Fell said that they had talked about letting her go, and they may have even told her that they were going to let her go, but ultimately, they decided she had to die." *Id.,* at 24-25.

The government also relied in its opening upon Mr. Fell's confessions to establish when the intent to kill was formed, telling the jury that "Donald Fell admitted that he and Robert Lee intended to kill Terry King when they got out of her car on that pull-off alongside Route 22 in New York, and that he agreed to kill her because she could identify them." *Id.,* at 39.

---

Jury Charge of June 24, 2005, at 23-24.

At one point, the government contended in its opening that Count 1 did not even allege that the carjacking was done with an intent to cause death or serious bodily injury, but was rather motivated by an intent to escape: "In Count 1, he is charged with carjacking Terry King's Plymouth Neon to escape from Rutland after participating in a double murder." *Id.,* at 40. Such a theory will not support a capital carjacking offense. See, *United States v. Harris*, 420 F.3d 467 (5th Cir., 2005) (overturning carjacking conviction because defendant took vehicle to escape from the murder scene, rather than committing murder in order to take control of vehicle).

In its closing argument, the government stressed that in his statement to the police Mr. Fell "admitted that they sent her up in the woods and *then* they formulated a plan to go up and kill her." Trial Transcript of June 24, 2005, at 53 (emphasis added). See also, *Id.*, at 63. ("Donald Fell chooses a place four and a half hours later to kill her.")

The only time the government asserted an inconsistent argument about intent was when it was briefly discussing the elements of the carjacking offense:

> Third, that the defendant, if necessary, was prepared to kill or do serious bodily injury. And there's no doubt about that. They tried to buy the shotgun shells. They are desperate men fleeing a prior murder, they were going to do whatever was necessary. And, in fact, they did do what they thought was necessary a little later.

*Id*., at 66-67.

By this time, however, the government had repeatedly argued that not only had Mr. Fell done what was necessary "a little later", but that he had formed the intent to kill some four hours after the taking of the vehicle.

19

In its penalty phase opening statement, the government returned to this theory, arguing that "after hours to think about what to do with Terry King, he made the ultimate decision to silence her as a witness."  Trial Transcript of June 28, 2005, at 37.   In its penalty phase closing argument, it forcefully asserted that "Again, absolutely no question about it. Alongside Route 22 in Dover, New York, Donald Fell made the decision to kill Terry King because she was a witness." Trial Transcript of July 13, 2005, at 28.

Consistent with the government's repeated arguments at the first trial, this Court should require the Government to specify in a bill of particulars that the "intent to cause death and serious bodily harm" alleged in Count One was not formed until at least approximately four hours, or more,  after the taking of the vehicle.

3.   *Specify, consistent with the Superseding Indictment, but inconsistent with the government's evidence and arguments at the first trial, that the phrase "the death of Teresca King resulted from such taking of the automobile" alleged in Count 1 does not include death resulting from other actions or conduct.*

Count 1 of the Superseding Indictment clearly and specifically alleges that "the death of Teresca King resulted from such taking of the automobile." In its opening, however, the government advanced an entirely different theory, informing the jury that:

> In Count 1, he is charged with carjacking Terry King's Plymouth Neon to escape from Rutland after participating in a double murder. In Count 2, he is charged with kidnapping her for the same purpose. In both counts, the superseding indictment charges that *his conduct* resulted in the death of Terry King.

Trial Transcript of June 20, 2005, at 40. (emphasis added)

20

In its closing argument, the government, again ignoring the language of the Superseding Indictment, argued that an essential element of Count 1 was "that the death of a person resulted *from the defendant's actions*." Trial Transcript of June 24, 2005, at 67 [emphasis added]

In his instructions, Judge Sessions informed the jury that:

> The fifth and final element the government must prove beyond a reasonable doubt is that the death resulted from the defendant's actions. The government does not have to prove that the death occurred during the actual carjacking. This final element is satisfied if the government proves that the defendant caused the death at any point during his retention of the motor vehicle.

Jury Charge of June 14, 2005, at 24-25.

