UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| | ) |
| | ) |
| UNITED STATES OF AMERICA | ) NO. 5:2001-CR-00012 |
| | ) |
| | ) |
| vs. | ) |
| | ) |
| DONALD FELL, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT DONALD FELL'S APPENDIX TO MOTION TO PRECLUDE THE
DEATH PENALTY AS A PUNISHMENT BECAUSE THE DEATH PENALTY, IN AND
OF ITSELF, CONSTITUTES AN UNCONSTITUTIONAL PUNISHMENT**

TABLE OF CONTENTS

Death Penalty Information Center: Facts About the Death Penalty  . . . . . . . . . . . . . . . . . . . . .  0001

Death Penalty Information Center: Report, "Struck by Lightening:
The Continuing Arbitrariness of the Death Penalty
Thirty-Five Years After its Reinstatement in 1976"  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  0005

Death Penalty Information Center: Report, "The 2% Death Penalty:
How a Minority of Counties Produce the Most Death Cases at
Enormous Cost to All . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  0043

Fact sheet: The Federal Death Penalty  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  0078

Declaration of KEVIN MCNALLY, Director, Federal Death Penalty
Resource Counsel Project  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  0080

Declaration of LAUREN COHEN BELL, Ph.D.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  0093

Authorized Federal Capital Prosecutions Pending Trial  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  0101

i

Authorized Federal Capital Prosecutions Sentenced to
Death But Now Awaiting a Retrial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0104

Authorized Federal Capital Prosecutions
Resulting in a Life Sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0105

Authorized Federal Capital Prosecutions Resulting in a
Sentence of Death . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0144

Authorized Federal Capital Prosecutions With Current
Sentence of Death . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0164

Authorized Federal Capital Prosecutions Resulting in
Defendant Being Found Not Guilty or Innocent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0179

Authorized Federal Capital Prosecutions Which Resulted in
Conviction of a Lesser Offense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0180

Authorized Federal Capital Prosecutions Where
Authorization Was Withdrawn . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0181

Authorized Federal Capital Cases Which
Resulted in a Guilty Plea . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0203

Authorized Federal Capital Prosecutions Which Resulted in
Dismissal by Judge for Legal Reasons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0235

Authorized Federal Capital Prosecutions Where Defendant Died
Before or During Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0242

Female Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0243



**DEATH PENALTY INFORMATION CENTER**
**Facts about the Death Penalty**

1015 18th St. NW, Suite 704
Washington, DC 20036
www.deathpenaltyinfo.org
dpic@deathpenaltyinfo.org
@DPInfoCtr
facebook.com/DeathPenaltyInfo

*Updated: October 30, 2015*

## NUMBER OF EXECUTIONS SINCE 1976: 1,419



**DEATH PENALTY STATES (31)**
Alabama
Arizona
Arkansas
California
Colorado
Delaware
Florida
Georgia
Idaho
Indiana
Kansas
Kentucky
Louisiana
Mississippi
Missouri
Montana
Nevada
New Hampshire
North Carolina
Ohio
Oklahoma
Oregon
Pennsylvania
South Carolina
South Dakota
Tennessee
Texas
Utah
Virginia
Washington
Wyoming
*U.S. Gov't*
*U.S. Military*
**NON-DEATH PENALTY STATES (19)**
Alaska
Connecticut
Hawaii
Illinois
Iowa
Maine
Maryland
Massachusetts
Michigan
Minnesota
Nebraska*
New Jersey
New Mexico**
New York
North Dakota
Rhode Island
Vermont
West Virginia
Wisconsin
*District of Columbia*
*\*A petition to suspend the repeal bill has been submitted and is pending verification.*
*\*\*Inmates remain on death*

## RACE OF DEFENDANTS EXECUTED



- White: 786
- Black: 491
- Hispanic: 118
- Other: 24

## RACE OF VICTIMS IN DEATH PENALTY CASES



Over 75% of the murder victims in cases resulting in an execution were white, even though nationally only 50% of murder victims generally are white.

**Fell Motion Appendix0001**

## RECENT STUDIES ON RACE

- Jurors in Washington state are three times more likely to recommend a death sentence for a black defendant than for a white defendant in a similar case. (Prof. K. Beckett, Univ. of Washington, 2014).

- In Louisiana, the odds of a death sentence were 97% higher for those whose victim was white than for those whose victim was black. (Pierce & Radelet, Louisiana Law Review, 2011).

- A study in California found that those who killed whites were over 3 times more likely to be sentenced to death than those who killed blacks and over 4 times more likely than those who killed Latinos. (Pierce & Radelet, Santa Clara Law Review, 2005).

- A comprehensive study of the death penalty in North Carolina found that the odds of receiving a death sentence rose by 3.5 times among those defendants whose victims were white.  (Prof. Jack Boger and Dr. Isaac Unah, University of North Carolina, 2001).

- In 96% of states where there have been reviews of race and the death penalty, there was a pattern of either race-of-victim or race-of-defendant discrimination, or both. (Prof. Baldus report to the ABA, 1998).



**Persons Executed for Interracial Murders**

31 — White Def./ Black Victim
295 — Black Def./ White Victim

## INNOCENCE



**Death Row Exonerations By State Total: 156**

| FL | IL | TX | LA | OK | AZ | NC | OH | AL | GA | PA | MO | MS | NM | CA | MA | TN | IN | SC | ID | KY | MD | NE | NV | VA | WA |
|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|
| 26 | 20 | 13 | 10 | 10 | 9 | 9 | 9 | 6 | 6 | 6 | 4 | 4 | 4 | 3 | 3 | 3 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |

- Since 1973, more than 150 people have been released from death row with evidence of their innocence.  (Staff Report, House Judiciary Subcommittee on Civil & Constitutional Rights, 1993, with updates from DPIC).

- From 1973-1999, there was an average of 3 exonerations per year.  From 2000-2011, there was an average of 5 exonerations per year.

## DEATH ROW INMATES BY RACE



Black 42%
White 43%
Hispanic 13%
Other 3%

## DEATH ROW INMATES BY STATE: April 1, 2015

| | | | | | |
|---|---|---|---|---|---|
| California | **746** | Oklahoma | **48** | Kansas | **10** |
| Florida | **401** | Mississippi | **48** | Utah | **9** |
| Texas | **271** | S. Carolina | **44** | Washington | **9** |
| Alabama | **201** | Oregon | **36** | Virginia | **8** |
| Pennsylvania | **184** | Arkansas | **35** | U.S. Military | **6** |
| N. Carolina | **157** | Kentucky | **34** | S. Dakota | **3** |
| Ohio | **145** | Missouri | **33** | Colorado | **3** |
| Arizona | **124** | Delaware | **17** | Montana | **2** |
| Georgia | **85** | Indiana | **14** | New Mexico | **2** |
| Louisiana | **85** | Connecticut | **12** | Wyoming | **1** |
| Nevada | **78** | Idaho | **11** | N. Hampshire | **1** |
| Tennessee | **73** | Nebraska | **11** | **TOTAL: 3,002** | |
| U.S. Gov't | **61** | | | | |

**Race of Death Row Inmates** and **Death Row Inmates by State** Source: NAACP Legal Defense Fund, "Death Row USA" (April 1, 2015).  When added, the total number of death row inmates by state is slightly higher than the given total because some prisoners are sentenced to death in more than one state.

# EXECUTIONS BY STATE SINCE 1976

| State | Tot | 2014 | 2015 | State | Tot | 2014 | 2015 | State | Tot | 2014 | 2015 |
|-------|-----|------|------|-------|-----|------|------|-------|-----|------|------|
| TX | 530 | 10 | 12 | AR | 27 | 0 | 0 | PA | 3 | 0 | 0 |
| OK | 112 | 3 | 1 | MS | 21 | 0 | 0 | KY | 3 | 0 | 0 |
| VA | 111 | 0 | 1 | IN | 20 | 0 | 0 | MT | 3 | 0 | 0 |
| FL | 91 | 8 | 2 | DE | 16 | 0 | 0 | US GOVT | 3 | 0 | 0 |
| MO | 86 | 10 | 6 | CA | 13 | 0 | 0 | ID | 3 | 0 | 0 |
| GA | 58 | 2 | 3 | IL | 12 | 0 | 0 | SD | 3 | 0 | 0 |
| AL | 56 | 0 | 0 | NV | 12 | 0 | 0 | OR | 2 | 0 | 0 |
| OH | 53 | 1 | 0 | UT | 7 | 0 | 0 | NM | 1 | 0 | 0 |
| NC | 43 | 0 | 0 | TN | 6 | 0 | 0 | CO | 1 | 0 | 0 |
| SC | 43 | 0 | 0 | MD | 5 | 0 | 0 | WY | 1 | 0 | 0 |
| AZ | 37 | 1 | 0 | WA | 5 | 0 | 0 | CT | 1 | 0 | 0 |
| LA | 28 | 0 | 0 | NE | 3 | 0 | 0 | | | | |

# EXECUTIONS BY REGION*



South — 1153
Midwest — 177
West — 85
Northeast — 4
TX & OK — 642

*Federal executions are listed in the region in which the crime was committed.

# DEATH SENTENCING

The number of death sentences per year has dropped dramatically since 1999.

| Year | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 |
|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|
| Sentences | 266 | 295 | 279 | 223 | 153 | 166 | 151 | 138 | 140 | 123 | 126 | 120 | 118 | 114 | 85 | 82 | 83 | 73 |

Source: Bureau of Justice Statistics: "Capital Punishment, 2013." 2014 figure from DPIC research.

# MENTAL DISABILITIES

- **Intellectual Disabilities:** In 2002, the Supreme Court held in Atkins v. Virginia that it is unconstitutional to execute defendants with 'mental retardation.'
- **Mental Illness**: The American Psychiatric Association, the American Psychological Association, the National Alliance for the Mentally Ill, and the American Bar Association have endorsed resolutions calling for an exemption of the severely mentally ill.

# DETERRENCE

### *Do executions lower homicide rates?*



No 88%
Yes 5%
No Opinion 7%

- A report by the National Research Council, titled Deterrence and the Death Penalty, stated that studies claiming that the death penalty has a deterrent effect on murder rates are "fundamentally flawed" and should not be used when making policy decisions (2012).
- Consistent with previous years, the 2014 FBI Uniform Crime Report showed that **the South had the highest murder rate. The South accounts for over 80% of executions.** The Northeast, which has less than 1% of all executions, had lowest murder rate.
- According to a survey of the former and present presidents of the country's top academic criminological societies, 88% of these experts rejected the notion that the death penalty acts as a deterrent to murder. (Radelet & Lacock, 2009)

**Murder Rates per 100,000 (2014)**



South — 5.5
Midwest — 4.3
West — 3.9
Northeast — 3.3
Nat'l — 4.5

# EXECUTIONS SINCE 1976 BY METHOD USED

| 1244 | Lethal Injection |
|------|------------------|
| 158 | Electrocution |
| 11 | Gas Chamber |
| 3 | Hanging |
| 3 | Firing Squad |

34 states plus the US government use lethal injection as their primary method. Some states utilizing lethal injection have other methods available as backups. Though New Mexico and Connecticut have abolished the death penalty, their laws were not retroactive, leaving prisoners on the states' death rows and their lethal injection protocols intact.

# JUVENILES

- In 2005, the Supreme Court in Roper v. Simmons struck down the death penalty for juveniles. 22 defendants had been executed for crimes committed as juveniles since 1976.

# WOMEN

- There were 56 women on death row as of Dec. 31, 2014. This constitutes less than 2% of the total death row population. (NAACP Legal Defense Fund, Jan. 1, 2015). 16 women have been executed since 1976.

## FINANCIAL FACTS ABOUT THE DEATH PENALTY

- Defense costs for death penalty trials in Kansas averaged about $400,000 per case, compared to $100,000 per case when the death penalty was not sought. (Kansas Judicial Council, 2014).

- A new study in California revealed that the cost of the death penalty in the state has been over $4 billion since 1978.  Study considered pre-trial and trial costs, costs of automatic appeals and state habeas corpus petitions, costs of federal habeas corpus appeals, and costs of incarceration on death row.  (Alarcon & Mitchell, 2011).

- In Maryland, an average death penalty case resulting in a death sentence costs approximately $3 million.  The eventual  costs to Maryland taxpayers for cases pursued 1978-1999 will be $186 million.  Five executions have resulted. (Urban Institute, 2008).

- Enforcing the death penalty costs Florida $51 million a year above what it would cost to punish all first-degree murderers with life in prison without parole. Based on the 44 executions Florida had carried out since 1976, that amounts to a cost of $24 million for each execution. (Palm Beach Post, January 4, 2000).

- The most comprehensive study in the country found that the death penalty costs North Carolina $2.16 million per execution over the costs of sentencing murderers to life imprisonment. The majority of those costs occur at the trial level. (Duke University, May 1993).

- In Texas, a death penalty case costs an average of $2.3 million, about three times the cost of imprisoning someone in a single cell at the highest security level for 40 years. (Dallas Morning News, March 8, 1992).

## PUBLIC OPINON AND THE DEATH PENALTY

### Support for Alternatives to the Death Penalty

- A 2010 poll by Lake Research Partners found that **a clear majority of voters (61%) would choose a punishment other than the death penalty for murder**.



### What Interferes with Effective Law Enforcement?

**Percent Ranking Item as One of Top Two or Three**



- A 2009 poll commissioned by DPIC found police chiefs ranked the death penalty **last** among ways to reduce violent crime.  The police chiefs also considered the death penalty the least efficient use of taxpayers' money.

---

*The Death Penalty Information Center has available more extensive reports on a variety of issues, including:*
- "The Death Penalty in 2014: Year-End Report" (December 2014)
- "The 2% Death Penalty: How a Minority of Counties Produce Most Death Cases at Enormous Costs to All" (October 2013)
- "The Death Penalty in 2013: Year-End Report" (December 2013)
- "Struck By Lightning: The Continuing Arbitrariness of the Death Penalty 35 Years After Its Reinstatement in 1976" (June 2011)
- "Smart on Crime: Reconsidering the Death Penalty in a Time of Economic Crisis" (October 2009)
- "A Crisis of Confidence: Americans' Doubts About the Death Penalty" (2007)
- "Blind Justice: Juries Deciding Life and Death with Only Half the Truth" (2005)
- "Innocence and the Crisis in the American Death Penalty" (2004)
- "International Perspectives on the Death Penalty: A Costly Isolation for the U.S." (1999)
- "The Death Penalty in Black & White: Who Lives, Who Dies, Who Decides" (1998)
- "Innocence and the Death Penalty: The Increasing Danger of Executing the Innocent" (1997)



# Struck by Lightning:

## The Continuing Arbitrariness of the Death Penalty
## Thirty-Five Years After Its Re-instatement in 1976

**A Report of the Death Penalty Information Center**



**Fell Motion Appendix0005**

# Struck by Lightning:

## The Continuing Arbitrariness of the Death Penalty Thirty-Five Years After Its Re-instatement in 1976

### A Report of the Death Penalty Information Center
by Richard C. Dieter, Executive Director

Washington, DC
July 2011

www.deathpenaltyinfo.org

# Struck by Lightning:
# The Continuing Arbitrariness of the Death Penalty Thirty-Five Years After Its Re-instatement in 1976

**A Report of the Death Penalty Information Center
by Richard C. Dieter, Executive Director**

**July 2011**

---

*These death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual.*
 **-Justice Potter Stewart (1972)**

*Rather than continue to coddle the Court's delusion that the desired level of fairness has been achieved and the need for regulation eviscerated, I feel morally and intellectually obligated to concede that the death penalty experiment has failed.*
 **-Justice Harry Blackmun (1994)**

*Two decades after* Gregg, *it is apparent that the efforts to forge a fair capital punishment jurisprudence have failed.  Today, administration of the death penalty, far from being fair and consistent, is instead a haphazard maze of unfair practices with no internal consistency.*
 **-American Bar Association (1997)**

*We now have decades of experience with death-penalty systems modeled on [the Model Penal Code]. . . . Unless we are confident we can recommend procedures that would meet the most important of the concerns, the Institute should not play a further role in legitimating capital punishment, no matter how unintentionally, by retaining the section in the Model Penal Code.*
 **-American Law Institute (The motion to withdraw this section of the Code was passed in 2009.)**

*I have concluded that our system of imposing the death penalty is inherently flawed. The evidence presented to me by former prosecutors and judges with decades of experience in the criminal justice system has convinced me that it is impossible to devise a system that is consistent, that is free of discrimination on the basis of race, geography or economic circumstance, and that always gets it right.*
 **-Gov. Pat Quinn of Illinois (signing bill abolishing the death penalty, 2011)**

---

# Executive Summary

The United States Supreme Court approved the re-instatement of the death penalty 35 years ago on July 2, 1976.  Although the death penalty had earlier been held unconstitutional because of its arbitrary and unpredictable application, the Court was willing to sanction new systems that states had proposed to make capital punishment less like "being struck by lightning" and more like retribution for only the "worst of the worst" offenders.  The Court also deferred to the states' judgment that the death penalty served the goals of retribution and deterrence.

After three and a half decades of experience under these revised statutes, the randomness of the system continues.  Many of the country's constitutional experts and prominent legal organizations have concluded that effective reform is impossible and the practice should be halted.  In polls, jury verdicts and state legislative action, there is evidence of the American people's growing frustration with the death penalty.  A majority of the nine Justices who served on the Supreme Court in 1976 when the death penalty was approved eventually concluded the experiment had failed.

Four states have abolished the death penalty in the past four years, and nationwide executions and death sentences have been cut in half since 2000. A review of state death penalty practices exposes a system in which an unpredictable few cases result in executions from among thousands of eligible cases.  Race, geography and the size of a county's budget play a major role in who receives the ultimate punishment.  Many cases thought to embody the worst crimes and defendants are overturned on appeal and then assessed very differently the second time around at retrial.  Even these reversals depend significantly on the quality of the lawyers assigned and on who appointed the appellate judges reviewing the cases.  In such a haphazard process, the rationales of deterrence and retribution make little sense.

In 1976, the newly reformed death penalty was allowed to resume.  However, it has proved unworkable in practice.  Keeping it in place, or attempting still more reform, would be enormously expensive, with little chance of improvement.  The constitution requires fairness not just in lofty words, but also in daily practice.  On that score, the death penalty has missed the mark.

# I. Introduction: History of the Modern Death Penalty

The only lengthy, nationwide suspension of the death penalty in U.S. history officially began in 1972 when the U.S. Supreme Court held in *Furman v. Georgia*[1] that the death penalty was being administered in an arbitrary and capricious manner that amounted to cruel and unusual punishment. As in Georgia, the statutes of other states and the federal government provided no guidance to the jury empaneled to decide between sentences of life and death. The death penalty ground to a halt as states formulated revised laws they hoped would win the Court's approval.

Executions had stopped in 1967 as lower courts anticipated a High Court ruling on the constitutionality of capital punishment. Insights from the civil rights movement of the 1960s led many to believe the death penalty was so linked to the practice of racial discrimination that it would no longer be constitutionally acceptable. When the Supreme Court reviewed the practice of capital punishment, it focused primarily on arbitrariness in its application rather than on racial discrimination. Nevertheless, as Justice William O. Douglas warned in his concurring opinion in *Furman*, the questions of arbitrariness and discrimination are closely linked.[2]

For a pivotal set of Justices, the death penalty was unconstitutional because it was "so wantonly and so freakishly imposed."[3] Justice Potter Stewart said the death penalty was "cruel and unusual in the same way that being struck by lightning is cruel and unusual."[4] Justice Byron White echoed that sentiment when he said he could not uphold a punishment where "there is no meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not."[5]

The Justices left for another day the question of whether the death penalty itself was constitutional, leaving the door open to the enactment of more limited death penalty statutes that provided detailed guidance for juries. After *Furman*, many states re-wrote their death penalty laws and began sentencing people to death—although no executions would be carried out until the Court again addressed the issue.

It did so in 1976, approving the new laws of Georgia, Florida and Texas, while rejecting the approach taken by North Carolina and Louisiana, which required all those convicted of certain murders to be sentenced to death, without regard to individual sentencing considerations.[6] The death penalty itself was declared constitutional under the assumption that it fit the rationales of retribution and deterrence. The Court said that being sentenced to death would no longer be random because the new statutes sufficiently restricted and guided the decision-making of prosecutors, judges, and juries—at least in theory. Whether these new laws would be less arbitrary in practice remained to be seen.

## Decades of Experiment

By now thirty-five years have passed, providing ample experience to assess whether this system reliably selects the worst offenders and the most heinous crimes to merit the most severe punishment. This experience also provides an opportunity to judge whether the death penalty's twin rationales—retribution and deterrence—sufficiently justify its continued use, or whether it has devolved into the "pointless and needless extinction of life"[7] forbidden by the Eighth Amendment.

**Fell Motion Appendix0009**



**Timeline of the Death Penalty 1976-2011**

**1977**: First execution in 10 years: Gary Gilmore in Utah

**1982**: First lethal injection: Texas

**1988**: Federal death penalty reinstated

**1993**: First DNA exoneration from death row

*Gregg v. Georgia* upholds new death statutes

*Coker v. Georgia*: no death penalty for rape

*Ford v. Wainwright* forbids execution of the insane

*McCleskey v. Kemp* rejects statistical evidence as proof of racial discrimination

*Penry v. Lynaugh* allows execution of people with intellectual disabilities

*Stanford v. Kentucky* allows death penalty for 16 & 17 year-olds

Concerns about the death penalty before the Court's approval of new laws in 1976 stemmed not only from the lack of guidance for jurors making crucial choices between life and death sentences.  The death penalty was also rarely carried out, giving rise to doubts about its consistent application.  In a country with only a handful of executions each year,[8] it was not at all clear that the few executed were the "worst of the worst."  Justice Brennan, concurring with the majority in *Furman*, wrote, "When the punishment of death is inflicted in a trivial number of the cases in which it is legally available, the conclusion is virtually inescapable that it is being inflicted arbitrarily. Indeed, it smacks of little more than a lottery system."[9]

The death penalty is again in decline across the country.  The number of death sentences and executions has decreased sharply in the past decade.  Since 2007 four states have abandoned the death penalty. Even in the 34 states that retain it, an execution is a rare event in all but a handful of states.  Less than one in a hundred murders results in a death sentence, and far fewer defendants are executed.  Does the one murderer in a hundred who receives a death sentence clearly merit execution more than all, or even most, of the 99 other offenders who remain in prison for life?  Or do arbitrary factors continue to determine who lives and who dies under our death penalty laws?



**1994**: Crime bill expands federal death penalty to over 50 offenses

**1997**: ABA calls for moratorium on executions

**2002**: 100th exoneration from death row

**2007**: New York and New Jersey abolish the death penalty

**2011**: Illinois abolishes the death penalty

**2009**: New Mexico abolishes the death penalty

**1999**: 98 executions nationally, highest number since reinstatement

**1996**: Congress severely restricts federal habeas corpus

**2000**: Illinois governor places moratorium on executions

**2006**: 1000th execution since 1976

**2009**: American Law Institute withdraws its model death penalty statute

*Atkins v. Virginia* bans death sentences for people with intellectual disabilities

*Roper v. Simmons* bans death sentences for juvenile offenders

*Baze v. Rees* upholds lethal injection

*Kennedy v. Louisiana*: no death penalty for crimes against individuals except murder

# II. Thirty-five Years Later: The Unfairness of the Death Penalty in Practice

The death penalty system in this country is demonstrably highly selective in meting out sentences and executions, and becoming more so.  There are approximately 15,000 murders a year; in 2010, there were 46 executions, a ratio of 1 execution for every 326 murders.  The number of murders in the U.S. barely changed from 1999 to 2009,[10] but the number of death sentences declined by 60% during that period.  Studies of the death penalty in several states since 1976 reveal a system that sweeps broadly through thousands of eligible cases but ends up condemning to death only a small number, with little rational explanation for the disparity.

- In **New Mexico**, during a 28-year span, 211 capital cases were filed.  About half the cases resulted in a plea bargain for a sentence less than death.  Another half went to trial, and 15 people were sentenced to death.  In the end, only one person was executed (after dropping his appeals), and two people were left on death row when the state abolished the death penalty in 2009.[11]

- In **Maryland**, over a 21-year period from 1978 to 1999, 1,227 homicides were identified as death-eligible cases.  Prosecutors filed a death notice in 162 cases.  Fifty-six cases resulted in a death judgment, although it has become clear the vast majority of those will never be carried out.  As of 2011, five defendants have been executed, and only five remain on death row.  There have been no executions since 2005.[12]

- In **Washington,** from 1981 to 2006, 254 cases were identified as death-eligible.  Death notices were filed in 79, and death sentences were imposed in 30.  Of the cases that completed the appeals process, 83% were reversed. Four executions took place, with three of the four defendants having waived their remaining appeals.[13]

- In **Kentucky**, from 1979 to 2009, there were 92 death sentences.  Of the 50 cases that completed their appeals, 42 sentences (84%) were reversed.  Three inmates were executed, including 2 who waived their appeals.[14]

Patterns in other states are similar.  In Oregon, 795 cases were deemed eligible for the death penalty after its reinstatement in 1984; two people have been executed—both "volunteers."[15]  Nationally, only about 15% of those sentenced to death since 1976 have been executed.  Under the federal death penalty, from a pool of over 2,500 cases submitted by U.S. Attorneys, the Attorney General has authorized seeking the death penalty in 472 cases; 270 defendants went to trial, resulting in 68 death sentences and 3 executions to date.[16]

The theory behind winnowing from the many defendants who are eligible for the death penalty down to the few who are executed is that the system is selecting the "worst of the worst" for execution.  The Supreme Court recently underscored this theory in a 2008 decision restricting the death penalty: "[C]apital punishment must 'be limited to those offenders who commit "a narrow category of the most serious crimes" and whose extreme culpability makes them "the most deserving of execution.""'[17]

However, the notion that tens of thousands of eligible cases are carefully narrowed down to the worst ones does not withstand scrutiny.  Many factors determine who is ultimately executed in the U.S.; often the severity of the crime and the culpability of the defendant fade from consideration as other arbitrary factors determine who lives and who dies.

## The System of Selection

*The system is too fraught with variables to survive. Whether or not one receives the death penalty depends upon the discretion of the prosecutor who initiates the proceeding, the competence of counsel who represents the defendant, the race of the victim, the race of the defendant, the make-up of the jury, the attitude of the judge, and the attitude and make-up of the appellate courts that review the verdict.*

**-Judge H. Lee Sarokin, U.S. Court of Appeals, Third Circuit (ret.)**

Does the framework of guided discretion approved by the Supreme Court in 1976 achieve the goal of making the death penalty predictable and limited to the most heinous cases?  On a national level, the answer clearly is "No."  The system was never designed to punish the worst offenders across the country.  Some states have the death penalty and others do not.  Many states that have the death penalty hardly ever use it, even for their worst offenders.  Excluding Texas, Virginia and Oklahoma, the rest of the country has averaged far less than one execution per state per year since the death penalty was reinstated, even when only states with a death penalty are counted.

## Local Choices

Although disparities among the states in using the death penalty are allowable under the constitution, the overall justifications of retribution and deterrence become far less credible when the punishment is applied so rarely and so unevenly.  However, wide disparities in the use of the death penalty *within* a single state also raise serious questions about equality under law.  Jurisdictions like Harris County (Houston), Maricopa County (Phoenix), and Philadelphia have produced hundreds of death sentences, while other counties within the same state have few or no death sentences.[18]  In almost all states, the decision to seek the death penalty is not made by a central state entity that evaluates the relative severity of committed homicides; rather, the charging decision is left to the discretion of the district attorney of each county.  Prosecutors differ widely on what they consider to be the worst cases, and even on whether the death penalty should be sought at all.  A defendant's chances of being sentenced to death may vary greatly depending on which side of the county line he committed a murder.

## Jury Discretion and Understanding

Following the decision to seek death by the local prosecutor, the next critical stage for choosing between life and death occurs at the sentencing phase of the trial, where typically a jury decides a convicted defendant's fate.  An individual juror, however, has no way of comparing the case under consideration with other cases in the state.  For most jurors, this will be the only capital case they will ever decide.  Strong emotions can easily take over as they inspect 8-by-10 glossies of the victims at the crime scene or hear heart-breaking testimony from the victim's family.  Some defendants will be spared and others condemned, but in the absence of evidence of more egregious cases, most murders can be made to look like one of the worst.

Another difficulty jurors face is that to make their sentencing decision they are given vague instructions with legal terms they do not fully understand.  (See, e.g., an excerpt from an Ohio jury instruction in a capital case in the endnote below.[19])  Although the language may be clear to lawyers and judges, numerous studies have documented the misunderstandings that jurors have about their instructions in death penalty cases.[20]

## Uneven Appellate Review

At the third key stage of the judicial process—appellate review by the state's highest court—there could be an opportunity, called "proportionality review," to compare a death sentence with sentences given for similar crimes in the state.  However, the practice has largely been abandoned, even where it was attempted.

In 1976 the U.S. Supreme Court in *Gregg v. Georgia* approved Georgia's

statute, referring favorably to the provision on proportionality review. However, in 1984, in *Pulley v. Harris,*[21] the U.S. Supreme Court rejected the principle that every state was required to systematically review whether a given death sentence was justified when compared to similar offenses in the state. Proportionality review in almost all states is now, if it occurs at all, a perfunctory process, allowing a death sentence if death sentences were given in one or more similar cases, but ignoring the vast majority of similar cases which resulted in life sentences.[22] Once a death sentence has been upheld for a particular factual scenario, a death sentence in a subsequent similar crime will not be deemed disproportionate. This process results only in a lowest common denominator for a death sentence, not a search for the worst of the worst.

Thus, in our death penalty system thousands of cases go through the initial stages of prosecution and sentencing with the public assuming that the relative few that emerge are the ones most deserving of death. Appellate review, however, in both state and federal courts, then finds that prejudicial mistakes were made in two-thirds of these cases, resulting in the death sentences being overturned.[23] The stated reasons for these reversals often have nothing directly to do with the proportionality of the sentence to the crime. Cases are overturned because defense lawyers failed to perform their professional duties at trial, prosecutors withheld exculpatory evidence, or the jury was improperly selected, among many reasons. When these cases are retried (or reconsidered by the prosecution), the judgment most often changes to a life sentence, or less. No longer are these defendants deemed the worst of the worst, even though the facts of the crimes remain the same.

*There are many people who commit heinous crimes, and I'd be the first to stand up with emotion and say they should lose their lives. But when I look at the unfairness of it, the fact that the poor and people of color are most often the victims when it comes to the death penalty, and how many cases we've gotten wrong now that we have DNA evidence to back us up, I mean, it just tells me life imprisonment is penalty enough.*
**-Sen. Dick Durbin (IL)[24]**

These reversals challenge the death-penalty selection process in two ways: first, prosecutors, juries, and judges are often making critical decisions on the basis of incomplete or incorrect information. Some of the errors, but by no means all, are caught. A defendant can have a bad lawyer at trial and another bad lawyer on appeal, so there is no one to remedy the deficiencies of the first lawyer. Evidence withheld at trial by the prosecution is not always uncovered during appeals. So, even when a defendant is near execution, critical facts bearing on the appropriateness of the sentence may remain unrevealed.

The second way in which the appeals process contributes to the arbitrariness of the death penalty is that reversals are very uneven from state to state. Virginia, for example, is the second leading state in terms of executions. Between 1973 and 1995, the Virginia Supreme Court overturned only 10% of the death sentences reviewed, compared to a national reversal rate of 41%.[25] At the next level, Virginia's cases are reviewed by federal courts of the Fourth Circuit, which had the lowest record of reversals in capital cases in the entire country during the same period.[26] As a

result, about 70% of Virginia's death sentences have resulted in executions, compared to 15% nationally.  In California from 1997 to 2010, close to 90% of the Supreme Court's capital cases were affirmed, a rate higher than any other state's.[27]

Compare this to Mississippi, where from 1973 to 1995, 61% of the capital cases reviewed were reversed by the state Supreme Court; or North Carolina, where also 61% were reversed; or South Carolina, where 54% were reversed.[28]  Such wide disparities in reversal rates raise the specter of uneven application of the law.

Examining what happens to death-sentenced defendants the second time through the system demonstrates the critical importance of a reversal in a death penalty case:

- In **North Carolina**, about 2/3 of the death penalty cases that completed the review process were reversed. About 65% of the defendants in those cases were given life sentences or less as the final disposition of their cases; another 9% died in prison of natural causes.[29]

- As of 2009, **Pennsylvania,** with the fourth largest death row in the country, has had 124 death sentences reversed on appeal. When these cases were retried or otherwise resolved, 95% resulted in a life sentence, or less.  The state has had 3 executions in 30 years, all involving defendants who abandoned their appeals.[30]

- In **Washington**, 18 death sentences have been reversed; none resulted in death sentences the second time around.[31]

- In **New York** and **New Jersey**, no case made it through the entire appeals process to execution, and both states have now abandoned the death penalty.

Nationally, the most comprehensive study of death penalty appeals found that two-thirds of death sentences were overturned, and upon reconsideration over 80% received an outcome of less than death.[32]  In all of these re-sentencings, the judgment went from "worst of the worst" to something less severe—the difference between life and death.

In sum, this is a broken and unreliable system, compounded by wide disparities between states.  In some states most death sentences are overturned and almost no one is executed, but in others, like Texas and Virginia, where reversals are rare, over 575 people have been executed since 1976, almost half of the national total.

# III. The Great Divide

*I have been a judge on this Court for more than twenty-five years . . . After all these years, however, only one conclusion is possible: the death penalty in this country is arbitrary, biased, and so fundamentally flawed at its very core that it is beyond repair.*

**-Judge Boyce Martin, U.S. Court of Appeals, Sixth Circuit**

*When Gary Ridgway, the worst mass murderer in this state's history, escapes the death penalty, serious flaws become apparent. The Ridgway case does not 'stand alone,' as characterized by the majority, but instead is symptomatic of a system where all mass murderers have, to date, escaped the death penalty . . . . The death penalty is like lightning, randomly striking some defendants and not others.*

**-Justice Charles Johnson, Washington Supreme Court**[33]

Both our general prison population and death row contain dangerous individuals convicted of serious crimes.  But it would be hard to predict whether an inmate ended up on death row or in the general prison population if you were to examine only the facts of the crime.  It would be even harder to foresee who would eventually be executed.  The fact that a condemned inmate was in Texas or Virginia would be a far better predictor of execution than the facts of the crime.

There are many reasons why a particular defendant does not receive the death penalty.  He could be in a state that does not have capital punishment, such as Wisconsin's Jeffrey Dahmer, a serial killer and sex offender who received a life sentence.  He may have information to offer the prosecution in exchange for a plea bargain, such as former FBI Agent Robert Hanssen, who was charged with espionage and faced a federal death sentence before cooperating with the government.[34]  Those involved in organized-crime killings may also receive leniency because of the information they can offer.  Often the most notorious cases receive the best legal defense, making a death sentence less likely, even for horrific crimes.

| **Who is executed?** | **Who is spared?** |
|---|---|
| **Clarence Carter** was executed in Ohio on April 12, 2011, for the murder of another inmate. The former Director of Ohio Prisons, Terry Collins**,** urged the governor to spare Carter because "It is much more likely that this was an inmate fight that got tragically out hand.  Inmate- | **Eric Rudolph** admitted killing two people and injuring 150 others by carrying out a series of bombings at a gay nightclub, abortion clinics, and the 1996 Olympics in Atlanta.  He finally was captured in 2003.  In separate plea |

on-inmate violence in lockups is often pursued to establish oneself as fearsome and to deter others from threatening or attacking the inmate." There was no evidence that Carter planned to kill the inmate during the fight.[35]

agreements with the federal government and Georgia prosecutors, he avoided the death penalty and is serving four consecutive life sentences without the possibility of parole. Prosecutors spared Rudolph from execution in exchange for his guilty pleas and his information about the location of 250 pounds of dynamite he had hidden in the mountains of North Carolina.[36]

**Teresa Lewis** was executed in Virginia in 2010. Requests for a commutation of her death sentence had come from mental health groups, the European Union, and novelist John Grisham. Many pointed to the fact that while Lewis was a conspirator in the crime, the two co-defendants who actually carried out the killings received life sentences. Information that became available after Lewis's trial showed she had an IQ of 72, one of the key components of intellectual disability that could have rendered her death sentence unconstitutional. A letter from one of the co-defendants in prison indicated he had manipulated Lewis into going along with the murder of her husband. While on death row, she reportedly was a great help to other prisoners.[37]

**James Sullivan,** a millionaire and former fugitive on the FBI's most-wanted list, was captured in Thailand in 2002, four years after he was indicted on murder charges and 15 years after he paid a truck driver $25,000 to kill his wife in Georgia. A jury sentenced him to life without parole.[38]

**Michael Richard** needed the help of his sisters to dress himself until age 14. He cut his meat with a spoon because he could not use a knife. He was diagnosed as mentally retarded by Dr. George Denkowski, but Denkowski reversed himself after the District Attorney's Office intervened.[39] (Dr. Denkowski has since been barred from rendering further diagnoses of intellectual disabilities in Texas.) Richard was the last person executed in the U.S. in 2007. After the U.S. Supreme Court agreed to hear a challenge to lethal injection, every other defendant was granted a stay of execution. However, Richard's attempt to file a similar appeal was blocked because a Texas appellate judge refused to keep the courthouse open after 5 pm so his lawyers could file legal papers due that day.[40]

In Washington in 2003, **Gary Ridgway** pleaded guilty to killing 48 people and received a life-without-parole sentence. He was called the "Green River Killer" because of the area in which his victims were found. He was spared the death penalty in exchange for a detailed confession about all of the young women he had murdered.[41]

**Fell Motion Appendix0017**

**Kelsey Patterson** was executed in Texas in 2004 despite a highly unusual 5-1 recommendation for clemency from the Board of Pardons and Paroles. He had spent much of his life in and out of state mental hospitals, suffered from paranoid schizophrenia, and rambled unintelligibly at his execution. He had killed 2 people without warning or apparent motive.[42]

**Charles Cullen** received 11 consecutive life sentences for killing as many as 29 intensive-care patients with fatal injections.  In  2004 Cullen made a plea agreement with New Jersey and Pennsylvania prosecutors in which he offered to provide information about his crimes and the names of his victims in exchange for the states' agreement not to seek the death penalty.[43]

**Wanda Jean Allen** was executed in Oklahoma in 2001.  She was sentenced to death for killing her lover, Gloria Leathers, in Oklahoma City in 1988. The two women, who met in prison, had a turbulent relationship. Leathers' death followed a protracted argument between the couple that began at a local shop, continued at their home, and culminated outside a police station. Allen maintained she acted in self-defense. In 1995, a psychologist conducted a comprehensive evaluation of Allen and found "clear and convincing evidence of cognitive and sensori-motor deficits and brain dysfunction," possibly linked to an adolescent head injury.[44]

**Thomas Capano**, a former state prosecutor and prominent Delaware lawyer, was convicted of murdering his mistress and dumping her body in the ocean.  He was sentenced to death, but a state court overturned his sentence. In 2006, the state decided not to pursue the death penalty at retrial, with the original prosecutor stating, "The death penalty was always a secondary issue."[45]

**Manny Babbitt** lived with his brother in California after being released from a mental institution. He had been suffering from post-traumatic symptoms ever since he returned from Vietnam in 1969.  During the 77-day siege at Khe Sanh, Manny picked up pieces of the bodies of his fellow G.I.s. When he was wounded, he was evacuated in a helicopter on a pile of dead bodies.  He later broke into the home of an elderly woman and beat her. She died of a heart attack.  His brother turned him over to authorities, expecting his war-hero brother would receive the medical attention he needed. However, Babbitt was tried, sentenced to death and executed in 1999, shortly after receiving the Purple Heart in prison.[46]

In 2003, **Stephen "The Rifleman" Flemmi** was allowed to plead guilty to 10 murders, drug trafficking, racketeering and extortion, as federal prosecutors agreed not to seek the death penalty against him in exchange for his cooperation with ongoing crime investigations. Under the terms of the agreement, Flemmi--who also admitted to murders in Florida and Oklahoma--will serve a life-without-parole sentence in a secure unit reserved for cooperating inmates. Among the murders committed by Flemmi were the murder of one girlfriend and the daughter of another.[47]

**Dwayne Allen Wright** was executed in Virginia in 1998. Wright was 17 at the time of his crime, the product of a failed system of juvenile care in the District of Columbia. Wright had been admitted to St. Elizabeth's mental hospital and sent to two of the city's most notorious juvenile centers. He suffered from a number of mental problems and grew up with an incarcerated father, a mentally ill mother, and an older brother serving as his father until he was murdered when Wright was ten.  At trial his lawyers played down these issues.  Two jurors later said they would not have voted for death if they had known of his mental illness and intellectual shortcomings.  Although Wright's case captured the attention of noted civil rights, religious and political leaders, he was shown no mercy. Wright was one of three juvenile offenders executed in Virginia after the death penalty was reinstated. The Supreme Court did not bar such executions of juvenile offenders until 2005.[48]

**Brian Nichols** was in custody in a crowded Atlanta courthouse on a rape charge when he grabbed the gun of a deputy and shot and killed the judge and court reporter.  While escaping from the courthouse, he killed a police deputy and U.S. Customs agent and took a woman hostage.  He later agreed to turn himself in.  His guilt was never in question, but after the state spent over $3 million trying to sentence him to death, the jury could not agree on sentence and hence Nichols was sentenced to life without parole.[49]

**Harold McQueen** was the first person executed in Kentucky in 35 years. McQueen was tried with his half-brother, Keith Burnell, for a robbery and murder. While Burnell's father paid for a private attorney, McQueen had a court-appointed lawyer who, at the time of trial, could be paid a maximum of only $1,000 for handling the case.  McQueen was electrocuted in 1997; Burnell was sentenced to prison and paroled shortly thereafter.[50]

**Oscar Veal** was a contract killer for a large drug and murder-for-hire operation.  Convicted of seven counts of murder and eight counts of racketeering conspiracy, in 2011 federal prosecutors agreed not to seek the death penalty against him in exchange for his testimony about a drug organization in Washington, D.C.  Although prosecutors said, "[Veal] willingly and purposely killed seven men, motivated by both greed and the desire to please the other members of this violent gang," they called his cooperation "extraordinary by any measure" and recommended a prison sentence of 25 years.[51]

**Jesse Dewayne Jacobs** was executed in 1995 in Texas. After Jacobs's trial, at which he was accused of firing the murder weapon, the prosecution, in an unsuccessful attempt to get another death sentence against the co-defendant, reversed itself and claimed Jacobs did not do the shooting and did not even know that his co-defendant had a gun.  Despite this

**Juan Quintero**, a Mexican immigrant with no identification papers, killed a Houston police officer after being stopped for speeding in Texas in 2006. Unlike many other foreign nationals, the Mexican government learned of his case and was able to provide assistance, bringing in a mitigation specialist and an

blatant inconsistency about who committed the murder, Jacobs's death sentence was upheld. The Vatican, the European Parliament, and some members of the U.S. Supreme Court objected to the state's misconduct. Justice Stevens wrote: "I find this course of events deeply troubling."[52]

expert capital defender from Colorado.  In 2008, a jury convicted Quintero of the murder, but at least 10 of the 12 jurors voted for a life-without-parole sentence instead of the death penalty.  Houston is in Harris County, which has been called the "capital of capital punishment."[53]

**John Spenkelink** was a 24-year-old former convict and drifter. He picked up a hitchhiker, another ex-convict, in the Midwest, and together they drove to Florida. Along the way the hitchhiker, who was larger and stronger, forced Spenkelink to have sexual relations with him and bullied him into playing Russian roulette. When they reached Tallahassee, Spenkelink discovered his abuser had also stolen his money. They fought, and Spenkelink shot the man to death.  He was executed in 1979, the first person put to death in Florida after the death penalty was reinstated.[54]

In a recent New York trial in in which the federal government sought the death penalty for Vincent Basciano, who was already serving life without parole, the chief witness against him was **Joseph Massino,** another organized-crime figure. Massino was guilty of at least seven murders but escaped the death penalty because of his cooperation with the government.[55]  He is serving numerous life sentences, but his testimony may win him further relief.  In the end, Basciano was also given a life sentence by the jury, despite his conviction for murder, racketeering, and conspiracy.

**Cameron Willingham** was convicted of capital murder of his three children in Texas after arson investigators concluded an accelerant had been used to set three separate fires inside his home.  The only other evidence presented by prosecutors during the trial included testimony from a jailhouse snitch and reports that Willingham was acting inappropriately after the fire.  Before his execution in 2004, Willingham's attorneys presented the state's highest court and the governor with new testimony from a prominent fire expert questioning the conviction, but no stay was granted.  Subsequently, four national arson experts concluded the original arson investigation was flawed and there was no evidence of a crime.[56]

**Ernest Ray Willis** was sentenced to death in Texas for the 1986 deaths of two women who died in a house fire that was ruled arson. Investigators originally believed they had found an accelerant in the carpet. When officers at the scene of the blaze said Willis acted strangely, prosecutors arrested him. They used his dazed mental state at trial - the result of state-administered medication - to characterize Willis as "coldhearted" and a "satanic demon." Seventeen years later, the Pecos County District Attorney revisited the case after a federal judge overturned Willis' conviction.  To review the original evidence, he hired an arson specialist, who concluded there was no evidence of arson.  Willis was freed in 2004.[57]

Aside from the issue of mistakes, these cases show that society has priorities that supersede the demands for the death penalty, regardless of the severity of the offense.  They indicate that executions of the worst offenders are not necessary for the safety of the public; if they were, the most notorious killers almost certainly would be executed.  In the modern death penalty era, many of the country's most infamous offenders are serving life sentences in secure state and federal prisons, while those who have fewer resources, or no valuable information to barter, or who committed their crime in the "wrong" state or county, are executed.

Even in cases evoking national fear, a death sentence is not a predictable result. From 1978 to 1995, Theodore Kaczynski, the "Unabomber," sent 16 bombs to people at universities and airlines, killing 3 and injuring 23, resulting in a national manhunt and widespread public anxiety. Although the death penalty was originally sought, the case resulted in a plea bargain and a life-without-parole sentence in federal prison.[58] Skilled representation and Kaczynski's mental illness played a role in avoiding the death penalty, but as the cases above show, many mentally ill defendants meet a different fate.

Zacharias Moussaoui admitted his involvement in the 9/11 terrorist attacks in New York and Washington, D.C. that led to the deaths of over 3,000 people.  He tried to represent himself in the sentencing phase of his federal trial in Virginia, but his abuse of the process led the judge to require experienced counsel to represent him.  In 2006, a jury sentenced him to life without parole.[59]

## Even When Notorious Killers Are Executed, Arbitrariness Remains

Of course, some notorious offenders are executed.  Timothy McVeigh was the first person executed under the reinstated federal death penalty for the 1995 bombing of the Oklahoma City building, in which 167 people died.  However, his co-defendant, Terry Nichols, was given life sentences following convictions in both federal and Oklahoma courts, despite being found guilty of conspiracy in the same crime.  Although Nichols was probably less culpable of the bombing than McVeigh, his crime was monumental compared to those of others who were executed.

Serial killer Ted Bundy was executed in Florida in 1990.  Everyone knew of his crimes and smug demeanor.  What many did not know was that Bundy was offered a plea bargain similar to that given other serial killers described above.  His attorneys urged him to take the deal, which would have covered all of his offenses in Florida, but at the last minute he balked, perhaps attracted by the attention an execution could bring him.  Bundy's crimes fit the profile of cases for which people believe the death penalty was designed, but in the end, he controlled the process.  His unpredictable decision to seize the role of anti-hero, rather than a careful process of official decision-making, determined his fate.[60]

Our criminal justice system is frequently confronted with dangerous individuals guilty of heinous crimes--yet almost all of them will remain in prison and never be executed. The few who are executed generally are not the most dangerous offenders.  They may not have had information to offer the prosecution, or they may have adamantly refused a plea bargain.  They are put to death many years, and sometimes decades,

after their crime, and have often changed substantially from who they once were.

## IV. The Judgment of Experts

Even before states tried to formulate a system that would satisfy the Supreme Court's concerns about the arbitrariness of the death penalty, experts warned it was a futile endeavor. In 1953, the British Royal Commission studied the death penalty and concluded, "No formula is possible that would provide a reasonable criterion for the infinite variety of circumstances that may affect the gravity of the crime of murder."[61] Ultimately, the Commission recommended that the death penalty in Great Britain be ended, and in 1973 it was.

The American Law Institute, authors of the Model Penal Code, agreed the death penalty could not easily be put into a set of rules for jurors to follow: "[T]he factors which determine whether the sentence of death is the appropriate penalty in particular cases are too complex to be compressed within the limits of a simple formula . . . ."[62]

Nevertheless, in 1976 the Court approved a list of aggravating and mitigating factors when it allowed the death penalty to



resume. By a vote of 7 to 2, the Court approved Georgia's framework of guided-discretion in *Gregg v. Georgia*.[63] Justices Thurgood Marshall and William Brennan, believing the death penalty could not be saved by merely amending the old statutes, dissented.

## A Majority of the 1976 Justices

It now appears that at least three of the Justices in the *Gregg* majority would belatedly have joined Justices Marshall and Brennan if they had had the opportunity. One of those Justices was Harry Blackmun, who famously announced his reconsideration of the death penalty in 1994, shortly before he left the bench. He concluded the theory he had upheld in 1976 had not worked in practice:

> From this day forward, I no longer shall tinker with the machinery of death. For more than 20 years I have endeavored--indeed, I have struggled--along with a majority of this Court, to develop procedural and substantive rules that would lend more than the mere appearance of fairness to the death penalty endeavor. Rather than continue to coddle the Court's delusion that the desired level of fairness has been achieved and the need for regulation eviscerated, I feel morally and intellectually obligated to concede that the death penalty experiment has failed.[64]

Justice Lewis Powell came to a similar conclusion after retiring from the Court. He told his biographer, James Jeffries, that his approval of the death penalty while on the Court was the one area he had come to regret: "I have come to think that capital punishment should be abolished."[65]

Finally, Justice John Paul Stevens, who remained on the Court for almost the entire 35 years of the post-*Gregg* era, gradually became convinced the death penalty is unconstitutional:

> [T]he imposition of the death penalty represents "the pointless and needless extinction of life with only marginal contributions to any discernible social or public purposes. A penalty with such negligible returns to the State [is] patently excessive and cruel and unusual punishment violative of the Eighth Amendment."[66]

Thus if the composition of the Court at the time of *Gregg* in 1976 were in place today, the vote on the constitutionality of the death penalty would be at least 5-4 in favor of banning capital punishment.

## Prominent Legal Organizations

The conclusion of the Justices that the death penalty should be reconsidered in light of its record since 1976 was echoed by the prestigious **American Law Institute** (ALI), an organization comprising the country's leading jurists and legal scholars. Although the ALI had been skeptical about providing adequate guidance to juries on death sentencing, it nevertheless had offered as part of the Model Penal Code a framework of aggravating and mitigating factors, which many states followed. Recently, however, the ALI decided that the entire framework should be withdrawn. In 2009, while not taking a stand on the death penalty itself, the ALI voted to rescind the parts of their Model Penal Code dealing with the death penalty because the attempt to channel the death penalty toward only the worst offenders had failed. The report submitted by the ALI Council to its members stated:

**Fell Motion Appendix0023**

Unless we are confident we can recommend procedures that would meet the most important of the concerns, the Institute should not play a further role in legitimating capital punishment, no matter how unintentionally, by retaining the section in the Model Penal Code.[67]

The ALI based its withdrawal from the death penalty arena on a research report it commissioned from law professors Carol and Jordan Steiker. Their thorough analysis of the modern death penalty concluded:

The foregoing review of the unsuccessful efforts to constitutionally regulate the death penalty, the difficulties that continue to undermine its administration, and the structural and institutional obstacles to curing those ills forms the basis of our recommendation to the Institute. The longstanding recognition of these underlying defects in the capital justice process, the inability of extensive constitutional regulation to redress those defects, and the immense structural barriers to meaningful improvement all counsel strongly against the Institute's undertaking a law reform project on capital punishment, either in the form of a new draft of § 210.6 or a more extensive set of proposals. Rather, *these conditions strongly suggest that the Institute recognize that the preconditions for an adequately administered regime of capital punishment do not currently exist and cannot reasonably be expected to be achieved.*[68]

Other leading organizations have come to similar conclusions about the state of the death penalty since the *Gregg* decision in 1976. The **American Bar Association**,

after years of advocating reforms to the death penalty system, agreed in 1997 to call for a moratorium on all executions. That resolution remains in force today. The report supporting this historic step stated:

Two decades after *Gregg*, it is apparent that the efforts to forge a fair capital punishment jurisprudence have failed. Today, administration of the death penalty, far from being fair and consistent, is instead a haphazard maze of unfair practices with no internal consistency.[69]

**The Constitution Project,** a non-profit organization of legal experts focused on reforming the justice system, similarly reviewed the status of the death penalty, issuing a report in 2001 entitled "Mandatory Justice: Eighteen Reforms to the Death Penalty." It called for a series of legislative steps to bring the death penalty into compliance with minimal constitutional requirements. On the problem of arbitrariness identified by the Supreme Court in 1972, it concluded little had changed:

We are now faced with state systems that vary vastly from one another, but most of which pose almost as great a risk of arbitrary, capricious, and discriminatory application as three decades ago, when the Court called for reform in *Furman v. Georgia.*[70]

Few of its recommendations have been adopted.

# Other Jurists

Other prominent individuals have also weighed in on the continuing problem of arbitrariness in the death penalty. Retired Federal Appeals Court Judge H. Lee Sarokin recently offered a harsh critique of

the system. Citing the arbitrariness at every level, Judge Sarokin concluded the death penalty should not be permitted to continue:

> *The system is too fraught with variables to survive.* Whether or not one receives the death penalty depends upon the discretion of the prosecutor who initiates the proceeding, the competence of counsel who represents the defendant, the race of the victim, the race of the defendant, the make-up of the jury, the attitude of the judge, and the attitude and make-up of the appellate courts that review the verdict.[71]

Judge Boyce F. Martin, Jr. of the U.S. Court of Appeals for the Sixth Circuit reached a similar conclusion:

> I have been a judge on this Court for more than twenty-five years. In that time I have seen many death penalty cases and I have applied the law as instructed by the Supreme Court and I will continue to do so for as long as I remain on this Court. This my oath requires. After all these years, however, only one conclusion is possible: *the death penalty in this country is arbitrary, biased, and so fundamentally flawed at its very core that it is beyond repair.*[72]

Finally, former Chief Justice Deborah Poritz of the New Jersey Supreme Court, reflecting on her years of trying to make the state's death penalty fair, said, "We really can find no way to do this that will take the arbitrariness out of the system."[73]

## Public Opinion

Legal experts are not the only ones concerned about the arbitrary nature of the death penalty.  Whatever their views about the death penalty in theory, the public is very concerned about the manifest unfairness in its application.  In a 2010 national survey of registered voters by Lake Research Partners,[74] respondents rated the problem of unfairness as one of the top reasons to replace the death penalty with a sentence of life in prison, ranking it high, along with their concerns about innocence and the frustration the death penalty causes victims' families.  Sixty-nine percent (69%) found the following statement convincing:

> Our criminal justice system should treat all people equally, regardless of how much money they make, where they live, or the color of their skin.  In reality, the death penalty is applied unevenly and unfairly, even for similar crimes. Some people are sentenced to die because they couldn't afford a better lawyer, or because they live in a county that seeks the death penalty a lot.  A system that is so arbitrary should not be allowed to choose who lives and who dies.[75]

Men and women, young and old, black and white, all rated unfairness as the concern they found most convincing among the problems with the death penalty. The perception that the death penalty is not fairly administered has led many people to support repeal of capital punishment.  In the same survey, when asked what the proper punishment for murder should be, 61% opted for various forms of a life sentence, and only 33% said the punishment should be the death penalty.[76]

These doubts about the death penalty have contributed to the dramatic 60% decline in new death sentences in the past decade, even in states like Texas.[77]  These doubts also make it difficult to select a jury in a capital case.  Prospective jurors are quizzed about their views on the death penalty, and those who express serious concerns about applying it can be dismissed

by the judge or prosecution.  In a separate survey, almost 40% of Americans said they believe they would be eliminated from serving on a death penalty jury because of their views on capital punishment.  The percentage among some minorities was even higher.[78]

# V. Influences on the Decision for Death

*I never saw a way that you could make the death penalty consistent across jurisdictions, juries, counties, and prosecutors.*

**- Dee Joyce Hayes, 20-year veteran prosecutor and former St. Louis Circuit Attorney**

Although the application of the death penalty remains arbitrary, the choice of who is executed and who is spared is not random. Today's death penalty is not only determined by factors having little to do with the severity of the crime or the culpability of the criminal, but it also is unfairly applied, in that the determinative factors often are the same ones that repeatedly have marred our commitment to equal justice.

## Influence of Race

One of the strongest determinants of who gets the death penalty is the race of the victim in the underlying murder.  If one kills a white person, one is far more likely to get the death penalty than if one kills a member of a minority.  This has been demonstrated for at least 25 years, and reinforced by careful statistical studies in almost all death penalty states and by several review commissions.

As far back as 1990, the U.S. General Accounting Office reviewed studies on race and the death penalty and concluded:

> In 82% of the studies [reviewed], race of the victim was found to influence the likelihood of being charged with capital murder or receiving the death penalty, i.e., those who murdered whites were found more likely to be sentenced to death than those who murdered blacks.  This finding was remarkably consistent across data sets, states, data collection methods, and analytic techniques.[79]

One of the most comprehensive studies of race and the death penalty was conducted by Professor David Baldus in preparation for a case eventually reviewed by the U.S. Supreme Court.  Professor Baldus and statisticians at the University of Iowa reviewed over 2,000 potential death penalty cases in Georgia and matched them with 230 variables that might influence whether a defendant would receive a death sentence.  After extensive review, they concluded that the odds of receiving the death penalty in Georgia were 4.3 times greater if the defendant killed a white person than if he killed a black person.[80]

Ultimately, the Supreme Court upheld Georgia's death penalty system by a vote of 5-4.[81]  The Court assumed the validity of the Baldus study and recognized that inequities existed in the criminal justice system. However, the Court was unwilling to reverse McCleskey's death sentence on the basis of this statistical study.  Doing so would have, in the Court's view, threatened the entire criminal justice system.

In his dissent in *McCleskey,* Justice Brennan eloquently summarized the impact of Baldus's findings on individual defendants:

At some point in this case, Warren McCleskey doubtless asked his lawyer whether a jury was likely to sentence him to die. A candid reply to this question would have been disturbing. First, counsel would have to tell McCleskey that few of the details of the crime or of McCleskey's past criminal conduct were more important than the fact that his victim was white. Furthermore, counsel would feel bound to tell McCleskey that defendants charged with killing white victims in Georgia are 4.3 times as likely to be sentenced to death as defendants charged with killing blacks. In addition, frankness would compel the disclosure that it was more likely than not that the race of McCleskey's victim would determine whether he received a death sentence . . . . Finally, the assessment would not be complete without the information that cases involving black defendants and white victims are more likely to result in a death sentence than cases featuring any other racial combination of defendant and victim. The story could be told in a variety of ways, but McCleskey could not fail to grasp its essential narrative line: *there was a significant chance that race would play a prominent role in determining if he lived or died.*[82]

Subsequent studies in states around the country have revealed how pervasive this problem is.  In a report prepared for the American Bar Association, Professors Baldus and Woodworth expanded on the GAO's review of studies on race discrimination in capital cases. They found relevant data in three-quarters of the states with prisoners on death row. In 27 of those states (93% of the studies), there was evidence of race-of-victim disparities, i.e., the race of the person murdered correlated

with whether a death sentence would be given in a particular case. In nearly half of those states, the race of the defendant also served as a predictor of who received a death sentence.[83]

In Florida, for example, a defendant's odds of receiving a death sentence is 4.8 times higher if the victim is white than if the victim is black in similar cases. In Oklahoma the multiplier is 4.3, in North Carolina it is 4.4, and in Mississippi it is 5.5.[84]

Since that review new studies have reached similar results.  A study conducted by Professors Glenn Pierce and Michael Radelet and published in the 2011 *Louisiana Law Review* showed that in parts of Louisiana the odds of a death sentence were 2.6 times higher for those charged with killing a white victim than for those charged with killing a black victim.[85]

A study of the death penalty in Arkansas published in 2008 showed similar racial patterns in sentencing.  Professor Baldus examined 124 murder cases filed in one district from 1990 to 2005.  After adjusting for factors such as the defendant's criminal history and the circumstances of the crime, black people who killed white people were significantly more likely than others to be charged with capital murder and sentenced to death.[86]

A sophisticated statistical study of homicide cases in South Carolina by Professor Isaac Unah of the University of North Carolina at Chapel Hill and attorney Michael Songer found that prosecutors were more likely to seek the death penalty when the victim in the underlying murder was white or female:

South Carolina prosecutors processed 865 murder cases with white victims and sought the death penalty in 7.6% of them. By contrast, prosecutors sought the death

penalty in only 1.3% of the 1614 murder cases involving black victims. . . .The data further suggest that non-Whites are far more likely than Whites to be homicide victims in the state. About 62% of homicide victims in the study were non-Whites; virtually all of these victims were African American. . . . South Carolina prosecutors were 5.8 times as likely to seek the death penalty against suspected killers of Whites as against suspected killers of Blacks.[87]

In a comprehensive study in 2005 covering 20 years and almost two thousand capital cases in Ohio, the Associated Press found the death penalty had been applied in an uneven and arbitrary fashion. The study analyzed 1,936 indictments reported to the Ohio Supreme Court by counties with capital cases from October 1981 through 2002 and concluded that offenders facing capital charges were twice as likely to be sentenced to death if they killed a white person than if they killed a black person. Death sentences were handed down in 18% of cases where the victims were white, compared with 8.5% of cases where victims were black.[88]

## Interaction With Geography

The reasons for racial disparities in death sentencing are not hard to find. For prosecutors and juries, choosing which cases are the worst and the most deserving of death is largely a subjective judgment. If the prosecutor is white, if the media highlights the death of a prominent white victim or if the jury is predominantly or entirely white, the perception that white-victim cases are more heinous, and thus more deserving of death, is predictable.

This is not necessarily the result of racial prejudice; it also can correlate with geography. Murders are affronts to the community, but prosecutors in communities with largely black populations may believe their constituents are not as supportive of the death penalty, or that jurors in that community would be less likely to vote for the death penalty. Opinion polls appear to bear this out.

When selecting a jury, prosecutors with no racial agenda may still prefer an all-white jury because they believe such a jury would be more likely to convict the defendant and sentence him to death than a mixed-race jury. The system becomes self-reinforcing. For example, a prosecutor who knows the jury will be mainly black may choose not to seek the death penalty. The net result is a preference for white victims killed in predominantly white communities.

These race-correlated disparities in outcome may be explicable, but it does not follow that racial differences in death sentencing should be sanctioned in a criminal justice system committed to even-handed, non-arbitrary outcomes.

*There's indifference to excluding people on the basis of race, and prosecutors are doing it with impunity. Unless you're in the courtroom, unless you're a lawyer working on these issues, you're not going to know whether your local prosecutor consistently bars people of color.*
**-Bryan Stevenson, Equal Justice Initiative**

A recent study of the Equal Justice Initiative (EJI), a human rights and legal services organization in Alabama, found the practice of excluding blacks and other racial minorities from juries remains widespread

and largely unchecked, especially in the South.  "Illegal Racial Discrimination in Jury Selection: A Continuing Legacy" revealed that Alabama courts have found racially discriminatory jury selection in 25 death penalty cases since 1987, and in some counties 75% of black jury pool members in capital cases were excluded.[89]

The same study revealed that in Jefferson Parish, Louisiana, the Louisiana Capital Assistance Center found blacks were struck from juries more than three times as often as whites between 1999 and 2007.  In North Carolina, at least 26 current death row inmates were sentenced by all-white juries.  According to Bryan Stevenson, Executive Director of EJI, "There's indifference to excluding people on the basis of race, and prosecutors are doing it with impunity. Unless you're in the courtroom, unless you're a lawyer working on these issues, you're not going to know whether your local prosecutor consistently bars people of color."[90]

# Cases Cluster Within a State

Clearly the death penalty is applied unevenly around the country.  Eighty-two percent (82%) of the country's executions occur in the South.

However, even within states death sentences and capital prosecutions typically cluster in a few areas.[91]  An investigation by seven Indiana newspapers in 2001 found that seeking the death penalty depended on factors such as the views of individual prosecutors and the financial resources of the county in which the crime was committed. Two Indiana counties have produced almost as many death sentences as all of the other Indiana counties combined.[92]

When New York had the death penalty, upstate counties experienced 19% of the state's homicides but accounted for 61% of all capital prosecutions. Three counties (out of 62 in the state) were responsible for over one-third of all of the cases in which a death notice was filed.[93]

A report by the ACLU of Northern California revealed that in 2009 three counties–Los Angeles, Orange, and Riverside–accounted for 83% of the state's death sentences.[94]

A recent article in *Second Class Justice*, a blog dedicated to addressing unfairness and discrimination in the criminal justice system, cited figures from the American Judicature Society revealing that only 10% of U.S. counties accounted for all of the death sentences imposed between 2004 and 2009, and only *5%* of the counties accounted for all of the death sentences imposed between 2007 and 2009. Even in states that frequently impose death sentences (such as Texas, Alabama, Florida, California, and Oklahoma), only a few counties produce virtually all of the state's death sentences.  According to the study:

> The murders committed in those counties are no more heinous than murders committed in other counties, nor are the offenders in those counties more incorrigible than those who commit crimes in other counties. Examination of prosecutorial practices demonstrate that some prosecutors seek death in cases in their jurisdictions while other prosecutors in the rest of the state do not seek death for the same–or even more aggravated– murders.[95]

In Maryland for many years almost all of the death cases came from predominantly white Baltimore County, and almost none

from predominantly black Baltimore City.  In 2002, Baltimore City had only one person on Maryland's death row, but suburban Baltimore County, with one tenth as many murders as Baltimore, had nine times as many on death row.[96]

In Ohio's Cuyahoga County (Cleveland), a Democratic stronghold, just 8% of offenders charged with a capital crime received a death sentence.  In conservative Hamilton County (Cincinnati), 43% of capital offenders ended up on death row.[97]

Death penalty prosecutions in Missouri also illustrate the county-by-county arbitrariness across the country. St. Louis Circuit Attorney Jennifer Joyce, whose jurisdiction covers the city, has never taken a capital case to trial since her election in 2001, but Prosecuting Attorney Robert McCulloch, whose jurisdiction is the neighboring suburban county, has won death sentences against 10 people since 2000, although the county has only one-fourth as many murders as the city.[98] The two longtime Democrats have adjacent jurisdictions, one urban and one more rural.

The St. Louis Circuit Attorney's predecessor, Dee Joyce Hayes, after 20 years working as a prosecutor and circuit attorney, acknowledged she found death sentences arbitrary: "I never saw a way that you could make the death penalty consistent across jurisdictions, juries, counties, and prosecutors."[99]

# Political considerations

*It's a roll of the dice. When I look at a lineup of a panel in this kind of case, you can almost go to the bank on what the result is going to be.*
**-Judge Nathaniel Jones, U.S. Court of Appeals, Sixth Circuit (ret.)**

The death penalty has always been plagued with political influence.  Elected prosecutors and judges know the power of seeking and supporting the death penalty when a murder shocks the community. More surprising is that even federal judges with lifetime appointments can be affected by politics in the death penalty decisions.

A *Cincinnati Enquirer* examination of death penalty decisions of the U.S. Court of Appeals for the Sixth Circuit, which considers cases from Ohio, Kentucky and Tennessee, revealed federal judges appear to vote consistently along party lines, thereby injecting arbitrariness into their death penalty rulings. The judges work mostly on randomly selected three-judge panels. Sixteen judges are eligible to sit on those panels, including nine Republican and seven Democratic appointees.  Life-and-death decisions often hinge on the defendant's luck of the draw. A defendant who gets a panel with 2 liberals has a far greater chance of avoiding execution than one with 2 conservatives.

"It's a roll of the dice. When I look at a lineup of a panel in this kind of case, you can almost go to the bank on what the result is going to be," said Nathaniel Jones, a retired Sixth Circuit judge appointed by President Jimmy Carter.[100]  Arthur Hellman, a University of Pittsburgh law professor added, "It looks very much like a lottery.

Literally, if someone lives or dies depends on the panel they get."[101]

According to the *Cincinnati Enquirer* investigation, appointees of President George H. W. Bush posted the most lopsided track record, voting 50-4 against granting inmates' capital appeals. President George W. Bush's appointees voted 34-5 against granting such appeals. By contrast,

President Carter's appointees voted 31-4 in favor of the inmates' appeals. Appointees of Presidents Clinton and Reagan were slightly less skewed. President Clinton's voted 75-32 in favor of inmates' appeals, and President Reagan's voted 39-13 against them. Ten of the 16 judges who currently hear Sixth Circuit death penalty appeals vote the same way (for or against the defendant) at least 80% of the time.

**ARBITRARINESS IN THE COURTS:** Votes in Capital Appeals by judges of the U.S. Court of Appeals for the Sixth Circuit

| President Making Appointments | % of Votes by Judges Against Defendant | % of Votes by Judges for Defendant |
|---|---|---|
| Jimmy Carter | 11% | 89% |
| Ronald Reagan | 75% | 25% |
| George H.W. Bush | 93% | 7% |
| Bill Clinton | 30% | 70% |
| George W. Bush | 87% | 13% |

Source: Cincinnati *Enquirer*, April 15, 2007.

Regardless of one's position on which set of judges was "correct," the influence of politics on what should be apolitical legal judgments is disturbing. Statistics like these do not prove that judges' decisions are influenced by their political leanings, but the stark contrast in outcomes strongly suggests that judgments in death penalty cases are subjective and influenced by other factors that interject a high degree of arbitrariness into the process.

# Costs

Part of the reason why geography plays such a prominent role in determining the use of the death penalty is the disparate resources available to counties responsible for paying for capital prosecutions. Death penalty cases are exorbitantly expensive,

often putting them out of reach for smaller counties. For a poorer rural county, paying for one death penalty case has been compared to coping with the effects of a natural disaster, and may require an increase in taxes.[102]

Texas prosecutors acknowledge that many smaller counties never send anyone to death row, partly because of a lack of funding. Wharton County District Attorney Josh McCown noted:

This is one of those things a district attorney doesn't like to talk about. You don't want to think that you're letting money come into play. You ought to consider the facts of a case and make your decisions in a vacuum. In a perfect world, that's the

way you do it. But in a county this size, you have to consider the level of expertise, the financial resources. If you don't, you're stupid. This is not a perfect system or a perfect world.[103]

Michael Rushford, president of the Criminal Justice League Foundation, a California pro-death penalty advocacy group, said, "I've got to believe in some places that money becomes a problem. If it's going to clean out the budget, there may be some pressure not to go for the death sentence."[104]

In Florida, a budget crisis has led to a cut in funds for state prosecutors.  As a result, some prosecutors are cutting back on their use of the death penalty, and perhaps on other prosecutions.  Florida State Attorney Harry Shorstein explained how available funds affect the administration of justice: "There will be cases that can't be tried. . . . We are strained to the breaking point. . . . Instead of seeking the death penalty, maybe we'll seek something else."[105]

## Other Factors

Several other factors that have nothing to do with the severity of the crime or the culpability of the criminal can affect the ultimate outcome of a capital case.  States differ vastly in the quality of representation afforded indigent defendants.  The number of attorneys assigned, their experience in death penalty matters, their rate of pay, and the funding made available for defense investigators and experts all affect a defendant's chances of avoiding a death sentence.[106]

The same is true on appeal.  There are no binding national standards for appellate representation, and states are not constitutionally required to provide attorneys

for death row inmates throughout the entire appeals process.[107]  While some states have public defender offices completely dedicated just to comprehensive capital defense, others leave defendants with no representation for parts of their appeal.  Although a few fortunate defendants have their appeals voluntarily taken on by large law firms that work for free and provide a high quality defense, many cases slip through the cracks—poorly defended at trial and even more poorly defended on appeal.

On rare occasions, the U.S. Supreme Court will review the quality of representation provided capital defendants, but the standard of review it and lower courts apply is highly deferential to the strategic decisions made by defense attorneys and to the state court that conducted or reviewed the trial.  Even where inadequate representation is apparent, such as when a lawyer has slept through part of the trial or failed to investigate critical facts, a court may still affirm the death judgment on the rationale that in its view better representation would not have made a difference in the outcome.

## Victim Impact Evidence

Since 1991 prosecutors have been allowed to interject another influential variable into death penalty sentencing trials: in-person statements from members of the victim's family about how they were affected by the murder.  Although this may be accepted as a way to counterbalance evidence about the redeeming qualities or disabilities of the accused, it can introduce arbitrariness into the proceedings.  Jurors are likely to be heavily influenced by emotional stories from distraught and angry family members about how the death of a loved one impacted them.[108]  In contrast, some victims' families may oppose the death penalty; other victims may have no family at all.[109]  Whether the defendant

receives a death sentence may be more heavily influenced by statements of the victim's family than by the crime he committed.

In a recent California case, the family of a murdered young woman was allowed to put on a lengthy video about their daughter's childhood, friends, and important life milestones.  The video was carefully edited, accompanied by moving, professionally produced music; it concluded with beautiful pictures of people—unrelated to the victim—riding horses in Canada as the music reached an emotional climax.[110] This compelling video may have been the deciding factor in the jury's death sentence, even though it made the crime no worse than a similar one in which the victim had a tough life that was not amenable to a moving portfolio of a photogenic family.

# VI. Conclusion

When the death penalty was permitted to go forward in 1976, many distinguished legal scholars warned that the task of creating an objectively fair system for deciding which criminals deserved to die and which should be allowed to live was impossible.  A majority of those on the Supreme Court that approved the experiment ultimately concluded the attempt to fix the death penalty had failed.

Thirty-five years later a strong body of empirical evidence confirms that race, geography, money, politics, and other arbitrary factors exert a powerful influence on determining who is sentenced to death.  This is the conclusion not only of experts, but increasingly that of the general public as well.  Unfairness ranks near the top of the American public's concerns about the death penalty.

As the use of the death penalty has declined, the rationale for its continuation has disappeared.  With defendants already facing life without parole, no one is likely to be deterred by an added punishment that is rarely imposed and even more rarely carried out many years later, and that is dependent on so many unpredictable factors.  Nor does the wish for retribution justify a death penalty that is applied so sporadically.  The reality is that those in society generally, and those families of murder victims in particular, who look to an execution to counter a terrible homicide will very likely be disappointed.  Very few of those cases result in execution, and those that do are often not the most heinous, but merely the most unlucky, recalling Justice Stewart's comparison in 1972 that receiving the death penalty is like being struck by lightning.

No longer looking only to the Supreme Court to review these issues, some states are choosing to act on their own.  Four states in the past four years have abolished the death penalty, bringing the total of states without capital punishment to sixteen.  As growing costs and stark unfairness become harder to justify, more states are likely to follow that path.

The post-*Gregg* death penalty in the United States has proven to be a failed experiment. The theory that with proper guidance to juries the death penalty could be administered fairly has not worked in practice.  Thirty-five years of experience have taught the futility of trying to fix this

system.  Many of those who favored the death penalty in the abstract have come to view its practice very differently.  They have reached the conclusion that if society's ultimate punishment cannot be applied fairly, it should not be applied at all.

The Death Penalty Information Center (DPIC) is a non-profit organization serving the media and the public with analysis and information on issues concerning capital punishment. The Center provides in-depth reports, issues press releases, conducts briefings for journalists, and serves as a resource to those working on this issue. The Center is funded through the generosity of individual donors and foundations, including the Roderick MacArthur Foundation, the Open Society Institute, and the European Union. The contents of this document are the sole responsibility of DPIC and can under no circumstances be regarded as reflecting the position of the European Union or other donors.

# Endnotes

1 . Furman v. Georgia, 408 U.S. 238 (1972).

2 . "Arbitrariness is pregnant with discrimination." *Furman*, 408 U.S. at 257 (Douglas, J., concurring).

3 . *Furman*, 408 U.S. at 310 (Stewart, J., concurring).

4 . *Id*. at 309.

5 . *Furman*, 408 U.S. at 313 (White, J., concurring).

6 . Gregg v. Georgia, 428 U.S. 153 (1976) and companion cases decided the same day.

7 . *Furman*, 408 U.S. at 312.

8 . From 1965 to 1972, there were a total of 10 executions in the country.  Bureau of Justice Statistics, Sourcebook of Criminal Justice Statistics (2000), at Table 6.92.

9 . *Furman*, 408 U.S. at 293 (Brennan, J., concurring).

10 . The number of murders in 1999 was 15,552; in 2009, it was 15,241.  FBI Uniform Crime Reports, U.S. Dept. of Justice (2010).

11 . M. Wilson, "The Application of the Death Penalty in New Mexico, July 1979 through December 2007: An Empirical Analysis," 38 New Mexico Law Review 255 (2008).

12 . Urban Institute, "The Cost of the Death Penalty in Maryland," March 2008.

13 . "Final Report Of The Death Penalty Subcommittee Of The Committee On Public Defense," Washington State Bar Association, December 2006 <http://www.wsba.org/lawyers/groups/committeeonpublicdefense.htm>.  Many of those who "volunteer" for execution are suffering from mental illness.  See J. Blume, "Killing the Willing: 'Volunteers,' Suicide and Competency," 103 Michigan Law Review 939 (2005).

14 . Department of Public Advocacy Press Release, November 23, 2009.

15 . The Oregonian, May 6, 2011.

16 . Federal Death Penalty Resource Counsel, March 24, 2010, available at <http://www.capdefnet.org/FDPRC/pubmenu.aspx?menu_id=94&id=2094>.

17 . Kennedy v. Louisiana, No. 07-343 (U.S. 2008), slip op. at 9, citing Roper v. Simmons, 543 U.S. 551, 568 (2005) (quoting Atkins v. Virginia, 536 U.S. 304, 319 (2002)) (death penalty too extreme for crime of child-rape).

18 . See, e.g., F. Baumgartner, "The Geography of the Death Penalty," (2010), available at <http://www.unc.edu/%7Efbaum/Innocence/NC/Baumgartner-geography-of-capital-punishment-oct-17-2010.pdf>.

**Fell Motion Appendix0036**

[19] . One paragraph from a lengthy Ohio jury instruction in the mitigation phase of a capital trial reads:

> 27. Any one mitigating factor standing alone is sufficient to support a sentence of life imprisonment if the aggravating circumstance is not sufficient to outweigh that mitigating factor beyond a reasonable doubt. Also, the cumulative effect of the mitigating factors will support a sentence of life imprisonment if the aggravating circumstance is not sufficient to outweigh the mitigating factors beyond a reasonable doubt.

Hamilton County, Ohio, Public Defender memo < http://www.hamilton-co.org/pub_def/orders_and_entries.htm> (visited May 20, 2011).

[20] . See, e.g., W. Bowers, et al., "Foreclosed Impartiality in Capital Sentencing. Jurors' Predispositions, Guilt-Trial Experience, and Premature Decision Making," 83 Cornell L. Rev. 1476 (1998) (multi-state data).

[21] . 465 U.S. 37 (1984).

[22] . See, e.g., "Mandatory Justice: Eighteen Reforms to the Death Penalty," Constitution Project (2001), at 27.

[23] . J. Liebman, et al., A Broken System: Error Rates in Capital Cases, 1973-95  (2000), available at http://www2.law.columbia.edu/instructionalservices/liebman/ [hereafter *A Broken System*].

[24] . B. Schoenburg, "Durbin changes stance on death penalty," State Journal-Register, January 17, 2011.

[25] . *A Broken System,* note 23 above, at State Comparisons.

[26] . *Id.* at Circuit Comparisons.

[27] G. Uelmen, "The End of an Era," Californina Lawyer (Sept. 2010).

[28] . *A Broken System,* note 23 above, at State Comparisons.

[29] . F. Baumgartner & R. Richardson, "Rates of Reversals in the North Carolina Death Penalty," Univ. of North Carolina at Chapel Hill (Feb. 28, 2010), discussed in F. Baumgartner, "In NC, only 20 percent of condemned are executed," Charlotte Observer, March 5, 2010.

[30] . "Facts about Pennsylvania's Death Penalty," Associated Press, July 24, 2009.

[31] . Walla Walla Union-Bulletin, Nov. 10, 2009.

[32] . *A Broken System,* note 23 above.

[33] . State of Washington v. Dayva M. Cross (March 30, 2006) (Johnson, J., dissenting); see also, P. Whitley, "Death sentence upheld in triple murder," Seattle Post-Intelligencer, March 31, 2006.

[34] . "Robert Philip Hanssen Espionage Case Press Release," FBI, Louis J. Freeh, February 20, 2001 < http://www.fbi.gov/about-us/history/famous-cases/robert-hanssen>.

[35] . A. Johnson, "Jailhouse Killer Clarence Carter Executed," Columbus Dispatch, April 12, 2011.

[36] . See S. Dewan, "Bomber Offers Guilty Pleas, and Defiance," New York Times, April 14, 2005; also Washington Post, April 6, 2005.

[37] . M. James and A. de Vogue, "Teresa Lewis becomes 12th Woman to be Executed since 1976," ABC News, September 23, 2010.

[38] . Associated Press, March 14, 2006.

[39] . R. Feltz, "Despite a U.S. Supreme Court ban, Texas has continued to send mentally retarded criminals to death row," Texas Observer, Jan. 8, 2010.

[40] . K. Johnson, "In hours before execution, a frenzied legal fight," USA Today, November 15, 2007.

[41] . See P. Whitley, "Death sentence upheld in triple murder," Seattle Post-Intelligencer, March 31, 2006 (describing Ridgway's case in light of a proportionality challenge to a death sentence for another defendant).

[42] . Associated Press, "Schizophrenic Killer to be Executed Tuesday," Houston Chronicle, May 17, 2004.

[43] . New York Times, March 3, 2006; Press Release from the New Jersey Office of the Attorney General, May 19, 2004.

[44] . Associated Press, "Wanda Jean Allen put to death," USA Today, January 12, 2001.

[45] . Philadelphia Inquirer, March 3, 2006.

[46] . "Should Manny Babbitt Die?" SF Gate, April 5, 1999.

[47] . Boston Globe, October 15, 2003.

[48] . C. Timberg, "Virginia Executes Inmate Who Killed Woman at 17," Washington Post, Oct. 15, 1998, at B1.  See Roper v. Simmons, 543 U.S. 551 (2005) (barring execution of juvenile offenders).

[49] . S. Visser, J. Scott, "Nichols gets life without parole," Atlanta Journal-Constitution, December 13, 2008.

[50] . Associated Press. "McQueen Witness Contradicted Self," Kentucky Post, August 6, 1997.

[51] . J. McElhatton, "A killer deal: Be a star witness, escape execution," Washington Times, January 14, 2011.  Other examples in which sentences were reduced in exchange for valuable information include Phillip Leonetti, a member of the Philadelphia mob, who

despite a criminal record that included 10 murders served just 5 years in prison because he cooperated with officials, and Salvatore Gravano, a well-known criminal who cooperated with the government and was sentenced to only 5 years, despite his involvement in 19 murders and other crimes. *Id.* Gravano was later imprisoned on unrelated drug charges.

[52] . A. Sachs, "Guilty, Innocent, Guilty," Time Magazine, January 16, 1995.

[53] . J. Toobin, "The Mitigator," The New Yorker, May 9, 2011.

[54] . J. Prugh, "Florida Executes Killer Spenkelink," L.A. Times, May 26, 1979.

[55] . J. Dwyer, "A High Cost, to Little Effect, for a Window Into the Mob," New York Times, April 12, 2011.

[56] . S. Mills & M. Possley, "Texas Man Executed on Disproved Forensics," Chicago Tribune, December 9, 2004.

[57] . M. Balleza, "After 17 Years on Death Row, Texas Inmate Walks Free," N.Y. Times, Oct. 7, 2004.

[58] . W. Glaberson, "Kaczynski Avoids a Death Sentence with a Guilty Plea," N.Y. Times, Jan. 23, 1998.

[59] . CNN & Associated Press, May 3, 2006.

[60] . See P. Nelson, "Defending the Devil: My Story as Ted Bundy's Last Lawyer," p.327 (William Morrow & Co., New York, 1994).

[61] . Report of the Royal Commission on Capital Punishment, 1949-1953, Cmd. 8932, at 595, quoted in McGautha v. California, 402 U.S. 183, 205 (1971).

[62] . Model Penal Code, 201.6, Comment 3, p. 71 (Tent. Draft No. 9, 1959), quoted in McGautha v. California, 402 U.S. 183, 205 (1971) (quoting the Royal Commission Report).

[63] . 428 U.S. 153 (1972).

[64] . Callins v. Collins, 510 U.S. 1141, 1144 (1994) (Blackmun, J., dissenting from denial of certiorari review).

[65] . J. Jeffries, "Justice Lewis F. Powell, Jr.," p.451 (1994) (quoting Justice Powell).

[66] . Baze v. Rees, No. 07-5439 (U.S. 2008), slip op. at 17 (Stevens, J., concurring) (quoting *Furman*, 408 U.S. at 312 (White, J., concurring)).

[67] . Report of the Council to the Membership of The American Law Institute On the Matter of the Death Penalty, at p.4 (April 15, 2009) (hereafter, *ALI Report*).

[68] . *Id*. at Annex B, p.49 (emphasis added).

[69] . American Bar Association, Death Penalty Moratorium Resolution Report, at 2 (1997).

[70] . "Mandatory Justice: Eighteen Reforms to the Death Penalty," Constitution Project (2001), at 27.  The reform of proportionality review still has not been adopted.

[71] . H. Lee Sarokin, "Does a Botched Execution Constitute Double Jeopardy?" Huffington Post, Oct. 5, 2009 (emphasis added).

[72] . Moore v. Parker, No. 03-6105 (U.S. Court of Appeals for the Sixth Circuit, October 4, 2005) (Martin, J., dissenting) (emphasis added).

[73] . New Jersey Lawyer, May 19, 2008.

[74] . Available at www.deathpenaltyinfo.org/pollresults.  The survey of 1,500 registered voters was conducted for DPIC in 2010.  The margin of error is 2.5%.

[75] . *Id.* at question 57.

[76] . *Id.* at question 8.

[77] . See DPIC's 2010 Year End Report at <http://www.deathpenaltyinfo.org/documents/2010YearEnd-Final.pdf>.

[78] . See R. Dieter, "A Crisis of Confidence: Americans' Doubts About the Death Penalty," (Death Penalty Information Center 2007).

[79] . United States General Accounting Office, Death Penalty Sentencing, February 1990.

[80] . See discussion of the Baldus study in McCleskey v. Kemp, 481 U.S. 279, 286-87 (1987).

[81] . *McCleskey*, 481 U.S. at 279.

[82] . *Id.* at 321 (1987) (Brennan, J., dissenting) (emphasis added).

[83] . D. Baldus & G. Woodworth, "Race Discrimination in America's Capital Punishment System Since *Furman v. Georgia* (1972): The Evidence of Race Disparities and the Record of Our Courts and Legislatures in Addressing This Issue" (1997) (report prepared for the American Bar Association).  The disparities in nine states (CA, CO, GA, KY, MS, NJ, NC, PA and SC) were particularly notable because of their reliance on well-controlled studies.

[84] . See S. Gross & R. Mauro, "Patterns of Death: An Analysis of Racial Disparities in Capital Sentencing and Homicide Victimization," 37 Stanford L. Rev. 27, 78, 96 (1984); S. Gross & R. Mauro, "Death and Discrimination: Racial Disparities in Capital Sentencing" p.65-66 (Northeastern Univ. Press 1989).

[85] . G. Pierce & M. Radelet, "Death Sentencing in East Baton Rouge Parish, 1990-2008," 71 Louisiana Law Review 647, 671 (2011).

[86] . A. Davis, "Study indicates pattern in sentences," Arkansas Democrat-Gazette, September 8, 2008.

[87] . M. Songer & I. Unah, "The Effect of Race, Gender, and Location on Prosecutorial Decision to Seek the Death Penalty in South Carolina," 58 S. Carolina Law Rev. 161 (Nov. 2006).

[88] . A. Welsh-Huggins, "Death Penalty Unequal," Associated Press, May 7, 2005; follow-up AP articles on May 8, 9, 2005.  The study also pointed to other indicators of arbitrariness—some of the worst offenders did not receive the death penalty. Nearly half of the 1,936 capital punishment cases ended with a plea bargain to a sentence less than death, including 131 cases in which the crime involved two or more victims and 25 involving at least 3 victims.

[89] . S. Dewan, "Blacks Still Being Blocked from Juries in the South, Study Finds," New York Times, June 2, 2010.

[90] . *Id.*

[91] . See, e.g., F. Baumgartner, "The Geography of the Death Penalty" (2010).

[92] . South Bend Tribune, Oct. 21, 2001.

[93] . *Capital Punishment in New York State: Statistics from Six Years of Representation*, Report from the Capital Defender Office, Sept. 2001 (data through June 30, 2001).

[94] . N. Minsker, et al., "Death in Decline '09," ACLU of Northern California, March 29, 2010.

[95] . R. Smith, "As arbitrary as ever," Second Class Justice, October 17, 2010.

[96] . See L. Montgomery, "Md. Questioning Local Extremes on Death Penalty," Wash. Post, May 12, 2002.

[97] . See Welsh-Huggins, note 88 above.

[98] . H. Ratcliffe, "Prosecutors use discretion differently in death sentencing," St. Louis Post-Dispatch, July 6, 2008.

[99] . *Id.*

[100] . D. Horn, "The politics of life and death," Cincinnati Enquirer, April 15, 2007.

[101] . *Id.*

[102] . K. Baicker, "The Budgetary Repercussions of Capital Convictions," National Bureau of Economic Research, Working Paper 8382, July 2001.

[103] . "Can Austin County afford 4 capital cases?," Houston Chronicle, Oct. 5, 2009.

[104] . H. Ratcliffe, "Prosecutors use discretion differently in death sentencing," St. Louis Post-Dispatch, July 6, 2008.

[105] . Jacksonville Daily Record, September 13, 2007.  On costs generally, see R. Dieter, "Smart on Crime: Reconsidering the Death Penalty in a Time of Economic Crisis," DPIC report (2009).

[106] . "Slamming the Courthouse Doors: Denial of Access to Justice and Remedy in America," American Civil Liberties Union, December 2010.

[107] . See Murray v. Giarratano, 492 U.S. 1 (1986).

[108] . See R. Paternoster & J. Deise, "A Heavy Thumb on the Scale: The Effect of Victim Impact Evidence on Capital Decision Making," 21 Criminology 129 (2011).

[109] . See T. Mowen & R. Schroeder, "Not In My Name: An Investigation of Victims' Family Clemency Movements and Court Appointed Closure," 12 Western Criminology Review 65 (2011).

[110] . See Kelly v. California, No. 07-11073 (U.S. Nov. 10, 2008) (Breyer, J., dissenting from denial of certiorari review) ("the film's personal, emotional, and artistic attributes themselves create the legal problem").

# The 2% Death Penalty:

## How a Minority of Counties Produce Most Death Cases At Enormous Costs to All

A Report from the Death Penalty Information Center
by Richard C. Dieter, Executive Director

Washington, DC
October 2013

www.deathpenaltyinfo.org

**Fell Motion Appendix0043**

# Table of Contents

Executive Summary iii

Introduction 1

The Death Penalty by County 3

A Geographic Snapshot of the Death Penalty 4

The Two-Percent National Death Penalty 6

A Few Counties Dominate Within States 11

Costs Borne by All 15

Legal Failings in Representative Counties 19

Conclusion 26

Appendices (top 2% counties) 27

# The 2% Death Penalty

## EXECUTIVE SUMMARY

Contrary to the assumption that the death penalty is widely practiced across the country, it is actually the domain of a small percentage of U.S. counties in a handful of states. The burdens created by this narrow but aggressive use, however, are shifted to the majority of counties that almost never use it.

The disparate and highly clustered use of the death penalty raises serious questions of unequal and arbitrary application of the law. It also forces the jurisdictions that have resisted the death penalty for decades to pay for a costly legal process that is often marred with injustice.

Only 2% of the counties in the U.S. have been responsible for the majority of cases leading to executions since 1976. Likewise, only 2% of the counties are responsible for the majority of today's death row population and recent death sentences. To put it another way, all of the state executions since the death penalty was reinstated stem from cases in just 15% of the counties in the U.S. All of the 3,125 inmates on death row as of January 1, 2013 came from just 20% of the counties.

Each decision to seek the death penalty is made by a single county district attorney, who is answerable only to the voters of that county. Nevertheless, all state taxpayers will have to bear the substantial financial costs of each death penalty case, and some of the costs will even be borne on a national level.

The counties that use the death penalty the most have some of the highest reversal rates and many have been responsible for errors of egregious injustice. As their cases are reversed, more money will be spent on retrials and further appeals. For example:

- Maricopa County in Arizona had four times the number of pending death penalty cases as Los Angeles or Houston on a per capita basis. The District Attorney responsible for this aggressive use was recently disbarred for misconduct.

- Philadelphia County, with the third largest number of inmates on death row in the country, ranked lowest in the state in paying attorneys representing those inmates.

- During the tenure of one district attorney in New Orleans, four death row inmates were exonerated and freed because of prosecutorial misconduct, bringing a stinging rebuke from four Justices of the U.S. Supreme Court.

Some states have recently chosen to opt out of this process altogether, greatly limiting their obligations for its high costs and disrepute. As the death penalty is seen more as the insistent campaign of a few at tremendous cost to the many, more states may follow that course.

**Fell Motion Appendix0046**

# The 2% Death Penalty:

## How a Minority of Counties Produce Most Death Cases At Enormous Costs to All

*Although death penalty laws are on the books of 32 states, a mere 2% of the counties in the U.S. generate the majority of executions.*

## I. Introduction

The notion that America is strongly wedded to the death penalty is not supported by a review of its use over the past 40 years. When examined closely, the practice of the death penalty in the U.S. is highly clustered in relatively few jurisdictions. Only 9 states carried out executions in 2012.[1] Even fewer are likely to do so in 2013. Most states have not had a single execution in over five years. Death sentences in recent years are at their lowest level in four decades.[2]

However, it is only when focusing on the use of the death penalty on a county level that the real disparities are revealed. Only a small minority of counties regularly use capital punishment.  Eighty percent (80%) of the counties in the U.S. currently have no one on their states' death row. Eighty-five percent (85%) of the counties have not had a single person executed in over 45 years. Over half of the executions carried out since 1976 come from cases originating in 2% of U.S. counties.[3] Other jurisdictions distance themselves from these high-use counties, which produce a disproportionate share of the mistakes and injustices in capital prosecutions, and a high number of reversals.

---

[1] . See Bureau of Justice Statistics, "Capital Punishment, 2011—Statistical Tables" (2013), at 3 (information on executions in 2012) [hereinafter *BJS*].
[2] . *Id.* at 19.

[3] . See sources and further details in section III, below.

*85% of the counties in the U.S. have not had a single person executed in over 45 years.*

Every year hundreds of millions of dollars are spent on the death penalty in the U.S., generated by a small number of counties where prosecutors have made this practice a high priority. The burdens, however, are not restricted to a few counties but are shifted to the entire state.

Moreover, when the death penalty is pursued frequently, it is often litigated poorly, with more reversals, retrials, and greater delays. Counties may pay part of the trial expenses, but states are responsible for much of the expense that follows over the many years that each case requires. The state attorney general's office typically defends death sentences and convictions through 15 or more years of appeals. Keeping an inmate on death row is much more expensive than housing a prisoner in general population. And executions have their own special costs.

When the total costs of the death penalty are divided by the number of executions carried out in a state, the amount can be *$30 million per execution*,[4] including the costs of federal review drawn from taxpayers across the country. As Professor James Liebman of Columbia Law School noted in a study of the burden shifting caused by the death penalty, "[T]he dramatically higher appellate costs instigated by a decision to proceed capitally are mainly triggered by the small set of counties that impose [the] most death sentences and are largely subsidized by state and federal taxpayers …."[5]

This report focuses on two issues deserving greater public attention:

- The death penalty is being mainly driven by a small minority of counties that use it aggressively, while most counties in the U.S. do not resort to it at all.

- These high-use counties do not shoulder their own burdens, but instead shift the costs to every taxpayer, many of whom are unaware of the exorbitant costs or the unfavorable record of reversals and unfairness.

---

[4] . See R. Dieter, "Smart on Crime: Reconsidering the Death Penalty in a Time of Economic Crisis" (2009), at 14.
[5] . J. Liebman & P. Clarke, "Minority Practice, Majority's Burden: The Death Penalty Today, 9 Ohio State Journal of Criminal Law 255, 312 (2012) [hereinafter *Liebman Minority Practice*].

# II. The Death Penalty by County

*Death sentences depend more on the location of the county line than on the severity of the crime.*

In examining the death penalty, counties are not just another geographical entity like states and cities. In almost every state, the key decision to charge and pursue the death penalty is made by the district attorney of the county. Typically, this is an elected position, and the chief prosecutor is mainly answerable to the people of the county, rather than to other state officials. A prosecutorial decision is rarely overruled by a higher executive.

Courts, too, give prosecutors wide latitude in their charging discretion. In 1972, the U.S. Supreme Court struck down the death penalty because it was being applied randomly and with little guidance to jurors from state statutes. In 1976, revised laws that attempted to guide the jury's decision-making were approved by the Court as a purported answer to the problem of arbitrariness in sentencing. When objections were raised that the death penalty remained unguided because the key decision resulting in a death case rested with a single person—

the charging D.A.—the Court refused to intervene. Justice Byron White, concurring with the majority, wrote:

[I]t cannot be assumed that prosecutors will be motivated in their charging decision by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it convicts. ...[D]efendants will escape the death penalty through prosecutorial charging decisions only because the offense is not sufficiently serious; or because the proof is insufficiently strong.[6]

Since that assessment history has not supported Justice White's confidence in the system. Factors such as geography and race appear to play a larger role in choosing to seek the death penalty than the relative severity of the crime or the certainty of outcome.

The key step in a prosecutor's decision is assessing whether a case meets the minimum requirements under the state's death penalty law. This could involve considering an objective fact, such as whether the victim was a police officer or a child, or if the defendant has been convicted of a prior murder. However, it might also rest on more subjective

---

[6] . Gregg v. Georgia, 428 U.S. 153, 225 (1976) (White, J., concurring).

considerations, such as whether the crime was "heinous, cruel, or atrocious."[7]

The prosecutor will have to convince a jury beyond a reasonable doubt that at least one aggravating factor applies to the case, and the vague heinousness factor is often a convenient one. A prosecutor may seek the death penalty if he or she reasonably believes the murder satisfies the state supreme court's interpretation of this broad standard.[8]

Although the U.S. Supreme Court originally approved a system of state review comparing cases that resulted in death sentences with those that did not,[9] it later held that such a proportionality review was not essential.[10] Thus, overreaching by a single prosecutor may go unchecked.

---

[7] . See J. Kirchmeier, "Aggravating and Mitigating Factors: The Paradox of Today's Arbitrary and Mandatory Capital Punishment Scheme," 6 William & Mary Bill of Rights Journal 345, 364 (1998).

[8] . The Supreme Court has held that these criteria may be too vague, but has allowed the state's supreme court to interpret them in a way that narrows the class of death-eligible cases. See *Godfrey v. Georgia*, 446 U.S. 420 (1980). Many states retain such language in their list of aggravating factors making a case eligible for the death penalty.

[9] . See *Gregg*, 428 U.S. at 198.

[10] . Pulley v. Harris, 465 U.S. 37 (1984).

# III. A Geographic Snapshot of the Death Penalty

*All of the state executions since the death penalty was reinstated in 1976 stem from just 15% of the counties in the U.S.*

Clearly, the death penalty is not evenly distributed across the country. Texas, for example, has the well-deserved reputation as the capital of capital punishment. Since the reinstatement of the death penalty in 1976, Texas alone has accounted for 38% of the nation's executions. Just four states (Texas, Virginia, Oklahoma, and Florida) have been responsible for almost 60% of the executions. The South has carried out 82% of the executions, the Northeast, less than 1%.[11]

---

[11] . See DPIC's Execution Database, at http://www.deathpenaltyinfo.org/views-executions. Data are frequently cross-checked with other sources such as the Bureau of Justice Statistics annual reports, see note 1 above.

### Percent of Executions by Region Since 1976



California, a state that has a considerably larger population than Texas and the largest death row in the country, has carried out less than 3% as many executions as Texas in the same time span.[14] As in Texas, California's death row mainly comes from a small minority of counties. Over half of the state's death-row inmates come from just three counties (Los Angeles, Riverside, and Orange),[15] even though these counties represent only 39.5% of the state's population.[16]

The true picture, however, is even more unbalanced. Even in Texas, a minority of jurisdictions drive the death penalty statistics. Most of the counties in Texas have not been responsible for a single case resulting in an execution since 1976. Just four counties (Harris, Dallas, Tarrant, and Bexar) account for almost half of the executions in Texas.[12] These counties do represent some of the more populous areas of the state, but they produce nearly 50% of the state's executions while representing only 34% of the population.[13]

---

[12] . *Id.* DPIC's database includes the county of the trial for each U.S. execution since 1976. Initial research for the county information was conducted by Prof. Frank Baumgartner at the University of North Carolina, Chapel Hill.

[13] . The top four execution counties in Texas are: Harris - population 3,693,050 (14.2% of the state's population); Dallas - population

---

2,294,706 (8.8%); Tarrant – population; 1,446,219 (5.5%); Bexar - population 1,392,931 (5.3%).

[14] . See DPIC *Database*, note 11 above. As of July 30, 2013, Texas has carried out 502 executions; California has carried out 13.

[15] . The counties responsible for the inmates on death row were determined by DPIC's research, using state departments of corrections and other sources. An Excel spreadsheet of inmates and their counties can be found at <http://www.deathpenaltyinfo.org/documents/DeathRowCounties.xlsx> (execution and death row data as of Jan. 1, 2013).

[16] . Los Angeles - pop. 9,818,605 (25.8% of the state's population); Riverside - pop. 2,189,641 (5.8%);

# The Two-Percent National Death Penalty



**2% of Counties**

Produced →

**52% of All Executions Since 1976**

**2% of Counties**

Produced →

**56% of U.S. Death Row**

Although death penalty laws are on the books of 32 states, a mere 2% of the counties in the U.S. generate the majority of executions.[17] A similar pattern holds true for the 3,125 inmates currently on death row. Just 2% of the counties in the U.S. are responsible for 56% of the population of death row.[18]

Not surprisingly, many of these counties represent high population areas within their respective states. Nevertheless, these counties represent only 15.9% of the U.S. population (execution counties) or 24.7% of U.S. population (death row counties).

---

Orange - pop. 3,010,232 (7.9%). U.S. Census.

[17] . 62 of the 3,143 counties in the U.S. have been responsible for 693 executions out of a total of 1,320. See Appendix to this report (noting small correction.

[18] . 62 counties are responsible for 1,755 death-row inmates out of a total of 3,125. See Appendix. The counties responsible for the cases resulting in executions are available from DPIC's *Database*, note 11 above. For the

---

counties responsible for the inmates on death row, see note 15 above.

**The 2% Death Penalty, p.7**

*All* of the state executions since the death penalty was reinstated in 1976 stem from cases in just 15% of the counties in the U.S. *All* of the 3,125 inmates on death row as of January 1, 2013 came from just 20% of the counties in the U.S.

The map below illustrates the top counties in terms of executions over the past 37 years. Similar maps illustrate the top counties responsible for death row and recent death sentences.

(Corrected version)



Top 15 Counties by Executions Since 1976

#9 St. Louis County - 13
#10 St. Louis City - 12
#3 Oklahoma County - 38
#7 Tulsa County - 15
#11 Maricopa County - 11
#11 Pima County - 11
#11 Potter County - 11
#4 Tarrant County - 37
#5 Bexar County - 36
#11 Nueces County - 11
#11 Brazos County - 11
#2 Dallas County - 50
#8 Jefferson County - 14
#6 Montgomery County - 16
#1 Harris County - 116

**These 15 counties accounted for 30% of the executions in the U.S. since 1976, but are fewer than 1% of the counties in the U.S.**

**The 2% Death Penalty, p.8**

The next map illustrates the top counties in terms of inmates on death row as of January 1, 2013. Again, a small percentage of counties produce a high percentage of the death row population.



These 10 counties account for over 27% of all death row inmates as of Jan. 1, 2013, but are fewer than 1% of the counties in the U.S.

**The 2% Death Penalty, p.9**

These patterns continued with the new death sentences in 2012. (See map below.) Fewer than 2% of the counties in the U.S. (59 out of 3,143) were responsible for all of the death sentences last year.[19]

Of course, the counties responsible for death sentences may vary from year to year, thereby expanding the total number of counties participating in the death penalty. However, even over long periods of use the death penalty remains highly isolated. Professor Liebman tracked all death sentences over a 23-year period (1973-1995). He found that 90% of the country's death sentences came from just 16% of the counties in the U.S.[20] The leading death-sentencing counties in 2012 are shown below; the total number of new death sentences was 78.



Leading Counties in Death Sentences 2012

Los Angeles County - 6
Clark County - 3
Riverside County - 4
Dallas County - 2
Tarrant County - 2
Newton County - 2
Sumter County - 2
Duval County - 4
Polk County - 2

**These 9 counties accounted for 35% of the death sentences in 2012, but are fewer than 1% of the counties in the U.S.**

[19] . See DPIC, at http://www.deathpenaltyinfo.org/2012-sentencing.

[20] . *Liebman Minority Practice*, note 5 above, at 265.

Research by academic experts has both informed and confirmed the above statistics showing wide disparities among counties within death-penalty states. Professor Liebman's major study of every U.S. death sentence[21] found sparse use of the death penalty in much of the country:

> [T]hirty-four states sentenced at least one person to death, yet fully 60% of the counties in those states did not impose a single sentence of death over the twenty-three year period—out of an estimated 332,000 homicides and 120,000 murder convictions occurring there during that time. Even in Texas, nearly 60% of its counties did not impose a single death sentence in the period.[22]

Although 68% of U.S. states allowed capital punishment, "More than half of the death sentences imposed nationwide over the twenty-three-year *Broken System* study period originated in only sixty-six, or 2%, of the nation's 3,143 counties, parishes and boroughs."[23]

Professor Robert J. Smith of the University of North Carolina examined a more recent group of death sentences—those between 2004 and 2009—and found similar geographical disparities:

> Even in those states that most often impose the death penalty, the majority of counties do not return any death verdicts. The geographic distribution of death sentences reveals a clustering around a narrow band of counties: roughly 1% of counties in the United States returned death sentences at a rate of one or more sentences per year from 2004 to 2009.[24]

Professor Smith describes how the decisions by a single prosecutor can affect the death penalty more than the collective decisions in an entire state:

> In 2009, Los Angeles County, California sentenced

---

[21] . J. Liebman et al., "A Broken System: Error Rates in Capital Cases, 1973-1975, (2000), http://www2.law.columbia.edu/instructionalservices/liebman/liebman_final.pdf [hereinafter *Liebman Part I*]; and "Broken System, Part II: Why There is So Much Error in Capital Cases, and What Can Be Done About It" (2002) http://www2.law.columbia.edu/brokensystem2/ [hereinafter *Liebman Part II*].

[22] . *Liebman Minority Practice*, note 5 above, at 264.

[23] . *Id.* at 264-65.

[24] . R. Smith, "The Geography of the Death Penalty and Its Ramifications," 92 Boston University Law Review 227, 228 (2012).

the same number of people to death as the State of Texas. Maricopa County, Arizona sentenced more people to death than the State of Alabama. This is not the exception to the rule; just 10% of counties in the United States account for all death sentences imposed from 2004 to 2009.[25]

# IV. A Few Counties Dominate Within States

*More than anything else, therefore, it is the practices, policies, habits and political milieu of local prosecutors, jurors and judges that dictate whether a given defendant in the United States—whatever his crime—will be charged, tried, convicted and sentenced capitally and executed.*

-James Liebman, Minority Practice[26]

Similar geographical disparities have been found in research conducted within single states.  Professor Raymond Paternoster of the University of Maryland examined the different rates among Maryland counties in

seeking the death penalty. His 2003 study, which controlled for numerous case characteristics, found wide disparities even among neighboring counties:

[T]he probability that a notification to seek death will be filed in Baltimore County is over 13 times higher than in Baltimore City, even after taking into account important case characteristics. The probability of being death notified if a case is in Baltimore County is over five times greater than if it occurred in Montgomery County and three times greater than if it occurred in Anne Arundel County....*What these results indicate is that clearly the jurisdiction where the homicide occurs matters and matters a great deal.*[27]

Maryland abolished the death penalty in 2013.

In 2011 Professor John Donohue of Stanford University Law School published a study of Connecticut's death penalty.  As with Paternoster's study, he found geographical disparities in the application of the death penalty,

---

[25] . *Id.* at 233.
[26] . *Liebman Minority Practice*, note 5 above, at 262.

[27] . R. Paternoster et al., "An Empirical Analysis Of Maryland's Death Sentencing System With Respect To The Influence Of Race And Legal Jurisdiction" (2003), at 30-31 (emphasis added).

even when controlling for the differences in case characteristics. Donohue's study revealed dramatically different standards of death sentencing across Connecticut. In particular, he noted:

> Capital-eligible defendants in Waterbury are sentenced to death at enormously higher rates than are capital-eligible defendants elsewhere in the state. The arbitrariness of geography in determining criminal justice outcomes is a dominant factor in the Connecticut death penalty regime, despite the fact that, as a small state with no judicial election of judges or prosecutors, there is no articulated rationale for

tolerating such immense geographic variation in capital sentencing.[28]

Connecticut abolished the death penalty in 2012.

When California experienced a spike in the number of death sentences in 2009, the American Civil Liberties Union of Northern California determined which counties were responsible:

> In 2009, only six counties accounted for 96.6% of death sentences. Even more startling, just three counties— Los Angeles, Orange and Riverside—accounted for 83% of death sentences in 2009. Only 41% of California's population lives in these counties. Together, these three counties sentenced more people to die in 2009 than the entire state did each year from 2002 to 2008. It is the increase in death sentencing in just these three counties that accounts for the high number of death sentences statewide in California in 2009.[29]

### California Death Sentences 2009



---

[28] . J. Donohue, "Capital Punishment In Connecticut, 1973-2007: A Comprehensive Evaluation From 4686 Murders To One Execution" (2011), at 8.

[29] . N. Minsker et al., "Death in Decline '09," ACLU of Northern California (2010), at 2.

The isolation of the death penalty to a few counties has grown more pronounced in recent years.  In an earlier study the ACLU found that from 2000 to 2007, 10 counties accounted for 83% of the state's death sentences, whereas in 2009 only 3 counties produced that same percentage.[30]

Statistics in other states show similar patterns.  About one-quarter of **Ohio's** death row inmates come from Hamilton County (Cincinnati), but only 9% of the state's murders occur there.[31] Research by Professor Baumgartner showed that 74% of the counties in **North Carolina** have not had a case resulting in an execution since 1977.[32] Counties differ widely in their use of the death penalty. For example, since 1977 Northampton County, in the east, had over 8% of its murders result in a death sentence. Caldwell County, in the west, had more murders than Northampton, but had a death-sentencing rate of about one-half of 1%—a sixteen-fold difference.

An investigation by seven **Indiana** newspapers in 2001 found use of the death penalty depended on factors such as the views of individual prosecutors and the financial resources of the county. Two Indiana counties produced almost as many death sentences as all of the other Indiana counties combined.[33]

*Houston had 8% more murders than Dallas, but 324% more death row inmates; 15% more murders than San Antonio, but 430% more death row inmates.*

Significant sentencing disparities exist within **Texas** as well. A 2005 study examined the practices of the three most populous counties of the State. At that time, Harris County (Houston area) had 159 inmates on death row, while Dallas County had 49, and Bexar County (San Antonio area) had 37. FBI statistics showed the per capita rate of murder in each of the three cities was similar: Houston had 8.4 murders per 100,000 people, Dallas had 7.8, and San Antonio had 7.3. Houston had 8% more murders than Dallas, but 324% more death row inmates; 15% more murders than San Antonio, but 430% more death row inmates. Population differences also did not explain the geographic disparities. According to the 2000 census, Harris County had 3.4 million people, while Dallas and

---

[30] . *Id.*

[31] . R. Willing and G. Fields, *Geography of the Death Penalty*, USA Today, Dec. 20, 1999.

[32] . F. Baumgartner, correspondence to the author, with research databases, Aug. 12, 2013.

[33] . South Bend Tribune, Oct. 21, 2001.

Bexar Counties had a combined population of 3.6 million people. Still, Harris County had almost twice as many people on death row as Dallas and Bexar Counties combined.[34]

Florida has led the country in the number of death sentences in the past two years, and has the second largest death row in the country. It also has had more people exonerated and freed from death row than any other state in the country. Within the state, over 28% of the most recent 60 death sentences come from just one of the state's 20 judicial districts (the 4th Judicial District, including Duval, Clay, and Nassau Counties).[35]

Finally, Professor David Sloss of St. Louis University School of Law examined Missouri's use of the death penalty. He found the death penalty is rarely used—95% of intentional murder cases are never presented to juries as capital cases.  However, geography seemed to play a key role in which cases were selected as capital. Prosecutors in St. Louis County pursued capital trials in more than 7% of their intentional homicide cases. In contrast, prosecutors in Jackson County (Kansas City) pursued capital trials in less than one-half of 1% of their cases, a fourteen-fold difference.[36]

Often the same studies that found geographical anomalies in the use of the death penalty also found that race, particularly race of the murder victim, played a significant role in applying the death penalty (see, for example, the studies in Maryland, Connecticut, Texas, and Missouri).[37]

---

[34] . "Minimizing Risk," Texas Defender Service (2005), at 39.

[35] . See Florida Dept. of Corrections, at <http://www.dc.state.fl.us/activeinmates/death rowroster.asp> (17 of 60, including 13 from Duval County alone).

[36] . D. Sloss, "Death penalty: In Missouri, where you live may matter," St. Louis Beacon, May 1, 2008.

[37] . See Paternoster, note 27 above, at 39 (MD); Donohue, note 28, at 7 (CT); Minimizing Risk, note 34, at 40-2 (TX); K. Barnes, D. Sloss, & S. Thaman, "Life and Death Decisions: Prosecutorial Discretion and Capital Punishment in Missouri," Arizona Legal Studies Discussion Paper No. 08-03, March 2008, at 55-8 (MO).

# V. Costs Borne by All

---

*Prosecuting a death penalty case through a verdict in the trial court can cost the prosecution well over $1 million dollars....my total operating budget for this office is $4.6 million and with that budget we prosecute 1,900 felonies, per year.*

-Boulder County, Colorado, D.A. Stan Garnett

---

All of the costs of the death penalty are borne by the taxpayers. Because most capital cases emanate from a tiny minority of jurisdictions, this cost is shifted to the majority of Americans who live in areas that almost never use the death penalty by the minority that uses it profusely.

National estimates for the cost of the death penalty are difficult to compute because many states have not examined their own costs. Nevertheless, it is possible to obtain an approximation of the total cost by looking at typical costs in a single case. One of the most recent and thorough studies of death-penalty expenses concluded that the gross cost of one death sentence over the duration of the case was $3 million.[38]

Since 1973, when states began sentencing people to death under new capital punishment statutes, there have been 8,300 death sentences through the end of 2011.[39] Using the cost estimate above, the bill to U.S. taxpayers for those sentences amounts to almost $25 billion, a staggering sum for the 85% of U.S. counties that have not had a single case resulting in an execution.

If this cost is divided by the number of executions during that time, the result is that taxpayers are doling out almost $20 million *per execution*. Instead of one execution, states could pay the salaries of over 250 more police officers or teachers for a year at $75,000 each.

---

[38] . J. Roman et al., "The Cost of the Death Penalty in Maryland," The Urban Institute (March 2008), at 2. Although this is a gross cost, it is a significant underestimation because it does not count the costs of murder cases in which the death penalty is sought but not imposed. In Maryland over the study period, those cases added $71 million to cost of the death penalty. The total cost to taxpayers for the death penalty over 22 years was $186 million. Five executions were carried out during this time, equivalent to $37 million per execution.

[39] . See *BJS*, note 1 above, at 19.

The costs of the death penalty to many states have been enormous, far exceeding what a few counties could absorb. In New York and New Jersey, the high costs of capital punishment were one factor in those states' decisions to abandon the death penalty. New York spent about $170 million over 9 years and had no executions. New Jersey spent $253 million over a 25-year period and also had no executions.[40]

In Kansas, the costs for the appeals in a death penalty case were estimated to be 21 times greater than for a non-death penalty case.[41] In 2008, the California Commission on the Fair Administration of Justice found that the state was spending $137 million per year on the death penalty. The Commission estimated a comparable system that sentenced the same inmates to a maximum punishment of life without parole would cost only $11.5 million per year.[42]

Counties that use the death penalty bear only a small fraction of the overall costs. Death-penalty costs can be broken into three categories: trial-related costs, appellate costs, and incarceration costs. (The cost of an actual execution is negligible by comparison.) Trial costs may be split between the county that brings the prosecution and the state. Counties usually pay for appointed defense counsel, while the chief prosecutor of the county and the judge may be paid by the state. Some states provide assistance to counties that bring capital cases because of the financial burden they cause.

When death sentences are overturned, the costs multiply further. If death is sought a second time, new trial and appellate costs are generated. Moreover, 82% of the defendants whose cases are overturned eventually receive a sentence less than death.[43] Two of the most expensive aspects of the criminal justice system are the death penalty (because of its expensive trial and appeals) and a sentence of life without parole (because of its lengthy incarceration). The death sentences that are overturned and result in life sentences combine both of these expensive results, at enormous costs to the taxpayer. The burden is borne by all, not just those in the county that elected the prosecutor.

---

[40] . See Dieter, note 4 above at 14, with accompanying footnotes.

[41] . Performance Audit Report: Costs Incurred for Death Penalty Cases: A K-GOAL Audit of the Department of Corrections, Kansas (2003).

[42] . See California Commission on the Fair Administration of Justice, http://www.ccfaj.org/rr-dp-official.html, June 30, 2008.

[43] . *Liebman Minority Practice*, note 5 above, at 292.

As a case moves into appeals, the cost burden shifts to the state. The state's Attorney General defends the conviction and sentence, and appellate judges are paid by the state. The defense attorney may initially be the same lawyer who handled the trial, but will change to a new attorney paid at state expense for the latter part of the state review process. Finally, the federal appeal (habeas corpus review) will be partly borne by state taxpayers (work done by the state's Attorney General) and partly by all U.S. taxpayers.

The costs of incarceration on death row are the responsibility of state taxpayers.  Keeping an inmate on death row for a year is typically much more expensive than keeping a non-capital inmate in the general prison population, due to higher guard-to-inmate ratio and tighter security measures.[44] Inmates on death row are usually in isolation cells, fed through a slot in the cell door; they have guards accompanying them to visits, and rarely participate in the work of the prison.

Although a detailed allocation of the county, state, and federal shares of death-penalty costs is beyond the scope of this report, clearly only part of the costs is borne by the tiny number of counties that produce the majority of death sentences. The rest of the burden is shifted to taxpayers who have little say in how other counties and states choose to prosecute cases.

The high costs of the death penalty are one reason lawmakers in six states recently chose to end the death penalty.[45] (Although these states will experience significant savings, the costs of federal review of state cases and the cost of the federal death penalty death penalty will continue to be borne by all taxpayers.)

---

[44] . See A. Alarcon & P. Mitchell, "Executing the Will of the Voters?: A roadmap to mend or end the California legislature's multi-billion dollar death penalty debacle," 44 Loyola of Los Angeles Law Review S41, S105 (Special Issue 2011) (death row cost additional $90,000 per inmate per year).

[45] . See R. Dieter, "The Issue of Costs in the Death Penalty Debate," at 16-22 (forthcoming in J. Acker, et al. (eds.), *America's Experiment With Capital Punishment*, 3d ed. (2014)). The six states are Maryland, Connecticut, Illinois, New Mexico, New Jersey, and New York.

**Fell Motion Appendix0063**

## Opting Out of the Death Penalty

*Over long periods of our country's history, the people of many states have seen the death penalty as incompatible with who they are.*

The significant cost burdens to both the state and the county are one reason some prosecutors do not seek the death penalty. As Boulder County (CO) District Attorney Stan Garnett remarked, "Prosecuting a death penalty case through a verdict in the trial court can cost the prosecution well over $1 million dollars....my total operating budget for this office is $4.6 million and with that budget we prosecute 1,900 felonies, per year."[46] Montana Assistant Attorney General John Connor expressed broader reasons for opting out of the death penalty system: "It seems to me to be the ultimate incongruity to say we respect life so much that we're going to dedicate all our money, all our resources, our legal expertise and our entire system to try and take your life. . . . Frankly, I just don't think I can do it anymore."[47]

Costs are not the only reason 18 states have chosen to end the death penalty and many counties never use it. Over long periods of our country's history, the people of many states have seen the death penalty as incompatible with who they are. Michigan, for example, has not had the death penalty since 1847, far longer than our European allies.  Wisconsin abolished the death penalty in 1853, Maine in 1887, and Minnnesota in 1911. Neither Alaska nor Hawaii has had the death penalty since they became states over 50 years ago.

Governor Lincoln Chafee of Rhode Island recalled his state's long history of rejecting the death penalty as justification for his refusal to turn over a defendant for federal death-penalty prosecution: "To voluntarily let Mr. Pleau be exposed to the federal death penalty for a crime committed in Rhode Island would be an abdication of one of my core responsibilities as governor: defending and upholding the legitimate public-policy choices made by the people of this state."[48]

---

[46] . S. Garnett, "DA: Death penalty not practical in Colorado," Daily Camera, December 16, 2012 (no death verdicts in 140 years).

[47] . Associated Press, Mar. 10, 2007.

[48] . L. Chafee, "My Pleau stand affirms core R.I. values," Providence Journal, August 24, 2011. Although Rhode Island was eventually compelled to turn over Pleau for federal prosecution, the U.S. Attorney then accepted a plea

More recently, states have abolished the death penalty even in the aftermath of notorious crimes. New York ended its death penalty *after* the terror attacks of 9/11. Connecticut voted to stop capital punishment in 2012, even with a heinous home invasion and murder of a well-known doctor's family still prominent in the news. However, despite such principled positions, the people of all states are still saddled with some of the costs and the injustices of the death penalty generated by the few jurisdictions that use it aggressively.

# VI. Legal Failings in Representative Counties

One might expect counties responsible for a disproportionate use of the death penalty to be the ones most skilled in this difficult area of the law and best able to pursue capital convictions that withstand legal scrutiny. However, the record of some prominent counties shows the opposite to be true. There is a strong correlation between the prolific application of the death penalty and the high percentage of cases being reversed on appeal. Counties with the most death sentences have

some of the worst records for legal errors. Liebman's report found:

The higher the rate at which a state or county imposes death verdicts, the greater the probability that each death verdict will have to be reversed because of serious error. The overproduction of death penalty verdicts has a powerful effect in increasing the risk of error. Our best analysis predicts that:

- Capital error rates more than *triple* when the death-sentencing rate increases from a quarter of the national average to the national average, holding other factors constant.

- When death sentencing increases from a quarter of the national average to the highest rate for a state in our study, the predicted increase in reversal rates is *six-fold*—to *about 80%*.[49]

The combination of aggressive use of the death penalty and systemic abuses in Harris County (Houston), Texas, has been well documented.[50] Racial disparities,

___

bargain, thereby avoiding the possibility of a death sentence.

[49] . See *Liebman Part II*, note 21 above, at ii (Executive Summary).
[50] . See, e.g., M. Tolson, "A Deadly Distinction," Houston Chronicle,

flawed forensic science, and other injustices in the death penalty paralleled its reputation as the county that exceeded not only every other county in the country but also every state (except Texas itself) in executions. (However, underscoring the death penalty's dependence on single individuals, a change in the chief prosecutor in Harris County has made a dramatic difference in its use of the death penalty.[51] New death sentences are now rare, with none in 2012.)  A closer review of the practices in other counties that have used the death penalty widely also illustrates their record of errors.

**PHILADELPHIA – Reversals and Race**

Philadelphia County ranks third among counties in the country in terms of the number of people on death row. Nearly half (43%) of Pennsylvania's death row comes from Philadelphia County. However, capital convictions there are frequently reversed on appeal and later reduced to life sentences because the county did not provide adequate representation to many defendants. According to a 2011 study by the *Philadelphia Inquirer*, 69 Philadelphia death

penalty cases have been reversed or sent back by state or federal courts after findings that the defense attorney's inadequate performance deprived the defendant of a fair trial.[52] When these cases were retried, almost all of the defendants received a sentence less than death, and some were acquitted altogether. The *Inquirer* noted that court-appointed lawyers in Philadelphia received $2000 for trial preparation in a capital case and $400 per day in court, the lowest fees in the state.

A study mandated by the Pennsylvania Supreme Court found racial bias in the application of the death penalty, especially in Philadelphia. After controlling for the seriousness of the offense and other non-racial factors, researchers cited by the court found African-American defendants were sentenced to death at a significantly higher rate than similarly situated non-African Americans; they concluded one-third of African Americans on death row from Philadelphia County would have received life sentences were they not African American.[53]

---

Feb.5, 2001; S. Phillips, "Racial Disparities in the Capital of Capital Punishment," 45 Houston Law Review 807 (2008).
[51] . See D. McCord, "What's Messing With Texas Death Sentences?" pub. by Drake University Law School (2010).

[52] . N. Phillips, "In life and death cases, costly mistakes," Philadelphia Inquirer, October 23, 2011.
[53] . See *Final Report of the Pennsylvania Supreme Court Committee on Racial and Gender Bias in the Justice System* (1999) 201, 218.

Pennsylvania has the fourth largest death row in the country. During the 39 years since the death penalty was reinstated, there have been 3 executions, all of inmates who waived their appeals. Despite the fact that only 4% of counties there have had a case result in an execution, the whole state pays for much of this expensive and often biased system, which has amassed a death row of 200 inmates. Years of appeals, with the high costs of security needed for death row, have mostly led to overturned cases, with sentences ultimately reduced to life terms. In reality, the death penalty is functioning only as a very expensive form of life-without-parole incarceration.

## MARICOPA (PHOENIX) – A Reckless Crusade

Maricopa County in Arizona ranks fourth among counties in the country in the number of inmates on death row. A few years ago its chief prosecutor created an immense crisis when he decided to use the death penalty more aggressively than his predecessors or other prosecutors in the state. At the height of his term, Maricopa County Attorney Andrew Thomas had 149 death penalty cases pending, far more than could be handled by the courts or the defense bar.[54] On a per capita

basis Maricopa County had four times as many cases pending as Los Angeles, California, and Harris County (Houston), Texas, both known for their high use of capital punishment.[55]

Arizona is one of many states that include a catch-all aggravating factor, allowing crimes that are "especially heinous, cruel, or depraved" to be capitally charged. The Maricopa County Attorney alleged that aggravator in 78% of its capitally-charged cases.[56]

Andrew Thomas resigned as County Attorney, and in 2012 he was unanimously disbarred by the Arizona Supreme Court for numerous instances of abuse of power.[57] The statement of probable cause in the disbarment proceedings, though not necessarily related to his pursuit of the death penalty, provide a stark picture of his professional character:

Ethical violations by respondent, as described by Independent Bar Counsel, are far-reaching and numerous. Evidence thus far adduced portrays a reckless, four-year campaign of corruption and power abuse by respondent as

---

[54] . C. Dupont and L. Hammond, "Capital Case Crisis in Maricopa County, Arizona: A Response From the Defense," 95 Judicature 216 (2012).

[55] . *Id.*

[56] . *Id.* at 217.

[57] . R. Stern, "Andrew Thomas and Lisa Aubuchon Disbarred," Phoenix New Times, April 10, 2012.

a public official, undertaken at enormous and mostly wasteful cost to the taxpayers... Motivation for much of the alleged impropriety appears retaliatory, intended to do personal harm to the reputations of judges, county supervisors and other county officials... Actions by respondent appear intent on intimidation, focused on political gain, and appear fully disconnected from professional and prosecutorial standards long associated with the administration of justice ....[58]

In 2010 Thomas made an unsuccessful run for state Attorney General and plans to run for governor in 2014. After his departure, the crisis in death penalty prosecutions subsided. He was succeeded by William Montgomery, who has pushed for more executions and the elimination of federal habeas corpus review, which he called "unnecessary." He also recommended defunding the Federal Public Defender's Office, which represents death row inmates in such proceedings.[59]

## ORLEANS PARISH (NEW ORLEANS) – Innocence and Misconduct

The majority of counties ("parishes") in Louisiana have no one on the state's death row and have had no cases resulting in an execution since the death penalty was reinstated in 1976.[60] About 14% of the executions in Louisiana are from cases originating in New Orleans, and about 9% of its death row population comes from that parish. However, even more significant than the number of death judgments from New Orleans is the number found to be in error. According to Professor Liebman's study, cases from New Orleans had a 73% error rate, higher than the national average and the highest among Louisiana's parishes with at least 600 homicides in the 23-year study period.[61]

For 30 years (1973-2003) the District Attorney in Orleans Parish, the person responsible for death-penalty decisions, was Harry Connick, Sr. During his tenure, four death row inmates were exonerated and freed from death row. The basis for the wrongful

---

[58] In re Andrew Thomas, Probable Cause Order, State Bar of Arizona (Dec. 6, 2010), available at <http://vvoice.vo.llnwd.net/e14/5718388.0.pdf>.

[59] . See *Dupont,* note 54 above, at 220.

[60] . From DPIC's databases, 25 of Louisiana's 64 parishes have someone on death row; 14 have had an execution. See notes 11 & 15, above.

[61] . See *Liebman Part II*, note 21 above, at 304.

convictions in all four cases was prosecutorial misconduct:

o **Dan Bright** was convicted mostly on the testimony of one witness, a convicted felon who, in violation of his parole, was drunk on the day of the crime. However, the witness's criminal record was not revealed to the defense. Bright was freed in 2004 after all charges against him were dismissed.[62]

o **Shareef Cousin** was sentenced to death for a crime he allegedly committed at age 16.  His conviction was overturned because the prosecution mishandled and improperly used key evidence. In 1999 all charges were dismissed.[63] One of the prosecutors was disciplined for his actions.

o **Curtis Kyles** was tried five times before the prosecution finally dismissed charges. The U.S. Supreme Court overturned his only conviction because the prosecution withheld extensive evidence. Kyles was freed in 1998.[64]

o **John Thompson's** conviction was overturned when a Louisiana appellate court found the prosecution intentionally withheld exculpatory evidence Thompson could have used in his defense.[65] Thompson later sued the parish for compensation for the 18 years he wrongfully spent in prison, including 14 on death row. Although he initially won a monetary award, the U.S. Supreme Court ultimately reversed it, holding the individual violations did not establish "an official government policy" of misconduct.[66]

Four Justices dissented from the ruling denying compensation, with Justice Ginsburg writing an opinion sharply criticizing Connick's practices, especially his refusal to turn over key evidence to the defense, as required under the Supreme Court's previous decision in *Brady v. Maryland*:

> From the top down, the evidence showed, members of the District Attorney's Office, including the District Attorney himself, misperceived *Brady*'s compass and therefore inadequately attended to their disclosure obligations.

---

[62] . See generally DPIC's Innocence List, with links to descriptions of individual cases and supporting sources, at http://www.deathpenaltyinfo.org/innocence-and-death-penalty.

[63] . *Id.*

[64] . *Id.*

[65] . *Id.*

[66] . Connick v. Thompson, 131 S. Ct. 1350 (2011).

Throughout the pretrial and trial proceedings against Thompson, the team of four engaged in prosecuting him for armed robbery and murder hid from the defense and the court exculpatory information Thompson requested and had a constitutional right to receive. The prosecutors did so despite multiple opportunities, spanning nearly two decades, to set the record straight. Based on the prosecutors' conduct relating to Thompson's trials, a fact trier could reasonably conclude that inattention to *Brady* was standard operating procedure at the District Attorney's Office.[67]

## ALAMEDA (OAKLAND-HAYWARD, CA) – Splitting the County

In many states, significant differences have been noted between the use of the death penalty in one county compared to other counties within the same state, such as between Baltimore County and Baltimore City in Maryland. In Alameda County, California, however, a recent study revealed sharp discrepancies between the way the death penalty was applied within two parts of the same county.

A recent study headed by Professor Steven Shatz of the University of San Francisco School of Law[68] looked at the application of the death penalty in what was designated as "North County" (the city of Oakland) and "South County" (mainly the city of Hayward) within Alameda County, which ranks fourth among California counties in the number of inmates currently on death row. Although North County had by far the higher number of murders, the death penalty was more likely to be sought in South County, even when controlling for similar cases. The authors of the study noted that North County has a much higher percentage of African-American residents (30%) than South County (5%), and murder victims in North County tend to be black (71% of victims), whereas murder victims in South County tend to be white (50% of victims, whereas only 16% of the victims were black).[69]

The study's conclusions come as no surprise to those who study racial disparities in the death penalty. A considerable body of research conducted over many years in multiple states have consistently come to the conclusion that defendants are

---

[67] . *Id.* at 1370 (Ginsburg, J., dissenting).

[68] . S. Shatz and T. Dalton, "Challenging The Death Penalty With Statistics: *Furman*, *McCleskey*, And A Single County Case Study," 34 Cardozo Law Review 1227 (2013).
[69] . *Id.* at 1263.

much more likely to be sentenced to death if they kill a white person than if they kill a black person.[70] The same appears true in Alameda County, though there it also manifests along geographical lines within the county. The study concluded, "In both aggravated murder cases and ordinary murder cases, the District Attorney of Alameda County initially sought the death penalty significantly more often for South County murders (where victims are mostly white) than for North County murders."[71] The authors calculated that "the chance of the defendant being charged with death was roughly two and a half times greater if the murder was in South County rather than North County."[72] When the cases were eventually tried, the disparities grew even greater.

Racial discrimination in the use of the death penalty is deplorable anywhere, but its presence in some of the counties responsible for the bulk of death sentences and executions in this country is particularly disturbing. It confirms the findings by Professor Liebman in his *Broken System* research: the counties that produce the most death sentences are responsible for a disproportionate part of the errors in capital cases. Thus many

taxpayers across the U.S. are not only paying for a government practice they choose not to use, but are also paying for embarrassing, illegal behavior by those spending the highest percentage of these state resources.

Other counties in the country, such as Baltimore County (Maryland), Orange County (California), and DeKalb County (suburban Atlanta, Georgia) have been known both for their aggressive use of the death penalty and for their high reversal rates.[73] These counties pass on the high financial costs of capital prosecutions to the rest of their state and cause backlogs in the appellate courts, which are forced to spend an inordinate amount of time and resources on capital cases, thereby reducing the resources available to handle other criminal and civil matters.

---

[70] . See *id.* at 1244-51 collecting such studies.

[71] . *Id.* at 1268 (parenthetical added).

[72] . *Id.* at 1266.

[73] . See *Liebman Minority Practice,* note 5 above, at 297 n.192 (100% reversal rate).

# VII. Conclusion

Since 2000 the use of the death penalty has been in sharp decline in much of the country. The public is voicing its evolving opinion through jury verdicts, the selection of candidates who favor repeal of capital punishment, and even in selecting prosecutors who refrain from frequent use of the death penalty.

The vast majority of counties in the U.S. have no one on death row and have not had a case resulting in an execution in over 45 years. The people on death row today, and the inmates who have been executed since 1976, come mostly from a small minority of counties where seeking death sentences has been a high priority.

This peculiar exercise of discretion results in enormous expenses being passed on to taxpayers across the state. Moreover, the correlation between the high use of the death penalty and a high rate of error means that courts in these states will be occupied for years with costly appeals and retrials. The process frequently ends in a sentence of life imprisonment, a result that readily could have been obtained with far less expense. In this lengthy, cumbersome and expensive process, the entire justice system, and the taxpayers who support it, are shortchanged.

Some states have recently chosen to opt out of this process, at great savings to their taxpayers. As the death penalty is seen more as the insistent choice of a few at tremendous cost to the many, more states are likely to follow that course.

# Appendix: Two Percent of Counties Responsible for 52% of Executions Since 1976

| State | County | Executions 1976-2012 | 2012 Population - U.S. Census |
|---|---|---:|---:|
| TX | Harris | 116 | 4,253,700 |
| TX | Dallas | 50 | 2,453,843 |
| OK | Oklahoma | 38 | 741,781 |
| TX | Tarrant | 37 | 1,880,153 |
| TX | Bexar | 36 | 1,785,704 |
| TX | Montgomery | 16 | 485,047 |
| OK | Tulsa | 15 | 613,816 |
| TX | Jefferson | 14 | 251,813 |
| MO | St. Louis County | 13 | 1,000,438 |
| MO | St. Louis City | 12 | 318,172 |
| TX | Brazos | 11 | 200,665 |
| AZ | Maricopa | 11 | 3,942,169 |
| TX | Nueces | 11 | 347,691 |
| AZ | Pima | 11 | 992,394 |
| TX | Potter | 11 | 122,335 |
| OH | Hamilton | 10 | 802,038 |
| AL | Jefferson | 10 | 660,009 |
| FL | Miami-Dade | 10 | 2,591,035 |
| AL | Mobile | 10 | 413,936 |
| DE | New Castle | 9 | 546,076 |
| VA | Prince William | 9 | 430,289 |
| TX | Smith | 9 | 214,821 |
| SC | Charleston | 8 | 365,162 |
| VA | Chesterfield | 8 | 323,856 |
| NV | Clark | 8 | 2,000,759 |
| TX | Lubbock | 8 | 285,760 |
| TX | Travis | 8 | 1,095,584 |
| VA | Virginia Beach City | 8 | 447,021 |
| OH | Cuyahoga | 7 | 1,265,111 |
| FL | Duval | 7 | 879,602 |
| TX | McLennan | 7 | 238,707 |
| TX | Cameron | 6 | 415,557 |
| OK | Comanche | 6 | 126,390 |
| TX | Galveston | 6 | 300,484 |
| MO | Jackson | 6 | 677,377 |

| | | | |
|---|---|---|---|
| DE | Kent | 6 | 167,626 |
| FL | Orange | 6 | 1,202,234 |
| OH | Summit | 6 | 540,811 |
| GA | Bibb | 5 | 156,462 |
| TX | Bowie | 5 | 93,148 |
| TX | Collin | 5 | 834,642 |
| IL | Cook | 5 | 5,231,351 |
| TX | Denton | 5 | 707,304 |
| TX | El Paso | 5 | 827,398 |
| VA | Fairfax | 5 | 1,118,602 |
| TX | Gregg | 5 | 122,658 |
| VA | Hampton City | 5 | 136,836 |
| IN | Marion | 5 | 918,977 |
| NC | Mecklenburg | 5 | 969,031 |
| GA | Muscogee | 5 | 198,413 |
| TX | Navarro | 5 | 47,979 |
| FL | Pinellas | 5 | 921,319 |
| VA | Pittsylvania | 5 | 62,807 |
| VA | Portsmouth City | 5 | 96,470 |
| TX | Taylor | 5 | 133,473 |
| SC | Aiken* | 4 | 162,812 |
| TX | Anderson* | 4 | 58,190 |
| MD | Baltimore* | 4 | 817,455 |
| TX | Brazoria* | 4 | 324,769 |
| AL | Calhoun* | 4 | 117,296 |
| MO | Callaway* | 4 | 44,305 |
| GA | Chatham* | 4 | 276,434 |
| **TOTAL INMATES EXECUTED** | | 693 | |
| **TOTAL POPULATION OF TOP 2% COUNTIES** | | | 49,758,097 |
| **US Population 2012** | | | 313,914,040 |
| **% of total U.S. Population** | | | 15.9% |

**62 counties out of 3,143 counties in the U.S. = 2% of U.S. counties
693 inmates executed out of 1,320 executed since 1976 = 52% of
inmates executed**

*The first 55 of the 62 counties listed were the counties with the largest numbers of
executed inmates. There were more than 7 counties with exactly 4 inmates executed, so
the last 7 counties were chosen alphabetically.
(Correction: The original (printed) version of this report had 686 executions from the top
62 counties. Mecklenburg County (NC) was added to the list and Clay County (MO) was
removed. A few counties had either 1 execution added or 1 subtracted. The percentage of
the U.S. population from the top 62 counties had been 15.6%.)

# Two Percent of Counties Responsible for 56% of Death Row

| State | County | Inmates on Death Row - Jan. 1, 2013 | 2012 Population - U.S. Census |
|-------|--------|-------------------------------------|-------------------------------|
| CA | Los Angeles | 228 | 9,962,789 |
| TX | Harris | 101 | 4,253,700 |
| PA | Philadelphia | 88 | 1,547,607 |
| AZ | Maricopa | 81 | 3,942,169 |
| CA | Riverside | 76 | 2,268,783 |
| NV | Clark | 61 | 2,000,759 |
| CA | Orange | 61 | 3,090,132 |
| FL | Duval | 60 | 879,602 |
| CA | Alameda | 43 | 1,554,720 |
| CA | San Diego | 40 | 3,177,063 |
| CA | San Bernardino | 37 | 2,081,313 |
| CA | Sacramento | 35 | 1,450,121 |
| TN | Shelby | 33 | 940,764 |
| TX | Dallas | 31 | 2,453,843 |
| FL | Miami-Dade | 31 | 2,591,035 |
| AL | Jefferson | 30 | 660,009 |
| OH | Hamilton | 28 | 802,038 |
| OK | Oklahoma | 28 | 741,781 |
| CA | Santa Clara | 28 | 1,837,504 |
| AZ | Pima | 26 | 992,394 |
| FL | Hillsborough | 25 | 1,277,746 |
| FL | Pinellas | 25 | 921,319 |
| FL | Broward | 23 | 1,815,137 |
| OH | Cuyahoga | 23 | 1,265,111 |
| CA | Kern | 23 | 856,158 |
| FL | Orange | 23 | 1,202,234 |
| TX | Tarrant | 19 | 1,880,153 |
| CA | Contra Costa | 18 | 1,079,597 |
| LA | East Baton Rouge | 18 | 444,526 |
| TX | Bexar | 17 | 1,785,704 |
| AL | Houston | 17 | 103,402 |
| MO | St. Louis County | 17 | 1,000,438 |
| FL | Volusia | 17 | 496,950 |
| LA | Caddo | 16 | 257,093 |
| CA | Fresno | 16 | 947,895 |

**The 2% Death Penalty, p.30**

| | | | |
|---|---|---|---:|
| CA | Tulare | 16 | 451,977 |
| CA | Ventura | 16 | 835,981 |
| FL | Polk | 15 | 616,158 |
| AL | Mobile | 14 | 413,936 |
| CA | San Mateo | 14 | 739,311 |
| NV | Washoe | 14 | 429,908 |
| NC | Forsyth | 13 | 358,137 |
| OK | Tulsa | 13 | 613,816 |
| PA | Berks | 12 | 413,491 |
| OH | Franklin | 12 | 1,195,537 |
| FL | Seminole | 12 | 430,838 |
| TX | Hidalgo | 11 | 806,552 |
| FL | Lake | 11 | 303,186 |
| AL | Montgomery | 11 | 230,149 |
| PA | Allegheny | 10 | 1,229,338 |
| FL | Bay | 10 | 171,903 |
| FL | Brevard | 10 | 547,307 |
| TN | Davidson | 10 | 648,295 |
| LA | Jefferson | 10 | 433,676 |
| OH | Lucas | 10 | 437,998 |
| CA | San Joaquin | 10 | 702,612 |
| CA | Santa Barbara | 10 | 431,249 |
| AL | Talladega | 10 | 81,762 |
| NC | Wake | 10 | 952,151 |
| PA | York | 10 | 437,846 |
| NC | Buncombe* | 9 | 244,490 |
| GA | Cobb* | 9 | 707,442 |
| **TOTAL DEATH ROW INMATES** | | **1,755** | |
| **TOTAL POPULATION OF TOP 62 (2%) COUNTIES** | | | **77,426,635** |
| **US Population 2012** | | | **313,914,040** |
| **% of total US Population** | | | **24.7%** |

**62 counties out of 3,143 counties in the U.S. = 2% of U.S. counties
1,755 Inmates out of 3,125 on death row = 56% of inmates**

*The first 60 of the 62 counties listed were the counties with the largest numbers of death row inmates. There were more than 2 counties with exactly 9 death row inmates, so the last two counties were chosen alphabetically.

**The 2% Death Penalty, p.31**

The Death Penalty Information Center is a non-profit organization serving the media and the public with analysis and information on issues concerning capital punishment. The Center provides in-depth reports, issues press releases, conducts briefings for journalists, and serves as a resource to those working on this issue. The Center is funded through the generosity of individual donors and foundations, including the Roderick MacArthur Foundation, the Open Society Foundations, the Atlantic Philanthropies, and the Proteus Action League.

# The Federal Death Penalty

September 22, 2015

Since 1988, the federal government has taken to trial a total of 202 federal death penalty cases involving 295 defendants in 231 trials.  These 295 defendants were culled from a larger pool of 498 against whom the Attorney General had authorized the government to seek the death penalty.  Excluding 11 defendants who are awaiting or currently on trial on capital charges, 234 of the remaining 487 defendants avoided trial by negotiated plea, when the government  dropped its request for the death penalty without a plea agreement, dismissed charges entirely or the judge barred the death penalty.  Fourteen were found not guilty of the capital charge. Two others were declared innocent by the government.  Charges were dismissed against a third when grave questions were raised about his guilt.  There have been three executions.  One death row inmate was granted clemency.  In cases where juries actually reached the point of choosing between life and death, they imposed 151 (65%) life sentences and 81 (35%) death sentences.  Of these 81 sentences of death, 3 defendants received a death sentence twice.  Three additional defendants received death verdicts, but new trials were granted and life sentences resulted - one by jury, another by plea, a third by judge.  The dispositions of these cases is summarized below:

| | |
|---|---|
| Executed | 3 |
| Sentenced to death and now pending on appeal | 11 |
| Sentenced to death and now pending on 2255 | 49 |
| Died Before Execution | 1 |
| Clemency | 1 |
| Awaiting retrial or re-sentencing after reversal | 2 |
| Death sentence vacated and request for the death penalty withdrawn | 5 |
| Life sentences imposed by juries (151) or judges (3) | 154 |
| Acquittal | 14 |
| Capital charges dismissed before trial on grounds of actual innocence | 3 |
| Dismissal of death penalty by Judge after death notice filed | 26 |
| Requests for the death penalty withdrawn by the government before trial | 62 |
| Requests for the death penalty withdrawn at trial | 12 |
| Capital prosecution discontinued by government due to plea bargain before trial | 117 |
| Capital prosecution discontinued by government due to plea bargain at trial | 21 |
| Committed suicide/died | 3 |
| Lesser included conviction | 3 |
| Incompetent after authorization | 2 |
| Awaiting or on trial on capital charges | 9 |
| **TOTAL** | **498** |

Of the total of 498 defendants against whom the Attorney General has authorized the government to request the death penalty, 131 have been white, or 26%, 92 Hispanic, or 19%, 21 Asian/Indian/Pacific Islander/Native American/Filipino, or 4%, 3 Arab, or 1% and 251 African-Americans, or 50%. 367 of the 498, or 74%, of the defendants approved for a capital prosecution by the Attorney Generals to date are members of minority groups. Thirty-seven of the sixty defendants now on federal death row under active death sentences, or 62%, are non-white. 34, or 57%, of federal death row were convicted of killing whites.

## DECLARATION OF KEVIN McNALLY REGARDING
## THE GEOGRAPHIC LOCATION OF CASES, THE FREQUENCY OF FEDERAL
## DEATH SENTENCES AND THE RACE AND GENDER OF DEFENDANTS AND VICTIMS

1.  I currently serve as the Director of the Federal Death Penalty Resource Counsel Project, assisting court-appointed and defender attorneys charged with the defense of capital cases in the federal courts.  I have served as Resource Counsel since the inception of the Resource Counsel Project in January, 1992.  The Project is funded and administered under the Criminal Justice Act by the Defender Services Office of the Administrative Office of the United States Courts.

2.  My responsibilities as federal resource counsel include the monitoring of all federal capital prosecutions throughout the United States in order to assist in the delivery of adequate defense services to indigent capital defendants in such cases.  This effort includes the collection of data on the initiation and prosecution of federal capital cases.[1]

---

[1]The work of the Federal Death Penalty Resource Counsel Project is described in a report prepared by the Subcommittee on Federal Death Penalty Cases, Committee on Defender Services, Judicial Conference of the United States, FEDERAL DEATH PENALTY CASES: RECOMMENDATIONS CONCERNING THE COST AND QUALITY OF DEFENSE REPRESENTATION (May, 1998), at 28-30.  www.uscourts.gov/dpenalty/1COVER.htm. The Subcommittee report "urges the judiciary and counsel to maximize the benefits of the Federal Death Penalty Resource Counsel Project ..., which has become essential to the delivery of high quality, cost-effective representation in death penalty cases ...." *Id.* at 50. An update to the Report states: "Many judges and defense counsel spoke with appreciation and admiration about the work of Resource Counsel. Judges emphasized their assistance in recruiting and recommending counsel for appointments and their availability to consult on matters relating to the defense, including case budgeting. Defense counsel found their knowledge, national perspective, and case-specific assistance invaluable." http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/Publications/UpdateFederalDeathPenaltyCases.aspx

3.  In order to carry out the duties entrusted to me, I maintain a comprehensive list of federal death penalty prosecutions and information about these cases.  I accomplish this by internet news searches, by reviewing dockets and by downloading and obtaining indictments, pleadings of substance, notices of intent to seek or not seek the death penalty, and by telephonic or in-person interviews with defense counsel or consultation with chambers. This information is regularly updated and is checked for accuracy by consulting with defense counsel.  The Project's information regarding federal capital prosecutions has been relied upon by the Administrative Office of the United States Courts, by the Federal Judicial Center and by various federal district courts.

4.  This declaration concerns:  (1) the frequency with which the federal death penalty has been sought and imposed since 1988; (2) the race of the defendants as to whom a capital prosecution has been authorized; (3) the frequency with which the federal death penalty is authorized and imposed on a regional basis; and (4) the race and gender of victims.

I.

### FREQUENCY WITH WHICH THE FEDERAL DEATH PENALTY IS SOUGHT AND IMPOSED

5.  The Project has collected information regarding all federal executions and all potential and actual federal death penalty prosecutions initiated pursuant to 21 U.S.C. § 848(e) *et seq.,* enacted in 1988, and/or 18 U.S.C. §3591, *et seq*., enacted in 1994.

2

**Fell Motion Appendix0081**

6.  Based on the Project's figures, as well as the reports published by the Department of Justice in September 2000 and June 2001, the "pool" of potential capital defendants in the federal system since 1988 totals 3,992.  This figure is current as of September 8, 2015. This consists of, among others, 52 cases reviewed prior to the 1995 Death Penalty Protocols put into place by Attorney General Reno,[2] 682 reviewed by Ms. Reno after the Protocols went into effect (2000 DOJ Study), 638 reviewed by Attorney General Ashcroft (RCP total), 426 reviewed by Attorney General Gonzales (RCP total), 18 reviewed by Acting Attorney General Keisler (RCP total), 161 reviewed by Attorney General Mukasey (RCP total), 4 reviewed by Acting Attorney General Filip (RCP total), 968 reviewed by Attorney General Holder (RCP total) and 11 reviewed by Attorney General Lynch (RCP total).  There are also an additional 303 cases identified by United States Attorneys as potential capital cases that were never submitted for review (2001 DOJ Report).[3] The Project has also identified

---

[2]Prior to the Protocols, which went into effect on January 27, 1995, the Attorney General only reviewed those cases in which a United States Attorney requested permission to seek the death penalty.  Potential capital cases where the local determination was not to seek the death penalty were not reviewed by Main Justice.  The change wrought by the Protocols was a requirement that *all* potential death-penalty cases, whether the United States Attorney wished to pursue the death penalty or not, be submitted to Main Justice for review and a final decision by the Attorney General. However, the United States Attorney remained free to enter into a plea agreement specifying a sentence other than death. Attorney General Ashcroft required Main Justice review of all such proposed plea agreements in 2001.

[3]*See* the discussion of this figure at n. 10 of the June 2001 Supplemental Justice Department Study.

**Fell Motion Appendix0082**

additional cases reviewed by the various Attorneys General as well as others that were never submitted for review and/or charged as capital offenses even though there was justification for doing so.  Of the total of 3,992 potential federal capital defendants, 150 are currently pending review by the Department of Justice, bringing the total defendants reviewed so far to 3,842.

7.  From this group of 3,842 potential capital defendants, a total of 498 defendants have actually been authorized for capital prosecution.  Thus, the Department of Justice has authorized capital prosecutions involving approximately 13% (498/3,842) of the defendants against whom the penalty could have been sought.  To date, juries have returned 81 death verdicts as to 78 different defendants (three of those defendants were sentenced to death at both an original trial and then, after having their death sentence overturned on appeal, again at a resentencing retrial).  Three defendants have been executed.[4]  One defendant was granted clemency.  There are 60 defendants presently on the federal death row under an active sentence of death.  These cases are in various stages of review via direct appeal or post-conviction proceedings brought pursuant to 28 U.S.C. § 2255.  There are 11 defendants presently pending or in trial who have been "authorized" by the Attorney General, including two defendants who were previously sentenced to death.

_____

[4]Two federal executions took place in the year 2001 (Timothy McVeigh and Juan Garza) and one in the year 2003 (Louis Jones).  Messrs. McVeigh and Jones were executed pursuant to the Federal Death Penalty Act of 1994.  Mr. Garza was executed pursuant to the 1988 enactment, 21 U.S.C. § 848(e).

4

**Fell Motion Appendix0083**

8.   To date, juries have sentenced 151 defendants to a life sentence and 81 defendants to death.  Judges have sentenced three defendants to life in prison.

## II.

### RACE OF DEFENDANTS AUTHORIZED
### FOR FEDERAL CAPITAL PROSECUTIONS

9.   The racial composition of the pool of 498 defendants whose cases were authorized for a federal capital prosecution is as follows: (A) African-American, 251 (50%); (B) Caucasian, 131 (26%); (C) Latino, 92 (19%); and (D), "other," 24 (5%).  These figures are current as of September 8, 2015.

## III.

### RACE AND GENDER OF VICTIMS

10.   Since 2000, in a grossly disproportionate number of cases, juries have imposed the death penalty when the victim was a white female.  As of September 8, 2015, white female victim cases constituted 38% (23 of 60) of federal death row but only 8% (202 of 2470)[5] of the available pool of potential defendants since the year 2000.  Moreover, 45% (25 of 55) of all death sentences between 2000 and 2014 have involved white female victims.  This is many times greater than one would expect given the pool of white female victim cases.

---

[5]We have information as to the race and gender of the victim for 2470 defendants (out of 2728).

5

**Fell Motion Appendix0084**

11. Attached as Exhibit B is a 2008 declaration by undersigned describing 403 "completed" federal death penalty cases with race and gender information as to each defendant and victim. Attached as Exhibit C is a complete data set of all such cases as of September 2008.

12. Attached as Exhibit D is a 2008 declaration by an expert, Lauren Cohen Bell, Ph.D., which concludes that federal capital defendants accused of the murder of a white female are three times more likely than other federal capital defendants to be sentenced to death. Dr. Bell concludes: "[T]his correlation between white female victims and death sentencing is highly statistically significant, systemic, and not the result of chance." [Exhibit D at 3]. Dr. Bell states that there is an "essentially zero" or "one in one thousand" chance that the race and gender of the victim is not related to the capital sentencing outcome. [Exhibit D at 4, 5, 6]. Attached as Exhibit E is Dr. Bell's 2008 curriculum vita. This opinion holds regardless of the race of the defendant.

## IV.

### REGIONAL VARIATIONS

13. Based on figures compiled by the Death Penalty Information Center (current as of September 24, 2015) the states which currently lead the nation in post-*Gregg* executions are Texas (528), Oklahoma (112), Virginia (110) and Florida (90). The states whose federal districts have the most authorized federal death penalty prosecutions (including pending

6

cases) are Virginia (57), New York (45), California (42), Texas (31), Missouri (29) and Maryland (26).  Federal districts in the following states have had more than one federal death sentence returned by juries:  Texas (14), Missouri (10), Virginia (8), Louisiana (4), Georgia (3), Oklahoma (3), Maryland (2), Pennsylvania (2), Arkansas (2), California (2), Florida (2), Illinois (2), Iowa (2), New York (2), North Carolina (4), South Carolina (2), Massachussetts (2) and West Virginia (2).  Of the 81 federal death sentences imposed by juries since 1988, 52 (or 64%) have come from the traditional "death belt" states, the states that have historically executed the most  people.

14.  The United States Courts system has 94 districts.  Of those, 23 districts (or 24%) have never had a case authorized for a federal death penalty prosecution.[6]

15.  There have been 10 federal death-penalty cases tried in the First Circuit involving a total of 12 defendants, as follows: 3 trials in the District of Massachusetts (3 defendants - 1 life sentence and 2 death sentences), 7 trials in the District of Puerto Rico (9 defendants - 2 acquittals and 7 life sentences).  The First Circuit trials, involving 12 defendants, resulted in 2 death sentences (or 17%).

---

[6]1) M.D. Alabama; 2) S.D. California; 3) D. Delaware; 4) D. Guam; 5) C.D. Illinois; 6) M.D. Louisiana; 7) D. Maine; 8) D. Minnesota; 9) D. Montana; 10) D. Nebraska; 11) D. Nevada; 12) D. New Hampshire; 13) D. Northern Mariana Islands; 14) N.D. Oklahoma; 15) D. Oregon; 16) D. South Dakota; 17) D. Utah; 18) D. Virgin Islands; 19) E.D. Washington; 20) W.D. Washington; 21) E.D. Wisconsin; 22) W.D. Wisconsin and 23) D. Wyoming.

**Fell Motion Appendix0086**

16.   In the Second Circuit there have been 22 federal death-penalty cases tried in New York State involving a total of 31 defendants, as follows: 4 trials in the District of Connecticut (4 defendants - 1 acquittal, 2 life sentences and 1 death sentence), 1 trial in the District of Vermont (1 defendant - 1 death sentence), 12 trials (1 trial was a retrial) in the Eastern District of New York (12 defendants - 11 life sentences and 1 death sentence), 2 trials in the Northern District of New York (5 defendants - 1 authorization withdrawn at trial and 4 life sentences) and 6 trials in the Southern District of New York (9 - 1 guilty plea at trial, 1 acquittal and 7 life sentences).  Only 1 death verdict has been returned.[7]  The Second Circuits trials involving 31 defendants resulted in 3 death sentences (or 10%).

17.   In the Third Circuit there have been 12 federal death-penalty cases tried, involving a total of 17 defendants, as follows: 2 trials in New Jersey (2 defendants - one life sentence, the other committed suicide at trial), 6 trials in the Eastern District of Pennsylvania (10 defendants resulting in 1 authorization withdrawn at trial, 3 guilty pleas at trial, 1 acquittal, 4 life sentences and 1 death sentence), 4 trials in the Middle District of Pennsylvania (4 defendants resulting in 1 authorization withdrawn at trial, 1 life sentence by the judge, 1 life sentence by the jury and 1 death sentence) and 2 trials in the Western District of Pennsylvania (2 defendants - 2 life sentences).  The Third Circuit's trials involving 17 defendants resulted in 2 death sentences (or 12%).

---

[7]Ronell Wilson (ED NY) received a death sentence at his trial and at his resentencing after appeal.

**Fell Motion Appendix0087**

18.   In the Fourth Circuit there have been 46 federal death penalty cases tried, involving 70 defendants, as follows: 11 trials in the District of Maryland (13 defendants - 1 guilty plea at trial, 1 lesser included conviction, 8 life sentences by a jury and 1 life sentence by a judge and 2 death sentences), 3 trials in the District of South Carolina (3 defendants - 1 life sentence and 2 death sentences), 20 trials in the Eastern District of Virginia (35 defendants - 1 guilty plea a trial, 2 lesser included convictions, 2 acquittals, 22 life sentences by jury, 1 life sentence by judge and 7 death sentences), 2 trials in the Northern District of West Virginia (2 defendants - 1 guilty plea at trial and 1 dismissal after notice), 2 trials in the Southern District of West Virginia (1 trial resulting in 2 death sentences but a new trial was granted resulting in a guilty plea by one defendant and a life sentence from the jury for the other defendant), 5 trials in the Western District of North Carolina (5 defendants - 1 authorization withdrawn at trial, 1 life sentence and 3 death sentences) and 8 trials in the Western District of Virginia (10 defendants - 2 authorizations withdrawn at trial, 2 acquittals, 5 life sentences and 1 death sentence).  The Fourth Circuit's trials involving 70 defendants resulted in 14 death sentences or (20%).

19. In the Fifth Circuit there have been 21 federal death penalty cases tried, involving 29 defendants, as follows: 5 trials in the Eastern District of Louisiana (5 defendants - but one defendant twice - so 6 outcomes) - 1 guilty plea at trial, 1 life sentence and 4 death sentences), 8 trials in the Eastern District of Texas (10 defendants - 5 life sentences and 5

**Fell Motion Appendix0088**

death sentences), 5 trials in the Northern District of Texas (5 defendants - 1 life sentence and 4 death sentences), 2 trials in the Southern District of Mississippi (2 defendants - 2 life sentences), 3 trials in the Southern District of Texas (3 defendants - 1 life sentence and 2 death sentences), 1 trial in the Western District of Louisiana (1 defendant - 1 death sentence) and 2 trials in the Western District of Texas (3 defendants - 3 death sentences). The Fifth Circuit's trials involving 29 defendants resulted in 19 death sentences (or 66%).

20.  There have been 16 federal death-penalty cases tried in the Sixth Circuit involving a total of 19 defendants, as follows: 3 trials in the Eastern District of Michigan (3 defendants - 1 guilty plea at trial and 2 life sentences), 1 trial in the Eastern District of Tennessee (1 defendant - 1 death sentence), 2 trials in the Middle District of Tennessee (2 defendants - 1 guilty plea at trial and 1 life sentence), 2 trials in the Northern District of Ohio (2 defendants - 2 life sentences), 3 trials in the Southern District of Ohio (3 defendants - 2 life sentences and 1 death sentence), 2 trials in the Western District of Kentucky (2 defendants - 2 life sentences), 3 trials in the Western District of Michigan (3 defendants - 2 life verdicts and 1 death verdict) and 2 trials in the Western District of Tennessee (3 defendants - 2 guilty pleas at trial and 1 life verdict).  The Sixth Circuit's trials involving 19 defendants resulted in 3 death sentences (or 16%).

21.  There have been 6 federal death-penalty cases tried in the Seventh Circuit, involving a total of 9 defendants, as follows: 5 trials in the Northern District of Illinois  (5

**Fell Motion Appendix0089**

defendants - 3 life sentences and 2 death sentences) and 3 trials in the Northern District of Indiana (4 defendants - 1 authorization withdrawn at trial, 2 life sentences and 1 death sentence). In the Seventh Circuit's trials involving 9 defendants, there have been 3 death verdicts (or 33%).

22. In the Eighth Circuit there have been 20 federal death penalty cases tried, involving 31 defendants, as follows: 1 trial in North Dakota (1 defendant - 1 death sentence), 3 trials in the Eastern District of Arkansas (4 defendants - 1 guilty plea at trial, 2 life sentences and 1 death sentence), 4 trials in the Eastern District of Missouri (5 defendants - 2 life sentences and 3 death sentences), 2 trials in the Northern District of Iowa (2 defendants - 2 death sentences), 2 trials in the Western District of Arkansas (2 defendants - 1 life sentence and 1 death sentence), 12 trials in the Western District of Missouri (17 defendants - 1 authorization withdrawn at trial, 9 life sentences and 7 death sentences). The Eighth Circuit's 31 defendants who went to trial resulted in 15 death sentences (or 48%).

23. There have been 11 federal death-penalty cases tried in the Ninth Circuit involving a total of 22 defendants, as follows: 7 trials in the Central District of California (15 defendants - 3 authorizations withdrawn at trial, 2 guilty pleas at trial, 2 acquittals, 6 life sentences and 2 death sentences), 1 trial in the District of Arizona (1 defendant - 1 death sentence), 1 trial in the District of Hawaii (1 defendant - 1 life sentence), 1 trial in the

**Fell Motion Appendix0090**

District of Idaho (1 defendant - 1 death sentence), 1 trial in the Eastern District of California (1 defendant - 1 guilty plea at trial), 3 trials in the Northern District of California (3 defendants - 1 guilty plea at trial and 2 life sentences).  There were 4 death verdicts returned in the Ninth Circuit in trials involving 22 defendants (or 18%).

24.  In the Tenth Circuit there have been 13 federal death penalty cases tried, involving 18 defendants, as follows: 4 trials in the District of Colorado (4 defendants - 3 life sentences and 1 death sentence), 4 trials in the District of Kansas (4 defendants - 1 authorization withdrawn at trial, 2 life sentences and 1 death sentence), 4 trials in the District of New Mexico (4 defendants - 2 guilty pleas at trial and 2 life sentences), 4 trials in the Eastern District of Oklahoma (5 defendants - 2 life sentences and 3 death sentences) and 1 trial in the Western District of Oklahoma (1 defendant - 1 guilty plea at trial).  The Tenth Circuit's trials involving 18 defendants resulted in 5 death sentences (or 28%).

25.  In the Eleventh Circuit there have been 17 federal death penalty cases tried, involving 20 defendants, as follows: 2 trials in the Middle District of Florida (2 defendants - 2 life sentences), 1 trial in the Middle District of Georgia (1 defendant - life sentence), 3 trials in the Northern District of Alabama (3 defendants - 1 guilty plea at trial, 1 life sentence and 1 death sentence), 3 trials in the Northern District of Georgia (3 defendants - 1 life sentence and 2 death sentences), 1 trial in the Southern District of Alabama (1 defendant - 1 life sentence), 5 trials in the Southern District of Florida (8 defendants - 3 acquittals, 3 life

**Fell Motion Appendix0091**

sentences and 2 death sentences) and 2 trials in the Southern District of Georgia (2

defendants - 1 life sentence and 1 death sentence).  The Eleventh Circuit's trials involving

20 defendants resulted in 6 death sentences (or 30%).

28.  In the D.C. Circuit there have been 3 federal death penalty cases tried, involving

4 defendants, resulting in 4 life sentences, or 0% death sentences.

29. I also have information on the number of authorized federal death penalty cases,

since 1988, by the state in which each such prosecution was brought.  According to the

Project's records, the following compilation accurately sets forth the particular state in

which each of the 498 federal death penalty cases authorized since 1988 was prosecuted:

> Alabama (6), Alaska (2), Arizona (6), Arkansas (7), California (44),
> Colorado (8), Connecticut (5), DC (17), Florida (15), Georgia (9),
> Hawaii (2), Idaho (1), Illinois (13), Indiana (7), Iowa (4), Kansas (7),
> Kentucky (5), Louisiana (11), Maryland (26), Massachusetts (5),
> Michigan (19), Mississippi (3), Missouri (29), New Jersey (4), New
> Mexico (9), New York (45), North Carolina (10), North Dakota (2),
> Ohio (6), Oklahoma (6), Pennsylvania (23), Puerto Rico (24),
> Rhode Island (1), South Carolina (3), Tennessee (15), Texas (31),
> Vermont (3), Virginia (57), West Virginia (8).

I declare under the penalty of perjury under the laws of the United States of America,

28 U.S.C. §1746, that the foregoing is true and correct.  Executed this 25th day of

September, 2015.

>    /s/ Kevin McNally
> Kevin McNally

Declaration of LAUREN COHEN BELL, Ph.D., regarding sentencing dynamics in federal death penalty cases.

1. I am currently Associate Professor of Political Science and Associate Dean of the College at Randolph-Macon College in Ashland, Virginia, where I have been a faculty member since September 1999. Among the subjects I teach are public policy, judicial process, constitutional law, and research methodology.

2. In my research, I regularly perform quantitative analysis of data and rely on the Statistical Package for the Social Sciences (SPSS) to organize and analyze such data. The use of quantitative analysis in social science and the use of SPSS in particular is an integral part of the research methodology course I teach. I have authored or coauthored a total of 21 books, book chapters, and peer-reviewed articles and have presented nearly 30 academic papers at scholarly meetings. I am a member of the editorial board of *Justice System Journal* and a regular manuscript reviewer for *American Politics Research,* Routledge Publishers, *Journal of Politics,* Congressional Quarterly Press, Longman Publishers, Cambridge University Press, *Law and Society Review, American Journal of Political Science, Justice System Journal, Judicature, Political Studies Quarterly,* and *PS: Political Science and Politics.*

3. Between August 2006 and August 2007, I served as one of four United States Supreme Court Fellows. I was posted at the U.S. Sentencing Commission where I worked closely with the Office of Research and Data on the design and implementation of the Commission's 2007 study of the effect of minor offenses on the calculation of offenders' criminal history scores.

4. I hold Masters and Ph.D. degrees in political science from the University of Oklahoma's Carl Albert Congressional Research and Studies Center. A copy of my *curriculum vitae* is attached.

5. I have been asked to conduct an analysis of federal capital prosecutions focusing on the dynamics of death sentencing in cases involving white female victims in comparison with the dynamics of death sentencing in cases not involving white female victims.

6. In order to conduct this analysis, I was provided with data maintained by Kevin McNally on behalf of the Federal Death Penalty Resource Counsel Project. I used SPSS to create a database of 403 cases authorized and completed as capital prosecutions by the U.S. Department of Justice between 1989 and August 2008. For purposes of analyzing sentencing dynamics, I excluded from the analysis six cases: one in which the charged offense was treason and there were no identified victims; and five in which there were mass numbers of victims. (These were large-scale terrorist attacks: the Oklahoma City bombing, the September 11 attack, and the bombing of two U.S. embassies in Africa.) The cases were excluded because where there is either no victim or where there are mass casualties it is not possible to isolate a white female victim effect on sentencing. This is consistent with the way other researchers have addressed this issue. This left 397 authorized capital prosecutions for analysis.

7. I used statistical procedures generally applied in the analysis of quantitative data to assess whether the death penalty was imposed differently in cases involving defendants who killed white females as opposed to other types of victims: descriptive statistics provide a "snapshot" of the characteristics of the data; crosstabulations show how two variables interact with one another; and chi-square analysis provides an indicator of whether an

2

observed relationship occurs by chance or because of a systematic interaction between the two variables.

8. My analysis, as reflected in the charts below, demonstrates that defendants who kill white female victims receive the death penalty at a substantially higher rate than defendants whose victims are not white women and that this correlation between white female victims and death sentencing is highly statistically significant, systematic, and not the result of chance.

9. The data used in the analysis have the following characteristics:

| Condition of Interest | Number of Cases |
|---|---|
| All Authorized Cases | 403 |
| Authorized Cases Involving Victim | 402 (see paragraph 6, above) |
| Authorized Cases Excluding Mass Killings | 397 (see paragraph 6, above) |
| Death Penalty Imposed | 60 |
| Death Penalty Not Imposed | 337 |
| White Female Victim (WFV) | 76 |
| No WFV | 321 |
| Sentencing Trial Completed | 182 |
| Sentencing Trial Involving WFV | 42 |
| Sentencing Trial, No WFV | 140 |
| Death Penalty Imposed, WFV | 25 |
| Death Penalty Imposed, No WFV | 35 |

10. The results of the chi-square analysis are as follows. Table 1 summarizes the analysis of death sentences among the set of 397 authorized federal capital cases. As explained in paragraph 6, this includes all but six authorized prosecutions.

3

**Fell Motion Appendix0095**

**Table 1: Relationship between the Presence of a White Female Victim (WFV) and Imposition of a Death Sentence, All Authorized Cases (Excluding Mass Killings) [N=397]**

| Data Source | Condition (N) | Percent (Formula) |
|---|---|---|
| Set of All Cases (N =76) with WFV | Death-Sentenced (25) | 32.9% (25 of 76) |
| | Non-Death Sentenced (51) | 67.1% (51 of 76) |
| Set of All Cases (N=321) with no WFV | Death-Sentenced (35) | 10.9% (35 of 320) |
| | Non-Death-Sentenced (286) | 89.1% (286 of 320) |
| Set of All Cases (N=60) Involving a Death Sentence | Cases with WFV (25) | 41.7% (25 of 60) |
| | Cases with no WFV (35) | 58.3% (35 of 60) |
| Set of All Cases (N=337) Not Involving a Death Sentence | Cases with WFV (51) | 15.1% (51 of 337) |
| | Cases with no WFV (286) | 84.9% (286 of 337) |

11. Table 1 indicates that defendants in cases involving a white female victim were sentenced to death 32.9 percent of the time (in 25 of 76 cases). Defendants in cases not involving a white female victim were sentenced to death 10.9 percent of the time (in 35 of 321 cases). A defendant charged with killing a white female victim was more than three times (3.02) more likely to be sentenced to death than a defendant charged with killing a victim who was not a white female. These results are statistically significant at the $p<.001$ level, indicating that the probability that this relationship has been observed by chance is essentially zero.

12. Table 2 looks at the smaller set of authorized capital cases that proceeded through to a capital sentencing trial. It indicates that among those for whom life or death decisions were made by judges or juries, defendants in cases involving a white female victim received a death sentence 59.5 percent of the time (in 25 of 42 cases). Defendants in cases where there was no white female victim were sentenced to death 25.0 percent of the

4

time (in 35 of 140 cases).  A defendant in a federal capital trial thus was almost two-and-one-half times (2.38) more likely to be sentenced to death in a case involving a white female victim than a defendant in a case in which there was no white female victim. These results are statistically significant at the p<.001 level, indicating the probability that this relationship has been observed by chance is essentially zero.

**Table 2: Relationship between the Presence of a White Female Victim (WFV) and Imposition of a Death Sentence, Trial Cases Only (Excluding Mass Killings) [N=182]**

| Data Source | Condition (N) | Percent (Formula) |
|---|---|---|
| Set of All Cases (N =42) with WFV | Death-Sentenced (25) | 59.5 % (25 of 42) |
| | Non-Death Sentenced (17) | 40.5 % (17 of 42) |
| Set of All Cases (N=140) with no WFV | Death-Sentenced (35) | 25.0 % (35 of 140) |
| | Non-Death-Sentenced (105) | 75.0 % (105 of 140) |
| Set of All Cases (N=60) Involving a Death Sentence | Cases with WFV (25) | 41.7% (25 of 60) |
| | Cases with no WFV (35) | 58.3% (35 of 60) |
| Set of All Cases (N=122) Not Involving a Death Sentence | Cases with WFV (17) | 13.9 % (17 of 122 ) |
| | Cases with no WFV (105) | 86.1 % (105 of 122) |

13. Based on the bivariate results discussed here, I conclude without hesitation that there is a statistically significant and systematic correlation between the presence of a white female victim and the likelihood of a death sentence in a federal capital case.  Defendants who killed white female victims are overrepresented among federal death sentenced defendants.  They represent 19.1 percent of all authorized prosecutions (76 of 397) and 23.1 percent of authorized prosecutions completing a penalty phase trial (42 of 182); however they represent 41.7 percent of death sentences (25 of 60).

**Fell Motion Appendix0097**

14. The analysis reveals a robust correlation between the presence of a white female victim and the imposition of a death sentence. Social scientists consider a result to be robust when changing the assumptions undergirding an analysis would be unlikely to affect its results. The generally accepted standard for statistical significance in political science research is $p < .05$, meaning the probability that the results occurred by chance is less than five percent. In the case of these analyses, the findings are statistically significant at a higher level of $p < .001$, meaning the probability they occurred by chance is less than one-tenth of one percent, or one in one thousand. Given the robust quality of these findings, it is my opinion to a reasonable degree of scientific certainty that this correlation of more severe sentencing outcomes and white female victims is unlikely to disappear even in the presence of other potentially explanatory variables.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 16th day of September, 2008.

*Lauren Cohen Bell*

Lauren Cohen Bell

6

## Appendix: Bivariate SPSS Results Used to Generate Tables 1 and 2

Table 1:

### Case Processing Summary

| | Cases | | | | | |
| | Valid | | Missing | | Total | |
| | N | Percent | N | Percent | N | Percent |
|---|---|---|---|---|---|---|
| Death Penalty Imposed * White Female Victim | 397 | 100.0% | 0 | .0% | 397 | 100.0% |

### Death Penalty Imposed * White Female Victim Crosstabulation

| | | | White Female Victim | | |
| | | | No | Yes | Total |
|---|---|---|---|---|---|
| Death Penalty Imposed | No | Count | 286 | 51 | 337 |
| | | % within Death Penalty Imposed | 84.9% | 15.1% | 100.0% |
| | | % within White Female Victim | 89.1% | 67.1% | 84.9% |
| | Yes | Count | 35 | 25 | 60 |
| | | % within Death Penalty Imposed | 58.3% | 41.7% | 100.0% |
| | | % within White Female Victim | 10.9% | 32.9% | 15.1% |
| Total | | Count | 321 | 76 | 397 |
| | | % within Death Penalty Imposed | 80.9% | 19.1% | 100.0% |
| | | % within White Female Victim | 100.0% | 100.0% | 100.0% |

### Chi-Square Tests

| | Value | df | Asymp. Sig. (2-sided) | Exact Sig. (2-sided) | Exact Sig. (1-sided) |
|---|---|---|---|---|---|
| Pearson Chi-Square | 23.165[b] | 1 | .000 | | |
| Continuity Correction [a] | 21.482 | 1 | .000 | | |
| Likelihood Ratio | 19.743 | 1 | .000 | | |
| Fisher's Exact Test | | | | .000 | .000 |
| Linear-by-Linear Association | 23.107 | 1 | .000 | | |
| N of Valid Cases | 397 | | | | |

a. Computed only for a 2x2 table

b. 0 cells (.0%) have expected count less than 5. Minimum expected count is 11.49.

7

**Fell Motion Appendix0099**

Table 2:

**Case Processing Summary**

| | Cases | | | | | |
|---|---|---|---|---|---|---|
| | Valid | | Missing | | Total | |
| | N | Percent | N | Percent | N | Percent |
| Death Penalty Imposed * White Female Victim | 182 | 100.0% | 0 | .0% | 182 | 100.0% |

**Death Penalty Imposed * White Female Victim Crosstabulation**

| | | | White Female Victim | | Total |
|---|---|---|---|---|---|
| | | | No | Yes | |
| Death Penalty Imposed | No | Count | 105 | 17 | 122 |
| | | % within Death Penalty Imposed | 86.1% | 13.9% | 100.0% |
| | | % within White Female Victim | 75.0% | 40.5% | 67.0% |
| | Yes | Count | 35 | 25 | 60 |
| | | % within Death Penalty Imposed | 58.3% | 41.7% | 100.0% |
| | | % within White Female Victim | 25.0% | 59.5% | 33.0% |
| Total | | Count | 140 | 42 | 182 |
| | | % within Death Penalty Imposed | 76.9% | 23.1% | 100.0% |
| | | % within White Female Victim | 100.0% | 100.0% | 100.0% |

**Chi-Square Tests**

| | Value | df | Asymp. Sig. (2-sided) | Exact Sig. (2-sided) | Exact Sig. (1-sided) |
|---|---|---|---|---|---|
| Pearson Chi-Square | 17.425[b] | 1 | .000 | | |
| Continuity Correction [a] | 15.898 | 1 | .000 | | |
| Likelihood Ratio | 16.611 | 1 | .000 | | |
| Fisher's Exact Test | | | | .000 | .000 |
| Linear-by-Linear Association | 17.329 | 1 | .000 | | |
| N of Valid Cases | 182 | | | | |

a. Computed only for a 2x2 table

b. 0 cells (.0%) have expected count less than 5. Minimum expected count is 13.85.

8

**Fell Motion Appendix0100**

**Authorized Federal Capital Prosecutions Pending Trial - 6/3/2015**

---

Jones, Ulysses | W.D. MO 6:10-CR-03090-DGK

Pending trial | **Name of AG**  Holder

**Race & gender of def**  B  M   **Victim R**  BM   **Date of DP notice**  10/4/2012

a BOP murder by a black inmate of another black inmate at the US Medical Correctional Facility in Springfield, Illinois.  Jones was serving a life sentence for a previous murder of an inmate.

---

Santiago, Richard | D. CO No. 1:10-CR-00164-LTB

Pending trial | **Name of AG**  Holder

**Race & gender of def**  H  M   **Victim R**  HM   **Date of DP notice**  2/28/2011

a BOP inmate murder at "Supermax," ADX Florence, Colorado.  Santiago is already serving a life sentence for an La EME murder at USP Lompoc.  All involved are Hispanic.

---

Merriweather, William, Jr. | N.D. AL No. 2:07-CR-243-RDP-JEO

Pending trial | **Name of AG**  Mukasey

**Race & gender of def**  B  M   **Victim R**  WF BF   **Date of DP notice**  6/3/2008

murder during an Alabama bank robbery.  Merriweather killed two female bank employees and wounded two others. One of the homicide victims is a white female, the other three are black females.  Merriweather's prior criminal record involves child sexual abuse and drug trafficking. He is an African-American who was addicted to drugs.  He was shot at the scene and arrested.  He made false statements that there was another person involved.

---

Sablan, Joseph Cabrerar | E.D. CA No. 08 CR 00259, change to C.D. CA No. 2:14-

Pending trial | **Name of AG**  Holder

**Race & gender of def**  H  M   **Victim R**  HM   **Date of DP notice**  4/7/2009

law enforcement officer victim - the stabbing death of a BOP Hispanic prison guard at Atwater by two inmates.  The killing is on videotape.  Co-defendant Sablan is suspected of being involved in a prior correctional officer murder.  The victim was a 22 year old military veteran who served two tours in Iraq.  He  was chased down and tackled by Sablan and stabbed by Guerrero with an eight inch ice pick type weapon. Leon Guerrero is from Guam.  Sablan is from Saipan.  This was Attorney General Holder's first decision to "authorize" a case.

---

Millner, John Travis | E.D. KY No. 7:13-CR-15-ART

Pending trial | **Name of AG**  Holder

**Race & gender of def**  B  M   **Victim R**  BM   **Date of DP notice**  10/3/2013

a BOP inmate homicide of a cellmate at USP Big Sandy, with a prison-made ice pick and by strangulation.  Millner was convicted of a previous murder in Washington, DC and an attempted murder of another inmate in Virginia.  He is serving a life without release sentence. Both are African-Americans.

**Fell Motion Appendix0101**

**Authorized Federal Capital Prosecutions Pending Trial - 6/3/2015**

| | |
|---|---|
| Duran-Gomez, Wilmar Rene | S.D. TX No. H-10-459 |

Pending trial                                              **Name of AG**   Holder

**Race & gender of def**  H  M      **Victim R**  HM      **Date of DP notice**  9/19/2012

charged in the deaths of two illegal aliens resulting from a conspiracy to transport and harbor illegal aliens into the United States. The government alleged that Duran-Gomez, Bolanos-Garza and others engaged in a conspiracy to smuggle illegal aliens into the United States, during which they were held in warehouses in Texas until their families paid the smugglers' fees. While being held in a warehouse in Houston, two of the aliens set fire to the warehouse in an effort to escape. The government alleges that Duren-Gomez, Rodrigues-Mendoza and Bolanos-Garza later beat them to death. Only Duran-Gomez has been authorized. All involved are Hispanic.

| | |
|---|---|
| Roland, Farad | D. NJ No. 2:12-CR-00298-ES |

Pending trial                                              **Name of AG**   Holder

**Race & gender of def**  B  M      **Victim R**            **Date of DP notice**  1/5/2015

three RICO gun murders, by the "Bloods" gang, one in 2007 and a double murder in 2008. Roland is charged in all three, Williams and Lowery in one. All involved are African-American.

| | |
|---|---|
| Con-ui, Jessie | M.D. PA No. 3:CR-13-123 |

Pending trial                                              **Name of AG**   Holder

**Race & gender of def**  O  M      **Victim R**            **Date of DP notice**  10/2/2014

murder of a guard at USP Canaan. The victim is white, defendant Filipino.

| | |
|---|---|
| Ham, James Wayne | S.D. TX No. 4:13-CR-00363 |

Pending trial                                              **Name of AG**   Holder

**Race & gender of def**  W  M      **Victim R**  BF      **Date of DP notice**  9/18/2014

involves a gun murder of a postal worker (a letter carrier) because the white defendant thought the black female carrier was diverting his mail to his estranged wife. After the shooting, the victim's car, with her body still inside, was set on fire by the defendant and the victim's body was reduced to ashes and a few bones.

| | |
|---|---|
| Ciancia, Paul Anthony | C.D. CA No. 2:13-CR-00902-PSG |

Pending trial                                              **Name of AG**   Holder

**Race & gender of def**  W  M      **Victim R**  HM      **Date of DP notice**  12/29/2014

a 2013 shooting rampage and gun murder of a law enforcement officer at Los Angeles International Airport. A Transportation Security Administration officer was intentionally murdered. He is the first TSA agent to be killed. Three others were wounded. Ciancia was shot and seriously wounded. He is white. The slain officer was Hispanic.

**Fell Motion Appendix0102**

**Authorized Federal Capital Prosecutions Pending Trial – 6/3/2015**

Watts, James                                    S.D. IL No. 4:14-CR-40063-JPG

Pending trial                                                   **Name of AG**   Holder

**Race & gender of def**   B   M      **Victim R**        WF      **Date of DP notice**   4/21/2015

cross-racial double stabbing murders of white, female bank employees by a black male, a convicted felon and sex offender who had just been released from prison.  A third employee was stabbed, but survived.

**Fell Motion Appendix0103**

**Authorized Federal Capital Prosecutions Sentenced to Death
but Who are Now Awaiting Retrial or Resentencing- 6/3/2015**

| Fell, Donald | D. VT 2:01-CR-12-01 |
|---|---|

| Awaiting resentencing or retrial | **Name of AG**   Ashcroft |
|---|---|

**Race & gender of def**  W  M      **Victim R**  WF WM      **Date of DP notice**  1/30/2002

three murders, a carjacking and an interstate kidnapping.  The defendants were high on crack  when an argument erupted with Fell's mother and a male friend.  The male friend's throat was slashed by Fell and Fell's mother stabbed to death by Lee, the co-defendant.  The two then carjacked a 53 year old grandmother at a supermarket.  Crossing into New York, they told her to get out and she attempted to run into the woods.  They followed her and allegedly killed her by kicking her.  The defendants both made incriminating statements.  They were arrested three days later in Arkansas.  All involved are Caucasian.  Lee committed suicide in 2001 by hanging himself in jail.  Authorities said it was an accident.  Attorney General Ashcroft rejected a plea agreement stipulating life in prison, and required a capital prosecution.  The Attorney General also rejected a bench trial.  The court declared the FDPA unconstitutional.  217 F.Supp.2d 469 (2002).  This ruling was reversed by the Second Circuit.  360 F.3d 135 (2004).  The direct appeal was denied.  531 F.3d 197 (2008).  A 28 USC 2255 motion was granted on July 24, 2014.

| Sampson, Gary | D. MA No. 01-CR-10384 |
|---|---|

| Awaiting resentencing or retrial | **Name of AG**   Ashcroft |
|---|---|

**Race & gender of def**  W  M      **Victim R**      WM      **Date of DP notice**  11/19/2002

Sampson plead guilty to two separate car-jacking murders in Massachusetts that took place three days apart in the summer of 2001.  The victims were a 69-year old grandfather and a 19-year old college student.  Sampson confessed to those crimes as well as to a strangulation murder in New Hampshire that he committed three days after the second carjacking murder, and to a subsequent unsuccessful attempted carjacking in Vermont.  The crimes all occurred within an 8-day period.  He confessed, as well, to having committed a series of 5 bank robberies in North Carolina prior to coming to New England.  The day before he committed the first murder, Sampson had called the FBI in Boston in an effort to surrender on the bank robberies.  The FBI accidentally or deliberately disconnected the call or chose not to follow up.  A 28 U.S.C. §2255 motion was granted.  A government interlocutory appeal was denied.  2013 WL 3828663 (1st Cir. 2013).  All involved are white.  The resentencing trial is scheduled for 2015.

**Fell Motion Appendix0104**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

---

| Cooper, Alex | N.D. IL No. 89-CR-580 |
|---|---|

| Life sentence from jury | | **Name of AG** | Thornburg |
|---|---|---|---|

**Race & gender of def** B  M    **Victim R** BM    **Date of DP notice** 5/10/1990

two black Chicago gang members received life sentences for the cocaine-related murder of an informant after separate trials. The Government had offered one defendant, but not the other, a plea bargain prior to trial. 19 F.3d 1154 (7th Cir. 1994).

---

| Davis, Darnell Anthony | N.D. IL No. 89-CR-580 |
|---|---|

| Life sentence from jury | | **Name of AG** | Thornburg |
|---|---|---|---|

**Race & gender of def** B  M    **Victim R** BM    **Date of DP notice** 5/10/1990

two black Chicago gang members received life sentences for the cocaine-related murder of an informant after separate trials. The Government had offered one defendant, but not the other, a plea bargain prior to trial. 19 F.3d 1154 (7th Cir. 1994).

---

| Pitera, Thomas | E.D. NY CR No. 90-0424 (RR) |
|---|---|

| Life sentence from jury | | **Name of AG** | Barr |
|---|---|---|---|

**Race & gender of def** W  M    **Victim R** WF WM    **Date of DP notice** 2/8/1991

a white Mafia contract killer, the first person with mob connections to face the federal death penalty, received a life sentence from a Brooklyn, New York jury after being convicted of seven murders, two of which qualified as capital crimes under 21 U.S.C. § 848(e). Several of the murders involved torture and dismemberment of the victims. 5 F.3d 624 (2d Cir. 1993).

---

| Villarreal, Reynaldo Sambrano | E.D. TX No. 9:91-CR4 |
|---|---|

| Life sentence from jury | | **Name of AG** | Barr |
|---|---|---|---|

**Race & gender of def** H  M    **Victim R** WM    **Date of DP notice** 4/23/1991

law enforcement officer victim. Two Hispanic men were sentenced to life imprisonment and 40 years, respectively, for the marijuana-related murder of a white law enforcement officer after a joint trial. The sentencing jury found no facts legally warranting the death penalty. 963 F.2d 725 (5th Cir.) (1992). A third Hispanic defendant, Jesus Zambrano, was also initially approved for capital prosecution but received a sentence of 30 years after he testified for the government against the Villarreal brothers.

---

| Villarreal, Baldemar | E.D. TX No. 9:91-CR4 |
|---|---|

| Life sentence from jury | | **Name of AG** | Barr |
|---|---|---|---|

**Race & gender of def** H  M    **Victim R** WM    **Date of DP notice** 4/23/1991

law enforcement officer victim. Two Hispanic men in Texas were sentenced to life imprisonment and 40 years, respectively, for the marijuana-related murder of a white law enforcement officer after a joint trial. The sentencing jury found no aggravating factors. 963 F.2d 725 (5th Cir.), cert. denied, 113 S.Ct. 353 (1992). A third Hispanic defendant, Jesus Zambrano, was also initially approved for capital prosecution but received a sentence of 30 years after he testified for the government against the Villarreal brothers.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Hutching, James Norwood | E.D. OK CR No. 1:92-032-S |
|---|---|

| Life sentence from jury | | Name of AG | Barr |
|---|---|---|---|

**Race & gender of def** W  M **Victim R** WM **Date of DP notice** 9/11/1992

two white and one Hispanic defendants were tried jointly in connection with the drug- related intrastate kidnap/murder of a Muskogee, Oklahoma auto dealership employee. The two capitally-charged "managers" of the drug enterprise received life sentences from the jury. A wheelman, present on the scene, was sentenced to death, but that sentence was overturned on appeal.  The victim was white.

| Molina, Ramon Medina | E.D. OK CR No. 1:92-032-S |
|---|---|

| Life sentence from jury | | Name of AG | Barr |
|---|---|---|---|

**Race & gender of def** H  M **Victim R** WM **Date of DP notice** 9/11/1992

two white and one Hispanic defendants were tried jointly in connection with the drug- related intrastate kidnap/murder of a Muskogee, Oklahoma auto dealership employee. The two capitally-charged "managers" of the drug enterprise received life sentences from the jury. A wheelman, present on the scene, was sentenced to death, but that sentence was overturned on appeal.  The victim was white.

| Henry, Arnold Mark | E.D. VA No. 93-CR-131 |
|---|---|

| Life sentence from jury | | Name of AG | Reno |
|---|---|---|---|

**Race & gender of def** B  M **Victim R** BF BM **Date of DP notice** 11/22/1993

three blacks, two brothers born in Haiti, another man born in Grenada, were accused of two killings of an African-American man and a woman in related incidents where the victims were suspected of stealing crack cocaine.  A Norfolk, Virginia jury refused, in March, 1994, to impose the death penalty upon any of the three capitally-charged defendants. Attorney General Reno authorized a capital prosecution in this case in 1993. Arnold Mark Henry is intellectually disabled.  Life sentences were affirmed on appeal. 82 F.3d 419 (4th Cir. 1996) (unpub.).

| Moore, Todd | E.D. VA No. 2:93CR162 |
|---|---|

| Life sentence from judge | | Name of AG | Reno |
|---|---|---|---|

**Race & gender of def** B  M **Victim R** BM **Date of DP notice** 3/9/1994

a black New York-based crack cocaine distributor was spared in the first judge-sentencing procedure.  Attorney General Reno approved the death penalty in this case in 1994.  Moore pled guilty to an indictment charging him with having ordered the murder of a member of his Newport News, Virginia drug organization.  The government waived a jury for sentencing, and a sentencing hearing was held before the district court. One month later, the district judge declined to impose the death penalty, and sentenced Moore to life without possibility of release.  The sentence was affirmed on appeal, 81 F.3d 152 (4th Cir. 1996) (mem.).  At the trial of the admitted triggerman in the murder, Derek Kelley, Moore offered to testify.   However, the government declined to use Moore's testimony, and Kelley was subsequently acquitted of all charges and released.

**Fell Motion Appendix0106**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Oscar, Frantz | | E.D. VA No. 93-CR-131 | |
|---|---|---|---|

Life sentence from jury

**Name of AG**   Reno

**Race & gender of def**  B  M    **Victim R**  BF BM    **Date of DP notice**  11/22/1993

three blacks, two brothers born in Haiti, another man born in Grenada, were accused of two killings of an African-American man and a woman in related incidents where the victims were suspected of stealing crack cocaine.  A Norfolk, Virginia jury refused, in March, 1994, to impose the death penalty upon any of the three capitally-charged defendants. Attorney General Reno authorized a capital prosecution in this case in 1993.  Life sentences were affirmed on appeal.  82 F.3d 419 (4th Cir. 1996) (unpub.).

| Oscar, Jean Claude | | E.D. VA No. 93-CR-131 | |
|---|---|---|---|

Life sentence from jury

**Name of AG**   Reno

**Race & gender of def**  B  M    **Victim R**  BF BM    **Date of DP notice**  11/22/1993

three blacks, two brothers born in Haiti, another man born in Grenada, were accused of two killings of an African-American man and a woman in related incidents where the victims were suspected of stealing crack cocaine.  A Norfolk, Virginia jury refused, in March, 1994, to impose the death penalty upon any of the three capitally-charged defendants. Attorney General Reno authorized a capital prosecution in this case in 1993.  Life sentences were affirmed on appeal.  82 F.3d 419 (4th Cir. 1996) (unpub.).

| Diaz, Walter | | N.D. NY No. 94-CR-328 | |
|---|---|---|---|

Life sentence from jury

**Name of AG**   Reno

**Race & gender of def**  B  M    **Victim R**  WF    **Date of DP notice**  5/31/1995

two African-Americans on a drug-related crime spree were approved for capital prosecution by Attorney General Reno in April 1995. The spree involved the drug-related murder of a white victim by two African-American defendants.  Two additional cross-racial homicides were alleged in aggravation, one during the course of a robbery in New York City, another of an elderly lawyer in upstate New York.  Trial began in 1995 and sentences of life were returned after a vote of 11 to 1 for life for Diaz and 11 to 1 for death for Walker.

| Moore, Dennis B., Sr. | | W.D. MO CR No. 94-00194 | |
|---|---|---|---|

Life sentence from jury

**Name of AG**   Reno

**Race & gender of def**  W  M    **Victim R**  WM    **Date of DP notice**  8/22/1995

recruited his associate (Wyrick) to kill a rival drug marijuana dealer.  Murder for hire is alleged as an aggravating circumstance.  Both the defendants and the deceased are Caucasian.  In 1996, the jury deadlocked on the punishment for Moore, resulting in a life sentence.

| Nguyen, Phouc H. | | D. KS CR No. 94-10129-01 | |
|---|---|---|---|

Life sentence from jury

**Name of AG**   Reno

**Race & gender of def**  A  M    **Victim R**  AF    **Date of DP notice**  6/2/1995

the co-defendant of Bountaem Chanthadara was also involved in a Hobbs Act robbery/murder.  A Wichita, Kansas jury voted to sentence the defendant to life imprisonment in 1996, following his conviction for a murder committed during a commercial robbery.  Mr. Chanthadara was previously sentenced to death by a different Wichita jury.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| | |
|---|---|
| Walker, Tyrone | N.D. NY No. 94-CR-328 |

Life sentence from jury

**Name of AG** Reno

**Race & gender of def** B  M      **Victim R** WF      **Date of DP notice** 5/31/1995

two African-Americans on a drug-related crime spree were approved for capital prosecution by Attorney General Reno in April 1995. The spree involved the drug-related murder of a white victim by two African-American defendants. Two additional cross-racial homicides were alleged in aggravation, one during the course of a robbery in New York City, another of an elderly lawyer in upstate New York. Trial began in 1995 and sentences of life were returned after a vote of 11 to 1 for life for Diaz and 11 to 1 for death for Walker.

| | |
|---|---|
| Nichols, Terry Lynn | D. CO No. 96-CR-68-M |

Life sentence from jury

**Name of AG** Reno

**Race & gender of def** W  M      **Victim R** WF +      **Date of DP notice** 10/20/1995

the co-defendant in the Oklahoma City bombing case. At a separate trial following McVeigh's, a Denver federal jury failed to reach a unanimous finding on Nichols' alleged intent to kill, a legal requirement for imposing the death penalty. The same jury's guilt phase verdicts indicated that the government had failed to prove that Nichols intended a lethal attack on the Murray Building. He was sentenced in 1998 to life imprisonment and faces the death penalty in state court.

| | |
|---|---|
| Beckford, Dean Anthony | E.D. VA No. 3:95CR00087 |

Life sentence from jury

**Name of AG** Reno

**Race & gender of def** B  M      **Victim R** BM      **Date of DP notice** 10/1/1996

another New York - Richmond cocaine connection was uncovered which involved members of a Brooklyn gang, all African-American, who transported crack cocaine to Richmond, Virginia. The 32-count indictment charged five of the alleged members of the so-called "Poison Clan" with capital murder in six killings, two in 1988 and four in 1994. (Devon Dale Beckford, 33, brother of Dean Beckford, identified by the FBI as a gang leader was not arrested until July, 1997.) After a seven-week trial, a jury declined to impose the death penalty on all four defendants: Dean Beckford, 32, Leonel Romeo Cazaco, 22, Claude Gerald Dennis, 28 and Richard Thomas, 22. Dean Beckford and Claude Dennis were found guilty of the 1998 double murder. (Dennis had previously been acquitted on these charges in state court in 1989.) Cazaco and Thomas were also convicted of a capitol charge. Thomas had been acquitted in state court on the one homicide count on which he was convicted in federal court.

| | |
|---|---|
| Cazaco, Leonel | E.D. VA No. 3:95CR00087 |

Life sentence from jury

**Name of AG** Reno

**Race & gender of def** B  M      **Victim R** BM      **Date of DP notice** 10/1/1996

another New York - Richmond cocaine connection was uncovered which involved members of a Brooklyn gang, all African-American, who transported crack cocaine to Richmond, Virginia. The 32-count indictment charged five of the alleged members of the so-called "Poison Clan" with capital murder in six killings, two in 1988 and four in 1994. (Devon Dale Beckford, 33, identified by the FBI as a gang leader was not arrested until July, 1997.) After a seven-week trial, a jury declined to impose the death penalty on all four defendants: Dean Beckford, 32, Leonel Romeo Cazaco, 22, Claude Gerald Dennis, 28 and Richard Thomas, 22. Dean Beckford and Claude Dennis were found guilty of the 1998 double murder. (Dennis had previously been acquitted on these charges in state court in 1989.) Cazaco and Thomas were also convicted of a capitol charge. Thomas had been acquitted in state court on the one homicide count on which he was convicted in federal court.

| Dennis, Claude | E.D. VA No. 3:95CR00087 |
|---|---|

| Life sentence from jury | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** B  M     **Victim R** BM     **Date of DP notice** 10/1/1996

another New York - Richmond cocaine connection was uncovered which involved members of a Brooklyn gang, all African-American, who transported crack cocaine to Richmond, Virginia.  The 32-count indictment charged five of the alleged members of the so-called "Poison Clan" with capital murder in six killings, two in 1988 and four in 1994.  (Devon Dale Beckford, 33, identified by the FBI as a gang leader was not arrested until July, 1997.)  After a seven-week trial, a jury declined to impose the death penalty on all four defendants:  Dean Beckford, 32, Leonel Romeo Cazaco, 22, Claude Gerald Dennis, 28 and Richard Thomas, 22.  Dean Beckford and Claude Dennis were found guilty of the 1998 double murder.  (Dennis had previously been acquitted on these charges in state court in 1989.)  Cazaco and Thomas were also convicted of a capitol charge.  Thomas had been acquitted in state court on the one homicide count on which he was convicted in federal court.

| Hammer, David Paul | M.D. PA No. 4-96-CR-239 |
|---|---|

| Life Sentence from Judge | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** W  M     **Victim R** WM     **Date of DP notice** 4/9/1997

a strangulation murder of a federal prison inmate by his cellmate.  The defendant and the victim are white.  Hammer was serving a 1200+ year Oklahoma state sentence at the time of the homicide, but had been incarcerated in the federal penitentiary at Allenwood, Pennsylvania.  Mr. Hammer abandoned his direct appeal.  226 F.3d 229 (3d Cir. 2000).  An execution date was set for November 15, 2000, but was vacated when Mr. Hammer decided (and was allowed) to file a post-conviction action.  Penalty phase relief was granted in December 2005, and upheld on appeal.  404 F.Supp.2d 676 (MD PA 2005).  A life sentence was imposed at his resentencing bench trial.

| Ingle, Trinity Edward | W.D. AR No. 6:96CR60022 |
|---|---|

| Life sentence from jury | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** W  M     **Victim R** WM     **Date of DP notice** 1/23/1997

two white teenagers charged with the robbery-murder of an elderly retired National Parks employee who was found shot and bound with tape near a hiking path in Hot Springs National Park (USPS), federal land within the city of Hot Springs, Arkansas.   Ingle was convicted of the murder in 1997 after a 6-day trial; two days later a Hot Springs federal jury unanimously sentenced him to life imprisonment.   Paul was sentenced to death following a separate, eight-day trial.  All involved are white.

| Jones, Anthony | D. MD CR No. WMN-96-0458 |
|---|---|

| Life sentence from jury | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** B  M     **Victim R** BM     **Date of DP notice** 3/20/1997

involves five killings: one in '94, three in '96, one in '97.Authorization was granted to seek the death penalty for three murders, including an allegation that Jones ordered his step-brother killed from jail because he feared he was about to become a government witness.  Jones also ordered the murder, by the victim's own bodyguards, of a rival Baltimore drug dealer who had earlier attempted to arrange the murder of Mr. Jones.  Numerous other homicides, attributed to Jones, were alleged in aggravation.  Murder for hire is alleged as an aggravating circumstance.  Jones was convicted in 1998, sentenced to life without release.  Eight co-conspirators were involved in the murders but did not face the death penalty.  Chapman, Hill and Ross were charged in at least 2 killings.  Jones was sent to the "Control Unit" at "super-max," ADX in Florence, Colorado, where he is under severe communication restrictions for 10 years.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Ray, Quan | N.D. IL No. 96 CR 379 |
|---|---|

| Life sentence from jury | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def  B  M      Victim R      BM      Date of DP notice  10/1/1996

a "Gangster Disciple" enforcer.  In 1997, a Chicago jury declined to impose the death penalty after convicting Mr. Ray of having murdered a fellow gang drug trafficker on orders of a Gangsters Disciples' higher-up, Darryl Johnson.  Murder for hire is alleged as an aggravating circumstance.  The jury found that no statutory aggravating factor had been established beyond a reasonable doubt, rejecting the government's allegation that the murder had been committed "after substantial planning and premeditation."  Johnson was sentenced to death for the same and one additional murder.

| Thomas, Richard | E.D. VA No. 3:95CR00087 |
|---|---|

| Life sentence from jury | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def  B  M      Victim R      BM      Date of DP notice  10/1/1996

another New York - Richmond cocaine connection was uncovered which involved members of a Brooklyn gang, all African-American, who transported crack cocaine to Richmond, Virginia.  The 32-count indictment charged five of the alleged members of the so-called "Poison Clan" with capital murder in six killings, two in 1988 and four in 1994.  (Devon Dale Beckford, 33, identified by the FBI as a gang leader was not arrested until July, 1997.)  After a seven-week trial, a jury declined to impose the death penalty on all four defendants:  Dean Beckford, 32, Leonel Romeo Cazaco, 22, Claude Gerald Dennis, 28 and Richard Thomas, 22.   Dean Beckford and Claude Dennis were found guilty of the 1998 double murder.  (Dennis had previously been acquitted on these charges in state court in 1989.)  Cazaco and Thomas were also convicted of a capitol charge.  Thomas had been acquitted in state court on the one homicide count on which he was convicted in federal court.

| Bobbitt, LaFawn | E.D. VA No. 97 CR 129 |
|---|---|

| Life sentence from jury | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def  B  M      Victim R      BF      Date of DP notice  9/22/1997

two defendants were charged with the fatal shooting of an  bank teller during an attempted robbery of a Nationsbank branch in Richmond, Virginia.  Both defendants and the victim are African-American.  A security guard was shot and blinded during the robbery, but survived.  Trial began in 1998.  The jury opted against the death penalty for both defendants.

| Jones, Rashi | E.D. VA No. 97 CR 129 |
|---|---|

| Life sentence from jury | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def  B  M      Victim R      BF      Date of DP notice  9/22/1997

two defendants were charged with the fatal shooting of a female bank teller during an attempted robbery of a Nationsbank branch in Richmond, Virginia.  Both defendants and the victim are African-American.  A security guard was shot and blinded during the robbery, but survived.  Trial began in 1998.  The jury opted against the death penalty for both defendants.

**Fell Motion Appendix0110**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Gonzales-Lauzan, Luis | | S.D. FL No. 02-CR-20572 | |
|---|---|---|---|

| Life sentence from jury | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** H  M   **Victim R** HM   **Date of DP notice** 6/19/2003

a murder-for-hire/informant killing case.  Gonzales-Lauzan was convicted of the murder of a government witness in a federal firearms case against his father.  18 U.S.C. §§ 924(j), 1111, 1512 and 1513.  He provided a gun and a silencer and waited in another car nearby.  Wiggins, the triggerman, shot the victim at his home in order to work off a drug debt to Gonzales-Lauzan.  Hernandez is charged with having helped set up the shooting.  Wiggins entered into a plea agreement to testify against Gonzales-Lauzan, who was the only one to face the death penalty.  The jury unanimously voted for a life sentence.  All involved are Cuban/Americans.

| Johnson, Shaheem | | E.D. VA CR No. 97-00314-A | |
|---|---|---|---|

| Life sentence from jury | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** B  M   **Victim R** BF BM   **Date of DP notice** 2/12/1998

five killings of African-Americans, four males, one female, all cocaine-related murders, two in Virginia (a supplier/witness and his girlfriend with Raheem Johnson as the triggerman), one in Maryland (drug supplier with both Raheem and Shaheem firing weapons), one in Philadelphia (supplier/witness with Raheem Johnson as the triggerman) and another "murder for hire" in New York (drug supplier hit ordered by both Shaheem and Raheem Johnson).  The two lead defendants, brothers Shaheem and Raheem Johnson, were authorized for a capital prosecution.  Trial began in Alexandria in November, 1998 and ended in life verdicts for both brothers.

| Johnson, Raheem | | E.D. VA CR No. 97-00314-A | |
|---|---|---|---|

| Life sentence from jury | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** B  M   **Victim R** BF BM   **Date of DP notice** 2/12/1998

five killings of African-Americans, four males, one female, all cocaine-related murders, two in Virginia (a supplier/witness and his girlfriend with Raheem Johnson as the triggerman), one in Maryland (drug supplier with both Raheem and Shaheem firing weapons), one in Philadelphia (supplier/witness with Raheem Johnson as the triggerman) and another "murder for hire" in New York (drug supplier hit ordered by both Shaheem and Raheem Johnson).  The two lead defendants, brothers Shaheem and Raheem Johnson, were authorized for a capital prosecution.  Trial began in Alexandria in November, 1998 and ended in life verdicts for both brothers.

| Kehoe, Chevy | | E.D. AR No. LR-CR-97-243 | |
|---|---|---|---|

| Life sentence from jury | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** W  M   **Victim R** WF WM   **Date of DP notice** 3/20/1998

the murder of a family of three (an Arkansas gun dealer, his wife and their 8 year old child) in the Fall of 1996 by white supremacists.  Chevie Kehoe faced sentencing before the jury first and was sentenced to life imprisonment.  Co-defendant Lee followed and was sentenced to death.

| O'Driscoll, Michael | | M.D. PA No. 4-CR-01-277 | |
|---|---|---|---|

| Life sentence from jury | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** W  M   **Victim R** WM   **Date of DP notice** 10/9/2001

the stabbing and killing of an inmate at USP Allenwood in 1997.  There were half a dozen correctional officers who witnessed the end of the stabbing.  Both the defendant and victim are white.

**Fell Motion Appendix0111**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| | |
|---|---|
| Dhinsa, Gurmeet Singh | E.D. NY CR No. 97-672 (S-3) (ERK) |

Life sentence from jury                                    **Name of AG**  Reno

**Race & gender of def**  I  M        **Victim R**  OM        **Date of DP notice**  9/25/1998

RICO murders and a murder for hire.  A wealthy Indian businessman led a racketeering enterprise which killed two.  Murder for hire was an aggravating circumstance.

| | |
|---|---|
| Lightfoot, Xavier Lamar | W.D. MO No. 00 CR 395 |

Life sentence from jury                                    **Name of AG**  Reno

**Race & gender of def**  B  M        **Victim R**  WM        **Date of DP notice**  1/8/1999

the murder of a federal witness.  Co-defendant Peoples, 24, conspired with Lightfoot to prevent the victim from testifying at Lightfoot's federal trial on charges of bank robbery.  The victim, 33, was Lightfoot's roommate and was found dead of gunshot wounds in their rental home in Kansas City.  Peoples acted as a go-between (along with co-defendant Barfield) with the professional hit man (Haskell) who committed the murder which Lightfoot arranged from federal prison.  Murder for hire is alleged as an aggravating circumstance.  All defendants are black.  The victim is white.  After Lightfoot was sentenced to life in prison, the government withdrew its request for the death penalty for Peoples.  The Eighth Circuit reversed the convictions and the government again sought the death penalty.  250 F.3d 360 (2001).  A "double jeopardy" appeal was rejected.  360 F.2d 892 (8th Cir. 2004).

| | |
|---|---|
| Hargrove, Demetrius R. | D. KS No. 2:03-CR-20192-CM-DJW |

Life sentence from jury                                    **Name of AG**  Ashcroft

**Race & gender of def**  B  M        **Victim R**  WF WM        **Date of DP notice**  7/30/2004

three murders by an African-American federal prisoner already serving a 35 year sentence for kidnapping and use of a firearm, at the United States Penitentiary in Leavenworth .  One of the victims was a potential federal witness.  Prosecutors claim Hargrove killed two Leavenworth residents Elmer Berg and Misty Castor, a brother and a sister, in February of 1998 during a drug trafficking crime.  They say he also murdered an informant, Tyrone Richards, also of Leavenworth, in June 1998 to prevent him from testifying at a federal trial.  Berg and Castor were white, Richards and Hargrove black.

| | |
|---|---|
| Al-'Owhali, Mohamed Rashed Daoud | S.D. NY No. S6 98 CR 1023 |

Life sentence from jury                                    **Name of AG**  Reno

**Race & gender of def**  AR  M        **Victim R**  WF +        **Date of DP notice**  6/26/2000

accomplice of Osama bin Ladin, the organizer of two bombings of American embassies in Africa.  The 1998 bombings in Kenya and Tanzania killed 224 people (11 in Tanzania), including 12 Americans, and more than 5,000 people injured. Al-'Owhali was a 21 year old Saudi citizen who was arrested in Nairobi after the Kenya bombing.  He is a member of al-Qaida, an international terrorist organization, led by bin Laden, a Saudi millionaire, who issued various "fatwahs" against the United States.  Bin Laden was killed in a 2011 military raid in Pakistan.  Al-'Owhali was ordered to create a diversion for the Kenya bomb by throwing grenades.  Mohamed rented the house where the Tanzania bomb was made.  The 12 dead Americans included 4 blacks, 4 whites and 1 Asian.  The other victims were mostly black Africans.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Finley, James A. | W.D. NC No. 4:98CR243 |
|---|---|

Life sentence from jury | **Name of AG** Reno

**Race & gender of def** W M    **Victim R** WF WM    **Date of DP notice** 12/4/1998

the murder of two campers at a national park by a young man with a history of drug abuse but no violence. The crime may have been a robbery\murder. All parties are white. Mitigation involved Finley's drug abuse and depression. The defendant was sentenced to life after an April 1999 trial.

---

| Gilbert, Kristin | D. MA CR No. 98-30044-MAP |
|---|---|

Life sentence from jury | **Name of AG** Reno

**Race & gender of def** W F    **Victim R** WM    **Date of DP notice** 5/14/1999

the killing of four patients at a Department of Veterans Affairs Hospital, on federal property, and the attempted killing of three others. Ms. Gilbert, 31, used epinephrine, a drug that can overstimulate the heart, on her patients. Federal prosecutors said Gilbert murdered one patient, a 41-year-old invalid, after asking a supervisor if she could "leave early if he died." All involved are Caucasian. The jury deadlocked and Gilbert was sentenced to life in prison.

---

| Tello, Plutarco | W.D. MO No. 98- 00311-01/05-CR-W-2 |
|---|---|

Life sentence from jury | **Name of AG** Reno

**Race & gender of def** B M    **Victim R** HM    **Date of DP notice** 5/19/1999

four Colombians charged in a drug related murder. The alleged ringleader, Hinestroza, was a fugitive who was eventually arrested and received a life sentence at a separate trial. Hinestroza and his gang sold cocaine in the Kansas City area. The victim and his nephew (who sold cocaine for the gang) stole $240,000 from them. The defendants tied up, interrogated, duck taped and shot both victims. The nephew lived, escaped and identified the defendants. Sinisterra shot and killed one victim. Ortiz or Tello shot the surviving victim. Sinisterra and Ortiz were sentenced to death. The jury deadlocked on punishment for Tello, and he was sentenced to life in prison.

---

| Hinestroza, Edwin R. | W.D. MO No. 98- 00311-01/05-CR-W-2 |
|---|---|

Life sentence from jury | **Name of AG** Gonzales

**Race & gender of def** H M    **Victim R** HM    **Date of DP notice** 5/4/2005

four Colombians charged in a drug related murder. The alleged ringleader, Hinestroza, was a fugitive who was eventually arrested and received a life sentence at a separate trial. The victim and his nephew (who sold cocaine for the gang) stole $240,000 from them. The defendants tied up, interrogated, duck taped and shot both victims. The nephew lived, escaped and identified the defendants. Sinisterra shot and killed one victim. Ortiz or Tello shot the surviving victim. Sinisterra and Ortiz were sentenced to death. The jury deadlocked on punishment for Tello, and he was sentenced to life in prison.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| | |
|---|---|
| Bass, John | E.D. MI CR No. 97-80235 |

Life sentence from jury                                              **Name of AG**   Reno

**Race & gender of def**  B   M        **Victim R**        BM        **Date of DP notice**  2/17/2001

eleven death eligible defendants who were charged in a four victim (continuing criminal enterprise) Detroit drug/murder case under 21 U.S.C. §848(a)(1)(A).  Of the eleven, only Bass was chosen to face a federal capital prosecution.  All involved are African-American.  A pretrial appeal involved the issue of discovery of Department of Justice charging practices in capital cases.  In a per curiam opinion, the United States Supreme Court reversed the order granting discovery.  United States v. Bass, 122 S.Ct. 2389 (2002).  John Bass and his brother Patrick allegedly started a drug gang called the "Dog Pound" (because members owned many pit bulls), which sold crack in Michigan and Ohio.  John Bass is charged with arranging two murders - of his brother and a rival.

| | |
|---|---|
| Edelin, Tommy | D. DC CR No. 98-264 |

Life sentence from jury                                              **Name of AG**   Reno

**Race & gender of def**  B   M        **Victim R**        BM x        **Date of DP notice**  6/30/2000

a drug conspiracy, racketeering, murder CCE prosecution.  Tommy Edelin faced the death penalty alone among many capital eligible defendants, including his father.  Edelin, 30, was charged with ordering 14 murders and attempting to have another dozen killed during the 1990's, in his role as the so-called "drug kingpin" of the "1-5 Mob".  Murder for hire is alleged as an aggravating circumstance.  The gang was charged with the shooting of a D.C. police officer and in another incident in which three people were shot while attending a crowded neighborhood picnic.  One victim was shot several times while returning from a prom with his girlfriend.  Two teenagers were targeted by mistake on their way to a church Christmas Party.  Edelin was acquitted of this double killing by co-defendant Bostick.  Much of the violence stemmed from a turf battle with members of the "Stanton Terrace Crew," which is now essentially out of business after numerous members were killed or convicted of first-degree murder.  Edelin was convicted of four murders, including paying a hit man to kill a 19 year old who alleged robbed an associated.  11 jurors deliberated 3 hours before voting for a life sentence.  The capital charge was a conviction of murder for hire of a 14 year old who allegedly robbed an associate of Tommy Edelin.  Edelin was born as a result of a brief sexual encounter to a convicted drug addict.  He had an abusive, deprived, depraved childhood in a crime infested neighborhood.  This was the first death penalty trial in the District of Columbia since the last execution in 1957.  D.C. voters rejected the death penalty in 1992.

| | |
|---|---|
| Haynes, Willis | D. MD CR No. PJM-98- 0520 |

Life sentence from jury                                              **Name of AG**   Reno

**Race & gender of def**  B   M        **Victim R**        BF        **Date of DP notice**  10/22/1999

the January 1996 triple intrastate kidnapping/murder of three black females from D.C.  Patuxent Wildlife Research Center (USFW), federal property.  Haynes has confessed three time, blaming Higgs the first two.  A third defendant, Victor Gloria, also confessed and is considered an accessory after the fact.  The government sought the death penalty for both Haynes and Higgs.  They were involved in another shooting six weeks before.  Haynes was sentenced to life, Higgs to death, at separate trials.  All involved are African-American.

**Fell Motion Appendix0114**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Martinez, Mariano | | C.D. CA CR No. 99-83-(A)-DT |
|---|---|---|

| Life sentence from jury | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** H  M   **Victim R** HM   **Date of DP notice** 7/19/1999

involves defendants in one of three related Mexican Mafia prosecutions.  "Chuy" Martinez, 41, is a defendant in one indictment, and the target of a murder plot in another.  There are a total of four murders and 13 conspiracies to commit murder charged.  Three men, one a drug dealer and two innocent bystanders, were killed in a Monticello autobody shop.  Martinez, head of a drug organization orchestrated the killing using a walkie-talkie.  Max Torvisco, once Martinez's right hand man, obtained a plea agreement.  He admitted ordering 140 murders and planning to kill Martinez who had survived a 1997 assassination attempt.  Wiretaps show Martinez ordering hits on numerous targets.

| Shakir, Jamal | | M.D. TN CR No. 3:98-00038 (NIXON) |
|---|---|---|

| Life sentence from jury | | **Name of AG** | Ashcroft |
|---|---|---|---|

**Race & gender of def** B  M   **Victim R** BF BM   **Date of DP notice** 10/29/2002

a gang called the "Rollin" 90s Crips or Bangside 90s faction out of Los Angeles which allegedly moved 150 kilos of crack to Las Vegas. From there sales operations were allegedly set up in Oklahoma City and Nashville.  The government called the gang the "Shakir Enterprise."  A Crips gang member and his wife were killed in Oklahoma City, and their 3 year old daughter, who was also shot, stayed with her dead parents and slept with them at night for several days.  Richard Chambers, 59, was shot to death in Cheatham County, Tennessee.  There may have been up to 13 killings in three states.  Three victims were themselves charged with murder in the indictment. The indictment charged Shakir, 25, with six killings from 1995-97, Payne, 20, with participating in two killings and in the shooting of the gang associate's 3-year-old-girl, and Young, 24, with helping kill one person and assaulting and torturing two others.  Four of the killings were said to be to silence potential witnesses, other slayings were allegedly motivated by revenge.  Murder for hire is alleged as an aggravating circumstance.  Payne was found to be incompetent to stand trial.

| Lyon, Billy Joe | | W.D. KY No. 4:99-CR-11-M |
|---|---|---|

| Life sentence from jury | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** W  M   **Victim R** WM   **Date of DP notice** 8/23/1999

contract killing of men in Alabama and Kentucky.  Lyon, 19, and co-defendant Charles Stewart, 54, were charged with conspiracy and murder for hire.  Stewart and Richard Dorman, 62, were partners in an 18-month forged-check and fraud scheme, using the deceased's identity.  Lyon and his deceased father, Stewart's nephew, were hired to murder James Norris in Kentucky.  Norris was found under a bale of hay beaten to death in a barn behind his home.  Lyon was also hired to kill James Nichols in Alabama, whose body was discovered in 1999 in a partially submerged van.  Nichols' 85 year old mother was also in the van, but survived.  Co-conspirator Dorman was kidnapped (interstate) and locked into the trunk of a car that was then run into the Green River in Henderson County.  He survived to be charged as part of the conspiracy.  The elder Lyon committed suicide to avoid apprehension.  Stewart was arrested in the Spring of 2000 after appearing on "America's Most Wanted."  Lyon faced the death penalty but was sentenced to life in prison after his jury was instructed that Stewart would not because the Attorney General took too long to file a notice of intent to seek the death penalty.  A third fraud victim is missing and presumed dead.  Lyon committed an unrelated fourth murder.  All involved are white.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Tatum, Kenneth A. | E.D. TX No. 2:99 CR 5 |
|---|---|

Life sentence from jury

**Name of AG**  Reno

**Race & gender of def**  B  M    **Victim R**  WF WM    **Date of DP notice**  10/22/1999

three young black defendants, who were members of the "Crips" gang, were involved in a series of robberies and killings in East Texas. Stephens, 21, Smith, 20, and Tatum, 20, faced the death penalty in both state and federal court for a botched bank robbery. They were accused of a bank robbery and fatally shooting teller Betty Paddle, 61. A 54 year old bank manager, was also shot, but survived. They are also charged with an intrastate kidnapping/robbery of a used car dealership (a Hobbs Act count) in which the victim was killed with a gun (a 924(j) count). The victim was a 63 year old retired minister. Tatum is also charged in a 1998 slaying of Ronnie Dale Ritch, president of the First State Bank in Overton. Stephens and Tatum abducted Ritch, 50. Stephens had a brain tumor and died after surgery. The USA requested permission to seek the death penalty against all three, and was permitted to do so. All three deceased victims were white.

| Smith, Daymon | E.D. TX No. 2:99 CR 5 |
|---|---|

Life sentence from jury

**Name of AG**  Reno

**Race & gender of def**  B  M    **Victim R**  WF    **Date of DP notice**  10/22/1999

three young black defendants, who were members of the "Crips" gang, were involved in a series of robberies and killings in East Texas. Stephens, 21, Smith, 20, and Tatum, 20, faced the death penalty in both state and federal court for a botched bank robbery. They were accused of a bank robbery and fatally shooting teller Betty Paddle, 61. A 54 year old bank manager, was also shot, but survived. They are also charged with an intrastate kidnapping/robbery of a used car dealership (a Hobbs Act count) in which the victim was killed with a gun (a 924(j) count). The victim was a 63 year old retired minister. Tatum is also charged in a 1998 slaying of Ronnie Dale Ritch, president of the First State Bank in Overton. Stephens and Tatum abducted Ritch, 50. Stephens had a brain tumor and died after surgery. The USA requested permission to seek the death penalty against all three, and was permitted to do so. All three deceased victims were white.

| Garrett, Lemond | S.D. GA CR No. 4-99-133 |
|---|---|

Life sentence from jury

**Name of AG**  Reno

**Race & gender of def**  B  M    **Victim R**  BM    **Date of DP notice**  1/14/2000

two young death eligible defendants, ages 18 and 20, involved in a drug conspiracy, in which a long time federal informant was killed. Both defendants and the victim are African-American. The United States Attorney requested and received permission to seek the death penalty against Lemond. Savanah police arrested Lemond Garrett in March of 1999 for the shooting death of Joseph Smart, Sr., 52. DeLoach, the get-a-way driver, was convicted for killing his cousin outside a sports bar in December 1998, and sentenced to life in prison in state court. Joe Perry Garrett was not arrested until shortly before trial. He ordered the killing of the DEA informant who was wearing a bullet-proof vest when he was shot. The bullet pierced his side in an unprotected area. The government failed to meet the Court's deadline as to Joe Perry and he did not face the death penalty.

**Fell Motion Appendix0116**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| | |
|---|---|
| Mohamed, Khalfan Khamis | S.D. NY No. S6 98 CR 1023 |

| | | | |
|---|---|---|---|
| Life sentence from jury | | **Name of AG** | Reno |
| **Race & gender of def** AR M | **Victim R** WF + | **Date of DP notice** 6/26/2000 | |

accomplice of Osama bin Ladin, the organizer of two bombings of American embassies in Africa. The 1998 bombings in Kenya and Tanzania killed 224 people (11 in Tanzania), including 12 Americans, and more than 5,000 people injured. He is a member of al-Qaida, an international terrorist organization, led by bin Laden, a Saudi millionaire, who issued various "fatwahs" against the United States. Bin Laden was killed in a 2011 military raid in Pakistan. Al-'Owhali was ordered to create a diversion for the Kenya bomb by throwing grenades. Mohamed rented the house where the Tanzania bomb was made. The 12 dead Americans included 4 blacks, 4 whites and 1 Asian. The other victims were mostly black Africans.

| | |
|---|---|
| Wills, Christopher Andaryl | E.D. VA CR No. 99-00396 |

| | | | |
|---|---|---|---|
| Life sentence from jury | | **Name of AG** | Reno |
| **Race & gender of def** B  M | **Victim R** OM | **Date of DP notice** 12/28/1999 | |

a witness-elimination in Alexandria, Virginia. Wills, 33, an African American, lured the victim from suburban Virginia to Washington, D.C. by means of a phony job advertisement. The victim disappeared and is presumed to have been murdered. The Afghan national victim had recently testified against Wills at a preliminary hearing on state burglary charges. Wills was permitted to represent himself. He filed a motion to dismiss and the Court ruled that Wills cannot be charged with the capital crime of interstate kidnapping leading to death because his victim crossed state lines voluntarily and alone. The 4th Circuit reversed. 2000 WL 1781402. The jury deadlocked and Wills was sentenced to life in prison. Wills, who has 5 other felony convictions, is also serving 14 years for an unrelated Baltimore carjacking.

| | |
|---|---|
| Sanders, Marcus | S.D. AL CR No. 98-0056-CB |

| | | | |
|---|---|---|---|
| Life sentence from jury | | **Name of AG** | Reno |
| **Race & gender of def** B  M | **Victim R** BM | **Date of DP notice** 3/27/2000 | |

the April 1999 murder of a witness in a federal drug prosecution two days before Sanders drug conspiracy trial. Sanders did not appear for trial. Sanders was alleged to the triggerman and was the only defendant authorized for a federal capital prosecution, but he was sentenced to life in prison at a separate trial.

| | |
|---|---|
| Hyles, Tyrese | E.D. MO No. 01-CR-73 |

| | | | |
|---|---|---|---|
| Life sentence from jury | | **Name of AG** | Ashcroft |
| **Race & gender of def** B  M | **Victim R** BM | **Date of DP notice** 10/31/2002 | |

a witness killing §1512 murder for hire involving interstate travel from Tennessee to Missouri. Hyles faced state drug charges. The victim was murdered after his preliminary hearing testimony. Cannon allegedly murdered the victim by shooting him in his bed. Attorney General Ashcroft required a capital prosecution. Attorney General Gonzales rejected a jury waiver conditioned upon withdrawal of the notice of intent to seek the death penalty.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| | |
|---|---|
| Denis, Jose | S.D. FL No. 99-00714 CR (KING) |

Life sentence from jury

**Name of AG**  Ashcroft

**Race & gender of def**  H  M    **Victim R**  HM    **Date of DP notice**  5/20/2002

one capital eligible 924(c) count - a homicide occurring during a 1996 drug rip-off at Hialech motel.  Everyone involved is Hispanic.  Denis was the alleged triggerman.  He had no prior criminal record.  The defendant was attending Florida State University at the time of his arrest.  The victim was allegedly tortured prior to his death.

| | |
|---|---|
| Gray, Kevin | D. DC No. 1:00CR00157 |

Life sentence from jury

**Name of AG**  Ashcroft

**Race & gender of def**  B  M    **Victim R**  BM HM    **Date of DP notice**  7/27/2001

a Southeast Washington, D.C., gang, alleged to be connected to approximately 40 slayings.  The indictment charges 30 murders.  Murder for hire was alleged as an aggravating circumstance.  The leader, Kevin Gray, 28, is charged with carrying out the racketeering slayings of 10 people.  Members of this heroin and marijuana conspiracy allegedly gunned down rivals and people they thought might testify against them, catching victims by surprise at a gas station, a beauty salon and on street corners, sometimes in broad daylight.  Three of the victims were killed because they were viewed as potential witnesses.  Another victim was shot by mistake.  The 158 count indictment alleges 10 attempted murders.  Gang members allegedly took outside contracts as hit men.  Gray is charged in 22 murders.  He and Moore are the only defendants to face the death penalty.  The victims were Hispanic and African-American.

| | |
|---|---|
| Minerd, Joseph | W.D. PA CR No. 99-215 |

Life sentence from jury

**Name of AG**  Reno

**Race & gender of def**  W  M    **Victim R**  WF AM    **Date of DP notice**  9/13/2000

a case, 1999 New Year's Day arson resulting in the death of the defendant's girlfriend, her three year old child by another man and her fetus, the defendant's child.  The ATF believed there was a pipe bomb as there was a shard of metal found in the deceased's exhumed body.  All involved are white.  Attorney General Ashcroft approved a plea agreement but the defendant backed out of the deal.  176 F. Supp. 424.  182 F.Supp.2d 459.  197 F.Supp.2d 272.

| | |
|---|---|
| Moore, Rodney | D. DC No. 1:00CR00157 |

Life sentence from jury

**Name of AG**  Ashcroft

**Race & gender of def**  B  M    **Victim R**  BF BM    **Date of DP notice**  7/27/2001

a Southeast Washington, D.C., gang, alleged to be connected to approximately 40 slayings.  The indictment charges 30 murders.  Murder for hire was alleged as an aggravating circumstance.  The leader, Kevin Gray, 28, is charged with carrying out the racketeering slayings of 10 people.  Members of this heroin and marijuana conspiracy allegedly gunned down rivals and people they thought might testify against them, catching victims by surprise at a gas station, a beauty salon and on street corners, sometimes in broad daylight.  Three of the victims were killed because they were viewed as potential witnesses.  Another victim was shot by mistake.  The 158 count indictment alleges 10 attempted murders.  Gang members allegedly took outside contracts as hit men.  Gray is charged in 22 murders.  He and Moore are the only defendants to face the death penalty.  Moore relied on evidence of low intellectual functioning at trial. The victims were Hispanic and African-American.

**Fell Motion Appendix0118**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Johnson, Coleman | W.D. VA No. 3:00CR00026 |
|---|---|

| Life sentence from jury | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** W M   **Victim R** WF   **Date of DP notice** 10/23/2000

one §844(ii) count for allegedly leaving a pipe bomb in 1997 which killed his ex-girlfriend, who was eight months pregnant, to avoid the child support that he would have to pay. DNA indicates he was the father of the child the victim was carrying. All involved are white. 136 F.Supp.2d 553.

| Quinones, Alan | S.D. NY No. 00 CR 0761 (JSR) |
|---|---|

| Life sentence from jury | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** H M   **Victim R** HM   **Date of DP notice** 10/26/2001

murder for hire of a New York Police Department informant, who was beaten and tortured. The victim, a drug dealer, had recently arranged two controlled buys from Quinones. The victim's body was burned post-mortem. Attorney General Ashcroft rejected a plea agreement and required a capital prosecution. The district court's decision that the death penalty was unconstitutional due to the execution of the innocent was reversed on appeal. 313 F.3d 49 (2nd Cir. 2002). The jury unanimously voted for life. All involved are Hispanic.

| Rodriguez, Diego | S.D. NY No. 00 CR 0761 (JSR) |
|---|---|

| Life sentence from jury | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** H M   **Victim R** HM   **Date of DP notice** 10/26/2001

murder for hire of a New York Police Department informant, who was beaten and tortured. The victim, a drug dealer, had recently arranged two controlled buys from Quinones. Rodriguez participated in the killing under the direction of Quinones. The victim's body was burned post-mortem. Attorney General Ashcroft rejected a plea agreement and required a capital prosecution. The district court's decision that the death penalty was unconstitutional due to the execution of the innocent was reversed on appeal. 313 F.3d 49 (2nd Cir. 2002). The jury unanimously voted for life. All involved are Hispanic.

| Williams, Michael | S.D. NY No. 00-CR-1008 |
|---|---|

| Life sentence from jury | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** B M   **Victim R** BM   **Date of DP notice** 2/4/2003

involves drug-related murders. Three black men were killed in 1996. The defendants, two brothers and their father, are also black. Attorney General Ashcroft required a capital prosecution.

| Williams, Elijah Bobby | S.D. NY No. 00-CR-1008 |
|---|---|

| Life sentence from jury | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** B M   **Victim R** BM   **Date of DP notice** 2/4/2003

involves drug related murders. Three black men were killed in 1996. The defendants, two brothers and their father, are also black. Attorney General Ashcroft required a capital prosecution.

**Fell Motion Appendix0119**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Sablan, William | D. CO No. 00-CR-531 |
|---|---|

Life sentence from jury                     **Name of AG**   Reno

**Race & gender of def**  PI  M      **Victim R**   HM      **Date of DP notice**  5/1/2001

inmate killing at USP Florence - evisceration stabbing of cellmate (in their cell).  William Sablan confessed, on videotape, and said that he was defending himself.  The letter "S" was written on the cell wall in the victim's blood.  The United States Attorney requested permission to seek the death penalty and, on her last day in office, Attorney General Janet Reno agreed.  The defendants are Pacific Islanders, "Chmorran", from Saipan.  The victim is Hispanic.  The defendants, cousins, were doing federal time for a hostage-taking in Guam.  Attorney General Gonzales rejected a plea agreement for William Sablan. William, allegedly more culpable, was sentenced to life.  There was evidence that William suffered from an intellectual disability.  A pre-trial claim of being intellectually disabled was rejected after an evidentiary hearing.  William had a 20 year history of violent crime.

| Sablan, Rudy | D. CO No. 00-CR-531 |
|---|---|

Life sentence from jury                     **Name of AG**   Reno

**Race & gender of def**  PI  M      **Victim R**   HM      **Date of DP notice**  5/1/2001

inmate killing at USP Florence - evisceration stabbing of cellmate (in their cell).  William Sablan confessed, on videotape, and said that he was defending himself.  The letter "S" was written on the cell wall in the victim's blood.  The United States Attorney requested permission to seek the death penalty and, on her last day in office, Attorney General Janet Reno agreed.  The defendants are Pacific Islanders, "Chmorran", from Saipan.  The victim is Hispanic.  The defendants, cousins, were doing federal time for a hostage-taking in Guam.  Attorney General Gonzales refused to withdraw the death penalty request as to Rudy Sablan after the more culpable William Sablan was sentenced to life in prison.

| Ealy, Samuel Stephen | W.D. VA No. 00-CR-104 |
|---|---|

Life sentence from jury                     **Name of AG**   Ashcroft

**Race & gender of def**  W  M      **Victim R**   WF WM      **Date of DP notice**  5/11/2001

the April 1989 shotgun murder of a family of three.  Ealy avoided trial in state court in 1991 by a successful motion to suppress.  A federal grand jury indicted Ealy and Church, charging them with two capital murders in the furtherance of a drug-trafficking enterprise and a third murder of a potential federal witnesses.  They are charged with these killings while trying to rob one victim of $30,000 that he was holding for a drug ring.  The victims were white.  2001 WL 686954, 855894, 1661706.  151 F.Supp.2d 715.  163 F.Supp.2d 633.  2002 WL 229700, 273317, 376880, 1205035.

| Waldon, Carl | M.D. FL No. 3:00-CR-436-J25-TJC |
|---|---|

Life sentence from jury                     **Name of AG**   Ashcroft

**Race & gender of def**  B  M      **Victim R**   OM      **Date of DP notice**  7/30/2001

involves a CCE-related murder.  Sinclair was a narcotics detective and Waldon an uniformed patrol officer.  Three drug dealers apparently implicated Sinclair in drug trafficking as part of a 5K1 deal.  Waldon and Sinclair are charged with murder.  Sinclair worked as a guard.  He saw an Arab-American storeowner withdraw $50,000 from the bank.  Sinclair tipped Waldon who detained the victim on a pretext traffic stop and tried to rob him.  The victim was strangled in the police cruiser, near a school in broad daylight.  Two others were present, including Kenneth McLoughlin, who participated and testified as a government witness.  The penalty phase was bifurcated and the jury deadlocked on whether the mental state threshold (intentional killing) or sole aggravating circumstance (pecuniary gain) was present.  Attorney General Ashcroft required a capital prosecution.

**Fell Motion Appendix0120**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| | |
|---|---|
| Haskell, Carl | W.D. MO No. 00-CR-395 |

Life sentence from jury

**Name of AG** Ashcroft

**Race & gender of def** B M    **Victim R** WM    **Date of DP notice** 2/25/2002

involves the sequel to the Peoples and Lightfoot trial in October of 1999, resulting in life sentences. The government's theory is that Peoples, on behalf of Lightfoot and himself, enlisted the services of hired killers, one of whom allegedly was Haskell, to do away with one Jovan Ross, a white male. Ross was Lightfoot's homosexual live-in lover. The pair lived in a house in KC. After a lover's quarrel, Ross informed on Lightfoot regarding robberies pulled by Lightfoot and Peoples in Nebraska and led police to a cache of blank certified checks stored in the crawl space under the Lightfoot/Ross home. Shortly after, Lightfoot was arrested, and while in jail received information about Ross' involvement. Not long after that, Ross ended up dead. Attorney General Ashcroft approved Haskell, the alleged triggerman, for a capital prosecution, but denied permission to seek the death penalty against co-defendant Barfield.

| | |
|---|---|
| Mosher, Ellis | E.D. TX No. 1:06 CR 00101-TH |

Life sentence from jury

**Name of AG** Gonzales

**Race & gender of def** W M    **Victim R** WM    **Date of DP notice** 12/11/2006

a 1998 BOP inmate killing at Beaumont FCI. An original prosecution was dismissed on the government's motion (99-CR-4-ALL). In 2006, the prosecution resurfaced (06-CR-101). The jury was unable to agree on a sentence after three days of deliberations, so a life sentence was imposed. All involved are white.

| | |
|---|---|
| Britt, L.J. | N.D. TX No. 00-CR-260 |

Life sentence from jury

**Name of AG** Ashcroft

**Race & gender of def** B M    **Victim R** HM BM    **Date of DP notice** 10/19/2001

a Fort Worth drug trafficking prosecution of the leaders of an Arlington-based drug ring responsible for three murders. The first killing involved a 1998 shooting of an African-American, mistaken for the intended victim, in a car traveling on Cential Expressway. A second 1999 killing was of an Hispanic person, mistaken for the intended victim, his brother, who allegedly sold a fake kilo of cocaine to Robinson. Britt was the triggerman in the third 1999 killing of another drug dealer, a Mexican national, who had stolen 20 kilos from a Laredo drug kingpin. Robinson was following in another car. Britt and Robinson, African-American, both allegedly fired weapons in the first and second incidents. Britt was sentenced to life in prison at a separate trial.

| | |
|---|---|
| Taylor, Styles | N.D. IN CR No. 2:01 CR 073 JM |

Life sentence from jury

**Name of AG** Ashcroft

**Race & gender of def** B M    **Victim R** WM    **Date of DP notice** 7/25/2003

a Hobbs act robbery of a gun store, "Firearms Unlimited" and the killing of the proprietor. 18 U.S.C. §§ 924 and 1951. The defendants are African-American and the victim was white. Taylor was on parole. He has a juvenile record involving the robbery and shooting of a pizza delivery man. Taylor was alleged to be more culpable and after the jury voted to sentence him to life in prison, Attorney General Ashcroft approved withdrawal of the "death notice" as to Thomas. In a rule 11 proffer, Taylor told the government "that the man in the store was reaching on me."

**Fell Motion Appendix0121**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Lentz, Jay | E.D. VA No. 01-CR-150 |
|---|---|

| Life sentence from jury | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** W M    **Victim R** WF    **Date of DP notice** 8/29/2001

involves a domestic killing. interstate domestic violence and kidnapping resulting in death. The defendant lived in Virginia and his ex-wife was kidnapped from Maryland. Her body was never located. A bloody car was found in D. C. All involved are white. A government pretrial appeal involved statements by the defendant. 225 F.Supp.2d 672, aff'd, 2003 WL 253949 (4th Cir. (VA)). Lentz was convicted and the jury unanimously recommended a life sentence. However, the judge vacated the conviction for lack of any evidence of interstate kidnapping. 275 F.Supp.2d. A government appeal was successful. 2004 WL 2035326.

| Frye, James Ernest | S.D. MS No. 01-CR-8 |
|---|---|

| Life sentence from jury | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** B M    **Victim R** BF BM    **Date of DP notice** 1/18/2002

involves the 1999 carjacking and gun murders of two black victims, a boyfriend and a girlfriend, who were attempting to buy about $30,000 worth of cocaine and were ripped off and killed. The male victim was shot first. The female victim, a 19 year old nursing student, was driven around in the trunk of her auto for an hour before being killed. Both African-American defendants confessed, blaming the other as the triggerperson. There was a post-mortem attempt to dismember (head and hands) and rebury the bodies. Frye was convicted of robbery in 1994. He escaped from custody in January of 2000. The Notice of Intent to Seek the Death penalty against Frye was dismissed as filed too late but the decision was reversed. 372 F.3d 729 (2004). The defendants were each sentenced to life in prison at separate trials. Cooper's life sentence was affirmed. 2003 WL 21672845 (5th Cir.). The jury was deadlocked after five hours of deliberation.

| Cooper, Billy D. | S.D. MS No. 01-CR-8 |
|---|---|

| Life sentence from jury | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** B M    **Victim R** BF BM    **Date of DP notice** 1/18/2002

involves carjacking and killings of two black victims who were attempting to buy about $30,000 worth of cocaine and were ripped off and killed. The male victim was shot first. The female victim was driven around in the trunk of her auto for an hour before being killed. Both African-American defendants confessed, blaming the other as the triggerperson. There was a post-mortem attempt to dismember (head and hands) and rebury the bodies. Cooper has a low I.Q. Frye was convicted of robbery in 1994. He escaped from custody in January of 2000. The Notice of Intent to Seek the Death penalty against Frye was dismissed as filed too late but the decision was reversed. 372 F.3d 729 (2004). The defendants were each sentenced to life in prison at separate trials. Cooper's life sentence was affirmed. 2003 WL 21672845 (5th Cir.).

| Ostrander, Michael Paul | W.D. MI No. 01-CR-00218 |
|---|---|

| Life sentence from jury | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** W M    **Victim R** WM    **Date of DP notice** 2/21/2003

slaying of a man on federal land found buried in a previously dug grave in the Manistee National Forest (USFS). The Ostrander brothers are charged with the August 2000 use of a firearm causing death during drug trafficking, involving marijuana and cocaine. Attorney General Ashcroft required a capital prosecution.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| McClure, Cornell Winfrei | D. MD No. 01-CR-367 |
|---|---|

| Life sentence from judge | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** B M   **Victim R** WF   **Date of DP notice** 3/4/2002

the gun murder of a white woman by two black men at a secluded location on federal property, the Beltsville Agricultural Research Center (USDA). The victim was shot eleven times with two different types of ammunition. There are signed confessions by both defendants. Millegan confessed that he committed the murder, along with McClure, both shooting the victim with their weapons. McClure wrote that he told Millegan they should "press her" about a robbery of drugs from Millegan's apartment. The deceased was taken to a road on federal land in Beltsville, where both allegedly shot her. Attorney General Ashcroft required a capital prosecution. Millegan plead guilty. McClure declined to plead guilty and had a bench trial.

| Ostrander, Robert Norman | W.D. MI No. 01-CR-00218 |
|---|---|

| Life sentence from jury | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** W M   **Victim R** WM   **Date of DP notice** 2/21/2003

slaying of a man on federal land, found buried in a previously dug grave in the Manistee National Forest (USFS). The Ostrander brothers are charged with the August 2000 use of a firearm causing death during drug trafficking, involving marijuana and cocaine. Attorney General Ashcroft required a capital prosecution.

| Williams, Tyrone | S.D. TX No. 03-CR-221 |
|---|---|

| Life sentence from jury | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** B M   **Victim R** HF HM   **Date of DP notice** 3/15/2004

an alien smuggling operation that led to 19 immigrants' deaths by dehydration, overhearing and suffocation in the back of a truck trailer driven by Williams. Joya was alleged to be the leader of this alien smuggling ring. She was extradited from Guatemala. She was also accused of coordinating three smaller operations, gathering illegal immigrants together in South Texas, arranging them to be fed and housed and then placing them on trucks headed north. All involved are Latino, except Williams, who is black. Williams was the only one of the 17 defendants to face the death penalty in this case and the only alien smuggling defendant of approximately 70 in the nation to face the death penalty. The first jury failed to reach agreement on the capital charges. The second jury convicted Williams and he was sentenced to life in prison. The Fifth Circuit reversed and the third trial resulted in 34 year sentence.

| Davis, Johnny | E.D. LA No. 2:01-CR-282 |
|---|---|

| Life sentence from jury | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** B M   **Victim R** BM   **Date of DP notice** 9/18/2002

involves allegations of four killings - 924(c) 2001 gun murders by a drug gang pushing heroin in a New Orleans Housing project. The alleged kingpin, Richard Porter, was convicted of one murder and did not face the death penalty. The enforcer for the group, Johnny Davis, was convicted of three of four murders. All involved are African-American. The government sought the death penalty against only Davis.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Haynes, Aaron | W.D. TN No. 01-CR-20247 |
|---|---|

Life sentence from jury                                          **Name of AG**   Ashcroft

**Race & gender of def**  B  M     **Victim R**      BF     **Date of DP notice**  9/19/2002

bank robbery resulting in the death of a black female employee of Union Planters Bank.  A security guard was also shot in the face by Johnson, but survived.  The defendants are African-American.  Haynes was a shooter.  The state and federal government both sought the death penalty against Haynes and Maxwell but not against Johnson who may be intellectually disabled.  A federal jury sentenced Haynes to life imprisonment.  After this verdict, Attorney General Ashcroft reversed his position and approved a plea agreement specifying a life sentence for Maxwell.  242 F.Supp.2d 540.  269 F.Supp.2d 970. 265 F.Supp.2d 914.

| Moussaoui, Zacarias | E.D. VA No. 01-CR-455 |
|---|---|

Life sentence from jury                                          **Name of AG**   Ashcroft

**Race & gender of def**  B  M     **Victim R**      WF +     **Date of DP notice**  3/28/2002

alleged co-conspirator in the September 11, 2001 terrorist attack on the World Trade Center and Pentagon which killed over 3,000 and resulted in four airline crashes in New York, Pennsylvania and Washington, D.C.  Moussaoui is French of Moroccan descent and is accused as a member of al-Qaida.  He was in jail on September 11 after suspicious actions at a Minnesota flight school.  There were victims of many nationalities and races.  Moussaoui plead guilty but the jury deadlocked at the penalty trial.

| Caraballo, Gilberto | E.D. NY No. 01-CR-1367 |
|---|---|

Life sentence from jury                                          **Name of AG**   Ashcroft

**Race & gender of def**  H  M     **Victim R**      HM     **Date of DP notice**  5/14/2004

two drug related CCE murders.  Caraballo was the kingpin of a large scale narcotics group in Brooklyn for a decade and the owner of the 5th Avenue Gym.  Caraballo was involved in a romantic relationship with Quincy Martinez, the wife of one victim and the mother of his two daughters.  She conspired with Caraballo to have her husband killed.  Caraballo paid the others in either drugs, cash or both to assist him in killing this victim, who was shot to death by Aguilar in the presence of Caraballo in a van owned by Caraballo, and with the assistance of Taylor.  Aguilar confessed to shooting the victim repeatedly with two different guns and implicated the others.  Caraballo was charged in a second murder in 1992 with Molina and Rosario.  Only Caraballo and Augilar faced the death penalty.

| Aguilar, Martin | E.D. NY No. 01-CR-1367 |
|---|---|

Life sentence from jury                                          **Name of AG**   Ashcroft

**Race & gender of def**  H  M     **Victim R**      HM     **Date of DP notice**  5/14/2004

two drug related CCE murders.  Caraballo was the kingpin of a large scale narcotics group in Brooklyn for a decade and the owner of the 5th Avenue Gym.  Caraballo was involved in a romantic relationship with Quincy Martinez, the wife of one victim and the mother of his two daughters.  She conspired with Caraballo to have her husband killed.  Caraballo paid the others in either drugs, cash or both to assist him in killing this victim, who was shot to death by Aguilar in the presence of Caraballo in a van owned by Caraballo, and with the assistance of Taylor.  Aguilar confessed to shooting the victim repeatedly with two different guns and implicated the others.  Caraballo was charged in a second murder in 1992 with Molina and Rosario.  Only Caraballo and Augilar faced the death penalty.  Aguilar, a member of the Latin Kings, has a history of violence.  He was acquitted in 1993 of stabbing a man in the brain with a screwdriver.  He stabbed a person in the prison law library on the first day of trial.  He was tried first.  Only two jurors voted for the death penalty.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Duong, Anh The | N.D. CA No. 5:01CR20154 JF |
|---|---|

| Life sentence from jury | | **Name of AG** | Ashcroft |
|---|---|---|---|

**Race & gender of def** A   M    **Victim R** AM HM    **Date of DP notice** 5/13/2004

eight murders by "the Duong" racketeering enterprise involving the armed robbery of jewelry stores, banks and computer-related companies by defendants of Chinese and Vietnamese descent. Anh The Duong is alleged to be the leader and is charged in all seven RICO murders. He alone faced the death penalty. He attempted suicide and was in a coma for three weeks. Soewin Chan and Philip Garza were charged in one 2001 RICO murder during commission of robbery. Lisbio Couto, Ricky Vong, Cuong Chi Yuong, Eng Yong Feng and Jerry Hu were charged in one 1997 and one 1998 murder. Johnnie Tangha and Ted Vu Nguyen were charged in one 1998 murder. One robbery/murder in 1997 and one in 1999 were charged as racketeering murders. Four other 1999 murders were charged as 924 murders and under the Hobbs Act. Duong received 4 death sentences in Los Angeles for a gang-related bar shoot-out. Yuong has a prior murder conviction.

| Regan, Brian Patrick | E.D. VA No. 01-CR-40 |
|---|---|

| Life sentence from jury | | **Name of AG** | Ashcroft |
|---|---|---|---|

**Race & gender of def** W   M    **Victim R** none    **Date of DP notice** 4/19/2002

a 20 year veteran of the Air Force who worked in the headquarters of the National Reconnaissance Office, charged with three counts of attempted espionage and one count of mishandling classified information. The government charged Regan of creating a "grave risk of death" to U.S. military pilots patrolling the no-fly zone over Iraq. Regan intended to sell Iraqi president Saddam Hussein secret details about American satellites. Prosecutors said Regan apparently used a form letter to solicit money from at least two foreign countries. Investigators said Regan told Hussein in a letter, "If I am caught, I will be imprisoned for the rest of my life, if not executed for this deed." Two of the charges carried the death penalty.

| Cannon, Amesheo D. | E.D. MO No. S1-1:01CR00073RWS |
|---|---|

| Life sentence from jury | | **Name of AG** | Ashcroft |
|---|---|---|---|

**Race & gender of def** B   M    **Victim R** BM    **Date of DP notice** 10/31/2002

a witness killing §1512 murder for hire involving interstate travel from Tennessee to Missouri. Hyles faced state drug charges. The victim was murdered after his preliminary hearing testimony. Cannon allegedly murdered the victim by shooting him in his bed. Attorney General Ashcroft required a capital prosecution. Attorney General Gonzales rejected a jury waiver conditioned upon withdrawal of the notice of intent to seek the death penalty.

| Matthews, Lavin | N.D. NY No. 3:00 CR-269 |
|---|---|

| Life sentence from jury | | **Name of AG** | Ashcroft |
|---|---|---|---|

**Race & gender of def** B   M    **Victim R** BM    **Date of DP notice** 9/25/2002

murder during a CCE, motivated by a drug rip off. Another drug dealer was tortured and beaten to death and his marijuana, phone, jewelry and $2000 cash were stolen. Attorney General Ashcroft required a capital prosecution against three defendants, later withdrawing the notice of intent as to McMillian, who has intellectual deficits. All involved are African-American.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Dixon, Emile | E.D. NY No. 01-CR-389 |
|---|---|

Life sentence from jury    **Name of AG** Ashcroft

**Race & gender of def** B  M    **Victim R** BM    **Date of DP notice** 4/8/2002

Dixon is one of the leaders of the inter-state "Patio Crew" gang, charged with taking part in a 2002 gun murder of a witness and another murder. A government informant, Robert Thompson, 30, was machine-gunned to death in his car, and his brother was wounded. The main witness, the brother who survived, admitted lying about Dixon. A superceding indictment was filed charging a 1992 drug-related murder. Attorney General Ashcroft required a capital prosecution overruling, press accounts indicated, his own review committee. Dixon is a Jamaican immigrant. The victims were African-American.

| Tucker, Tebiah Shelah | N.D. NY No. 00-CR-269 |
|---|---|

Life sentence from jury    **Name of AG** Ashcroft

**Race & gender of def** B  M    **Victim R** BM    **Date of DP notice** 9/25/2002

murder during a CCE, motivated by a drug rip off. Another drug dealer was tortured and beaten to death and his marijuana, phone, jewelry and $2000 cash were stolen. Attorney General Ashcroft required a capital prosecution against three defendants, later withdrawing the notice of intent as to McMillian, who was found to be intellectually disabled by both the defense and government experts. All involved are African-American.

| Perez, Wilfredo | D. CT No. 02-CR-7 |
|---|---|

Life sentence from jury    **Name of AG** Ashcroft

**Race & gender of def** H  M    **Victim R** HM    **Date of DP notice** 1/21/2003

a drug gang, "the Perez Organization" at war with "the Savage Nomads" in Hartford, Connecticut because of a turf dispute and a drug and money kidnapping and robbery. Gonzalez was the alleged triggerman in this murder for hire. The government claims that Gonzalez is a hired contract killer responsible for nine other murders. The judge ruled that these unadjudicated homicies were not admissible. 2004 WL 1920492. All involved are Hispanic. Attorney General Ashcroft required a capital prosecution. Santiago Feliciano testified for the government that he arranged the murder of the head of the Nomads for Perez.

| Gonzalez, Fausto | D. CT No. 02-CR-7 |
|---|---|

Life sentence from jury    **Name of AG** Ashcroft

**Race & gender of def** H  M    **Victim R** HM    **Date of DP notice** 1/21/2003

a drug gang, "the Perez Organization" at war with "the Savage Nomads" in Hartford, Connecticut because of a turf dispute and a drug and money kidnapping and robbery. Gonzalez was the alleged triggerman in this murder for hire. The government claims that Gonzalez is a hired contract killer responsible for nine other murders. The judge ruled that these unadjudicated homicies were not admissible. 2004 WL 1920492. All involved are Hispanic. Attorney General Ashcroft required a capital prosecution. Santiago Feliciano testified for the government that he arranged the murder of the head of the Nomads for Perez.

**Fell Motion Appendix0126**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Krylov, Petro | C.D. CA CR No. 02-220 (A)-NM |
|---|---|

| Life sentence from jury | | **Name of AG** | Ashcroft |
|---|---|---|---|

**Race & gender of def** W  M   **Victim R** WM   **Date of DP notice** 8/3/2004

five kidnapping ransom murders by the Russian mob.  Wealthy Russian immigrants were kidnapped, held for ransom, murdered and their bodies dumped in a reservoir.  1.2 million was collected in ransom.  All involved are Caucasian.  Mikhel and Kadamovas are charged in four, the others in two, except Krylov, who is charged in three murders.  The indictment charged hostage taking resulting in death.  18 U. S.C. §1203.  Mikhel, Kadamovas and Krylov faced the death penalty.  Mikhel and Kadamovas were sentenced to death.  At a separate trial, Krylov was sentenced to life imprisonment after Attorney General Gonzales rejected an offer to plead guilty.

| Moses, Keon | D. MD No. 02-CR-410 |
|---|---|

| Life sentence from jury | | **Name of AG** | Ashcroft |
|---|---|---|---|

**Race & gender of def** B  M   **Victim R** BM   **Date of DP notice** 3/31/2003

leaders of one of West Baltimore's most violent drug gangs, the Lexington Terrace Boys, who are charged in eight killings, including one potential government witness who was killed to prevent him from testifying about an earlier double homicide of two members of a rival gang, the Stricker Street group.  Since 1999 the gang operated from the Lexington Terrace and Edgar Allan Poe Homes public housing projects.  During trial, the government presented evidence linking the gang to nine killings.  Taylor had a direct role in seven.  The mitigation evidence focused on the trauma of a childhood growing up in this neighborhood.  When Moses was 4, his father was gunned down in a drug hit in the lobby of one of the buildings.  Foster was acquitted of attempted murder in state court in 1998.  Taylor and Moses were charged together in the double homicide and in a witness killing.  There was also an attempted kidnapping of another potential witness to the 2001 killings.  The latest victim is the third brother of one family to die on the streets of Baltimore.  Investigators claim the group is in some way connected to 40 homicides.  Shortly before trial, a critical witness in the case was shot 10 times and killed. He had been shot at twice before.  Separate indictments (03-343 and 03-560) charge Kaarman Hawkins, Parker, Foster and Taylor in that case.  The jury returned unanimous life verdicts for Moses and Taylor in 5 hours.  All involved are African-American.

| Taylor, Michael Lafayette | D. MD No. 02-CR-410 |
|---|---|

| Life sentence from jury | | **Name of AG** | Ashcroft |
|---|---|---|---|

**Race & gender of def** B  M   **Victim R** BM   **Date of DP notice** 3/31/2003

leaders of one of West Baltimore's most violent drug gangs, the Lexington Terrace Boys, who are charged in eight killings, including one potential government witness who was killed to prevent him from testifying about an earlier double homicide of two members of a rival gang, the Stricker Street group.  Since 1999 the gang operated from the Lexington Terrace and Edgar Allan Poe Homes public housing projects.  During trial, the government presented evidence linking the gang to nine killings.  Taylor had a direct role in seven.  The mitigation evidence focused on the trauma of a childhood growing up in this neighborhood.  When Moses was 4, his father was gunned down in a drug hit in the lobby of one of the buildings.  Foster was acquitted of attempted murder in state court in 1998.  Taylor and Moses were charged together in the double homicide and in a witness killing.  There was also an attempted kidnapping of another potential witness to the 2001 killings.  The latest victim is the third brother of one family to die on the streets of Baltimore.  Investigators claim the group is in some way connected to 40 homicides.  Shortly before trial, a critical witness in the case was shot 10 times and killed. He had been shot at twice before.  Separate indictments (03-343 and 03-560) charge Kaarman Hawkins, Parker, Foster and Taylor in that case.  The jury returned unanimous life verdicts for Moses and Taylor in 5 hours.  All involved are African-American.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| | |
|---|---|
| Mills, Barry Byron | C.D. CA CR No. 02-00938-GHK |

Life sentence from jury                                                  **Name of AG**   Gonzales

**Race & gender of def**  W   M      **Victim R**   WM BM      **Date of DP notice**   6/28/2005

a RICO indictment of 40 reputed members and associates of the Aryan Brotherhood [AB] for a string of murders and violent attacks allegedly designed to expand the power of the white racist prison gang, which was founded at San Quentin state prison in 1964. Authorities say the gang has about 100 members.  In 1980, the federal faction of the AB allegedly formed a three-man "Commission" to oversee AB members in federal prisons, and, in 1993, the Federal Commission allegedly formed a "Council" to oversee the day-to-day activities of the federal faction.  17 murders were alleged.  At least six murders have occurred since 1996.  Twenty-seven defendants initially were eligible for the death penalty.  Mills and Bingham are alleged to have made all major decisions involving the criminal activities of the federal faction.  Mills was also charged with personally committing one murder and involvement in as many as a dozen murders.   AB members selected to face the death penalty were:  McIntosh, Knorr, Sahakian, McElhiney, Littrell, Bridgewater, Terflinger, Schwyhart, Houston, Griffin, Chance, Stinson, Mills and Bingham.  Mills and Bingham were sentenced to life in prison in 2006, as were Bridgewater and Houston at a separate trial in 2007.

| | |
|---|---|
| Bingham, Tyler Davis | C.D. CA CR No. 02-00938-GHK |

Life sentence from jury                                                  **Name of AG**   Gonzales

**Race & gender of def**  W   M      **Victim R**   WM BM      **Date of DP notice**   6/28/2005

a RICO indictment of 40 reputed members and associates of the Aryan Brotherhood [AB] for a string of murders and violent attacks allegedly designed to expand the power of the white racist prison gang, which was founded at San Quentin state prison in 1964. Authorities say the gang has about 100 members.  In 1980, the federal faction of the AB allegedly formed a three-man "Commission" to oversee AB members in federal prisons, and, in 1993, the Federal Commission allegedly formed a "Council" to oversee the day-to-day activities of the federal faction.  17 murders were alleged.  At least six murders have occurred since 1996.  Twenty-seven defendants initially were eligible for the death penalty.  Mills and Bingham are alleged to have made all major decisions involving the criminal activities of the federal faction.  Mills is also charged with personally committing one murder and involvement in numerous bad acts, as many as a dozen murders.   AB members selected to face the death penalty were:  McIntosh, Knorr, Sahakian, McElhiney, Littrell, Bridgewater, Terflinger, Schwyhart, Houston, Griffin, Chance, Stinson, Mills and Bingham.  Mills and Bingham were sentenced to life in prison in 2006, as were Bridgewater and Houston at a separate trial in 2007.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| | |
|---|---|
| Bridgewater, Wayne | C.D. CA CR No. 02-00938-GHK |

Life sentence from jury

**Name of AG**   Gonzales

**Race & gender of def**  W   M      **Victim R**      BM      **Date of DP notice**  11/14/2006

a RICO indictment of 40 reputed members and associates of the Aryan Brotherhood [AB] for a string of murders and violent attacks allegedly designed to expand the power of the white racist prison gang, which was founded at San Quentin state prison in 1964. Authorities say the gang has about 100 members.  In 1980, the federal faction of the AB allegedly formed a three-man "Commission" to oversee AB members in federal prisons, and, in 1993, the Federal Commission allegedly formed a "Council" to oversee the day-to-day activities of the federal faction.  17 murders were alleged.  At least six murders have occurred since 1996.  Twenty-seven defendants initially were eligible for the death penalty.  Mills and Bingham are alleged to have made all major decisions involving the criminal activities of the federal faction.  Mills is also charged with personally committing one murder and involvement in numerous bad acts, as many as a dozen murders.  Stinson, Terflinger, Griffin and Chance, allegedly made all major decisions involving the criminal activities of the California faction of the AB.  Slocum, a member of both the Federal and California councils allegedly relayed information between the two and is alleged to have participated in actual murders.  McElhiney and Sahakian are alleged to be responsible for running the day-to-day operations of the AB at USP Marion in Illinois.  Littrell, Roy, West, Grizzle, Kennedy and Filkins are accused of allegedly murdering AB members who had run afoul of the organization or violated rules.  Grizzle allegedly helped Litrell in one strangulation in the victim's cell.  Bridgewater, a member of the Federal Council, is alleged to have murdered two black inmates.  Campbell is accused of participating in three murders.  Stinson, Terflinger, Chance and Burnett are charged with murders of white inmates who had conflicts with the gang.  Sahakian, McIntosh and Knorr are accused of murdering a black inmate at Marion and faced federal capital charges at trial in Illinois at which the jury deadlocked.  Sahakian faces three additional murder charges in the California indictment.  Schwyhart and Hourston are accused of taking part in the murders of two black inmates.  Slocum, Bridgewater, Campbell and Houston were also charged with two BOP prison murders of black men in Pennsylvania at Lewisburg's USP.  Charges were dismissed in Pennsylvania.  AB members/inmates selected to face the death penalty were:  McIntosh, Knorr, Sahakian, McElhiney, Littrell, Bridgewater, Terflinger, Schwyhart, Houston, Griffin, Chance, Stinson, Mills and Bingham.  Mills and Bingham were sentenced to life in prison in 2006, as were Bridgewater and Houston at a separate trial in 2007.  The Notice of Intent to Seek the Death Penalty was withdrawn as to Griffin, Chance, Stinson and Schwyhart.

**Fell Motion Appendix0129**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Houston, Henry Michael | C.D. CA CR No. 02-00938-GHK |
| --- | --- |

| Life sentence from jury | | **Name of AG** Gonzales |
| --- | --- | --- |

**Race & gender of def** W  M     **Victim R** BM     **Date of DP notice** 11/14/2006

a RICO indictment of 40 reputed members and associates of the Aryan Brotherhood [AB] for a string of murders and violent attacks allegedly designed to expand the power of the white racist prison gang, which was founded at San Quentin state prison in 1964. Authorities say the gang has about 100 members. In 1980, the federal faction of the AB allegedly formed a three-man "Commission" to oversee AB members in federal prisons, and, in 1993, the Federal Commission allegedly formed a "Council" to oversee the day-to-day activities of the federal faction. 17 murders were alleged. At least six murders have occurred since 1996. Twenty-seven defendants initially were eligible for the death penalty. Mills and Bingham are alleged to have made all major decisions involving the criminal activities of the federal faction. Mills is also charged with personally committing one murder and involvement in numerous bad acts, as many as a dozen murders. Stinson, Terflinger, Griffin and Chance, allegedly made all major decisions involving the criminal activities of the California faction of the AB. Slocum, a member of both the Federal and California councils allegedly relayed information between the two and is alleged to have participated in actual murders. McElhiney and Sahakian are alleged to be responsible for running the day-to-day operations of the AB at USP Marion in Illinois. Littrell, Roy, West, Grizzle, Kennedy and Filkins are accused of allegedly murdering AB members who had run afoul of the organization or violated rules. Grizzle allegedly helped Litrell in one strangulation in the victim's cell. Bridgewater, a member of the Federal Council, is alleged to have murdered two black inmates. Campbell is accused of participating in three murders. Stinson, Terflinger, Chance and Burnett are charged with murders of white inmates who had conflicts with the gang. Sahakian, McIntosh and Knorr are accused of murdering a black inmate at Marion and faced federal capital charges at trial in Illinois at which the jury deadlocked. Sahakian faces three additional murder charges in the California indictment. Schwyhart and Hourston are accused of taking part in the murders of two black inmates. Slocum, Bridgewater, Campbell and Houston were also charged with two BOP prison murders of black men in Pennsylvania at Lewisburg's USP. Charges were dismissed in Pennsylvania. AB members/inmates selected to face the death penalty were: McIntosh, Knorr, Sahakian, McElhiney, Littrell, Bridgewater, Terflinger, Schwyhart, Houston, Griffin, Chance, Stinson, Mills and Bingham. Mills and Bingham were sentenced to life in prison in 2006, as were Bridgewater and Houston at a separate trial in 2007. The Notice of Intent to Seek the Death Penalty was withdrawn as to Griffin, Chance, Stinson and Schwyhart.

| James, Richard | E.D. NY CR No. 02-778 (S-1) (SJ) |
| --- | --- |

| Life sentence from jury | | **Name of AG** Ashcroft |
| --- | --- | --- |

**Race & gender of def** B  M     **Victim R** BM     **Date of DP notice** 8/1/2003

two insurance fraud murders for hire involving defendants from Guyana. The victims are also from Guyana. One died there. Both died from alcohol and drug ingestion. James is an insurance broker. Mallay and James are alleged to have arranged at least two other deaths in an insurance fraud scheme. Also charged in one murder is the son of one victim. He did not face the death penalty. James was acquitted of one murder. All involved are black.

| Mallay, Ronald | E.D. NY CR No. 02-778 (S-1) (SJ) |
| --- | --- |

| Life sentence from jury | | **Name of AG** Ashcroft |
| --- | --- | --- |

**Race & gender of def** B  M     **Victim R** BM     **Date of DP notice** 8/1/2003

two insurance fraud murders for hire involving defendants from Guyana. The victims are also from Guyana. One died there. Both died from alcohol and drug ingestion. James is an insurance broker. Mallay and James are alleged to have arranged at least two other deaths in an insurance fraud scheme. Also charged in one murder is the son of one victim. He did not face the death penalty. James was acquitted of one murder. All involved are black.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Smith, Thomas | W.D. MO No. 3:02 CR 05025 |
|---|---|

Life sentence from jury                                          **Name of AG**   Ashcroft

**Race & gender of def**  B  M      **Victim R**   WF BM      **Date of DP notice**  8/7/2003

two gun murders during course of drug trafficking by black defendants from Tulsa selling crack in Tulsa. Smith is alleged to be a leader in the double murder. A black victim allegedly stole drugs and was shot to death along with a white female who was with him at the time. Attorney General Ashcroft required a capital prosecution as to Smith and Ward, and DOJ twice refused to withdrawn the Notice of Intent against Street. Attorney General Gonzales approved a plea agreement with Ward after Street was sentenced to life imprisonment by a jury.

| Villegas, Hernardo Medina | D. PR No. 3:02-CR-117 |
|---|---|

Life sentence from jury                                          **Name of AG**   Ashcroft

**Race & gender of def**  H  M      **Victim R**   HM      **Date of DP notice**  7/31/2003

the Hobbs Act robbery of a local credit union, while an armored bank truck was making a deposit. A gunfight ensued and an armed guard was killed with a second head shot by Villegas after he was down. Lorenzo Catalan and Hernando Medina participated in the robbery, while Quester Sterling was the lookout. The 924(j) murder weapon was allegedly obtained in a carjacking. There are additional non-capital charges for a prior robbery of the same credit union by the same group. Only Villegas and Roman faced the death penalty. All involved are Hispanic.

| Roman, Lorenzo Catalan | D. PR No. 3:02-CR-117 |
|---|---|

Life sentence from jury                                          **Name of AG**   Ashcroft

**Race & gender of def**  H  M      **Victim R**   HM      **Date of DP notice**  7/31/2003

the Hobbs Act robbery of a local credit union, while an armored bank truck was making a deposit. A gunfight ensued and an armed guard was killed with a second head shot by Villegas after he was down. Lorenzo Catalan and Hernando Medina participated in the robbery, while Quester Sterling was the lookout. The 924(j) murder weapon was allegedly obtained in a carjacking. There are additional non-capital charges for a prior robbery of the same credit union by the same group. Only Villegas and Roman faced the death penalty. All involved are Hispanic.

| Breeden, Shawn | W.D. VA No. 03-CR-13 |
|---|---|

Life sentence from jury                                          **Name of AG**   Ashcroft

**Race & gender of def**  B  M      **Victim R**   BM      **Date of DP notice**  7/15/2003

involves four defendants from D.C. who drove to Virginia with the intent to commit robbery. Cassell was the driver. Breeden is alleged to be the organizer, having lost his girlfriend's car payment while gambling. Carpenter allegedly held the victim, a drug dealer, at gunpoint. Carpenter shot the victim in the knee with a shotgun. Then Breeden allegedly stabbed the victim 7 times in the chest and neck. Outterbridge then shot the victim in the head. All involved are African-American, except the victims of a violent, but non-fatal, robbery of a white couple using an ATM that resulted in serious injury. The group also committed another robbery. Attorney General Ashcroft required a capital prosecution against Breeden, Carpenter and Cassell. Outterbridge, 19 and the youngest, is a cooperator. Breeden has a prior stabbing conviction. The district court rejected a claim that the notice of intent to seek the death penalty was filed too late. 2003 WL 22019060.

**Fell Motion Appendix0131**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Carpenter, Michael Anthony | W.D. VA No. 03-CR-13 |
|---|---|

| Life sentence from jury | | Name of AG | Ashcroft |
|---|---|---|---|

**Race & gender of def** B M **Victim R** BM **Date of DP notice** 7/15/2003

involves four defendants from D.C. who drove to Virginia with the intent to commit robbery. Cassell was the driver. Breeden is alleged to be the organizer, having lost his girlfriend's car payment while gambling. Carpenter allegedly held the victim, a drug dealer, at gunpoint. Carpenter shot the victim in the knee with a shotgun. Then Breeden allegedly stabbed the victim 7 times in the chest and neck. Outterbridge then shot the victim in the head. All involved are African-American, except the victims of a violent, but non-fatal, robbery of a white couple using an ATM that resulted in serious injury. The group also committed another robbery. Attorney General Ashcroft required a capital prosecution against Breeden, Carpenter and Cassell. Outterbridge, 19 and the youngest, is a cooperator. Breeden has a prior stabbing conviction. The district court rejected a claim that the notice of intent to seek the death penalty was filed too late. 2003 WL 22019060.

| Ayala-Lopez, Carlos L. | D. PR No. 03-CR-55 |
|---|---|

| Life sentence from jury | | Name of AG | Ashcroft |
|---|---|---|---|

**Race & gender of def** H M **Victim R** HM **Date of DP notice** 12/17/2003

robbery of a gun and murder of a Veteran's Administration Hospital guard. Attorney General Ashcroft rejected a plea agreement calling for a sentence of 35 years to life and required a capital prosecution. Ayala-Lopez was a leader of a gang that sold drugs. A juvenile co-defendant was the triggerman.

| Williams, Jamain | E.D. PA No. 01-CR-512 |
|---|---|

| Life sentence from jury | | Name of AG | Gonzales |
|---|---|---|---|

**Race & gender of def** B M **Victim R** BF BM **Date of DP notice** 5/23/2005

a prosecution against a drug gang, the Boyle Street Boys, charging cocaine sales and four gun murders between 1996 and 2002, including the 2001 execution-style slaying of a witness who was killed before she could testify about an illegal gun ring. Brian Rogers, who shot the female victim to prevent her from testifying against Vincent Williams in a federal gun case, reached a plea agreement. Jamain Williams and Andre Cooper allegedly assisted Rogers in that shooting. Vincent Williams and Andre Cooper are charged with the 2000 murder of a teenage drug seller. Vincent Williams was allegedly the shooter. Jamain Williams was allegedly the triggerman in a second 2000 RICO murder. Both Williams and Cooper committed a third RICO murder in 1999. Cooper was allegedly the shooter. All involved are African American.

| Mayhew, John Richard | S.D. OH CR No. 02 03-165 |
|---|---|

| Life sentence from jury | | Name of AG | Ashcroft |
|---|---|---|---|

**Race & gender of def** W M **Victim R** WF **Date of DP notice** 10/5/2004

domestic gun murders of Mayhew's ex-wife, her boyfriend and his 18 year old daughter, with whom Mayhew had an incestuous relationship. Mayhew is charged in federal court with interstate kidnaping. He shot a West Virginia state trooper in the chest and shot his daughter to death and then shot himself. The seats in the car were rigged with bombs. All involved are white.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Cooper, Andre | E.D. PA No. 01-CR-512 |
|---|---|

| Life sentence from jury | | **Name of AG** Gonzales |
|---|---|---|

**Race & gender of def** B M   **Victim R** BF BM   **Date of DP notice** 5/23/2005

a prosecution against a drug gang, the Boyle Street Boys, charging cocaine sales and four gun murders between 1996 and 2002, including the 2001 execution-style slaying of a witness who was killed before she could testify about an illegal gun ring. Brian Rogers, who shot the female victim to prevent her from testifying against Vincent Williams in a federal gun case, reached a plea agreement. Jamain Williams and Andre Cooper allegedly assisted Rogers in that shooting. Vincent Williams and Andre Cooper are charged with the 2000 murder of a teenage drug seller. Vincent Williams was allegedly the shooter. Jamain Williams was allegedly the triggerman in a second 2000 RICO murder. Both Williams and Cooper committed a third RICO murder in 1999. Cooper was allegedly the shooter. All involved are African American.

| Simmons, Brent | W.D. VA No. 5:04-CR-30014-SGW |
|---|---|

| Life sentence from jury | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** B M   **Victim R** WF WM   **Date of DP notice** 7/28/2004

a black state prisoner charged in this 1996 case with stalking his white ex-college girlfriend, 25, and killing her and her white boyfriend, 23, with two shots to the head each. The victims were James Madison University students. The state prosecution ended with a controversial 20 year plea agreement after a hung jury. The Virginia Supreme Court rejected an appeal in 2003. Simmons has no prior convictions, is college educated and has an excellent institutional record in state prison in Virginia. The new charges were based on the Violence Against Women Act (a gun murder) and on an interstate stalking law. A 9mm was eventually discovered near the defendant's home and was alleged to be the murder weapon. The male victim's father is a retired New York City police officer. Simmons was sentenced to life in prison after six hours of deliberations.

| Pepin-Taveras, Humberto | E.D. NY CR 04-0156 |
|---|---|

| Life sentence from jury | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** H M   **Victim R** HM   **Date of DP notice** 3/3/2005

two drug related gun murders by a Dominican Republican. The capital murder charge alleged a 1995 homicide. 21 U.S.C. § 848. Pepin-Tavares was serving a sentence for a drug conspiracy when he called the police to "cooperate" and obtain a reduced sentence. He admitted two murders of drug dealers and the dismemberment and disposal of the corpses. A 1992 murder was being prosecuted in state court, but was transferred to federal court. Pepin shot the victims, cut up their bodies and dumped them by the roadside. All involved are Hispanic.

| Jordan, Peter | E.D. VA No. 04-CR-58 |
|---|---|

| Life sentence from jury | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** B M   **Victim R** BM   **Date of DP notice** 9/30/2004

a drug conspiracy murder of a drug dealer who was burned to death. All involved are African-American. Jordan was previously charged with bank robbery, auto-theft and drug possession. Gordan faced drug and gun possession charges as a juvenile.

**Fell Motion Appendix0133**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Gordon, Lorenzo | E.D. VA No. 04-CR-58 |
|---|---|

| Life sentence from jury | | Name of AG | Ashcroft |
|---|---|---|---|

**Race & gender of def** B  M    **Victim R**    BM    **Date of DP notice** 9/30/2004

a drug conspiracy murder of a drug dealer who was burned to death.  All involved are African-American.  Jordan was previously charged with bank robbery, auto-theft and drug possession.  Gordan faced drug and gun possession charges as a juvenile.

| Grande, Oscar | E.D. VA No. 04-CR-283 |
|---|---|

| Life sentence from jury | | Name of AG | Ashcroft |
|---|---|---|---|

**Race & gender of def** H  M    **Victim R**    HF    **Date of DP notice** 10/1/2004

four members of the MS-13 street gang who murdered a pregnant teenager in 2003 who had joined the gang and later became a federal informant.  The deceased government witness was a 17 year old minor.  She had just left the witness protection program.  She was stabbed many times in 2003.  Rivera allegedly ordered the murder from prison, where he is serving a life sentence for a 2001 murder. Rivera and Garcia-Orellano were acquitted. Cisneros and Grande  were sentenced to life. All involved are Hispanic.

| Cisneros, Ismael | E.D. VA No. 04-CR-283 |
|---|---|

| Life sentence from jury | | Name of AG | Ashcroft |
|---|---|---|---|

**Race & gender of def** H  M    **Victim R**    HF    **Date of DP notice** 10/1/2004

four members of the MS-13 street gang who murdered a pregnant teenager in 2003 who had joined the gang and later became a federal informant.  The deceased government witness was a 17 year old minor.  She had just left the witness protection program.  She was stabbed many times in 2003.  Rivera allegedly ordered the murder from prison, where he is serving a life sentence for a 2001 murder. Rivera and Garcia-Orellano were acquitted. Cisneros and Grande  were sentenced to life. All involved are Hispanic.  Intellectual disability was raised and argued in the penalty phase.

| Wilk, Kenneth | S.D. FL No. 04-CR-60216 |
|---|---|

| Life sentence from jury | | Name of AG | Gonzales |
|---|---|---|---|

**Race & gender of def** W  M    **Victim R**    HM    **Date of DP notice** 2/19/2005

law enforcement officer victim - the gun murder of a law enforcement officer,Todd Fatta, and the attempted murder of Sgt. Angelo Cedeno, deputy sheriffs who were trying to serve a federal warrant.  Wilk was being investigated for child pornography.  Wilk, a homosexual, apparently has AIDS and allegedly dementia.  The government refused an offer to plead guilty in return for a life sentence, a resolution said to have been acceptable to the victim's family.  Wilk is white and the deceased officer is Hispanic.  Wilk's once allegedly listed "hunting cops" as a hobby on an internet profile.  Trial proceedings were stayed in 2005 pending a speedy trial interlocutory appeal which was denied.  It was claimed the "death notice" was filed too late.

**Fell Motion Appendix0134**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Clay, Vertis | E.D. AR No. 4:04-CR-00035 WRW |
|---|---|

| Life sentence from jury | **Name of AG** Gonzales |
|---|---|

**Race & gender of def** B  M    **Victim R** BM    **Date of DP notice** 10/21/2005

a murder-for-hire drug-related 2004 gun murder during the course of a burglary and robbery to steal drugs and money.  Clay and Walker were sent to kill the victim by Stovall.  The deceased had knowledge about Stovall's misdeeds unknown to his Mexican drug suppliers.  Walker proffered repeatedly in an attempt to cooperate.  Only Clay was authorized.  The murder is alleged to be gruesome.  All involved are black.

| Barnes, Khalid | S.D. NY No. 7:04-CR-00186-SCR |
|---|---|

| Life sentence from jury | **Name of AG** Gonzales |
|---|---|

**Race & gender of def** B  M    **Victim R** BM HM    **Date of DP notice** 1/19/2006

two drug related murders, charged as §848 CCE and as §924 gun murders.  Attorney General Gonzales required a capital prosecution.  All involved are black.

| Street, John P. | W.D. MO No. 4:04-CR-00298-GAF |
|---|---|

| Life sentence from jury | **Name of AG** Gonzales |
|---|---|

**Race & gender of def** W  M    **Victim R** WM    **Date of DP notice** 11/16/2005

a 1998 drug (methamphetamine) related gun murder of a potential government witness.  Police recovered the male victim's body from the trunk of a car.  He had been beaten, stabbed and shot in the back of the head.  Street was already serving 15 years on drug and gun charges.  All involved are white.  The jury at the first trial deadlocked.  The jury at the second trial convicted Street and sentenced him to life in prison.  The 8th Circuit reversed and he was acquitted.

| O'Reilly, Timothy | E.D. MI No. 05-80025 |
|---|---|

| Life sentence from jury | **Name of AG** Gonzales |
|---|---|

**Race & gender of def** W  M    **Victim R** BM    **Date of DP notice** 11/1/2006

the 2001 gun, bank robbery murder of a Total Armed Services (TAS) armored truck which was delivering cash to the Dearborn Federal Credit Union (DFCU) in Dearborn, Michigan.  There were six potential capital defendants.  Three hooded subjects, armed with shotguns, opened fire, fatally wounding a black TAS guard/messenger, the father of five.  The subjects grabbed bags containing $204,000 in currency and a .38 caliber revolver owned by TAS (carried by the victim).  O'Reilly, Duncan and Watson were allegedly directly responsible for the shooting and killing of the TAS messenger.  They  faced the death penalty.  O'Reilly, Duncan and Broom also committed a 2003 robbery, where another guard was seriously wounded and $170,000 was stolen.  Six robbers participated in the DFCU robbery/murder.  They were provided the vehicle by Archie Broom, who worked at a U-Haul facility.  Cromer, Duncan , Broom and O'Reilly were members of the Blue Stone Motorcycle Club (BSMC), a defunct black motorcycle club.  A conversation was recorded between O'Reilly and a confidential informant, wherein O'Reilly said that he and Watson were the subjects who shot the TAS guard and Johnson was the get-away driver.  Duncan was armed and participated in the robberies.  Broom helped get the weapons and supplied the U-Haul used at the DFCU robbery/murder.  Broom obtained a cooperation agreement. Duncan is serving a 12-20 year sentence for an attempted robbery where an accomplice was killed. O'Reilly is white, the other defendants are black.  O'Reilly was previously charged with murder but was acquitted.  O'Reilly and Duncan were alleged to be the most culpable.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| | |
|---|---|
| Gooch, Larry | D. DC CR No. 04-128 |

| | | |
|---|---|---|
| Life sentence from jury | **Name of AG** | Gonzales |

**Race & gender of def** B  M    **Victim R** BF BM    **Date of DP notice** 10/19/2005

a drug (cocaine, PCP, MDA) gang accused of six murders, a double murder in 2000, one in 2002, three in 2003, including a double murder.  Gooch is charged with five murders, Dorsey and Robinson in two and Bell, Franklin and Simmons in one.  Attorney General Gonzales required a capital prosecution against Gooch only.  He was acquitted of one of the five murders.

| | |
|---|---|
| McGriff, Kenneth | E.D. NY CR No. 04-966 (ERK) (VVP) |

| | | |
|---|---|---|
| Life sentence from jury | **Name of AG** | Ashcroft |

**Race & gender of def** B  M    **Victim R** BM    **Date of DP notice** 3/22/2006

Kenneth "Supreme" McGriff was the leader of a notorious Queens-based drug gang, "The Supreme Team," that operated in the 1980's.  He went to prison after pleading to a CCE and receiving a 12-year sentence.  Upon his release he resumed drug trafficking.  The case also features a Murder, Inc. connection involving a film McGriff was producing with the soundtrack provided by several well-know rap artists from the label.  McGriff and co-defendants David Crosby and Emanuel Mosley were charged with two RICO murders that took place in 2001.  The government alleged that the murders were committed in retaliation for a murder of a McGriff associate by one of the victims, Eric Smith (who was a rapper a/k/a "E Money Bags").  The second murder victim, Troy Singleton, was allegedly killed to prevent him from retaliating for the E Money Bags murder.  Both victims had a reputation for street violence.  Both were carrying loaded handguns at the time of their deaths.  A third defendant, Nicole Brown, Crosby's girlfriend, was charged in the E Money Bags murder only and is alleged to have acted as a look-out, video-taping the victim, and/or to have directed the shooters to the victim's location.  The government's theory was that McGriff hired Mosley to provide the actual shooters.  It is not clear whether any of the defendants were on the scene.  Victor Wright was charged with the double-murder  of two men in a suburb of Baltimore, Owings Mills, Md.  The motive alleged for one of the killings was that the victim was suspected of being a cooperating witness in a drug investigation.  The second victim just happened to be there.  The crime took place in the parking lot of an up-scale apartment complex where McGriff maintained a stash house.  The Government filed "Protective" Notices of Intent to Seek the Death Penalty as to five defendants, but withdrew as to four.  The Court declined to strike the notice as filed late.  Only McGriff faced the death penalty.  All involved are African-American.

| | |
|---|---|
| Lujan, Larry | D. NM No. 05-924 |

| | | |
|---|---|---|
| Life sentence from jury | **Name of AG** | Gonzales |

**Race & gender of def** H  M    **Victim R** WM    **Date of DP notice** 7/12/2007

2005  interstate (Texas to New Mexico) kidnapping murder of a 16 year old potential federal witness.  The victim owed a drug debt, failing to pay Lujan a tax for selling drugs on Lujan's "turf."  The boy was beaten, forced to perform oral sex and nearly decapitated with a meat cleaver.  His body was found 3 weeks later.  The defendant is Hispanic, the victim white.  Mr. Lujan is also linked by DNA to a 1993 murder of a couple in the same area who were allegedly involved in drug trafficking.  Only Lujan faced the death penalty.  All of the co-defendants, including two juveniles, made statements implicating Lujan.

| | |
|---|---|
| McTier, James | E.D. NY CR No. 05-401 |

| | | |
|---|---|---|
| Life sentence from jury | **Name of AG** | Gonzales |

**Race & gender of def** B  M    **Victim R** BF BM    **Date of DP notice** 12/7/2006

five RICO murders in 2000 and 2001 by the drug gang "Folk Nation" of the nationwide "Gangster Disciples" gang, who sold cocaine and marijuana.  McTier was charged with three murders, Stone in two murders and Nieves in one.  An innocent bystander was killed in a drive-by shooting.  Nieves is Hispanic.  Everyone else is black.  Only McTier faced the death penalty.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| | |
|---|---|
| Casey, Lashaun | D. PR No. 3:05-CR-0277-JAG |

Life sentence from jury                                    **Name of AG**   Gonzales

**Race & gender of def**  B  M    **Victim R**   HM    **Date of DP notice**  7/17/2007

murder of an Hispanic law enforcement officer.  Casey, who is black, was born in America and sent to live in Puerto Rico, was accused of the carjacking murder of an Hispanic  undercover cop who disappeared during a drug transaction.  The victim's body was found by the side of the road.  The officer's cellphone phone, marked bills from the drug buy with blood on them and a gun were discovered at the defendant's grandfather's home.  The defendant was caught driving the police officer's car.

| | |
|---|---|
| Lecco, George | S.D. WV CR No. 2:05-00107 |

Life sentence from jury                                    **Name of AG**   Gonzales

**Race & gender of def**  W  M    **Victim R**   WF    **Date of DP notice**  8/16/2006

a 2005 gun murder-for-hire of a cooperating witness/informant in a drug (cocaine) prosecution.  Lecco asked Burton, who asked Friend to help kill the female victim who was shot and beaten to death and buried in a shallow grave.  Attorney General Gonzales required a death penalty prosecution.  Lecco and Friend were sentenced to death at a joint trial but a new trial was granted by the trial judge when the government revealed that a juror was under federal investigation for child pornography.  634 F.Supp.2d 633 (SD WV 2009).  Friend entered into a plea agreement approved by Attorney General Holder and testified against Lecco, who was sentenced to life in prison.  Friend was sentenced to 35 years, Burton to 30 years.  All involved are white.

| | |
|---|---|
| Williams, Naeem | D. HI No. 1:06-CR-00079-DAE |

Life sentence from jury                                    **Name of AG**   Gonzales

**Race & gender of def**  B  M    **Victim R**   BF    **Date of DP notice**  9/8/2006

the murder of a five year old child, who was in Special Education, on federal land, the Schofield (US Army) Barracks.  There were bruises on the child's arms, chest, knees and thighs, as well as a small laceration on her back.  The father, Naeem Williams, confessed to hitting his daughter on numerous occasions.  His wife, Delilah Williams (the victim's stepmother), 21, confessed to having knowledge of these beatings.  The child's room had no mattress, no blankets and no furniture, as all had been removed by her parents as a form of punishment.  Blood spatters could be seen throughout the residence from whipping with a belt.  Naeem will face the death penalty.  Attorney General Gonzales required a capital trial.  Attorney General Holder rejected a plea agreement.

| | |
|---|---|
| Argueta, Antonio | D. MD No. 8:05 CR 00393-DKC |

Life sentence from jury                                    **Name of AG**   Gonzales

**Race & gender of def**  H  M    **Victim R**   HF    **Date of DP notice**  5/8/2007

five RICO gun murders by members of the Langley Park clique of MS-13 gang, including the 2004 murder of a female potential government witness by Argueta, Guillen and Palacios, a 2003 double murder, various attempted murders and a gang rape of two women.  Bernal is charged in two murders and the others in one.  Villatoro and Canales were not charged in federal court.  Villatoro received a life sentence in state court.  There are three additional uncharged related murders.  All involved are Hispanic.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Hans, Eric Preston | D. SC No. 6:05 CR 01227-HMH |
|---|---|

| Life sentence from jury | | Name of AG | Gonzales |
|---|---|---|---|

**Race & gender of def** W M   **Victim R** WF BM   **Date of DP notice** 8/1/2006

a 2004 arson of a Comfort Inn in Greenville, South Carolina, resulting in six deaths, one white male, two white females, two black males and one black female. Hans is white. He was allegedly obsessed with a woman who was reconciling with her boyfriend at the motel. At sentencing, the government abandoned a claim that Hans intended to kill.

| Natson, Michael Antonio | M.D. GA No. 4:05-CR-00021-CDL-GMF |
|---|---|

| Life sentence from jury | | Name of AG | Gonzales |
|---|---|---|---|

**Race & gender of def** B M   **Victim R** BF   **Date of DP notice** 12/8/2005

a 24 year old U.S. Air Force military police officer charged with the gun murder a pregnant 23 year old Georgia Southern University student in 2003. The victim's skeletal remains were found by hunters on a remote part of Fort Benning, Georgia. Evidence suggests the victim was romantically involved with the defendant. All involved are African-American.

| Solomon, Jelani | W.D. PA No. 2:05-CR-00385-TFM |
|---|---|

| Life sentence from jury | | Name of AG | Gonzales |
|---|---|---|---|

**Race & gender of def** B M   **Victim R** WM   **Date of DP notice** 12/29/2006

involves a contract gun murder of a 53-year-old father of a jailed witness who was cooperating (and due to testify the next day) against Soloman. Hanner rang the doorbell and shot the witness's father when he answered the door. Solomon hired Hanner who dropped his cellphone near the scene of the murder. Hanner pled guilty and testified against Solomon. The victim is white, with five children. Solomon and Hanner are African-American.

| Cyrus, Dennis, Jr. | N.D. CA No. 05-00324-MMC |
|---|---|

| Life sentence from jury | | Name of AG | Gonzales |
|---|---|---|---|

**Race & gender of def** B M   **Victim R** BM   **Date of DP notice** 11/1/2006

a San Francisco based drug conspiracy from 1994 to 2005 alleging three separate 2002 RICO murders including the killing of a government witness, 18 U.S.C. §1512. Cyrus faced three murder charges, Peterson faced one.

| Eye, Gary | W.D. MO No. 4:05-CR-00344-ODS |
|---|---|

| Life sentence from jury | | Name of AG | Gonzales |
|---|---|---|---|

**Race & gender of def** W M   **Victim R** BM   **Date of DP notice** 7/17/2006

a 2005 18 U.S.C. §924(c) gun, civil rights murder of a §1512 government witness. The indictment alleged the victim was killed by the white defendants because he is an African-American. State murder charges were dismissed. The United States Attorney announced that the death penalty would not be sought, but the Department of Justice required counsel to submit a mitigation letter. "Learned" counsel were not appointed until Attorney General Gonzales required a death penalty prosecution. Both defendants are young with juvenile records, stealing cars and use of meth.federal defendant who received a life sentence.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Sandstrom, Steven | | W.D. MO No. 4:05-CR-00344-ODS | |
|---|---|---|---|

| Life sentence from jury | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def** | W | M | **Victim R** | BM | **Date of DP notice** | 7/17/2006

a 2005 18 U.S.C. §924(c) gun, civil rights murder of a §1512 government witness. The indictment alleged the victim was killed by the white defendants because he is an African-American. State murder charges were dismissed. The United States Attorney announced that the death penalty would not be sought, but the Department of Justice required counsel to submit a mitigation letter. "Learned" counsel were not appointed until Attorney General Gonzales required a death penalty prosecution. Both defendants are young with juvenile records, stealing cars and use of meth.

| Henderson, Thomas | | S.D. OH No. 2:06-CR-00039 | |
|---|---|---|---|

| Life sentence from jury | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def** | B | M | **Victim R** | BM | **Date of DP notice** | 12/8/2006

the 1996 and 1998 18 U.S.C. § 1513 murders of witnesses who testified against Henderson in an earlier bank robbery prosecution and the witness' boyfriend. In addition, three additional murders were alleged in aggravation. All involved are African-American.

| Basciano, Vincent | | E.D. NY No. 05-CR-0060 (S-3) (NGG) | |
|---|---|---|---|

| Life sentence from jury | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def** | W | M | **Victim R** | WM | **Date of DP notice** | 4/2/2007

two mob RICO murders by the Acting Boss of the Bonanno crime family in 2001, involving Indelicator and Donato, and in 2004, involving Basciano, Cicale, Aiello and Mancuso. Joe Massino, the Boss of the Family, avoided a death penalty trial by secretly taping Basciano. Subsequently, Cicale began cooperating. Basciano was convicted of the 2001 murder and sentenced to life in prison. He was separately tried and convicted of the 2004 murder case and Massino testified against him. Attorney General Holder rejected the judge's request to withdraw the Notice of Intent to seek the death penalty. The jury unanimously voted to reject the death penalty. All involved are white.

| Galan, Thomas A. | | N.D. OH No. 3:06-CR-00730-JGC-1 | |
|---|---|---|---|

| Life sentence from jury | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def** | H | M | **Victim R** | HM | **Date of DP notice** | 11/14/2006

drug related double gun murder of two brothers in 2006. They were found in a crushed van. The defendant is white, the victims Hispanic. Galan distributed cocaine and marijuna in Northwest Ohio.

| Green, Steven | | W.D. KY No. 5:06-CR-00019-TBR | |
|---|---|---|---|

| Life sentence from jury | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def** | W | M | **Victim R** | ARF | **Date of DP notice** | 7/3/2007

the 2006 murders of an Iraqi family of four, including two children, and the rape murder of their daughter by three United States soldiers. Four of Green's fellow soldiers, including three squad leaders, were murdered in 12 days. Green, 20, told counselors and commanding officers that he wanted to kill Iraqis. Green was discharged before his arrest and indicted in United States District Court.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Baskerville, William | D. NJ CR No. 03-836 (JAP) |
|---|---|

Life sentence from jury · **Name of AG** Gonzales

**Race & gender of def** B M · **Victim R** BM · **Date of DP notice** 6/16/2006

Baskerville is a "career offender" in his early thirties who was the target of a federal narcotics investigation. The victim was a government informant who made a series of taped drug buys from Baskerville (as well as others). Four months after Baskerville was arrested, the government witness was killed. Baskerville ordered the hit from his jail cell. The shooter, Anthony Young, cooperated and did not face the death penalty.

| Moonda, Donna | N.D. OH No. 1:06-CR-00395-DDD |
|---|---|

Life sentence from jury · **Name of AG** Gonzales

**Race & gender of def** W F · **Victim R** IM · **Date of DP notice** 9/6/2006

a 2005 "interstate stalking," 18 U.S.C. §2261A, §924 domestic gun murder of a millionaire urologist while he was driving on the Ohio Turnpike. Co-defendant Bradford, a black male, allegedly traveled from Pennsylvania to Ohio to kill Dr. Gulam Moonda. Bradford struck a deal for 17 years in return for testimony that Mrs. Moonda offered him money to kill her husband. He was having an affair with the doctor's wife. The deceased was 69 and of Indian descent. Mrs. Moonda, 47, faced the death penalty for charges of murder for hire.

| Burgos-Montes, Edison | D. PR No. 06-009 JAG |
|---|---|

Life sentence from jury · **Name of AG** Gonzales

**Race & gender of def** H M · **Victim R** HF · **Date of DP notice** 6/27/2007

a carjacking murder of a government witness who was Burgos' girlfriend, an informant for the DEA, investigating Burgos as the alleged leader of a drug conspiracy. Burgos allegedly found out and threatened to kill her. She disappeared shortly thereafter and her body has never been found. All involved are Hispanic.

| Julian, Jermaine Michael | M.D. FL No. 8:07-CR-9-T-27TGW |
|---|---|

Life sentence from jury · **Name of AG** Keisler, AAG

**Race & gender of def** B M · **Victim R** BM · **Date of DP notice** 10/15/2007

a robbery of a drug house and an execution style gun murder and two attempted murders. The gunmen forced their way into the house. Only Julian faced the death penalty. He shot the deceased victim Potts but the gun jammed when he tried to shoot two associates. All involved are black.

| Dinkins, James | D. MD No. 1:06-CR-00309-JFM |
|---|---|

Life sentence from jury · **Name of AG** Mukasey

**Race & gender of def** B M · **Victim R** BM · **Date of DP notice** 1/25/2008

three drug-related gun murders. Dinkins was charged in two in 2005, the others in one. 18 U.S.C. §§846 and 924.

**Fell Motion Appendix0140**

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Gilbert, Melvin | D. MD No. 1:06-CR-00309-JFM |
|---|---|

Life sentence from jury                                      **Name of AG**  Mukasey

**Race & gender of def**  B  M      **Victim R**  BM      **Date of DP notice**  1/25/2008

three drug-related gun murders.  Dinkins was charged in two in 2005, the others in one.  18 U.S.C. §§846 and 924.

| Phillips, Maurice | E.D. PA No. 2:07-CR-00549-JCJ |
|---|---|

Life sentence from jury                                      **Name of AG**  Holder

**Race & gender of def**  B  M      **Victim R**  BF BM      **Date of DP notice**  5/4/2009

murder for hire witness killings of a female informant and her godson who was at the residence at the time of the shooting.  Phillips ordered the killing.  Bryant Phillips was the shooter and testified at trial.  All involved are black.

| Byers, Patrick Albert, Jr. | D. MD No. 08-056 |
|---|---|

Life sentence from jury                                      **Name of AG**  Mukasey

**Race & gender of def**  B  M      **Victim R**  WM      **Date of DP notice**  8/5/2008

2007 contract, gun murder for hire by a 15 year old member of the Bloods gang on the order of Byers, who was facing a state murder trial in eight days.  The gunman was paid $2,500.  The victim, who is a white male, was an eyewitness to a murder committed by Byers.  He was shot to death in front of his children.  The hit was arranged from jail by a cellphone.  Prior to trial, Byers was caught with another cellphone in jail, trying to influence a witness.  Attorney General Holder rejected an offer to plead to a life sentence.  The jury deliberated eight hours before announcing they were not unanimous.  All the defendants are black.

| Holley, Marvin Lee | N.D. AL CR No. 96-B-0208-NE |
|---|---|

Life sentence from jury                                      **Name of AG**  Reno

**Race & gender of def**  W  M      **Victim R**  WM      **Date of DP notice**  11/14/1997

the 1991 killing of an informant in a drug conspiracy prosecution who had been given a new identity and sent out of state.  However, the government witness returned and was spotted at a flea market in Ft. Payne.  The drug ring boss, Mr. Holley, and co-defendant Charles Holland are alleged to have kidnaped the victim (intrastate) and killed him with a hammer.  Holley is also alleged to have attempted to arrange the killing of government witnesses from prison.   Holley was sentenced to life in prison and is also serving several consecutive life sentences in state prison for drug trafficking.  All involved are white.

| Richardson, Brian | N.D. GA No. 1:08CR139 |
|---|---|

Life sentence from jury                                      **Name of AG**  Mukasey

**Race & gender of def**  W  M      **Victim R**  WM      **Date of DP notice**  12/2/2008

inmate killing involving a stabbing and strangulation at USP Atlanta.  All involved are white.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Northington, Steven | E.D. PA No. 2:07-CR-00550-RBS |
|---|---|

| Life sentence from jury | | Name of AG | Holder |
|---|---|---|---|

**Race & gender of def** B  M    **Victim R** BM    **Date of DP notice** 3/14/2011

involves murders allegedly orchestrated by Philadelphia drug kingpin Kaboni Savage, already serving 30 years for drug trafficking. Thirteen murders are charged, including a 2004 arson fire that killed six people, including four children - ages 15, 12, 10 and 1. The fire was set to retaliate against a federal informant who was testifying against Savage. Lewis was tried for a 2001 Philadelphia murder and was acquitted. Kaboni Savage is charged in twelve murders, Merritt in six, Kidada Savage in six involving the arson and Northington in two. All involved are black, except one victim, who is an Hispanic male. The trial court rejected a claim that Northington is intellectually disabled.

| McCluskey, John Charles | D. NM No. 1:10-CR-02734 |
|---|---|

| Life sentence from jury | | Name of AG | Holder |
|---|---|---|---|

**Race & gender of def** W  M    **Victim R** WF WM    **Date of DP notice** 1/26/2012

two carjacking gun murders of a just retired married couple by escaped convicts. All involved are white.

| Salad, Ahmed Muse | E.D. VA No. 2:11CR34 |
|---|---|

| Life sentence from jury | | Name of AG | Holder |
|---|---|---|---|

**Race & gender of def** B  M    **Victim R** WF WM    **Date of DP notice** 4/17/2012

four 2011 terrorism murders by Somali pirates, charged with murder and kidnapping. The boat's owners and another white couple who were guests were shot to death before troops could board the boat.

| Beyle, Abukar Osman | E.D. VA No. 2:11CR34 |
|---|---|

| Life sentence from jury | | Name of AG | Holder |
|---|---|---|---|

**Race & gender of def** B  M    **Victim R** WF WM    **Date of DP notice** 4/17/2012

four 2011 terrorism murders by Somali pirates, charged with murder and kidnapping. The boat's owners and another white couple who were guests were shot to death before troops could board the boat.

| Abrar, Shani Nurani Shiekh | E.D. VA No. 2:11CR34 |
|---|---|

| Life sentence from jury | | Name of AG | Holder |
|---|---|---|---|

**Race & gender of def** B  M    **Victim R** WF WM    **Date of DP notice** 4/17/2012

four 2011 terrorism murders by Somali pirates, charged with murder and kidnapping. The boat's owners and another white couple who were guests were shot to death before troops could board the boat.

**Authorized Federal Capital Prosecutions Resulting in a Life Sentence - 6/3/2015**

| Candelario-Santana, Alexis | | | D. PR No. 3:09-CR-00427-JAF | |

| Life sentence from jury | | | | **Name of AG** | Holder |

**Race & gender of def** H  M    **Victim R**  HF HM    **Date of DP notice** 7/8/2012

twenty RICO, gun murders, including the October 17, 2009 "Tombola Massacre" where eight people were killed and twenty wounded in a shooting at a bar, including an unborn child. Candelario-Santana has 13 prior murder convictions. All involved are Hispanic. The trial court rejected a claim that Alexis Candelario-Santana is intellectually disabled.

| Briseno, Juan | | | N.D. IN No. 2:11CR077 | |

| Life sentence from jury | | | | **Name of AG** | Holder |

**Race & gender of def** H  M    **Victim R**  BM HM    **Date of DP notice** 3/6/2013

six RICO gun murders by the gang "Imperial Gangsters," three in 2008 and three in 2010. Briseno was charged in six murders, Feliciano in two and Torres in one. Briseno was convicted of five murders. Briseno is Hispanic. The victims were black and Hispanic.

| Jimenez-Bencevi, Xavier | | | D. PR No. 3:12-CR-00221-JAF | |

| Life sentence from jury | | | | **Name of AG** | Holder |

**Race & gender of def** H  M    **Victim R**  HF    **Date of DP notice** 12/7/2012

a 2010 gun murder of a female witness, allegedly arranged by a mother and son. The triggerman, Jiminez-Bencevi, was authorized for a capital prosecution. He committed a prior murder. All involved are Hispanic.

**Fell Motion Appendix0143**

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| Chandler, David Ronald | N.D. AL No. 90-CR-H-266-E |
|---|---|

| Clemency | | **Name of AG** Barr |
|---|---|---|

**Race & gender of def** W  M   **Victim R** WM   **Date of DP notice** 1/29/1991

a white Alabama marijuana grower was sentenced to death for the murder for hire of a subordinate in his drug ring.  The triggerman in the killing was granted immunity in exchange for his testimony, later recanted, that Chandler offered him $500 for the murder.  Insisting on his innocence, Chandler refused a pretrial plea offer of life imprisonment.  Chandler's convictions and death sentence were affirmed by a panel of the Eleventh Circuit in mid-1993.  996 F.2d 1073 (11th Cir. 1993), cert. denied, 114 S.Ct. 2724 (1994).  He  filed a motion to vacate his convictions under 28 U.S.C. § 2255, and an execution date originally set for March 31, 1995, was stayed by the District Court.  After several evidentiary hearings, 950 F.Supp. 1545 (N.D.AL1996), the District Court denied relief.  957 F.Supp. 1505 (N.D. AL 1997).  A panel reversed, 193 F.3d 1297 (11th Cir. 1999) but the en banc court decided that Chandler received effective assistance of counsel in a 6-5 vote.  218 F.3d 1305.  On January 20, 2001, President Clinton granted clemency.

| Johnson, Corey | E.D. VA No. 3-92-CR-68 |
|---|---|

| Death row - 2255 | | **Name of AG** Barr |
|---|---|---|

**Race & gender of def** B  M   **Victim R** BF BM   **Date of DP notice** 5/1/1992

three of four young black inner-city gang members in Richmond, Virginia, who were sentenced to death in 1993, for their roles in eleven crack-related murders.  The trial of a fourth defendant, Vernon Thomas, was severed.   After the completion of all legal appeals, a May 2006 execution date was stayed pending the outcome of lethal injection litigation in the DC Circuit Court.  There is substantial evidence of intellectual disability but all such claims to date have been rejected.

| McCullah, John Javilo | E.D. OK CR No. 1:92-032-S |
|---|---|

| Death Sentence Vacated and Authorization Withdrawn and Authorization Not | | **Name of AG** Barr and Holder |
|---|---|---|

**Race & gender of def** W  M   **Victim R** WM   **Date of DP notice** 9/11/1992

two white and one Hispanic defendants were tried jointly in connection with the drug- related intrastate kidnap/murder of a Muskogee, Oklahoma auto dealership employee. The two capitally-charged "managers" of the drug enterprise, co-defendants Hutching and Molina, received life sentences from the jury, while the third defendant, McCullah (who, unlike the bosses, had been present at the killing) was sentenced to death in 1993.  United States v. McCullah, 76 F.3d 1087 (10th Cir. 1996) ordered a new penalty hearing due to introduction of an involuntary statement and double counting of aggravating circumstances.  Rehearing en banc was denied by a 6 to 6 vote,  87 F.3d 1136 (6/26/96), and the government declined to seek review in the Supreme Court. The government finally withdrew its request for the death penalty while McCullah's resentencing was pending.  The victim was white.

In 2007, McCullah allegedly killed his cellmate in Florida, USP Coleman, after the assault/murder was arranged by two guards.  Both McCullah and his deceased cellmate are white.  One guard was convicted of murder and sentenced to life in prison.

| Roane, James | E.D. VA No. 3-92-CR-68 |
|---|---|

| Death row - 2255 | | **Name of AG** Barr |
|---|---|---|

**Race & gender of def** B  M   **Victim R** BF BM   **Date of DP notice** 5/1/1992

three of four young black inner-city gang members in Richmond, Virginia, who were sentenced to death in 1993, for their roles in eleven crack-related murders.  The trial of a fourth defendant, Vernon Thomas, was severed.   A May 2006 execution date was stayed pending the outcome of lethal injection litigation in the DC Circuit Court.

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| | |
|---|---|
| Tipton, Richard | E.D. VA No. 3-92-CR-68 |

Death row - 2255    **Name of AG** Barr

**Race & gender of def** B  M    **Victim R** BF BM    **Date of DP notice** 5/1/1992

three of four young black inner-city gang members in Richmond, Virginia, who were sentenced to death in 1993, for their roles in eleven crack-related murders.  The trial of a fourth defendant, Vernon Thomas, was severed.   A May 2006 execution date was stayed pending the outcome of lethal injection litigation in the DC Circuit Court.

| | |
|---|---|
| Garza, Juan Raul | S.D. TX CR No. 93-009 |

Executed    **Name of AG** Barr

**Race & gender of def** H  M    **Victim R** HF HM    **Date of DP notice** 1/7/1993

an Hispanic marijuana distributor was sentenced to death by a jury in 1993 in Brownsville, Texas, in connection with the murders of three other drug traffickers in the Brownsville area, two Hispanic and one Anglo.  Garza ordered two murders and killed a third person himself.  The government introduced 5 unadjudicated murders in aggravation, 4 were in Mexico.  All but one victim were males.  Murder for hire was an aggravating circumstance.  Attorney General Barr authorized the prosecution to seek the death penalty in December, 1992.  Mr. Garza's death sentence was affirmed.  United States v. Flores, 63 F.3d 1342 (5th Cir. 1995), and a petition for writ of certiorari was denied by the  Supreme Court in 1996.  Habeas relief was denied in 1998-1999.   Garza's first two execution dates in 2000 were postponed by President Clinton pending a Department of Justice study of racial and geographic disparities in the federal death penalty, the second time on December 7, 2000 for 6 months, until June 2001.  He was executed on June 19, 2001.

| | |
|---|---|
| Chanthadara, Bountaem | D. KS CR No. 94-10129-01 |

Death Sentence Vacated and Authorization Withdrawn    **Name of AG** Reno

**Race & gender of def** A  M    **Victim R** AF    **Date of DP notice** 6/2/1995

a "Hobbs Act" case, in which five defendants of Asian descent (Laotian and Vietnamese) were charged with the armed-robbery of a Chinese restaurant and killing co-proprietor Barbara Sun, in Wichita, Kansas in 1994.  Federal jurisdiction was based on the Hobbs Act, 18 U.S.C. § 1951, prohibiting obstruction of inter-state commerce.  The Attorney General's approval of this capital prosecution for Chanthadara and Phouc Nguyen was announced in 1995.  It marked the first time that the Hobbs Act was used to federalize as a capital case a prosecution for murder committed during a commercial robbery.  Chanthadara beat and shot the victim in an attempt to get her to open a safe the female proprietor could not.  Nguyen was present.  Chanthadara's jury recommended the death penalty in 1996.  After a separate trial, Phouc Nguyen's jury sentenced him to life imprisonment.  The Eighth Circuit reversed Chanthadara's death sentence on November 1, 2000. 230 F.3d 1237.  He was sentenced to life in prison in 2002.

| | |
|---|---|
| Davis, Len | E.D. LA CR No. 94-381 |

Death row - 2255    **Name of AG** Reno

**Race & gender of def** B  M    **Victim R** BF    **Date of DP notice** 10/6/1995

civil rights - an African- American New Orleans police officer, Len Davis, who was being investigated (and tape recorded) in a drug conspiracy case.  Davis ordered the murder of a 32 year old mother of three, Kim Groves, who witnessed his beating of a witness in an unrelated incident.  Groves had filed a brutality complaint against Davis.  Paul Hardy, 27, carried out the killing.  Murder for hire is alleged as an aggravating circumstance.  Davis, then Hardy, were sentenced to death by a jury in 1996, which heard sequential penalty phase presentations.  Davis did not attend his.  The Fifth Circuit reversed one of the convictions and ordered a new sentencing trial on the remaining convictions in 1999. 185 F.3d 407.  On remand the District Court dismissed the Notice of Intent to Seek the Death Penalty based on *Ring v. Arizona*.  This ruling was reversed by the Fifth Circuit. 380 F. 3rd 821.  Davis was convicted and resentenced to death in 2005.  A 28 USC §2255 motion is pending.

**Fell Motion Appendix0145**

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| | |
|---|---|
| Hall, Orlando C. | N.D. TX No. 4:94-CR-121-Y |

Death row - 2255                                          **Name of AG**   Reno

**Race & gender of def**  B  M    **Victim R**    BF   **Date of DP notice**  2/23/1995

the first approval of a death penalty prosecution under the 1994 Federal Death Penalty Act.  Hall, and his co-defendant, Webster, both African-American, were charged in Fort Worth, Texas, with the abduction, sexual assault and beating murder of a 16-year-old black female whose older brother had allegedly stolen marijuana. In 1995, Hall was sentenced to death after the jury heard testimony from co-defendants who pled guilty and testified in return for leniency.  Expert testimony suggested the victim was still alive when buried.  After a separate trial, Bruce Webster was sentenced to death by a jury in 1996.   After the completion of all legal appeals, Hall joined the lethal injection litigation in the DC Circuit Court.

| | |
|---|---|
| Hardy, Paul | E.D. LA CR No. 94-381 |

Dismissal after notice by Judge                              **Name of AG**   Reno

**Race & gender of def**  B  M    **Victim R**    BF   **Date of DP notice**  10/6/1995

civil rights - an African- American New Orleans police officer, Len Davis, who was being investigated (and tape recorded) in a drug conspiracy case. Davis ordered the murder of a 32 year old mother of three, Kim Groves, who witnessed his beating of a witness in an unrelated incident.  Groves had filed a brutality complaint against Davis. Paul Hardy, 27, carried out the killing.  Murder for hire is alleged as an aggravating circumstance.  Davis, then Hardy, were sentenced to death by a jury in 1996, which heard sequential penalty phase presentations.  Davis did not attend his.  The Fifth Circuit reversed one of the convictions and ordered a new sentencing trial on the remaining convictions in 1999. 185 F.3d 407.  On remand, the District Court dismissed the Notice of Intent to Seek the Death Penalty based on Ring v. Arizona.  This ruling was reversed by the Fifth Circuit.  Davis was resentenced to death in 2005 at a separate trial.  The trial court found Hardy to be intellectually disabled. 762 F.Supp.2d 849 (ED LA 2010).

| | |
|---|---|
| Webster, Bruce | N.D. TX No. 4:94-CR-121-Y |

Death row - 2255                                          **Name of AG**   Reno

**Race & gender of def**  B  M    **Victim R**    BF   **Date of DP notice**  2/23/1995

the first approval of a death penalty prosecution under the 1994 Federal Death Penalty Act. Orlando Hall, and his co-defendant, Webster, both African-American, were charged in Fort Worth, Texas, with the abduction, sexual assault and beating murder of a 16-year-old black female whose older brother had allegedly stolen marijuana. In 1995, Hall was sentenced to death after the jury heard testimony from co-defendants who pled guilty and testified in return for leniency.  Expert testimony suggested the victim was still alive when buried.  After a separate trial, Bruce Webster was sentenced to death by a jury in 1996.  Webster is the first case in which a federal defendant has been sentenced to death after attempting to establish his ineligibility for the death penalty by reason of intellectual disability.  After completion of all legal appeals, an April 2007 execution date was stayed pending the outcome of lethal injection litigation in the D.C. Circuit Court. The Seventh Circuit, after the Fifth Circuit denied a similar request, is allowing the presentation of newly discovered evidence of Webster's intellectual disability.

| | |
|---|---|
| Battle, Anthony | N.D. GA No. 1:95 CR 528 |

Death row - 2255                                          **Name of AG**   Reno

**Race & gender of def**  B  M    **Victim R**    BM   **Date of DP notice**  7/26/1996

law enforcement officer victim - a black inmate with a history of psychiatric problems who was sentenced to death for the hammer-murder of an African-American guard in the Atlanta federal penitentiary.  Mr. Battle was serving a life sentence for the prior murder of his wife when the killing occurred.  In 1997 a federal jury rejected Mr. Battle's insanity defense and returned a death sentence after three hours' deliberation.  After the completion of all legal appeals, 173 F.3d 1343 (1999), 419 F.3d 1292 (2005), Battle joined the lethal injection litigation in the D.C. Circuit Court.

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| Jones, Louis | N.D. TX No. 6-95-CR-0015-C |
|---|---|

| Executed | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** B   M      **Victim R** WF      **Date of DP notice** 9/13/1995

a 46 year old African-American -- a retired 22-year decorated Persian Gulf veteran--was convicted of the abduction murder of a young white female soldier.  The victim's family traveled to Washington to seek DOJ approval of the death request.  The trial occurred in Lubbock on change of venue, after thousands of San Angelo residents signed petitions calling for the death penalty.  The defendant was sentenced to death in 1995, the Fifth Circuit affirmed in 1998, but the United States Supreme Court granted review to consider issues relating to the jury's sentencing  instructions in this first case conducted under the 1994 Federal Death Penalty Act.   The Supreme Court affirmed the Fifth Circuit's decision in 1999. 527 U.S. 373.  A post-conviction action was denied, as was a successor petition raising a Ring issue.  President Bush denied clemency the same evening as announcing the second Gulf War.  Jones was executed the next morning, March 18, 2003.

| McVeigh, Timothy James | D. CO No. 96-CR-68-M |
|---|---|

| Executed | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** W   M      **Victim R** WF +      **Date of DP notice** 10/20/1995

the 1995 Oklahoma City bombing in which 160 lost their lives, including 19 children.  The President and Attorney General immediately announced that the death penalty would be sought, even before any suspects were identified.  After a change of venue, a Denver jury convicted McVeigh and voted to sentence him to death in 1997.   Appeal to the United States Court of Appeals for the Tenth Circuit was quickly denied in 1998, 153 F.3d 1166, as was a post-conviction petition. 118 F.Supp.2d 1137 (D. CO 2000).  Thereafter, Mr. McVeigh decided to abandon further appeal.  His execution was scheduled for May 16, 2001, was delayed by the Attorney General upon the discovery of over 6,000 pages of FBI reports not disclosed to the defense.  He was executed on June 11, 2001.

| Hammer, David Paul | M.D. PA No. 4-96-CR-239 |
|---|---|

| Life Sentence from Judge | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** W   M      **Victim R** WM      **Date of DP notice** 4/9/1997

a strangulation murder of a federal prison inmate by his cellmate.  The defendant and the victim are white.  Hammer was serving a 1200+ year Oklahoma state sentence at the time of the homicide, but had been incarcerated in the federal penitentiary at Allenwood, Pennsylvania.  Mr. Hammer abandoned his direct appeal. 226 F.3d 229 (3d Cir. 2000).  An execution date was set for November 15, 2000, but was vacated when Mr. Hammer decided (and was allowed) to file a post-conviction action.  Penalty phase relief was granted in December 2005, and upheld on appeal.  404 F.Supp.2d 676 (MD PA 2005).  A life sentence was imposed at his resentencing bench trial.

| Johnson, Darryl Alamont | N.D. IL No. 96 CR 379 |
|---|---|

| Death Sentence Vacated and Authorization Withdrawn | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** B   M      **Victim R** BM      **Date of DP notice** 10/1/1996

a "Gangster Disciple" drug conspiracy/racketeering murder case. Two homicides were charged, one of a government confidential informant. Co-defendant Quan Ray committed two murders on orders of Mr. Johnson. Four additional homicides were alleged in aggravation. Murder for hire is alleged as an aggravating circumstance. Ray was sentenced to life in prison at a separate trial.  Johnson's jury recommended a sentence of death in 1997.  Following a 2010 grant of sentencing relief, the government withdrew the notice of intent to seek the death penalty in 2012.

**Fell Motion Appendix0147**

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| | |
|---|---|
| Paul, Jeffrey Williams | W.D. AR No. 6:96CR60022 |

Death row - 2255                                    **Name of AG**   Reno

**Race & gender of def**  W  M      **Victim R**  WM      **Date of DP notice**  1/23/1997

Paul is one of two white teenagers charged with the robbery-murder of an elderly white National Parks employee in Hot Springs National Park (USPS), federal land within the city of Hot Springs, Arkansas.  A Hot Springs federal jury unanimously imposed a life sentence on co-defendant Trinity Ingle on June 6, 1997.  Paul's separate trial began on June 17, 1997, and ended with a death sentence on June 25, 1997.  All involved are white.  A 28 USC §2255 motion was denied without an evidentiary hearing, a ruling affirmed by the Eighth Circuit.  After his initial request to join the lethal injection litigation in the DC District was denied, Paul successfully appealed to the DC Circuit Court.

| | |
|---|---|
| Allen, Billie Jerome | E.D. MO No. 4:97 CR 0141 ERW (TCM) |

Death row - 2255                                    **Name of AG**   Reno

**Race & gender of def**  B  M      **Victim R**  WM      **Date of DP notice**  8/1/1997

two black defendants charged with the fatal shooting of a white bank guard during a robbery.  Attorney General Reno authorized the government to seek the death penalty on August 1, 1997.  After separate trials, death sentences were returned on March 10, 1998 for Allen and April 3, 1998 for Holder.  An appeal was rejected by a divided panel of the Eighth Circuit.  247 F.3d 741 (2001).  The Supreme Court remanded in light of *Ring v. Arizona*, 536 U.S. 953.  An en banc Eighth Circuit reversed the three-judge panel's grant of penalty phase relief.  357 F.3d 745, 406 F.3d 940 (2005).  A 28 U.S.C. §2255 motion was denied.  An appeal is pending.

| | |
|---|---|
| Barnette, Aquila Marcivicci | W.D. NC No. 3:97CR23-P |

Death row - 2255                                    **Name of AG**   Reno

**Race & gender of def**  B  M      **Victim R**  BF WM      **Date of DP notice**  7/15/1997

a domestic killing.  Barnette confessed to murdering a motorist during a Charlotte, North Carolina carjacking.  He drove the  victim's car to Roanoke, Virginia, where he killed his former girlfriend.  Barnette has a long history of domestic abuse of the second victim.  The defendant and the female victim are black; the carjacking victim was white.   A Charlotte, North Carolina jury imposed the death penalty in 1998.  Two years later the appeals court ordered a new sentencing trial. 211 F.3d 803 (4th Cir. 2000).  Barnette was again sentenced to death in 2002.  The United States Supreme Court, in October 2005, remanded the case to the Fourth Circuit for consideration of a Batson claim, which was ultimately denied and affirmed on appeal.  A 28 USC §2255 motion is pending.

| | |
|---|---|
| Holder, Norris G. | E.D. MO CR No. 4:97 0141 ERW (TCM) |

Death row - 2255                                    **Name of AG**   Reno

**Race & gender of def**  B  M      **Victim R**  WM      **Date of DP notice**  8/1/1997

two black defendants charged with the fatal shooting of a white bank guard during a robbery.  Attorney General Reno authorized the government to seek the death penalty on August 1, 1997.  After separate trials, death sentences were returned on March 10, 1998 for Allen and April 3, 1998 for Holder.  An appeal was denied.  247 F.3d 741 (2001).  A 2255 motion for post-conviction relief was denied, 2008 WL 2909648, 2009 WL 5030785, and an appeal is pending.

**Fell Motion Appendix0148**

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| Gabrion, Marvin | W.D. MI No. 1:99-CR-76 |
|---|---|

| Death row - 2255 | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** W  M   **Victim R**   WF   **Date of DP notice** 2/26/2001

the disappearance of an alleged rape victim before Gabrion's trial, as well as the disappearance of her 3 year old child and three men. The bound victim was found in a lake, part of federal land, the Manistee National Forest (USFS). Attorney General Ashcroft required a capital prosecution in this 18 U.S.C. §1111 case. All involved are white. After a remand to the district court for the presentation of additional evidence on the issue of subject matter jurisdiction, the Sixth Circuit found subject matter jurisdiction. After a grant of sentencing phase relief, the government sought rehearing en banc, which resulted in reversal of sentencing relief. A 28 USC §2255 motion is pending.

| Lee, Daniel Louis | E.D. AR No. LR-CR-97-243 |
|---|---|

| Death row - 2255 | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** W  M   **Victim R**   WF WM   **Date of DP notice** 3/20/1998

a RICO prosecution of an organization supposedly intent upon starting a revolution. The capital crime was the murder of a family of three (an Arkansas gun dealer, his wife and their 8 year old child) in the Fall of 1996. The defendants may have believed the gun dealer was an ATF informant. The victims were killed by duct-taping plastic bags over their heads, handcuffing the three and throwing them in a river. The defendants and the victims were white. Co-defendant Chevie Kehoe was charged in two additional murders as well. The defendants were also charged with bombing the Spokane, WA city hall. Kehoe, older, whom some considered more culpable, was first sentenced to life by the jury at a 1999 separate penalty hearing. At that point the United States Attorney attempted to withdraw the request for the death penalty. The Attorney General was unavailable, so the Deputy Attorney General declined the request. Lee was then sentenced to death. The next year the District Court ordered a new sentencing hearing for Lee. 89 F.Supp.2d 1017 (E.D. AR). That decision was reversed by the Eighth Circuit. 274 F.3d 485 (2001), which later affirmed the convictions and death sentences. A 28 U.S.C. 2255 motion and appeal were denied. Lee is currently litigating the denial of a Rule 60(b) motion.

| Stitt, Richard Thomas | E.D. VA No. 2:98CR47 |
|---|---|

| Authorization withdrawn | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** B  M   **Victim R**   BM   **Date of DP notice** 6/23/1998

three homicides and other attempted homicides committed by co-defendants on Stitt's urging. Authorization to seek the death penalty was granted by Attorney General Reno only for Stitt. Four co-defendants did not face the death penalty. Stitt received a sentence of death in 1998 after a joint trial with three of the non-capital codefendants. He has a lengthy record of assaultive conduct. An appeal was rejected by the Fourth Circuit. 250 F.3d 878 (5/25/01). Penalty phase relief was granted in 2255 review on a claim of ineffective assistance of counsel. 369 F.Supp.2d 679 (ED VA 2005). The government withdrew the notice of intent to seek the death penalty in 2010.

| Ortiz, Arboleda | W.D. MO No. 98- 00311-01/05-CR-W-2 |
|---|---|

| Death row - 2255 | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** B  M   **Victim R**   HM   **Date of DP notice** 5/19/1999

four Colombians charged in a drug related murder. The alleged ringleader, Hinestroza, was a fugitive who was eventually arrested and received a life sentence at a separate trial. The victim and his nephew (who sold cocaine for the gang) stole $240,000 from them. The defendants tied up, interrogated, duct taped and shot both victims. The nephew lived, escaped and identified the defendants. Sinisterra shot and killed one victim. Ortiz or Tello shot the surviving victim. Sinisterra and Ortiz were sentenced to death. The jury deadlocked on punishment for Tello, and he was sentenced to life in prison. Although not litigated at trial, Ortiz has a full scale I.Q. of 54. A 2255 motion for post-conviction relief was denied, after an evidentiary hearing. An appeal is pending.

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| | |
|---|---|
| Sinisterra, German | W.D. MO No. 98- 00311-01/05-CR-W-2 |

Died Before Execution                                    **Name of AG**   Reno

**Race & gender of def**  B  M     **Victim R**    HM     **Date of DP notice**  4/28/1999

four Colombians charged in a drug related murder.  The alleged ringleader, Hinestroza, was a fugitive who was eventually arrested and received a life sentence at a separate trial.  Hinestroza and his gang sold cocaine in the Kansas City area.  The victim and his nephew (who sold cocaine for the gang) stole $240,000 from them.  The defendants tied up, interrogated, duck taped and shot both victims.  The nephew lived, escaped and identified the defendants.  Sinisterra shot and killed one victim.  Ortiz or Tello shot the surviving victim.  Sinisterra and Ortiz were sentenced to death.  The jury deadlocked on punishment for Tello, and he was sentenced to life in prison.  A 2255 motion for post-conviction relief was denied without a hearing.   This ruling was reversed on appeal and remanded for an evidentiary hearing.  While the case was pending 2255 proceedings, Sinisterra died.

| | |
|---|---|
| Higgs, Dustin | D. MD CR No. PJM-98- 0502 |

Death row - 2255                                    **Name of AG**   Reno

**Race & gender of def**  B  M     **Victim R**    BF     **Date of DP notice**  10/22/1999

the January 1996 triple intrastate kidnapping/murder of three black females from D.C. Patuxent Wildlife Research Center (USFW), federal property.  Haynes, 20, confessed that he fired the shots.  He said Higgs, 26, gave him the gun and told him to do it after an argument with the women.  The defendants are African-American and were involved in another shooting six weeks before.  Haynes' jury deadlocked and he was sentenced to life in prison.  Higgs was sentenced to death by an all male jury at a separate, subsequent trial.  The government suggested a witness killing motive at this trial and alleged Higgs plotter to kill a government witness and/or his family.  He was already serving a 17 year sentence on a drug conviction.  All involved are African-American.   All post-conviction appeals have been denied.

| | |
|---|---|
| Vialva, Christopher Andre | W.D. TX No. W99CR070 |

Death row - 2255                                    **Name of AG**   Reno

**Race & gender of def**  B  M     **Victim R**  WF WM     **Date of DP notice**  2/29/2000

gun murders by Vialva, 19, Bernard, 18, and two juveniles, all with alleged gang affiliations.  These African-Americans were convicted of a 1999 18 U.S.C. § 1111 carjacking/double homicide and robbery of a young white "church" couple.  The bodies of the victims were found in the trunk of their car just inside the Fort Hood boundary, with gunshot wounds to the face and head.  The vehicle had been set on fire.  Authorities believe Vialva shot the victims.  A 2255 motion for post-conviction relief was denied.  An appeal is pending.

| | |
|---|---|
| Bernard, Brandon | W.D. TX No. W99CR070 |

Death row - 2255                                    **Name of AG**   Reno

**Race & gender of def**  B  M     **Victim R**  WF WM     **Date of DP notice**  2/29/2000

gun murders by Vialva, 19, Bernard, 18, and two juveniles, all with alleged gang affiliations.  These African-Americans were convicted of a 1999 18 U.S.C. § 1111 carjacking/double homicide and robbery of a young white "church" couple.  The bodies of the victims were found in the trunk of their car just inside the Fort Hood boundary, with gunshot wounds to the face and head.  The vehicle had been set on fire.  Authorities believe Vialva shot the victims.  A 2255 motion for post-conviction relief was denied.  An appeal is pending.

**Fell Motion Appendix0150**

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| Nelson, Keith D. | W.D. MO No. 99-CR-303-1 |
|---|---|

| Death row - 2255 | **Name of AG** Reno |
|---|---|

**Race & gender of def** W  M   **Victim R** WF   **Date of DP notice** 3/20/2000

the interstate 1999 kidnapping and murder of a ten year old girl, in violation of 18 U.S.C. §1201. Both the defendant and the victim are white.  A 28 U.S.C. §2255 motion was denied without an evidentiary hearing or the grant of a Certificate of Appealability.  The Eighth Circuit reversed the district court and remanded the case for an evidentiary hearing, after which the §2255 motion was again denied.  An appeal is pending.

| Johnson, Angela | N.D. IA No. 3:01-CR-03046-MWB |
|---|---|

| Authorization withdrawn | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** W  F   **Victim R** WF WM   **Date of DP notice** 4/25/2002

five murders in 1993 of a potential witness, his girlfriend (both meth dealers) and two daughters, in a drug conspiracy case.  The fifth victim is Angela Johnson's former boyfriend, another dealer turned informant, who disappeared in November of 1993.  Johnson attempted suicide in jail after she was tricked by a jailhouse informant into revealing the location of the bodies. Attorney General Ashcroft rejected Honken's attempt to enter a plea  to a life sentence. Attorney General Gonzales rejected Johnson's attempt to enter a plea to a life sentence.  Finding ineffective assistance of counsel, the district court in 2012, reversed Johnson's death sentence.  860 F.Supp.2d 663 (ND IA 2012).  A resentencing trial was scheduled for 2015 but Attorney General Holder withdrew the Notice of Intent to seek the death penalty.  All involved are white.

| Honken, Dustin | N.D. IA No.3:01-CR-03047-MWB |
|---|---|

| Death row - 2255 | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** W  M   **Victim R** WF WM   **Date of DP notice** 6/10/2003

five murders in 1993 of a potential witness, his girlfriend and two daughters, in a drug conspiracy case.  The fifth victim is Angela Johnson's former boyfriend, who disappeared in November of 1993.  Johnson attempted suicide in jail after she was tricked by a jailhouse informant into revealing the location of the bodies.  Attorney General Gonzales rejected Johnson's attempt to enter a plea to a life sentence.  All involved are white.  A 28 U.S.C. 2255 motion was denied.  An appeal is pending.

| Jackson, Richard | W.D. NC No. 00-CR-74 |
|---|---|

| Death row - 2255 | **Name of AG** Reno |
|---|---|

**Race & gender of def** W  M   **Victim R** WF   **Date of DP notice** 12/4/2000

a capital defendant in state court who pled guilty to second degree murder, intrastate kidnaping and rape of a 22 year old woman jogging Holloween morning in the Pisgah National Forest (USFS).  Jackson received a 25 - 31 years sentence in state court.  He was charged in federal court in another case after the North Carolina Supreme Court reversed his original death sentence and conviction, and suppressed his confession on Edwards grounds.  Jackson was 31 years old.  The victim was tied with duct tape to a tree on federal land in the Bent Creek Recreation Area in the Pisgah National Forest off Blue Ridge Parkway, on federal land, raped and shot one time.  All involved are white.  All post-conviction motions have been denied.

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| Fell, Donald | D. VT 2:01-CR-12-01 |
|---|---|

Awaiting resentencing or retrial     **Name of AG**  Ashcroft

**Race & gender of def**  W  M     **Victim R**  WF WM     **Date of DP notice**  1/30/2002

three murders, a carjacking and an interstate kidnapping.  The defendants were high on crack  when an argument erupted with Fell's mother and a male friend.  The male friend's throat was slashed by Fell and Fell's mother stabbed to death by Lee, the co-defendant.  The two then carjacked a 53 year old grandmother at a supermarket.  Crossing into New York, they told her to get out and she attempted to run into the woods.  They followed her and allegedly killed her by kicking her.  The defendants both made incriminating statements.  They were arrested three days later in Arkansas.  All involved are Caucasian.  Lee committed suicide in 2001 by hanging himself in jail. Authorities said it was an accident.  Attorney General Ashcroft rejected a plea agreement stipulating life in prison, and required a capital prosecution.  The Attorney General also rejected a bench trial.  The court declared the FDPA unconstitutional.  217 F.Supp.2d 469 (2002).  This ruling was reversed by the Second Circuit.  360 F.3d 135 (2004).  The direct appeal was denied.  531 F.3d 197 (2008).  A 28 USC 2255 motion was granted on July 24, 2014.  The retrial is scheduled for 7/1/2016.

| Robinson, Julius Omar | N.D. TX No. 00-CR-260 |
|---|---|

Death row - 2255     **Name of AG**  Ashcroft

**Race & gender of def**  B  M     **Victim R**  HM BM     **Date of DP notice**  10/19/2001

a Fort Worth drug trafficking prosecution of the leaders of an Arlington-based drug ring responsible for three murders. The first killing involved a 1998 shooting of an African-American, mistaken for the intended victim, in a car traveling on Cential Expressway.  A second 1999 killing was of an Hispanic person, mistaken for the intended victim, his brother, who allegedly sold a fake kilo of cocaine to Robinson. Britt was the triggerman in the third 1999 killing of another drug dealer, a  Mexican national, who had stolen 20 kilos from a Laredo drug kingpin. Robinson was following in another car. Britt and Robinson, African-American, both allegedly fired weapons in the first and second incidents. Attorney General Ashcroft rejected a plea agreement involving a life sentence.  Co-defendant Britt was sentenced to life in prison at a separate trial.   Robinson has filed a lethal injection lawsuit in the DC Circuit Court.  All post-conviction motions have been denied.

| Agofsky, Shannon Wayne | E.D. TX 1:03-CR 173 |
|---|---|

Death row - 2255     **Name of AG**  Ashcroft

**Race & gender of def**  W  M     **Victim R**  WM     **Date of DP notice**  1/30/2004

Agofsky, along with his brother, was serving a life sentence for the 1992 abduction and murder of a president of a financial institution. Agofsky took him to the institution and forced him to open the vault and then killed him.  In 2004, Agofsky was  convicted of beating, kicking and stomping to death a fellow inmate at a federal prison in Beaumont, Texas.  The victim was serving a term for arson and firearms. The government alleged this was a premeditated prison "gang" hit. All involved are white.  This was the fourth murder at Beaumont FCI since March of 1997.  The Fifth Circuit affirmed.  458 F.3d 369.  A 28 U.S.C. §2255 motion is pending.

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| | |
|---|---|
| Sampson, Gary | D. MA No. 01-CR-10384 |

Awaiting resentencing or retrial                                    **Name of AG**   Ashcroft

**Race & gender of def**   W   M       **Victim R**   WM       **Date of DP notice**   11/19/2002

Sampson plead guilty to two separate car-jacking murders in Massachusetts that took place three days apart in the summer of 2001. The victims were a 69-year old grandfather and a 19-year old college student. Sampson confessed to those crimes as well as to a strangulation murder in New Hampshire that he committed three days after the second carjacking murder, and to a subsequent unsuccessful attempted carjacking in Vermont. The crimes all occurred within an 8-day period. He confessed, as well, to having committed a series of 5 bank robberies in North Carolina prior to coming to New England. The day before he committed the first murder, Sampson had called the FBI in Boston in an effort to surrender on the bank robberies. The FBI accidentally or deliberately disconnected the call or chose not to follow up. A 28 U.S.C. §2255 motion was granted. A government interlocutory appeal was denied. 2013 WL 3828663 (1st Cir. 2013). All involved are white. The resentencing trial is scheduled for September 2015.

| | |
|---|---|
| Purkey, Wesley Ira | W.D. MO No. 01-CR-308 |

Death row - 2255                                    **Name of AG**   Ashcroft

**Race & gender of def**   W   M       **Victim R**   WF       **Date of DP notice**   11/25/2002

the 1998 interstate kidnapping (from Missouri to Kansas), rape and murder of a 17 year old high school girl, whose body was then dismembered and burned. Purkey is serving a prison sentence for another killing. Previously, Purkey was paroled after 17 years for shooting a man. Both victim and defendant are white. All post-conviction motions have been denied.

| | |
|---|---|
| Fields, Sherman Lamont | W.D. TX No. 01-CR-164 |

Death row - 2255                                    **Name of AG**   Ashcroft

**Race & gender of def**   B   M       **Victim R**   BF       **Date of DP notice**   5/23/2003

a jail escape and a domestic murder. The 2001 domestic killing/gun murder in Waco of a former girlfriend and mother of three young children, by a twice convicted felon who escaped from jail. Initially, the jury was deadlocked on punishment. Fields was a federal prisoner who bribed a jail guard to leave a door unlocked. Fields represented himself during the guilt phase. All involved are black. An appeal was denied. 549 F.3d 963 (2007). All post-conviction motions have been denied.

| | |
|---|---|
| Mitchell, Lezmond | D. AZ No. 01-CR-1062 |

Death row - 2255                                    **Name of AG**   Ashcroft

**Race & gender of def**   NA M       **Victim R**   NAF       **Date of DP notice**   9/13/2002

murder on Navajo tribal land. All involved are Native American. The defendant and a juvenile got a ride from a woman and her 9 year old granddaughter, killed both and stole the car supposedly for use in an armed robbery. Each victim was stabbed at a separate location. In an attempt to hide the victim's identity, the hands and heads of the victims were removed. Attorney General Ashcroft required a capital prosecution against Mitchell under a carjacking theory -- although the Navajo tribe has not "opted in" to the federal death penalty. A 28 U.S.C. §2255 motion was denied. An appeal is pending.

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| Mikos, Ronald | N.D. IL No. 02-CR 137 |
|---|---|

| Death row - 2255 | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** W  M     **Victim R**     WF     **Date of DP notice** 12/16/2002

involves the § 1512 murder on January 27, 2002,of a government witness to prevent her testimony before the grand jury.  Mikos, a podiatrist, and another are accused in many counts of defrauding Medicare, HCFA and HHS.  When the victim was served with a federal grand jury subpoena for her testimony regarding treatment/non-treatment by Mikos, he allegedly tried to persuade the victim to lie to the grand jury either by claiming lack of memory or stating that the surgery had been performed.  When she refused he allegedly shot her.  All involved are white.  Direct appeal was denied.  A 28 USC 2255 motion is pending.

| Fulks, Chadrick | D. SC No. 02-CR-992 |
|---|---|

| Death row - 2255 | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** W  M     **Victim R**     WF     **Date of DP notice** 9/12/2003

carjacking and interstate kidnapping from a WalMart parking lot of a woman whose body was never recovered.  A video camera captured part of the abduction.  Witnesses saw her with the defendants later that day in North Carolina.  The defendants had escaped 10 days earlier from a Kentucky jail.  Basham was arrested three days later after allegedly trying to hijack a car at an Ashland, Kentucky mall.  He has been charged with attempted murder and robbery.  Fulks was arrested six days later, in Goshen, Indiana.  The defendants are also accused of kidnapping a Kentucky man and leaving him tied to a tree in Evansville, Indiana.  Basham has told the FBI that he and Fulks abducted another victim, a 19-year-old West Virginia college student, three days before the South Carolina abduction.  Her car was found burned in West Virginia.  A separate federal capital indictment was filed in that state and both defendants pled guilty and were sentenced to life in prison.  All involved are white.  All post-conviction motions have been denied.

| Basham, Branden | D. SC No. 02-CR-992 |
|---|---|

| Death row - 2255 | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** W  M     **Victim R**     WF     **Date of DP notice** 9/12/2003

carjacking and interstate kidnapping from a WalMart parking lot of a woman whose body was never recovered.  A video camera captured part of the abduction.  Witnesses saw her with the defendants later that day in North Carolina.  The defendants had escaped 10 days earlier from a Kentucky jail.  Basham was arrested three days later after allegedly trying to hijack a car at an Ashland, Kentucky mall.  He has been charged with attempted murder and robbery.  Fulks was arrested six days later, in Goshen, Indiana.  The defendants are also accused of kidnapping a Kentucky man and leaving him tied to a tree in Evansville, Indiana.  Basham has told the FBI that he and Fulks abducted another victim, a 19-year-old West Virginia college student, three days before the South Carolina abduction.  Her car was found burned in West Virginia.  A separate federal capital indictment was filed in that state and both defendants pled guilty and were sentenced to life in prison .  All involved are white.  A direct appeal was denied.  561 F.3d 302 (4th Cir. 2009).  A 28 USC 2255 motion was denied.  An appeal is pending.

| LeCroy, William Emmett | N.D. GA No. 02-CR-38 |
|---|---|

| Death Row - 2255 | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** W  M     **Victim R**     WF     **Date of DP notice** 12/20/2002

a carjacking murder.  The victim, a nurse practitioner, came home, was surprised inside her home, bound, raped, stabbed to death in her bedroom.  LeCroy took car keys from her purse and then stole her Ford Explorer.  He was arrested two days later in Minnesota trying to enter Canada with the victim's SUV.  All involved are white.  His direct appeal was denied. 441 F.3d 914 (11th Cir. 2006).  All post-conviction motions have been denied.

**Fell Motion Appendix0154**

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| Mikhel, Iouri | C.D. CA CR No. 02-220 (A)-NM |
|---|---|

| Death row - 2255 | | Name of AG | Ashcroft |
|---|---|---|---|

Race & gender of def  W  M   Victim R  WF WM   Date of DP notice  8/3/2004

five kidnapping ransom murders by the Russian mob. Wealthy Russian immigrants were kidnapped, held for ransom, murdered and their bodies dumped in a reservoir. 1.2 million was collected in ransom. All involved are Caucasian. Mikhel and Kadamovas are charged in four, the others in two, except Krylov, who is charged in three murders. The indictment charged hostage taking resulting in death. 18 U. S.C. §1203. Mikhel, Kadamovas and Krylov faced the death penalty. Mikhel and Kadamovas were sentenced to death. At a separate trial, Krylov was sentenced to life imprisonment after Attorney General Gonzales rejected an offer to plead guilty. A direct appeal is pending.

| Kadamovas, Jurijus | C.D. CA CR No. 02-220 (A)-NM |
|---|---|

| Death row - Appeal | | Name of AG | Ashcroft |
|---|---|---|---|

Race & gender of def  W  M   Victim R  WF WM   Date of DP notice  8/3/2004

five kidnapping ransom murders by the Russian mob. Wealthy Russian immigrants were kidnapped, held for ransom, murdered and their bodies dumped in a reservoir. 1.2 million was collected in ransom. All involved are Caucasian. Mikhel and Kadamovas are charged in four, the others in two, except Krylov, who is charged in three murders. The indictment charged hostage taking resulting in death. 18 U. S.C. §1203. Mikhel, Kadamovas and Krylov faced the death penalty. Mikhel and Kadamovas were sentenced to death. At a separate trial, Krylov was sentenced to life imprisonment after Attorney General Gonzales rejected an offer to plead guilty. A direct appeal is pending.

| Corley, Odell | N.D. IN No. 02-CR-116 |
|---|---|

| Death row - 2255 | | Name of AG | Ashcroft |
|---|---|---|---|

Race & gender of def  B  M   Victim R  WF WM   Date of DP notice  8/14/2003

bank robbery and gun murders. Five people, three African-American males, one African-American female and one white woman (the pregnant girlfriend of Johnson), robbed a bank and shot to death a white female teller, while wounding another white male teller who died ten weeks after the shooting. A white male security guard was also wounded, leaving him a paraplegic. Corley, who has taken the name Nasih Khalil Ra'id, was the ring leader who burst into the bank shooting. Johnson was also a gunman. McGregor was a driver. Gay and Ramsey were some distance away. The robbery was videotaped although the gunman was in disguise. Corley's palm print was found inside the bank. Corley committed a prior murder in 1998. An appeal was denied. 519 F.3d 716 (7th Cir. 2008). A 28 USC 2255 motion is pending.

| Taylor, Rejon | E.D. TN No. 1:04-CR-00160-1 |
|---|---|

| Death row - Appeal | | Name of AG | Gonzales |
|---|---|---|---|

Race & gender of def  B  M   Victim R  WM   Date of DP notice  6/1/2006

a cross-racial interstate kidnapping, carjacking, gun murder of an Atlanta restaurant owner who was a potential witness against Taylor in an identity theft scheme. The victim was abducted in Atlanta and killed in Tennessee. Fearing prosecution, the defendants robbed, kidnapped and threatened the deceased who was shot and killed while trying to escape. Matthews fired also and was himself accidentally shot by Taylor. Taylor fired the fatal shots. Attorney General Gonzales required a capital prosecution after Taylor attempted to escape from jail. The defendants are black, the victim white. A direct appeal is pending.

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| Barrett, Kenneth Eugene | E.D. OK CR No. 04-100-M-S |
|---|---|

| Death row - 2255 | **Name of AG** Gonzales |
|---|---|

**Race & gender of def** W  M     **Victim R** WM     **Date of DP notice** 2/15/2005

law enforcement officer victim.  Barrett lived in a small, rural, self-built cabin without electricity and running water.  A "no-knock" warrant was issued based on allegations that he was a drug manufacturer/dealer, a gun owner and had previously made statements about killing law enforcement officers.  During a late night raid, Barrett grabbed a gun and started shooting at an unmarked Ford Bronco approaching the cabin.  The police shot back and Barrett was wounded.  A state law enforcement officer was killed.  There are numerous drug-related charges in the complaint.  Barrett was tried twice in state court - the first trial resulting in a hung jury and the second resulting in manslaughter and assault with intent to kill convictions.  All involved are white.  His conviction and death sentence were affirmed on direct appeal.  496 F.3d 1079 (10th Cir. 2007).  A 28 U.S.C. §2255 motion was denied.  An appeal is pending.

| Bolden, Robert, Sr. | E.D. MO No. 4:02-CR 0557 CEF (AGF) |
|---|---|

| Death row - 2255 | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** B  M     **Victim R** WM     **Date of DP notice** 10/7/2003

2002 bank robbery murder.  18 U.S.C. §§924(c), 1111 and 2113.  The victim was a white security guard, the son of a police officer, who encountered three robbers in the parking lot of the Bank of America.  The defendants are African-American.  Only Bolden faced the death penalty.   Bolden's conviction and death sentence were affirmed on appeal.  545 F.3d 609 (8th Cir. 2008).  A 28 USC §2255 motion is pending.

| Brown, Meier Jason | S.D. GA CR No. 403-01 |
|---|---|

| Death row - 2255 | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** B  M     **Victim R** WF     **Date of DP notice** 5/5/2003

the stabbing murder of a United States Postal Service employee during a robbery at a United States Post Office.  Brown confessed and blood was found on his jacket and bike. The victim is white and the defendant is black.  She was stabbed 10 times.  There was a conditional plea agreement specifying a life sentence but Attorney General Ashcroft rejected it and required a capital trial.  All post-conviction motions have been denied.

| Bourgeois, Alfred | S.D. TX CR No. 02-216 |
|---|---|

| Death row - 2255 | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** B  M     **Victim R** BF     **Date of DP notice** 7/23/2003

killing on federal land - a two year old child who died from "shaken baby syndrome".  The baby was found unresponsive beside her father's tractor-trailer.  Bourgeois and his wife told authorities the toddler had fallen out of the cab while they were making a delivery at Naval Air Station Corpus Christi.  The toddler had seven major hemorrhages - two behind her right ear, two above her right eye and three in the back of her skull. The pathologist who examined the toddler's body called it "one of the worst cases of child abuse she'd ever seen."  Bourgeois's wife and his 7-year-old daughter alleged Bourgeois had abused the toddler before.   "(Bourgeois) hit her as hard as he would hit another man," the wife told the FBI, according to an affidavit.  All involved are African-American.  The death sentence was affirmed on appeal.  423 F.3d 501 (5th Cir. 2005).  A 28 USC §2255 motion was rejected.  All post-conviction motions have been denied.

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| Fields, Edward | E.D. OK No. 6:03-CR-00073 |
|---|---|

Death row - 2255    **Name of AG**  Ashcroft

**Race & gender of def**  W   M    **Victim R**  WF WM    **Date of DP notice**  3/15/2004

a robbery and gun murder of a married couple on federal land in the Winding Stair Campgrounds in the Quachita National Forest (USFS). All involved are white. Fields has no prior criminal record, a good military record and a history of intellectual disability. Fields had been living in the forest. The murders occurred around July 10, 2004. Fields, a former prison guard, went on a shopping spree with the victim's credit cards. He confessed expressing remorse. Fields pled guilty and was sentenced to death by jury. A direct appeal was denied. A 28 USC 2255 motion is pending.

| Lighty, Kenneth Jamal | D. MD No. 8:03-CR-00457-PJM |
|---|---|

Death row - 2255    **Name of AG**  Ashcroft

**Race & gender of def**  B   M    **Victim R**  BM    **Date of DP notice**  12/28/2004

three defendants, and possibly another, kidnapped the teenage victim in D.C., transported him to Maryland, where he was shot to death. The victim was the son of a Washington police officer. Lighty is charged as the shooter, and the other two with assisting him. All involved are African-American. Co-defendant Wilson was convicted of conspiracy to kidnap but acquitted of kidnapping and weapons charges. A direct appeal was denied. A 28 USC 2255 motion is pending.

| Johnson, John | E.D. LA No. 2:04-CR-00017-HGB-SS |
|---|---|

Authorization withdrawn    **Name of AG**  Ashcroft

**Race & gender of def**  B   M    **Victim R**  WM    **Date of DP notice**  2/1/2005

bank robbery gun murder of an off-duty police officer security guard by convicted felons. Jones, Johnson and Smith entered the Iberia Bank and Smith disarmed the security guard. Another guard, hidden from view, opened fire, wounding Smith and Johnson, who was unable to flee the bank. Johnson returned fire, killing one guard and wounding another. Jones fled the bank but all three defendants were arrested within moments. The defendants are black and were over 50 years old. They each have criminal records including bank robbery. The deceased guard is white , the wounded guard is black. While pending retrial, the government withdrew authorization.

| Rodriguez, Alfonso, Jr. | D. ND No. 04-CR-55 |
|---|---|

Death row - 2255    **Name of AG**  Ashcroft

**Race & gender of def**  H   M    **Victim R**  WF    **Date of DP notice**  10/28/2004

the interstate kidnapping murder of a 22 year old white female victim who disappeared from a Grand Forks shopping mall parking lot on November 22, 2003. Her body was found April 17, 2004. Rodriguez, 53, is a convicted sex offender, who had been released from prison in May of 2003 after serving a 23 year sentence for attempted kidnapping, assault and other convictions for attempted rape and aggravated rape. Before he was released, Rodriguez requested help from a Minnesota prison psychologist. The Hispanic defendant allegedly crossed state lines while committing the crime. This was the first death sentence in North Dakota in 100 years. A direct appeal was denied. A 28 USC 2255 motion is pending.

**Fell Motion Appendix0157**

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| Wilson, Ronell | E.D. NY No. 1:04-CR-01016-NGG |
|---|---|

Death row - Appeal                                                                     **Name of AG**   Gonzales

**Race & gender of def**  B  M       **Victim R**      BM       **Date of DP notice**  8/2/2005

the execution style RICO murders of two undercover NYPD detectives during a gun sting operation. The case was charged as a racketeering conspiracy. The Staten Island District Attorney  asked the United States Attorney to charge Wilson after the New York State Court of Appeals ruled in June 2004, that the state's death-penalty law was unconstitutional.  All involved are African-American.  The death sentence was reversed on appeal.  610 F.3d 168 (2d Cir. 2009).  The trial court subsequently ruled that Wilson is not intellectually disabled.  He was resentenced to death, but a panel of the Second Circuit Court of Appeals remanded the case to the district court for consideration of the Supreme Court's decision in *Hall v. Florida* on the intellectual disability determination.

| Lawrence, Daryl | S.D. OH No. 2:05-CR-00011-GLF-1 |
|---|---|

Death row - 2255                                                                     **Name of AG**   Gonzales

**Race & gender of def**  B  M       **Victim R**      WM       **Date of DP notice**  9/26/2005

law enforcement officer victim - a January 2004 gun murder of a law enforcement officer during a bank robbery.  Lawrence committed other bank robberies in August and September of 2004.  The Columbus, Ohio police officer and bank security guard victim is white and the defendant is black.  A new trial motion was granted in October 2006, but the Sixth Circuit reversed. 555F.3d 254 (2009).  28 USC 2255 proceedings are pending.

| Caro, Carlos David | W.D. VA No. 06 CR 00001 |
|---|---|

Death row - 2255                                                                     **Name of AG**   Gonzales

**Race & gender of def**  H  M       **Victim R**      HM       **Date of DP notice**  1/11/2006

a 2003 BOP prison inmate strangulation murder of a cellmate at USP Lee by an alleged member of the Texas Syndicate prison gang. Caro was serving a 71 month sentence, had supervised release revoked and then received 327 months (27 years) in 2003 for conspiracy to murder involving a prison gang related stabbing.  The murder was triggered by a dispute over a food tray.  All involved are Hispanic.  A direct appeal was denied. 597 F.3d 608, reh'ing den., 614 F.3d 101 (4th Cir. 2010).  A 28 USC 2255 motion was denied.  An appeal is pending.

| Montgomery, Lisa | W.D. MO No. 5:05-CR-06002-GAF |
|---|---|

Death Row - 2255                                                                     **Name of AG**   Gonzales

**Race & gender of def**  W  F       **Victim R**      WF       **Date of DP notice**  11/16/2005

a baby girl was cut of her murdered mother's womb and taken across state lines.  She was found alive in the possession of a Kansas woman, who police charged with interstate kidnapping resulting in death.  Kevin and Lisa Montgomery have two older children, but she had recently lost a baby.  The victim was eight months pregnant and strangled with a rope.  Montgomery confessed.  All involved are white.  A 28 USC §2255 motion is pending.

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| Lecco, George | S.D. WV CR No. 2:05-00107 |
|---|---|

| Life sentence from jury | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def**  W  M   **Victim R**   WF   **Date of DP notice**  8/16/2006

a 2005 gun murder-for-hire of a cooperating witness/informant in a drug (cocaine) prosecution.  Lecco asked Burton, who asked Friend to help kill the female victim who was shot and beaten to death and buried in a shallow grave.  Attorney General Gonzales required a death penalty prosecution.  Lecco and Friend were sentenced to death at a joint trial but a new trial was granted by the trial judge when the government revealed that a juror was under federal investigation for child pornography.  634 F.Supp.2d 633 (SD WV 2009).  Friend entered into a plea agreement approved by Attorney General Holder and testified against Lecco, who was sentenced to life in prison.  Friend was sentenced to 35 years, Burton to 30 years.  All involved are white.

| Friend, Valeri | S.D. WV CR No. 2:05-00107 |
|---|---|

| Guilty plea | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def**  W  F   **Victim R**   WF   **Date of DP notice**  8/16/2006

a 2005 gun murder-for-hire of a cooperating witness/informant in a drug (cocaine) prosecution.  Lecco asked Burton, who asked Friend to help kill the female victim who was shot and beaten to death and buried in a shallow grave.  Attorney General Gonzales required a death penalty prosecution.  Lecco and Friend were sentenced to death at a joint trial but a new trial was granted by the trial judge when the government revealed that a juror was under federal investigation for child pornography.  634 F.Supp.2d 633 (SD WV 2009).  Friend entered into a plea agreement approved by Attorney General Holder and testified against Lecco, who was sentenced to life in prison at a retrial.  Friend received 35 years.  All involved are white.

| Duncan, Joseph | D. ID CR No. 07-23-N-EJL |
|---|---|

| Death row - Appeal | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def**  W  M   **Victim R**   WM   **Date of DP notice**  1/23/2007

interstate kidnapping and four murders, including sexual abuse, torture and murder of innocent children.  Two adults and a 13 year old boy were beaten to death in North Idaho.  Two young children, a girl 8 years old and a boy 9, were kidnapped.  Duncan is a registered sex offender, having been released in 2000 after many years in a Washington state prison.  Both children were tortured and sexually abused and the 8 year old girl watched her 9 year old brother die.  Duncan videotaped the abuse and torture.  The 8-year old girl was seen with Duncan and was rescued.  Duncan confessed to a double child kidnapping murder in Seattle, Washington and a child murder in Riverside, California. Duncan pled guilty to other murders in Idaho.  Duncan pled guilty, was found competent and represented himself, putting up no defense at the penalty trial.  All involved are white.  Duncan was found competent after the Ninth Circuit remanded the case for a retrospective competency determination.  An appeal is pending.

| Jackson, David Lee | E.D. TX No. 1:06-CR-51 |
|---|---|

| Death Sentence Vacated and Authorization Withdrawn | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def**  B  M   **Victim R**   BM   **Date of DP notice**  1/4/2006

a 1999 BOP inmate stabbing murder at the USP in Beaumont, Texas.  Jackson was incarcerated for a bank robbery.  Co-defendant Gully was in prison for drug trafficking.  Both were sent to ADX in Florence, Colorado after the homicide.  Gully did not face the death penalty.  All involved are black.  A direct appeal was denied.  549 F.3d 963 (5th Cir. 2008).  A 28 USC 2255 motion was granted when the government conceded a Brady error.  He was resentenced to life when the Department of Justice agreed.

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| Hager, Thomas Morocco | E.D. VA No. 1:05-CR-00264-TSE |
|---|---|

| Death row - 2255 | **Name of AG** Gonzales |
|---|---|

**Race & gender of def** B   M      **Victim R** WF      **Date of DP notice** 5/30/2006

the 1993 stabbing death of a white Fairfax County woman by a black convict who is also serving a life sentence. Since 1992, Hager allegedly killed five other people and ordered the slaying of a seventh person. Co-defendants Barnett and Johnson, juveniles, pled guilty and received life sentences for the 1993 murder of Barbara White, a 19-year-old single mother. They stabbed the victim 82 times in her bathtub while her 13 month old daughter was elsewhere in the apartment. Hager, a crack cocaine dealer, was involved in the stabbing. Hager is also serving a minimum 87 year sentence for killing another man in March of 1995. He broke into that victim's apartment and shot him. In 1999 he was convicted of manslaughter in an October 1996 shooting. Hager was involved in crime dating to a conviction for dealing cocaine as a 16-year-old. He was involved in robbing people, including rival drug dealers, of drugs, money and other valuables. Hager is suspected in, but has not been charged in several other killings. He was also involved in other murders in 1992, two in 1996 and 1997. He attempted murder in 1993 by shooting two rival drug dealers. Since being jailed in 1999 he was armed and involved in four assaults. Hager bragged that he trained his juvenile accomplices to be killers. A 28 USC 2255 motion is pending.

| Ebron, Joseph | E.D. TX No. 1:07-CR-142 (1:08-CR-00036) |
|---|---|

| Death row - 2255 | **Name of AG** Keisler |
|---|---|

**Race & gender of def** B   M      **Victim R** BM      **Date of DP notice** 9/11/2007

a USP Beaumont BOP inmate murder. All involved are blacks from Washington DC (the "DC Crew") who were in USP Atlanta, then USP Beaumont, together. The deceased was a government witness against two of Ebron's associates in an aggravated robbery in 1997. Ebron held the deceased while Mosely stabbed him 100 times. Mosely died before he could be charged. Ebron was previously convicted in 1999 of murder. A 28 USC 2255 motion is pending.

| Sanchez, Ricardo | S.D. FL 06-80171-CR-HURLEY/VITUNAC(s)(s) |
|---|---|

| Death Row - 2255 | **Name of AG** Mukasey |
|---|---|

**Race & gender of def** H   M      **Victim R** HF HM      **Date of DP notice** 2/20/2008

gun carjacking murders of a man allegedly involved in cocaine trafficking and his wife and two children, ages 4 and 3 on the Florida Turnpike. All involved are Hispanic. 28 USC 2255 proceedings are pending.

| Troya, Danny | S.D. FL 06-80171-CR-HURLEY/VITUNAC(s)(s) |
|---|---|

| Death Row - 2255 | **Name of AG** Mukasey |
|---|---|

**Race & gender of def** H   M      **Victim R** HF HM      **Date of DP notice** 2/20/2008

gun carjacking murders of a man allegedly involved in cocaine trafficking and his wife and two children, ages 4 and 3. All involved are Hispanic. 28 USC 2255 proceedings are pending.

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| | |
|---|---|
| Aquart, Azibo | D. CT 3:06CR160 (PCD) |

Death Row - Appeal                          **Name of AG** Mukasey

**Race & gender of def** B  M     **Victim R** BF BM     **Date of DP notice** 1/29/2009

a triple murder of a rival in the drug business, his girlfriend and a visitor, who were bound and gagged and bludgeoned to death with a baseball bat by leaders of a Jamaican drug gang. All the defendants and victims are black. The Aquart brothers faced the death penalty. Johnson, who cooperated, did not. After Azibo's trial, his brother, Azikiwe, entered into a plea agreement and was sentenced to life in prison. A direct appeal is pending.

| | |
|---|---|
| Snarr, Mark | E.D. TX 1:09-CR-00015-MAC-KFG All |

Death Row - 2255                          **Name of AG** Filip

**Race & gender of def** W  M     **Victim R** BM     **Date of DP notice** 2/13/2009

BOP inmate murder at FCC Beaumont by the alleged founder of the white supremacist group Soldiers of the Aryan Culture, which was formed in the Utah state prison system. Two BOP guards were stabbed before the murder, but survived after long hospital stays. Snarr took the keys from a guard and opened the victim's cell door. Snarr is white, Garcia is Hispanic and the victim is black. A direct appeal was denied. A 28 USC 2255 motion is pending.

| | |
|---|---|
| Runyon, David | E.D. VA CR No. 4:08-CR-16 |

Death row - 2255                          **Name of AG** Mukasey

**Race & gender of def** A  M     **Victim R** WM     **Date of DP notice** 7/17/2008

a gun murder for hire in Newport News of a husband. Catherina Voss was married to the victim and she and her boyfriend Draven contracted with Runyon to kill Voss' husband. The alleged motive was to obtain the victim's military benefits. Voss was sentenced to life in return for her testimony. 28 USC 2255 proceedings are pending.

| | |
|---|---|
| Garcia, Edgar B. | E.D. TX 1:09-CR-00015-MAC-KFG All |

Death Row - 2255                          **Name of AG** Filip

**Race & gender of def** H  M     **Victim R** BM     **Date of DP notice** 2/13/2009

BOP inmate murder at FCC Beaumont by the alleged founder of the white supremacist group Soldiers of the Aryan Culture, which was formed in the Utah state prison system. Two BOP guards were stabbed before the murder, but survived after long hospital stays. Snarr allegedly took the keys from a guard and opened the victim's cell door. Snarr is white, Garcia is Hispanic and the victim is black. A direct appeal was denied. A 28 USC 2255 motion is pending.

| | |
|---|---|
| Umana, Alejandro Enrique | W.D. NC No. 3:08-CR-134-RJC |

Death row - 2255                          **Name of AG** Mukasey

**Race & gender of def** H  M     **Victim R** HM     **Date of DP notice** 9/23/2008

four murders by members of the MS-13 gang. Alleged are double murders in 2005 and 2007 and a single murder in 2008. Umana received the death penalty for a 2007 double murder. He also allegedly committed two additional uncharged murders. Fernandez-Gradis was charged in two murders, Gonzalez in one, but they did not face the death penalty. The district court rejected a claim of intellectual disability. All involved are Hispanic. 28 USC 2255 proceedings are pending.

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death - 6/23/15**

| Savage, Kaboni | E.D. PA No. 2:07-CR-00550-RBS |
|---|---|

| Death row - Appeal | | **Name of AG** Holder |
|---|---|---|

**Race & gender of def** B M    **Victim R** BF BM    **Date of DP notice** 3/14/2011

involves murders allegedly orchestrated by Philadelphia drug kingpin Kaboni Savage, already serving 30 years for drug trafficking. Thirteen murders are charged, including a 2004 arson fire that killed six people, including four children - ages 15, 12, 10 and 1. The fire was set to retaliate against a federal informant who was testifying against Savage. Lewis was tried for a 2001 Philadelphia murder and was acquitted. Kaboni Savage is charged in twelve murders, Merritt in six, Kidada Savage in six involving the arson and Northington in two. All involved are black, except one victim, who is an Hispanic male. A direct appeal is pending.

| Coonce, Wesley Paul Jr. | W.D. MO 10-03029-01/02-CR-S-GAF |
|---|---|

| Death row - Appeal | | **Name of AG** Holder |
|---|---|---|

**Race & gender of def** W M    **Victim R** HM    **Date of DP notice** 7/22/2011

a BOP murder at the Medical Center in Springfield, Missouri, by two inmates. Coonce is already serving a life sentence. The defendants are white, the victim Hispanic. A direct appeal is pending.

| Hall, Charles Michael | W.D. MO 10-03029-01/02-CR-S-GAF |
|---|---|

| Death row - Appeal | | **Name of AG** Holder |
|---|---|---|

**Race & gender of def** W M    **Victim R** HM    **Date of DP notice** 7/22/2011

a BOP murder at the Medical Center in Springfield, Missouri, by two inmates. Hall was serving a sentence of 43 months, which began in 2009. The defendants are white, the victim Hispanic. A direct appeal is pending.

| Sanders, Thomas Steven | W.D. LA No. 1:10CR00351 |
|---|---|

| Death row - Appeal | | **Name of AG** Holder |
|---|---|---|

**Race & gender of def** W M    **Victim R** WF    **Date of DP notice** 8/1/2012

interstate kidnapping from Las Vegas, Nevada, to Arizona to Louisiana and murder of a mother, whose remains were located in Arizona, and a child, a daughter (age 12), whose remains were found in Louisiana. Attorney General Holder rejected a plea agreement. All involved are white. A direct appeal is pending.

| Torrez, Jorge Avila | E.D. VA No. 1:11-CR-115 |
|---|---|

| Death Row - Appeal | | **Name of AG** Holder |
|---|---|---|

**Race & gender of def** H M    **Victim R** WF    **Date of DP notice** 2/9/2012

rape murders by an Hispanic ex-marine already serving life sentences in Virginia for an abduction and rape of a Maryland graduate student. In 2009, a 20 year old Navy petty officer was raped and murdered on a military base in Arlington. Previously, two young girls were murdered in Illinois, stabbed in the eye. The government alleges a DNA link to all. The victims are all white. Torrez waived the presentation of mitigating evidence. A direct appeal is pending.

**Authorized Federal Capital Prosecutions Which Resulted in an Original Sentence of Death – 6/23/15**

| | |
|---|---|
| Tsarnaev, Dzhokhar | D. MA No. 1:13-CR-10200-GAO |

| | | |
|---|---|---|
| Death row - Appeal | | **Name of AG**  Holder |

**Race & gender of def**  W   M      **Victim R**  WF WM      **Date of DP notice**  1/30/2014

involves one of the two Boston Marathon terrorist bombers, who killed four, including two women, an eight year old boy, and a police officer, and wounded 170, resulting in at least 15 amputations of limbs.  He also is alleged to have attempted to kill another police officer. The defendant is white, of Chechen and Avar descent.  The deceased victims are white and Asian.

**Authorized Federal Capital Prosecutions With Current Death Sentences - 6/23/2015**

| Johnson, Corey | E.D. VA No. 3-92-CR-68 |
|---|---|

| Death row - 2255 | **Name of AG** Barr |
|---|---|

**Race & gender of def** B M    **Victim R** BF BM    **Date of DP notice** 5/1/1992

three of four young black inner-city gang members in Richmond, Virginia, who were sentenced to death in 1993, for their roles in eleven crack-related murders.  The trial of a fourth defendant, Vernon Thomas, was severed.   After the completion of all legal appeals, a May 2006 execution date was stayed pending the outcome of lethal injection litigation in the DC Circuit Court.  There is substantial evidence of intellectual disability but all such claims to date have been rejected.

| Roane, James | E.D. VA No. 3-92-CR-68 |
|---|---|

| Death row - 2255 | **Name of AG** Barr |
|---|---|

**Race & gender of def** B M    **Victim R** BF BM    **Date of DP notice** 5/1/1992

three of four young black inner-city gang members in Richmond, Virginia, who were sentenced to death in 1993, for their roles in eleven crack-related murders.  The trial of a fourth defendant, Vernon Thomas, was severed.   A May 2006 execution date was stayed pending the outcome of lethal injection litigation in the DC Circuit Court.

| Tipton, Richard | E.D. VA No. 3-92-CR-68 |
|---|---|

| Death row - 2255 | **Name of AG** Barr |
|---|---|

**Race & gender of def** B M    **Victim R** BF BM    **Date of DP notice** 5/1/1992

three of four young black inner-city gang members in Richmond, Virginia, who were sentenced to death in 1993, for their roles in eleven crack-related murders.  The trial of a fourth defendant, Vernon Thomas, was severed.   A May 2006 execution date was stayed pending the outcome of lethal injection litigation in the DC Circuit Court.

| Davis, Len | E.D. LA CR No. 94-381 |
|---|---|

| Death row - 2255 | **Name of AG** Reno |
|---|---|

**Race & gender of def** B M    **Victim R** BF    **Date of DP notice** 10/6/1995

civil rights - an African- American New Orleans police officer, Len Davis, who was being investigated (and tape recorded) in a drug conspiracy case.  Davis ordered the murder of a 32 year old mother of three, Kim Groves, who witnessed his beating of a witness in an unrelated incident.  Groves had filed a brutality complaint against Davis.  Paul Hardy, 27, carried out the killing.  Murder for hire is alleged as an aggravating circumstance.  Davis, then Hardy, were sentenced to death by a jury in 1996, which heard sequential penalty phase presentations.  Davis did not attend his.  The Fifth Circuit reversed one of the convictions and ordered a new sentencing trial on the remaining convictions in 1999.  185 F.3d 407.  On remand the District Court dismissed the Notice of Intent to Seek the Death Penalty based on *Ring v. Arizona*.  This ruling was reversed by the Fifth Circuit. 380 F. 3rd 821.  Davis was convicted and resentenced to death in 2005.  A 28 USC §2255 motion is pending.

**Authorized Federal Capital Prosecutions With Current Death Sentences - 6/23/2015**

| | |
|---|---|
| Hall, Orlando C. | N.D. TX No. 4:94-CR-121-Y |

Death row - 2255         **Name of AG**   Reno

**Race & gender of def**   B   M     **Victim R**   BF     **Date of DP notice**   2/23/1995

the first approval of a death penalty prosecution under the 1994 Federal Death Penalty Act. Hall, and his co-defendant, Webster, both African-American, were charged in Fort Worth, Texas, with the abduction, sexual assault and beating murder of a 16-year-old black female whose older brother had allegedly stolen marijuana. In 1995, Hall was sentenced to death after the jury heard testimony from co-defendants who pled guilty and testified in return for leniency. Expert testimony suggested the victim was still alive when buried. After a separate trial, Bruce Webster was sentenced to death by a jury in 1996. After the completion of all legal appeals, Hall joined the lethal injection litigation in the DC Circuit Court.

| | |
|---|---|
| Webster, Bruce | N.D. TX No. 4:94-CR-121-Y |

Death row - 2255         **Name of AG**   Reno

**Race & gender of def**   B   M     **Victim R**   BF     **Date of DP notice**   2/23/1995

the first approval of a death penalty prosecution under the 1994 Federal Death Penalty Act. Orlando Hall, and his co-defendant, Webster, both African-American, were charged in Fort Worth, Texas, with the abduction, sexual assault and beating murder of a 16-year-old black female whose older brother had allegedly stolen marijuana. In 1995, Hall was sentenced to death after the jury heard testimony from co-defendants who pled guilty and testified in return for leniency. Expert testimony suggested the victim was still alive when buried. After a separate trial, Bruce Webster was sentenced to death by a jury in 1996. Webster is the first case in which a federal defendant has been sentenced to death after attempting to establish his ineligibility for the death penalty by reason of intellectual disability. After completion of all legal appeals, an April 2007 execution date was stayed pending the outcome of lethal injection litigation in the D.C. Circuit Court. The Seventh Circuit, after the Fifth Circuit denied a similar request, is allowing the presentation of newly discovered evidence of Webster's intellectual disability.

| | |
|---|---|
| Battle, Anthony | N.D. GA No. 1:95 CR 528 |

Death row - 2255         **Name of AG**   Reno

**Race & gender of def**   B   M     **Victim R**   BM     **Date of DP notice**   7/26/1996

law enforcement officer victim - a black inmate with a history of psychiatric problems who was sentenced to death for the hammer-murder of an African-American guard in the Atlanta federal penitentiary. Mr. Battle was serving a life sentence for the prior murder of his wife when the killing occurred. In 1997 a federal jury rejected Mr. Battle's insanity defense and returned a death sentence after three hours' deliberation. After the completion of all legal appeals, 173 F.3d 1343 (1999), 419 F.3d 1292 (2005), Battle joined the lethal injection litigation in the D.C. Circuit Court.

| | |
|---|---|
| Paul, Jeffrey Williams | W.D. AR No. 6:96CR60022 |

Death row - 2255         **Name of AG**   Reno

**Race & gender of def**   W   M     **Victim R**   WM     **Date of DP notice**   1/23/1997

Paul is one of two white teenagers charged with the robbery-murder of an elderly white National Parks employee in Hot Springs National Park (USPS), federal land within the city of Hot Springs, Arkansas. A Hot Springs federal jury unanimously imposed a life sentence on co-defendant Trinity Ingle on June 6, 1997. Paul's separate trial began on June 17, 1997, and ended with a death sentence on June 25, 1997. All involved are white. A 28 USC §2255 motion was denied without an evidentiary hearing, a ruling affirmed by the Eighth Circuit. After his initial request to join the lethal injection litigation in the DC District was denied, Paul successfully appealed to the DC Circuit Court.

**Fell Motion Appendix0165**

**Authorized Federal Capital Prosecutions With Current Death Sentences - 6/23/2015**

| Allen, Billie Jerome | E.D. MO No. 4:97 CR 0141 ERW (TCM) |
| --- | --- |

Death row - 2255

Name of AG: Reno

Race & gender of def: B M  Victim R: WM  Date of DP notice 8/1/1997

two black defendants charged with the fatal shooting of a white bank guard during a robbery.  Attorney General Reno authorized the government to seek the death penalty on August 1, 1997.  After separate trials, death sentences were returned on March 10, 1998 for Allen and April 3, 1998 for Holder.  An appeal was rejected by a divided panel of the Eighth Circuit.  247 F.3d 741 (2001).  The Supreme Court remanded in light of *Ring v. Arizona*, 536 U.S. 953.  An en banc Eighth Circuit reversed the three-judge panel's grant of penalty phase relief.  357 F.3d 745, 406 F.3d 940 (2005).  A 28 U.S.C. §2255 motion was denied.  An appeal is pending.

| Barnette, Aquila Marcivicci | W.D. NC No. 3:97CR23-P |
| --- | --- |

Death row - 2255

Name of AG: Reno

Race & gender of def: B M  Victim R: BF WM  Date of DP notice 7/15/1997

a domestic killing.  Barnette confessed to murdering a motorist during a Charlotte, North Carolina carjacking.  He drove the victim's car to Roanoke, Virginia, where he killed his former girlfriend.  Barnette has a long history of domestic abuse of the second victim.  The defendant and the female victim are black; the carjacking victim was white.   A Charlotte, North Carolina jury imposed the death penalty in 1998.  Two years later the appeals court ordered a new sentencing trial. 211 F.3d 803 (4th Cir. 2000).  Barnette was again sentenced to death in 2002.  The United States Supreme Court, in October 2005, remanded the case to the Fourth Circuit for consideration of a Batson claim, which was ultimately denied and affirmed on appeal.  A 28 USC §2255 motion is pending.

| Holder, Norris G. | E.D. MO CR No. 4:97 0141 ERW (TCM) |
| --- | --- |

Death row - 2255

Name of AG: Reno

Race & gender of def: B M  Victim R: WM  Date of DP notice 8/1/1997

two black defendants charged with the fatal shooting of a white bank guard during a robbery.  Attorney General Reno authorized the government to seek the death penalty on August 1, 1997.  After separate trials, death sentences were returned on March 10, 1998 for Allen and April 3, 1998 for Holder.  An appeal was denied.  247 F.3d 741 (2001).  A 2255 motion for post-conviction relief was denied, 2008 WL 2909648, 2009 WL 5030785, and an appeal is pending.

| Gabrion, Marvin | W.D. MI No. 1:99-CR-76 |
| --- | --- |

Death row - 2255

Name of AG: Ashcroft

Race & gender of def: W M  Victim R: WF  Date of DP notice 2/26/2001

the disappearance of an alleged rape victim before Gabrion's trial, as well as the disappearance of her 3 year old child and three men.  The bound victim was found in a lake, part of federal land, the Manistee National Forest (USFS).  Attorney General Ashcroft required a capital prosecution in this 18 U.S.C. §1111 case.  All involved are white.  After a remand to the district court for the presentation of additional evidence on the issue of subject matter jurisdiction, the Sixth Circuit found subject matter jurisdiction.  After a grant of sentencing phase relief, the government sought rehearing en banc, which resulted in reversal of sentencing relief.  A 28 USC §2255 motion is pending.

Lee, Daniel Louis | E.D. AR No. LR-CR-97-243

Death row - 2255 | **Name of AG** Reno

**Race & gender of def** W M | **Victim R** WF WM | **Date of DP notice** 3/20/1998

a RICO prosecution of an organization supposedly intent upon starting a revolution. The capital crime was the murder of a family of three (an Arkansas gun dealer, his wife and their 8 year old child) in the Fall of 1996. The defendants may have believed the gun dealer was an ATF informant. The victims were killed by duct-taping plastic bags over their heads, handcuffing the three and throwing them in a river. The defendants and the victims are white. Co-defendant Chevie Kehoe was charged in two additional murders as well. The defendants were also charged with bombing the Spokane, WA city hall. Kehoe, older, whom some considered more culpable, was first sentenced to life by the jury at a 1999 separate penalty hearing. At that point the United States Attorney attempted to withdraw the request for the death penalty. The Attorney General was unavailable, so the Deputy Attorney General declined the request. Lee was then sentenced to death. The next year the District Court ordered a new sentencing hearing for Lee. 89 F.Supp.2d 1017 (E.D. AR). That decision was reversed by the Eighth Circuit. 274 F.3d 485 (2001), which later affirmed the convictions and death sentences. A 28 U.S.C. 2255 motion and appeal were denied. Lee is currently litigating the denial of a Rule 60(b) motion.

Ortiz, Arboleda | W.D. MO No. 98- 00311-01/05-CR-W-2

Death row - 2255 | **Name of AG** Reno

**Race & gender of def** B M | **Victim R** HM | **Date of DP notice** 5/19/1999

four Colombians charged in a drug related murder. The alleged ringleader, Hinestroza, was a fugitive who was eventually arrested and received a life sentence at a separate trial. The victim and his nephew (who sold cocaine for the gang) stole $240,000 from them. The defendants tied up, interrogated, duct taped and shot both victims. The nephew lived, escaped and identified the defendants. Sinisterra shot and killed one victim. Ortiz or Tello shot the surviving victim. Sinisterra and Ortiz were sentenced to death. The jury deadlocked on punishment for Tello, and he was sentenced to life in prison. Although not litigated at trial, Ortiz has a full scale I.Q. of 54. A 2255 motion for post-conviction relief was denied, after an evidentiary hearing. An appeal is pending.

Higgs, Dustin | D. MD CR No. PJM-98- 0502

Death row - 2255 | **Name of AG** Reno

**Race & gender of def** B M | **Victim R** BF | **Date of DP notice** 10/22/1999

the January 1996 triple intrastate kidnapping/murder of three black females from D.C. Patuxent Wildlife Research Center (USFW), federal property. Haynes, 20, confessed that he fired the shots. He said Higgs, 26, gave him the gun and told him to do it after an argument with the women. The defendants are African-American and were involved in another shooting six weeks before. Haynes' jury deadlocked and he was sentenced to life in prison. Higgs was sentenced to death by an all male jury at a separate, subsequent trial. The government suggested a witness killing motive at this trial and alleged Higgs plotter to kill a government witness and/or his family. He was already serving a 17 year sentence on a drug conviction. All involved are African-American. All post-conviction appeals have been denied.

Vialva, Christopher Andre | W.D. TX No. W99CR070

Death row - 2255 | **Name of AG** Reno

**Race & gender of def** B M | **Victim R** WF WM | **Date of DP notice** 2/29/2000

gun murders by Vialva, 19, Bernard, 18, and two juveniles, all with alleged gang affiliations. These African-Americans were convicted of a 1999 18 U.S.C. § 1111 carjacking/double homicide and robbery of a young white "church" couple. The bodies of the victims were found in the trunk of their car just inside the Fort Hood boundary, with gunshot wounds to the face and head. The vehicle had been set on fire. Authorities believe Vialva shot the victims. A 2255 motion for post-conviction relief was denied. An appeal is pending.

**Authorized Federal Capital Prosecutions With Current Death Sentences - 6/23/2015**

| | |
|---|---|
| Bernard, Brandon | W.D. TX No. W99CR070 |

Death row - 2255                                      Name of AG    Reno

Race & gender of def   B   M      Victim R   WF WM      Date of DP notice   2/29/2000

gun murders by Vialva, 19, Bernard, 18, and two juveniles, all with alleged gang affiliations.  These African-Americans were convicted of a 1999 18 U.S.C. § 1111 carjacking/double homicide and robbery of a young white "church" couple.  The bodies of the victims were found in the trunk of their car just inside the Fort Hood boundary, with gunshot wounds to the face and head.  The vehicle had been set on fire.  Authorities believe Vialva shot the victims.  A 2255 motion for post-conviction relief was denied.  An appeal is pending.

| | |
|---|---|
| Nelson, Keith D. | W.D. MO No. 99-CR-303-1 |

Death row - 2255                                      Name of AG    Reno

Race & gender of def   W   M      Victim R   WF      Date of DP notice   3/20/2000

the interstate 1999 kidnapping and murder of a ten year old girl, in violation of 18 U.S.C. §1201.  Both the defendant and the victim are white.  A 28 U.S.C. §2255 motion was denied without an evidentiary hearing or the grant of a Certificate of Appealability.  The Eighth Circuit reversed the district court and remanded the case for an evidentiary hearing, after which the §2255 motion was again denied.  An appeal is pending.

| | |
|---|---|
| Honken, Dustin | N.D. IA No.3:01-CR-03047-MWB |

Death row - 2255                                      Name of AG    Ashcroft

Race & gender of def   W   M      Victim R   WF WM      Date of DP notice   6/10/2003

five murders in 1993 of a potential witness, his girlfriend and two daughters, in a drug conspiracy case.  The fifth victim is Angela Johnson's former boyfriend, who disappeared in November of 1993.  Johnson attempted suicide in jail after she was tricked by a jailhouse informant into revealing the location of the bodies.  Attorney General Gonzales rejected Johnson's attempt to enter a plea to a life sentence.  All involved are white.  A 28 U.S.C. 2255 motion was denied.  An appeal is pending.

| | |
|---|---|
| Jackson, Richard | W.D. NC No. 00-CR-74 |

Death row - 2255                                      Name of AG    Reno

Race & gender of def   W   M      Victim R   WF      Date of DP notice   12/4/2000

a capital defendant in state court who pled guilty to second degree murder, intrastate kidnaping and rape of a 22 year old woman jogging Holloween morning in the Pisgah National Forest (USFS).  Jackson received a 25 - 31 years sentence in state court.  He was charged in federal court in another case after the North Carolina Supreme Court reversed his original death sentence and conviction, and suppressed his confession on Edwards grounds.  Jackson was 31 years old.  The victim was tied with duct tape to a tree on federal land in the Bent Creek Recreation Area in the Pisgah National Forest off Blue Ridge Parkway, on federal land, raped and shot one time.  All involved are white.  All post-conviction motions have been denied.

**Authorized Federal Capital Prosecutions With Current Death Sentences - 6/23/2015**

| Robinson, Julius Omar | N.D. TX No. 00-CR-260 |
|---|---|

Death row - 2255                                          **Name of AG**   Ashcroft

**Race & gender of def**  B  M     **Victim R**  HM BM     **Date of DP notice**  10/19/2001

a Fort Worth drug trafficking prosecution of the leaders of an Arlington-based drug ring responsible for three murders. The first killing involved a 1998 shooting of an African-American, mistaken for the intended victim, in a car traveling on Cential Expressway.  A second 1999 killing was of an Hispanic person, mistaken for the intended victim, his brother, who allegedly sold a fake kilo of cocaine to Robinson. Britt was the triggerman in the third 1999 killing of another drug dealer, a  Mexican national, who had stolen 20 kilos from a Laredo drug kingpin. Robinson was following in another car. Britt and Robinson, African-American, both allegedly fired weapons in the first and second incidents. Attorney General Ashcroft rejected a plea agreement involving a life sentence. Co-defendant Britt was sentenced to life in prison at a separate trial.   Robinson has filed a lethal injection lawsuit in the DC Circuit Court.  All post-conviction motions have been denied.

| Agofsky, Shannon Wayne | E.D. TX 1:03-CR 173 |
|---|---|

Death row - 2255                                          **Name of AG**   Ashcroft

**Race & gender of def**  W  M     **Victim R**  WM     **Date of DP notice**  1/30/2004

Agofsky, along with his brother, was serving a life sentence for the 1992 abduction and murder of a president of a financial institution. Agofsky took him to the institution and forced him to open the vault and then killed him.  In 2004, Agofsky was  convicted of beating, kicking and stomping to death a fellow inmate at a federal prison in Beaumont, Texas.  The victim was serving a term for arson and firearms.  The government alleged this was a premeditated prison "gang" hit. All involved are white.  This was the fourth murder at Beaumont FCI since March of 1997.  The Fifth Circuit affirmed.  458 F.3d 369.  A 28 U.S.C. §2255 motion is pending.

| Purkey, Wesley Ira | W.D. MO No. 01-CR-308 |
|---|---|

Death row - 2255                                          **Name of AG**   Ashcroft

**Race & gender of def**  W  M     **Victim R**  WF     **Date of DP notice**  11/25/2002

the 1998 interstate kidnapping (from Missouri to Kansas), rape and murder of a 17 year old high school girl, whose body was then dismembered and burned.  Purkey is serving a prison sentence for another killing.  Previously, Purkey was paroled after 17 years for shooting a man.  Both victim and defendant are white.  All post-conviction motions have been denied.

| Fields, Sherman Lamont | W.D. TX No. 01-CR-164 |
|---|---|

Death row - 2255                                          **Name of AG**   Ashcroft

**Race & gender of def**  B  M     **Victim R**  BF     **Date of DP notice**  5/23/2003

a jail escape and a domestic murder.  The 2001 domestic killing/gun murder in Waco of a former girlfriend and mother of three young children, by a twice convicted felon who escaped from jail.  Initially, the jury was deadlocked on punishment.  Fields was a federal prisoner who bribed a jail guard to leave a door unlocked.  Fields represented himself during the guilt phase.  All involved are black.  An appeal was denied. 549 F.3d 963 (2007).  All post-conviction motions have been denied.

**Fell Motion Appendix0169**

**Authorized Federal Capital Prosecutions With Current Death Sentences - 6/23/2015**

| Mitchell, Lezmond | D. AZ No. 01-CR-1062 |
|---|---|

Death row - 2255                                          **Name of AG**   Ashcroft

**Race & gender of def**  NA M    **Victim R**    NAF    **Date of DP notice**  9/13/2002

murder on Navajo tribal land.  All involved are Native American.  The defendant and a juvenile got a ride from a woman and her 9 year old granddaughter, killed both and stole the car supposedly for use in an armed robbery.  Each victim was stabbed at a separate location.  In an attempt to hide the victim's identity, the hands and heads of the victims were removed.  Attorney General Ashcroft required a capital prosecution against Mitchell under a carjacking theory -- although the Navajo tribe has not "opted in" to the federal death penalty.  A 28 U.S.C. §2255 motion was denied.  An appeal is pending.

| Mikos, Ronald | N.D. IL No. 02-CR 137 |
|---|---|

Death row - 2255                                          **Name of AG**   Ashcroft

**Race & gender of def**  W M    **Victim R**    WF    **Date of DP notice**  12/16/2002

involves the § 1512 murder on January 27, 2002,of a government witness to prevent her testimony before the grand jury.  Mikos, a podiatrist, and another are accused in many counts of defrauding Medicare, HCFA and HHS.  When the victim was served with a federal grand jury subpoena for her testimony regarding treatment/non-treatment by Mikos, he allegedly tried to persuade the victim to lie to the grand jury either by claiming lack of memory or stating that the surgery had been performed.  When she refused he allegedly shot her.  All involved are white.  Direct appeal was denied.  A 28 USC 2255 motion is pending.

| Fulks, Chadrick | D. SC No. 02-CR-992 |
|---|---|

Death row - 2255                                          **Name of AG**   Ashcroft

**Race & gender of def**  W M    **Victim R**    WF    **Date of DP notice**  9/12/2003

carjacking and interstate kidnapping from a WalMart parking lot of a woman whose body was never recovered.  A video camera captured part of the abduction.  Witnesses saw her with the defendants later that day in North Carolina.  The defendants had escaped 10 days earlier from a Kentucky jail.  Basham was arrested three days later after allegedly trying to hijack a car at an Ashland, Kentucky mall.  He has been charged with attempted murder and robbery.  Fulks was arrested six days later, in Goshen, Indiana.  The defendants are also accused of kidnapping a Kentucky man and leaving him tied to a tree in Evansville, Indiana.  Basham has told the FBI that he and Fulks abducted another victim, a 19-year-old West Virginia college student, three days before the South Carolina abduction.  Her car was found burned in West Virginia.  A separate federal capital indictment was filed in that state and both defendants pled guilty and were sentenced to life in prison.  All involved are white.  All post-conviction motions have been denied.

| Basham, Branden | D. SC No. 02-CR-992 |
|---|---|

Death row - 2255                                          **Name of AG**   Ashcroft

**Race & gender of def**  W M    **Victim R**    WF    **Date of DP notice**  9/12/2003

carjacking and interstate kidnapping from a WalMart parking lot of a woman whose body was never recovered.  A video camera captured part of the abduction.  Witnesses saw her with the defendants later that day in North Carolina.  The defendants had escaped 10 days earlier from a Kentucky jail.  Basham was arrested three days later after allegedly trying to hijack a car at an Ashland, Kentucky mall.  He has been charged with attempted murder and robbery.  Fulks was arrested six days later, in Goshen, Indiana.  The defendants are also accused of kidnapping a Kentucky man and leaving him tied to a tree in Evansville, Indiana.  Basham has told the FBI that he and Fulks abducted another victim, a 19-year-old West Virginia college student, three days before the South Carolina abduction.  Her car was found burned in West Virginia.  A separate federal capital indictment was filed in that state and both defendants pled guilty and were sentenced to life in prison .  All involved are white.  A direct appeal was denied.  561 F.3d 302 (4th Cir. 2009).  A 28 USC 2255 motion was denied.  An appeal is pending.

**Authorized Federal Capital Prosecutions With Current Death Sentences - 6/23/2015**

| LeCroy, William Emmett | N.D. GA No. 02-CR-38 |
|---|---|

Death Row - 2255     **Name of AG** Ashcroft

**Race & gender of def** W M    **Victim R** WF    **Date of DP notice** 12/20/2002

a carjacking murder. The victim, a nurse practitioner, came home, was surprised inside her home, bound, raped, stabbed to death in her bedroom. LeCroy took car keys from her purse and then stole her Ford Explorer. He was arrested two days later in Minnesota trying to enter Canada with the victim's SUV. All involved are white. His direct appeal was denied. 441 F.3d 914 (11th Cir. 2006). All post-conviction motions have been denied.

| Mikhel, Iouri | C.D. CA CR No. 02-220 (A)-NM |
|---|---|

Death row - 2255     **Name of AG** Ashcroft

**Race & gender of def** W M    **Victim R** WF WM    **Date of DP notice** 8/3/2004

five kidnapping ransom murders by the Russian mob. Wealthy Russian immigrants were kidnapped, held for ransom, murdered and their bodies dumped in a reservoir. 1.2 million was collected in ransom. All involved are Caucasian. Mikhel and Kadamovas are charged in four, the others in two, except Krylov, who is charged in three murders. The indictment charged hostage taking resulting in death. 18 U.S.C. §1203. Mikhel, Kadamovas and Krylov faced the death penalty. Mikhel and Kadamovas were sentenced to death. At a separate trial, Krylov was sentenced to life imprisonment after Attorney General Gonzales rejected an offer to plead guilty. A direct appeal is pending.

| Kadamovas, Jurijus | C.D. CA CR No. 02-220 (A)-NM |
|---|---|

Death row - Appeal     **Name of AG** Ashcroft

**Race & gender of def** W M    **Victim R** WF WM    **Date of DP notice** 8/3/2004

five kidnapping ransom murders by the Russian mob. Wealthy Russian immigrants were kidnapped, held for ransom, murdered and their bodies dumped in a reservoir. 1.2 million was collected in ransom. All involved are Caucasian. Mikhel and Kadamovas are charged in four, the others in two, except Krylov, who is charged in three murders. The indictment charged hostage taking resulting in death. 18 U.S.C. §1203. Mikhel, Kadamovas and Krylov faced the death penalty. Mikhel and Kadamovas were sentenced to death. At a separate trial, Krylov was sentenced to life imprisonment after Attorney General Gonzales rejected an offer to plead guilty. A direct appeal is pending.

| Corley, Odell | N.D. IN No. 02-CR-116 |
|---|---|

Death row - 2255     **Name of AG** Ashcroft

**Race & gender of def** B M    **Victim R** WF WM    **Date of DP notice** 8/14/2003

bank robbery and gun murders. Five people, three African-American males, one African-American female and one white woman (the pregnant girlfriend of Johnson), robbed a bank and shot to death a white female teller, while wounding another white male teller who died ten weeks after the shooting. A white male security guard was also wounded, leaving him a paraplegic. Corley, who has taken the name Nasih Khalil Ra'id, was the ring leader who burst into the bank shooting. Johnson was also a gunman. McGregor was a driver. Gay and Ramsey were some distance away. The robbery was videotaped although the gunman was in disguise. Corley's palm print was found inside the bank. Corley committed a prior murder in 1998. An appeal was denied. 519 F.3d 716 (7th Cir. 2008). A 28 USC 2255 motion is pending.

**Fell Motion Appendix0171**

**Authorized Federal Capital Prosecutions With Current Death Sentences - 6/23/2015**

| Taylor, Rejon | E.D. TN No. 1:04-CR-00160-1 |

Death row - Appeal    **Name of AG**  Gonzales

**Race & gender of def**  B  M    **Victim R**  WM    **Date of DP notice**  6/1/2006

a cross-racial interstate kidnapping, carjacking, gun murder of an Atlanta restaurant owner who was a potential witness against Taylor in an identity theft scheme. The victim was abducted in Atlanta and killed in Tennessee. Fearing prosecution, the defendants robbed, kidnapped and threatened the deceased who was shot and killed while trying to escape. Matthews fired also and was himself accidentally shot by Taylor. Taylor fired the fatal shots. Attorney General Gonzales required a capital prosecution after Taylor attempted to escape from jail. The defendants are black, the victim white. A direct appeal is pending.

| Barrett, Kenneth Eugene | E.D. OK CR No. 04-100-M-S |

Death row - 2255    **Name of AG**  Gonzales

**Race & gender of def**  W  M    **Victim R**  WM    **Date of DP notice**  2/15/2005

law enforcement officer victim. Barrett lived in a small, rural, self-built cabin without electricity and running water. A "no-knock" warrant was issued based on allegations that he was a drug manufacturer/dealer, a gun owner and had previously made statements about killing law enforcement officers. During a late night raid, Barrett grabbed a gun and started shooting at an unmarked Ford Bronco approaching the cabin. The police shot back and Barrett was wounded. A state law enforcement officer was killed. There are numerous drug-related charges in the complaint. Barrett was tried twice in state court - the first trial resulting in a hung jury and the second resulting in manslaughter and assault with intent to kill convictions. All involved are white. His conviction and death sentence were affirmed on direct appeal. 496 F.3d 1079 (10th Cir. 2007). A 28 U.S.C. §2255 motion was denied. An appeal is pending.

| Bolden, Robert, Sr. | E.D. MO No. 4:02-CR 0557 CEF (AGF) |

Death row - 2255    **Name of AG**  Ashcroft

**Race & gender of def**  B  M    **Victim R**  WM    **Date of DP notice**  10/7/2003

2002 bank robbery murder. 18 U.S.C. §§924(c), 1111 and 2113. The victim was a white security guard, the son of a police officer, who encountered three robbers in the parking lot of the Bank of America. The defendants are African-American. Only Bolden faced the death penalty. Bolden's conviction and death sentence were affirmed on appeal. 545 F.3d 609 (8th Cir. 2008). A 28 USC §2255 motion is pending.

| Brown, Meier Jason | S.D. GA CR No. 403-01 |

Death row - 2255    **Name of AG**  Ashcroft

**Race & gender of def**  B  M    **Victim R**  WF    **Date of DP notice**  5/5/2003

the stabbing murder of a United States Postal Service employee during a robbery at a United States Post Office. Brown confessed and blood was found on his jacket and bike. The victim is white and the defendant is black. She was stabbed 10 times. There was a conditional plea agreement specifying a life sentence but Attorney General Ashcroft rejected it and required a capital trial. All post-conviction motions have been denied.

**Fell Motion Appendix0172**

**Authorized Federal Capital Prosecutions With Current Death Sentences - 6/23/2015**

| Bourgeois, Alfred | S.D. TX CR No. 02-216 |
| --- | --- |

| Death row - 2255 | **Name of AG** Ashcroft |
| --- | --- |

**Race & gender of def** B  M    **Victim R** BF    **Date of DP notice** 7/23/2003

killing on federal land - a two year old child who died from "shaken baby syndrome". The baby was found unresponsive beside her father's tractor-trailer. Bourgeois and his wife told authorities the toddler had fallen out of the cab while they were making a delivery at Naval Air Station Corpus Christi. The toddler had seven major hemorrhages - two behind her right ear, two above her right eye and three in the back of her skull. The pathologist who examined the toddler's body called it "one of the worst cases of child abuse she'd ever seen." Bourgeois's wife and his 7-year-old daughter alleged Bourgeois had abused the toddler before. "(Bourgeois) hit her as hard as he would hit another man," the wife told the FBI, according to an affidavit. All involved are African-American. The death sentence was affirmed on appeal. 423 F.3d 501 (5th Cir. 2005). A 28 USC §2255 motion was rejected. All post-conviction motions have been denied.

| Fields, Edward | E.D. OK No. 6:03-CR-00073 |
| --- | --- |

| Death row - 2255 | **Name of AG** Ashcroft |
| --- | --- |

**Race & gender of def** W  M    **Victim R** WF WM    **Date of DP notice** 3/15/2004

a robbery and gun murder of a married couple on federal land in the Winding Stair Campgrounds in the Ouachita National Forest (USFS). All involved are white. Fields has no prior criminal record, a good military record and a history of intellectual disability. Fields had been living in the forest. The murders occurred around July 10, 2004. Fields, a former prison guard, went on a shopping spree with the victim's credit cards. He confessed expressing remorse. Fields pled guilty and was sentenced to death by jury. A direct appeal was denied. A 28 USC 2255 motion is pending.

| Lighty, Kenneth Jamal | D. MD No. 8:03-CR-00457-PJM |
| --- | --- |

| Death row - 2255 | **Name of AG** Ashcroft |
| --- | --- |

**Race & gender of def** B  M    **Victim R** BM    **Date of DP notice** 12/28/2004

three defendants, and possibly another, kidnapped the teenage victim in D.C., transported him to Maryland, where he was shot to death. The victim was the son of a Washington police officer. Lighty is charged as the shooter, and the other two with assisting him. All involved are African-American. Co-defendant Wilson was convicted of conspiracy to kidnap but acquitted of kidnapping and weapons charges. A direct appeal was denied. A 28 USC 2255 motion is pending.

| Rodriguez, Alfonso, Jr. | D. ND No. 04-CR-55 |
| --- | --- |

| Death row - 2255 | **Name of AG** Ashcroft |
| --- | --- |

**Race & gender of def** H  M    **Victim R** WF    **Date of DP notice** 10/28/2004

the interstate kidnapping murder of a 22 year old white female victim who disappeared from a Grand Forks shopping mall parking lot on November 22, 2003. Her body was found April 17, 2004. Rodriguez, 53, is a convicted sex offender, who had been released from prison in May of 2003 after serving a 23 year sentence for attempted kidnapping, assault and other convictions for attempted rape and aggravated rape. Before he was released, Rodriguez requested help from a Minnesota prison psychologist. The Hispanic defendant allegedly crossed state lines while committing the crime. This was the first death sentence in North Dakota in 100 years. A direct appeal was denied. A 28 USC 2255 motion is pending.

**Authorized Federal Capital Prosecutions With Current Death Sentences - 6/23/2015**

| Wilson, Ronell | E.D. NY No. 1:04-CR-01016-NGG |
|---|---|

| Death row - Appeal | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def**  B  M      **Victim R**    BM      **Date of DP notice**  8/2/2005

the execution style RICO murders of two undercover NYPD detectives during a gun sting operation. The case was charged as a racketeering conspiracy. The Staten Island District Attorney asked the United States Attorney to charge Wilson after the New York State Court of Appeals ruled in June 2004, that the state's death-penalty law was unconstitutional. All involved are African-American. The death sentence was reversed on appeal. 610 F.3d 168 (2d Cir. 2009). The trial court subsequently ruled that Wilson is not intellectually disabled. He was resentenced to death, but a panel of the Second Circuit Court of Appeals remanded the case to the district court for consideration of the Supreme Court's decision in *Hall v. Florida* on the intellectual disability determination.

| Lawrence, Daryl | S.D. OH No. 2:05-CR-00011-GLF-1 |
|---|---|

| Death row - 2255 | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def**  B  M      **Victim R**    WM      **Date of DP notice**  9/26/2005

law enforcement officer victim - a January 2004 gun murder of a law enforcement officer during a bank robbery. Lawrence committed other bank robberies in August and September of 2004. The Columbus, Ohio police officer and bank security guard victim is white and the defendant is black. A new trial motion was granted in October 2006, but the Sixth Circuit reversed. 555F.3d 254 (2009). 28 USC 2255 proceedings are pending.

| Caro, Carlos David | W.D. VA No. 06 CR 00001 |
|---|---|

| Death row - 2255 | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def**  H  M      **Victim R**    HM      **Date of DP notice**  1/11/2006

a 2003 BOP prison inmate strangulation murder of a cellmate at USP Lee by an alleged member of the Texas Syndicate prison gang. Caro was serving a 71 month sentence, had supervised release revoked and then received 327 months (27 years) in 2003 for conspiracy to murder involving a prison gang related stabbing. The murder was triggered by a dispute over a food tray. All involved are Hispanic. A direct appeal was denied. 597 F.3d 608, reh'ing den., 614 F.3d 101 (4th Cir. 2010). A 28 USC 2255 motion was denied. An appeal is pending.

| Montgomery, Lisa | W.D. MO No. 5:05-CR-06002-GAF |
|---|---|

| Death Row - 2255 | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def**  W  F      **Victim R**    WF      **Date of DP notice**  11/16/2005

a baby girl was cut of her murdered mother's womb and taken across state lines. She was found alive in the possession of a Kansas woman, who police charged with interstate kidnapping resulting in death. Kevin and Lisa Montgomery have two older children, but she had recently lost a baby. The victim was eight months pregnant and strangled with a rope. Montgomery confessed. All involved are white. A 28 USC §2255 motion is pending.

| Duncan, Joseph | D. ID CR No. 07-23-N-EJL |
|---|---|

| Death row - Appeal | | **Name of AG** Gonzales |
|---|---|---|

**Race & gender of def** W  M     **Victim R** WM     **Date of DP notice** 1/23/2007

interstate kidnapping and four murders, including sexual abuse, torture and murder of innocent children. Two adults and a 13 year old boy were beaten to death in North Idaho. Two young children, a girl 8 years old and a boy 9, were kidnapped. Duncan is a registered sex offender, having been released in 2000 after many years in a Washington state prison. Both children were tortured and sexually abused and the 8 year old girl watched her 9 year old brother die. Duncan videotaped the abuse and torture. The 8-year old girl was seen with Duncan and was rescued. Duncan confessed to a double child kidnapping murder in Seattle, Washington and a child murder in Riverside, California. Duncan pled guilty to other murders in Idaho. Duncan pled guilty, was found competent and represented himself, putting up no defense at the penalty trial. All involved are white. Duncan was found competent after the Ninth Circuit remanded the case for a retrospective competency determination. An appeal is pending.

| Hager, Thomas Morocco | E.D. VA No. 1:05-CR-00264-TSE |
|---|---|

| Death row - 2255 | | **Name of AG** Gonzales |
|---|---|---|

**Race & gender of def** B  M     **Victim R** WF     **Date of DP notice** 5/30/2006

the 1993 stabbing death of a white Fairfax County woman by a black convict who is also serving a life sentence. Since 1992, Hager allegedly killed five other people and ordered the slaying of a seventh person. Co-defendants Barnett and Johnson, juveniles, pled guilty and received life sentences for the 1993 murder of Barbara White, a 19-year-old single mother. They stabbed the victim 82 times in her bathtub while her 13 month old daughter was elsewhere in the apartment. Hager, a crack cocaine dealer, was involved in the stabbing. Hager is also serving a minimum 87 year sentence for killing another man in March of 1995. He broke into that victim's apartment and shot him. In 1999 he was convicted of manslaughter in an October 1996 shooting. Hager was involved in crime dating to a conviction for dealing cocaine as a 16-year-old. He was involved in robbing people, including rival drug dealers, of drugs, money and other valuables. Hager is suspected in, but has not been charged in several other killings. He was also involved in other murders in 1992, two in 1996 and 1997. He attempted murder in 1993 by shooting two rival drug dealers. Since being jailed in 1999 he was armed and involved in four assaults. Hager bragged that he trained his juvenile accomplices to be killers. A 28 USC 2255 motion is pending.

| Ebron, Joseph | E.D. TX No. 1:07-CR-142 (1:08-CR-00036) |
|---|---|

| Death row - 2255 | | **Name of AG** Keisler |
|---|---|---|

**Race & gender of def** B  M     **Victim R** BM     **Date of DP notice** 9/11/2007

a USP Beaumont BOP inmate murder. All involved are blacks from Washington DC (the "DC Crew") who were in USP Atlanta, then USP Beaumont, together. The deceased was a government witness against two of Ebron's associates in an aggravated robbery in 1997. Ebron held the deceased while Mosely stabbed him 100 times. Mosely died before he could be charged. Ebron was previously convicted in 1999 of murder. A 28 USC 2255 motion is pending.

| Sanchez, Ricardo | S.D. FL 06-80171-CR-HURLEY/VITUNAC(s)(s) |
|---|---|

| Death Row - 2255 | | **Name of AG** Mukasey |
|---|---|---|

**Race & gender of def** H  M     **Victim R** HF HM     **Date of DP notice** 2/20/2008

gun carjacking murders of a man allegedly involved in cocaine trafficking and his wife and two children, ages 4 and 3 on the Florida Turnpike. All involved are Hispanic. 28 USC 2255 proceedings are pending.

**Authorized Federal Capital Prosecutions With Current Death Sentences - 6/23/2015**

| | |
|---|---|
| Troya, Danny | S.D. FL 06-80171-CR-HURLEY/VITUNAC(s)(s) |

Death Row - 2255                                                   Name of AG   Mukasey

**Race & gender of def**   H   M      **Victim R**   HF HM      **Date of DP notice**   2/20/2008

gun carjacking murders of a man allegedly involved in cocaine trafficking and his wife and two children, ages 4 and 3.  All involved are Hispanic.   28 USC 2255 proceedings are pending.

| | |
|---|---|
| Aquart, Azibo | D. CT 3:06CR160 (PCD) |

Death Row - Appeal                                                Name of AG   Mukasey

**Race & gender of def**   B   M      **Victim R**   BF BM      **Date of DP notice**   1/29/2009

a triple murder of a rival in the drug business, his girlfriend and a visitor, who were bound and gagged and bludgeoned to death with a baseball bat by leaders of a Jamaican drug gang.  All the defendants and victims are black.  The Aquart brothers faced the death penalty. Johnson, who cooperated, did not.  After Azibo's trial, his brother, Azikiwe, entered into a plea agreement and was sentenced to life in prison.  A direct appeal is pending.

| | |
|---|---|
| Snarr, Mark | E.D. TX 1:09-CR-00015-MAC-KFG All |

Death Row - 2255                                                  Name of AG   Filip

**Race & gender of def**   W   M      **Victim R**   BM      **Date of DP notice**   2/13/2009

BOP inmate murder at FCC Beaumont by the alleged founder of the white supremacist group Soldiers of the Aryan Culture, which was formed in the Utah state prison system.  Two BOP guards were stabbed before the murder, but survived after long hospital stays.  Snarr took the keys from a guard and opened the victim's cell door.  Snarr is white, Garcia is Hispanic and the victim is black.  A direct appeal was denied.  A 28 USC 2255 motion is pending.

| | |
|---|---|
| Runyon, David | E.D. VA CR No. 4:08-CR-16 |

Death row - 2255                                                  Name of AG   Mukasey

**Race & gender of def**   A   M      **Victim R**   WM      **Date of DP notice**   7/17/2008

a gun murder for hire in Newport News of a husband.  Catherina Voss was married to the victim and she and her boyfriend Draven contracted with Runyon to kill  Voss' husband.  The alleged motive was to obtain the victim's military benefits.  Voss was sentenced to life  in return for her testimony.  28 USC 2255 proceedings are pending.

| | |
|---|---|
| Garcia, Edgar B. | E.D. TX 1:09-CR-00015-MAC-KFG All |

Death Row - 2255                                                  Name of AG   Filip

**Race & gender of def**   H   M      **Victim R**   BM      **Date of DP notice**   2/13/2009

BOP inmate murder at FCC Beaumont by the alleged founder of the white supremacist group Soldiers of the Aryan Culture, which was formed in the Utah state prison system.  Two BOP guards were stabbed before the murder, but survived after long hospital stays.  Snarr allegedly took the keys from a guard and opened the victim's cell door.  Snarr is white, Garcia is Hispanic and the victim is black.  A direct appeal was denied.  A 28 USC 2255 motion is pending.

**Fell Motion Appendix0176**

**Authorized Federal Capital Prosecutions With Current Death Sentences - 6/23/2015**

| Umana, Alejandro Enrique | W.D. NC No. 3:08-CR-134-RJC |
|---|---|

| Death row - 2255 | **Name of AG** Mukasey |

**Race & gender of def** H  M     **Victim R** HM     **Date of DP notice** 9/23/2008

four murders by members of the MS-13 gang.  Alleged are double murders in 2005 and 2007 and a single murder in 2008.  Umana received the death penalty for a 2007 double murder.  He also allegedly committed two additional uncharged murders.  Fernandez-Gradis was charged in two murders, Gonzalez in one, but they did not face the death penalty.  The district court rejected a claim of intellectual disability.  All involved are Hispanic.  28 USC 2255 proceedings are pending.

| Savage, Kaboni | E.D. PA No. 2:07-CR-00550-RBS |
|---|---|

| Death row - Appeal | **Name of AG** Holder |

**Race & gender of def** B  M     **Victim R** BF BM     **Date of DP notice** 3/14/2011

involves murders allegedly orchestrated by Philadelphia drug kingpin Kaboni Savage, already serving 30 years for drug trafficking.  Thirteen murders are charged, including a 2004 arson fire that killed six people, including four children - ages 15, 12, 10 and 1.  The fire was set to retaliate against a federal informant who was testifying against Savage.  Lewis was tried for a 2001 Philadelphia murder and was acquitted.  Kaboni Savage is charged in twelve murders, Merritt in six, Kidada Savage in six involving the arson and Northington in two.  All involved are black, except one victim, who is an Hispanic male.  A direct appeal is pending.

| Coonce, Wesley Paul Jr. | W.D. MO 10-03029-01/02-CR-S-GAF |
|---|---|

| Death row - Appeal | **Name of AG** Holder |

**Race & gender of def** W  M     **Victim R** HM     **Date of DP notice** 7/22/2011

a BOP murder at the Medical Center in Springfield, Missouri, by two inmates.  Coonce is already serving a life sentence.  The defendants are white, the victim Hispanic.  A direct appeal is pending.

| Hall, Charles Michael | W.D. MO 10-03029-01/02-CR-S-GAF |
|---|---|

| Death row - Appeal | **Name of AG** Holder |

**Race & gender of def** W  M     **Victim R** HM     **Date of DP notice** 7/22/2011

a BOP murder at the Medical Center in Springfield, Missouri, by two inmates.  Hall was serving a sentence of 43 months, which began in 2009.  The defendants are white, the victim Hispanic.  A direct appeal is pending.

| Sanders, Thomas Steven | W.D. LA No. 1:10CR00351 |
|---|---|

| Death row - Appeal | **Name of AG** Holder |

**Race & gender of def** W  M     **Victim R** WF     **Date of DP notice** 8/1/2012

interstate kidnapping from Las Vegas, Nevada, to Arizona to Louisiana and murder of a mother, whose remains were located in Arizona, and a child, a daughter (age 12), whose remains were found in Louisiana.  Attorney General Holder rejected a plea agreement.  All involved are white.  A direct appeal is pending.

**Authorized Federal Capital Prosecutions With Current Death Sentences - 6/23/2015**

| Torrez, Jorge Avila | E.D. VA No. 1:11-CR-115 |
|---|---|

| Death Row - Appeal | | **Name of AG** | Holder |
|---|---|---|---|

**Race & gender of def**  H  M    **Victim R**    WF    **Date of DP notice**  2/9/2012

rape murders by an Hispanic ex-marine already serving life sentences in Virginia for an abduction and rape of a Maryland graduate student.  In 2009, a 20 year old Navy petty officer was raped and murdered on a military base in Arlington.  Previously, two young girls were murdered in Illinois, stabbed in the eye.  The government alleges a DNA link to all.  The victims are all white.  Torrez waived the presentation of mitigating evidence.  A direct appeal is pending.

| Tsarnaev, Dzhokhar | D. MA No. 1:13-CR-10200-GAO |
|---|---|

| Death row - Appeal | | **Name of AG** | Holder |
|---|---|---|---|

**Race & gender of def**  W  M    **Victim R**    WF WM    **Date of DP notice**  1/30/2014

involves one of the two Boston Marathon terrorist bombers, who killed four, including two women, an eight year old boy, and a police officer, and wounded 170, resulting in at least 15 amputations of limbs.  He also is alleged to have attempted to kill another police officer. The defendant is white, of Chechen and Avar descent.  The deceased victims are white and Asian.

**Fell Motion Appendix0178**

**Authorized Federal Capital Prosecutions Which Resulted in**
**Defendant Being Found Not Guilty or Innocent - 6/3/2015**

| Brown, Reginald | E.D. MI CR No. 92-81127 |
|---|---|

| Innocent | | **Name of AG** | Barr |
|---|---|---|---|

**Race & gender of def**  B  M   **Victim R**  BF BM   **Date of DP notice**  8/11/1993

involves eight drug-related gun murders by an innocent gang member. After insisting for nearly two years he had murdered four people, including a child, the government dismissed capital murder charges against a Detroit man and began prosecuting a co-defendant for the same killings. All involved are African-American.

| McKelton, Antonio | E.D. MI CR No. 98-80348 |
|---|---|

| Innocent | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def**  B  M   **Victim R**  BM   **Date of DP notice**  8/31/1998

a bank robbery in which an employee was killed while servicing an ATM machine. McKelton was serving a state sentence for the armed robbery of a jewelry store and was suspected in six other robberies at jewelry stores. McKelton's fingerprint was on the clip inside the gun. The black victim had fired one shot off as he dove to the ground. McKelton, also a black man, suffers from Hodgkin's disease. The defense and the prosecutor jointly petitioned the Attorney General's Committee to withdraw the death penalty request. The request was first denied but was eventually granted. The indictment was later dismissed when additional evidence was uncovered. Two others were subsequently charged.

| Rice, Darrell David | W.D. VA CR No. 02-CR-26 |
|---|---|

| Innocent | | **Name of AG** | Ashcroft |
|---|---|---|---|

**Race & gender of def**  W  M   **Victim R**  WF   **Date of DP notice**  1/31/2003

the 1996 murders of two young female hikers in Virginia's Shenandoah National Park by cutting their throats. The victims were found bound and gagged. According to Attorney General Ashcroft, who announced pursuit of the death penalty himself, Rice has said he hates women and enjoys assaulting the vulnerable and that the two women deserved to die because they were lesbians. Review of tape recordings indicate Rice said only that the governement was portraying him that way. Rice is currently serving a 135 month sentence in federal prison for the 1997 attempted abduction of a female bicyclist in the park. Attorney General Ashcroft stated at a news conference: "We're inclined to prosecute hate crimes like this one, prosecute them to the fullest." All involved are white. Days before the October 2003 trial date the trial was postponed when the FBI "found a new hair" and also re-examined a hair linking Rice to the women and admitted there was no connection. The new hair did not come from Rice or the women. There is male DNA on both ligatures that did not come from Rice. Eventually, the prosecution was dismissed.

**Authorized Federal Capital Prosecutions Which Resulted in a Conviction of a Lesser Offense - 6/3/2015**

| Smith, Howard L. | E.D. VA CR No. 97-341-A |
|---|---|

| Lesser included conviction | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def**  B  M       **Victim R**       BM       **Date of DP notice**  10/3/1997

the stabbing death of a Lorton Correctional Center inmate.  The defendant was serving a 20-to-life sentence for a murder he committed ten years previously, at age 17.  Lorton is the District of Columbia prison complex, but is located in suburban Virginia.  After a one-week 1998 trial, a jury in Alexandria, Virginia, rejected first-degree murder charges and convicted Smith of second-degree murder, which is not a death-eligible offense.  Although a number of Lorton  murders have been prosecuted in federal court since passage of the 1994 Crime Bill, the Smith case was the first approved for capital prosecution.  Smith was sentenced as a "career offender" to life without release.

| Thomas, Christopher | E.D. VA CR No. 99-477-A |
|---|---|

| Lesser included conviction | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def**  B  M       **Victim R**       BM       **Date of DP notice**  2/6/2000

another murder at the District of Columbia Department of Corrections facility in Lorton.  The victim allegedly brought a shank to the fight and the defendant wrestled it from him and stabbed him three times.  Thomas was convicted of second degree murder.  All involved are African-American.  This was Thomas' third murder conviction.

| Irby, James Allen | D. MD No. 8:03-CR-00490-RDB |
|---|---|

| Lesser included conviction | | **Name of AG** | Ashcroft |
|---|---|---|---|

**Race & gender of def**  B  M       **Victim R**       BM       **Date of DP notice**  8/2/2004

the victim was an informant who provided information to the ATF in a DC firearms investigation, which resulted in a search warrant.  Shortly after, the victim, a potential government witness, was found in a burning apartment, shot three times and with 184 stab wounds.  A wired informant obtained an admission from the defendant.  Attorney General Ashcroft rejected an offer to plead guilty to a life sentence.  All involved are black.

**Fell Motion Appendix0180**

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn – 6/3/2015**

| Mathis, Ronald Eugene | M.D. FL CR No. 91-301-CR-T (18) (A) |
|---|---|

| Authorization withdrawn | **Name of AG** Barr |
|---|---|

**Race & gender of def** B  M   **Victim R** BM   **Date of DP notice** 4/22/1992

a black Tampa, Florida drug distributor, for having allegedly ordered a murder in retaliation for the theft of drugs.  Murder for hire is alleged as an aggravating circumstance.  In 1994, the government withdrew its notice of intention to seek the death penalty, and subsequently withdrew the 21 U.S.C. §848(e) homicide count as well.  Trial began on the remaining (noncapital) counts and Mathis was convicted.  This case had been authorized as a capital prosecution by Attorney General Barr in early 1992.prosecution by Attorney General Barr in early 1992.

| Brown, Oliver | E.D. LA CR No. 92-468 |
|---|---|

| Authorization withdrawn | **Name of AG** Barr |
|---|---|

**Race & gender of def** B  M   **Victim R** BM   **Date of DP notice**

two black New Orleans inner-city gang members, in connection with an allegedly drug- related murder.  In 1992, the Government dropped its request for the death penalty in this case.  The defendants subsequently entered pleas to conspiracy to murder and a weapons offense in January, 1993.  Brown received a 10-year sentence; Green received 15 years.

| Carrington, Arleigh | M.D. GA CR No. 92-82MAC-WDO |
|---|---|

| Authorization withdrawn | **Name of AG** Barr |
|---|---|

**Race & gender of def** B  M   **Victim R** BM   **Date of DP notice** 1/20/1993

two black crack cocaine dealers in Macon, Georgia, in connection with the murders of two other crack dealers.  Attorney General Barr authorized this death prosecution in his last week in office.  In 1993, the government dropped its request for the death penalty against these two defendants.  Both 848(e) murder charges were also later withdrawn, and the defendants subsequently pleaded guilty to various narcotics-related charges.

| Chatfield, Tony | M.D. GA CR No. 92-82MAC-WDO |
|---|---|

| Authorization withdrawn | **Name of AG** Barr |
|---|---|

**Race & gender of def** B  M   **Victim R** BM   **Date of DP notice** 1/20/1993

two black crack cocaine dealers in Macon, Georgia, in connection with the murders of two other crack dealers.  Attorney General Barr authorized this death prosecution in his last week in office.  In 1993, the government dropped its request for the death penalty against these two defendants.  Both 848(e) murder charges were also later withdrawn, and the defendants subsequently pleaded guilty to various narcotics-related charges.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn – 6/3/2015**

| Goldston, Anthony | D. DC CR No. 92-CR-284-01 |

Authorization withdrawn                                    Name of AG   Reno

Race & gender of def   B   M        Victim R        BM        Date of DP notice

involves eight killings.  Four African-American D.C. residents who were charged with a total of eight murders as leaders of a District of Columbia drug gang known as the Newton Street Crew.  This case involved a triple slaying in which the killers wrapped the victims' heads in duct tape before shooting them at close range.  Despite authorization to seek the death penalty by Attorney General Barr in 1992, the government did not ultimately request the death penalty at trial.  McCollough participated in five murders.  Goldston founded the gang.  Hoyle ran the gang.  The defendants and victims were all African- Americans.

| Green, William | E.D. LA CR No. 92-468 |

Authorization withdrawn                                    Name of AG   Reno

Race & gender of def   B   M        Victim R        BM        Date of DP notice

two black New Orleans inner-city gang members, in connection with an allegedly drug- related murder.  In 1992, the Government dropped its request for the death penalty in this case.  The defendants subsequently entered pleas to conspiracy to murder and a weapons offense in January, 1993.  Brown received a 10-year sentence; Green received 15 years.

| Harris, Mario | D. DC CR No. 92-CR-284-01 |

Authorization withdrawn                                    Name of AG   Reno

Race & gender of def   B   M        Victim R        BM        Date of DP notice

four African-American D.C. residents who were charged with a total of eight murders as leaders of a District of Columbia drug gang known as the Newton Street Crew.  This case involved a triple slaying in which the killers wrapped the victims' heads in duct tape before shooting them at close range.  Despite authorization to seek the death penalty by Attorney General Barr in 1992, the government did not ultimately request the death penalty at trial.  McCollough participated in five murders.  Goldston founded the gang.  Hoyle ran the gang.  The defendants and victims were all African- Americans.

| Hoyle, Mark | D. DC CR No. 92-CR-284-01 |

Authorization withdrawn                                    Name of AG   Reno

Race & gender of def   B   M        Victim R        BM        Date of DP notice

involves eight killings.  Four African-American D.C. residents who were charged with a total of eight murders as leaders of a District of Columbia drug gang known as the Newton Street Crew.  This case involved a triple slaying in which the killers wrapped the victims' heads in duct tape before shooting them at close range.  Despite authorization to seek the death penalty by Attorney General Barr in 1992, the government did not ultimately request the death penalty at trial.  McCollough participated in five murders.  Goldston founded the gang.  Hoyle ran the gang.  The defendants and victims were all African- Americans.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

| McCollough, John | D. DC CR No. 92-CR-284-01 |
|---|---|

| Authorization withdrawn | Name of AG | Reno |
|---|---|---|

Race & gender of def  B  M       Victim R       BM       Date of DP notice

involves eight killings. Four African-American D.C. residents who were charged with a total of eight murders as leaders of a District of Columbia drug gang known as the Newton Street Crew. This case involved a triple slaying in which the killers wrapped the victims' heads in duct tape before shooting them at close range. Despite authorization to seek the death penalty by Attorney General Barr in 1992, the government did not ultimately request the death penalty at trial. McCollough participated in five murders. Goldston founded the gang. Hoyle ran the gang. The defendants and victims were all African-Americans.

| McCullah, John Javilo | E.D. OK CR No. 1:92-032-S |
|---|---|

| Death Sentence Vacated and Authorization Withdrawn and Authorization Not | Name of AG | Barr and Holder |
|---|---|---|

Race & gender of def  W  M       Victim R       WM       Date of DP notice  9/11/1992

two white and one Hispanic defendants were tried jointly in connection with the drug- related intrastate kidnap/murder of a Muskogee, Oklahoma auto dealership employee. The two capitally-charged "managers" of the drug enterprise, co-defendants Hutching and Molina, received life sentences from the jury, while the third defendant, McCullah (who, unlike the bosses, had been present at the killing) was sentenced to death in 1993. United States v. McCullah, 76 F.3d 1087 (10th Cir. 1996) ordered a new penalty hearing due to introduction of an involuntary statement and double counting of aggravating circumstances. Rehearing en banc was denied by a 6 to 6 vote, 87 F.3d 1136 (6/26/96), and the government declined to seek review in the Supreme Court. The government finally withdrew its request for the death penalty while McCullah's resentencing was pending. The victim was white.

In 2007, McCullah allegedly killed his cellmate in Florida, USP Coleman, after the assault/murder was arranged by two guards. Both McCullah and his deceased cellmate are white. One guard was convicted of murder and sentenced to life in prison.

| Murray, Michael | M.D. PA CR No. 92-200 |
|---|---|

| Authorization withdrawn at trial | Name of AG | Reno |
|---|---|---|

Race & gender of def  B  M       Victim R       BM       Date of DP notice  8/27/1993

a member of an African-American gang headed by one Jonathan Bradley, which involved the killing of a black Harrisburg drug dealer. DOJ declined to approve the U.S. Attorney's request to authorize the death penalty against Bradley, who allegedly ordered the killing, and against another participant in the shooting, Emmanuel S. Harrison. In 1994, after jury selection had already begun, Murray was permitted to plead guilty to a term of years, and the government withdrew its request for the death penalty. Judge Sylvia Rambo rejected the recommended less-than-life sentence and the case was reset for trial. In 1995, the Attorney General instructed the United States Attorney not to seek the death penalty on the eve of a capital trial scheduled to begin on the following Monday.

| Thomas, Vernon | E.D. VA CR No. 3-92-CR- 68 |
|---|---|

| Authorization withdrawn | Name of AG | Barr |
|---|---|---|

Race & gender of def  B  M       Victim R       BF BM       Date of DP notice  10/28/1992

the last of the four Richmond, Virginia defendants in the "Newtown gang case." The government dropped its request for the death penalty, on the eve of Thomas' separate trial from the other three capital defendants, just before an evidentiary hearing to determine whether the death penalty should be barred because Thomas is intellectually disabled.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

| | |
|---|---|
| Chanthadara, Bountaem | D. KS CR No. 94-10129-01 |

| Death Sentence Vacated and Authorization Withdrawn | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def   A   M      Victim R      AF      Date of DP notice   6/2/1995

a "Hobbs Act" case, in which five defendants of Asian descent (Laotian and Vietnamese) were charged with the armed-robbery of a Chinese restaurant and killing co-proprietor Barbara Sun, in Wichita, Kansas in 1994.  Federal jurisdiction was based on the Hobbs Act, 18 U.S.C. § 1951, prohibiting obstruction of inter-state commerce.  The Attorney General's approval of this capital prosecution for Chanthadara and Phouc Nguyen was announced in 1995.  It marked the first time that the Hobbs Act was used to federalize as a capital case a prosecution for murder committed during a commercial robbery.  Chanthadara beat and shot the victim in an attempt to get her to open a safe the female proprietor could not.  Nguyen was present.  Chanthadara's jury recommended the death penalty in 1996.  After a separate trial, Phouc Nguyen's jury sentenced him to life imprisonment.  The Eighth Circuit reversed Chanthadara's death sentence on November 1, 2000.  230 F.3d 1237.  He was sentenced to life in prison in 2002.

| | |
|---|---|
| Tidwell, Tyrone | E.D. PA CR No. 94-353 |

| Authorization withdrawn | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def   B   M      Victim R      BM      Date of DP notice   2/5/1996

a 35 year old African-American beauty salon owner who allegedly was a middle man between crack cocaine organizations in New York and Philadelphia.  Tidwell solicited the killing of two black men in 1989 and 1991, one for selling crack on "his corner" and a second suspected of stealing drugs.  Murder for hire is alleged as an aggravating circumstance.  In 1996, the Attorney General authorized the death penalty for the 1989 homicide.  However, shortly before the defendant's trial, the U.S. Attorney  requested that the death penalty be withdrawn, and the Attorney General approved the request.

| | |
|---|---|
| Wyrick, Kevin | W.D. MO CR No. 94-00194-01 |

| Authorization withdrawn at trial | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def   W   M      Victim R      WM      Date of DP notice   8/22/1995

when the  jury deadlocked on the punishment for the "boss" of a drug ring, Damon Moore, the government announced that it was withdrawing its request for the death penalty for Wyrick, the triggerman.

| | |
|---|---|
| Acosta, John Lefty | D. NM CR No. 95-538-MV |

| Authorization withdrawn | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def   H   M      Victim R      BM HM      Date of DP notice   6/21/1996

murder in the aid of racketeering.  The charges involve an L.A. gang, Sureno 13, moving crack and PCP from L.A. to Albuquerque.  Among the seven murders connected to the gang one was of a high school student and another was a triple homicide.  Five attempted murders were alleged, as well as a conspiracy to kill rival black drug dealers.  Authorization was requested and granted by the Attorney General in 1996, for four of six defendants, but the government later withdrew its request for the death penalty as to one, after he was shown to be uninvolved in one of the two homicides originally charged against him.  The remaining three entered guilty pleas:  Mazzini received 25 years; Najar received 30 years; and De LaTorre received 22 years.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

| DesAnges, Omar | W.D. VA CR No. 95-00046RH |
|---|---|

Authorization withdrawn                                   **Name of AG**   Reno

**Race & gender of def**  B  M      **Victim R**   BM      **Date of DP notice**  10/2/1995

the killing of an African-American, apparently a crack addict, who was a state's witness.  The government withdrew its intention to seek the death penalty shortly before the scheduled April 1996 trial after the Attorney General declined to authorize the death penalty in an unrelated case in the Western District of Virginia, being prosecuted by the same Assistant United States Attorney.  So the United States reached agreement with the defense on the drug distribution charges and agreed the homicide count would be tried as a non-capital case.

| Martin, Roy Ray | N.D. TX CR No. 5-95-CR- 0017-C (Cummings) |
|---|---|

Authorization withdrawn                                   **Name of AG**   Reno

**Race & gender of def**  W  M      **Victim R**   BM      **Date of DP notice**  10/6/1995

a civil rights murder in the fall of 1994.  Three (one white, two Hispanic) young men randomly attacked blacks, killing one and seriously wounding two, in a racially motivated spree in Lubbock, Texas.  Authorization to seek the death penalty was granted by Attorney General Reno in early October, 1995.  The district court granted severance and the first defendant was scheduled for trial but the government withdrew the death penalty notice as to all three defendants who were then joined for trial and convicted.

| Mungia, Eli Trevino | N.D. TX CR No. 5-95-CR-0017-C |
|---|---|

Authorization withdrawn                                   **Name of AG**   Reno

**Race & gender of def**  H  M      **Victim R**   BM      **Date of DP notice**  10/6/1995

a civil rights murder in the fall of 1994.  Three (one white, two Hispanic) young men randomly attacked blacks, killing one and seriously wounding two, in a racially motivated spree in Lubbock, Texas.  Authorization to seek the death penalty was granted by Attorney General Reno in early October, 1995.  The district court granted severance and the first defendant was scheduled for trial but the government withdrew the death penalty notice as to all three defendants who were then joined for trial and convicted.

| Mungia, Ricky Rivera | N.D. TX CR No. 5-95-CR-0017-C |
|---|---|

Authorization withdrawn                                   **Name of AG**   Reno

**Race & gender of def**  H  M      **Victim R**   BM      **Date of DP notice**  10/6/1995

a civil rights murder in the fall of 1994.  Three (one white, two Hispanic) young men randomly attacked blacks, killing one and seriously wounding two, in a racially motivated spree in Lubbock, Texas.  Authorization to seek the death penalty was granted by Attorney General Reno in early October, 1995.  The district court granted severance and the first defendant was scheduled for trial but the government withdrew the death penalty notice as to all three defendants who were then joined for trial and convicted.

| Peng, You Zhong | E.D. NY CR No. 95 0870 |
|---|---|

Authorization withdrawn                                   **Name of AG**   Reno

**Race & gender of def**  A  M      **Victim R**   AF      **Date of DP notice**  7/19/1996

two Chinese gang members who kidnaped intrastate Chinese nationals living in the U.S. for ransom to be paid by relatives in China.  One victim was raped and severely abused before being strangled after her family failed to pay the ransom demanded.  Jia Wu and Fu Xin Chen pled guilty and received life sentences in 1996.  Capital authorization against a third defendant, You Zhong Peng, was withdrawn by the Department of Justice just three days before his scheduled 1997 trial.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn – 6/3/2015**

| Johnson, Darryl Alamont | N.D. IL No. 96 CR 379 |
|---|---|

| Death Sentence Vacated and Authorization Withdrawn | | **Name of AG** | Reno |

**Race & gender of def** B  M       **Victim R**       BM       **Date of DP notice** 10/1/1996

a "Gangster Disciple" drug conspiracy/racketeering murder case. Two homicides were charged, one of a government confidential informant. Co-defendant Quan Ray committed two murders on orders of Mr. Johnson. Four additional homicides were alleged in aggravation. Murder for hire is alleged as an aggravating circumstance. Ray was sentenced to life in prison at a separate trial. Johnson's jury recommended a sentence of death in 1997. Following a 2010 grant of sentencing relief, the government withdrew the notice of intent to seek the death penalty in 2012.

| Williams, Jerry | D. MD CR No. WMN 97-0355 |
|---|---|

| Authorization withdrawn | | **Name of AG** | Reno |

**Race & gender of def** B  M       **Victim R**       BF BM       **Date of DP notice** 3/21/1997

Williams' co-defendant Anthony Jones faced death penalty for three murders, including an allegation that he ordered his step-brother killed from jail because he feared he was about to become a government witness. Williams was charged as the triggerman in a single homicide. Numerous other homicides were alleged in aggravation as to Jones. The cases were severed. Jones was convicted in 1998, and the jury recommended a life sentence. Thereafter, the government withdrew the request for the death penalty as to Williams, who was convicted and is serving a life sentence.

| Westmoreland, Guy | S.D. IL CR No. 98-30022- WDS |
|---|---|

| Authorization withdrawn | | **Name of AG** | Reno |

**Race & gender of def** W  M       **Victim R**       WF       **Date of DP notice** 12/14/1999

the murder of Debra Abeln in East St. Louis, Illinois, in front of her 12 year old son. Co-defendant Richard Abeln confessed to hiring Deandre Lewis, 23, through Westmoreland, to kill his wife. Murder for hire is alleged as an aggravating circumstance. Abeln faced the death penalty but pled guilty and received a life sentence. All involved are white, except Lewis, who is African-American.

| Lewis, Deandre | S.D. IL CR No. 98 30022 WDS |
|---|---|

| Authorization withdrawn | | **Name of AG** | Reno |

**Race & gender of def** B  M       **Victim R**       WF       **Date of DP notice** 12/14/1999

the murder of Debra Abeln in East St. Louis, Illinois, in front of her 12 year old son. Co-defendant Richard Abeln confessed to hiring Deandre Lewis, 23, through Westmoreland, to kill his wife. Abeln faced the death penalty but pled guilty and received a life sentence. Murder for hire is alleged as an aggravating circumstance. All involved are white, except Lewis, who is African-American.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

| | |
|---|---|
| Stitt, Richard Thomas | E.D. VA No. 2:98CR47 |

Authorization withdrawn      **Name of AG**   Reno

**Race & gender of def**   B   M    **Victim R**    BM    **Date of DP notice**   6/23/1998

three homicides and other attempted homicides committed by co-defendants on Stitt's urging. Authorization to seek the death penalty was granted by Attorney General Reno only for Stitt. Four co-defendants did not face the death penalty. Stitt received a sentence of death in 1998 after a joint trial with three of the non-capital codefendants. He has a lengthy record of assaultive conduct. An appeal was rejected by the Fourth Circuit. 250 F.3d 878 (5/25/01). Penalty phase relief was granted in 2255 review on a claim of ineffective assistance of counsel. 369 F.Supp.2d 679 (ED VA 2005). The government withdrew the notice of intent to seek the death penalty in 2010.

| | |
|---|---|
| Marrero, Jose Rodriguez | D. PR CR No. 97-284 (JAF) |

Authorization withdrawn      **Name of AG**   Reno

**Race & gender of def**   H   M    **Victim R**    HM    **Date of DP notice**   12/4/1998

a large scale drug conspiracy and two 1996 killings by Valle-Lassalle and one by the others in 1996. The second was a witness elimination -- the government witness was cut up with a machete. The United States Attorney requested permission to seek the death penalty only against Valle-Lassalle and Rodriguez-Marrero, but the Attorney General required that the USAO also seek the execution of Nieves-Alonso and Pena-Gonzales. Murder for hire is alleged as an aggravating circumstance. All involved are Hispanic. Rodriguez-Marrero is intellectually disabled and authorization to seek the death penalty was withdrawn.

| | |
|---|---|
| Locust, Jeremiah | W.D. NC No. 2:98CR185 |

Authorization withdrawn at trial      **Name of AG**   Reno

**Race & gender of def**   NA   M    **Victim R**    WM    **Date of DP notice**   1/14/1999

the killing of 36 year old, white, National Park Service ranger for the Great Smoky Mountains National Park in 1998 by a Native American who was intoxicated. Locust was threatening visitors to the park with a rifle. Kolodski and other park rangers responded. (Locust fired at another ranger's car smashing the windshield.) Kolodski was wearing a bullet proof vest but the single shot grazed his vest before entering his chest and wounding him fatally. The jury rejected a premeditation theory and the government withdrew its request for the death penalty.

| | |
|---|---|
| Pena-Gonzalez, Nicholas | D. PR CR No. 97-284 (JAF) |

Authorization withdrawn      **Name of AG**   Reno

**Race & gender of def**   H   M    **Victim R**    HM    **Date of DP notice**   12/17/1998

a large scale drug conspiracy and two 1996 killings by Valle-Lassalle and one by the others in 1996. The second was a witness elimination -- the government witness was cut up with a machete. The United States Attorney requested permission to seek the death penalty only against Valle-Lassalle and Rodriguez-Marrero, and the Attorney General required that they also seek the execution of Nieves-Alonso and Pena-Gonzales. Murder for hire is alleged as an aggravating circumstance. All involved are Hispanic. After reviewing evidence that Pena-Gonzales is intellectually disabled, the government withdrew the death notice against him.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

| Perez, Luis Gines | D. PR CR No. 98-164 (DRD) |
|---|---|

| Authorization withdrawn | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** H  M   **Victim R** HM   **Date of DP notice** 4/1/1999

drug smuggling and a single homicide of a co-conspirator. The defendants are Hispanic, college educated businessmen. There was a joint plan to kill and Gines was alleged to have shot the victim on Melendez's boat and together they dumped the body. Authorization was withdrawn when a key government witness flunked a polygraph on whether he was the actual killer.

| Perez, Ricardo Melendez | D. PR CR No. 98-164 (DRD) |
|---|---|

| Authorization withdrawn | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** H  M   **Victim R** HM   **Date of DP notice** 4/1/1999

drug smuggling and a single homicide of a co-conspirator. The defendants are Hispanic, college educated businessmen. There was a joint plan to kill and Gines was alleged to have shot the victim on Melendez's boat and together they dumped the body. Authorization was withdrawn when a key government witness flunked a polygraph on whether he was the actual killer.

| McIntosh, Richard | S.D. IL CR No. 99-40044 and C.D. CA CR No. 02-00938- |
|---|---|

| Authorization withdrawn | | **Name of AG** | Ashcroft |
|---|---|---|---|

**Race & gender of def** W  M   **Victim R** BM   **Date of DP notice** 10/30/2001

three white inmates at USP Marion alleged to be members of the Aryan Brotherhood (AB) who allegedly killed a black BOP inmate. Allegedly, Knorr held the victim while McIntosh stabbed him, on Sahakian's orders. Sahakian is allegedly one of three Aryan Brotherhood commissioners, the leader of the Aryan Brotherhood at Marion. The government claimed the stabbing stems from an Aryan Brotherhood "war" with blacks from the District of Columbia transferred throughout the BOP from the District of Columbia facility at Lorton, Virginia. The defendants were also indicted in the Central District of California in a 2002 RICO indictment of 40 reputed members and associates of the Aryan Brotherhood for a string of murders and violent attacks allegedly designed to expand the power of the white racist prison gang. The Illinois jury could not reach a verdict. All charges were dismissed without prejudice in July 2005 pending the outcome of the Central District of California Aryan Brotherhood prosecution. In December of 2007, after four life sentences at two trials, Attorney General Mukasey authorized prosecutors to abandon pursuit of the death penalty against Aryan Brotherhood members.

| Knorr, Carl | S.D. IL CR No. 99-40044 and C.D. CA CR No. 02-00938- |
|---|---|

| Authorization withdrawn | | **Name of AG** | Ashcroft |
|---|---|---|---|

**Race & gender of def** W  M   **Victim R** BM   **Date of DP notice** 10/30/2001

three white inmates at USP Marion alleged to be members of the Aryan Brotherhood (AB) who allegedly killed a black BOP inmate. Allegedly, Knorr held the victim while McIntosh stabbed him, on Sahakian's orders. Sahakian is allegedly one of three Aryan Brotherhood commissioners, the leader of the Aryan Brotherhood at Marion. The government claimed the stabbing stems from an Aryan Brotherhood "war" with blacks from the District of Columbia transferred throughout the BOP from the District of Columbia facility at Lorton, Virginia. The defendants were also indicted in the Central District of California in a 2002 RICO indictment of 40 reputed members and associates of the Aryan Brotherhood for a string of murders and violent attacks allegedly designed to expand the power of the white racist prison gang. The Illinois jury could not reach a verdict. All charges were dismissed without prejudice in July 2005 pending the outcome of the Central District of California Aryan Brotherhood prosecution. In December of 2007, after four life sentences at two trials, Attorney General Mukasey authorized prosecutors to abandon pursuit of the death penalty against Aryan Brotherhood members. Knorr eventually pled guilty to one count of manslaughter and was sentenced to 138 months.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

Johnson, Angela | N.D. IA No. 3:01-CR-03046-MWB

Authorization withdrawn | **Name of AG** Ashcroft

**Race & gender of def** W F **Victim R** WF WM **Date of DP notice** 4/25/2002

five murders in 1993 of a potential witness, his girlfriend (both meth dealers) and two daughters, in a drug conspiracy case. The fifth victim is Angela Johnson's former boyfriend, another dealer turned informant, who disappeared in November of 1993. Johnson attempted suicide in jail after she was tricked by a jailhouse informant into revealing the location of the bodies. Attorney General Ashcroft rejected Honken's attempt to enter a plea to a life sentence. Attorney General Gonzales rejected Johnson's attempt to enter a plea to a life sentence. Finding ineffective assistance of counsel, the district court in 2012, reversed Johnson's death sentence. 860 F.Supp.2d 663 (ND IA 2012). A resentencing trial was scheduled for 2015 but Attorney General Holder withdrew the Notice of Intent to seek the death penalty .All involved are white.

Williams, Xavier | S.D. NY CR No. 00-CR-1008

Authorization withdrawn | **Name of AG** Ashcroft

**Race & gender of def** B M **Victim R** BM **Date of DP notice** 2/4/2003

involves murder during a narcotics conspiracy. Three black men were killed in 1996. The defendants, two brothers and their father, are also black. Attorney General Ashcroft required a capital prosecution. Shortly before trial, Attorney General Gonzales withdrew the notice of intent to seek the death penalty. Xavier was acquitted of the murders.

Best, Jason | N.D. IN CR No. 2:00CR171RL

Authorization withdrawn | **Name of AG** Ashcroft

**Race & gender of def** B M **Victim R** BM **Date of DP notice** 10/10/2001

a 1999 drug trafficking 924 (c) and (j), gang murder. The gun murder was allegedly revenge for the robbery of drug trafficking proceeds from Best's girlfriend. Best was alleged to be a member of the "Bronx Boys" who was released from prison in 1998 after a two year sentence for cocaine sales. Best pled guilty with others in 1996 after stray shots into a house killed a 10 year old boy in his bed in 1993. Attorney General Ashcroft required a capital prosecution but eventually allowed prosecutor's to dismiss the murder count after Best was given a life sentence after a separate trial in the drug case. Murder for hire is alleged as an aggravating circumstance. All involved are African-American.

Sahakian, David Michael | S.D. IL CR No. 99-40044

Authorization withdrawn | **Name of AG** Ashcroft

**Race & gender of def** W M **Victim R** BM **Date of DP notice** 10/30/2001

three white inmates at Marion alleged to be members of the Aryan Brotherhood (AB) who allegedly killed a COP inmate. Allegedly, Knorr held the victim while McIntosh stabbed him, on Sahakian's orders. Sahakian is allegedly one of three Aryan Brotherhood commissioners, the leader of the Aryan Brotherhood at Marion. The government claims the stabbing stems from an Aryan Brotherhood "war" with blacks from the District of Columbia transferred throughout the BOP from the District of Columbia facility at Lorton, Virginia. The defendants were also indicted in the Central District of California in a 2002 RICO indictment of 40 reputed members and associates of the Aryan Brotherhood for a string of murders and violent attacks allegedly designed to expland the power of the white racist prison gang. The Illinois jury could not reach a verdict. All charges were dismissed without prejudice in July 2005 pending the outcome of the Central District of California Aryan Brotherhood prosecution. In December of 2007, after four life sentences at two trials, Attorney General Mukasey authorized prosecutors to abandon pursuit of the death penalty against Aryan Brotherhood members.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

| Thomas, Keoin | N.D. IN No. 2:01 CR 073 JM |
|---|---|

| Authorization withdrawn at trial | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** B M **Victim R** WM **Date of DP notice** 7/25/2003

a Hobbs Act robbery of a gun store, "Firearms Unlimited," and the killing of the proprietor. 18 U.S.C. §§ 924 and 1951. The defendants are African-American and the victim was white. Taylor was alleged to be more culpable and after the jury voted to sentence him to life in prison, Attorney General Ashcroft approved withdrawal of the "death notice" as to Thomas.

| Lien, David | N.D. CA CR No. 01-CR-20071 |
|---|---|

| Authorization withdrawn | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** A M **Victim R** AM **Date of DP notice** 3/6/2003

Fugitive co-defendant Chang was married to the bomb victim's sister. There were domestic problems and a divorce. Lien was allegedly sent to the victim's home with a bomb inside a toy mechanical dog. The victim later purchased batteries, put them in the toy, which blew up, killing him. The Attorney General required a capital prosecution but authorization was eventually withdrawn by Attorney General Gonzales after the defense argued that Lien didn't know what was in the package.

| Canty, Raymond | E.D. MI CR No. 01-80571 |
|---|---|

| Authorization withdrawn | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** B M **Victim R** BM **Date of DP notice** 2/4/2003

involves a gang called the "Young Boys Inc.". Milton Jones, the alleged kingpin, is charged along with 13 others, including state representative Keith Stallworth, charged with laundering money. Jones wrote an autobiography, "Y.B.I." about his life of crime. Three defendants face the death penalty. Jones is charged with two murders in 1998. Murder for hire is alleged as an aggravating circumstance. Canty and Mitchell are charged with killing another in '97. Canty is also charged in two other murders. Attorney General Ashcroft required a capital prosecution. All involved are African-American. Jones agreed to cooperate with government prosecutors in return for a 30 year sentence and authorization was withdrawn as to Canty and Mitchell.

| Mitchell, Eugene | E.D. MI CR No. 01-80571 |
|---|---|

| Authorization withdrawn | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** B M **Victim R** BM **Date of DP notice** 2/4/2003

involves a gang called the "Young Boys Inc.". Milton Jones, the alleged kingpin, is charged along with 13 others, including state representative Keith Stallworth, charged with laundering money. Jones wrote an autobiography, "Y.B.I." about his life of crime. Three defendants face the death penalty. Jones is charged with two murders in 1998. Murder for hire is alleged as an aggravating circumstance. Canty and Mitchell are charged with killing another in '97. Canty is also charged in two other murders. Attorney General Ashcroft required a capital prosecution. All involved are African-American. Jones agreed to cooperate with government prosecutors in return for a 30 year sentence and authorization was withdrawn as to Canty and Mitchell.

**Fell Motion Appendix0190**

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

McMillian, Christopher | N.D. NY No. 3:00 CR-269

Authorization withdrawn at trial | **Name of AG** Ashcroft

**Race & gender of def** B M | **Victim R** BM | **Date of DP notice** 9/25/2002

murder during a CCE, motivated by a drug rip off. Another drug dealer was tortured and beaten to death and his marijuana, phone, jewelry and $2000 cash were stolen. Attorney General Ashcroft required a capital prosecution against three defendants, later withdrawing the notice of intent as to McMillian, who was found to be intellectually disabled by both the defense and government experts. All involved are African-American.

Green, Darryl | D. MA CR No. 02-CR-10301

Authorization withdrawn | **Name of AG** Ashcroft

**Race & gender of def** B M | **Victim R** BM | **Date of DP notice** 9/18/2003

two members of the Esmond Street Crew charged with the RICO shooting death of a gang rival ("Franklin Hill Giants") during the Caribbean Carnival in 2001. Key witnesses were four members of the gang who have plea agreements with federal prosecutors. Prosecutors allege four other shootings. Family members of the defendants claim the murder was over a girl and not drugs. The grandmother of the victim and the state prosecutor criticized the decision to seek the death penalty. Both defendants grew up in a violent neighborhood and Morris was shot when he was 16. An innocent bystander was spared when a bullet hit his rearview mirror. After the jury hung as to two non-capital defendants at a separate trial, the judge granted a Rule 29 motion for acquittal. The government then dismissed the indictment and allowed the state to prosecute. All involved are African-American.

Morris, Branden | D. MA CR No. 02-CR-10301

Authorization withdrawn | **Name of AG** Ashcroft

**Race & gender of def** B M | **Victim R** BM | **Date of DP notice** 9/18/2003

two members of the Esmond Street Crew charged with the RICO shooting death of a gang rival ("Franklin Hill Giants") during the Caribbean Carnival in 2001. Key witnesses were four members of the gang who have plea agreements with federal prosecutors. Prosecutors allege four other shootings. Family members of the defendants claim the murder was over a girl and not drugs. The grandmother of the victim and the state prosecutor criticized the decision to seek the death penalty. Both defendants grew up in a violent neighborhood and Morris was shot when he was 16. An innocent bystander was spared when a bullet hit his rearview mirror. After the jury hung as to two non-capital defendants at a separate trial, the judge granted a Rule 29 motion for acquittal. The government then dismissed the indictment and allowed the state to prosecute. All involved are African-American.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

| Foster, Aaron Demarco | D. MD CR No. 02-CR-410 |
|---|---|

| Authorization withdrawn | | **Name of AG** | Ashcroft |
|---|---|---|---|

**Race & gender of def** B M   **Victim R** BM   **Date of DP notice** 10/1/2003

leaders of one of West Baltimore's most violent drug gangs, the Lexington Terrace Boys, who are charged in eight killings, including one potential government witness who was killed to prevent him from testifying about an earlier double homicide of two members of a rival gang, the Stricker Street group. Since 1999 the gang operated from the Lexington Terrace and Edgar Allan Poe Homes public housing projects. During trial, the government presented evidence linking the gang to nine killings. Taylor had a direct role in seven. The mitigation evidence focused on the trauma of a childhood growing up in this neighborhood. When Moses was 4, his father was gunned down in a drug hit in the lobby of one of the buildings. Foster was acquitted of attempted murder in state court in 1998. Taylor and Moses were charged together in the double homicide and in a witness killing. There was also an attempted kidnapping of another potential witness to the 2001 killings. The latest victim is the third brother of one family to die on the streets of Baltimore. Investigators claim the group is in some way connected to 40 homicides. Shortly before trial, a critical witness in the case was shot 10 times and killed. He had been shot at twice before. Separate indictments (03-343 and 03-560) charge Kaarman Hawkins, Parker, Foster and Taylor in that case. The jury returned unanimous life verdicts for Moses and Taylor in 5 hours. All involved are African-American.

| Stinson, John William | C.D. CA CR No. 02-00938-GHK |
|---|---|

| Authorization withdrawn at trial | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def** W M   **Victim R** WM   **Date of DP notice** 5/9/2005

a RICO indictment of 40 reputed members and associates of the Aryan Brotherhood [AB] for a string of murders and violent attacks allegedly designed to expand the power of the white racist prison gang, which was founded at San Quentin state prison in 1964. Authorities say the gang has about 100 members. In 1980, the federal faction of the AB allegedly formed a three-man "Commission" to oversee AB members in federal prisons, and, in 1993, the Federal Commission allegedly formed a "Council" to oversee the day-to-day activities of the federal faction. 17 murders were alleged. At least six murders have occurred since 1996. Twenty-seven defendants initially were eligible for the death penalty. Mills and Bingham are alleged to have made all major decisions involving the criminal activities of the federal faction. Mills is also charged with personally committing one murder and involvement in numerous bad acts, as many as a dozen murders. Stinson, Terflinger, Griffin and Chance, allegedly made all major decisions involving the criminal activities of the California faction of the AB. Slocum, a member of both the Federal and California councils allegedly relayed information between the two and is alleged to have participated in actual murders. McElhiney and Sahakian are alleged to be responsible for running the day-to-day operations of the AB at USP Marion in Illinois. Littrell, Roy, West, Grizzle, Kennedy and Filkins are accused of allegedly murdering AB members/inmates who had run afoul of the organization or violated rules. Grizzle allegedly helped Litrell in one strangulation in the victim's cell. Bridgewater, a member of the Federal Council, is alleged to have murdered two black inmates. Campbell is accused of participating in three murders. Stinson, Terflinger, Chance and Burnett are charged with murders of white inmates who had conflicts with the gang. Sahakian, McIntosh and Knorr are accused of murdering a black inmate at Marion and faced federal capital charges at trial in Illinois at which the jury deadlocked. Sahakian faced three additional murder charges in the California indictment. Schwyhart and Hourston are accused of taking part in the murders of two black inmates. Slocum, Bridgewater, Campbell and Houston were also charged with two BOP prison murders of black men in Pennsylvania at Lewisburg's USP. Charges were dismissed in Pennsylvania. AB members selected to face the death penalty were: McIntosh, Knorr, Sahakian, McElhiney, Littrell, Bridgewater, Terflinger, Schwyhart, Houston, Griffin, Chance, Stinson, Mills and Bingham. Mills and Bingham were sentenced to life in prison in 2006, as were Bridgewater and Houston at a separate trial in 2007. In December of 2007, Attorney General Mukasey authorized prosecutors to abandon pursuit of the death penalty against the remaining AB gang members.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

| | |
|---|---|
| Terflinger, Richard Lloyd | C.D. CA No. 02-00938-GHK |

Authorization withdrawn

**Name of AG**   Gonzales

**Race & gender of def**   W   M   **Victim R**   WM   **Date of DP notice**   5/9/2005

a RICO indictment of 40 reputed members and associates of the Aryan Brotherhood [AB] for a string of murders and violent attacks allegedly designed to expand the power of the white racist prison gang, which was founded at San Quentin state prison in 1964. Authorities say the gang has about 100 members. In 1980, the federal faction of the AB allegedly formed a three-man "Commission" to oversee AB members in federal prisons, and, in 1993, the Federal Commission allegedly formed a "Council" to oversee the day-to-day activities of the federal faction. At least six murders have occurred since 1996. Twenty-seven defendants initially were eligible for the death penalty. Mills and Bingham are alleged to have made all major decisions involving the criminal activities of the federal faction. Mills is also charged with personally committing one murder and involvement in numerous bad acts, as many as a dozen murders. Stinson, Terflinger, Griffin and Chance, allegedly made all major decisions involving the criminal activities of the California faction of the AB. Slocum, a member of both the Federal and California councils allegedly relayed information between the two and is alleged to have participated in actual murders. McElhiney and Sahakian are alleged to be responsible for running the day-to-day operations of the AB at USP Marion in Illinois. Littrell, Roy, West, Grizzle, Kennedy and Filkins are accused of allegedly murdering AB members who had run afoul of the organization or violated rules. Grizzle allegedly helped Litrell in one strangulation in the victim's cell. Bridgewater, a member of the Federal Council, is alleged to have murdered two black inmates. Campbell is accused of participating in three murders. Stinson, Terflinger, Chance and Burnett are charged with murders of white inmates who had conflicts with the gang. Sahakian, McIntosh and Knorr are accused of murdering a black inmate at Marion and faced federal capital charges at trial in Illinois at which the jury deadlocked. Sahakian faced three additional murder charges in the California indictment. Schwyhart and Hourston are accused of taking part in the murders of two black inmates. Slocum, Bridgewater, Campbell and Houston were also charged with two BOP prison murders of black men in Pennsylvania at Lewisburg's USP. Charges were dismissed in Pennsylvania. AB members/inmates selected to face the death penalty were: McIntosh, Knorr, Sahakian, McElhiney, Littrell, Bridgewater, Terflinger, Schwyhart, Houston, Griffin, Chance, Stinson, Mills and Bingham. Mills and Bingham were sentenced to life in prison in 2006, as were Bridgewater and Houston at a separate trial in 2007. Charges were ultimately dismissed. In December of 1997, Attorney General Mukasey authorized prosecutors to abandon pursuit of the death penalty against the remaining AB gang members.

| | |
|---|---|
| Griffin, Robert Lee | C.D. CA CR No. 02-00938-GHK |

Authorization withdrawn at trial

**Name of AG**   Gonzales

**Race & gender of def**   W   M   **Victim R**   WM   **Date of DP notice**   6/27/2005

a RICO indictment of 40 reputed members and associates of the Aryan Brotherhood [AB] for a string of murders and violent attacks allegedly designed to expand the power of the white racist prison gang, which was founded at San Quentin state prison in 1964. Authorities say the gang has about 100 members. In 1980, the federal faction of the AB allegedly formed a three-man "Commission" to oversee AB members in federal prisons, and, in 1993, the Federal Commission allegedly formed a "Council" to oversee the day-to-day activities of the federal faction. 17 murders were alleged. At least six murders have occurred since 1996. Twenty-seven defendants initially were eligible for the death penalty. Mills and Bingham are alleged to have made all major decisions involving the criminal activities of the federal faction. Mills is also charged with personally committing one murder and involvement in numerous bad acts, as many as a dozen murders. Stinson, Terflinger, Griffin and Chance, allegedly made all major decisions involving the criminal activities of the California faction of the AB. AB members selected to face the death penalty were: McIntosh, Knorr, Sahakian, McElhiney, Littrell, Bridgewater, Terflinger, Schwyhart, Houston, Griffin, Chance, Stinson, Mills and Bingham. Mills and Bingham were sentenced to life in prison in 2006, as were Bridgewater and Houston at a separate trial in 2007. The Notice of Intent to Seek the Death Penalty was withdrawn as to Griffin, Chance, Stinson and Schwyhart.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

McElhiney, Michael Patrick | C.D. CA No. 02-00938-GHK

Authorization withdrawn                                   **Name of AG**   Gonzales

**Race & gender of def** W  M   **Victim R** WM BM   **Date of DP notice** 10/4/2005

a RICO indictment of 40 reputed members and associates of the Aryan Brotherhood [AB] for a string of murders and violent attacks allegedly designed to expand the power of the white racist prison gang, which was founded at San Quentin state prison in 1964. Authorities say the gang has about 100 members.  In 1980, the federal faction of the AB allegedly formed a three-man "Commission" to oversee AB members in federal prisons, and, in 1993, the Federal Commission allegedly formed a "Council" to oversee the day-to-day activities of the federal faction.  At least six murders have occurred since 1996.  Twenty-seven defendants initially were eligible for the death penalty.  Mills and Bingham are alleged to have made all major decisions involving the criminal activities of the federal faction. Mills is also charged with personally committing one murder and involvement in numerous bad acts, as many as a dozen murders. Stinson, Terflinger, Griffin and Chance, allegedly made all major decisions involving the criminal activities of the California faction of the AB.  Slocum, a member of both the Federal and California councils allegedly relayed information between the two and is alleged to have participated in actual murders.  McElhiney and Sahakian are alleged to be responsible for running the day-to-day operations of the AB at USP Marion in Illinois.  Littrell, Roy, West, Grizzle, Kennedy and Filkins are accused of allegedly murdering AB members who had run afoul of the organization or violated rules.  Grizzle allegedly helped Litrell in one strangulation in the victim's cell.  Bridgewater, a member of the Federal Council, is alleged to have murdered two black inmates.  Campbell is accused of participating in three murders. Stinson, Terflinger, Chance and Burnett are charged with murders of white inmates who had conflicts with the gang.  Sahakian, McIntosh and Knorr are accused of murdering a black inmate at Marion and faced federal capital charges at trial in Illinois at which the jury deadlocked.  Sahakian faces three additional murder charges in the California indictment.  Schwyhart and Hourston are accused of taking part in the murders of two black inmates.  Slocum, Bridgewater, Campbell and Houston were also charged with two BOP prison murders of black men in Pennsylvania at Lewisburg's USP.  Charges were dismissed in Pennsylvania.  AB members/inmates selected to face the death penalty were:  McIntosh, Knorr, Sahakian, McElhiney, Littrell, Bridgewater, Terflinger, Schwyhart, Houston, Griffin, Chance, Stinson, Mills and Bingham.  Mills and Bingham were sentenced to life in prison in 2006, as were Bridgewater and Houston at a separate trial in 2007.  The Notice of Intent to Seek the Death Penalty was also withdrawn as to Griffin, Chance, Stinson and Schwyhart.  Charges were ultimately dismissed against McElhiney.

Chance, David Alan | C.D. CA CR No. 02-00938-GHK

Authorization withdrawn at trial                          **Name of AG**   Gonzales

**Race & gender of def** W  M   **Victim R** WM   **Date of DP notice** 5/9/2005

a RICO indictment of 40 reputed members and associates of the Aryan Brotherhood [AB] for a string of murders and violent attacks allegedly designed to expand the power of the white racist prison gang, which was founded at San Quentin state prison in 1964. In 1980, the federal faction of the AB allegedly formed a three-man "Commission" to oversee AB members in federal prisons, and, in 1993, the Federal Commission allegedly formed a "Council" to oversee the day-to-day activities of the federal faction.  17 murders were alleged. At least six murders have occurred since 1996.  Twenty-seven defendants initially were eligible for the death penalty.  Stinson, Terflinger, Griffin and Chance allegedly made all major decisions involving the criminal activities of the California faction of the AB.  Stinson, Terflinger, Chance and Burnett are charged with murders of white inmates who had conflicts with the gang.  AB members selected to face the death penalty were:  McIntosh, Knorr, Sahakian, McElhiney, Littrell, Bridgewater, Terflinger, Schwyhart, Houston, Griffin, Chance, Stinson, Mills and Bingham.  Mills and Bingham were sentenced to life in prison in 2006, as were Bridgewater and Houston at a separate trial in 2007.  The Notice of Intent to Seek the Death Penalty was withdrawn as to Griffin, Chance, Stinson and Schwyhart after a jury was seated.  The indictment against Chance was dismissed.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

| Schwyhart, Jason Lee | | C.D. CA No. 02-00938-GHK | |
|---|---|---|---|
| Authorization withdrawn | | **Name of AG** | Gonzales |
| **Race & gender of def** W M | **Victim R** BM | **Date of DP notice** 3/4/2005 | |

a RICO indictment of 40 reputed members and associates of the Aryan Brotherhood [AB] for a string of murders and violent attacks allegedly designed to expand the power of the white racist prison gang, which was founded at San Quentin state prison in 1964. Authorities say the gang has about 100 members. In 1980, the federal faction of the AB allegedly formed a three-man "Commission" to oversee AB members in federal prisons, and, in 1993, the Federal Commission allegedly formed a "Council" to oversee the day-to-day activities of the federal faction. 17 murders were alleged. At least six murders have occurred since 1996. Twenty-seven defendants initially were eligible for the death penalty. Mills and Bingham are alleged to have made all major decisions involving the criminal activities of the federal faction. Mills is also charged with personally committing one murder and involvement in numerous bad acts, as many as a dozen murders. Stinson, Terflinger, Griffin and Chance, allegedly made all major decisions involving the criminal activities of the California faction of the AB. Slocum, a member of both the Federal and California councils allegedly relayed information between the two and is alleged to have participated in actual murders. McElhiney and Sahakian are alleged to be responsible for running the day-to-day operations of the AB at USP Marion in Illinois. Littrell, Roy, West, Grizzle, Kennedy and Filkins are accused of allegedly murdering AB members who had run afoul of the organization or violated rules. Grizzle allegedly helped Littrell in one strangulation in the victim's cell. Bridgewater, a member of the Federal Council, is alleged to have murdered two black inmates. Campbell is accused of participating in three murders. Stinson, Terflinger, Chance and Burnett are charged with murders of white inmates who had conflicts with the gang. Sahakian, McIntosh and Knorr are accused of murdering a black inmate at Marion and faced federal capital charges at trial in Illinois at which the jury deadlocked. Sahakian faces three additional murder charges in the California indictment. Schwyhart and Hourston are accused of taking part in the murders of two black inmates. Slocum, Bridgewater, Campbell and Houston were also charged with two BOP prison murders of black men in Pennsylvania at Lewisburg's USP. Charges were dismissed in Pennsylvania. AB members/inmates selected to face the death penalty were: McIntosh, Knorr, Sahakian, McElhiney, Littrell, Bridgewater, Terflinger, Schwyhart, Houston, Griffin, Chance, Stinson, Mills and Bingham. Mills and Bingham were sentenced to life in prison in 2006, as were Bridgewater and Houston at a separate trial in 2007. The Notice of Intent to Seek the Death Penalty was withdrawn as to Griffin, Chance, Stinson and Schwyhart.

| Williams, Vincent | | E.D. PA No. 01-CR-512 | |
|---|---|---|---|
| Authorization withdrawn at trial | | **Name of AG** | Gonzales |
| **Race & gender of def** B M | **Victim R** BF BM | **Date of DP notice** 5/23/2005 | |

a prosecution against a drug gang, the Boyle Street Boys, charging cocaine sales and four gun murders between 1996 and 2002, including the 2001 execution-style slaying of a witness who was killed before she could testify about an illegal gun ring. Brian Rogers, who shot the female victim to prevent her from testifying against Vincent Williams in a federal gun case, reached a plea agreement. Jamain Williams and Andre Cooper allegedly assisted Rogers in that shooting. Vincent Williams and Andre Cooper are charged with the 2000 murder of a teenage drug seller. Vincent Williams was allegedly the shooter. Jamain Williams was allegedly the triggerman in a second 2000 RICO murder. Both Williams and Cooper committed a third RICO murder in 1999. Cooper was allegedly the shooter. All involved are African American. Vincent Williams was found to be intellectually disabled and authorization was withdrawn during trial.

| Cacace, Joel | | E.D. NY No. 1:08-CR-00240-NG and E.D. NY CR No. 03- | |
|---|---|---|---|
| Authorization Withdrawn and Pre-statute retroactive prosecution | | **Name of AG** | Holder and Ashcroft |
| **Race & gender of def** W M | **Victim R** WM | **Date of DP notice** 2/10/2011 | |

#2: eight mob RICO gun murders by members of the Colombo family - one in 1991, three (including a double murder) in 1992, one in 1994, one in 1995, one in 1997 and one in 1998. Calabro is charged in all eight, Gioeli in five, Saracino in four, Competiello in two and Cacace in one, the murder of a police officer, allegedly killed because he married the ex-wife of a mafia member. All involved are white, except for one Hispanic victim.

and #1: two mob murders by the Colombo mafia family.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

| Stone, Samuel | E.D. CA No. 1:12-CR-00072-AWI-DLB |
|---|---|

| Authorization withdrawn | **Name of AG** Holder |
|---|---|

**Race & gender of def** NA M   **Victim R** NAM   **Date of DP notice** 11/22/2011

the 2003 stabbing death of a BOP inmate serving a life sentence, who was housed in SHU at USP Atwater by a cellmate serving a life sentence for a prior murder.  Stone was also convicted of a second prior murder.  Both are Native American but from rival tribes.

| Johnson, John | E.D. LA No. 2:04-CR-00017-HGB-SS |
|---|---|

| Authorization withdrawn | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** B M   **Victim R** WM   **Date of DP notice** 2/1/2005

bank robbery gun murder of an off-duty police officer security guard by convicted felons. Jones, Johnson and Smith entered the Iberia Bank and Smith disarmed the security guard.  Another guard, hidden from view, opened fire, wounding Smith and Johnson, who was unable to flee the bank.  Johnson returned fire, killing one guard and wounding another.  Jones fled the bank but all three defendants were arrested within moments.  The defendants are black and were over 50 years old.  They each have criminal records including bank robbery. The deceased guard is white , the wounded guard is black.  While pending retrial, the government withdrew authorization.

| Mitchell, Willie Edward | D. MD No. 1:04-CR-00029-MJG |
|---|---|

| Authorization withdrawn | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** B M   **Victim R** BF BM   **Date of DP notice** 12/6/2004

racketeering conspiracy, murder in aid of racketeering, drug trafficking and armed robbery charges against the alleged leaders of a violent Northwest Baltimore gang that allegedly used profits from city drug sales to try to make a name in the rap music industry.  They are allegedly responsible for five city homicides, all carried out within a five-month stretch in early 2002.  The killings include the double slaying of an associate of former heavyweight boxing champion Hasim Rahman and an innocent woman the man was dating at the time. Mitchell is described as the head of the group and is the registered agent of a business called Shake Down Entertainment.  Mitchell and Harris are charged in four murders, Gardner in three and Martin in two.  Martin will not face the death penalty.  Gardner is already serving a life sentence in state prison.  The defendants have adopted a "flesh and blood" defense insisting that the Court does not have the jurisdiction and refusing to cooperate with defense counsel.  United States v. Mitchell, 2005 WL 3464983 (D MD).  Without explanation, Attorney General Gonzales withdrew the request to seek the death penalty.  All involved are African American.

| Harris, Shelton Lee | D. MD No. 1:04-CR-00029-MJG |
|---|---|

| Authorization withdrawn | **Name of AG** Ashcroft |
|---|---|

**Race & gender of def** B M   **Victim R** BF BM   **Date of DP notice** 12/6/2004

racketeering conspiracy, murder in aid of racketeering, drug trafficking and armed robbery charges against the alleged leaders of a violent Northwest Baltimore gang that allegedly used profits from city drug sales to try to make a name in the rap music industry.  They are allegedly responsible for five city homicides, all carried out within a five-month stretch in early 2002.  The killings include the double slaying of an associate of former heavyweight boxing champion Hasim Rahman and a woman the man was dating at the time.  Mitchell is described as the head of the group and is the registered agent of a business called Shake Down Entertainment.  Mitchell and Harris are charged in four murders, Gardner in three and Martin in two.  Martin will not face the death penalty.  Gardner is already serving a life sentence in state prison.  The defendants have adopted a "flesh and blood" defense insisting that the Court does not have the jurisdiction and refusing to cooperate with defense counsel.  United States v. Mitchell, 2005 WL 3464983 (D MD).  All involved are African American.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

| | |
|---|---|
| Gardner, Shawn Earl | D. MD No. 1:04-CR-00029-MJG |

| Authorization withdrawn | **Name of AG** | Ashcroft |
|---|---|---|

**Race & gender of def** B  M    **Victim R** BF BM    **Date of DP notice** 12/6/2004

racketeering conspiracy, murder in aid of racketeering, drug trafficking and armed robbery charges against the alleged leaders of a violent Northwest Baltimore gang that allegedly used profits from city drug sales to try to make a name in the rap music industry. They are allegedly responsible for five city homicides, all carried out within a five-month stretch in early 2002. The killings include the double slaying of an associate of former heavyweight boxing champion Hasim Rahman and a woman the man was dating at the time. Mitchell is described as the head of the group and is the registered agent of a business called Shake Down Entertainment. Mitchell and Harris are charged in four murders, Gardner in three and Martin in two. Martin will not face the death penalty. Gardner is already serving a life sentence in state prison. The defendants have adopted a "flesh and blood" defense insisting that the Court does not have the jurisdiction and refusing to cooperate with defense counsel. United States v. Mitchell, 2005 WL 3464983 (D MD). All involved are African American.

| | |
|---|---|
| Bodkins, Lanny Benjamin | W.D. VA No. 4:04-CR-70083-JLK |

| Authorization withdrawn at trial | **Name of AG** | Ashcroft |
|---|---|---|

**Race & gender of def** W  M    **Victim R** BM    **Date of DP notice** 2/17/2005

a 1999 drug related gun murder-for-hire contract on a possible government witness involving interstate stalking. Plunkett, who allegedly hired Taylor, and the victim are black. Bodkins, the alleged triggerman, and Taylor are white. Bodkins and Plunkett were approved for a death penalty trial. Taylor, the driver, was not. The government agreed to withdraw the death penalty after Bodkins testified and expressed remorse.

| | |
|---|---|
| Plunkett, Antoine | W.D. VA No. 4:04-CR-70083-JLK |

| Authorization withdrawn at trial | **Name of AG** | Ashcroft |
|---|---|---|

**Race & gender of def** B  M    **Victim R** BM    **Date of DP notice** 2/17/2005

a 1999 drug related gun murder-for-hire contract on a possible government witness involving interstate stalking. Plunkett, who allegedly hired Taylor, and the victim are black. Bodkins, the alleged triggerman, and Taylor are white. Bodkins and Plunkett were approved for a death penalty trial. Taylor, the driver, was not. The government agreed to withdraw the death penalty after Bodkins testified and expressed remorse.

| | |
|---|---|
| Lopez, Wilver | E.D. NY 2:04-CR-00939-LDW |

| Authorization withdrawn | **Name of AG** | Gonzales |
|---|---|---|

**Race & gender of def** H  M    **Victim R** HM    **Date of DP notice** 7/31/2006

seven members of La Mara Salvatrucha 13, MS-13, accused of gun murders including the shooting and stabbing to death of a female associate suspected of being a police informant. Lopez was captured on a wiretap admitting to shooting a 24 year old man. He stated that Berrios and Salino-Galiano were with him and repeatedly stabbed the victim. Lopez was not charged with the murder of a 16 year old female cooperating witness. The Court set a deadline for a DOJ decision and DOJ responded by filing "Protective Notices of Intent to Seek the Death Penalty," against Lopez, Berrios, Salino-Galiano and Luis. The government withdrew the notices as to all but Lopez. Attorney General Holder withdrew the Notice of Intent to Seek the Death Penalty.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

| | |
|---|---|
| Hall, Eric | D. MD No. JFM-04-0323 |

Authorization withdrawn                                    **Name of AG**   Gonzales

**Race & gender of def** B  M      **Victim R**      BM      **Date of DP notice**  7/14/2006

a RICO prosecution against a drug gang alleged to have committed four gun murders and three attempted murders. The "Rice Organization" is alleged to have trafficked in cocaine and heroin.  Only Hall was chosen to face the death penalty.  After Attorney General Gonzales "authorized" a death penalty prosecution against Hall, a superseding indictment dropped one of the murders.  Eventually, Attorney General Gonzales withdrew the Notice of Intent to Seek the Death Penalty. All involved are African-American.

| | |
|---|---|
| Duncan, Norman | E.D. MI No. 05-80025 |

Authorization withdrawn                                    **Name of AG**   Gonzales

**Race & gender of def** B  M      **Victim R**      BM      **Date of DP notice**  11/1/2006

the 12/14/2001 gun, bank robbery murder of a Total Armed Services (TAS) armored truck which was delivering cash to the Dearborn Federal Credit Union (DFCU) in Dearborn, Michigan.  There were six potential capital defendants.  Three hooded subjects, armed with shotguns, opened fire, fatally wounding a black TAS guard/messenger, the father of five.  The subjects grabbed bags containing $204,000 in currency and a .38 caliber revolver owned by TAS (carried by the victim).  O'Reilly, Duncan and Watson were allegedly directly responsible for the shooting and killing of the TAS messenger.  They will face the death penalty.  O'Reilly, Duncan and Broom also committed a June 19, 2003 robbery, where another guard was seriously wounded and $170,000 was stolen.  Six robbers participated in the DFCU robbery/murder.  They were provided the vehicle by Archie Broom, who worked at a U-Haul facility.  Cromer, Duncan , Broom and O'Reilly were members of the Blue Stone Motorcycle Club (BSMC), a defunct black motorcycle club.  A conversation was recorded between O'Reilly and a confidential informant, wherein O'Reilly said that he and Watson were the subjects who shot the TAS guard and Johnson was the get-away driver.  Duncan was armed and participated in the robberies.  Broom helped get the weapons and supplied the U-Haul used at the DFCU robbery/murder.  Broom obtained a cooperation agreement. Duncan is serving a 12-20 year sentence for an attempted robbery where an accomplice was killed.  O'Reilly is white, the other defendants are black.  O'Reilly and Duncan are alleged to be the most culpable.

| | |
|---|---|
| Watson, Kevin | E.D. MI No. 05-80025 |

Authorization withdrawn                                    **Name of AG**   Gonzales

**Race & gender of def** B  M      **Victim R**      BM      **Date of DP notice**  11/1/2006

the 12/14/2001 gun, bank robbery murder of a Total Armed Services (TAS) armored truck which was delivering cash to the Dearborn Federal Credit Union (DFCU) in Dearborn, Michigan.  There were six potential capital defendants.  Three hooded subjects, armed with shotguns, opened fire, fatally wounding a black TAS guard/messenger, the father of five.  The subjects grabbed bags containing $204,000 in currency and a .38 caliber revolver owned by TAS (carried by the victim).  O'Reilly, Duncan and Watson were allegedly directly responsible for the shooting and killing of the TAS messenger.  They will face the death penalty.  O'Reilly, Duncan and Broom also committed a June 19, 2003 robbery, where another guard was seriously wounded and $170,000 was stolen.  Six robbers participated in the DFCU robbery/murder.  They were provided the vehicle by Archie Broom, who worked at a U-Haul facility.  Cromer, Duncan , Broom and O'Reilly were members of the Blue Stone Motorcycle Club (BSMC), a defunct black motorcycle club.  A conversation was recorded between O'Reilly and a confidential informant, wherein O'Reilly said that he and Watson were the subjects who shot the TAS guard and Johnson was the get-away driver.  Duncan was armed and participated in the robberies.  Broom helped get the weapons and supplied the U-Haul used at the DFCU robbery/murder.  Broom obtained a cooperation agreement. Duncan is serving a 12-20 year sentence for an attempted robbery where an accomplice was killed.  O'Reilly is white, the other defendants are black.  O'Reilly and Duncan are alleged to be the most culpable.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn – 6/3/2015**

| Cheever, Scott | D. KS CR No. 05-10050-01-06-MLB |
|---|---|

Authorization withdrawn at trial **Name of AG** Gonzales

**Race & gender of def** W | M **Victim R** WM **Date of DP notice** 7/8/2005

law enforcement officer victim - A drug manufacturing facility was raided resulting in a shooting and killing of a deputy sheriff while he was attempting to serve a search warrant. It is alleged that Cheever tried to kill three other officers when he was holed up after the initial shooting. Cheever struggled with addiction to methamphetamine since he graduated from high school. The indictment alleges a gun murder in the course of drug trafficking and the murder of a witness, in violation of 18 U.S.C. §§924 and 1512. The government dismissed the federal case as the jury was being selected. All involved are white. Cheever was sentenced to death in state court.

| Hardy, Damion | E.D. NY CR No. 04-706 (S6) (FB) |
|---|---|

Authorization withdrawn **Name of AG** Keisler, AAG

**Race & gender of def** B | M **Victim R** BM **Date of DP notice** 12/10/2007

involves five RICO gun murders by the gang "Cash Money Brothers" who were involved in murder, robbery, kidnapping and drug trafficking in Brooklyn, New York. The indictment alleges one murder in 1999, three in 2000 and one in 2003, four by Hardy, three by Moore, two by Meyers, two by Raheem and one by Sarkissian. There is an uncharged vehicular homicide of an innocent bystander - white male who was run over by one of the gunshot victim's car. Hardy was found incompetent. All involved are black.

| Moore, Eric | E.D. NY CR No. 04-706 (S6) (FB) |
|---|---|

Authorization withdrawn **Name of AG** Keisler, AAG

**Race & gender of def** B | M **Victim R** BM **Date of DP notice** 12/10/2007

involves five RICO gun murders by the gang "Cash Money Brothers" who were involved in murder, robbery, kidnapping and drug trafficking in Brooklyn, New York. The indictment alleges one murder in 1999, three in 2000 and one in 2003, four by Hardy, three by Moore, two by Meyers, two by Raheem and one by Sarkissian. There is an uncharged vehicular homicide of an innocent bystander - white male who was run over by one of the gunshot victim's car. All involved are black.

| Price, Gerard | E.D. NY No. 05-492 |
|---|---|

Authorization withdrawn **Name of AG** Gonzales

**Race & gender of def** B | M **Victim R** BM **Date of DP notice** 11/15/2006

a 1999 drug (crack) related RICO gun murder. The indictment alleges five attempted murders. All involved are black. Attorney General Gonzales required a capital prosecution, but then withdrew the Notice of Intent to seek the death penalty.

**Fell Motion Appendix0199**

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

| Williams, Michael Dennis | | | C.D. CA No. 05-CR-920 | | |
|---|---|---|---|---|---|

Authorization withdrawn **Name of AG** Mukasey

**Race & gender of def** B M **Victim R** HM **Date of DP notice** 5/29/2008

Hobbs Act bank robbery and murder. Robbers armed with high-powered assault rifles ambushed an armored car behind a South Los Angeles bank, killing a guard, a 61 year old father of ten children. The robbers fired more than 50 shots. There were eight men and women who are suspects in this bank robbery murder (including two accomplices in a van and two women watching the bank for the robbers). The robbery/murder was highly coordinated, involving at least three vehicles and surveillance and may involve street gang members. Attorney General Mukasey required a capital prosecution despite a local recommendation that the death penalty not be sought. Attorney General Holder withdrew the request for the death penalty on the first day of trial.

| Johnson, Antoine Lamont | | | C.D. CA No. 05-CR-920 | | |
|---|---|---|---|---|---|

Authorization withdrawn **Name of AG** Mukasey

**Race & gender of def** B M **Victim R** HM **Date of DP notice** 5/29/2008

Hobbs Act bank robbery and murder. Robbers armed with high-powered assault rifles ambushed an armored car behind a South Los Angeles bank, killing a guard, a 61 year old father of ten children. The robbers fired more than 50 shots. There are eight men and women who are suspects in this bank robbery murder (including two accomplices in a van and two women watching the bank for the robbers). The robbery/murder was highly coordinated, involving at least three vehicles and surveillance and may involve street gang members. Attorney General Mukasey required a capital prosecution despite a local recommendation that the death penalty not be sought. Attorney General Holder withdrew the request for the death penalty on the first day of trial.

| Gladding, Noah | | | W.D. NY No. 6:05-CR-06166-CJS | | |
|---|---|---|---|---|---|

Authorization withdrawn **Name of AG** Gonzales

**Race & gender of def** W M **Victim R** WM **Date of DP notice** 7/31/2006

an interstate (Connecticut to New York) kidnapping gun murder motivated by a substantial drug debt. Connelly assisted in the abduction. Gladding hit the victim with a rock. Gladding was the shooter and Howenstine provided the gun. Connelly and Howenstine torched the car afterward. Attorney General Gonzales withdrew the notice of intent to seek the death penalty. All involved are white.

| Johnson, Herman Norman | | | E.D. MI No. 2:05-CR-80337-CGC-SDP | | |
|---|---|---|---|---|---|

Authorization withdrawn **Name of AG** Gonzales

**Race & gender of def** B M **Victim R** OM **Date of DP notice** 5/23/2007

gun murder of a cooperating witness to money laundering and/or installing hidden compartments in vehicles for transporting drugs. The murder weapon was found in Johnson's apartment and gun shot residue on his hoodie. The defendant is black, the victim Chaldean.

**Fell Motion Appendix0200**

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn - 6/3/2015**

| | |
|---|---|
| Jackson, David Lee | E.D. TX No. 1:06-CR-51 |

Death Sentence Vacated and Authorization Withdrawn          **Name of AG**   Gonzales

**Race & gender of def**  B   M        **Victim R**        BM        **Date of DP notice**  1/4/2006

a 1999 BOP inmate stabbing murder at the USP in Beaumont, Texas.  Jackson was incarcerated for a bank robbery.  Co-defendant Gully was in prison for drug trafficking.  Both were sent to ADX in Florence, Colorado after the homicide.  Gully did not face the death penalty.  All involved are black.  A direct appeal was denied.  549 F.3d 963 (5th Cir. 2008).  A 28 USC 2255 motion was granted when the government conceded a Brady error.  He was resentenced to life when the Department of Justice agreed.

| | |
|---|---|
| Peterson, Aquil | N.D. CA No. 05-00324-MMC |

Authorization withdrawn          **Name of AG**   Gonzales

**Race & gender of def**  B   M        **Victim R**        BM        **Date of DP notice**  11/1/2006

a San Francisco based conspiracy from 1994 to 2005 alleging three separate 2002 RICO murders including the killing of a government witness.  18 U.S.C. §1512.  Cyrus faces three murder charges, Peterson faces one.

| | |
|---|---|
| Lopez-Matias, Rodney | D. PR No. 06-368 (JAF) |

Authorization withdrawn          **Name of AG**   Gonzales

**Race & gender of def**  H   M        **Victim R**        HM        **Date of DP notice**  2/6/2007

a carjacking murder.  The victim was stabbed and beaten and then drowned.    The judge dismissed the notice of intent to seek the death penalty because case was authorized without defendants being afforded opportunity to develop and present information during the authorization process.  The First Circuit reversed.  522 F.3d 150 (1st Cir. 2008).  Attorney General Holder withdrew the Notice of Intent to Seek the Death Penalty.  All involved are Hispanic.

| | |
|---|---|
| Riera-Crespo, Eduardo | D. PR No. 06-368 (JAF) |

Authorization withdrawn          **Name of AG**   Gonzales

**Race & gender of def**  H   M        **Victim R**        HM        **Date of DP notice**  2/6/2007

a carjacking murder.  The victim was stabbed and beaten and then drowned.  The judge dismissed the notice of intent to seek the death penalty because case was authorized without defendants being afforded opportunity to develop and present information during the authorization process.  The First Circuit reversed.  522 F.3d 150 (1st Cir. 2008).   Attorney General Holder withdrew the Notice of Intent to Seek the Death Penalty.  All involved are Hispanic.

| | |
|---|---|
| Bacote, Michael | E.D. TX No. 1:08-CR-00036 |

Authorization withdrawn          **Name of AG**   Keisler

**Race & gender of def**  B   M        **Victim R**        BM        **Date of DP notice**  9/11/2007

a USP Beaumont BOP inmate murder.  All involved are blacks from Washington DC (the "DC Crew") who were in USP Atlanta, then USP Beaumont, together.  The deceased was a government witness against two of Ebron's associates in an aggravated robbery in 1997.  Ebron held the deceased while Mosely stabbed him 100 times.  Mosely died before he could be charged.  Ebron was previously convicted in 1999 of murder.  Bacote, who is intellectually disabled, was incarcerated for armed robbery.

**Authorized Federal Capital Prosecutions Where Authorization was Withdrawn – 6/3/2015**

| Burton, Harry | D. MD No. 1:07-CR-00149-WDQ |
|---|---|

| Authorization withdrawn | **Name of AG** Mukasey |
|---|---|

**Race & gender of def** B  M    **Victim R** BF BM    **Date of DP notice** 12/6/2007

three RICO drug related (crack) murders in 2003 by Burton, alleged leader of the "Latrobe organization," a drug and gun gang. Allen Gill is charged in one, the murder of a female, Burton's girlfriend who allegedly set up Burton to be shot. All involved are black. Burton is possibly intellectually disabled. Attorney General Mukasey, on the eve of trial, withdrew the death authorization and authorized a plea to 60 years.

| Smith, Danny Damon | E.D. VA No. 3:07CR433 |
|---|---|

| Authorization withdrawn | **Name of AG** Mukasey |
|---|---|

**Race & gender of def** B  M    **Victim R** BF    **Date of DP notice** 2/20/2008

the gun murder of a female informant in a drug (crack) case.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Zambrano, Jesus | E.D. TX CR No. 9:91-CR4 |
|---|---|

| Guilty plea | **Name of AG** Barr |
|---|---|

**Race & gender of def** H  M     **Victim R**  WM     **Date of DP notice** 4/23/1991

law enforcement officer victim.  Two Hispanic men in Texas were sentenced to life imprisonment and 40 years, respectively, for the marijuana-related  murder of a white law enforcement officer after a joint trial.  The sentencing jury found no aggravating factors.  963 F.2d 725 (5th Cir.), cert. denied, 113 S.Ct. 353 (1992).  A third Hispanic defendant, Jesus Zambrano, was also initially approved for capital prosecution but received a sentence of 30 years after he testified for the government against the Villarreal brothers.

| Culbert, Stacy | E.D. MI CR No. 92-81127 |
|---|---|

| Guilty plea at trial | **Name of AG** Barr |
|---|---|

**Race & gender of def** B  M     **Victim R**  BM     **Date of DP notice** 7/22/1994

involves eight gun murders by a drug gang member.  A prosecutor claimed that the gang was involved in up to 50 murders.

| Johnson, Darryl | W.D. NY CR No. 92-159-C |
|---|---|

| Guilty plea | **Name of AG** Reno |
|---|---|

**Race & gender of def** B  M     **Victim R**  BM     **Date of DP notice** 7/29/1993

an African-American from the West Coast charged with two cocaine-related killings by a California and Tennessee connected, Buffalo, New York group, suspected in as many as five other murders.  Murder for hire is alleged as an aggravating circumstance.  A guilty plea was entered in 1995 on the morning of trial.  The defendant was sentenced to life imprisonment.

| O'Bryant, Lonnie | E.D. MI CR No. 92-81127 |
|---|---|

| Guilty plea | **Name of AG** Barr |
|---|---|

**Race & gender of def** B  M     **Victim R**  BM     **Date of DP notice** 8/11/1993

involves eight gun murders by a drug gang member.  A prosecutor claimed that the gang was involved in up to 50 murders.

| Perry, Wayne Anthony | D. DC CR No. 92-474 |
|---|---|

| Guilty plea | **Name of AG** Reno |
|---|---|

**Race & gender of def** B  M     **Victim R**  BF BM     **Date of DP notice** 6/8/1993

involves eight killings and a hitman for a D.C. cocaine distribution ring between 1989-1991, facing eight homicide counts.  Murder for hire is alleged as an aggravating circumstance.  In 1994, the defendant pleaded guilty to five homicide counts in exchange for the government's dropping the death penalty.  He received five consecutive nonparolable life sentences and was sent to the federal "super max" prison in Colorado, ADX Florence.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Williams, Michael | E.D. MI CR No. 92-81127 |
|---|---|

| Guilty plea | **Name of AG** Barr |
|---|---|

**Race & gender of def** B  M   **Victim R** BM   **Date of DP notice** 8/11/1993

involves eight gun murders by a drug gang member.  A prosecutor claimed that the gang was involved in up to 50 murders.

| Wilkes, Charles | E.D. MI CR No. 92-81127 |
|---|---|

| Guilty plea | **Name of AG** Barr |
|---|---|

**Race & gender of def** B  M   **Victim R** BM   **Date of DP notice** 5/19/1994

involves eight gun murders by a drug gang member.  A prosecutor claimed that the gang was involved in up to 50 murders.

| McCauley, Donzell M. | D. DC CR No. 94-121 |
|---|---|

| Guilty plea | **Name of AG** Reno |
|---|---|

**Race & gender of def** B  M   **Victim R** WM   **Date of DP notice** 3/24/1995

law enforcement officer victim - a young black man from the District of Columbia who struggled with and shot to death a police officer. Attorney General Reno required a capital prosecution for the murder of a white law enforcement police officer despite the U.S. Attorney's initial decision that the death penalty not be sought.  This authorization marked the first time in the post-Gregg era of capital punishment that the Attorney General required a capital prosecution in a federal criminal case despite the initial opposition of the local U.S. Attorney. Subsequently, the defendant entered a plea of guilty and was sentenced to life imprisonment.

| Vest, James | W.D. MO CR No. 94-00037-04 |
|---|---|

| Guilty plea | **Name of AG** Reno |
|---|---|

**Race & gender of def** W  M   **Victim R** HM   **Date of DP notice** 10/28/1994

three white brothers from Kansas City who were approved for a capital prosecution in 1994.  They were charged with the well- planned double homicide of two Mexican drug dealers.  Graves were dug and the victims abducted and bound with duct tape, suffocating to death. A fourth brother, Darrell Vest, did not face the death penalty.  One defendant was also charged with a separate murder count in another drug rip-off.  Guilty pleas were negotiated for all three.

| Vest, Mark | W.D. MO CR No. 94-00037-04 |
|---|---|

| Guilty plea | **Name of AG** Reno |
|---|---|

**Race & gender of def** W  M   **Victim R** HF HM   **Date of DP notice** 10/28/1994

three white brothers from Kansas City who were approved for a capital prosecution in 1994.  They were charged with the well- planned double homicide of two Mexican drug dealers.  Graves were dug and the victims abducted and bound with duct tape, suffocating to death. A fourth brother, Darrell Vest, did not face the death penalty.  One defendant was also charged with a separate murder count in another drug rip-off.  Guilty pleas were negotiated for all three.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Vest, Steven | W.D. MO CR No. 94-00037-04 |
|---|---|

| Guilty plea | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** W M   **Victim R** HM   **Date of DP notice** 10/28/1994

three white brothers from Kansas City who were approved for a capital prosecution in 1994. They were charged with the well- planned double homicide of two Mexican drug dealers. Graves were dug and the victims abducted and bound with duct tape, suffocating to death. A fourth brother, Darrell Vest, did not face the death penalty. One defendant was also charged with a separate murder count in another drug rip-off. Guilty pleas were negotiated for all three.

| Bonds, Andre | E.D. MO CR No. 4:95CR332 |
|---|---|

| Guilty plea | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** B M   **Victim R** WF   **Date of DP notice** 2/9/1996

a black teenager in an interstate carjacking case involving an 18 year old African-American defendant (and his 16 year old co-defendant) who allegedly killed one white female, took her car across state lines, kidnaping and raping her girlfriend - another Caucasian. Mr. Bonds pled guilty in 1996 and was sentenced to life imprisonment.

| Chen, Fu Xin | E.D. NY CR No. 95 0870 |
|---|---|

| Guilty plea | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** A M   **Victim R** AF   **Date of DP notice** 7/9/1996

two Chinese gang members who kidnaped intrastate Chinese nationals living in the U.S. for ransom to be paid by relatives in China. One victim was raped and severely abused before being strangled after her family failed to pay the ransom demanded. Jia Wu and Fu Xin Chen pled guilty and received life sentences in 1996. Capital authorization against a third defendant, You Zhong Peng, was withdrawn by the Department of Justice just three days before his scheduled 1997 trial.

| Chen, Jia Wu | E.D. NY CR No. 95 0870 |
|---|---|

| Guilty plea | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** A M   **Victim R** AF   **Date of DP notice** 7/9/1996

two Chinese gang members who kidnaped intrastate Chinese nationals living in the U.S. for ransom to be paid by relatives in China. One victim was raped and severely abused before being strangled after her family failed to pay the ransom demanded. Jia Wu and Fu Xin Chen pled guilty and received life sentences in 1996. Capital authorization against a third defendant, You Zhong Peng, was withdrawn by the Department of Justice just three days before his scheduled 1997 trial.

| Damon, Marvin | E.D. VA CR No. 3:95CR45 |
|---|---|

| Guilty plea | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** B M   **Victim R** BM   **Date of DP notice** 8/9/1995

two members of a drug ring, from Richmond, Virginia, African-American, 52 and 30 years old, charged with the distribution of heroin, mainly in one housing development in Richmond where another African-American was shot to death in 1994 by Damon, at co-defendant Williams' request. The government alleged numerous other homicides committed by Damon as Williams' enforcer. Damon agreed to plead guilty, attempted suicide and finally entered a plea. Damon has a low IQ which played a role in resolving the case short of trial. Williams pled guilty after a jury was seated.

**Fell Motion Appendix0205**

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| DeLaTorree, Jason | D. NM CR No. 95-538-MV |
|---|---|

| Guilty plea at trial | | Name of AG | Reno |
|---|---|---|---|

**Race & gender of def** H  M   **Victim R** HM   **Date of DP notice** 6/21/1996

murder in the aid of racketeering.  The charges involve an L.A. gang, Sureno 13, moving crack and PCP from L.A. to Albuquerque.  Among the seven murders connected to the gang one was of a high school student and another was a triple homicide.  Five attempted murders were alleged, as well as a conspiracy to kill rival black drug dealers.  Authorization was requested and granted by the Attorney General in 1996, for four of six defendants, but the government later withdrew its request for the death penalty as to one, after he was shown to be uninvolved in one of the two homicides originally charged against him.  The remaining three entered guilty pleas:  Mazzini received 25 years; Najar received 30 years; and De LaTorre received 22 years.

| Fleming, Lamont | E.D. NC CR No. 4:95-CR-41-1-H-2 |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

**Race & gender of def** B  M   **Victim R** BF BM   **Date of DP notice** 6/21/1996

involves a crack cocaine conspiracy alleging four 1995 murders by an African-American gang originating in Brooklyn, New York.  Fleming, Gist and co-defendant Linton were triggermen.  DOJ did not authorize capital prosecutions against four other defendants, including Linton.  Guilty pleas were entered by the two capital defendants who were charged in two murders.  The two capital homicides involved the separate murders of two participants in a prior drug-related murder.  All involved are black.

| Gist, Cory | E.D. NC CR No. 4:95-CR-41-1-H-2 |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

**Race & gender of def** B  M   **Victim R** BF BM   **Date of DP notice** 6/21/1996

involves a crack cocaine conspiracy alleging four 1995 murders by an African-American gang originating in Brooklyn, New York.  Fleming, Gist and co-defendant Linton were triggermen.  DOJ did not authorize capital prosecutions against four other defendants, including Linton.  Guilty pleas were entered by the two capital defendants who were charged in two murders.  The two capital homicides involved the separate murders of two participants in a prior drug-related murder.  All involved are black.  Attorney General Reno required a capital prosecution as to Gist.

| Haworth, Richard | D. NM CR No. 95-491 LH |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

**Race & gender of def** W  M   **Victim R** WM HM   **Date of DP notice** 2/14/1996

Haworth was the leader of a New Mexico drug trafficking conspiracy, during the course of which he murdered at least three individuals (two Hispanic, one Anglo).  The government dropped its request for the death penalty in exchange for his plea and a life sentence on the eve of his scheduled trial in February, 1997.  After six weeks of jury selection, the government accepted Spivey's guilty plea to a single homicide count and a 30-year sentence.   Both Haworth and Spivey are white.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Mazzini, Marcos | D. NM CR No. 95-538-MV |
|---|---|

| Guilty plea | **Name of AG** Reno |
|---|---|

**Race & gender of def** H  M     **Victim R** BM HM     **Date of DP notice** 6/21/1996

murder in the aid of racketeering. The charges involve an L.A. gang, Sureno 13, moving crack and PCP from L.A. to Albuquerque. Among the seven murders connected to the gang one was of a high school student and another was a triple homicide. Five attempted murders were alleged, as well as a conspiracy to kill rival black drug dealers. Authorization was requested and granted by the Attorney General in 1996, for four of six defendants, but the government later withdrew its request for the death penalty as to one, after he was shown to be uninvolved in one of the two homicides originally charged against him. The remaining three entered guilty pleas: Mazzini received 25 years; Najar received 30 years; and De LaTorre received 22 years.

| Najar, Vincent | D. NM CR No. 95-538-MV |
|---|---|

| Guilty plea | **Name of AG** Reno |
|---|---|

**Race & gender of def** H  M     **Victim R** BM     **Date of DP notice** 6/21/1996

murder in the aid of racketeering. The charges involve an L.A. gang, Sureno 13, moving crack and PCP from L.A. to Albuquerque. Among the seven murders connected to the gang one was of a high school student and another was a triple homicide. Five attempted murders were alleged, as well as a conspiracy to kill rival black drug dealers. Authorization was requested and granted by the Attorney General in 1996, for four of six defendants, but the government later withdrew its request for the death penalty as to one, after he was shown to be uninvolved in one of the two homicides originally charged against him. The remaining three entered guilty pleas: Mazzini received 25 years; Najar received 30 years; and De LaTorre received 22 years.

| Spivey, Everett | D. NM CR No. 95-491 |
|---|---|

| Guilty plea at trial | **Name of AG** Reno |
|---|---|

**Race & gender of def** W  M     **Victim R** WM     **Date of DP notice** 2/14/1996

Haworth was the leader of a New Mexico drug trafficking conspiracy, during the course of which he murdered at least three individuals (two Hispanic, one Anglo). The government dropped its request for the death penalty in exchange for his plea and a life sentence on the eve of his scheduled trial in February, 1997. After six weeks of jury selection, the government accepted Spivey's guilty plea to a single homicide count and a 30-year sentence. Both Haworth and Spivey are white.

| Williams, Robert Russell | E.D. VA No. 3:95CR45 |
|---|---|

| Guilty plea at trial | **Name of AG** Reno |
|---|---|

**Race & gender of def** B  M     **Victim R** BM     **Date of DP notice** 8/9/1995

two members of a drug ring, from Richmond, Virginia, African-American, 52 and 30 years old, charged with the distribution of heroin, mainly in one housing development in Richmond where another African-American was shot to death in 1994 by Damon, at co-defendant Williams' request. The government alleged numerous other homicides committed by Damon as Williams' enforcer. Murder for hire is alleged as an aggravating circumstance. Damon agreed to plead guilty, attempted suicide and finally entered a plea. Williams pled guilty after a jury was seated.

**Fell Motion Appendix0207**

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Beckford, Devon Dale | E.D. VA CR No. 3:95CR00087 |
|---|---|

| Guilty plea | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def**  B  M    **Victim R**    BM    **Date of DP notice** 9/19/1997

another New York - Richmond cocaine connection was uncovered which involved members of a Brooklyn gang, all African-American, who transported crack cocaine to Richmond, Virginia.  The 32-count indictment charged five of the alleged members of the so-called "Poison Clan" with capital murder in six killings, two in 1988 and four in 1994.  (Devon Dale Beckford, 33, brother of Dean Beckford, identified by the FBI as a gang leader was not arrested until July, 1997.)  Murder for hire is alleged as an aggravating circumstance.  After a seven-week trial, a jury declined to impose the death penalty on all four defendants:  Dean Beckford, 32, Leonel Romeo Cazaco, 22, Claude Gerald Dennis, 28 and Richard Thomas, 22.   Dean Beckford and Claude Dennis were found guilty of the 1998 double murder. (Dennis had previously been acquitted on these charges in state court in 1989.)  Cazaco and Thomas were also convicted of a capitol charge.  Thomas had been acquitted in state court on the one homicide count on which he was convicted in federal court.

| Bennett, Daniel Ray | C.D. CA CR No. 96-1140(A)-ER |
|---|---|

| Guilty plea | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def**  B  M    **Victim R**    BM    **Date of DP notice** 3/27/1997

an African-American drug boss and a hitman, in this first Ninth Circuit case to be authorized for death penalty prosecution, Stanley was accused of hiring Bennett to murder a former member of Stanley's drug trafficking operation in Las Vegas, Nevada.  Government court filings indicated that the murder conspiracy was monitored by wiretap.  Murder for hire is alleged as an aggravating circumstance.  Both pled guilty.  Attorney General Reno required a capital prosecution.

| Cable, Donald Thomas | M.D. TN CR No. 3:96- 00004 |
|---|---|

| Guilty plea | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def**  W  M    **Victim R**    WF    **Date of DP notice** 2/27/1998

the 1995 killing of a federal grand jury investigation witness two days before her testimony.  The female victim was in her early 40's and white, as are all the defendants.  Cable was the triggerman who is said to have stabbed the victim to death.  Dugger hired Cable after one David Day, the government's key witness, hired Dugger on behalf of a large-scale methamphetamine dealer, Tim Holloway.  Dugger was in poor health (a recent liver transplant) and allegedly incompetent.  Day received a 20 year sentence as a government witness.

| Clary, Moses | D. NJ CR No. 96-576 (Rodriguez) |
|---|---|

| Guilty plea | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def**  B  M    **Victim R**    WF BM    **Date of DP notice** 10/29/1997

a 19-year-old African-American defendant with a history of intellectual disability was charged with complicity because his deceased co-conspirator shot a security  guard during a  robbery of an armed car in a suburban Camden, N.J. shopping mall.  The male victim was black and seventeen.  A white bystander, a 14 year old girl, was accidentally shot and killed by the security guard during the robbery. Clary accepted an offer of life in 1998, attempted to withdraw it, and was refused.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Cuff, John | S.D. NY CR No. 96 CR 515 (MJW) |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

**Race & gender of def** B M   **Victim R** BF BM   **Date of DP notice** 12/11/1997

a CCE prosecution of the leaders of a drug organization which operated in the Bronx and Manhattan for a decade. Heatley, 43, ordered 14 homicides, admitting involvment in 13, ten of which were carried out by Cuff, who acted as Mr. Heatley's bodyguard and driver. Cuff had been a housing police officer from 1982 until 1986. Heatley pled guilty in return for a life sentence. On the 1999 trial date, Cuff also pled guilty. He also received a life sentence. Heatley has a serious history of crimes of violence, but was previously acquitted four times in state court trials.

| Kaczynski, Theodore John | E.D. CA CR No. S-96-259 |
|---|---|

| Guilty plea at trial | | Name of AG | Reno |
|---|---|---|---|

**Race & gender of def** W M   **Victim R** WM   **Date of DP notice** 5/15/1997

the Unabomber case. The defendant faced capital indictments in two federal districts, Eastern District of California and District of New Jersey, for terrorist mail bombings over a period of 18 years. Three men were killed, in California and New Jersey, and 29 were injured, including one man whose arm was blown off and another who lost a hand. A plea was negotiated as opening statements were about to commence and after a BOP psychiatrist had confirmed defense experts' findings that the former Berkeley professor suffered from paranoid schizophrenia. Kaczynski tried, but failed, to withdraw his guilty plea. 2001 WL 114688 (9th Cir. 2001). He remains at ADX Florence.

| Montanez, Ian Rosario | D. PR CR No. 96-001 (PG) |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

**Race & gender of def** H M   **Victim R** HM   **Date of DP notice** 1/21/1997

the first death penalty case to be authorized in a Puerto Rico federal court. The Attorney General required a capital prosecution against the alleged triggerman in a bank robbery during which a security guard was killed and several bystanders injured. Montanez pled guilty in April 1998 to a life sentence.

| Ortiz-Velez, Felix | M.D. PA CR No. 3-CR-96-005 (Rambo) |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

**Race & gender of def** H M   **Victim R** HM   **Date of DP notice** 6/25/1997

two drug-related murders, one involving torture. Murder for hire is alleged as an aggravating circumstance. Ortiz pled guilty to being an "enforcer," acting on the instructions of Mr. Otero, who also pled guilty. Otero's homicide counts were dismissed although both received life sentences, Otero on the drug case.

| Otero, Julio | M.D. PA CR No. 3-CR-96-005 |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

**Race & gender of def** H M   **Victim R** HM   **Date of DP notice** 6/25/1997

two drug-related murders, one involving torture. Murder for hire is alleged as an aggravating circumstance. Ortiz pled guilty to being an "enforcer," acting on the instructions of Mr. Otero, who also pled guilty. Otero's homicide counts were dismissed although both received life sentences, Otero on the drug case.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Stanley, Edward | C.D. CA CR No. 96-1140(A)-ER |
|---|---|

| Guilty plea | Name of AG | Reno |
|---|---|---|

Race & gender of def  B  M    Victim R    BM    Date of DP notice  3/27/1997

an African-American drug boss and a hitman.  United States v. Daniel Ray Bennett and Edward Stanley (C.D. CA CR No. 96-1140(A)).  In this first Ninth Circuit case to be authorized for death penalty prosecution, Stanley was accused of hiring Bennett to murder a former member of Stanley's drug trafficking operation in Las Vegas, Nevada.  Murder for hire is alleged as an aggravating circumstance.  Government court filings indicated that the murder conspiracy was monitored by wiretap.  Both pled guilty.  Attorney General Reno required a capital prosecution.

| Storey, Gregory | D. KS CR No. 96-40018-01-OES |
|---|---|

| Guilty plea | Name of AG | Reno |
|---|---|---|

Race & gender of def  W  M    Victim R    WM    Date of DP notice  10/18/1996

a white prison inmate who killed another white prisoner at the United States Penitentiary at Leavenworth.  Storey may have had Aryan Brotherhood ties.  The death penalty was initially sought.  However, the prosecution ended in a negotiated guilty plea to second degree murder in 1997.  Storey was sentenced to 327 months, to run consecutive to sentences imposed in Nevada and Colorado.  He subsequently was an unindicted co-conspirator in a 2002 nationwide Aryan Brotherhood RICO indictment in Los Angeles, in 2002, involving 40 reputed members and associates of the Aryan Brotherhood for a string of murders and violent attacks allegedly designed to expand the power of the white racist prison gang.

| Walter, Abram | D. AK CR No. F96-026 (HRH) |
|---|---|

| Guilty plea | Name of AG | Reno |
|---|---|---|

Race & gender of def  W  M    Victim R    NAF    Date of DP notice  2/20/1997

a white survivalist, charged with the robbery murder of a native Alaskan storekeeper whose remote outpost in a roadless Alaskan wilderness served as a U.S. Post Office.  The Attorney General required a capital prosecution.

| Frank, Deric | S.D. NY No. 97 CR 269 (DLC) |
|---|---|

| Guilty plea at trial | Name of AG | Reno |
|---|---|---|

Race & gender of def  B  M    Victim R    BF    Date of DP notice  11/18/1997

domestic killing - a 1997 intrastate kidnaping of a (former) girlfriend. The defendants assaulted her and took her to the Bronx where she was burned alive in the trunk of her car.  There were many orders of protection of the deceased due to repeated domestic violence complaints against Frank.  Both the defendants, and the victim, 24, are black.  Deric Frank was authorized for a federal capital prosecution, pled guilty and cooperated against Bailey.  Bailey was sentenced to life in prison, but did not face the death penalty.  Frank was sentenced to 25 years.  All involved were African-American.

**Fell Motion Appendix0210**

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Heatley, Clarence | S.D. NY CR No. 96 CR 515 (MJW) |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def  B  M   Victim R  BM HM   Date of DP notice  12/11/1997

a CCE prosecution of the leaders of a drug organization which operated in the Bronx and Manhatten for a decade.  Heatley, 43, ordered 14 homicides, ten of which were carried out by Cuff, a former policeman.  Heatley pled guilty in return for a life sentence.  On the 1999 trial date, Cuff also pled guilty.  He also received a life sentence.  Heatley has a serious history of crimes of violence, but was previously acquitted four times in state court trials.

| Holland, Charles | N.D. AL CR No. 96-B-0208-NE |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def  W  M   Victim R  WM   Date of DP notice  11/14/1997

the 1991 killing of an informant in a drug conspiracy case who had been given a new identity and sent out of state.  However, he returned and was spotted at a flea market in Ft. Payne.  The drug ring boss, Marvin Holley, and Holland kidnaped (intrastate) the victim and killed him with a hammer.  Holley's trial in 1998 resulted in a life sentence.  All involved are white.

| Lam, Tanh Huu | E.D. CA CR No. S 97-054-WBS |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def  A  M   Victim R  AF   Date of DP notice  12/18/1998

the throwing of a Molotov cocktail through a dining room window.  One victim, a 9 year old Asian female, was killed.  Others were injured.  The target was alleged to be a man who had an affair with Lam's wife.  There were two cars seen at the time of the bombing/arson.  Authorization for Lam was initially not sought or granted.  The jury deadlocked at Lam's first trial.  The government then produced a new individual who tape-recorded Lam talking about setting up another arson.  The Attorney General Reno gave the go-ahead to seek the death penalty at a retrial, but a conditional guilty plea was entered.  Federal jurisdiction is based on the happenstance that an apartment building was bombed.  All involved were Vietnamese.

| Reader, Arthur Charles | E.D. TX CR No. 5:97 CR 15 |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def  B  M   Victim R  BF   Date of DP notice  none filed

the abduction of a 27 year old African-American female by her 35 year old African-American boyfriend in Texarkana, Texas.  After crossing the line over into Texarkana, Arkansas, the victim was stabbed eighty four times, hit in the head with a brick and left to die.  The defendant allegedly would not tell law enforcement officials where she was because he wanted her to die.

| Wooldridge, Steven W. | W.D. AR CR No. 4:97 CR 40013-001 |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def  W  M   Victim R  WF   Date of DP notice  1/5/1998

a Ft. Smith, Arkansas interstate kidnaping, sexual attack and murder.  Wooldridge asked for directions from the female victim in her front yard in Texarkana, Arkansas.  He then forced her into his vehicle and took her to a storage shed in Texas where he may have sexually assaulted her.  Eventually, Wooldridge took his victim to another location and killed her.  Wooldridge confessed, denying sexual assault.  All involved are white.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

---

| Black, Douglas | | D. CO No. 98-CR-196 |
|---|---|---|

| Guilty plea | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** W M   **Victim R** WM   **Date of DP notice** none filed

two "super-max", Florence, Colorado inmates, who attacked two suspected snitches. One inmate, an ex-police officer, was murdered. Another inmate survived the attack. The stabbing was witnessed by prison staff who were assaulted when they tried to get Riddle off the victim. The United States Attorney did not seek permission to ask for the death penalty but the Attorney General required a capital prosecution. Riddle negotiated a 168 month sentence. Black agreed to plead to aggravated assault in return for a sentence of no more than 84 months. Black had a prior murder. Riddle had a record of crimes in and out of prison. Black's sentence was 78 consecutive months.

---

| Holloway, Tim | | M.D. TN CR No. 3:96-00004 |
|---|---|---|

| Guilty plea | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** W M   **Victim R** WF   **Date of DP notice** 2/27/1998

the 1995 killing of a federal grand jury investigation witness two days before her testimony. The female victim was in her early 40's and white, as are all the defendants. Cable is the triggerman who is said to have stabbed the victim to death. Dugger hired Cable after one David Day, the government's key witness, hired Dugger on behalf of a large-scale methamphetamine dealer, Tim Holloway. Dugger was in poor health (a recent liver transplant) and allegedly incompetent. Day received a 20 year sentence as a government witness.

---

| Kauffman, Christopher | | S.D. IA CR No. 97 Wolle |
|---|---|---|

| Guilty plea | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** W M   **Victim R** WF   **Date of DP notice** none filed

two carjackings/murders, a bank robbery and inter-state flight by two young, white step-brothers. Two white women were murdered in their homes and their cars were used in the robbery of $70,000 from a bank. Each brother was a triggerman. The United States Attorney and defense counsel negotiated plea agreements specifying life sentences shortly after the Attorney General Reno required a capital prosecution.

---

| Llamas, Tamara | | E.D. NC CR No. 7:97-CR-63-1-H |
|---|---|---|

| Guilty plea | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** W F   **Victim R** WF   **Date of DP notice** 3/2/1998

a murder-for-hire of an informant in a marijuana conspiracy. Llamas, a white female, allegedly ordered the killing of a drug informant. The triggerman was Wakefield. The drug informant was carelessly named in a warrant, and was murdered a month later. The marijuana conspiracy involved North and South Carolina, Texas and Oregon.

---

| McMahan, Jamie | | S.D. IA CR No. 97 Wolle |
|---|---|---|

| Guilty plea | | **Name of AG** | Reno |
|---|---|---|---|

**Race & gender of def** W M   **Victim R** WF   **Date of DP notice** none filed

two carjackings/murders, a bank robbery and inter-state flight by two young, white step-brothers. Two white women were murdered in their homes and their cars were used in the robbery of $70,000 from a bank. Each brother was a triggerman. The United States Attorney and defense counsel negotiated plea agreements shortly after the Attorney General required a capital prosecution.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Pena, Richard | E.D. LA CR No. 97-CR-145 |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

**Race & gender of def** H  M  **Victim R** BM  **Date of DP notice** 8/20/1998

he prosecution of an alleged cocaine drug lord (Richard) and his brother (Jhonny). Richard Pena, a 32 year old, who became an American citizen in 1994, was a drug kingpin of a group that moved large amounts of cocaine and marijuana in Southeastern United States. Murder for hire is alleged as an aggravating circumstance. This group involved numerous family members and a New Orleans police officer. Richard Pena was charged with eight homicides, four approved as capital counts by the Attorney General. Pena, himself, committed two of the murders, and ordered the death of the others. A non-capital co-defendant was an ex-police officer who arrested one victim in August of 1995 and delivered him to Pena and two associates. His remains were found two months later. Pena pled guilty and received a sentence of life without release.

| Rausini, Walder Pierre | N.D. CA CR No. 95-0319- SI |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

**Race & gender of def** H  M  **Victim R** WM  **Date of DP notice** 3/1/1999

involves the murder of the head of a "Continuing Criminal Enterprise." Lance Estes, a 34 year old white male, had been involved in drug trafficking for many years and had taken over a CCE, whose head had gone to prison. Charged with involvement in this CCE, Estes worked out a deal as an informant for the government but continued to direct his drug enterprise. Rausini was alleged to be working as a "cook" in the Estes organization, converting methamphetamine into "ice." He ordered the murder of Estes in an effort to take over Estes' organization. A co-defendant shot Estes, whose body turned up after Labor Day 1995 in a dumpster in Oceanside with a single gunshot wound to the head. Rausini is also accused of ordering a second murder of another member of the of the CCE because of his plans to become a government informant. Another co-defendant was the killer in this murder. Rausini was 26 years old at the time of the murders with which he is charged and had no serious prior convictions. Murder for hire is alleged as an aggravating circumstance. The government did not seek the death penalty against Rausini's codefendants. Rausini is a Brazilian. The victims are both white.

| Riddle, Steven | D. CO No. 98-CR-196 |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

**Race & gender of def** W  M  **Victim R** WM  **Date of DP notice** none filed

two "super-max", Florence, Colorado inmates, who attacked two suspected snitches. One inmate, an ex-police officer, was murdered. Another inmate survived the attack. The stabbing was witnessed by prison staff who were assaulted when they tried to get co-defendant Riddle off the victim. The United States Attorney did not seek permission to ask for the death penalty but the Attorney General required a capital prosecution. Riddle negotiated a 168 month cap. Black agreed to plead to aggravated assault in return for a sentence of no more than 84 months. Black had a prior murder. Riddle had a record of crimes in and out of prison. Riddle was sentenced to 120 consecutive months.

| Wakefield, Jimmy Ray | E.D. NC CR No. 7:97-CR-63-1-H |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

**Race & gender of def** W  M  **Victim R** WF  **Date of DP notice** 3/2/1998

a murder-for-hire of an informant in a marijuana conspiracy. Llamas, a white female, allegedly ordered the killing of a drug informant. The triggerman was Wakefield. The drug informant was carelessly named in a warrant, and was murdered a month later. The marijuana conspiracy involved North and South Carolina, Texas and Oregon.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Abeln, Rick | S.D. IL CR No. 98-30022- WDS |
|---|---|

Guilty plea                                                      **Name of AG**  Reno

**Race & gender of def**  W  M     **Victim R**  WF     **Date of DP notice**  7/24/1998

the 1997 murder of Debra Abeln in East St. Louis, Illinois, in front of her 12 year old son.  Richard Abeln and co-defendant Guy Westmoreland were indicted for conspiracy to distribute marijuana and cocaine, as well as the killing of Mrs. Abeln.  Mr. Abeln confessed to hiring Deandre Lewis through Westmoreland to kill his wife.  It was alleged that Mrs. Abeln was killed to cover up drug trafficking.  Deandre Lewis has been identified as the gunman.  Lewis' motivation was said to be a drug debt.  Westmoreland was initially not authorized for a capital prosecution, but after Abeln's guilty plea, Westmoreland and Lewis were charged in a superseding capital indictment.  Murder for hire is alleged as an aggravating circumstance.  All involved are Caucasian, except Lewis, who is African-American.

| Rollack, Peter | S.D. NY CR No. S4 97 CR 1293 |
|---|---|

Guilty plea                                                      **Name of AG**  Reno

**Race & gender of def**  B  M     **Victim R**  HM BM     **Date of DP notice**  1/28/1999

eight racketeering murders between 1994 and 1997 by a gang headed by Rollack called "Sex, Money and Murder" which later affiliated itself with "the Bloods."  Rollack approved a Thanksgiving 1997 double killing and personally killed four others, including a witness to another homicide.  One victim in the Thanksgiving shooting was thought to be a witness in a North Carolina drug enterprise prosecution against Rollack, but actually was not.  Only Rollack was targeted, and authorized for, a federal capital prosecution.  All involved were African-American, or Hispanic.  On January 3, 2000, just before jury selection was to begin, the defendant entered a guilty plea in exchange for a life sentence.  He was sent to "super-max," with severe restrictions on who he may communicate with.

| Dean, Chris | D. VT CR No. 2:98M0021 |
|---|---|

Guilty plea                                                      **Name of AG**  Reno

**Race & gender of def**  W  M     **Victim R**  WM     **Date of DP notice**  1/15/1999

a mail bomb which killed a 17 year old Vermont man and disfigured his mother.  The bombing was motivated by an internet dispute involving the deceased's fraudulent behavior.  All involved are white.  The United States Attorney did not request that this be a capital prosecution, but the Attorney General required a capital prosecution. Main Justice disagreed.  Both the defendant and his victim were white.  Dean pled guilty in September of 1999 and was sentenced to life.

| Santiago, Jose | S.D. NY CR No. 98-CR- 290 |
|---|---|

Guilty plea                                                      **Name of AG**  Reno

**Race & gender of def**  H  M     **Victim R**  HM     **Date of DP notice**  2/4/2000

two- count RICO indictment charging murder in aid of racketeering.  The defendants are members of the Latin Kings.  Hector Colon put out a "terminate on sight order on the deceased."  The victim had stabbed Colon after an argument over a girl.  Santiago entered the victim's apartment alone, with a gun provided by another gang member, Angel Lugo, and shot the victim in front of his family, including two young children.  Colon was killed in September of 1999 in a shootout with the FBI.  The Attorney General required a capital prosecution against Santiago alone.  The government first announced that Lugo (the superior who ordered the killing) would face the death penalty but decided to file a "notice" only as to Santiago.  Santiago agreed to a 50 year sentence.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Chong, Richard Lee Tuck | D. HI CR No. 98-00416 ACK |
|---|---|

Guilty plea                                          **Name of AG**   Reno

**Race & gender of def**  A   M      **Victim R**   OM      **Date of DP notice**  2/12/1999

a defendant originally indicted in the State of Hawaii for murder and various firearms violations.  He fled the jurisdiction.  A federal prosecution under 18 U.S.C. §924(j), use of a firearm to commit a drug related murder, was filed.  The 47 year old Chong has a lengthy record of convictions for serious offenses and a violent prison record, including sodomy/assault with an ice pick and starting a fire.  He had only been recently released when he allegedly shot the victim over a $100 drug debt.  The defendant is Asian and the victim is Hawaii.  Chong entered a guilty plea and was sentenced to life in prison.

| Lane, Robert | D. MD CR No. L-98-73 |
|---|---|

Guilty plea                                          **Name of AG**   Reno

**Race & gender of def**  B   M      **Victim R**   WM      **Date of DP notice**  3/30/1999

a series of carjackings, culminating in a murder where the 86 year old victim apparently resisted and was beaten with a hammer or lead pipe on the head and killed by Lane who had been released from prison after abducting a woman.  Lane faced the death penalty.

| Bullock, Joseph | E.D. VA No. 3:98CR150 |
|---|---|

Guilty plea                                          **Name of AG**   Reno

**Race & gender of def**  B   M      **Victim R**   BM      **Date of DP notice**  7/6/1998

another Richmond, multi-defendant, murder, drug conspiracy prosecution ... this one involving four murders in 1993 and 1994.  Only Bullock faced the death penalty.  Hickman, Lightfoot and Weeks did not.

| Valle-Lassalle, Victor Manuel | D. PR CR No. 97-284 (JAF) |
|---|---|

Guilty plea                                          **Name of AG**   Reno

**Race & gender of def**  H   M      **Victim R**   HM      **Date of DP notice**  12/17/1998

a large scale drug conspiracy and two 1996 killings by Valle-Lassalle and one by the others in 1996.  The second was a witness elimination -- the government witness was cut up with a machete.  The United States Attorney requested permission to seek the death penalty only against Valle-Lassalle and Rodriguez-Marrero, and the Attorney General required that they also seek the execution of Nieves-Alonso and Pena-Gonzales.  Murder for hire is alleged as an aggravating circumstance.  All involved are Hispanic.  Valle-Lassalle received a 40 year sentence.

| Glover, Cody | D. KS CR No. 98-10059-01-MLB |
|---|---|

Guilty plea                                          **Name of AG**   Reno

**Race & gender of def**  B   M      **Victim R**   WM      **Date of DP notice**  11/2/1998

another Kansas Hobbs Act prosecution involving a robbery/murder in a convenience store.  Glover, who is black, confessed to entering the store, demanding money and then attempting to execute the two white store clerks who did not resist, killing one employee and critically wounding a second.  Co-defendant Mark Holley admitted he was to receive part of the robbery proceeds for being the getaway driver.  Holley was not authorized for a capital prosecution but Glover faced the death penalty for use of a gun during a crime of violence, although the United States Attorney apparently did not request authority to seek Glover's execution.  The Attorney General required a capital prosecution.  Glover pled guilty in April 1999 and received a life sentence.

**Fell Motion Appendix0215**

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Kee, Charles Michael | S.D. NY CR No. 98-CR-778 |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def  B  M    Victim R    BM    Date of DP notice  2/7/2000

a Bronx gang member who attempted to extort money to repay a debt by keeping a female juvenile hostage.  A few days later, the girl's boyfriend was murdered by a juvenile in Kee's presence.  Kee was a "Bloods" gang leader, organizing juveniles to commit crimes.  The United States Attorney did not request permission to seek the death penalty, but the Attorney General required a capital prosecution.

| Aiken, Ian Orville | S.D. FL CR No. 97-233-CR- GOLD |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def  B  M    Victim R    BM    Date of DP notice  4/1/1999

racketeering indictment against a gang known as the "Moscow Posse," who engaged in acts of violence, including murder, robbery, kidnapping, witness tampering, narcotics trafficking and extortion.  Ian Aiken, the kingpin, and Oliver Lyons were accused of murdering Derrick Christian in New York City on October 27, 1995.  Roland Aiken, Daniel Aiken and Eric Morris are accused of gunning down Desmond LaTouch in a Florida parking lot the next day, at Ian Aiken's request.  Aiken also faced state murder charges in Miami.  (The Moscow Posse was being investigated by authorities since the massacre at the Taste of the Islands restaurant, where four people died and 18 others were wounded in a gang shootout in August of 1992.)  It is alleged in aggravation that Aiken was involved in a total of four murders, an attempted murder, a burglary, a robbery and a kidnapping.  There may have been as many as 15 homicides alleged.  Only Aiken faced the death penalty.

| Peoples, Cornelius | W.D. MO CR No. 00 CR 395 |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def  B  M    Victim R    WM    Date of DP notice  1/8/1999

the murder of a federal government witness.  Peoples, 24, conspired with co-defendant Lightfoot to prevent the victim from testifying at Lightfoot's federal trial on charges of bank robbery.  Lightfoot contracted the killing of his roommate for becoming a government witness.  The victim, 33, was found dead of gunshot wounds in his home in Kansas City.  He contacted government witness, Anthony Hunter, who contacted Barfield who hired Haskell, the triggerman.  Barfield did not face the death penalty and was acquitted.  Haskell was sentenced to life in prison.  All defendants are black.  The victim is white.  After Lightfoot was sentenced to life in prison, the government withdrew its request for the death penalty for Peoples.  The Eighth Circuit reversed the convictions and the government again sought the death penalty.  250 F.3d 360 (2001).  An appeal was rejected.  360 F.3d 892.  Peoples entered into a plea agreement involving cooperation and was sentenced to 20 years, later reduced to 15 years.

| Burgett, James Harold | W.D. TN CR No. 98-20160- G |
|---|---|

| Guilty plea | | Name of AG | Reno |
|---|---|---|---|

Race & gender of def  W  M    Victim R    WF    Date of DP notice  9/7/1999

a witness killing.  Burgett killed his ex-wife because she helped authorities arrest him for making pornographic tapes of his 3 year old daughter.  When Burgett found out she secretly tape-recorded him, he shot and killed Diane Wilcox and wounded his 18 year old step-daughter while on bail awaiting a 27 months prison term for child pornography.  State capital charges were dismissed although Burgett pled guilty in a separate statutory rape state case.  Both Burgett and Wilcox are white.  Burgett pled guilty and was sentenced to life in prison.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Lawrence, Jonathan Huey | N.D. FL CR No. 3:98CR73 (RV) |
|---|---|

Guilty plea                                    **Name of AG**  Reno

**Race & gender of def**  W  M     **Victim R**  WM     **Date of DP notice**  12/8/1998

an apparently motiveless murder on federal property, Outlying Field, a Naval Air Station helicopter training area.  The defendants met while in a state prison mental health facility.  The government's theory was that this was a thrill killing.  Rodgers shot a man through a window a month later.  He later plead guilty to assault.  All parties are white.  The Attorney General required a capital prosecution.  Both Lawrence and Rodgers pled guilty in exchange for the government's agreement not to seek the death penalty.  Both subsequently received the death penalty in state court after pleading guilty to shooting an 18 year old woman and cutting off a leg and storing it in a freezer.  Both received life sentences in federal court for the murder of the state victim's intellectually disabled cousin.  The two victims were found in shallow graves a few miles apart.  Satanic and Klan material was found in the trailer the former mental patients shared.

| Rodgers, Jeremiah Martel | N.D. FL CR No. 3:98CR73 (RV) |
|---|---|

Guilty plea                                    **Name of AG**  Reno

**Race & gender of def**  W  M     **Victim R**  WM     **Date of DP notice**  12/8/1998

an apparently motiveless murder on federal property, Outlying Field, a Naval Air Station helicopter training area.  The defendants met while in a state prison mental health facility.  The government's theory was that this was a thrill killing.  Rodgers also shot a man through a window a month later.  He later plead guilty to assault.  All parties are white.  The Attorney General required a capital prosecution.  Both Lawrence and Rodgers pled guilty in exchange for the government's agreement not to seek the death penalty.  Both subsequently received the death penalty in state court after pleading guilty to a separate incident involving a gun murder of an 18 year old woman and cutting off a leg and storing it in a freezer.  846 So.2d 440 (Fla. 2003); 2006 WL 1766734 (Fla.)  Both received life sentences in federal court for the murder of the state victim's intellectually disabled cousin.  The two victims were found buried in shallow graves a few miles apart.  Satanic and Klan material was found in the trailer the former mental patients shared.

| Gomez, Edsel Torres | D. PR CR No. 98-72 |
|---|---|

Guilty plea                                    **Name of AG**  Reno

**Race & gender of def**  H  M     **Victim R**  HM     **Date of DP notice**  10/26/1998

seven killings in a cocaine and heroin trafficking conspiracy.   In the "Cayey Massacre," four men were tortured and murdered.  Later, three other men were shot and killed in two incidents.  Gomez, one of Puerto Rico's major drug dealers, agreed,  in concert with another drug dealer, to eliminate various competitors who were trying to take over Gomez's market.  Gomez was the only defendant authorized for a capital prosecution.  Three co-defendants, including one accused of murders in 1991 and 1993, did not face the death penalty.  Murder for hire is alleged as an aggravating circumstance.  All persons involved are Latino.

| Nieves-Alonso, Heriberto | D. PR CR No. 97-284 (JAF) |
|---|---|

Guilty plea                                    **Name of AG**  Reno

**Race & gender of def**  H  M     **Victim R**  HM     **Date of DP notice**  12/17/1998

a large scale drug conspiracy and two 1996 killings by Valle-Lassalle and one by the others in 1996.  The second was a witness elimination -- the government witness was cut up with a machete.  The United States Attorney requested permission to seek the death penalty only against Valle-Lassalle and Rodriguez-Marrero, and the Attorney General required that they also seek the execution of Nieves-Alonso and Pena-Gonzales.  Murder for hire is alleged as an aggravating circumstance.  All involved are Hispanic.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Clemente, Louis | M.D. FL CR No. 98-436 CRT 26B |
|---|---|

| Guilty plea | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** H  M    **Victim R** HM    **Date of DP notice** 8/11/1999

the murder of two suppliers to whom Clemente owed $35,000 for methamphetamine.  The government had initially sought the death penalty against Clemente, and had said they would seek the death penalty against the two shooters, only one (Hernandez-Miranda) of whom was arrested.  Duran and Krammer claim they were outside when the shooters went into the victims' house.  The shooters disposed of the bodies in an orange grove.  Clemente allegedly provided the bleach to clean the house and paid the shooters, who fled.  Duran has an assault conviction.  Clemente has claimed that Duran, his uncle, is the main instigator of the murder.

| Woody, Charles | C.D. CA CR No. 99-84-AHM |
|---|---|

| Guilty plea | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** H  M    **Victim R** HM    **Date of DP notice** 8/23/1999

one of three related Mexican Mafia cases. A previous case, involving 12 murders and attempted murders, United States v. Alex Aguirre, et al.(C.D. CA CR 95-345(A)-RSWL) was not prosecuted as a death penalty case.  The Attorney General required a capital prosecution against Woody.  One defendant in the previous was found not guilty and he is said to have been killed by Woody, 28, in a generational power struggle.  Woody was also involved in several murder conspiracies.

| Cooper, Carl Derrick | D. DC CR No. 99-0266 (Green) |
|---|---|

| Guilty plea | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** B  M    **Victim R** WF WM    **Date of DP notice** 2/14/2000

three charges of felony murder.  Cooper, 29, confessed in writing to shooting three employees, 25, 24 and 18, in a failed robbery attempt of Starbucks Coffee Shop.  Cooper claimed in his confession to police that he had a struggle with the shop's manager.   She apparently was shot while attempting to flee after being unable to open the safe.  Cooper was also arrested in connection with the 1996 wounding of an off- duty Prince George's County police officer during an attempted robbery.  Cooper is black and two of the three victims are white.  The government also alleged a 1993 armed robbery and murder of a security guard, three 1989 armed robberies, three 1996 armed robberies, a 1997 armed robbery, various conspiracies to rob and various shootings.  Attorney General Reno required a capital prosecution.

| Friend, Travis | E.D. VA CR No. 3:99CR201 |
|---|---|

| Guilty plea | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** B  M    **Victim R** AM    **Date of DP notice** 10/1/1999

the carjacking of a Chinese truck driver, who was murdered by out-of- work African-American truckers, who wanted to make off with the truck and its cargo.  A third brother, a juvenile, 15, as well as the mother and a girlfriend are also involved but did not face the death penalty.  Both defendants pled guilty.  Eugene may have been involved in a secon homicide.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| | |
|---|---|
| Friend, Eugene | E.D. VA CR No. 3:99CR201 |

Guilty plea                                          **Name of AG**   Reno

**Race & gender of def**  B  M      **Victim R**   AM      **Date of DP notice**  10/1/1999

the carjacking of a Chinese truck driver, who was murdered by out-of- work African-American truckers, who wanted to make off with the truck and its cargo. A third brother, a juvenile, 15, as well as the mother and a girlfriend are also involved but did not face the death penalty. Both defendants pled guilty. Eugene may have been involved in a second homicide.

| | |
|---|---|
| Carpenter, Robert L. | W.D. TN CR No. 99-20155 |

Guilty plea at trial                                 **Name of AG**   Reno

**Race & gender of def**  B  M      **Victim R**   WF      **Date of DP notice**  1/5/2000

carjacking case in a suburb of Memphis. The victim was a 63 year old white female and the carjacking occurred "in broad daylight at noon" at a Sonic "drive-in." The defendants were 18 and 19 and African-American. A third, uncharged defendant was a juvenile. The Carpenter brothers plead guilty during jury selection. They were tried in Tennessee state court and sentenced to life in prison.

| | |
|---|---|
| Carpenter, Antonio | W.D. TN CR No. 99-20155 |

Guilty plea at trial                                 **Name of AG**   Reno

**Race & gender of def**  B  M      **Victim R**   WF      **Date of DP notice**  1/5/2000

carjacking case in a suburb of Memphis. The victim was a 63 year old white female and the carjacking occurred "in broad daylight at noon" at a Sonic "drive-in." The defendants were 18 and 19 and African-American. A third, uncharged defendant was a juvenile. The Carpenter brothers plead guilty during jury selection. They were tried in Tennessee state court and sentenced to life in prison.

| | |
|---|---|
| Kendall, Michael Robbie | N.D. MS CR No. 3:99CR102 |

Guilty plea                                          **Name of AG**   Reno

**Race & gender of def**  W  M      **Victim R**   WM      **Date of DP notice**  6/8/2000

the murder of an Ole Miss senior accountancy major in 1999. Lowery was shot at Puskus Lake. Others were in the line of fire.

| | |
|---|---|
| Llera-Plaza, Carlos Ivan | E.D. PA CR No. 98-362 |

Guilty plea at trial                                 **Name of AG**   Reno

**Race & gender of def**  H  M      **Victim R**   HM      **Date of DP notice**  7/23/2001

involves a Puerto Rico/Philadelphia cocaine connection between 1996-1998 and four murders for hire, three in Pennsylvania and one in Puerto Rico. Rodriguez allegedly ran the organization with a fugitive named Cacerez. Two victims were suspected of abducting a courier and stealing cocaine. A $25,000 contract was offered but an innocent victim was mistakenly killed in Puerto Rico. One suspect was located in Philadelphia and two Hispanic males, ages 29 and 17, were killed. The 17 year old was an innocent victim, the high school student nephew of the target. Later, the second target was located and killed. Martinez-Acosta, 21, allegedly did the shooting in the first three, on orders of the alleged kingpin Rodriguez. Llera-Plaza was allegedly the middle-man in arranging the killings, the shooter in at least two and the driver. The triggerman in the fourth killing is cooperating. The government sought the death penalty against Rodriguez in four killings, Llera-Plaza in three and Martinez-Acosta in two. Attorney General Ashcroft approved plea agreements for Llera-Plaza and Martinez-Acosta, specifying life sentences. Judge Pollak then declared a mistrial for Rodriguez, who eventually entered into a plea agreement approved by Attorney General Ashcroft. All involved are Hispanic.

**Fell Motion Appendix0219**

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Rodriguez, Victor | E.D. PA CR No. 98-362 |
|---|---|

| Guilty plea at trial | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** H M   **Victim R** HM   **Date of DP notice** 5/30/2000

involves a Puerto Rico/Philadelphia cocaine connection between 1996-1998 and four murders for hire, three in Pennsylvania and one in Puerto Rico. Rodriguez allegedly ran the organization with a fugitive named Cacerez. Two victims were suspected of abducting a courier and stealing cocaine. A $25,000 contract was offered but an innocent victim was mistakenly killed in Puerto Rico. One suspect was located in Philadelphia and two Hispanic males, ages 29 and 17, were killed. The 17 year old was an innocent victim, the high school student nephew of the target. Later, the second target was located and killed. Martinez-Acosta, 21, allegedly did the shooting in the first three, on orders of the alleged kingpin Rodriguez. Llera-Plaza was allegedly the middle-man in arranging the killings, the shooter in at least two and the driver. The triggerman in the fourth killing is cooperating. The government sought the death penalty against Rodriguez in four killings, Llera-Plaza in three and Martinez-Acosta in two. Attorney General Ashcroft approved plea agreements for Llera-Plaza and Martinez-Acosta, specifying life sentences. Judge Pollak then declared a mistrial for Rodriguez, who eventually entered into a plea agreement approved by Attorney General Ashcroft. All involved are Hispanic.

| Stayner, Cary | E.D. CA CR No. CR-F-00- 5217 AWI |
|---|---|

| Guilty plea | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** W M   **Victim R** WF   **Date of DP notice** 2/10/2000

four homicides in two separate incidents in Yosemite National Park. Stayner, 37 and a motel handyman, confessed to the (intrastate) kidnapping, sexual assault and decapitation killing of a park naturalist. He also confessed to killing three sightseers, a mother and two teenage girls, five months earlier. There were initially arrests of ex- convicts for the killing of the sightseers. Stayner's brother was a highly publicized kidnap victim in 1972. All involved are white. He was sentenced to death in state court.

| Furrow, Buford | C.D. CA CR No. 99-838 (A) -RAP |
|---|---|

| Guilty plea | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** W M   **Victim R** AM   **Date of DP notice** 2/18/2000

civil rights - the racially motivated shooting and killing of an Asian (Filipino) postal worker in 1999. Furrow, 37 and Caucasian, is alleged to be a member of the Aryian Nation. He also walked into a Jewish Community Care Center and shot five people, including three children. Furrow then carjacked a Toyota. Furrow described this attack as "a wake up call to America to kill Jews."

| Young, Donnell | M.D. TN CR No. 3:98-00038 (NIXON) |
|---|---|

| Guilty plea at trial | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** B M   **Victim R** BM   **Date of DP notice** 10/29/2002

a gang called the "Rollin" 90s Crips or Bangside 90s faction out of Los Angeles which allegedly moved 150 kilos of crack to Las Vegas. From there sales operations were allegedly set up in Oklahoma City and Nashville. The group has also been called the "Shakir Enterprise." A Crips gang member and his wife were killed in Oklahoma City, and their 3 year old daughter, who was also shot, stayed with her dead parents and slept with them at night for several days. Richard Chambers, 59, was shot to death in Cheatham County, Tennessee. There may have been up to 13 killings in three states. Three victims were themselves charged with murder in the indictment. The indictment charges Shakir, 25, with six killings from 1995-97, Payne, 20, with participating in two killings and in the shooting of the gang associate's 3-year-old-girl, and Young, 24, with helping kill one person and assaulting and torturing two others. Four of the killings were said to be to silence potential witnesses, other slayings were allegedly motivated by revenge. Murder for hire is alleged as an aggravating circumstance. Payne was found to be incompetent to stand trial. After Shakir was sentenced to life improvement after a trial, Attorney General Holder approved a plea agreement and Young was sentenced to 40 years.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| | |
|---|---|
| Satcher, Steve | D. MD CR No. AW00-0105 |

Guilty plea at trial                                                                 **Name of AG**   Reno

**Race & gender of def**  B  M      **Victim R**      BF      **Date of DP notice**  11/27/2000

domestic killing - the carjacking, interstate kidnapping and murder of the mother of Satcher's child.  Satcher engaged the services of co-defendants Horton and Stancil for one-half kilogram of cocaine. They abducted the victim and took her from Maryland to North Carolina in the trunk of her car.  She was strangled and beaten.  Horton and Stancil doused the car with gasoline and ignited it.  Murder for hire was alleged as an aggravating circumstance.  All three defendants are African-American, as is the victim.  Stancil cooperated.  Attorney General Reno refused a request to seek the death penalty against Horton.  Attorney General Ashcroft approved a plea agreement to a life sentence for Satcher

| | |
|---|---|
| Garcia, Rico | N.D. CA CR No. 00-CR-20018 |

Guilty plea                                                                            **Name of AG**   Ashcroft

**Race & gender of def**  H  M      **Victim R**      HM      **Date of DP notice**  10/20/2001

involves five Nuestra Familia murders including the 1998 RICO murder of another gang member in a war for control of the "Salinas regiment" of the Neustra Familia, a Latino prison gang.  Garcia, 35, is charged as the triggerman in this killing.  Two others were allegedly with him.  Garcia was originally charged in state court and plead to other charges for a 22 year sentence in exchange for the state dropping the homicide.  The prosecution involves shootings, assaults, robberies and drug dealing.  Ramirez is charged in two killings, Garcia was charged in three, now two, and the other defendants one each.  Attorney General Ashcroft required a capital prosecution for Garcia but eventually approved a guilty plea.  All involved are Hispanic.

| | |
|---|---|
| Pham, Trung Thanh | E.D. CA CR No. 00-CR-411 |

Guilty plea                                                                            **Name of AG**   Ashcroft

**Race & gender of def**  A  M      **Victim R**      AM      **Date of DP notice**  4/11/2001

the throwing of a Molotov cocktail through a dining room window allegedly by Pham.  One victim, Hien Tran, a 9 year old Asian female, was killed.  Others were seriously injured.  The target was a man who had an affair with co-defendant Lam's wife.  Authorization for Lam was initially not sought or granted.  The jury deadlocked at Lam's first trial.  The government produced a new witness who said Lam ordered the firebombing.  Attorney General Reno gave the go-ahead to seek the death penalty at a retrial, but a guilty plea was entered.  Later, the government decided to seek the death penalty against Pham, who, along with two others, was allegedly paid to do the firebombing.  Federal jurisdiction is based on the happenstance that an apartment building was bombed.  Attorney General Ashcroft later approved a plea agreement with Trung Pham who received a life sentence with a possible Rule 35 reduction to 30 years.  Tu Trong and Quac Pham did not face the death penalty.  All involved are of Asian descent.

| | |
|---|---|
| Lallamand, Sienky | N.D. IL CR No. 00 CR 143 |

Guilty plea                                                                            **Name of AG**   Ashcroft

**Race & gender of def**  B  M      **Victim R**      BM      **Date of DP notice**  none filed

Mr. Lallamand is accused under 18 U.S.C. §2232(a) with constructing a pipe bomb and delivering it to the victim who was married to a woman with whom Lallamand was having an affair.   The defendant and the deceased are African-American.  Lallamand defrauded the deceased of $200,000 using the victim's identification.  A plea agreement was reached but the defendant withdrew.  Attorney General Ashcroft required a capital prosecution.  Attorney General Ashcroft eventually approved a plea agreement specifying a life sentence.  The victim was African-American.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Wilson, Bryant Lakeith | W.D. TN CR No. 01-20041-DV |
|---|---|

| Guilty plea | | Name of AG | Ashcroft |
|---|---|---|---|

Race & gender of def   B   M   Victim R   WF   Date of DP notice   11/15/2001

bank robbery in which a 79 year old white woman was killed in front of her daughter.  This was the last in a series of eight such heists from Houston to Memphis.  The defendants are African-American.  Attorney General Ashcroft required a capital prosecution against Wilson, but then approved a plea agreement specifying a life sentence, the same agreement reached in state court.

| Shorter, Ramon Lori | W.D. TN CR No. 01-20041-DV |
|---|---|

| Guilty plea | | Name of AG | Ashcroft |
|---|---|---|---|

Race & gender of def   B   M   Victim R   WF   Date of DP notice   11/15/2001

bank robbery in which a 79 year old white woman was killed in front of her daughter.  This was the last in a series of eight such heists from Houston to Memphis.  The defendants are African-American.  The Attorney General approved a plea agreement specifying a life sentence, the same agreement reached in state court.

| Jones, Milton | E.D. MI CR No. 01-80571 |
|---|---|

| Guilty plea | | Name of AG | Ashcroft |
|---|---|---|---|

Race & gender of def   B   M   Victim R   BM   Date of DP notice   2/4/2003

involves a gang called the "Young Boys Inc.".  Milton Jones, the alleged kingpin, is charged along with 13 others, including state representative Keith Stallworth, with laundering money.  Jones wrote an autobiography, "Y.B.I." about his life of crime.  Three defendants faced the death penalty.  Jones is charged with two murders in 1998.  Murder for hire is alleged as an aggravating circumstance.  Canty and Mitchell are charged with killing another in '97.  Canty is also charged in two other murders.  Attorney General Ashcroft required a capital prosecution.  All involved are African-American.   Jones agreed to cooperate with government prosecutors in return for a 30 year sentence.

| Millegan, Rufus Jerry, Jr. | D. MD CR No. 01-CR-367 |
|---|---|

| Guilty plea | | Name of AG | Ashcroft |
|---|---|---|---|

Race & gender of def   B   M   Victim R   WF   Date of DP notice   3/4/2002

the gun murder of a white woman by two black men at a secluded location on federal property, the Beltsville Agricultural Research Center (USDA).  The victim was shot eleven times  with two different types of ammunition.  There are signed confessions by both defendants.  Millegan confessed that he committed the murder, along with McClure, both shooting the victim with their weapons.  McClure wrote that he told Millegan they should "press her" about a robbery of drugs from Millegan's apartment.  The deceased was taken to a road on federal land in Beltsville, where both allegedly shot her.  Attorney General Ashcroft required a capital prosecution.  Millegan plead guilty.  McClure declined to plead guilty and had a bench trial.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| | |
|---|---|
| Rudolph, Eric Robert | N.D. AL No. 00-CR-422 |

| | | |
|---|---|---|
| Guilty plea at trial | **Name of AG** | Ashcroft |

**Race & gender of def**  W  M      **Victim R**  WM      **Date of DP notice**  12/11/2003

law enforcement officer victim - two bombing murders including causing the death of a law enforcement officer in a 1998 Southside bombing of a Birmingham abortion clinic resulting in the death of an off-duty white police officer and severe injury to a white clinic nurse. Rudolph, who is white, was described by Attorney General Ashcroft as "America's most notorious fugitive." Rudolph was convicted of three bombings in Atlanta: the 1996 Olympic park bombing that killed a black woman and two other bombings in 1997. He was captured after a 5 year manhunt. Attorney General Gonzales approved a plea agreement specifying a life sentence.

| | |
|---|---|
| Maxwell, William | W.D. TN CR No. 01-CR-20247 |

| | | |
|---|---|---|
| Guilty plea | **Name of AG** | Ashcroft |

**Race & gender of def**  B  M      **Victim R**  BF      **Date of DP notice**  9/19/2002

bank robbery resulting in the death of a black female employee of Union Planters Bank. A security guard was also shot in the face by Johnson, but survived. The defendants are African-American. Haynes was a shooter. The state and federal government both sought the death penalty against Haynes and Maxwell but not against Johnson who may be intellectually disabled. A federal jury sentenced Haynes to life imprisonment. After this verdict, Attorney General Ashcroft reversed his position and approved a plea agreement specifying a life sentence for Maxwell.

| | |
|---|---|
| Skiba, Lawrence | W.D. PA 01-CR-291 |

| | | |
|---|---|---|
| Guilty plea | **Name of AG** | Ashcroft |

**Race & gender of def**  W  M      **Victim R**  WM      **Date of DP notice**  6/13/2003

an interstate mail fraud murder for hire, allegedly by a hitman in 2000. Skiba and his brother-in-law took out insurance policies on the victim in 1997. The United States alleges that Skiba was involved in three other suspicious deaths: a fatal fire at a hotel he owned in 1993 to collect insurance money and a 1998 suicide by an intellectually disabled man after Skiba allegedly gave him a gun. Also alleged is an unsuccessful attempt to kill a man in 2000, three days before his death to collect on a $15,000 life insurance policy. Attorney General Ashcroft approved a plea agreement to testify against the shooter. Skiba was sentenced to 20 years. All involved are white.

| | |
|---|---|
| Cisneros, Luis | D. AZ CR No. 03-CR-730 |

| | | |
|---|---|---|
| Guilty plea | **Name of AG** | Ashcroft |

**Race & gender of def**  H  M      **Victim R**  HM      **Date of DP notice**  12/22/2003

three RICO murders by a prison and drug gang, "the Cisneros Organization." Luis Cisneros and Alvarado are charged in all three murders, the others in two. A father and son were allegedly murdered six months apart by this Hispanic gang. The father was a suspected government witness/informant. 18 U. S. C. §924 and 1512. Numerous other murders, some of potential witnesses, are alleged as FRE 404(b) evidence. The least culpable were apparently Llamas and Alvarado, did not face the death penalty. The prosecution was moved from New Mexico to Arizona after an alleged courthouse security leak. Attorney General Gonzales approved a global plea settlement, a bi-product of a joint defense agreement, specifying Luis Cisneros, Eppinger and Rivera life sentences and Felipe Cisneros and Llamas concurrent terms with their state sentences plus two years. All involved are Hispanic.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Cisneros, Felipe N. | D. AZ CR No. 03-CR-730 |
|---|---|

| Guilty plea | | Name of AG | Ashcroft |
|---|---|---|---|

Race & gender of def  H  M      Victim R  HM      Date of DP notice  12/22/2003

three RICO murders by a prison and drug gang, "the Cisneros Organization."  Luis Cisneros and Alvarado are charged in all three murders, the others in two.  A father and son were allegedly murdered six months apart by this Hispanic gang.  The father was a suspected government withness/informant.  18 U. S. C. §924 and 1512.  Numerous other murders, some of potential witnesses, are alleged as FRE 404(b) evidence.  The least culpable were apparently Llamas and Alvarado, who did not face the death penalty.  The prosecution was moved from New Mexico to Arizona after an alleged courthouse security leak.  Attorney General Gonzales approved a global plea settlement, a bi-product of a joint defense agreement, specifying Luis Cisneros, Eppinger and Rivera life sentences and Felipe Cisneros and Llamas concurrent terms with their state sentences plus two years.  All involved are Hispanic.

| Eppinger, Paul E. | D. AZ CR No. 03-CR-730 |
|---|---|

| Guilty plea | | Name of AG | Ashcroft |
|---|---|---|---|

Race & gender of def  H  M      Victim R  HM      Date of DP notice  12/22/2003

three RICO murders by a prison and drug gang, "the Cisneros Organization."  Luis Cisneros and Alvarado are charged in all three murders, the others in two.  A father and son were allegedly murdered six months apart by this Hispanic gang.  The father was a suspected government withness/informant.  18 U. S. C. §924 and 1512.  Numerous other murders, some of potential witnesses, are alleged as FRE 404(b) evidence.  The least culpable were apparently Llamas and Alvarado, who did not face the death penalty.  The prosecution was moved from New Mexico to Arizona after an alleged courthouse security leak.  Attorney General Gonzales approved a global plea settlement, a bi-product of a joint defense agreement, specifying Luis Cisneros, Eppinger and Rivera life sentences and Felipe Cisneros and Llamas concurrent terms with their state sentences plus two years.  All involved are Hispanic.

| Rivera, Angel R | D. AZ CR No. 03-CR-730 |
|---|---|

| Guilty plea | | Name of AG | Ashcroft |
|---|---|---|---|

Race & gender of def  H  M      Victim R  HM      Date of DP notice  12/22/2003

three RICO murders by a prison and drug gang, "the Cisneros Organization."  Luis Cisneros and Alvarado are charged in all three murders, the others in two.  A father and son were allegedly murdered six months apart by this Hispanic gang.  The father was a suspected government withness/informant.  18 U. S. C. §924 and 1512.  Numerous other murders, some of potential witnesses, are alleged as FRE 404(b) evidence.  The least culpable were apparently Llamas and Alvarado, who did not face the death penalty.  The prosecution was moved from New Mexico to Arizona after an alleged courthouse security leak.  Attorney General Gonzales approved a global plea settlement, a bi-product of a joint defense agreement, specifying Luis Cisneros, Eppinger and Rivera life sentences and Felipe Cisneros and Llamas concurrent terms with their state sentences plus two years.  All involved are Hispanic.

| Zapata, Jairo | E.D. NY CR No. 01-516 |
|---|---|

| Guilty plea | | Name of AG | Ashcroft |
|---|---|---|---|

Race & gender of def  H  M      Victim R  HM      Date of DP notice  1/24/2003

Attorney General Ashcroft rejected a plea agreement and required a capital prosecution against a defendant from Columbia who had a signed cooperation agreement.  Zapata is charged in one CCE drug-related murder for hire in 1993.  Two separate homicides are alleged in aggravation, all three occurred during a seven month period in 1993.  As he was announcing his resignation, Attorney General Ashcroft approved a plea to life in prison.  He was sentenced to 30 years.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Ward, Israel | W.D. MO CR No. 3:02 CR 05025 |
|---|---|

Guilty plea                                                         **Name of AG**   Ashcroft

**Race & gender of def**   B   M       **Victim R**   WF BM       **Date of DP notice**   8/7/2003

two gun murders during course of drug trafficking by black defendants from Tulsa selling crack in Tulsa.  Smith is alleged to be a leader.  A black victim allegedly stole drugs and was shot to death along with a white female who was with him at the time.  Attorney General Ashcroft required a capital prosecution.  Attorney General Gonzales approved a plea agreement with Ward.

| Cassell, Kevin Thomas | W.D. VA CR No. 03-CR-13 |
|---|---|

Guilty plea                                                         **Name of AG**   Ashcroft

**Race & gender of def**   B   M       **Victim R**   BM       **Date of DP notice**   7/15/2003

involves four defendants from D.C. who drove to Virginia with the intent to commit robbery.  Cassell was the driver.  Breeden is alleged to be the organizer, having lost his girlfriend's car payment while gambling.  Carpenter allegedly held the victim, a drug dealer, at gunpoint.  Carpenter shot the victim in the knee with a shotgun.  Then Breeden allegedly stabbed the victim 7 times in the chest and neck.  Outterbridge then shot the victim in the head.  All involved are African-American, except the victims of a violent, but non-fatal, robbery of a white couple using an ATM that resulted in serious injury.  The group also committed another robbery.  Attorney General Ashcroft required a capital prosecution against Breeden, Carpenter and Cassell.  Outterbridge, 19 and the youngest, is a cooperator.  Breeden has a prior stabbing conviction.  The district court rejected a claim that the notice of intent to seek the death penalty was filed too late.  2003 WL 22019060.

| Benjamin, Terrance | E.D. LA No. 03-CR-274 |
|---|---|

Guilty plea at trial                                                 **Name of AG**   Ashcroft

**Race & gender of def**   B   M       **Victim R**   HM BM       **Date of DP notice**   10/19/2004

a drug gang conspiracy in the Cooper housing Projects charging four gun murders.  The indictments charged two §924(j) murders and two §1959 RICO murders in 1997, 2000 and 2003.  The 2003 victim was an innocent bystander person.  Winston Gilmore was charged in two homicides, Cobbins, Washington, Simpson and Louis Gilmore are charged in one each.  Benjamin is charged as the triggerman in three homicides and faced the death penalty.  Louis Gilmore, Cobbins and Washington were sentenced to 300 months.  Simpson, Winston Gilmore and Terrance Benjamin were sentenced to life in prison.  All involved are African-American.

| Massino, Joseph | E.D. NY CR No. 1:03-CR-00929-NGG |
|---|---|

Guilty plea                                                         **Name of AG**   Ashcroft

**Race & gender of def**   W   M       **Victim R**   WM       **Date of DP notice**   11/12/2004

a 1999 RICO mob murder ordered by the Boss of the Bonanno crime family, Joseph Massino.  DeFilippo and Spirito were also charged.  The jury hung as to DeFilipo.  Only Massino, who was convicted of seven murders in July of 2004, faced the death penalty.   Attorney General Ashcroft required a capital prosecution shortly before his resignation, despite the fact that Massino was secretly cooperating with the government.  Shortly after, Massino was allegedly told by the Acting Boss, Vincent Basciano, of a murder Basciano odered and a plot to kill an Assistant United States Attorney.  Subsequently, Massino was accepted as a cooperating witness and Attorney General Gonzales withdrew the death penalty request.  All involved are white.

**Fell Motion Appendix0225**

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Le, Cuong Gia | | E.D. VA CR No. 03-CR-48 |
|---|---|---|
| Guilty plea | | **Name of AG**   Ashcroft |

**Race & gender of def**  A   M     **Victim R**     AM     **Date of DP notice**   2/27/2004

a Vietnamese American gang (the "Oriental Playboys") member who came to the United States when he was 10 or 11 years old.  Le is accused of mulitple (two) RICO murders in a shooting involving rival gang members in a Vietnamese restaurant on May 13, 2001. He hit three people.  One person died immediately and one died later.  A rival gang member survived, identifying Le.  Le fled and was arrested in July of 2003. The court denied a motion to bar the death penalty due to a belated notice of intent.  Attorney General Ashcroft eventually approved a plea agreement involving cooperation.  Le also admitted involvement in an uncharged 1997 murder.

| Shields, Sonny Adam | | W.D. TN No. 2:04-CR-20254-BBD-tmp-4 |
|---|---|---|
| Guilty plea | | **Name of AG**   Mukasey |

**Race & gender of def**  B   M     **Victim R**     BM     **Date of DP notice**   8/28/2008

a 2004 carjacking and interstate kidnapping gun murder.  Two males armed with a handgun abducted the victim from Memphis, Tennessee, at gunpoint and forced him into his 1995 Mitsubishi Diamante and fled the scene.  The victim was taken to an ATM and forced to withdraw money.  He was later found dead, shot and burned in Crittenden County, Arkansas.  His vehicle was found burned in Memphis, Tennessee.  Sonny Shields allegedly identified his cousin, Shannon Shields, as the person involved in the carjacking and kidnapping and as the person who shot the victim.  He further allegedly identified Parker and Stafford as the males who assisted him in taking the victim to Arkansas and killing him.  Shannon Shields received medical treatment for burns he received allegedly while setting the victim's vehicle on fire.  Parker and Stafford also allegedly made statements that both Shannon Shields and Stafford were involved.  Shannon Shields was found to be intellectually disabled.  Thereafter, Attorney General Holder approved a plea agreement and a life sentence for Sonny Shields.  All are African-American, as is the victim.

| Becton, Charod | | S.D. NY CR No. 1:02-CR-00451-MBM |
|---|---|---|
| Guilty plea | | **Name of AG**   Gonzales |

**Race & gender of def**  B   M     **Victim R**     BF HM     **Date of DP notice**   2/23/2005

drug related murders.  Becton and Henderson and two others, one of whom is cooperating with the prosecution and the other who committed suicide allegedly, went to rob some drug dealers. Inside the apartment were two males and one female.  The female was the girlfriend of another drug dealer, but was also involved with Henderson.  She let the defendants into the apartment.  Once inside, it is alleged that the defendants bound and gagged the occupants, including the female, tortured them until they revealed where the drugs were stashed and then stabbed them to death.  Before leaving, it is alleged that the defendants left the gas on in the apartment where candles were lit, in an attempt to blow the apartment up and cover their tracks.  Becton was allowed to plead guilty shortly before trial by Attorney General Gonzales.  Henderson was acquitted of the murders.

| Diaz, Edgar | | N.D. CA No. 05-00167 (WHA) |
|---|---|---|
| Guilty plea | | **Name of AG**   Gonzales |

**Race & gender of def**  B   M     **Victim R**     BF BM     **Date of DP notice**   7/7/2006

a seven RICO murder prosecution against eight members of a San Francisco drug (crack, marijuana, Ecstasy) trafficking gang, the Down Below Gangsters.  The indictment alleged five 2004 killings, including a double murder, one murder in 2003 and another in 2005.  Diaz, Johnson, Fort and Calloway are charged in three murders, Rollins in two, Ellis, Milburn and Jackson  in one. There are two uncharged homicides.  Diaz and Fort agreed to plead guilty and receive a 40 year sentence, but Attorney General Mukasey rejected Fort's plea agreement.  All involved are African -American.

**Fell Motion Appendix0226**

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Covarrubius, Javier | C.D. CA No. 05 CR 578 |
|---|---|

| Guilty plea at trial | | **Name of AG** Gonzales |
|---|---|---|

**Race & gender of def** H  M    **Victim R**  HF    **Date of DP notice** 6/28/2006

law enforcement officer victim - three RICO murders by the "Vineland Boys" (VBS) drug gang formed in the 1980's by a San Fernando Valley football team. One of it's founding members was murdered in 1999. The VBS pays taxes to the Mexican Mafia. Covarrubius, Ledesma and Sandoval are charged in one 2003 murder and Robledo and David Garcia are charged in two 2003 murders. The government alleges the murder of a police officer and a 16 year old girl who was a witness against a gang member. Four attempted murders were charged. Attorney General Gonzales required a capital trial. Robledo, Covarrubuis and Ledesma entered guilty pleas on the 4th day of jury selection. All involved are Hispanic.

| Ledesma, Jose | C.D. CA No. 05 CR 578 |
|---|---|

| Guilty plea at trial | | **Name of AG** Gonzales |
|---|---|---|

**Race & gender of def** H  M    **Victim R**  HF    **Date of DP notice** 6/28/2006

law enforcement officer victim - three RICO murders by the "Vineland Boys" (VBS) drug gang formed in the 1980's by a San Fernando Valley football team. One of it's founding members was murdered in 1999. The VBS pays taxes to the Mexican Mafia. Covarrubius, Ledesma and Sandoval are charged in one 2003 murder and Robledo and David Garcia are charged in two 2003 murders. The government alleges the murder of a police officer and a 16 year old girl who was a witness against a gang member. Four attempted murders were charged. Attorney General Gonzales required a capital trial. Robledo, Covarrubuis and Ledesma entered guilty pleas on the 4th day of jury selection. All involved are Hispanic.

| Robledo, Raul | C.D. CA No. 05 CR 578 |
|---|---|

| Guilty plea | | **Name of AG** Gonzales |
|---|---|---|

**Race & gender of def** H  M    **Victim R**  HF    **Date of DP notice** 6/28/2006

law enforcement officer victim - three RICO murders by the "Vineland Boys" (VBS) drug gang formed in the 1980's by a San Fernando Valley football team. One of it's founding members was murdered in 1999. The VBS pays taxes to the Mexican Mafia. Covarrubius, Ledesma and Sandoval are charged in one 2003 murder and Robledo and David Garcia are charged in two 2003 murders. The government alleges the murder of a police officer and a 16 year old girl who was a witness against a gang member. Four attempted murders were charged. Attorney General Gonzale required a capital trial. Robledo, Covarrubuis and Ledesma entered guilty pleas on the 4th day of jury selection. All involved are Hispanic.

| Friend, Valeri | S.D. WV CR No. 2:05-00107 |
|---|---|

| Guilty plea | | **Name of AG** Gonzales |
|---|---|---|

**Race & gender of def** W  F    **Victim R**  WF    **Date of DP notice** 8/16/2006

a 2005 gun murder-for-hire of a cooperating witness/informant in a drug (cocaine) prosecution. Lecco asked Burton, who asked Friend to help kill the female victim who was shot and beaten to death and buried in a shallow grave. Attorney General Gonzales required a death penalty prosecution. Lecco and Friend were sentenced to death at a joint trial but a new trial was granted by the trial judge when the government revealed that a juror was under federal investigation for child pornography. 634 F.Supp.2d 633 (SD WV 2009). Friend entered into a plea agreement approved by Attorney General Holder and testified against Lecco, who was sentenced to life in prison at a retrial. Friend received 35 years. All involved are white.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Moreira, Juan | D. MD No. 8:05 CR 00393-DKC |
|---|---|

Guilty plea                                                                      **Name of AG**   Gonzales

**Race & gender of def**  H  M      **Victim R**   HM      **Date of DP notice**  5/8/2007

five RICO gun murders by members of the Langley Park clique of MS-13 gang, including the murder of a potential government witness by Argueta, Guillen and Palacios, a 2003 double murder, various attempted murders and a gang rape of two women.   Bernal is charged in two murders and the others in one.  Villatoro and Canales were not charged in federal court.  Villatoro received a life sentence in state court. There are three additional uncharged related murders.  Moreira was implicated in one.  All involved are Hispanic.

| Amador, Jorge | D. MD No. 8:05 CR 00393-DKC |
|---|---|

Guilty plea                                                                      **Name of AG**   Gonzales

**Race & gender of def**  H  M      **Victim R**   HM      **Date of DP notice**  5/8/2007

five RICO gun murders by members of the Langley Park clique of MS-13 gang, including the murder of a potential government witness by Argueta, Guillen and Palacios, a 2003 double murder, various attempted murders and a gang rape of two women.   Bernal is charged in two murders and the others in one.  Villatoro and Canales were not charged in federal court.  Villatoro received a life sentence in state court. There are three additional uncharged related murders.  Amador is implicated in one 2005 murder.  Attorney General Holder authorized a plea agreement specifying 30 years.  All involved are Hispanic.

| Fort, Emile | N.D. CA No. 05-00167 (WHA) |
|---|---|

Guilty plea at trial                                                             **Name of AG**   Gonzales

**Race & gender of def**  B  M      **Victim R**   BM      **Date of DP notice**  10/3/2006

a seven RICO murder prosecution against eight members of a San Francisco drug (crack, marijuana, Ecstasy) trafficking gang, the Down Below Gangsters.  The indictment alleges five 2004 killings, including a double murder, one murder in 2003 and another in 2005.  Diaz, Johnson, Fort and Calloway are charged in three murders, Rollins in two, Ellis, Milburn and Jackson  in one. An innocent child, a seven week old baby, was killed by a stray bullet.  There are two uncharged homicides.  Diaz and Fort agreed to plead guilty and receive a 40 year sentence, but Attorney General Mukasey rejected Fort's plea agreement.  Later, during trial, Attorney General Holder approved a plea agreement, specifying 41 years, just before opening statements.  All involved are African -American.

| Hanner, Claron Levi | W.D. PA No. 2:05-CR-00385-TFM |
|---|---|

Guilty plea                                                                      **Name of AG**   Gonzales

**Race & gender of def**  B  M      **Victim R**   WM      **Date of DP notice**  12/29/2006

involves a contract gun murder of a 53-year-old father of a jailed witness who was cooperating (and due to testify the next day) against Soloman.  Hanner rang the doorbell and shot the witness's father when he answered the door.  Solomon hired Hanner who dropped his cellphone near the scene of the murder. Hanner pled guilty and testified against Solomon.  The victim is white, with five children. Solomon and Hanner are African-American.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Petzold, Michael Alan | D. ND CR No. 3:05-CR-00101-RRE |

Guilty plea | **Name of AG** Gonzales

**Race & gender of def** H M   **Victim R** HM   **Date of DP notice** 12/19/2006

a drug-related (methamphetamine and marijuana) conspiracy in North Dakota, Washington, Minnesota, Nebraska and California and a 2005 CCE gun murder. All involved as Hispanic. Petzold, a "manager" for the Arandas drug organization, allegedly assisted the shooter and was present. Only Petzold was authorized. He entered into a plea agreement approved by Attorney General Gonzales, who did not authorize a capital prosecution against the others: Arandas, Martinez and Wessels.

| Brown, Jarvis | S.D. IN EV06-CR-0014-01-Y/H |

Guilty plea | **Name of AG** Gonzales

**Race & gender of def** B M   **Victim R** WF BM   **Date of DP notice** 6/22/2007 and 6/26/2007

four gun murders, including the killing of a government witness, and eight other shootings in eleven days in 2005. The defendants robbed and murdered an Evansville drug dealer. Later, a woman who was with them who was gunned down on the street because the defendants suspected she was an informant. Jordan and Brown were charged in all four murders, Weems in one. Jordan and Brown faced the death penalty. Weems agreed to testify against them. Later, Jordan entered into a plea agreement. All involved are black, except the female witness victim, who was white. Attorney General Mukasey approved a plea agreement specifying a life sentence, but Brown declined to enter a plea. Subsequently, he changed his mind and the plea was accepted.

| Cooya, Shawn | M.D. PA No 4:08-CR-70 |

Guilty plea | **Name of AG** Holder

**Race & gender of def** NA M   **Victim R** NAM   **Date of DP notice** 7/30/2009

a BOP inmate killing at FCC Allenwood allegedly motivated because the victim was converting to Christianity. The stabbing murder is on videotape. All involved are Native-American. Attorney General Holder required the United States Attorney to seek the death penalty as to both and rejected plea agreements for Cooya (25 years) and Williams (20 years), who has a prior second degree murder conviction.

| Williams, Ritz | M.D. PA No 4:08-CR-70 |

Guilty plea | **Name of AG** Holder

**Race & gender of def** NA M   **Victim R** NAM   **Date of DP notice** 7/30/2009

a BOP inmate killing at FCC Allenwood allegedly motivated because the victim was converting to Christianity. The stabbing murder is on videotape. All involved are Native-American. Attorney General Holder required the United States Attorney to seek the death penalty as to both and rejected plea agreements for Cooya (25 years) and Williams (20 years), who has a prior second degree murder conviction.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Jordan, Gabriel | S.D. IN EV06-CR-0014-01-Y/H |
|---|---|

| Guilty plea | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def** B M   **Victim R** WF BM   **Date of DP notice** 6/22/2007

four gun murders, including the killing of a government witness, and eight other shootings in eleven days in 2005.  The defendants robbed and murdered an Evansville drug dealer.  Later, a woman who was with them who was gunned down on the street because the defendants suspected she was an informant.  Jordan and Brown were charged in all four murders, Weems in one.  Jordan and Brown faced the death penalty.  Weems agreed to testify against them.  Later, Jordan entered into a plea agreement.  All involved are black, except the female witness victim, who was white.  Attorney General Mukasey approved a plea agreement.  Jordan was sentenced to 28 years.

| Alers-Santiago, Raymond | D. PR No. 06-368 (JAF) |
|---|---|

| Guilty plea | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def** H M   **Victim R** HM   **Date of DP notice** 2/6/2007

a carjacking murder.  The victim was stabbed and beaten and then drowned.  The judge dismissed the notice of intent to seek the death penalty because case was authorized without defendants being afforded opportunity to develop and present information during the authorization process.  The First Circuit reversed.  522 F.3d 150 (1st Cir. 2008).  Attorney General Mukasey authorized a plea pursuant to a cooperation agreement.  All involved are Hispanic.

| Talik, Eugene J., Jr. | N.D. WV No. 5:06-CR-51 |
|---|---|

| Guilty plea at trial | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def** W M   **Victim R** WF   **Date of DP notice** 12/29/2006

interstate domestic strangulation murder for hire of a single white female with children by a 38 year old white trucking supervisor and his accomplice.

| Aquart, Azikiwe | D. CT 3:06CR160 (PCD) |
|---|---|

| Guilty plea | | **Name of AG** | Mukasey |
|---|---|---|---|

**Race & gender of def** B M   **Victim R** BF BM   **Date of DP notice** 1/29/2009

a triple murder of a rival in the drug business, his girlfriend and a visitor, who were bound and gagged and bludgeoned to death with a baseball bat by leaders of a Jamaican drug gang.  All the defendants and victims are black.  The Aquart brothers  faced the death penalty.  Johnson, who is cooperating, did not.

| Rico, Jose Rios | D. AZ No. 05-0272-PHX-JAT |
|---|---|

| Guilty plea | | **Name of AG** | Gonzales |
|---|---|---|---|

**Race & gender of def** H M   **Victim R** WF   **Date of DP notice** 8/6/2006

drug (meth) related contract gun murder of a white woman suspected of being a government witness by an Hispanic.  Attorney General Gonzales required a capital prosecution.  Attorney General Mukasey approved a plea agreement.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Taylor, Donald Scott | D. NM No. 07-1244 |
|---|---|

| Guilty plea | | Name of AG | Mukasey |
|---|---|---|---|

**Race & gender of def**  W  M   **Victim R**  WM   **Date of DP notice**  7/17/2008

an Aryan Brotherhood 2005 drug-related (methamphetamine) RICO gun murder for hire of an elderly (71 years of age) rancher.  Taylor was involved in a previous botched WalMart robbery.  He  stabbed a guard while awaiting trial.  All involved are white.  Attorney General Holder approved a plea agreement on the verge of trial.

| Baker, Antoine Demetris | E.D. AR No. 4:06 CR 00041 GTE |
|---|---|

| Guilty plea at trial | | Name of AG | Gonzales |
|---|---|---|---|

**Race & gender of def**  B  M   **Victim R**  BM   **Date of DP notice**  8/8/2007

a drug-related witness murder.  Baker was  involved in a crack cocaine conspiracy and was arrested on a state robbery charge.  He was visited at the local jail by two individuals and  instructed them to kill the robbery victim who was shortly murdered.  The killer, Baker's cousin, Mario Dedman, was prosecuted in state court, convicted of capital murder and sentenced to life imprisonment.  A third accomplice, Willie Lee Davis, Jr., was indicted in this case with Baker, pled guilty and was sentenced to life imprisonment.  All involved are black.  Baker was serving a 50 year sentence for another murder.  Attorney General Holder approved a plea agreement during jury selection.

| Tisdale, Jason | D. KS No. 07-10142 |
|---|---|

| Guilty plea | | Name of AG | Mukasey |
|---|---|---|---|

**Race & gender of def**  B  M   **Victim R**  BF BM   **Date of DP notice**  6/2/2008

four RICO and drug-related murders by the Crips gang.  Tisdale was charged in three murders, a double homicide in 1998 and another in 2004.  Campbell was charged in one 2006 murder.  All involved are African-American.

| Andrews, Patrick | N.D. WV No. 1:12-CR-00100-IMK-JSK |
|---|---|

| Guilty plea | | Name of AG | Holder |
|---|---|---|---|

**Race & gender of def**  B  M   **Victim R**  BM   **Date of DP notice**  9/15/2011, NOI 10/23/2012

a BOP inmate murder at USP Hazelton on videotape by two defendants.  Andrews is serving consecutive 37 years to life sentences out of D.C. for two prior murders.  Bellinger, also from D.C., is serving a life sentence for assault with intent to kill.  Attorney General Holder rejected a plea agreement to manslaughter and 15 years.  Attorney General Holder rejected a second offer to plead guilty to second degree murder and 30 years.  Eventually, Andrews offered to plead to a life sentence, which was accepted in the final weeks before trial.  Bellinger did not face the death penalty.  He also received a life sentence after a non-capital trial.  All involved are African-American.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Wade, Joshua | D. AK No. 3:07-CR-00111-RRB-JDR All |
|---|---|

| Guilty plea | | **Name of AG** | Holder |
|---|---|---|---|

**Race & gender of def**  W  M   **Victim R**   WF   **Date of DP notice**  4/30/2009

a carjacking gun murder and robbery of a female next door neighbor.  Wade stole the victim's car and used her ATM card.  He was acquitted in 2003 of a prior 2000 homicide charge.  All involved are white.  Attorney General Holder approved a plea agreement specifying a life sentence.  Wade was also sentenced to life in prison in state court.

| Atwater, DeMario James | M.D. NC No. 1:08-CR-00384-JAB |
|---|---|

| Guilty plea | | **Name of AG** | Mukasey |
|---|---|---|---|

**Race & gender of def**  B  M   **Victim R**   WF   **Date of DP notice**  2/13/2009

carjacking gun murder and ATM robbery of the popular University of North Carolina student body president.  The co-defendant Lovette is a juvenile and not eligible for the death penalty.  Lovette is accused of an earlier murder of a Drake University graduate student.  The victim was allegedly kidnapped from her home and forced to withdraw money from ATMs before being shot to death.  The government claims that Atwater shot the victim with a shotgun after Lovette had shot her four times with a handgun.  Atwater is black, the female victim white.

| Leon Guerrero, James | E.D. CA No. 08 CR 00259 |
|---|---|

| Guilty plea | | **Name of AG** | Holder |
|---|---|---|---|

**Race & gender of def**  H  M   **Victim R**   HM   **Date of DP notice**  4/7/2009

law enforcement officer victim - the stabbing death of a BOP Hispanic prison guard at Atwater by two inmates.  The killing is on videotape.  Co-defendant Sablan is suspected of being involved in a prior correctional officer murder.  The victim was a 22 year old military veteran who served two tours in Iraq.  He was chased down and tackled by Sablan and stabbed by Guerrero with an eight inch ice pick type weapon. Leon Guerrero is from Guam.  Sablan is from Saipan.  This was Attorney General Holder's first decision to "authorize" a case.

| Jacques, Michael | D. VT No. 2:08-CR-117 |
|---|---|

| Guilty plea | | **Name of AG** | Holder |
|---|---|---|---|

**Race & gender of def**  W  M   **Victim R**   WF   **Date of DP notice**  8/25/2009

2008 kidnapping, rape and murder by Jacques of his 12 year old niece.  All involved are white.

| Watland, Gary | D. CO No. 1:11-CR-00038-JLK |
|---|---|

| Guilty plea | | **Name of AG** | Holder |
|---|---|---|---|

**Race & gender of def**  W  M   **Victim R**   WM   **Date of DP notice**  3/1/2011

a 2008 murder of a BOP inmate at USP Florence by a convicted murderer with an escape conviction.  Watland was sentenced to 25 years in Maine for murder and 35 years for an attempted escape.  The victim was stabbed in the neck.  All involved are white.

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| Taylor-Keller, Lorie Ann | W.D. VA No. 5:10 CR 00015 |
|---|---|

| Guilty plea | | Name of AG | Holder |

**Race & gender of def**  W  F      **Victim R**  WF WM      **Date of DP notice**  12/29/2011

interstate domestic gun and arson triple murders of three; an ex-husband of Lorie Keller, his new wife and her five year old child.  They were shot and the house burned.  All involved are white.

| Pleau, Jason W. | D. RI No. CR 10 184-015 |
|---|---|

| Guilty plea | | Name of AG | Holder |

**Race & gender of def**  W  M      **Victim R**  WM      **Date of DP notice**  6/18/2012

Hobbs Act gun murder of the manager of a gas station.  The governor of Rhode Island refused to release the defendant to federal authorities but was ordered to do so.  680 F.3d 1 (1st Cir.).  Pleau served 13 years in prison before the murder for violent crimes including assault on a prison guard.  All involved are white, except Santiago who is Hispanic.

| Lopez, Enrique | N.D. TX No. 3:09-CR-320-M |
|---|---|

| Guilty plea | | Name of AG | Holder |

**Race & gender of def**  H  M      **Victim R**  HM      **Date of DP notice**  7/28/2010

Lopez was involved in five bank robberies, one of which resulted in the shooting/murder of a Brinks driver outside a bank.  The robberies, including the shooting, are on videotape.  Lopez is charged as the shooter.  The co-defendant, Sandoval, is Lopez's brother in law.  Both defendants and the victim are Hispanic.

| Montgomery, Chastain, Sr. | W.D. TN No. CR 11-20044 |
|---|---|

| Guilty plea | | Name of AG | Holder |

**Race & gender of def**  B  M      **Victim R**  WF BF      **Date of DP notice**  3/8/2013

two cross-racial 2010 gun murders, by a former prison guard, of two female postal workers by a father and his 18 year old son.  The son was killed in a police shootout following a carjacking four months later.  Montgomery and one victim are black.  The other victim is white.

| Williams, Connell C. | W.D. OK No. 5:11-CR-298 |
|---|---|

| Guilty plea at trial | | Name of AG | Holder |

**Race & gender of def**  B  M      **Victim R**  BM      **Date of DP notice**  4/17/2012

child abuse §1111 murder on a military base (Fort Sill).  A nine year old boy was starved to death.  He weighed 41 pounds at the time of his death.  All involved are African-American.

**Fell Motion Appendix0233**

**Authorized Federal Capital Prosecutions Which Resulted in a Guilty Plea - 6/3/2015**

| | |
|---|---|
| Acosta, Wilfredo Martinez | E.D. PA CR No. 98-362 |

| | | |
|---|---|---|
| Guilty plea at trial | | **Name of AG**   Reno |

**Race & gender of def**  H   M    **Victim R**   HM    **Date of DP notice**  5/30/2000

involves a Puerto Rico/Philadelphia cocaine connection between 1996-1998 and four murders for hire, three in Pennsylvania and one in Puerto Rico.  Rodriguez allegedly ran the organization with a fugitive named Cacerez.  Two victims were suspected of abducting a courier and stealing cocaine.  A $25,000 contract was offered but an innocent victim was mistakenly killed in Puerto Rico.  One suspect was located in Philadelphia and two Hispanic males, ages 29 and 17, were killed.  The 17 year old was an innocent victim, the high school student nephew of the target.  Later, the second target was located and killed.  Martinez-Acosta, 21, allegedly did the shooting in the first three, on orders of the alleged kingpin Rodriguez.  Llera-Plaza was allegedly the middle-man in arranging the killings, the shooter in at least two and the driver.  The triggerman in the fourth killing is cooperating.   The government sought the death penalty against Rodriguez in four killings, Llera-Plaza in three and Martinez-Acosta in two.  Attorney General Ashcroft approved plea agreements for Llera-Plaza and Martinez-Acosta, specifying life sentences.  Judge Pollak then declared a mistrial for Rodriguez, who eventually entered into a plea agreement approved by Attorney General Ashcroft.  All involved are Hispanic.

**Authorized Federal Capital Prosecutions Which Resulted in**
**Dismissal by Judge for Legal Reasons - 6/3/2015**

| Williams, George Travis | N.D. GA CR No. 1:92-CR-142 |
|---|---|

| Dismissal after notice by Judge | | **Name of AG** Barr |
|---|---|---|

**Race & gender of def** B M   **Victim R** BM   **Date of DP notice** 5/27/1992

a black Atlanta drug distributor who had capital charges dismissed in connection with three murders. Mr. Williams was accused of ordering the killing of one person in 1988, and killing two in 1989 and another in 1990. Murder for hire is alleged as an aggravating circumstance. In June, 1994, the district court dismissed the capital charges on double jeopardy grounds, because the government had already secured a conviction and 30-year sentence for much of the alleged drug-related conduct. A government motion to reconsider this ruling was denied. All involved were African-American.

| Hardy, Paul | E.D. LA CR No. 94-381 |
|---|---|

| Dismissal after notice by Judge | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** B M   **Victim R** BF   **Date of DP notice** 10/6/1995

civil rights - an African- American New Orleans police officer, Len Davis, who was being investigated (and tape recorded) in a drug conspiracy case. Davis ordered the murder of a 32 year old mother of three, Kim Groves, who witnessed his beating of a witness in an unrelated incident. Groves had filed a brutality complaint against Davis. Paul Hardy, 27, carried out the killing. Murder for hire is alleged as an aggravating circumstance. Davis, then Hardy, were sentenced to death by a jury in 1996, which heard sequential penalty phase presentations. Davis did not attend his. The Fifth Circuit reversed one of the convictions and ordered a new sentencing trial on the remaining convictions in 1999. 185 F.3d 407. On remand, the District Court dismissed the Notice of Intent to Seek the Death Penalty based on Ring v. Arizona. This ruling was reversed by the Fifth Circuit. Davis was resentenced to death in 2005 at a separate trial. The trial court found Hardy to be intellectually disabled. 762 F.Supp.2d 849 (ED LA 2010).

| Ferebee, Donald | D. MD CR No. 96-96-2273 |
|---|---|

| Dismissal after notice by Judge | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** B M   **Victim R** BF BM   **Date of DP notice** 4/2/1998

a Baltimore drug dealer alleged to have arranged for the contract killing of a police informant who had implicated him in a prior drug-related murder. A female bystander was also killed accidentally during the shooting. The death penalty was authorized only for the murder of the witness/informant. The actual gunman cooperated with the government and did not face the death penalty for either of the killings. The government also declined to seek the death penalty against the other perpetrator present at the scene of the killing. All defendants and both victims are African-American. Attorney General Reno authorized the death penalty against Ferebe in April, 1998, and the trial was postponed pending Ferebe's appeal since he is already serving a federal life-without-parole sentence for the initial murder. Attorney General Ashcroft rejected a plea agreement involving a life sentence. The 4th circuit remanded for a determination as to whether the Notice of Intent to seek the Death Penalty was filed to late. 332 F3rd 722. The Court denied rehearing. 2003 WL 221 36798. The District Court determined that it had been filed too late and dismissed the death notice. 2005 WL 1429261.

| Garcia, Efraim | E.D. MI CR No. 97-80727 |
|---|---|

| Dismissal after notice by Judge | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** H M   **Victim R** WM   **Date of DP notice** 9/24/1998

a gang known as the "Cash Flow Posse" charged with various racketeering crimes, including five murders and other assaults. The motive was a dispute over gang territory. Garcia was a 29 year old Colombian. All the killings but one predate the effective date of the '94 act. Garcia was the only capital defendant. He was charged with personally carrying out all five murders. Garcia was offered a plea to life, signed a Rule 11 plea agreement but the plea agreement broke down during the colloquy in court. The United States then decided to seek the death penalty. However, the district court dismissed the capital count (a racketeering murder) because of an insufficient "Commerce Clause" nexus. 68 F.Supp.2d 802 (E.D. MI 1999). The government decided not to appeal.

**Authorized Federal Capital Prosecutions Which Resulted in
Dismissal by Judge for Legal Reasons - 6/3/2015**

| Colon-Miranda, Andres | D. PR CR No. 95-029 JAF |
|---|---|

| Dismissal after notice by Judge | **Name of AG** Reno |
|---|---|

**Race & gender of def** H  M     **Victim R**  HM     **Date of DP notice**  11/7/1997

a judge blocked a capital trial of three Puerto Rican defendants  involved in a drug gang homicide.  985 F.Supp. 36; 992 F.Supp. 82.  The government initially indicated that authorization would not be sought for a capital prosecution, but then attempted to reverse its position seven weeks before trial.  Attorney General Reno required a capital prosecution.  The district court declined to continue the trial and refused, despite the Attorney General's authorization and notice of aggravating circumstances filed shortly before trial, to permit the government to ask for the death penalty.

| Martinez-Velez, David Samuel | D. PR CR No. 95-029 JAF |
|---|---|

| Dismissal after notice by Judge | **Name of AG** Reno |
|---|---|

**Race & gender of def** H  M     **Victim R**  HM     **Date of DP notice**  11/7/1997

a judge blocked a capital trial of three Puerto Rican defendants  involved in a drug gang homicide.  985 F.Supp. 36; 992 F.Supp. 82.  The government initially indicated that authorization would not be sought for a capital prosecution, but then attempted to reverse its position seven weeks before trial.  Attorney General Reno required a capital prosecution.  The district court declined to continue the trial and refused, despite the Attorney General's authorization and notice of aggravating circumstances filed shortly before trial, to permit the government to ask for the death penalty.

| Rosario-Rodriguez, Edwin | D. PR CR No. 95-029 JAF |
|---|---|

| Dismissal after notice by Judge | **Name of AG** Reno |
|---|---|

**Race & gender of def** H  M     **Victim R**  HM     **Date of DP notice**  11/7/1997

a judge blocked a capital trial of three Puerto Rican defendants  involved in a drug gang homicide.  985 F.Supp. 36; 992 F.Supp. 82.  The government initially indicated that authorization would not be sought for a capital prosecution, but then attempted to reverse its position seven weeks before trial.  Attorney General Reno required a capital prosecution.  The district court declined to continue the trial and refused, despite the Attorney General's authorization and notice of aggravating circumstances filed shortly before trial, to permit the government to ask for the death penalty.

| Brown, Ricky Lee | N.D. WV No. 1:98CR34 |
|---|---|

| Dismissal after notice by Judge | **Name of AG** Reno |
|---|---|

**Race & gender of def** W  M     **Victim R**  WF WM     **Date of DP notice**  2/22/1999

arson/murder by their parents of five children, after an insurance policy was issued on the dwelling and the Brown's children.  Federal charges were based on the use of the mail and phones.  The district court declined to make a pretrial determination on Ricky Brown's intellectual disability  claim.  However, the capital counts were dismissed after the Supreme Court's decision in United States v. Jones, 592 U.S. 848 (2000).  After a non-capital trial, the Browns were acquitted.  Ables pled guilty and became a government witness.  All involved are Caucasian.  State charges were also filed.

**Fell Motion Appendix0236**

**Authorized Federal Capital Prosecutions Which Resulted in
Dismissal by Judge for Legal Reasons - 6/3/2015**

| Brown, Barbara M. | N.D. WV CR No. 1:98CR34 |
|---|---|

| Dismissal after notice by Judge | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** W F   **Victim R** WF WM   **Date of DP notice** 2/22/1999

arson/murder by their parents of five children, after an insurance policy was issued on the dwelling and the Brown's children. Federal charges were based on the use of the mail and phones. However, the capital counts were dismissed after the Supreme Court's decision in United States v. Jones, 592 U.S. 848 (2000). After a non-capital trial, the Browns were acquitted. Ables pled guilty and became a government witness. All involved are Caucasian. State charges were also filed.

| Ables, Janette A. | N.D. WV CR No. 1:98CR34 |
|---|---|

| Dismissal after notice by Judge | | **Name of AG** Reno |
|---|---|---|

**Race & gender of def** W F   **Victim R** WF WM   **Date of DP notice** 2/22/1999

arson/murder by their parents of five children, after an insurance policy was issued on the dwelling and the Brown's children. Federal charges were based on the use of the mail and phones. However, the capital counts were dismissed after the Supreme Court's decision in United States v. Jones, 592 U.S. 848 (2000). After a non-capital trial, the Browns were acquitted. Ables pled guilty and became a government witness. All involved are Caucasian. State charges were also filed.

| Stewart, Charles Louis | W.D. KY CR No. 4:99-CR-11-M |
|---|---|

| Dismissal after notice by Judge | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** W M   **Victim R** WM   **Date of DP notice** 7/6/2001

contract killing of men in Alabama and Kentucky. Lyon, 19, and co-defendant Charles Stewart, 54, are charged with conspiracy and murder for hire. Stewart and Richard Dorman, 62, are charged with being partners in an 18-month forged-check and fraud scheme, using the deceased's identity. Lyon and his deceased father, Stewart's nephew, were hired to murder James Norris in Kentucky. Norris was found under a bale of hay beaten to death in a barn behind his home. Lyon was also hired to kill James Nichols in Alabama, whose body was discovered in 1999 in a partially submerged van. Nichols' 85 year old mother was also in the van, but survived. Co-conspirator Dorman was kidnapped (interstate) and locked into the trunk of a car that was then run into the Green River in Henderson County. He survived to be charged as part of the conspiracy. The elder Lyon committed suicide to avoid apprehension. Stewart was arrested in the Spring of 2000 after appearing on "America's Most Wanted." Lyon faced the death penalty but was sentenced to life in prison after his jury was instructed that Stewart would not because the Attorney General took too long to file a notice of intent to seek the death penalty. A third bank fraud victim is missing and presumed dead. Lyon committed an unrelated fourth murder. All involved are white.

| Gomez-Olmeda, David | D. PR CR No. 03-CR-73 |
|---|---|

| Dismissal after notice by Judge | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** H M   **Victim R** HM   **Date of DP notice** 9/22/2003

a killing during an FBI undercover sting operation involving guns. The victim was an FBI confidential informant who was wired at the time. The FBI witness was shot to death and robbed in an FBI surveillance van. A videotape recorded the murder. The money robbed was FBI money and the car stolen was an FBI car. David Gomez entered into a plea agreement. However, Attorney General Ashcroft rejected a plea agreement and required a capital prosecution which was dismissed by the District Court.

**Authorized Federal Capital Prosecutions Which Resulted in
Dismissal by Judge for Legal Reasons - 6/3/2015**

| | |
|---|---|
| Pennington, Tiffany Dominique | W.D. KY CR No. 01-CR-35 |

Dismissal after notice by Judge                **Name of AG**  Ashcroft

**Race & gender of def**  B  M    **Victim R**    WF    **Date of DP notice**  7/18/2001

bank robbery/murder of a white woman by two black defendants.  Pennington was the triggerman.  Moore provided the gun and was the get-a-way driver.  Only Pennington faced the death penalty.  He attempted to plead guilty before the government filed a notice of intent to seek the death penalty, but the plea was rejected and the government filed its notice.  Thereafter, his guilty plea was accepted.  Since the indictment did not allege Post-Ring "special findings," the District Court ultimately dismissed the Notice of Intent to seek the death penalty.  A government appeal was dismissed.

| | |
|---|---|
| Safarini, Zayd Hassan Abd Latif | D. DC CR No. 91-CR-504 |

Dismissal after notice by Judge                **Name of AG**  Ashcroft

**Race & gender of def**  AR  M    **Victim R**    IM    **Date of DP notice**  12/12/2002

a Jordamian who was one of the four hijackers who used semiautomatic weapons, hand grenades and explosives to take over a Pan Am flight in Karachi, Pakistan in 1986.  The terrorists left 22 people dead, including 2 Americans of Indian descent and 100 wounded.  Originally, Safarini was convicted and imprisoned in Pakastan but he was released on September 27, 2001.  U.S. law enforcement arrested him the next day as he was traveling to Jordan.  The judge recommended he be sent to Supermax, ADX Florence.

| | |
|---|---|
| Nelson, Brian | E.D. LA CR No. 02-CR-304 |

Dismissal after notice by Judge                **Name of AG**  Ashcroft

**Race & gender of def**  B  M    **Victim R**    WM    **Date of DP notice**  7/1/2003

September 2002 shotgun murder of a New Orleans man and the carjacking of his wife.  The United States Attorney said:  "If we're given the green light, we will seek the death penalty."  However, the defendants entered into plea agreements with the United States Attorney.  The defendants are black and the victims a young white married couple.  The defendants had been mistakenly released by state authorities after allegedly being involved in a rape and robbery spree.  Dawson and Franklin entered into plea agreements which were accepted and approved.  Attorney General Ashcroft rejected a plea agreement and required a capital prosecution against Nelson, the triggerman, who has an I.Q. of 67.  Nelson tried to shoot the woman but the gun jammed.  District court found Nelson intellectually disabled and precluded the death penalty.  419 F.Supp.2d 891 (2006).

| | |
|---|---|
| Littrell, Gary Joe | C.D. CA No. 02-00938-GHK |

Dismissal after notice by Judge                **Name of AG**  Gonzales

**Race & gender of def**  W  M    **Victim R**    WM    **Date of DP notice**  5/11/2006

a RICO indictment of 40 reputed members and associates of the Aryan Brotherhood [AB] for a string of murders and violent attacks allegedly designed to expand the power of the white racist prison gang, which was founded at San Quentin state prison in 1964.  Authorities say the gang has about 100 members.  17 murders are alleged.  At least six murders have occurred since 1996.  Twenty-seven defendants initially were eligible for the death penalty.  Littrell, Roy, West, Grizzle, kennedy and Filkins are accused of allegedly murdering AB members who had run afoul of the organization or violated rules.  Grizzle allegedly helped Littrell in one strangulation in the victim's cell.  AB members selected to face the death penalty were:  McIntosh, Knorr, Sahakian, McElhiney, Littrell, Bridgewater, Terflinger, Schwyhart, Houston, Griffin, Chance, Stinson, Mills and Bingham.  Mills and Bingham were sentenced to life in prison in 2006, as were Bridgewater and Houston at separate trials in 2007.  The Notice of Intent to Seek the Death Penalty was withdrawn as to Griffin, Chance, Stinson and Schwyhart.  The judge dismissed the death notice against Littrell because more culpable co-defendants had been sentenced to life in prison.  The  charges were ultimately dismissed.

**Authorized Federal Capital Prosecutions Which Resulted in**
**Dismissal by Judge for Legal Reasons - 6/3/2015**

| | |
|---|---|
| Hatten, Charles | S.D. WV CR No. 8:02-00232-02 |

| | | |
|---|---|---|
| Dismissal after notice by Judge | **Name of AG** | Ashcroft |

**Race & gender of def** W  M      **Victim R** WM      **Date of DP notice** 6/21/2003

a drug gun murder of a possible government cooperating witness, a member of a multi-state methampetamine drug trafficking ring.  Both the defendant and the victim have substantial criminal records.  All involved are white.  Attorney General Ashcroft required a capital prosecution but the District Court dismissed the Notice of Intent to Seek the Death Penalty as filed late. 276 F.Supp.2d 574 (2003).  A government appeal was dismissed on motion by the Department of Justice.

| | |
|---|---|
| Karake, Francois | D. DC No. 02-CR-256 |

| | | |
|---|---|---|
| Dismissal after notice by Judge | **Name of AG** | Ashcroft |

**Race & gender of def** B  M      **Victim R** WF WM      **Date of DP notice** 11/17/2004

the 1999 kidnapping and murder of eight English speaking tourists in Uganda.  The defendants seized 20 tourists who were looking for gorillas at the national park associated with Diane Fosse.  They separated out the eight who spoke English, raped one of the two Americans and killed all eight with axes.  The two Americans were a married couple from Seattle.  The defendants are black and the victims are white.  The defendants were tortured in Uganda and confessions were excluded leading to dismissal of the prosecution.

| | |
|---|---|
| Nyaminani, Gregoire | D. DC No. 02-CR-256 |

| | | |
|---|---|---|
| Dismissal after notice by Judge | **Name of AG** | Ashcroft |

**Race & gender of def** B  M      **Victim R** WF WM      **Date of DP notice** 11/17/2004

the 1999 kidnapping and murder of eight English speaking tourists in Uganda.  The defendants seized 20 tourists who were looking for gorillas at the national park associated with Diane Fosse.  They separated out the eight who spoke English, raped one of the two Americans and killed all eight with axes.  The two Americans were a married couple from Seattle.  The defendants are black and the victims are white.  The defendants were tortured in Uganda and confessions were excluded leading to dismissal of the prosecution.

| | |
|---|---|
| Bimenyimana, Leonidas | D. DC No. 02-CR-256 |

| | | |
|---|---|---|
| Dismissal after notice by Judge | **Name of AG** | Ashcroft |

**Race & gender of def** B  M      **Victim R** WF WM      **Date of DP notice** 11/17/2004

the 1999 kidnapping and murder of eight English speaking tourists in Uganda.  The defendants seized 20 tourists who were looking for gorillas at the national park associated with Diane Fosse.  They separated out the eight who spoke English, raped one of the two Americans and killed all eight with axes.  The two Americans were a married couple from Seattle.  The defendants are black and the victims are white.  The defendants were tortured in Uganda and confessions were excluded leading to dismissal of the prosecution.

**Authorized Federal Capital Prosecutions Which Resulted in**
**Dismissal by Judge for Legal Reasons - 6/3/2015**

| Smith, Joseph | E.D. LA No. 2:04-CR-00017-HGB-SS |
|---|---|

| Dismissal after notice by Judge | | **Name of AG** Ashcroft |
|---|---|---|

**Race & gender of def** B  M   **Victim R**  WM   **Date of DP notice** 2/1/2005

bank robbery gun murder of an off-duty police officer security guard.  Jones, Johnson and Smith entered the Iberia Bank and Smith disarmed the security guard.  Another guard, hidden from view, opened fire, wounding Smith and Johnson, who was unable to flee the bank.  Johnson returned fire, killing one guard and wounding another.  Jones fled the bank but all three defendants were arrested within moments.  The defendants are black and were over 50 years old.  They each have criminal records, including bank robbery.   The deceased guard is white , the wounded guard is black.  Smith was found to be intellectually disabled.  2011 WL 2532437.

| Shields, Shannon | W.D. TN No. 2:04-CR-20254-BBD-tmp-4 |
|---|---|

| Dismissal after notice by Judge | | **Name of AG** Mukasey |
|---|---|---|

**Race & gender of def** B  M   **Victim R**  BM   **Date of DP notice** 8/28/2008

a 2004 carjacking and interstate kidnapping gun murder.  Two males armed with a handgun abducted the victim from Memphis, Tennessee, at gunpoint and forced him into his 1995 Mitsubishi Diamante and fled the scene.  The victim was taken to an ATM and forced t o withdraw money.  He was later found dead, shot and burned in Crittenden County, Arkanas.  His vehicle was found burned in Memphis, Tennessee.  Sonny Shields allegedly identified his cousin, Shannon Shields, as the person involved in the carjacking and kidnapping and as the person who shot the victim.  He further allegedly identified Parker and Stafford as the males who assisted him in taking the victim to Arkansas and killing him.  Shannon Shields received medical treatment for burns he received allegedly while setting the victim's vehicle on fire.  Parker also allegedly made statements that both Shannon Shields and Stafford were involved.  Stafford allegedly made statements that both Shannon Shields and Parker were involved.  Shannon Shields was found to be intellectually disabled after a pre-trial evidentiary hearing.  Thereafter, Attorney General Holder approved a plea agreement and a life sentence for Sonny Shields.  All are African-American, as is the victim.

| Ball, Antwuan | D. DC CR No. 05-0100 (RWR) |
|---|---|

| Dismissal after notice by Judge | | **Name of AG** Gonzales |
|---|---|---|

**Race & gender of def** B  M   **Victim R**  BM   **Date of DP notice** 9/25/2006

a RICO drug conspiracy responsible for five gun murders, one in 1996, a double in 1998, one in 2002 and another in 2004.  Wilson is charged in three murders, Ball in two and Samuels in one.  All involved are African-American.

| Wilson, David | D. DC CR No. 05-0100 (RWR) |
|---|---|

| Dismissal after notice by Judge | | **Name of AG** Gonzales |
|---|---|---|

**Race & gender of def** B  M   **Victim R**  BF BM   **Date of DP notice** 9/25/2006

a RICO drug conspiracy responsible for five gun murders, one in 1996, a double in 1998, one in 2002 and another in 2004.  Wilson is charged in three murders, Ball in two and Samuels in one.  All involved are African-American.

**Authorized Federal Capital Prosecutions Which Resulted in**
**Dismissal by Judge for Legal Reasons - 6/3/2015**

| Davis, Earl | D. MD No. 8:07-CR-00199-RWT |
|---|---|

| Dismissal after notice by Judge | **Name of AG** Mukasey |
|---|---|

**Race & gender of def** B  M    **Victim R**  WM    **Date of DP notice** 4/8/2008

gun murder of a security guard driving an armored vehicle during a delivery to a bank.  The robbery is on videotape.  DNA from a baseball cap at the scene matches Davis.  Other murders (four) are alleged.  Davis was found to be intellectually disabled after a pre-trial evidentiary hearing.  611 F.Supp.2d 472 (2009).  The accused is black.  The victim is white.

| Lewis, Antun | N.D. OH No. 1:08CR404 |
|---|---|

| Dismissal after notice by Judge | **Name of AG** Holder |
|---|---|

**Race & gender of def** B  M    **Victim R**  BF BM    **Date of DP notice** 9/16/2009

arson murders in Cleveland, Ohio, resulting in the death of nine, including eight children ages 7 to 15 who were sleeping in the house and died from smoke inhalation.  All involved are African-American.  On December 23, 2010, the Court barred the death penalty because Lewis is intellectually disabled.  2010 WL 5418901.

**Fell Motion Appendix0241**

**Authorized Federal Capital Prosecutions Where Defendant Died Before or During Trial - 6/3/2015**

| | |
|---|---|
| Pretlow, Bilal | D. NJ No. 90-CR-238 |

Killed or died after authorization          **Name of AG**  Barr

**Race & gender of def**  B  M     **Victim R**  BF BM     **Date of DP notice**  6/17/1991

a young black New Jersey gang member committed suicide during his federal capital trial.  He had been charged with two cocaine-and marijuana-related murders, one involving a 15-year-old-girl.  All involved are black.

| | |
|---|---|
| Brown, Terrance | E.D. MI CR No. 92-81127 |

Killed or died after authorization          **Name of AG**  Barr

**Race & gender of def**  B  M     **Victim R**  BM     **Date of DP notice**  8/11/1993

involves eight gun murders by a drug gang member who himself was found shot to death after the Attorney General approved a capital prosecution.

| | |
|---|---|
| Stephens, Charles Lee | E.D. TX CR No. 2:99 CR 5 |

Killed or died after authorization          **Name of AG**  Reno

**Race & gender of def**  B  M     **Victim R**  WF WM     **Date of DP notice**  10/22/1999

three young black defendants, who were members of the "Crips" gang, were involved in a series of robberies and killings in East Texas.  Stephens, 21, Smith, 20, and Tatum, 20, faced the death penalty in both state and federal court for a botched bank robbery.  They were accused of a bank robbery and fatally shooting teller Betty Paddle, 61.  A 54 year old bank manager, was also shot, but survived.  They are also charged with an intrastate kidnapping/robbery of a used car dealership (a Hobbs Act count) in which the victim was killed with a gun (a 924(j) count).  The victim was a 63 year old retired minister.  Tatum is also charged in a 1998 slaying of Ronnie Dale Ritch, president of the First State Bank in Overton.  Stephens and Tatum abducted Ritch, 50.  Stephens had a brain tumor and died after surgery.  The USA requested permission to seek the death penalty against all three, and was permitted to do so.  All three deceased victims were white.

**Fell Motion Appendix0242**

**Female Defendants - 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Melendez-Garcia, Ada | D. PR CR No. 95-235

Authorization not requested by USA | **Name of AG**  Reno

**Race and Gender of Def**  H   F   **Race and Gender of Victim(s)**  HF

a 1995 carjacking case resulting in the murder of Edna L. Rivera-Hernandez, age 23.  Her fourth month old son was found abandoned, but alive.  It appeared, at first, that the U.S. would not seek the death penalty but a supeceeding indictment was filed.  The USA requested authorization to seek the death penalty for three defendants - Aponte-Lazu, Jurado and Morales.  Attorney General Reno denied permission to seek the death penalty as to all six defendants.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Peak, Clothera White | M.D. FL CR No. 95-179 CR ORL 22

Authorization not requested by USA | **Name of AG**  Reno

**Race and Gender of Def**  B   F   **Race and Gender of Victim(s)**  HM

a carjacking case where the death penalty was not pursued.  The triggerman was a juvenile who was prosecuted in state court.  The defendants were sentenced to life.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Bell, Roberta | M.D. PA CR No. 1-CR 95-00163

Authorization not requested by USA | **Name of AG**  Reno

**Race and Gender of Def**  B   F   **Race and Gender of Victim(s)**  BF

a murder under 18 U.S.C. §1512.  The prosecution involved the killing of a woman informant for the drug task force of Carlisle, Pennsylvania.  She was to testify against Tyler's brother.  The victim, Doreen Proctor, ended up kidnapped intrastate in one of two cars, lured with the promise of cocaine, and was beaten, shot and killed.  Ms. Proctor was in the vehicle with Jerry King and Roberta Bell.  Willie and David Tyler followed.  The murder weapon was found in Willie Tyler's car.  Apparently, two people shot the deceased.  Roberta Bell and Willie Tyler were tried and acquitted of murder in January 1996 in state court.  The United States Attorney requested authorization to seek the death penalty for co-defendant, Willie Tyler, but it was refused.  All involved are African-American.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Carreno, Blanca Irene | N.D. IL CR No. 96 CR 407

Authorization request rejected by AG | **Name of AG**  Reno

**Race and Gender of Def**  H   F   **Race and Gender of Victim(s)**  HM

a kidnapping/murder.  All defendants except Blanca Carreno (who may not be death eligible) are charged under 18 U.S.C. §1201(a) (kidnapping) and three counts of §924(c).  Salome Varela is the oldest at 22.  The interstate kidnapping, of a 17 year old boy named Jaime Estrada, allegedly began in Milwaukee, Wisconsin and the victim was brought to Chicago, Illinois.  The victim was shot (perhaps accidentally) in the stomach and not given medical treatment for two or three days.  There were three prior kidnappings, apparently as part of a scheme to kidnap drug dealers for ransom.  Attorney General Reno refused a request for a capital prosecution as to all defendants.  All involved are Hispanic.

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Gibson, Leslie Diane | W.D. VA CR No. 96-00056 (H) | |

| Authorization not requested by USA | Name of AG | Reno |
|---|---|---|

**Race and Gender of Def**  W  F   **Race and Gender of Victim(s)**  BF

a murder-for-hire.  Gibson, 28, with a relatively minor criminal record, paid Wilson (who fled the country) $3,000 to kill her neighbor.  The victim, 23, was shot three times in the head on August 24, 1996 while riding a bicycle near her residence. The USA originally indicated he would seek the death penalty.  Since then Ms. Gibson pled guilty.  Wilson was arrested and convicted.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Kozak, Sarah Ann | N.D. IA CR No. 97-3008 MW | |

| Authorization not requested by USA | Name of AG | Reno |
|---|---|---|

**Race and Gender of Def**  W  F   **Race and Gender of Victim(s)**  WM

an interstate kidnapping/murder of a 15-year-old for an $800 drug debt.  The victim was kidnapped in Clay County, Iowa, and taken just across the border to Jackson County, Minnesota.  The defendants, including three juveniles and one fugitive, ages 16-27, were members of a drug gang, "Los Krazy Boys."  The victim was kidnapped, with orders to beat him for failing to pay for marijuana.  He was first taken to a lake north of Superior, Iowa, where he was kicked and beaten, then on to Minnesota.  It was agreed that when the five reached an abandoned farm in Minnesota, that each would shoot one shot.  Lua fatally shot him in the head, a juvenile then shot him in the leg and the gun jammed.  Lua and another unsuccessfully tried to burn the body and the house.  The deceased and the two main potential capital defendants, Lua and Castillo (the alleged drug boss), are Hispanic.  The victim was white.  See United States v. Ortiz, 40 F.Supp.2d 1073 (N.D. IA 1999).

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Bratcher, Chyann | N.D. TX CR No. 2:95CR00009 | |

| Authorization not requested by USA | Name of AG | Reno |
|---|---|---|

**Race and Gender of Def**  W  F   **Race and Gender of Victim(s)**  WM

18 U.S.C. § 1111(a), premeditation and malice aforethought murder on federal land, at Lake Meredith National Recreation Park (National Park Service).

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Fine, Brenda | N.D. TX CR No. 95 CR 9 | |

| Authorization not requested by USA | Name of AG | Reno |
|---|---|---|

**Race and Gender of Def**  W  F   **Race and Gender of Victim(s)**  WM

18 U.S.C. § 1111(a), premeditation and malice aforethought murder on federal land, at Lake Meredith National Recreation Park (National Park Service).

**Fell Motion Appendix0244**

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Llamas, Tamara | E.D. NC CR No. 7:97-CR-63-1-H | |

| Guilty plea | **Name of AG** Reno |
|---|---|

| **Race and Gender of Def** | W | F | **Race and Gender of Victim(s)** | WF |
|---|---|---|---|---|

a murder-for-hire of an informant in a marijuana conspiracy.  Llamas, a white female, allegedly ordered the killing of a drug informant.  The triggerman was Wakefield.  The drug informant was carelessly named in a warrant, and was murdered a month later.  The marijuana conspiracy involved North and South Carolina, Texas and Oregon.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Baker, Rosie | E.D. NY CR No. 97 CR- 877 | |

| Authorization not requested by USA | **Name of AG** Reno |
|---|---|

| **Race and Gender of Def** | B | F | **Race and Gender of Victim(s)** | BM |
|---|---|---|---|---|

a witness killing murder of a doctor while he was sitting in his Mercedes, allegedly to keep him from giving information regarding a Medicaid fraud scam.  The defendants are mother and son.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Squillacote, Theresa Marie | E.D. VA CR No. 98-00061- A | |

| Authorization not requested by USA | **Name of AG** Reno |
|---|---|

| **Race and Gender of Def** | W | F | **Race and Gender of Victim(s)** | x |
|---|---|---|---|---|

an espionage case.  The defendants are charged with sending materials to East Germany, South Africa and Russia.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| King, Janet Hope | D. MD CR No. L-98-73 | |

| Authorization not requested by USA | **Name of AG** Reno |
|---|---|

| **Race and Gender of Def** | B | F | **Race and Gender of Victim(s)** | WM |
|---|---|---|---|---|

a series of carjackings, culminating in a cross-racial murder where the 86 year old victim apparently resisted and was beaten with a hammer or lead pipe on the head and killed by Lane who had been released from prison after abducting a woman.  Lane faced the death penalty but was allowed to plead guilty.

**Fell Motion Appendix0245**

**Female Defendants - 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Jones, Mary

M.D. FL CR No. 6:98CR00151

Authorization not requested by USA

**Name of AG** Reno

**Race and Gender of Def** UK F     **Race and Gender of Victim(s)** xF

a drug overdose. Jones, along with her live-in boyfriend Spero, were charged with heroin distribution. In the course of this, Jones helped one of her customers - a college student on spring break in Daytona Beach - inhale part of a "one-inch line" of heroin. The student apparently had been ingesting other drugs. The heroin, in conjunction with other drugs, killed her.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Osbourne, Gail

E.D. NY CR No. 97-1121 (S-10) (RJD)

Authorization not requested by USA

**Name of AG** Reno

**Race and Gender of Def** B F     **Race and Gender of Victim(s)** Bx

involves multiple killings - charged four drug related murders, both as a continuing criminal enterprise and racketeering, by a gang of Trinidadian foreign nationals. One count involves the robbery/murder of a drug dealer. Francis was charged with three murders and suspected of many more. According to a news article, Francis is suspected in as many as 30 slayings. New York Post (11/12/98). "Francis, who goes by the name Junks and ran a crew known as the Cool Operators, may have pulled the trigger as many as 10 times ..." He was arrested by Brooklyn detectives for three '96 Brooklyn murders, a double homicide in Bedford - Stuyvesant and another slaying in Crown Heights." James is charged with three homicides, suspected in another in Philadelphia in 1997. Brown was the triggerman in an August 18, 1997 murder/robbery of a drug dealer.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Hammouda, Micheline

E.D. NY CR No. 98-497 (S-1) (SJ)

Authorization not requested by USA

**Name of AG** Reno

**Race and Gender of Def** B F     **Race and Gender of Victim(s)** OM

an alleged Hobbs Act robbery that also may be a murder for hire. Hammouda, a black woman from Haiti, is alleged to have hired Isaac, a black man from Trinidad, to kill and rob her husband (who may have been Egyptian). Hammouda may have offered Isaac a house she owned in Freeport. An aggravating factor is that Isaac bragged about shooting the victim while he was on his knees praying. There may have been a participant cooperating witness, David Alexander.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Hironaga, Diana

D. NV CR No. S-98-347-PMP (LRH)

Authorization not requested by USA

**Name of AG** Reno

**Race and Gender of Def** W F     **Race and Gender of Victim(s)** WF

the husband of an heir to the du Pont family chemical fortune, charged with arranging the murder of his stepson's girlfriend in Las Vegas. Moseley, 58, was charged with the use of inter-state commerce facilities in the commission of a murder-for-hire. 18 U.S.C. §1958. He confessed to arranging the murder of Patricia Margello, 45. Her badly beaten body was found at a Las Vegas motel. She had been strangled. Mosely also implicated 3 other people, Hironaga, Murillo and Balignasas. Moseley and Hironaga planned the murder through telephone calls and facsimile messages. Margello was killed by Murillo and Balignasa on August 2, 1998. Moseley and Hironoga each received 16 years, Balignasas 15 and Murillo life. 228 F. 3d 1126 (9th Cir. 2002).

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Brown, Barbara M. | N.D. WV CR No. 1:98CR34 | |

Dismissal after notice by judge

**Name of AG**  Reno

**Race and Gender of Def**  W  F   **Race and Gender of Victim(s)**  WF WM

arson/murder by their parents of five children, after an insurance policy was issued on the dwelling and the Brown's children.  Federal charges were based on the use of the mail and phones.  However, the capital counts were dismissed after the Supreme Court's decision in United States v. Jones, 592 U.S. 848 (2000).  After a non-capital trial, the Browns were acquitted.  Ables pled guilty and became a government witness.  All involved are Caucasian.  State charges were also filed.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Ables, Janette A. | N.D. WV CR No. 1:98CR34 | |

Dismissal after notice by judge

**Name of AG**  Reno

**Race and Gender of Def**  W  F   **Race and Gender of Victim(s)**  WF WM

arson/murder by their parents of five children, after an insurance policy was issued on the dwelling and the Brown's children.  Federal charges were based on the use of the mail and phones.  However, the capital counts were dismissed after the Supreme Court's decision in United States v. Jones, 592 U.S. 848 (2000).  After a non-capital trial, the Browns were acquitted.  Ables pled guilty and became a government witness.  All involved are Caucasian.  State charges were also filed.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Calcano, Shirley | S.D. NY CR No. S1 98 CR 438 (RLC) | |

Authorization not requested by USA

**Name of AG**  Reno

**Race and Gender of Def**  H  F   **Race and Gender of Victim(s)**  HM

an intrastate kidnapping murder related to drug trafficking.  Juan Ramirez solicited the killing.  All involved were Hispanic.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Gilbert, Kristin | D. MA CR No. 98-30044-MAP | |

Life sentence from jury

**Name of AG**  Reno

**Race and Gender of Def**  W  F   **Race and Gender of Victim(s)**  WM

the killing of four patients at a Department of Veterans Affairs Hospital, on federal property, and the attempted killing of three others.  Ms. Gilbert, 31, used epinephrine, a drug that can overstimulate the heart, on her patients.  Federal prosecutors said Gilbert murdered one patient, a 41-year-old invalid, after asking a supervisor if she could "leave early if he died."  All involved are Caucasian.  The jury deadlocked and Gilbert was sentenced to life in prison.

**Female Defendants – 3/1/11**

| **Name** | **D.Ct Docket #** | **Race** |
|---|---|---|
| Ricketts, Carolyn Marie | W.D. MI CR No. 1:98-CR- 220 | |

| Authorization not requested by USA | **Name of AG** Reno |
|---|---|

**Race and Gender of Def**  W  F    **Race and Gender of Victim(s)**  WF

a contract gun murder of a female.  A couple, the Ricketts, ran a drug organization which hired Swackhammer as its enforcer.  He shot Laurie Jean Briggs, 36, when two men armed with sawed-off shotguns burst into an apartment looking for Briggs' girlfriend.  The other triggerman, McKinney, is a government witness who received 18 years in state court.  Swackhammer was already serving a prison sentence for bank robbery and attempted escape.

| **Name** | **D.Ct Docket #** | **Race** |
|---|---|---|
| Myers, Deborah | D. KS CR No. 97-10027-01 | |

| Authorization not requested by USA | **Name of AG** Reno |
|---|---|

**Race and Gender of Def**  W  F    **Race and Gender of Victim(s)**  WF

an "inside job" robbery resulting in a gun murder. Eric "Ace" Pearson, together with the manager of the store, one Debbie Myers, allegedly planned the robbery.  On February 17, 1997, at closing time, two men entered the store (a Mr. Goodscents -- a Subway sandwich-type franchise) and had the employees lay down behind the counter.  The two clerks were Amy Montgomery, and another white female.  Ms. Montgomery was shot in the back of the head by Mr. Martin, while the robbers left the other victim unharmed.  Eric Pearson was driving the car and has made a full confession.  The victim was a 19 year old coed at Wichita State University.  The male defendants are black.

| **Name** | **D.Ct Docket #** | **Race** |
|---|---|---|
| Ginyard, Gracie | D. KS CR No. 97-10027-01 | |

| Authorization not requested by USA | **Name of AG** Reno |
|---|---|

**Race and Gender of Def**  W  F    **Race and Gender of Victim(s)**  WF

an "inside job" robbery resulting in a gun murder. Eric "Ace" Pearson, together with the manager of the store, one Debbie Myers, allegedly planned the robbery.  On February 17, 1997, at closing time, two men entered the store (a Mr. Goodscents -- a Subway sandwich-type franchise) and had the employees lay down behind the counter.  The two clerks were Amy Montgomery, and another white female.  Ms. Montgomery was shot in the back of the head by Mr. Martin, while the robbers left the other victim unharmed.  Eric Pearson was driving the car and has made a full confession.  The victim was a 19 year old coed at Wichita State University.  The male defendants are black.

| **Name** | **D.Ct Docket #** | **Race** |
|---|---|---|
| Matos, Michelle Rodriguez | D. PR CR No. 99-295 (DRD) | |

| Authorization not requested by USA | **Name of AG** Reno |
|---|---|

**Race and Gender of Def**  H  F    **Race and Gender of Victim(s)**  HM

involves multiple killings - three '95 murders, charged different ways, against five defendants.  It involved a Hobbs Act robbery by Zuniga-Bruno and Villega-Angulo of Ferndandez Editores de Puerto Rico (a wholesale book distributor), holding hostages, and  then shooting the two victims in the back of the head.  One survived.  A separate homicide involves the murder of an intrastate kidnapping victim who was executed when the same Mexican company refused to pay a ransom.  Vega Molina and Rodriguez-Santiago are only charged in one of the two killings.  The second homicide is charged as a carjacking, retaliation and a hostage taking killing.  Zuniga-Bruno admitted to 40 to 50 murders to the United States in Florida during a proffer session in a previous case.

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Pimentel, JoAnn | E.D. NY CR No. 99 CR 1104 | |

| Authorization not requested by USA | **Name of AG**  Reno |
|---|---|

**Race and Gender of Def**  H | F    **Race and Gender of Victim(s)**  HM

alleges a RICO murder by the Netas.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Holt, Casey Michelle | N.D. WV CR No. 3:00CR6 | |

| Authorization not requested by USA | **Name of AG**  Reno |
|---|---|

**Race and Gender of Def**  W | F    **Race and Gender of Victim(s)**  WF

a witness killing during a crack/powder cocaine conspiracy.  The white female victim had been buying drugs from the defendants, got into trouble with the law and it was feared she wanted to provide information to the police.  She was beaten to death.  West and Jackson are African-American men, Holt is a female Caucasian.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Forteza-Garcia, Angel | D. PR CR No. 03-CR-73 | |

| Authorization not requested by USA | **Name of AG**  Ashcroft |
|---|---|

**Race and Gender of Def**  H | F    **Race and Gender of Victim(s)**  HM

a murder during an FBI undercover sting operation involving guns.  The victim was an FBI confidential informant who was wired at the time.  The FBI witness was shot to death and robbed in an FBI surveillance van.  A videotape recorded the murder.  The money robbed was FBI money and the car stolen was an FBI car.  David Gomez entered into a plea agreement, which Attorney General Ashcroft rejected.  He approved plea agreements with both Forteza-Garcia brothers.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Soto, Janet | S.D. NY CR No. 00 CR 0761 (JSR) | |

| Authorization not requested by USA | **Name of AG**  Ashcroft |
|---|---|

**Race and Gender of Def**  H | F    **Race and Gender of Victim(s)**  HM

murder of a New York Police department informant, who was allegedly tortured.  Soto pled guilty and was sentenced to 20 years.  Two co-defendants face the death penalty.  All involved are Hispanic.

**Fell Motion Appendix0249**

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Garcia, Janie Maria

C.D. CA CR No. 3:00CR8

Authorization not requested by USA

**Name of AG**  Ashcroft

**Race and Gender of Def**  H | F  **Race and Gender of Victim(s)**  HM

involves a RICO and drug distribution multiple murder prosecution against a branch of the 18th Street gang, with ties to the Mexican Mafia. The lead defendant, Frank Martinez, is alleged to have participated in three homicides.  Zaragoza is charged in all three murders and alleged to have been the shooter in two.  The victim is Hispanic.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Johnson, Angela

N.D. IA No. 3:01-CR-03046-MWB

Death row - 2255

**Name of AG**  Ashcroft

**Race and Gender of Def**  W | F  **Race and Gender of Victim(s)**  WF WM

five murders in 1993 of a potential witness, his girlfriend (both meth dealers) and two daughters, in a drug conspiracy case. The fifth victim is Angela Johnson's former boyfriend, another dealer turned informant, who disappeared in November of 1993.  Johnson attempted suicide in jail after she was tricked by a jailhouse informant into revealing the location of the bodies. A-G-A rejected Honken's attempt to enter a plea  to a life sentence. Attorney General Gonzales rejected Johnson's attempt to enter a plea to a life sentence. Attorney General Gonzales rejected a plea offer.  All involved are white.  The direct appeal was denied in September 2007.  A petition for a writ of certiorari was denied.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

James, Delfina Mae

D. NM CR No. 95-10 JP

Authorization not requested by USA

**Name of AG**  Reno

**Race and Gender of Def**  NA | F  **Race and Gender of Victim(s)**  NAx

murder on tribal land.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Nipper, Judy Helen Taylor

W.D. LA CR No. 00-CR-50066

Authorization not requested by USA

**Name of AG**  Ashcroft

**Race and Gender of Def**  W | F  **Race and Gender of Victim(s)**  WF

involves a phony carjacking\murder in Haiti, which was actually a domestic murder for hire. Authorities believe there was actually a conspiracy between Wharton and a co-worker, Nipper, to kill Wharton's wife.  Wharton tried to collect 2.5 million dollars in insurance.  He was convicted and sentenced to life in prison.  Nipper was acquitted. The victim was white.

**Fell Motion Appendix0250**

**Female Defendants - 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Jackson, Falisha Yolanda | S.D. AL CR No. 01-00007 | |

| Authorization request rejected by AG | **Name of AG** Ashcroft |
|---|---|

**Race and Gender of Def** | B | F | **Race and Gender of Victim(s)** | BF

a four count indictment charging the five, Rivers - 25, Holiday - 20, Nixon - 22, Gray - 24 and Jackson - 23 with conspiracy to commit bank robbery resulting in death.  Rivers voluntarily surrendered.  Rivers allegedly organized and planned the robbery.  He stayed in the get-a-way car.  Nixon allegedly cased the bank. Two people entered the bank and Holiday killed a female victim with a sawed-off shotgun.  All defendants and the victim are African-American.  Attorney General Ashcroft refused a request for authorization to Jackson and Gray and approved a guilty plea and life sentence for Holiday who also was sentenced to life in prison in state court.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Gray, Tabitha | S.D. AL CR No. 01-00007 | |

| Authorization request rejected by AG | **Name of AG** Ashcroft |
|---|---|

**Race and Gender of Def** | B | F | **Race and Gender of Victim(s)** | BF

a four count indictment charging the five, Rivers - 25, Holiday - 20, Nixon - 22, Gray - 24 and Jackson - 23 with conspiracy to commit bank robbery resulting in death.  Rivers voluntarily surrendered.  Rivers allegedly organized and planned the robbery.  He stayed in the get-a-way car.  Nixon allegedly cased the bank. Two people entered the bank and Holiday killed a female victim with a sawed-off shotgun.  All defendants and the victim are African-American.  The Attorney General refused a request for authorization to Jackson and Gray and approved a guilty plea and life sentence for Holiday who also was sentenced to life in prison in state court.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Nixon, Latoya Tiana | S.D. AL CR No. 01-00007 | |

| Authorization not requested by USA | **Name of AG** Ashcroft |
|---|---|

**Race and Gender of Def** | B | F | **Race and Gender of Victim(s)** | BF

a four count indictment charging the five, Rivers - 25, Holiday - 20, Nixon - 22, Gray - 24 and Jackson - 23 with conspiracy to commit bank robbery resulting in death.  Rivers voluntarily surrendered.  Rivers allegedly organized and planned the robbery.  He stayed in the get-a-way car.  Nixon allegedly cased the bank. Two people entered the bank and Holiday killed a female victim with a sawed-off shotgun.  All defendants and the victim are African-American.  The Attorney General refused a request for authorization to Jackson and Gray and approved a guilty plea and life sentence for Holiday who also was sentenced to life in prison in state court.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Johnston, Elizabeth P. | N.D. TX CR No. 01-CR-246 | |

| Authorization not requested by USA | **Name of AG** Ashcroft |
|---|---|

**Race and Gender of Def** | W | F | **Race and Gender of Victim(s)** | WM

a murder-for-hire plot in which a Dallas mother of five is accused of paying to have her former husband killed for insurance money.  The federal charges involve wire fraud related to inter-state transfer of life insurance money from her former husband's slaying in Allegheny, Pennsylvania.  She, her nephew, and possibly others plotted the killing for a $500,000 life insurance policy.  Her ex-husband was found shot in the chest and head on the floor of a trailer in 1999 about two years after the divorce.

**Female Defendants – 3/1/11**

| **Name** | **D.Ct Docket #** | **Race** |
|---|---|---|
| St. Martin, Lana M. | N.D. TX CR No. 3:01-CR-245 | |

| Authorization not requested by USA | **Name of AG** Ashcroft |
|---|---|

**Race and Gender of Def**  W  F  **Race and Gender of Victim(s)**  WM

a murder-for-hire plot in which a Dallas mother of five is accused of paying to have her former husband killed for insurance money. The federal charges involve wire fraud related to inter-state transfer of life insurance money from her former husband's slaying in Allegheny, Pennsylvania. She, her nephew, and possibly others plotted the contract killing for a $500,000 life insurance policy. Her ex-husband was found shot in the chest and head on the floor of a trailer in 1999 about two years after the divorce. The victim was white.

| **Name** | **D.Ct Docket #** | **Race** |
|---|---|---|
| Chaney, Robin | D. MD CR No. 02-CR-083 | |

| Authorization not requested by USA | **Name of AG** Ashcroft |
|---|---|

**Race and Gender of Def**  W  F  **Race and Gender of Victim(s)**  WF

an 18 U.S.C. §1111 prosecution involving a stabbing murder on federal land. Chaney, who is retired from USAF with a disability relating to a brain tumor, entered the home of a young female officer who lived at Andrews Air Force Base. Chaney stabbed the deceased multiple times. He had a relationship with the victim's son's father. Apparently, the man was leaving Chaney and returning to live with the victim. The defendant then left the home with the victim's 20 month old son, Riley. All involved are white.

| **Name** | **D.Ct Docket #** | **Race** |
|---|---|---|
| Montes, Ana B. | D. DC CR No. 02-CR-131 | |

| Guilty plea before DOJ review | **Name of AG** Ashcroft |
|---|---|

**Race and Gender of Def**  H  F  **Race and Gender of Victim(s)**  none

an intelligence analyst who was the Pentagon's top expert on Cuba, plead guilty to an espionage charge, admitting that she spied for the Cuban government for 16 years, giving up four agents, because she opposed United States policy toward Havana. Attorney General Ashcroft approved a plea agreement.

| **Name** | **D.Ct Docket #** | **Race** |
|---|---|---|
| Moore, Brenda | N.D. CA No. 01-0319 | |

| Authorization not requested by USA | **Name of AG** Ashcroft |
|---|---|

**Race and Gender of Def**  W  F  **Race and Gender of Victim(s)**  Hx

law enforcement officer victim - multiple (two) murders by the "Nazi Low Riders," affiliated with the Aryan Brotherhood, a California prison gang responsible for two murders, one in '93 and one in '95 involving a Sonomo County Deputy, an Hispanic law enforcement officer. The indictment alleges numerous robberies and murder conspiracies.

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Martinez, Quincie | E.D. NY CR No. 01-CR-1367 | |

| Authorization not requested by USA | **Name of AG**   Ashcroft |
|---|---|

**Race and Gender of Def**   H   F    **Race and Gender of Victim(s)**   HM

Caraballo was the alleged kingpin of a large scale narcotics group in Brooklyn for a decade and the owner of the 5th Avenue Gym. Caraballo was involved in a romantic relationship with Quincy Martinez, the wife of the victim. Caraballo allegedly paid the others in either drugs, cash or both to assist him in killing the victim, who allegedly was shot to death by Aguilar in the presence of Caraballo in a van owned by Caraballo, and with the assistance of Taylor. Aguilar has confessed to shooting the victim repeatedly with two different guns, and has revealed the involvement of all three. Quincy Martinez is the mother of the victim's two daughters and she allegedly conspired with Caraballo to have the victim killed.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Solovyeva, Natalya | C.D. CA CR No. 02-220 (A)-NM | |

| Authorization not requested by USA | **Name of AG**   Ashcroft |
|---|---|

**Race and Gender of Def**   W   F    **Race and Gender of Victim(s)**   WM

multiple (five) kidnapping ransom murders by the Russian mob. Wealthy Russian immigrants were kidnapped, held for ransom, murdered and their bodies dumped in a reservoir. 1.2 million was collected in ransom. All involved are Caucasian. Mikhel and Kadamovas are charged in four, the others in two, except Krylov, who is charged in three murders. The indictment charged hostage taking resulting in death. 18 U.S.C. §1203. Mikhel, Kadamovas and Krylov faced the death penalty. Mikhel and Kadamovas were sentenced to death. At a separate trial, Krylov was sentenced to life imprisonment after Attorney General Gonzales rejected an offer to plead guilty.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Ramsey, Jeana | N.D. IN CR No. 02-CR-116 | |

| Authorization not requested by USA | **Name of AG**   Ashcroft |
|---|---|

**Race and Gender of Def**   W   F    **Race and Gender of Victim(s)**   WF

a bank robbery gun multiple murder. Five people, three African-American males, one African-American female and one white woman (the pregnant girlfriend of Johnson), robbed a bank and shot to death a white female teller, while wounding another white male teller who died ten weeks after the shooting and wounding a white male security guard leaving him paraplegic. Corley, who has taken the name Nasih Khalil Ra'id, was the ring leader who burst into the bank shooting. Johnson was also a gunman. McGregor was a driver. Gay and Ramsey were some distance away. The robbery was videotaped although the gunman was in the disguise. Corley's palm print was found in the bank. Corley was sentenced to death.

**Fell Motion Appendix0253**

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Gay, Danyass Wu | N.D. IN CR No. 02-CR-116 | |

| Authorization not requested by USA | **Name of AG**  Ashcroft |
|---|---|

**Race and Gender of Def**  B  F   **Race and Gender of Victim(s)**  WF

a bank robbery gun multiple murder.  Five people, three African-American males, one African-American female and one white woman (the pregnant girlfriend of Johnson), robbed a bank and shot to death a white female teller, while wounding another white male teller who died ten weeks after the shooting and wounding a white male security guard leaving him paraplegic.  Corley, who has taken the name Nasih Khalil Ra'id, was the ring leader who burst into the bank shooting.  Johnson was also a gunman.  McGregor was a driver.  Gay and Ramsey were some distance away.  The robbery was videotaped although the gunman was in the disguise.  Corley's palm print was found in the bank.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Guadia-Augilera, Veronica | E.D. TX CR No. 02-CR-62 | |

| Authorization not requested by USA | **Name of AG**  Ashcroft |
|---|---|

**Race and Gender of Def**  H  F   **Race and Gender of Victim(s)**  HM

an alien smuggling/RICO prosecution involving the deaths of two illegal immigrants found inside their truck after a sweltering 12 hour ride which left at least 13 others hospitalized on a day with temperatures nearing triple digits.  40 people, including at least 5 children, were crammed into a truck carrying medical supplies.  The people inside tried to cut a hole in the roof, but failed.  Each passenger paid $1,500 to $2,000 for the transportation.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Chacon, Melissa | D. UT No. 2:02-CR 289 C | |

| Authorization not requested by USA | **Name of AG**  Ashcroft |
|---|---|

**Race and Gender of Def**  H  F   **Race and Gender of Victim(s)**  HM

involves members of the "King Mafia Disciples," a prison gang originating out of Utah.  Defendants are charged with racketeering and murdering a 17 year old, thought to be a rival gang member, in 1996.  The wrong person was killed as the intended victim moved.  The defendant's black and Hispanic.  The victim is Hispanic  There is also an attempted murder charge.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Garcia, Rosalie | S.D. NY CR No. 01 CR 1110 | |

| Authorization not requested by USA | **Name of AG**  Ashcroft |
|---|---|

**Race and Gender of Def**  H  F   **Race and Gender of Victim(s)**  HM

involves of the "Hoe Avenue Crew", a herion and cocaine gang charged with multiple (four) racketeering gun murders, one 1993, two in 1994 and one in 1997.  Roslie Garcia, age 52 is charged with all four, as is Ramon.  Silva is charged in three, Morges in one.  The murders are charged under 18 U.S.C. § 1959  as well as 21 U.S.C. § 848 and 18 U.S.C. §  924.  Rosalie Garcia's case was not authorized, in part, because of mental retardation.

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Zamudio, Edy Zonia | N.D. TX CR No. 4:00 CR 0260-Y | |

| Authorization not requested by USA | **Name of AG**   Ashcroft |
|---|---|

**Race and Gender of Def**   H   F   **Race and Gender of Victim(s)**   HM

a multiple murder Fort Worth drug trafficking prosecution of the leaders of an Arlington-based drug ring responsible for multiple (three) murders. The first killing involved a 1998 shooting of an African-American, mistaken for the intended victim, in a car traveling on Cential Expressway.  A second 1999 killing was of an Hispanic person, also mistaken for the intended victim, his brother, who allegedly sold a fake kilo of cocaine to Robinson. Britt was the triggerman in the third 1999 killing of another drug dealer, a  Mexican national, who had stolen 20 kilos from a Laredo drug kingpin. Robinson was following in another car. Britt and Robinson, African-American, both allegedly fired weapons in the first and second incidents and both were selected to face the death penalty. The victims were Hispanic and African-American.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Turner, Barbara L. | W.D. MO CR No. 02-3110-CR-S-DW | |

| Authorization not requested by USA | **Name of AG**   Ashcroft |
|---|---|

**Race and Gender of Def**   B   F   **Race and Gender of Victim(s)**   BM

18 U.S.C. §1111 robbery/murder at a Fort Leonardwood bingo parlor on federal land that Barbara Turner managed and which allegedly had game proceeds of $30,000 - $35,000 on hand in cashier's cage.  A scuffle ensued.  The victim was a retired military security guard.  Turner's boyfriend, who also worked at the bingo hall, allegedly fingered Turner as the mastermind in a proffer the government would not accept. All involved are African-American.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Arnt, Latasha Lorraine | C.D. CA CR No. 03-CR-523 | |

| Authorization not requested by USA | **Name of AG**   Ashcroft |
|---|---|

**Race and Gender of Def**   B   F   **Race and Gender of Victim(s)**   WM

a woman accused of killing her abusive husband, who was in the United States military, in Turkey.  She received 10 years.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Montoya, Sarah | D. NM CR No. 03-1614 RB | |

| Authorization not requested by USA | **Name of AG**   Ashcroft |
|---|---|

**Race and Gender of Def**   H   F   **Race and Gender of Victim(s)**   HF

alien smuggling case where an illegal immigrant died in the desert.   A 2 mile hike across the desert was interrupted by the Border Partol.  A woman with a kidney problem was sent back and didn't make it. 18 U.S.C. §1324.  All involved are Hispanic.

**Female Defendants - 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Joya, Karla Patricia Chavez

S.D. TX CR No. 03-CR-221

Authorization not requested by USA

**Name of AG**  Ashcroft

**Race and Gender of Def**  H  F   **Race and Gender of Victim(s)**  HF HM

an alien smuggling operation that led to mulitple (nineteen) immigrants' deaths in the back of a truck trailer driven by Williams.  Joya was alleged to be the leader of this alien smuggling ring.  She was extradited from Guatemala.  She was also accused of coordinating 3 smaller operations, gathering illegal immigrants together in South Texas, arranging them to be fed and housed and then placing them on trucks headed north.  All involved are Latino, except Williams, who is black.  Williams was the only one of the 17 defendants to face the death penalty.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Durand, Tamira

E.D. LA CR No. 03-CR-135

Authorization not requested by USA

**Name of AG**  Gonzales

**Race and Gender of Def**  B  F   **Race and Gender of Victim(s)**  BF

a crack cocaine conspiracy alleging one murder of a potential federal witness.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Martinez, Isabel

C.D. CA CR No. ED 03-70

Authorization not requested by USA

**Name of AG**  Ashcroft

**Race and Gender of Def**  H  F   **Race and Gender of Victim(s)**  HM

a domestic killing by Martinez with the help of her pregnant 16 year old daughter, the defendant drugged, bound, and transported her allegedly abusive husband over the California-Mexico border.  At Ejido Colima she and her daughter allegedly strangled him and left the body.  She has confessed to the FBI.  Ms. Martinez has no prior record.  All involved are Hispanic.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Thomas, Stephanie Dawn

D. AZ CR No. 03-CR-764

Authorization not requested by USA

**Name of AG**  Ashcroft

**Race and Gender of Def**  NA  F   **Race and Gender of Victim(s)**  HM

the stabbing and killing of an inmate who was a former government witness in a federal prison in Arizona.  The BOP murder victim was alleged to have been an informant in a Hell's Angel drug conspiracy in Arizona in the late 1990s.  His Presentence Investigation Report was allegedly distributed to members of the conspiracy in the FCI Phoenix prison population.  The defendants and the victim are Native American and Hispanic.

**Fell Motion Appendix0256**

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Nelson, Kathleen | S.D. MS CR No. 03-CR-30 | |

| Authorization not requested by USA | **Name of AG** Ashcroft |
|---|---|

**Race and Gender of Def** B | F   **Race and Gender of Victim(s)** BF

the carjacking murder of a witness in a forgery investigation.  Clovis Reed was abducted and murdered.  Her hands and head were severed in a vain attempt to prevent identification.  All involved are African-American.

---

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Siegel, Nancy Jean | D. MD CR No. AMD-03-0393 | |

| Authorization not requested by USA | **Name of AG** Ashcroft |
|---|---|

**Race and Gender of Def** W | F   **Race and Gender of Victim(s)** WM

a witness killing prosecution of a woman with a history of obtaining large sums of money by using the names of ex-husbands.  The murder victim was an elderly man who was strangled, put in a trunk and transported to keep him from giving information to law enforcement agents.  She allegedly made damaging admissions.  All involved are white.

---

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Othon, Maria de los Angeles | S.D. CA CR No. 03 01554 | |

| Authorization not requested by USA | **Name of AG** Ashcroft |
|---|---|

**Race and Gender of Def** H | F   **Race and Gender of Victim(s)** HF HM

smuggling illegal immigrants, resulting in the multiple deaths of seven foreign nationals.

---

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Rodriguez, Emma Sapata | S.D. TX CR No. 03-CR-221 | |

| Authorization not requested by USA | **Name of AG** Ashcroft |
|---|---|

**Race and Gender of Def** H | F   **Race and Gender of Victim(s)** HF

an alien smuggling operation that led to mulitple (nineteen) immigrants' deaths in the back of a truck trailer driven by Williams.  Joya was the leader of this alien smuggling ring.  She was extradited from Guatemala.  She was also accused of coordinating 3 smaller operations, gathering illegal immigrants together in South Texas, arranging them to be fed and housed and then placing them on trucks headed north.  All involved are Latino, except Williams, who is black.  Williams was the only one of the 17 defendants to face the death penalty.

**Female Defendants – 3/1/11**

*Name* | *D.Ct Docket #* | *Race*

Gonzalez, Rosa Sarrata

S.D. TX CR No. 03-CR-221

Authorization not requested by USA

**Name of AG**  Ashcroft

**Race and Gender of Def**  H   F   **Race and Gender of Victim(s)**  HF

an alien smuggling operation that led to mulitple (nineteen) immigrants' deaths in the back of a truck trailer driven by Williams.  Joya was the leader of this alien smuggling ring.  She was extradited from Guatemala.  She was also accused of coordinating 3 smaller operations, gathering illegal immigrants together in South Texas, arranging them to be fed and housed and then placing them on trucks headed north. All involved are Latino, except Williams, who is black.  Williams was the only one of the 17 defendants to face the death penalty.

*Name* | *D.Ct Docket #* | *Race*

Sanchez, Norma Gonzalez

S.D. TX CR No. 03-CR-221

Authorization not requested by USA

**Name of AG**  Ashcroft

**Race and Gender of Def**  H   F   **Race and Gender of Victim(s)**  HF

an alien smuggling operation that led to mulitple (nineteen) immigrants' deaths in the back of a truck trailer driven by Williams.  Joya was the leader of this alien smuggling ring.  She was extradited from Guatemala.  She was also accused of coordinating 3 smaller operations, gathering illegal immigrants together in South Texas, arranging them to be fed and housed and then placing them on trucks headed north. All involved are Latino, except Williams, who is black.  Williams was the only one of the 17 defendants to face the death penalty.

*Name* | *D.Ct Docket #* | *Race*

Carrizales, Claudia de Villa

S.D. TX CR No. 03-CR-221

Authorization not requested by USA

**Name of AG**  Ashcroft

**Race and Gender of Def**  H   F   **Race and Gender of Victim(s)**  HF

an alien smuggling operation that led to mulitple (nineteen) immigrants' deaths in the back of a truck trailer driven by Williams.  Joya was the leader of this alien smuggling ring.  She was extradited from Guatemala.  She was also accused of coordinating 3 smaller operations, gathering illegal immigrants together in South Texas, arranging them to be fed and housed and then placing them on trucks headed north. All involved are Latino, except Williams, who is black.  Williams was the only one of the 17 defendants to face the death penalty.

*Name* | *D.Ct Docket #* | *Race*

Holloway, Fatima

S.D. TX CR No. 03-CR-221

Authorization not requested by USA

**Name of AG**  Ashcroft

**Race and Gender of Def**  H   F   **Race and Gender of Victim(s)**  HF

an alien smuggling operation that led to mulitple (nineteen) immigrants' deaths in the back of a truck trailer driven by Williams.  Joya was the leader of this alien smuggling ring.  She was extradited from Guatemala.  She was also accused of coordinating 3 smaller operations, gathering illegal immigrants together in South Texas, arranging them to be fed and housed and then placing them on trucks headed north. All involved are Latino, except Williams, who is black.  Williams was the only one of the 17 defendants to face the death penalty.

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Cardenas, Erica | S.D. TX CR No. 03-CR-221 | |

| Authorization not requested by USA | **Name of AG**   Ashcroft |
|---|---|

**Race and Gender of Def**   H   F       **Race and Gender of Victim(s)**   HF

an alien smuggling operation that led to mulitple (nineteen) immigrants' deaths in the back of a truck trailer driven by Williams.  Joya was the leader of this alien smuggling ring.  She was extradited from Guatemala.  She was also accused of coordinating 3 smaller operations, gathering illegal immigrants together in South Texas, arranging them to be fed and housed and then placing them on trucks headed north.  All involved are Latino, except Williams, who is black.  Williams was the only one of the 17 defendants to face the death penalty.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Cruz, Monseratte | S.D. NY CR No. 03 CR 1184 (GEL) | |

| Authorization not requested by USA | **Name of AG**   Ashcroft |
|---|---|

**Race and Gender of Def**   H   F       **Race and Gender of Victim(s)**   HM

a drug related push in, Hobbs Act robbery, gun murder of another drug dealer.  Ms. Cruz allegedly was present when Torres killed the victim. Torres also faces a separate capital indictment.  All involved are Hispanic.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Carlos, Jessica | D. AZ No. 04-CR-850 | |

| Guilty plea approved by AG before authorization | **Name of AG**   Ashcroft |
|---|---|

**Race and Gender of Def**   H   F       **Race and Gender of Victim(s)**   Hx

transportation of an illegal alien resulting in a single death.  All involved are Hispanic.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Morris, Jamie | S.D. GA CR No. 04-CR-8 | |

| Deferred to state | **Name of AG**   Ashcroft |
|---|---|

**Race and Gender of Def**   W   F       **Race and Gender of Victim(s)**   HM

law enforcement officer victim - domestic killing - a white defendant and his girlfriend are accused of kidnapping his former wife and killing an acquaintance of hers in Brunswick.  The victim, a friend of the defendant's ex-wife, was a U.S. Bureau of Customs and Border Protection officer. The defendant had a history of domestic violence against his ex-wife.  The victim, who is Hispanic, had been working with Damaris Kinlaw, to provide her with support and services for several years and even served as her interpreter in court.

**Fell Motion Appendix0259**

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Harper, Porsha | D. MD No. 1:04-CR-00190-AMD

Authorization not requested by USA | **Name of AG**  Ashcroft

**Race and Gender of Def**  B  F  **Race and Gender of Victim(s)**  BF BM

multiple (two) drug-related gun murders in Maryland while Moore and Harper were driving North on I 95.  Harper gave the police permission to search the car and two bodies, a man and a woman were discovered in the trunk.  All involved are African-American.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Holloway, Jennifer Annette | D. SC CR No. 04-M-879

Deferred to state | **Name of AG**  Ashcroft

**Race and Gender of Def**  W  F  **Race and Gender of Victim(s)**  WM

a Tennessee couple charged with the fatal carjacking of a Greenville businessman, a retired Sara Lee executive.  Holloway told the FBI that she and Edens went to South Carolina to steal a 1996 GMC Suburban that Cockman was selling privately.  They met him at the vehicle, pushed him inside, duct-taped his mouth and returned to Tennessee.  When they got home they found Cockman dead, and Edens hid the body in the freezer.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Martinez, Leticia | W.D. TX CR No. 04-CR-113

Authorization not requested by USA | **Name of AG**  Ashcroft

**Race and Gender of Def**  H  F  **Race and Gender of Victim(s)**  HM

transportation of illegal aliens, resulting in multiple death.  A bridge wash out caused traffic to be diverted to a smaller highway.  There was a terrible accident involving a tractor trailer.  Six illegal aliens died.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Brown, Nicole | E.D. NY CR No. 04-966 (ERK) (VVP)

Authorization not requested by USA | **Name of AG**  Ashcroft

**Race and Gender of Def**  B  F  **Race and Gender of Victim(s)**  BM

involves a RICO drug conspiracy in Queens, New York and Baltimore, Maryland and multiple (three) murders for hire.  The first killing involved a drug related shoot out.  Five defendants are allegedly involved in a 924 gun murder.  McGriff, the head of the "Supreme Team" a street drug gang organized in the 1980's, allegedly ordered the murder.  Brown, a female, was allegedly a lookout.  Crosby was allegedly an aider and abettor.  A weapon was found on the victim.  Wright is charged with a double gun murder in 2001 in Baltimore, supposedly ordered by McGriff.  All involved are black.  Money laundering by the rap music label Murder, Inc. is also alleged.  A Protective Notice of Intent to Seek the Death Penalty was withdrawn shortly after filing.

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

| *Name* | *D.Ct Docket #* | | *Race* |
|---|---|---|---|
| Torres-Rosario, Jessica | D. PR CR No. 3:05-CR-00021-PG | | |
| Authorization not requested by USA | **Name of AG** Gonzales | | |
| **Race and Gender of Def** | H | F | **Race and Gender of Victim(s)** | HM |

involves a carjacking murder 18 U.S.C. § 2119.  The male victim was beaten to death with an aluminum baseball bat.  A male and two females met the victim in a bar.  Late at night they were at a beach and the male defendant killed the victim.  They stole his car.  All involved are Hispanic.

| *Name* | *D.Ct Docket #* | | *Race* |
|---|---|---|---|
| Montgomery, Lisa | W.D. MO No. 5:05-CR-06002-GAF | | |
| Death Row - Appeal | **Name of AG** Gonzales | | |
| **Race and Gender of Def** | W | F | **Race and Gender of Victim(s)** | WF |

a baby girl was cut of her murdered mother's womb and taken across state lines.  She was found alive in the possession of a Kansas woman, who police charged with interstate kidnapping resulting in death.  Kevin and Lisa Montgomery have two older children, but she had recently lost a baby.  The victim was eight months pregnant and strangled with a rope.  Montgomery confessed.  All involved are white.  A direct appeal is pending.

| *Name* | *D.Ct Docket #* | | *Race* |
|---|---|---|---|
| Friend, Valeri | S.D. WV CR No. 2:05-00107 | | |
| Guilty plea | **Name of AG** Gonzales | | |
| **Race and Gender of Def** | W | F | **Race and Gender of Victim(s)** | WF |

a 2005 gun murder-for-hire of a cooperating witness/informant in a drug (cocaine) prosecution.  Lecco asked Burton, who asked Friend to help kill the female victim who was shot and beaten to death and buried in a shallow grave.  Attorney General Gonzales required a death penalty prosecution. Lecco and Friend were sentenced to death at a joint trial but a new trial was granted by the trial judge when the government revealed that a juror was under federal investigation for child pornography.  Friend entered into a plea agreement approved by Attorney General Holder and testified against Lecco, who was sentenced to life in prison.  All involved are white.

| *Name* | *D.Ct Docket #* | | *Race* |
|---|---|---|---|
| Williams, Delilah | D. HI No. 1:06-CR-00079-DAE | | |
| Authorization not requested by USA | **Name of AG** Gonzales | | |
| **Race and Gender of Def** | A | F | **Race and Gender of Victim(s)** | BF |

the murder of a five year old child, who was in Special Education, on federal land, the Schofield (US Army) Barracks.  There were bruises on the child's arms, chest, knees and thighs, as well as a small laceration on her back.  The father, Naeem Williams, confessed to hitting his daughter on numerous occasions.  His wife, Delilah Williams (stepmother), 21, confessed to having knowledge of these beatings.  The child's room had no mattress, no blankets and no furniture, as all had been removed by her parents as a form of punishment.  Blood spatters could be seen throughout the residence from whipping with a belt.  Her husband, Naeem, will face the death penalty.

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Suniga, Diana Marisa | W.D. TX CR No. 05-CR-678 | |

Guilty Plea before DOJ review  **Name of AG**  Gonzales

**Race and Gender of Def**  H  F  **Race and Gender of Victim(s)**  HF

a death from heat exposure during an alien smuggling operation.  All involved are Hispanic.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Wheeler, Cecilia Cigarroa | W.D. TX CR No. 05-CR-678 | |

Guilty plea before DOJ review  **Name of AG**  Gonzales

**Race and Gender of Def**  H  F  **Race and Gender of Victim(s)**  HF

a death from heat exposure during an alien smuggling operation.  All involved are Hispanic.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Navarro, Kathy | D. PR No. 3:06-CR-00065-JAG | |

Authorization not requested by USA  **Name of AG**  Mukasey

**Race and Gender of Def**  H  F  **Race and Gender of Victim(s)**  HM

four carjackings with one resulting in the murder of a taxi driver.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Moonda, Donna | N.D. OH No. 1:06-CR-00395-DDD | |

Life sentence from jury  **Name of AG**  Gonzales

**Race and Gender of Def**  W  F  **Race and Gender of Victim(s)**  IM

a 2005 "interstate stalking," 18 U.S.C. §2261A, §924 domestic gun murder of a millionaire urologist while he was driving on the Ohio Turnpike.  Co-defendant Bradford, a black male, allegedly traveled from Pennsylvania to Ohio to kill Dr. Gulam Moonda. Bradford struck a deal for 17 years in return for testimony that Mrs. Moonda offered him money to kill her husband.  He was having an affair with the doctor's wife. The deceased was 69 and of Indian descent. Mrs. Moonda, 47, faced the death penalty for charges of murder for hire.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Creeger, Sabrina | D. AZ No. 05-0272-PHX-JAT | |

Authorization not requested by USA  **Name of AG**  Gonzales

**Race and Gender of Def**  H  F  **Race and Gender of Victim(s)**  WF

a drug (meth) related contract gun murder of a white woman suspected of being a government witness by an Hispanic.

**Fell Motion Appendix0262**

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Torrence, Tanya | E.D. VA No. 2:06-CR-00160-RAJ-JEB | |

| Authorization not requested by USA | **Name of AG**  Gonzales |
|---|---|

**Race and Gender of Def**  B  F   **Race and Gender of Victim(s)**  BF

the kidnapping and gun murder of defendant's estranged boyfriend's mother.  The defendant had resided with the victim after being evicted from her apartment.  Shortly after moving in with the victim, the defendant shot the victim twice and took the victim to Philadelphia, where she surrendered.  The victim was found dead in a van upon surrender at the police station.  All involved are black females

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Ross, Carolyn | W.D. MI CR No. 1:05-CR-00160-RHB | |

| Authorization not requested by USA | **Name of AG**  Gonzales |
|---|---|

**Race and Gender of Def**  B  F   **Race and Gender of Victim(s)**  BF

a contract gun murder of a 16 year old female child.  Ross allegedly hired two hitmen to kill her husband's 16-year-old girlfriend.  The government is looking for the person who arranged the hit.  Sims allegedly told a cellmate that Childs chickened out and "I had to pop the bitch."  Other evidence points to Childs as the shooter.  All involved are black.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Figueroa-Cartagena, Neliza | D. PR No. 3:07-CR-00186 (JAF) | |

| Authorization not requested by USA | **Name of AG**  Mukasey |
|---|---|

**Race and Gender of Def**  H  F   **Race and Gender of Victim(s)**  HM

the duct-tape asphyxiation robbery, murder/carjacking/kidnapping/home invasion for ransom of an elderly, 71, numbers runner.  Felix Alberto and Felix Gabriel are brothers.  Figueroa is Gabriel's girlfriend.  All involved are Hispanic.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Armstrong, Marjorie Deal | W.D. PA No. 07-CR-00026-SJM | |

| Authorization not requested by USA | **Name of AG**  Gonzales |
|---|---|

**Race and Gender of Def**  W  F   **Race and Gender of Victim(s)**  WM

murder of a pizza delivery man who had a bomb strapped to him and was told to rob a bank.  The bomb exploded killing the unindicted alleged co-conspirator.  Armstrong and a co-defendant were also accused of the murder of Armstrong's boyfriend whose body was found in her freezer. Armstrong previously shot another boyfriend six times.  Her ex-husband died of head trauma.  All involved are white.

**Female Defendants - 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Needham, Derrilyn

S.D. NY No. 06 CR 911

Authorization not requested by USA

**Name of AG** Holder

**Race and Gender of Def**  B  F  **Race and Gender of Victim(s)**  BM

multiple (two) gun murders during robberies of drug dealers in 2002 and 2003.  Davis is charged in both murders, the others in one.  All involved are black.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Taylor, Johnita

D. CO No. 07-CR-00371-REB

Authorization not requested by USA

**Name of AG** Mukasey

**Race and Gender of Def**  NA  F  **Race and Gender of Victim(s)**  NAM

Indian land beating murder of an Oklahoma Indian by four members of the Southern Ute nation.  All involved are Native Americans.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Watts, April

D. CO No. 07-CR-00371-REB

Authorization not requested by USA

**Name of AG** Mukasey

**Race and Gender of Def**  NA  F  **Race and Gender of Victim(s)**  NAM

Indian land beating murder of an Oklahoma Indian by four members of the Southern Ute nation.  All involved are Native Americans.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Williams, Monica

D. CO No. 07-CR-00371-REB

Authorization not requested by USA

**Name of AG** Mukasey

**Race and Gender of Def**  NA  F  **Race and Gender of Victim(s)**  NAM

Indian land beating murder of an Oklahoma Indian by four members of the Southern Ute nation.  All involved are Native Americans.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|

Castellanos-Benavides, Sarahi

S.D. TX No. C-07-574

Authorization not requested by USA

**Name of AG** Mukasey

**Race and Gender of Def**  H  F  **Race and Gender of Victim(s)**  HF HM

roll-over of a vehicle with four illegal aliens found by the side of the road - three deceased, including a seven year old.  Benavides is married to the driver, was driving another vehicle and arranged the smuggling of foreign nationals.  She was sentenced to one year.  All involved are Hispanic.

**Fell Motion Appendix0264**

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Christie, Rebecca | D. NM No. 07-614 | |

Authorization not requested by USA      Name of AG   Holder

**Race and Gender of Def** | W | F |   **Race and Gender of Victim(s)** | WF |

child abuse (dehydration and malnutrition) murder by a mother on a military base.  18 U.S.C. §1111.  The victim was a 3 year old toddler.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Voss, Catherina | E.D. VA CR No. 4:08-CR-16 | |

Authorization not requested by USA      Name of AG   Mukasey

**Race and Gender of Def** | W | F |   **Race and Gender of Victim(s)** | WM |

a domestic gun murder for hire in Newport News of a husband.  Catherina Voss was married to the victim and allegedly contracted with Runyon who hired Draven to shoot Voss' husband.  The alleged motive was to obtain the victim's military benefits.  Voss will receive a life sentence in return for her testimony.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Phillips, Kristin | W.D. MO No. 08-03025-01-CR-S-ODS | |

Authorization not requested by USA      Name of AG   Holder

**Race and Gender of Def** | W | F |   **Race and Gender of Victim(s)** | WF |

the death of an 11 month old daughter who was allegedly deprived of nourishment.  Defendant's husband was deployed in Iraq.  Three other children, ages 2 to 13, were placed in protective custody.  The house was allegedly littered with trash, spoiled food and dirty laundry and there was a strong odor of urine and feces.  The 11 month old was not the first of Ms. Phillips children to die under questionable circumstances.  All involved are white.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Sharma, Erin | M.D. FL No. 5:08-CR-23-OC-10-GRJ | |

Authorization not requested by USA      Name of AG   Mukasey

**Race and Gender of Def** | W | F |   **Race and Gender of Victim(s)** | WM |

former death row inmate John McCullah is accused of killing another inmate at USP Coleman, allegedly set up by or provoked by the two guards/co-defendants, Sharma and Kennedy.

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Tolliver, Theresa A. | W.D. TX No. SA08CR614XR | |

| Authorization not requested by USA | **Name of AG** Holder |
|---|---|

**Race and Gender of Def** | B | F | **Race and Gender of Victim(s)** | BM

a contract murder for hire of Tolliver's husband, an Air Force Sergeant.  Theresa Tolliver allegedly agreed with her boyfriend, Emmanuel Fonzie, to kill her husband.  Fonzie hired the triggerman Jeremy Farr and was present at the scene.  The motive was a life insurance policy.  All involved are African-American.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Whitmore, Torenda | S.D. MS No. 1:08 MJ 550 | |

| Pending authorization | **Name of AG** Holder |
|---|---|

**Race and Gender of Def** | B | F | **Race and Gender of Victim(s)** | BM

a drug-related carjacking, kidnapping, gun murder.  A second victim survived.  The triggerman is allegedly Borden.  All involved are black.  Whitmore is female and a driver.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Korbe, Christina | W.D. PA No. 2:09-cr-00005-TFM | |

| Authorization not requested by USA | **Name of AG** Holder |
|---|---|

**Race and Gender of Def** | W | F | **Race and Gender of Victim(s)** | WM

law enforcement officer victim - gun murder of an FBI agent during a drug raid

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Smallwood, Billi Jo | W.D. KY No. 5:08CR38-R | |

| Authorization not requested by USA | **Name of AG** Holder |
|---|---|

**Race and Gender of Def** | W | F | **Race and Gender of Victim(s)** | WF, WM

multiple arson murder in 2007 of the female defendant's two children, a 9 year old boy and a 2 year old girl at their residence on federal land, a United States military base at Fort Campbell.  All involved are white.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Dickens, Elisha Lacy | S.D. OH No. 2:08-CR-163 | |

| Authorization not requested by USA | **Name of AG** Mukasey |
|---|---|

**Race and Gender of Def** | W | F | **Race and Gender of Victim(s)** | WM

a drug related interstate travel gun murder.  All involved are white.

**Female Defendants – 3/1/11**

| | | |
|---|---|---|
| *Name* | *D.Ct Docket #* | *Race* |

Ritchie, Erskaneisha | S.D. FL No. 09-20470-CR-MARTINEZ/BROWN

Authorization not requested by USA | **Name of AG**  Holder

**Race and Gender of Def**  B  F   **Race and Gender of Victim(s)**  HM

Hobbs Act robbery/murder of a security guard at a shopping mall.  Carter is the alleged shooter, Maxime was allegedly armed also.  Ritchie and Thomas are girlfriends/lookouts.  Approximately 14 rounds were fired and the victim was shot four times.  A portion of the incident was captured on mall security video cameras.  There are also eyewitness identifications from mall shoppers/workers.  The defendants are black, the victim is Hispanic.

| | | |
|---|---|---|
| *Name* | *D.Ct Docket #* | *Race* |

Thomas, Nikkia | S.D. FL No. 09-20470-CR-MARTINEZ/BROWN

Authorization not requested by USA | **Name of AG**  Holder

**Race and Gender of Def**  B  F   **Race and Gender of Victim(s)**  HM

Hobbs Act robbery/murder of a security guard at a shopping mall.  Carter is the alleged shooter, Maxime was allegedly armed also.  Ritchie and Thomas are girlfriends/lookouts.  Approximately 14 rounds were fired and the victim was shot four times.  A portion of the incident was captured on mall security video cameras.  There are also eyewitness identifications from mall shoppers/workers.  The defendants are black, the victim is Hispanic.

| | | |
|---|---|---|
| *Name* | *D.Ct Docket #* | *Race* |

Gonzalez, Janet | C.D. CA No. 2:07-CR-01172-DDP

Authorization not requested by USA | **Name of AG**  Holder

**Race and Gender of Def**  H  F   **Race and Gender of Victim(s)**  HM

a RICO gang case involving multiple (two) murders.  One was the accidental 2007 murder of a 3-month-old baby during the attempted murder of a street vendor who refused to pay a $50.00 street tax.  Later, the triggerman was kidnapped, taken to Mexico and strangled, but survived.  Also charged is a 2001 murder of an innocent victim who was mistaken for a gang rival of the Columbia Lil Cycos.

| | | |
|---|---|---|
| *Name* | *D.Ct Docket #* | *Race* |

Luna-Avila, Maria Isadra | W.D. TX No. EP 09 CR 1565

Authorization not requested by USA | **Name of AG**  Holder

**Race and Gender of Def**  H  F   **Race and Gender of Victim(s)**  HM

a 2007 alien smuggling resulting in one death.  All involved are Hispanic.

**Female Defendants – 3/1/11**

| Name | D.Ct Docket # | Race |
|------|---------------|------|
| Trujillo, Leesa | W.D. TX No. EP 09-CR-2527 | |

| | |
|---|---|
| Authorization not requested by USA | **Name of AG**   Holder |

**Race and Gender of Def**  H  F   **Race and Gender of Victim(s)**  HM

parents charged with domestic child abuse (giving an infant prescription pain killers) murder on federal land.  The mother and child are Hispanic.  The father is Native American.

| Name | D.Ct Docket # | Race |
|------|---------------|------|
| Whitt, Maria K. | E.D. KY No. 09-CR-150-KSF | |

| | |
|---|---|
| Authorization not requested by USA | **Name of AG**   Holder |

**Race and Gender of Def**  W  F   **Race and Gender of Victim(s)**  xM

the 2006 murder of a 90-year-old World War II veteran, by a lethal dose of morphine, while at the Lexington, Kentucky Veteran Affairs Medical Center.  Whitt, a nurse, was working at the Medical Center at the time of the victim's death and administered the drug.  The government is investigating two deaths under similar circumstances.

| Name | D.Ct Docket # | Race |
|------|---------------|------|
| Reaves, Tiffany | D. DC No. 1:09CR00153-RMU | |

| | |
|---|---|
| Authorization not requested by USA | **Name of AG**   Holder |

**Race and Gender of Def**  B  F   **Race and Gender of Victim(s)**  BM

a drug-related gun murder of a DEA informant.  Reaves seduced Hayes who was a witness against Gordon after buying crack from him tree times.  All involved are black.

| Name | D.Ct Docket # | Race |
|------|---------------|------|
| Mock, Katherine A. | E.D.  MO No. 4:09CR00679HEA | |

| | |
|---|---|
| Authorization not requested by USA | **Name of AG**   Holder |

**Race and Gender of Def**  W  F   **Race and Gender of Victim(s)**  WM

March 2006 gun murder-for-hire of Young's husband for insurance proceeds.  All involved are white.

| Name | D.Ct Docket # | Race |
|------|---------------|------|
| Young, Elain Kay | E.D.  MO No. 4:09CR00679HEA | |

| | |
|---|---|
| Authorization not requested by USA | **Name of AG**   Holder |

**Race and Gender of Def**  W  F   **Race and Gender of Victim(s)**  WM

March 2006 gun murder-for-hire of Young's husband for insurance proceeds.  All involved are white.

**Female Defendants – 3/1/11**

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Taylor-Keller, Lorie Ann | W.D. VA No. 5:10 CR 00015 | |

| Pending authorization | **Name of AG**  Holder |
|---|---|

| **Race and Gender of Def** | W | F | **Race and Gender of Victim(s)** | WF, WM |
|---|---|---|---|---|

interstate domestic multiple gun arson triple murders of three; an ex-husband of Lorie Keller, his new wife and her innocent five year old child.  They were shot and the house burned.  All involved are white.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Arenivar, Jennifer | E.D. NC No. 5:10-CR-126-IBO (1) | |

| Authorization not requested by USA | **Name of AG**  Holder |
|---|---|

| **Race and Gender of Def** | W | F | **Race and Gender of Victim(s)** | WM |
|---|---|---|---|---|

child abuse §1111 murder by a mother of an infant who was beaten to death on federal land at Fort Bragg, North Carolina.  All involved are white.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Albino-Figueroa, Gloria | D. PR No. 10-537 (M) | |

| Authorization not requested by USA | **Name of AG**  Holder |
|---|---|

| **Race and Gender of Def** | H | F | **Race and Gender of Victim(s)** | HF |
|---|---|---|---|---|

M#1 asked Albino-Figueroa and her son to set up a meeting with a witness who M#1 then killed.  All involved are Hispanic.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Welch, Casslyn Mae | D. NM No. 1:10-CR-02734 | |

| Probable authorization | **Name of AG**  Holder |
|---|---|

| **Race and Gender of Def** | W | F | **Race and Gender of Victim(s)** | WF, WM |
|---|---|---|---|---|

multiple (two) carjacking murder by escaped convicts.

| *Name* | *D.Ct Docket #* | *Race* |
|---|---|---|
| Flanagan, April Nicole | E.D. TX No. 9:09-CR-21 | |

| Pending authorization | **Name of AG**  Holder |
|---|---|

| **Race and Gender of Def** | W | F | **Race and Gender of Victim(s)** | WM |
|---|---|---|---|---|

a free world double RICO gun murder by multiple members of the Aryan Brotherhood of Texas gang.  There are five potential defendants.  Frazier and Stalsby are charged in both murders, the others in one.  All involved are white.

**Fell Motion Appendix0269**

**Female Defendants – 3/1/11**

*Name*                                    *D.Ct Docket #*                                    *Race*

Wood, Carrie Christine                    E.D. TX No. 9:09-CR-21

Pending authorization                     **Name of AG**  Holder

**Race and Gender of Def**  W  F    **Race and Gender of Victim(s)**  WM

a free world double RICO gun murder by multiple members of the Aryan Brotherhood of Texas gang.  There are five potential defendants.
Frazier and Stalsby are charged in both murders, the others in one.  All involved are white.

---

*Name*                                    *D.Ct Docket #*                                    *Race*

Lajoie, Kelley                            D. RI No. CR 10 184-015

Pending authorization                     **Name of AG**  Holder

**Race and Gender of Def**  UK  F    **Race and Gender of Victim(s)**  WM

**Fell Motion Appendix0270**