Yet that is not what the Superseding Indictment charged and it is an incorrect instruction which eliminated an essential element of the offense. See e.g., Eighth Circuit Model Jury Instructions (2014 ed.) , Instruction  6.18.2119C("The crime of carjacking has five elements, which are: ....Five, the death of a person resulted from [taking] [attempting to take] the (describe the motor vehicle) "); Tenth Circuit Criminal Pattern Jury Instructions (2015 ed.), Instruction 2.79 ("[Fifth: someone [suffered serious bodily injury] [died] as a result of the crime.]"); Eleventh Circuit Pattern Jury Instructions-Criminal Cases (2010 ed.), Instruction 78 ("[death] [serious bodily injury] resulted from the commission of the offense."] .

Under the Sixth Amendment the government should not have been left free " to roam at large-to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." *Russell v. United States*, 369 U.S. 749, 768, 82 S. Ct.

21

1038, 1049, 8 L. Ed. 2d 240 (1962). See also, *United States v. Mucciante*, 21 F.3d 1228, 1233 (2d Cir.1994)(A federal criminal defendant has a Fifth Amendment right to be "tried and convicted only on those charges contained in the indictment returned by a grand jury" and "only the grand jury may lawfully amend th[e] indictment." ). To prevent this unfairness at the retrial, the government should be required to specify in a bill of particulars that "the death of Teresca King resulted from such taking of the automobile," and no other cause.

> 4.    *Specify, consistent with the Superseding Indictment, but inconsistent with the government's evidence and arguments at the first trial, that the phrase "Donald Fell unlawfully seized, kidnapped, abducted and carried away Teresca King and held her for ransom, reward and otherwise, and willfully transported her..., resulting in the death of Teresca King" alleged in Count 2 does not include death resulting from actions or conduct other than the kidnaping.*

Count 2 of the Superseding Indictment clearly and specifically alleges that "Donald Fell unlawfully seized, kidnapped, abducted and carried away Teresca King and held her for ransom, reward and otherwise, and willfully transported her..., resulting in the death of Teresca King." In its opening, however, the government advanced an entirely different theory, informing the jury that:

> In Count 1, he is charged with carjacking Terry King's Plymouth Neon to escape from Rutland after participating in a double murder. In Count 2, he is charged with kidnapping her for the same purpose. In both counts, the superseding indictment charges that *his conduct* resulted in the death of Terry King.

Trial Transcript of June 20, 2005, at 40 (emphasis added).

22

In its closing argument, the government, again ignoring the language of the Superseding Indictment, argued that an essential element of Count 2 was "that the defendant's acts resulted in the death of Terry King." Trial Transcript of June 24, 2005, at 67-68. Judge Sessions' instructions reinforced this theory, informing the jury that:

> The fifth element that the government must prove beyond a reasonable doubt is that the defendant's actions resulted in the death of Theresa King. To prove this element, the government must prove that Theresa King is dead and that her death resulted from willful and intentional conduct by the defendant.

Jury Charge of June 24, 2005, at 30.

Again, that is not what the Superseding Indictment charged and it is an incorrect instruction which eliminated an essential element of the offense. See e.g., Eighth Circuit Model Jury Instruction 6.18.1201 (2014 ed.) (The crime of kidnapping... has...five elements, which are: ....[Five, death resulted from the kidnapping.]"); Tenth Circuit Criminal Pattern Jury Instructions (2015 ed.), Instruction 2.55 ("An additional element, prompted by the *Apprendi v. New Jersey*, 530 U.S. 466 (2000) doctrine, is required when the indictment alleges that *the kidnapping resulted in the death* of a person...")(emphasis added); Eleventh Circuit Pattern Jury Instructions-Criminal Cases (2010 ed.), Instruction 49 (same)."]. As indicated above, both the Fifth and Sixth Amendments prohibit the court and the government from straying from the indictment in this way. To prevent this unfairness at the retrial, the government should be required to specify in a bill of particulars that the death of Teresca King resulted from the kidnaping, and from no other cause.

5.     *Specify, consistent with the government's evidence and arguments at the first trial, that the phrase "ransom, reward, and otherwise" alleged in Count 2 only means "for the purpose of assisting escape."*

Count 2 of the Superseding Indictment alleges that "on or about November 27, 2000, in the District of Vermont and elsewhere, the defendant Donald Fell, unlawfully seized, kidnapped, and abducted and carried away Teresca King and held her for ransom, reward, and otherwise..."

At the first trial, the government abandoned any theory of ransom and reward and asserted in its opening statement:

> In Count 1, he is charged with carjacking Terry King's Plymouth Neon to escape from Rutland after participating in a double murder. In Count 2, he is charged with kidnapping her for the same purpose.

Trial Transcript of June 20, 2005, at 40.

In its closing argument, the government told the jury:

> Think about the very nature of the crimes that he's charged with. They are all about evasion, about escape, about trying to avoid responsibility for what he did. They are all about getting out of Rutland and getting out of Vermont after killing two innocent people. They are all about getting that car and getting out no matter what. And they are all about eliminating the witness and killing the witness to their, as part of their attempt to escape and evade.

Trial Transcript of June 24, 2005, at 64.

In discussing the elements of Count 2, the government argued:

> Second, the defendant held Theresa King for any reason or benefit. And you'll hear the Judge will instruct you that that doesn't necessarily mean money, in the sort of old fashioned kidnapping sense, it can also mean if the defendant was willfully trying to gain some benefit from kidnapping a person. The benefit here is, of course, leaving a clean trail behind them in Rutland.

24

*Id.,* at 67. [7]

> Judge Sessions did in fact instruct the jury that:

>> In order to satisfy this element, the government need not prove that the reason the defendant took Theresa King was for reward, ransom or other personal monetary gain so long as it is proved that the defendant acted willfully intending to gain -- to gain some benefit from the kidnapping. It is sufficient to satisfy this element if the government proves that at the time the defendant took Theresa King, he did so for the purpose of carjacking her vehicle and escaping from the Rutland area as alleged in the superseding indictment.

Jury Charge of June 24, 2005, at 29.

Once again, nowhere in the Superseding Indictment is it alleged that the kidnapping was done "for the purpose of carjacking her vehicle and escaping from the Rutland area." And, "[a]though it is true that the purpose of the kidnapping does not have to be ransom or reward, *United States v. Healy*, 376 U.S. 75, 81, 84 S.Ct. 553, 557, 11 L.Ed.2d 527 (1964), the government must nevertheless show *some* benefit to the defendant from the kidnapping, whether it be for the purpose of assisting escape, silencing a potential witness, extorting information, even sexual gratification." *United States v. Childress*, 26 F.3d 498, 505 (7th Cir., 1994). Thus, although the government can properly assert that the kidnapping was done "for the purpose of assisting escape" it should be limited to that theory, consistent with the Fifth and Sixth Amendment analysis

---

[7] In its penalty phase closing argument, the government advanced the same theme, arguing that "[t]here's no doubt about this, ladies and gentlemen. Again, they kidnapped Terry King in order to escape from Rutland after they had brutally murdered two people....there is no doubt that he participated in the abduction of Terry King in order to get out of Rutland to avoid those double murders." Trial Transcript of July 13, 2005, at 28.

set forth above. To prevent a violation of those rights at the retrial, the government

should be required to specify in a bill of particulars that the phrase "ransom, reward, and

otherwise" alleged in Count 2 only means "for the purpose of assisting escape."

> 6.  *Specify, consistent with the government's evidence and arguments at the first trial, that the allegation that Mr. Fell "possessed and brandished a firearm" alleged in Count 3 only means "possessed", and not "brandished."*

Count 3 of the Superseding Indictment alleges that Mr. Fell "knowingly possessed

and brandished a firearm..."

In its opening statement to the jury the government appeared to vaguely assert that

Count 3 was based both on possession and on brandishment. The government argued:

> In Count 3, he is charged with possessing a firearm,
> it's that 12-gauge shotgun you have heard about, in
> furtherance of a crime of violence. The crimes of violence are
> the kidnapping and carjacking that you have heard about, that
> he used that weapon in furtherance of that crime.

Trial Transcript of June 20, 2005, at 40.

However, in its closing, the government clearly abandoned the theory of

brandishment:

> Count three is brandishing a weapon in connection with a crime of
> violence. And there are only two elements. First, that the defendant
> committed a crime of violence for which he can be prosecuted in any court
> of the United States, namely either the car jacking or kidnapping charge in
> count one or count two. And, second, that the defendant knowingly
> possessed a firearm in furtherance of a car jacking or kidnapping as
> charged in count one and count two. No question about either of those
> elements. They are proved overwhelmingly.

Trial Transcript of June 24, 2005, at 68.

26

The court's instructions were consistent with this argument, requiring that the jury find that "the defendant knowingly possessed a firearm in furtherance of the carjacking or kidnapping charged in Counts 1 or 2." Jury Charge of June 24, 2005, at 32. Therefore, consistent with the government's evidence and arguments at the first trial, the government should be required to specify in a bill of particulars that the allegation that Mr. Fell "possessed and brandished a firearm" alleged in Count 3 only means "possessed", and not "brandished."

> 7.  *Specify, consistent with the government's evidence and arguments at the first trial, that the allegation that Mr. Fell "transported" a firearm in Count 4 means that he transported it or caused it to be transported interstate, and not merely that he "possessed" the firearm.*

Count 4 of the Superseding Indictment alleges that Mr. Fell "transported a firearm..."

In its opening statement to the jury the government clearly implied that the element of transportation could be satisfied by mere possession. The government stated:

> In Count 4, he is charged with possessing a firearm, again the same firearm which you will see here in court, and that he did that as a fugitive from justice, that is while he was fleeing from the double murder in Rutland.

Trial Transcript of June 20, 2005, at 40-41.

In its closing, the government stated:

> The last count, transporting a firearm as a fugitive from justice. Again, two elements. First, that the defendant was a fugitive from justice. Secondly, that he knowingly transported a firearm, namely that Mosburg pump action shotgun, in interstate commerce. No question about that.

27

Trial Transcript of June 24, 2005, at 68.

In its instructions, the court informed the jury that "[i]n order to satisfy this element, the government must prove that the firearm was transported across state lines and that the defendant knowingly transported it or caused it to be transported interstate."  Jury Charge of June 24, 2005, at 37.

To prevent the unfairness of allowing the government to erroneously imply that the transportation element can be satisfied by mere possession, the government should be required to specify in a bill of particulars that the allegation that Mr. Fell "transported" a firearm in Count 4 means that he transported it or caused it to be transported interstate, and not merely that he "possessed" the firearm.

8. *Specify that the allegation that Mr. Fell "intentionally killed Teresca King" as alleged in  paragraph 16(a) of the Notice of Special Findings, means that Mr. Fell must have actually killed Teresca King and done so with a specific intent to kill, and not merely that he performed some "deliberate" action which caused the death of Mrs King.*

The Superceding Indictment contains a Notice of Special Findings, which in paragraph 16(a) of the Notice of Special Findings alleges that Mr. Fell "intentionally killed Teresca King." Although this allegation would seem to be relatively straightforward, the government obscured the issue in its penalty phase opening when, in its only discussion of the special findings, the government informing the jury that "the death penalty is off the table unless someone is 18 years or older and unless that person's actions were deliberate. Without both of those facts established, your deliberations will be over." Trial Transcript of June 28, 2005, at 43. This statement clearly implied that the

government need only show that some action of the defendant (such as the carjacking or the kidnapping) was deliberate, not that Mr. Fell must have actually killed Teresca King and done so with a specific intent to kill, as was clearly required by the plain language of 18 U.S.C. § 3591(a)(2)(A)).

The government's penalty phase closing did not clarify the issue, but instead continued to imply that mere deliberate action was enough to satisfy this mental state gateway factor:

> If you turn to the second page, you can see that there are four eligibility factors listed. I am not going to read them to you. The judge will read them to you later. These all relate to the intent of Donald Fell at the time he committed these crimes. Quite candidly, ladies and gentlemen, I don't think we will spend a lot of time on it this morning because I think the evidence is quite clear that *he acted intentionally in committing these crimes in murdering Terry King*. I believe the evidence is quite strong as to all four of these factor, but nonetheless, that's the first step in the process.

Trail Transcript of July 13, 2005, at 17-18 (emphasis added)

In the only other reference to the gateway intent factors in the closing argument, the government stated:

> Just briefly, I mentioned a moment ago the threshold intent factors. There's really no question in this case that we have proven them already. There's overwhelming evidence from the guilt phase that the defendant acted intentionally in killing Terry King.
>
> You need only find one. Respectfully, we have proven all four.
>
> Is there any question that Donald Fell intentionally inflicted serious bodily injury which resulted in the death of Terry King? No, there's not.
>
> Is there any question that he intentionally killed her? Absolutely.

*Id.*, at 20.

In order to eliminate the ambiguity created by the government with respect to this factor , the government should be required to specify in a bill of particulars that the allegation that Mr. Fell "intentionally killed Teresca King" as alleged in  paragraph 16(a) of the Notice of Special Findings, means that Mr. Fell must have actually killed Teresca King and done so with a specific intent to kill, and not merely that he performed some "deliberate" action which caused the death of Mrs. King.

9.    *Specify the "serious bodily injury" that Mr. Fell intentionally inflicted that "resulted in the death" of Teresca King as alleged in  paragraph 16(c) of the Notice of Special Findings.*

The Superceding Indictment contains a Notice of Special Findings, which in paragraph 16(c) of the Notice of Special Findings alleges that Mr. Fell (not Mr. Lee) "intentionally inflicted serious bodily injury that resulted in the death of Teresa King." As indicated in the above passages from the government's penalty phase opening statement and closing arguments, the government never identified for the jury the "serious bodily injury" that Mr. Fell, as opposed to Mr. Lee, inflicted that "resulted in the death" of Mrs. King. Instead, in discussing one of the statutory aggravating factors, the government informed the jury that the government's forensic pathologist

> ...told you was that there were actually two causes of death for Terry King. There was obviously the blunt trauma to her head, but then there was also the crushing of her windpipe and neck causing asphyxia. Asphyxia is that she couldn't breathe. She was actually killed twice.

Trial Transcript of July 13, 2005, at 24. See also *Id.,* at 25. ("Again, there's no question that this attack, this assault caused a high degree of pain above a normal killing.")

The question under this factor is not whether "this assault" resulted in the death of Mrs. King, but whether Donald Fell "intentionally inflicted serious bodily injury that resulted in the death of Teresa King." To enable the defendant to defend against this important allegation, the government should be required to specify, in a bill of particulars, the precise "serious bodily injury" that Mr. Fell intentionally inflicted that "resulted in the death" of Teresca King as alleged in  paragraph 16(c) of the Notice of Special Findings.

      10.   *Specify the "one or more acts" that Mr. Fell intentionally participated in that were the "direct result" of the death of Teresca King as alleged in paragraph 16(d) of the Notice of Special Findings*.c

Paragraph 16(d) of the Notice of Special Findings alleges pursuant to 18 U.S.C. §§ 3591(a)(2)(C) that Mr. Fell intentionally participated in "one or more acts" that were the "direct result" of the death of Teresca King. As indicated in the above passages from the government's penalty phase opening statement and closing arguments, the government never identified for the jury the "one or more acts" that Mr. Fell participated in that directly resulted in the victim's death. Instead, the government vaguely referenced "this assault".

In *United States v. Lujan*, 530 F. Supp. 2d 1224 (D.N.M. 2008), the district court ruled that "[t]he two ... statutory threshold findings [18 U.S.C. §§ 3591(a)(2)(C) and (a)(2)]... are slightly more involved [than the intent to kill factor]. I will therefore order the Government to provide a written informative outline of the general nature of the evidence it will introduce to prove these latter two threshold findings." *Id.,* at 1270,

31

citing *United States v. Lecco*, 2007 WL 486614 (S.D.W.Va. Feb. 9, 2007)(granting

similar request). The court in *Lujan* reasoned that "[t]he severity of the penalty sought in

this case warrants special efforts to ensure the fairness of the proceedings. Greater notice

improves the truth-seeking process." *Id.* See also, *United States v. Agnello*, 367 F. Supp.

444, 450 (E.D.N.Y. 1973)("In conspiracy cases, if the government is to rely upon proof

of specific acts to establish the case, there is no question that the defendants alleged to

have participated in such acts should be furnished with sufficient detail to fairly apprise

them of the transactions to be proved so that they will have a reasonable opportunity to

meet the charges of performing the specific acts.")(non-capital case).

    For the reasons stated in these cases, the government should be required to specify

in a bill of particulars the "one or more acts" that Mr. Fell intentionally participated in

that directly resulted in the death of Teresca King as alleged in paragraph 16(d) of the

Notice of Special Findings.

    11.    *Specify the "one or more acts of violence" that Mr. Fell intentionally
           engaged in that were the "direct result" of the death of Teresca King as
           alleged in  paragraph 16(e) of the Notice of Special Findings.*

    Paragraph 16(e) of the Notice of Special Findings alleges pursuant to 18 U.S.C.

§§ 3591(a)(2)(D) that Mr. Fell intentionally engaged in "one or more acts of violence"

that were the "direct result" of the death of Teresca King. Under the cases and arguments

just made in support of request # 10, the government should be required to specify in a

bill of particulars the "one or more acts of violence" that Mr. Fell intentionally

participated in that directly resulted in the death of Teresca King as alleged in  paragraph

16(d) of the Notice of Special Findings.

> *12.    Specify that the allegation that Mr. Fell "caused the death of Teresca King during the commission of a violation of 18 U.S.C. § 1201 (kidnapping)" as alleged in  paragraph 16(f) of the Notice of Special Findings, means that Mr. Fell must have actually caused the death during the commission of the crime of kidnapping, and not merely that the death resulted during the kidnapping.*

Paragraph 16(f) of the Notice of Special Findings alleges pursuant to 18 U.S.C. §

3592(c)(1) that Mr. Fell "caused the death of Teresca King during the commission of a

violation of 18 U.S.C. § 1201 (kidnapping)"

In its penalty phase opening statement, the government correctly stated that this

factor required proof "that Fell caused the death of Terry King during the commission of

another crime here, kidnapping." Trial Transcript of June 28, 2005, at 44. However, in its

penalty phase closing, the government broadened the allegation, arguing that:

> You can look briefly at the first one, for example, *the death of Terry King occurred during the commission of a kidnapping*. Respectfully, ladies and gentlemen, that's been proven by overwhelming evidence already, so you know at least one of these will be found.

Trial Transcript of July 13, 2005, at 19.

Returning to his factor shortly thereafter, the government argued:

> Let's look at the first one: *The death of Terry King occurred during the commission of a kidnapping*. The proof is overwhelming. You have made many findings already. We will ask you to make those same findings again at this stage of the process. Clearly Terry King was killed during that kidnapping.

*Id*., at 21 (emphasis added).

33

It is well established that the fact that a death occurred during the commission of an offense by someone other than the defendant may properly be considered an aggravating factor if there is a showing of the defendant's recklessness with respect to the underlying crime. See, *Tison v. Arizona*, 481 U.S. 137, 149, 156-57 (1987) (holding that major participant in the felony, combined with reckless indifference to human life, is sufficient to satisfy the culpability requirement for a sentence of death "when that conduct causes its natural . . . legal result"); *Enmund v. Florida*, 458 U.S. 782, 798, 801 (1982) ("the focus must be on [the defendant's] culpability, not on that of those who . . . [killed] the victims"); *Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978) (finding the Constitution requires an individualized consideration regarding whether a sentence of death should be imposed); *United States v. Hall*, 2014 WL 1356698, at *12 (W.D. Mo. Feb. 11, 2014)(under Section 3592(c)(1), a showing of reckless is required before this aggravating factor can be applied based on a crime committed by a co-defendant).

No such allegation was made here, but in any event the Superseding Indictment charges that Mr. Fell "caused the death of Teresca King during the commission of a violation of 18 U.S.C. § 1201 (kidnapping)", not merely that "the death of Terry King occurred during the commission of a kidnapping." Under the Fifth and Sixth Amendment analysis set forth above, the government should be required to set forth in a bill of particulars that the allegation that Mr. Fell "caused the death of Teresca King during the commission of a violation of 18 U.S.C. § 1201 (kidnapping)" as alleged in paragraph 16(f) of the Notice of Special Findings, means that Mr. Fell must have actually caused

34

the death during the commission of the crime of kidnapping, and not merely that the

death resulted during the kidnapping.

> 13.   Specify the particular conduct of Mr. Fell (as opposed to Mr. Lee) that
>        supports the allegation that Mr. Fell "committed the offense in an
>        especially heinous, cruel, or depraved manner in that it involved serious
>        physical abuse of Teresca King" as alleged in  paragraph 16(g) of the
>        Notice of Special Findings.

Paragraph 16(g) of the Notice of Special Findings alleges pursuant to 18 U.S.C.

§ 3592(c)(6) that Mr. Fell "committed the offense in an especially heinous, cruel, or

depraved manner in that it involved serious physical abuse of Teresca King." This

language is mandated by 18 U.S.C. § 3592(c)(6), which specifically states that "*[t]he*

*defendant* committed the offense in an especially heinous, cruel, or depraved manner in

that it involved torture or serious physical abuse to the victim."

18 U.S.C. § 3592(c)(6) has been construed to mean that the defendant himself,

and not his co-conspirator or accomplice, must commit the offense in an especially

heinous, cruel or depraved manner. See, *United States v. Hall*, 152 F. 3d 381, 415 (5th

Cir., 1998).  Other courts have applied the same reasoning to other aggravating factors in

18 U.S.C. § 3592 which similarly start with the words "[t]he defendant."  See, *United

States v. Ebron*, 683 F. 3d 105, 152 (5th Cir., 2012)(Pointing out that the government

agreed with its reading of the statute, the Fifth Circuit wrote, "[g]iven that the FDPA's

statutory aggravating factors focus primarily on the defendant's actions in committing the

underlying offense and his individual criminal history, a proper reading of this statutory

language would require the jury to consider the defendant's substantial planning, and not

35

that of any other individual, in determining whether this aggravating factor has been satisfied. In light of this understanding of the statutory language, we conclude that the district court abused its discretion by having the jury deliberate on principles of law that were inapplicable to the facts before them."); *United States v. Ortiz*, 315 F.3d 873, 901 (8th Cir., 2002) (finding instruction correctly focused on defendant's own conduct and intentions, and that there was ample evidence to support the jury's finding under 18 U.S.C. § 3592(c)(16)); *United States v. Allen*, 247 F. 3d 741, 787 (8th Cir., 2001), vacated on other grounds, 536 U.S. 953 (2002)(same reasoning with respect to a statutory aggravating factor alleged under 18 U.S.C. § 3592(c)(5)). See also, *Enmund v. Florida*, 458 U.S. 782, 798, 801 (1982) ("the focus must be on [the defendant's] culpability, not on that of those who . . . [killed] the victims"); *Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978) (finding the Constitution requires an individualized consideration regarding whether a sentence of death should be imposed); *United States v. Moussaoui*, 282 F. Supp. 2d 480, 485 (E.D.Va., 2003), rev'd in part on other grounds, 382 F. 3d 453 (4th Cir. 2004) ("To withstand constitutional scrutiny, any sentence of death in this case must be predicated on what the defendant, himself, actually did, not on what he may have wanted to do or on what his alleged co-conspirators were able to accomplish on their own.").

In its penalty phase opening statement, the government incorrectly and vaguely informed the jury that the issue under this factor was whether "his offense was heinous, cruel or depraved." Trial Transcript of June 28, 2005, at 44. Then, in closing argument

on this factor, the government clearly asked the jury to take into account the conduct of Mr. Lee, arguing that "they were hitting her so hard that [her earring] literally was torn off," that there were "[m]ultiple blows," including the "the horrible, blunt-force trauma to her head," and that "there were actually two causes of death for Terry King. There was obviously the blunt trauma to her head, but then there was also the crushing of her windpipe and neck causing asphyxia." Trial Transcript of July 13, 2005, at 23-24. "In Dr. Baden's opinion, this was overkill because it was far more injury than was necessary *for them* to kill her." *Id.* (emphasis added). See also *Id.,* at 25 ("Again, there's no question that this attack, this assault caused a high degree of pain above a normal killing. Listen to Dr. Baden's testimony if you have any questions about the multiple trauma here. And think about it, ladies and gentlemen, just as Dr. Baden explained to you. *They* didn't have to kill her this way.")

To order to prevent the government at the retrial from improperly broadening the scope of this factor to include the conduct of Mr. Lee, and to prevent surprise and allow the defendant to prepare a defense to this allegation, the Court should require the government to specify in a bill of particulars the particular conduct of Mr. Fell (as opposed to Mr. Lee) that supports the allegation that Mr. Fell "committed the offense in an especially heinous, cruel, or depraved manner in that it involved serious physical abuse of Teresca King."

37

> 14.   Identify the "more than one person" that Mr. Fell (as opposed to Mr. Lee) intentionally killed or attempted to kill in a single criminal episode, as alleged in  paragraph 16(h) of the Notice of Special Findings.

Paragraph 16(h) of the Notice of Special Findings alleges pursuant to 18 U.S.C. § 3592(c)(16) that Mr. Fell "intentionally killed or attempted to kill more than one person in a single criminal episode." This language is mandated by 18 U.S.C. § 3592(c)(16), which specifically states that "*[t]he defendant* "intentionally killed or attempted to kill more than one person in a single criminal episode."

In its penalty phase opening statement, the government correctly informed the jury that the issue under this factor was whether "he killed more than one person as part of one criminal episode." Trial Transcript of June 28, 2005, at 44. However, in its closing argument, the government argued that the killing of Debra Fell, which as indicated above the government had consistently maintained was committed by Mr. Lee, could be considered under this factor. The government argued:

> Again, ladies and gentlemen, the evidence is overwhelming. There is no doubt about it. There's no question that he participated both in the killing of Charles Conway, by stabbing him to death, and in the murder of Debra Fell, and if you have any question about this, there is no doubt that he personally stabbed Charles Conway to death, which were the crimes that started this case.

Trial Transcript of July 14, 2005, at 26.

The government also argued:

> Now, as part of his statements to the police, he also told you in graphic detail how he killed Charlie....And at the same time that he was attacking Charles Conway, Robert Lee was assaulting his mother, and he did nothing to save her.

38

*Id.,* at 27.

Because the (c)(16) factor, like the (c)(6) factor just discussed is focused solely on the conduct of "the defendant", it was improper under the cases cited above to urge the jury to consider Mr. Lee's murder of Debra Fell in support of this factor.  In order to prevent the government at the retrial from improperly broadening the scope of this factor to include the conduct of Mr. Lee, and to prevent surprise and allow the defendant to prepare a defense to this allegation, the Court should require the government to identify in a bill of particulars the "more than one person" that Mr. Fell (as opposed to Mr. Lee) intentionally killed or attempted to kill in a single criminal episode.

## CONCLUSION

For all of the foregoing reasons, this Court should grant this motion for a bill of particulars and order the government to provide the fourteen specifications discussed above.

Dated at San Francisco, California, this 8th day of September, 2015.

Dated: September 8, 2015          Respectfully Submitted,
                                               MICHAEL N. BURT
                                               KERRY B. DeWOLFE
                                               JOHN T. PHILIPSBORN

                                               By:   /s/ Michael N. Burt
                                               Michael N. Burt
                                               Law Office of Michael Burt
                                               1000 Brannon Street, #400
                                               San Francisco, CA 94103
                                               (415) 522-1508
                                               mb@michaelburt.com


                                               By:   /s/ John T. Philipsborn
                                               John T. Philipsborn
                                               Law Office of John T. Philipsborn
                                               507 Polk Street, Suite 350
                                               San Francisco, CA 94102
                                               (415) 771-3801 phone
                                               (415) 771-3218 fax
                                               jphilipsbo@aol.com
                                               Counsel for DONALD FELL

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2015, I electronically filed with the Clerk of

Court the following document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DONALD FELL'S FIRST MOTION FOR BILL OF PARTICULARS AND FOR FIFTH, SIXTH, AND EIGHTH AMENDMENT NOTICE**

using the CM/ECF system.  The CM/ECF system will provide service of such filing(s)

via Notice of Electronic Filing (NEF) to the following NEF parties:

Michael N. Burt, Esq.
Kerry B. DeWolfe, Esq.
William B. Darrow, Esq., Assistant United States Attorney
Bruce R. Hegyi, U.S. Dept. Of Justice

I also caused to be served, by U.S. Postal Service, the following non-NEF party:

Donald Fell
Register Number 05306-010
The Metropolitan Detention Center
P.O. Box 329002
Brooklyn, NY 11232

Dated at San Francisco, California, this 8th day of September, 2015.

 */s/ Melissa Stern*
Melissa Stern
Legal Assistant
Law Office of John T. Philipsborn
507 Polk Street, Suite 350
San Francisco, CA 94102
(415) 771-3801 phone
(415) 771-3218 fax
jphilipsbo@aol.com
Counsel for DONALD FELL

41