UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

**U.S. DISTRICT COURT**
**DISTRICT OF VERMONT**
FILED

**2016 MAR 30   PM 1: 54**

CLERK

BY _____

DEPUTY CLERK

UNITED STATES OF AMERICA )
)
v. ) Case No. 5:01-cr-12-01
)
DONALD FELL )

**OPINION AND ORDER ON**
**MOTION TO DISMISS INDICTMENT PURSUANT TO RULE 12(b)(3)(B)(v) AND THE**
**FIFTH, SIXTH, AND EIGHTH AMENDMENTS,**
**OR, IN THE ALTERNATIVE, TO STRIKE SURPLUSAGE PURSUANT TO RULE 7(d)**
(Doc. 632)

Defendant Donald Fell seeks dismissal of the Superseding Indictment and the Special

Findings in that Indictment (Doc. 57) under Fed. R. Crim. P. 12(b)(3)(B)(v) and the Fifth, Sixth,

and Eighth Amendments to the United States Constitution. (Doc. 632.) Alternatively, Fell seeks

to strike a portion of paragraph 1 of the Superseding Indictment as prejudicial surplusage under

Fed. R. Crim. P. 7(d). The Government opposes Fell's Motion, (Doc. 658), and Fell has filed a

Reply (Doc. 681). For the reasons below, Fell's Rule 12(b)(3)(B)(v) Motion to Dismiss and

Rule 7(d) Motion to Strike (Doc. 632) are DENIED.

**Background**

The July 8, 2002 Superseding Indictment begins with the following introductory

paragraphs:

> 1.     On or about November 27, 2000, inside the residence of Debra Fell in
> Rutland, Vermont, the defendant DONALD FELL and Robert Lee killed Debra
> Fell and Charles Conway by stabbing them with knives and slashing their throats.
>
> 2.     After the killings, FELL and Lee decided to flee from Rutland and left the
> residence to search for a vehicle. They were armed with a Mossberg 12-guage
> shotgun.

3.      In the pre-dawn hours of November 27, FELL and Lee accosted Teresca King, who had driven a 1996 Plymouth Neon automobile from her home in North Clarendon, Vermont to her job at the Price Chopper supermarket in downtown Rutland.   FELL and Lee commandeered King's vehicle at shotgun-point and abducted Mrs. King.

4.      Thereafter, FELL and Lee drove Mrs. King from Vermont to New York State.  A few hours after the carjacking and kidnapping, in Dutchess County, New York, FELL and Lee intentionally killed Mrs. King by punching and kicking her in the head and by smashing her head with rocks.  They abandoned her body at the murder scene.

5.      After killing Mrs. King, FELL and Lee drove in her automobile to Wilkes-Barre, Pennsylvania and then on to Clarksville, Arkansas where, on November 30, 2000, they were stopped by law enforcement authorities and arrested.

6.      Mrs. King's 1996 Plymouth Neon automobile was manufactured outside the state of Vermont.

(Doc. 57 at 1–2.)

The Superseding Indictment then recites the following four counts.  In Count 1, the

carjacking count, the Grand Jury charged:

On or about November 27, 2000, in the District of Vermont, the defendant DONALD FELL, with intent to cause death and serious bodily harm, took by force and violence and by intimidation from the person and presence of Teresca King a 1996 Plymouth Neon automobile, a motor vehicle that had been transported, shipped and received in interstate and foreign commerce, and the death of Teresca King resulted from such taking of the automobile.
(18 U.S.C. §§ 2119(3) & 2)

(Doc. 57 at 3.)  In Count 2, the kidnapping count, the Grand Jury charged:

On or about November 27, 2000, in the District of Vermont and elsewhere, the defendant DONALD FELL unlawfully seized, kidnapped, abducted and carried away Teresa King and held her for ransom, reward and otherwise, and willfully transported her, while she was alive, in interstate commerce from the State of Vermont to the State of New York, resulting in the death of Teresca King.
(18 U.S.C. §§ 1201(a)(1) & 2)

(Doc. 57 at 4.)

Counts 3 and 4 are firearm counts.  In Count 3, the Grand Jury charged:

On or about November 27, 2000, in the District of Vermont and elsewhere, the defendant DONALD FELL knowingly possessed and brandished a firearm, specifically a Mossberg 12-gauge shotgun, in furtherance of crimes of violence for which they may be prosecuted in a court of the United States, namely, carjacking and kidnapping in violation of 18 U.S.C. §§ 2119 and 1201.

(18 U.S.C. §§ 924(c)(1)(A)(ii) & 2)

(Doc. 57 at 5.)  Count 4 reads:

On or about and between November 27, 2000 and November 30, 2000, in the District of Vermont and elsewhere, the defendant DONALD FELL, who was a fugitive from justice, transported a firearm, to wit, a Mossberg 12-gauge shotgun, in interstate commerce between the State of Vermont and the State of Arkansas.

(18 U.S.C. §§ 922(g)(2) & 2)

(Doc. 57 at 6.)

The Superseding Indictment also contains the following "Notice of Special Findings,"

stating that, as to Counts 1 and 2, Fell:

    a.  was 18 years of age or older at the time of the offenses.
    b.  intentionally killed Teresca King (18 U.S.C. § 3591(a)(2)(A)).
    c.  intentionally inflicted serious bodily injury that resulted in the death of Teresca King (18 U.S.C. § 3591(a)(2)(B)).
    d.  intentionally participated in one or more acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and Teresca King died as a direct result of such act or acts (18 U.S.C. § 3591(a)(2)(C)).
    e.  intentionally and specifically engaged in one or more acts of violence, knowing that the act or acts created a grave risk of death to a person, other than one of the participants in the offense, such that participation in such act or acts constituted a reckless disregard for human life, and Teresca King died as a direct result of such act or acts (18 U.S.C. § 3591(a)(2)(D)).
    f.  caused the death of Teresca King during the commission of a violation of 18 U.S.C. § 1201 (kidnapping) (18 U.S.C. § 3592(c)(1)).
    g.  committed the offense in an especially heinous, cruel, or depraved manner in that it involved serious physical abuse to Teresca King (18 U.S.C. § 3592(c)(6)).
    h.  intentionally killed or attempted to kill more than one person in a single criminal episode (18 U.S.C. § 3592(c)(16)).

(Doc. 57 at 7–8.)

## Analysis

### I.      Motion to Dismiss the Superseding Indictment and Special Findings

Under Rule 12(b)(3)(B)(v), a defendant may bring a motion to dismiss for "a defect in the indictment or information including . . . (v) failure to state an offense."  Fell contends that each count of the Superseding Indictment is defective for failing to state one or more essential elements.  (Doc. 632-1 at 11.)  He also contends that the Notice of Special Findings is defective for failing to state one or more essential elements.  (*See id.* at 15, 19, 31.)  The court begins with the applicable legal standards, and then turns to each of Fell's specific challenges.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  This court has held that, "[i]n order to meet these requirements, 'an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'"  *United States v. Roy*, No. 11-cr-109, 2012 WL 47768, at *2 (D. Vt. Jan. 9, 2012) (quoting *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975)).  In addition to what Rule 7(c)(1) requires,

> [t]here are "two constitutional requirements for an indictment: first, that it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, that it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."

*United States v. Veliz*, 800 F.3d 63, 77 n.15 (2d Cir. 2015) (quoting *United States v. Rigas*, 490 F.3d 208, 228 (2d Cir. 2007)); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (same).  Thus, "[i]f . . . an essential element is omitted, the indictment must be dismissed."  *United States v. Miller*, 17 F.R.D. 486, 489 (D. Vt. 1955).

The text of a criminal statute may not always recite all of the essential elements.  *See, e.g.*, *Neder v. United States*, 527 U.S. 1, 25 (1999) (holding that, although materiality was not

mentioned in the federal mail fraud, wire fraud, and bank fraud statutes, it was an element of those crimes).  Essential elements not stated in the statutory text must be explicitly alleged in the indictment.  *See United States v. Santeramo*, 45 F.3d 622, 624 (2d Cir. 1995) (per curiam) ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly . . . set forth all the elements necessary to constitute the offence intended to be punished." (internal quotation marks omitted; ellipsis in original) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974))); *United States v. Jackson*, 749 F. Supp. 2d 19, 26 (N.D.N.Y. 2010) ("When statutory language fails to include all the elements of an offense, the missing elements must be included in the indictment."); *see also* 1 Charles Alan Wright et al., *Federal Practice and Procedure: Criminal* § 125 (4th ed. 2015) ("If the statute itself does not state an essential element of the offense or includes it only by implication, a pleading that merely repeats the statutory language will be insufficient—the missing element must be directly alleged.").

## A.    Count 1: Carjacking

The carjacking statute under which Fell was indicted provides, in pertinent part, as follows:

> Whoever, with the intent to cause death or serious bodily harm[,] takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall . . . if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119(3).  Fell asserts that Count 1 fails to state an offense in three separate ways. The court addresses each of those issues in turn.

### 1.    Time of Formation of Intent to Cause Death or Serious Bodily Harm

One of the elements of § 2119(3) is a *mens rea* element: the defendant must have taken the motor vehicle "with the intent to cause death or serious bodily harm." Count 1 indeed charges that Fell took Teresca King's automobile "with intent to cause death and serious bodily harm." (Doc. 57 at 3.) Fell contends, however, that Count 1 is deficient because it fails to charge that he formed the requisite intent "at the precise moment he demanded or took control over the car 'by force and violence or intimidation.'" *Holloway v. United States*, 526 U.S. 1, 8 (1999).

It is true that the Supreme Court in *Holloway* interpreted the *mens rea* requirement as modifying the act of "taking" the motor vehicle, and that the defendant's state of mind must therefore be evaluated at the moment he demanded or took over the vehicle. *See id.* Consistent with that interpretation, this court at Fell's first trial charged the jury on June 24, 2005 with evaluating the intent element at the moment he demanded or took control of the vehicle. The court concludes, however, that the *Holloway* Court did no more than *interpret* § 2119(3)'s specific-intent element; it did not add any essential element to that section.

Fell correctly notes that, in *United States v. Lamont*, the Second Circuit stated that "an allegation for lack of which the prosecution must evidently and as a matter of law fail cannot be regarded as superfluous." 236 F.3d 312, 315 (2d Cir. 1956). That case arose in the era of McCarthyism; the defendants were charged with contempt under 2 U.S.C. § 192 after refusing to answer questions posed by the Permanent Subcommittee on Investigations of the Senate Committee on Government Operations concerning the defendants' alleged communist activities. The trial court found the indictments to be defective because they failed to plead, among other

things, that the subcommittee was duly empowered to conduct the inquiry, or that the inquiry was within the scope of the committee's authority.

The Second Circuit affirmed, noting that there was no allegation in the indictments linking the inquiry conducted by the subcommittee to the grant of authority dispensed to the committee. Taking judicial notice of the legislation describing the scope of the committee's authority, the Second Circuit concluded that in fact there was no such link, and that the "crucial problem at the heart of the case" was not so much a question of pleading, but that no crime had been shown. *Lamont*, 236 F.2d at 315–16. The missing allegation that caused the prosecution to fail as a matter of law could not have been proven even if it had been alleged.

This case is quite different: as the court's June 24, 2005 instruction to the jury suggests, the issue of whether Fell formed the requisite intent at the moment he demanded or took over the car was not unprovable, but rather a question of fact for the jury. That factual question needs to be resolved to determine whether the Government has satisfied the specific-intent element of § 2119(3), but it is not the essential element itself. Ultimately, *Lamont* does not stand for the proposition that an essential element is only properly pleaded if the Government also includes in the pleadings an explanation of the element, or what the Government would have to prove to establish the element. The authority cited by Fell actually undermines his position; it draws a clear line between § 2119(3)'s specific-intent element and the facts that would be needed to *prove* that element. *See* 3-53A Leonard B. Sand et al, *Modern Federal Jury Instructions—Criminal*, Instruction 53A-2 (listing specific-intent element simply as the requirement "that the defendant acted with intent to cause death or serious bodily harm"); *id.* Instruction 53A-6 (describing what the Government must prove to *establish* the element).

7

## 2.     Nexus Between Intent and Objective

Fell next argues that, "to prove a carjacking charge, the Government must also show that there was a nexus between the intent . . . to do harm and the objective of stealing the car." (Doc. 632-1 at 15.)  In support, Fell cites *United States v. Harris*, 420 F.3d 467 (5th Cir. 2005), and *United States v. Applewhaite*, 195 F.3d 679 (3d Cir. 1999).  Fell asserts that those cases "hold that, in order to satisfy the intent requirements of the statute, the defendant must intend harm *in order* to complete the theft of the car, distinguishing cases where the vehicle may have been stolen as an afterthought to a separate violent crime." (Doc. 632-1 at 15.)

Fell may be correct in asserting that the intent element of § 2119 cannot be satisfied if the vehicle was stolen only as an "afterthought."  The court need not rule on that issue now, however.  Even if Fell is correct, he cites no case holding that there is any distinct intent-related "nexus element" in the crime.  (Doc. 632-1 at 15).[1]  The *mens rea* requirement is the element that must be charged in the indictment.  That element is satisfied for purposes of the charge by the allegations in the Superseding Indictment that Fell took Teresca King's automobile from her "by force and violence and by intimidation" and with "intent to cause death and serious bodily harm."  The facts that the Government might need to prove to establish the *mens rea* element are not themselves elements.

## 3.     "Knowingly" or "Intentionally" Took a Motor Vehicle

In *United States v. Rivera-Figueroa*, the First Circuit stated that, under the federal carjacking statute, "we may assume that a defendant who 'takes a motor vehicle' must know what he is doing . . . [i.e.,] that the defendant be aware that the action in which he is engaged . . .

---

[1] There is a *constitutional* "nexus" element in the federal carjacking statute—namely, the element that the vehicle was transported, shipped, or received in interstate or foreign commerce. *See United States v. Rivera-Figueroa*, 149 F.3d 1, 3–4 (1st Cir. 1998) (constitutional "nexus" was a "specific element that must be charged and proved").

involves the taking of a motor vehicle." 149 F.3d 1, 4 (1st Cir. 1998). It is true that Count 1 does not contain the words "knowingly" or "intentionally." However, to the extent that the "taking" element of § 2119 includes that mental state, Count 1 is not defective because the Superseding Indictment fairly imported the scienter element, putting Fell on notice that the Grand Jury was charging that he knew he was engaged in "taking" the vehicle.

Numerous cases support this conclusion. *See United States v. Jackson*, 513 F. App'x 51, 55 (2d Cir. 2013) ("Although the indictment did not specifically contain the words 'knowingly' or 'willfully,' the plain and common-sense reading of the indictment put the defendant on notice of what the charges against him were, such that he was not prejudiced in the preparation of his defense."); *Santeramo*, 45 F.3d at 624 (knowledge of use of firearm in relation to drug offense was an essential element of 18 U.S.C. § 924(c)(1), but indictment that failed to expressly allege knowledge was not deficient because the language "fairly import[ed]" the knowledge requirement);[2] *United States v. Wilson*, 884 F.2d 174, 179 (5th Cir. 1989) ("[A] recitation of the exact scienter ('knowing') is not required where the pleading 'fairly imports' knowledge."); *United States v. McLennan*, 672 F.2d 239, 242 (1st Cir. 1982) ("Indictments . . . need not always plead required scienter elements in precise statutory terms such as 'willfully' or 'knowingly' so long as other words or facts contained in the indictment 'necessarily or fairly import guilty knowledge.'" (quoting *Madsen v. United States*, 165 F.2d 507, 509–10 (10th Cir. 1947))); *United*

---

[2] Fell asserts that *Santeramo* is unpersuasive because in that case the defendant challenged the indictment at sentencing after entering a guilty plea, whereas Fell's challenge is brought well in advance of trial. It is true that "the level of scrutiny given to an indictment falls along a continuum depending on the timing of a defendant's objection," and that when a challenge is brought during or after trial, the indictment should be interpreted liberally in favor of sufficiency. *United States v. Sabbeth*, 262 F.3d 207, 218 (2d Cir. 2001). To the extent that the Superseding Indictment should be construed less liberally now than if Fell had brought his challenge later in the case, the court concludes for the reasons discussed here the Superseding Indictment still survives.

*States v. Berlin*, 472 F.2d 1002, 1007 (2d Cir. 1973) ("The elements need not be alleged in terms, and a pleading is good if it fairly imports knowledge, intent, or malice where these are elements of the crime." (citation and internal quotation marks omitted)).[3]

The *Rivera-Figueroa* court was able to "assume" from the "taking" language that the taking must be a *knowing* taking. Fell could fairly reach the same conclusion by reading the text of Count 1. This conclusion is also supported by the fact that the Superseding Indictment charged Fell with "accost[ing] Teresca King . . . commandeer[ing] King's vehicle at shotgun-point and abduct[ing] Mrs. King." (Doc. 57 ¶ 3.) Having charged that conduct, the Grand Jury fairly put Fell on notice that it was also charging him with knowledge that the action in which he was engaged involved the taking of a motor vehicle.

*United States v. Miller*, 17 F.R.D. 486 (D. Vt. 1955), does not require a contrary result. The court in that case dismissed an indictment charging a violation of 18 U.S.C. § 111 (assaulting, resisting, or impeding a federal officer) because the indictment failed to allege the essential facts that the defendant knew his victim was a United States Marshal and that the Marshal was in the performance of his official duties. *Miller*, 17 F.R.D. at 491. That case deals with an entirely different offense, however, and the knowledge that the court required there did not spring obviously from the text.

### B.    Count 2: Kidnapping

The kidnapping statute under which Fell was indicated provides, in relevant part:

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . .

---

[3] It is true that *Jackson*, *Santeramo*, *Wilson*, *McLennan*, and *Berlin* do not involve carjacking charges. That does not mean that the lessons from those cases must be confined to the criminal charges in those cases. *See United States v. De La Rosa*, 911 F.2d 985, 989 (4th Cir. 1990) (following *Wilson* in addressing a challenge to an indictment under federal kidnapping statute).

when . . . the person is willfully transported in interstate or foreign commerce . . . shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

18 U.S.C. § 1201(a)(1). Fell's challenge to the kidnapping count is similar to his third challenge to the carjacking count: he contends that Count 2 is deficient because it fails to allege that he "knowingly" and "intentionally" seized, kidnapped, abducted and carried away Teresca King. (Doc. 632-1 at 17.) Although Count 2 does charge that Fell "unlawfully" kidnapped Teresca King and that he "willfully" transported her, that count does not explicitly charge that Fell "knowingly" and "intentionally" kidnapped her.

Courts applying § 1201(a)(1) have ascribed a knowledge requirement to the act of kidnapping. *See United States v. Osborne*, 68 F.3d 94, 100 (5th Cir. 1995) (listing as an element of § 1201(a)(1) that "the acts were done knowingly and willfully"); *United States v. Pedroza*, 750 F.2d 187 (2d Cir. 1984) (holding that there was an evidentiary basis for a charge to the jury considering a § 1201(a)(1) count that the defendants had to act "knowingly and intentionally in committing a kidnapping"); *United States v. Corbett*, No. 3:10-cr-28 (CFD), 2011 WL 2144659, at *4 (D. Conn. 2011) (listing as an element of § 1201(a)(1) that the defendant "unlawfully, knowingly, and willfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away" the victim). Other authorities are in accord. *See* 2-42 Leonard B. Sand et al, *Modern Federal Jury Instructions—Criminal*, Instruction 42-6 (listing as an element of § 1201 that "the defendant acted unlawfully, knowingly, and willfully," that is, that the defendant knew the victim "was not accompanying him voluntarily but rather was forced, coerced, or tricked to come along"); 2A *Federal Jury Practice & Instructions* § 46:03 (6th ed. 2015) (listing as an element

11

that the defendant "knowingly and willfully seized, confined, kidnapped, abducted, or carried away" the victim).[4]

The court concludes, however, that Count 2 is not deficient for the same reason the carjacking count is not defective: the language of the Superseding Indictment fairly imports the knowledge requirement. As with the carjacking count, this conclusion is supported by the fact that the Superseding Indictment charged Fell with "accost[ing] Teresca King . . . commandeer[ing] King's vehicle at shotgun-point and abduct[ing] Mrs. King." (Doc. 57 ¶ 3.) Having charged such conduct in terms emphasizing its purposeful and domineering nature, the Grand Jury fairly put Fell on notice that it was also charging him with knowledge that Teresca King was not accompanying him voluntarily.

### C.    Count 3: Section 924(c)(1)(A)(ii) Offense

Section 924(c)(1)(A)(ii) provides in pertinent part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime— . . . **(ii)** if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years . . . .

Since the court has rejected Fell's challenges to Counts 1 and 2, the court also rejects Fell's contention that Count 3 is flawed as dependent on Counts 1 and 2.

Count 3 charges that Fell "knowingly possessed and brandished a firearm." Fell contends that Count 3 is defective for failing to charge that he "intentionally" brandished the firearm. As the Supreme Court has explained, "Congress expressly included an intent requirement for [the

---

[4] Section 1201(a)(1) does not require that the defendant have knowledge that he has transported the victim across state lines. *See United States v. Young*, No. 99-1718, 2000 WL 687750, at *3 (2d Cir. 2000) ("Willful transportation of a kidnap victim across states lines is not an element of a § 1201(a)(1) offense.").

brandishing] provision, by defining 'brandish' to mean 'to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, *in order to intimidate* that person.'" *Dean v. United States*, 556 U.S. 568, 572 (2009) (quoting 18 U.S.C. § 924(c)(4)). Since the intent element expressly appears in the definition of the word "brandish," Count 3 fairly incorporated that element.

Finally, Fell argues that any allegation of "brandishing" should be dismissed because the Government abandoned that theory at Fell's first trial. Fell maintains that the Government "clearly abandoned the theory of brandishment" in its closing statement, where it mentioned only two elements:

> Count three is brandishing a weapon in connection with a crime of violence. And there are only two elements. First, that the defendant committed a crime of violence for which he can be prosecuted in any court of the United States, namely either the car jacking or kidnapping charge in count one or count two. And, second, that the defendant knowingly possessed a firearm in furtherance of a car jacking or kidnapping as charged in count one and count two. No question about either of those elements. They are proved overwhelmingly.

(Doc. 632-1 at 19 (quoting Trial Transcript of June 24, 2005 at 68).) The Government argues that it did not "abandon" the brandishing claim at trial, and is in any case not bound by the positions it took at the first trial.

The Second Circuit has explained that, "[u]ltimately, the question of abandonment is one of intent." *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). In this case, the court cannot conclude that the Government intended to abandon the brandishment element. The Government's closing statement did not mention "brandishing." But it was not until 2013— eight years after the 2005 trial—that the Supreme Court described "brandishing" as an element of the distinct aggravated offense defined by § 924(c)(1)(A)(ii). *Alleyne v. United States*,

133 S. Ct. 2151, 2162–63 (2013). Even if the Government could be faulted for not anticipating that holding, failure to mention "brandishing" as a third element could not have been an abandonment.

Moreover, the brandishment element was developed at trial and specifically charged to the jury. *See* Jury Charge (June 24, 2005) at 33 ("[T]he government must prove . . . that the defendant knowingly possessed and brandished a firearm . . . ."). In its June 2006 Sentencing Memorandum, the Government also specifically relied on the "brandishing" offense described in § 924(c)(1)(A)(ii). (*See* Doc. 240 at 1–2.) The court's June 16, 2006 Judgment explicitly cited § 924(c)(1)(A)(ii), and imposed a 7-year prison sentence on Count 3—a term not available without the brandishment element. (*See* Doc. 244 at 1–2.) In light of these circumstances, the Government cannot be said to have intended to abandon the brandishment element merely because it did not discuss it at closing. *See Haines v. N.H. Dep't of Corr.*, No. Civ. 99-153, 2003 WL 1538187, at *3 (D.N.H. Mar. 25, 2003) (failure to mention "self-defense" in closing argument did not abandon self-defense claim, where the claim was developed at trial and the jury was properly instructed on that claim).[5]

### D.   Count 4: Section 922(g)(2) Offense

Under 18 U.S.C. § 922(g)(2), it is unlawful "for any person . . . who is a fugitive from justice . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm . . . ." Fell first contends that Count 4 is defective because it alleges that he "was" (not "is") a fugitive from justice. The court rejects that argument. Section 922(g)(2) plainly only covers the transportation of firearms if the person doing the transporting is a fugitive from justice at the time. Count 4 alleges precisely that; it uses the past tense because, by the time

---

[5] This conclusion makes it unnecessary to decide the parties' dispute over whether the Government is bound by any position it took on the brandishment issue at the 2005 trial.

of the Superseding Indictment, Fell was in custody and no longer a fugitive. Indeed, as the Government points out, all four counts of the Superseding Indictment describe the 2000 offense conduct in the past tense.

Fell also argues that Count 4 omits the mental state that appears in the relevant penalty provision. *See* 18 U.S.C. § 924(a)(2) ("Whoever *knowingly* violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." (emphasis added).) The Government does not dispute that the statute requires that a violation be knowing, but maintains that Count 4 "fairly imports" the knowledge element. (Doc. 658 at 18.) Largely for the reasons described above with respect to the carjacking and kidnapping counts, the court concurs that Count 4 fairly imports the knowledge element. Notably, the knowledge required by the statute is not extensive; it "merely requires proof of knowledge of the facts that constitute the offense." *Bryan v. United States*, 524 U.S. 184, 193 (1998). The allegations of the Superseding Indictment fairly allege that, while Fell was a fugitive from justice, he knew that he possessed a firearm.

### E.    Special Findings

The "Special Findings" relate to issues concerning Fell's eligibility for the death penalty, and whether a jury might select that penalty. Of course, a jury would not reach the "selection" stage unless it has already found a defendant "eligible." The court, however, discusses Fell's "selection" and "eligibility" arguments in the order that he raises them.

### 1.    "Selection" Stage: Aggravating Factor Under Section 3592(c)(6)

Under 18 U.S.C. § 3592(c), a jury determining (or "selecting") whether a sentence of death is justified must consider and determine whether certain "aggravating factors" are present. One such factor is whether the defendant committed the offense "in an especially heinous, cruel,

or depraved manner in that it involved torture or serious physical abuse to the victim." *Id.* § 3592(c)(6). Paragraph 16(g) of the Special Findings charges that Fell committed the carjacking and kidnapping offenses "in an especially heinous, cruel, or depraved manner in that it involved serious physical abuse to Teresca King." (Doc. 57 at 8, ¶ 16(g).) Fell contends that paragraph 16(g) must be dismissed because it is missing necessary elements.

First, Fell contends that paragraph 16(g) fails to include any statement as to his intent. Other courts applying § 3592(c)(6) have indeed held that, when analyzing whether "serious physical abuse" is present, "'the focus is in large part on the defendant's intent and state of mind.'" *United States v. Taveras*, 488 F. Supp. 2d 246, 251 (E.D.N.Y. 2007) (quoting *United States v. Sampson*, 335 F. Supp. 2d 166, 204 (D. Mass. 2004)); *see also Sampson*, 335 F. Supp. 2d at 180 ("For a finding of especially serious physical abuse, the jury would have to find that the defendant had the intent to inflict physical abuse to the victims' bodies beyond that necessary to kill the victims."). However, those cases say nothing about what must be stated in an indictment charging "serious physical abuse" under § 3592(c)(6). Moreover, the Superseding Indictment must be read to contain an element of intent, especially in light of the specific allegations regarding how Fell and Lee killed Teresca King. (*See* Doc. 57 at 1–2, ¶ 4.)

Second, Fell contends that paragraph 16(g) fails to include statements such as those appearing in the court's July 13, 2005 Jury Charge regarding the meaning of "heinous," "cruel," "depraved," and "especially." (*See* Doc. 197 at 13–14.) The fact that the court defined those words when it charged the jury does not mean that the definitions must appear in the indictment. An indictment plays a very different role than jury instructions. Fell does not cite any case finding deficient an indictment alleging a § 3592(c)(6) factor for failure to provide detailed definitions of those terms. *United States v. Mitchell*, 502 F.3d 931, 975 (9th Cir. 2007), actually

16

undermines Fell's position, since in that case the court explained that Congress "defined what it meant by 'especially heinous, cruel, or depraved' when it specified that for this manner of killing to be aggravating, it must involve 'torture or serious physical abuse to the victim.'" *Sampson* is in accord. *See* 335 F. Supp. 2d at 204–07 (noting that, under express terms of the Federal Death Penalty Act (FDPA), "serious physical abuse" and "torture" are both ways of establishing that an offense was committed in an especially heinous, cruel, or depraved manner).

### 2.   "Eligibility" Stage: Gateway Factors Under Section 3591(a)(2)(B)–(D)

In order to trigger death penalty eligibility in a case involving a victim's death, one of four statutory "gateway factors" must be met.[6]  Those factors (Factors "A" through "D") require a determination that the defendant either:

> (A) intentionally killed the victim;
> (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;
> (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
> (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act . . . .

18 U.S.C. § 3591(a)(2).  As recited above, the Notice of Special Findings in the Superseding Indictment alleges all four gateway factors.  (Doc. 57 at 7, ¶ 16(b)–(e).)

---

[6] In a footnote, the Second Circuit described the "gateway factors" as the "aggravating factors" such as the sixteen factors listed in 18 U.S.C. § 3592(c).  *See In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 108 n.13 (2d Cir. 2008) (citing *United States v. Fell*, 360 F.3d 135, 140 (2d Cir. 2004)).  Other courts have, however, described the "gateway factors" as the four factors that can trigger death penalty eligibility under § 3591(a)(2).  *See United States v. Webster*, 162 F.3d 308, 355 (5th Cir. 1998) ("[Section] 3591(a) does not set forth a list of aggravating factors, but, on the contrary, serves a gatekeeping function."); *see also United States v. Basciano*, 763 F. Supp. 2d 303, 338 (E.D.N.Y. 2011).  For present purposes, the court adopts the nomenclature defining the "gateway factors" as the four factors that can trigger death penalty eligibility under § 3591(a)(2).

Fell argues that the Government's theory has been (and is) that he intentionally killed Teresca King (Factor A). Fell contends that Factor B should be stricken as duplicative of Factor A, and that the Government should be precluded or estopped from asserting other "inconsistent" theories (Factors B, C, and D), including theories premised on aiding and abetting in Teresca King's murder. Finally, Fell argues that evidence or argument that he is an aider and abetter would be unfairly prejudicial and would confuse the jury.[7]

The court rejects Fell's contention that Factor B should be stricken as duplicative of Factor A.[8] The mental states in Factors A and B are different: the former mental state is an intent to kill, while the latter is an intent to inflict serious bodily injury. Moreover, the four gateway factors are not aggravating factors that need to be weighed like the factors listed in § 3592(c). As other courts have held, "there is no constitutional violation, or violation of the FDPA, by virtue of the Government's presentation of multiple Gateway Factors to the jury during the death-penalty eligibility determination." *United States v. Basciano*, 763 F. Supp. 2d 303, 342 (E.D.N.Y. 2011); *see also United States v. Kee*, No. S1 98 CR 778(DLC), 2000 WL 863119, at *11 (S.D.N.Y. June 27, 2000) ("[T]he four enumerated mental states are not four separate aggravating factors, and are not in any sense unfairly duplicative of one another.").

*United States v. McCullah*, 76 F.3d 1087 (10th Cir. 1996), and *United States v. Beckford*, 968 F. Supp. 1080 (E.D. Va. 1997), do not hold to the contrary. The defendants in both of those cases challenged as duplicative the presentation of more than one of four alternative "(n)(1)"

---

[7] Fell also brings an additional, distinct Eighth Amendment argument solely against Factor B. The court addresses that argument below.

[8] This same conclusion holds to the extent that Fell contends that Factors C and D are duplicative of Factor A.

mental states that would be sufficient to constitute an aggravating factor for homicide in the course of a "continuing criminal enterprise":

> (A) intentionally killed the victim;
> (B) intentionally inflicted serious bodily injury which resulted in the death of the victim;
> (C) intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim;
> (D) intentionally engaged in conduct which—
> (i) the defendant knew would create a grave risk of death to a person, other than one of the participants in the offense; and
> (ii) resulted in the death of the victim.

Anti-Drug Abuse Act of 1998, § 7001(b), 102 Stat. 4181 (adding, among other things, subsection (n)(1); repealed 2006; current version at 21 U.S.C. § 848).

The *McCullah* court concluded that the (n)(1)(C) factor necessarily subsumed the (n)(1)(D) factor, holding that it was error to submit both statutory aggravating factors to the jury and that "the use of duplicative aggravating factors creates an unconstitutional skewing of the weighing process which necessitates a reweighing of the aggravating and mitigating factors." 76 F.3d at 1112. The *Beckford* court similarly concluded that each of the (n)(1) circumstances was essentially a lesser included aspect of the circumstance above it. *See* 968 F. Supp. at 1084. But both *McCullah* and *Beckford* involved a weighing of *aggravating* factors, not an analysis of *gateway* factors. Moreover, as the *Beckford* court observed, a death penalty notice may reference—and the Government may try to prove—all of the (n)(1) factors. *Id.* At least with respect to the death-penalty eligibility phase, the same is true with respect to the gateway factors.

Regarding his preclusion or estoppel argument, Fell points to the Government's opening and closing statements at the 2005 guilt and penalty phase proceedings to argue that "from the beginning to the end of this case, the government has advanced only one theory as to the gateway eligibility factors, that is, that Mr. Fell 'intentionally killed Teresca King . . . .'" (Doc. 632-1

at 29.) The Government's response is twofold. It insists that it has not abandoned any of its theories, and that it is not restricted to the theories advanced in the 2005 trial or to the evidence it introduced at that proceeding.

As noted above, the question of abandonment is ultimately a question of intent. Fell correctly notes that the Government made several statements at the 2005 trial suggesting that Fell intentionally killed Teresca King. But even Fell concedes that at those proceedings the Government also asserted that Fell acted in concert with Lee. (*See* Doc. 632-1 at 27 (quoting Government's summation on June 24, 2005, where Government asserted that Fell, "with his friend[] Bobby Lee . . . murdered [Teresca King]"); *see id.* at 28 n.5 (conceding that Government argued at both the guilt and penalty phases that Fell and Lee both killed Teresca King).)[9] Moreover, the court ultimately asked the jury to evaluate *each* of the gateway factors (*see* Doc. 200 at 3–5), and explicitly asked the jurors to make a finding about whether Fell and Lee acted in concert in committing the crimes (*id.* at 13, 16). The court thus never viewed any of the gateway factors as abandoned. Under these circumstances, the court cannot conclude that the Government intentionally abandoned any gateway factors premised on accomplice liability.

Even if the Government did "abandon" Factors B, C, and D at Fell's 2005 trial, that would be no bar to the Government's pursuit of those factors in this retrial. The court previously stated that it would not adopt the defense perspective that statements and positions taken by the prosecution in opening and closing limit the Government's proof on retrial. (Doc. 647 at 2.) For the reasons below, the court continues to so hold. On the issue of the effect of any prior "abandonment," Fell appears to be making due process and estoppel arguments. As to due

---

[9] The Bill of Particulars clarifies the Government's present position regarding whether Fell is a principal or an accomplice. (*See* Doc. 689 at 1 ("Generally, it is the government's position that the November 27, 2000, offenses alleged in the Indictment were committed jointly by Fell and his associate Robert Lee.").)

process, the Second Circuit has remarked that "other circuits have found that 'the use of inherently factually contradictory theories violates the principles of due process.'" *United States v. Boyle*, 283 F. App'x 825, 826 (2d Cir. 2007) (quoting *Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000)), *aff'd on other grounds*, 556 U.S. 938 (2009). Assuming that the law is the same in this circuit,[10] the court cannot conclude that the holding in *Smith* applies in this case.

The court in *Smith* held that "[t]o violate due process, an inconsistency must exist at the core of the prosecutor's cases against [separate] defendants for the same crime." *Smith*, 205 F.3d at 1052. Here, there is only one defendant facing trial for the alleged crimes. Moreover, to the extent there is any inconsistency in asserting that Fell is both a principal and an accomplice in the carjacking and kidnapping, it is not a factual inconsistency at the "core" of the Government's case. Any inconsistency on this point goes only to the extent of Fell's involvement in the alleged crimes—an issue that is proper for jury consideration at the death-penalty eligibility phase. As noted above, "there is no constitutional violation, or violation of the FDPA, by virtue of the Government's presentation of multiple Gateway Factors to the jury during the death-penalty eligibility determination." *Basciano*, 763 F. Supp. 2d at 342.

Fell's estoppel argument cannot be a collateral-estoppel claim. The judgment resulting from the 2005 trial was vacated (due to juror misconduct), and thus has no preclusive effect. *See Stone v. Williams*, 970 F.2d 1043, 1054 (2d Cir. 1992) ("A judgment vacated or set aside has no preclusive effect."). Of course, collateral estoppel is an aspect of the Fifth Amendment's guarantee against double jeopardy. *United States v. Dionisio*, 503 F.3d 78, 85 (2d Cir. 2007); *United States v. Stitt*, 760 F. Supp. 2d 570, 584 (E.D. Va. 2010). But any separate double jeopardy argument would likely fail. The Second Circuit has rejected similar "abandonment"

---

[10] The Second Circuit has noted that neither it nor the Supreme Court has squarely addressed the issue. *United States v. Tarantino*, 617 F. App'x 62, 66 n.1 (2d Cir. 2015).

theories. *See United States v. Bruno*, 531 F. App'x 47, 48 (2d Cir. 2013) (noting holding in

*Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir. 1988)—that government was barred from pursuing

in a subsequent prosecution a theory of liability that it had "abandoned" at the first trial—but

remarking that *Saylor* is an "outlier" that has been called into question). And this case is similar

to *Stitt* insofar as the court in that capital sentencing retrial case concluded that collateral

estoppel did not apply for lack of a "valid and final" judgment due to prior error. *Stitt*,

760 F. Supp. at 584.

Fell's estoppel argument, then, is best described as a claim of judicial estoppel. "Judicial

estoppel 'prevents a party from asserting a factual position in a legal proceeding that is contrary

to a position previously taken by [that party] in a prior legal proceeding.'" *Robinson v.*

*Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (alteration in original) (quoting

*Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993)). "A party invoking judicial

estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent

position in a prior proceeding and (2) that position was adopted by the first tribunal in some

manner, such as by rendering a favorable judgment." *Id.* (quoting *Mitchell v. Washingtonville*

*Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)).

Initially, it is unclear whether judicial estoppel can even be applied against the

government in a criminal case. *See United States v. D'Amico*, 734 F. Supp. 2d 321, 352

(S.D.N.Y. 2010) ("[S]everal circuits have found, or at least suggested, that the doctrine of

judicial estoppel may not be applied in a criminal case to bar the prosecution from asserting

factually inconsistent theories." (citing cases)). Even assuming that judicial estoppel could

apply, Fell has not established its application in this case. First, the Government is not taking a

factual position that is contrary to its position at the 2005 trial, since—as described above—the

Government never abandoned any theory of accomplice liability. Second, Fell cannot show that any inconsistent position was adopted by the court in the 2005 trial. Indeed, the 2006 Judgment (Doc. 244) was based on a Special Verdict Form in which the jury found *all* of the gateway factors had been met. (*See* Doc. 200 at 3–4.)[11]

*United States v. Johnson*, 377 F. Supp. 2d 689 (N.D. Iowa 2005), does not compel a contrary result. In that case, the government had decided to strike allegations charging the defendant, Johnson, as a "principal" in the capital charges against her and to proceed to trial only on an "aiding and abetting" theory as to each count. *Id.* at 689–90. The court concluded that the government could not be precluded from presenting *evidence* that Johnson acted as a principal, but that "the government is now estopped *from arguing* that Johnson is guilty of any offense as a 'principal' rather than an 'aider and abetter' by its election to go to trial only on an 'aiding and abetting' theory." *Id.* at 694. *Johnson* is distinguishable because in that case the government had explicitly stricken one of the potential theories of liability. As described above, the Government in this case never abandoned (let alone affirmatively struck) any of the gateway factors.

*Stitt* is similarly unpersuasive on this point. That case, like *McCullah* and *Beckford*, involved the "(n)(1)" aggravating factors that appeared in 21 U.S.C. § 848. Fell relies on a portion of the *Stitt* court's May 28, 2010 decision in which the court on one of the counts—after remand for a new capital sentencing hearing—stuck the mental state aggravators referring to subparagraphs (n)(1)(A) and (n)(1)(B), leaving only subparagraph (n)(1)(C) for the jury's consideration. *Stitt*, 760 F Supp. 2d at 583. The court reasoned:

---

[11] These conclusions make it unnecessary to decide whether judicial estoppel still applies where the judgment adopting the inconsistent position has been vacated.

> [Section] 848(n)(1)(A) as a mental state aggravator is simply inconsistent with the Government's evidence. Regarding the murders, the Government's theory is that Defendant ordered the killing, not that he was the actual triggerman. Moreover, although the Court did provide a limiting instruction, there is still the potential that the inclusion of more than one mental state factor could skew the weighing process.

*Id.* at 582–83.

*Stitt* is distinguishable because none of the gateway factors are inconsistent with the Government's "evidence." Unlike *Stitt*, which involved only a new capital sentencing hearing, Fell's retrial is set to include both guilt and penalty phases. Thus there is presently no "evidence" with which the gateway factors might be inconsistent.[12] Neither is there any real potential that presentation of all of the gateway factors might skew any weighing process. As noted above, the statutory scheme being applied in *Stitt* involved a weighing of *aggravating* factors, not an analysis of *gateway* factors. Again, "there is no constitutional violation, or violation of the FDPA, by virtue of the Government's presentation of multiple Gateway Factors to the jury during the death-penalty eligibility determination." *Basciano*, 763 F. Supp. 2d at 342.

This leads to Fell's final argument against Factors C and D. He contends that, under 18 U.S.C. § 3593(c), the court "should prohibit the admission of evidence and argument that Mr. Fell is an aider and abettor because it would be unfairly prejudicial and would confuse the jury." (Doc. 632-1 at 34–35.) Section 3593(c) concerns the proof of mitigating and aggravating factors at a capital penalty-phase hearing. It provides, in part, that information at that hearing "may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3953(c).

---

[12] Nor does it appear that any of the gateway factors are necessarily inconsistent with the evidence presented at the 2005 trial.

24

The court finds no basis under § 3593(c) to exclude presentation of all four gateway factors during the death-penalty eligibility determination. Even if the Government had "abandoned" any of the gateway factors in the 2005 proceeding, that would not cause any confusion in the retrial proceedings. The jury on retrial did not sit on the 2005 case and could not have witnessed the Government "abandon" any theory there.

Neither is there any danger of unfair prejudice. Section 3591(a) explicitly contemplates that the jury will determine the gateway factors at the § 3593 hearing—the same hearing at which it considers the mitigating and aggravating factors. That process is presumptively constitutional. *See Fed. Election Comm'n v. Political Contributions Data, Inc.*, 943 F.2d 190, 191 (2d Cir. 1991) ("[C]ongress is presumed to have passed statutes which are constitutional.").[13] Fell points to no case holding otherwise. *Basciano*—a case that Fell himself relies upon—explicitly holds that "there is no constitutional violation, or violation of the FDPA, by virtue of the Government's presentation of multiple Gateway Factors to the jury during the death-penalty eligibility determination." *Basciano*, 763 F. Supp. 2d at 342.

It is true that in *Basciano* the court granted a defense motion to strike Factor D (reckless disregard). *Id.* at 344. But the court only did so because the government had expressly conceded that a reckless-disregard theory was not consistent with its theory of the case, and thus the risk of confusing the jury by offering Factor D outweighed "the minimal benefit of allowing the jury to consider this theory." *Id.* There is no similar concession in this case. Absent that, there is no basis for striking any of the gateway factors as prejudicial. *See id.* ("[T]he Government is not precluded as a matter of law from pursuing both theories of culpability . . . .").

---

[13] The court offers no opinion here regarding the question of the constitutionality of the death penalty itself raised in the other pending motions that Fell has filed.

*Sampson* is also not persuasive on Fell's unfair-prejudice argument.  The court in that capital case noted that it was required to "serve a gate-keeping function with respect to non-statutory aggravating factors" and that "[i]n exercising its gate-keeping role and permitting a party to present a particular non-statutory factor to the jury, a court is, in effect, deciding that the jurors must assign that factor some weight, however small, in favor of or against a death sentence if the factor is proven." *Sampson*, 335 F. Supp. 2d at 229.  The *Sampson* court was discussing the consequence of placing before a capital jury a non-statutory aggravating or mitigating factor.  Nothing in that discussion was aimed at the statutory gateway factors.  To the extent that any prejudice arises by asking the jury to consider multiple gateway factors in the eligibility phase just before the penalty selection phase, it is not unfair prejudice for all of the reasons described above.

### 3.    Section 3591(a)(2)(B) and the Eighth Amendment

In addition to the other arguments discussed above regarding the gateway factors, Fell brings an Eighth Amendment challenge to Factor B in particular.  He contends that the only mental state alleged in Count 1 is that he acted "with intent to cause death [or] serious bodily harm,"[14] and that the only mental state alleged in Count 2 is that he "willfully" transported the victim. (Doc. 632-1 at 38.)  He then argues that using Factor B with those charges, "a jury could find Mr. Fell eligible for the death penalty solely on the basis of a finding of an intent to cause

---

[14] Count 1 charges that, in violation of 18 U.S.C. § 2119(3), Fell acted "with intent to cause death *and* serious bodily harm." (Doc. 57 at 3 (emphasis added).)  Section 2119(3) is, however, worded in the disjunctive. *See* 18 U.S.C. § 2119(3) (requiring "intent to cause death *or* serious bodily harm" (emphasis added)).  Even though the Superseding Indictment is worded in the conjunctive, it may be supported by *either* an intent to cause death or an intent to cause serious bodily harm. *See United States v. Cioffi*, 487 F.2d 492, 499 (2d Cir. 1978) ("[I]t appears settled that indictments worded in the conjunctive, charging violations of statutes worded in the disjunctive, can be supported by proof of either of the conjoined means of violating the act.").

serious bodily harm," a result which he says would violate the Eighth Amendment. (*Id.*)[15] The Government insists that all four of the gateway factors are properly alleged.

Fell correctly notes that, to be constitutional, "a capital sentencing scheme must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Romano v. Oklahoma*, 512 U.S. 1, 7 (1994) (internal quotation marks omitted). According to Fell, if Factor B is sufficient as a gateway factor, there will be no narrowing in his case because the death penalty might be imposed even if his mental state is found to be no more culpable than intent to cause serious bodily harm. Fell cites no authority, however, for the proposition that the "narrowing" must limit death-penalty eligibility to the mental state of "intent to kill" or what Fell says is "some other equally culpable mental state" that does not include intent to cause serious bodily harm. (Doc. 632-1 at 39.)

Fell relies on *Tison v. Arizona*, 481 U.S. 137 (1987), but that case actually undermines his argument. In *Tison*, the Supreme Court stated that "[a] narrow focus on the question of whether or not a given defendant 'intended to kill' . . . is a highly unsatisfactory means of definitively distinguishing the most culpable and dangerous of murderers." *Id.* at 157. The Court explained that "[m]any who intend to, and do, kill are not criminally liable at all—those who act in self-defense or with other justification or excuse." *Id.*

> On the other hand, some nonintentional murderers may be among the most dangerous and inhumane of all—the person who tortures another not caring whether the victim lives or dies, or the robber who shoots someone in the course of the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim as well as taking the victim's property.

---

[15] Presumably this argument would also extend to Factors C and D, which the Government concedes are lesser-included factors of Factor B. (*See* Doc. 658 at 27.)

*Id.* "This reckless indifference to the value of human life may be every bit as shocking to the moral sense as an 'intent to kill.'" *Id.* "Indeed it is for this very reason that the common law and modern criminal codes alike have classified behavior such as occurred in this case along with intentional murders." *Id.* The Court held that "the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result." *Id.* at 157–58.

*Tison* thus makes clear that the death penalty may be imposed even in cases where the defendant's mental state was something other than "intent to kill." Indeed, *Tison* explicitly held that "reckless disregard for human life" (precisely that mental state listed in Factor D) may be a sufficiently culpable mental state. Since that is so, the mental states identified in Factors B and C—arguably more culpable mental states than Factor D—can also be sufficient.

## II.    Rule 7(d) Motion to Strike

Fell asserts that the court should strike the portion of paragraph 1 of the Superseding Indictment charging that "DONALD FELL and Robert Lee killed Debra Fell and Charles Conway by stabbing them with knives and slashing their throats." (Doc. 57 at 1, ¶ 1.) According to Fell, that portion of paragraph 1 is "extremely prejudicial" and is also "false, according to the government's own evidence." (Doc. 632-1 at 42.) Fell maintains that "the evidence and argument offered by the government at the first trial showed that it was Robert Lee alone who killed Debra Fell." (*Id.*) The Government argues that it is not limited to the evidence presented at the 2005 trial, and that its theory of the case has always been that Fell and Lee "acted in concert and aided and abetted each other." (Doc. 658 at 38.) The Government also

argues that the challenged language is "hardly prejudicial" in the context of the other allegations, and that it is in any case relevant and material because it "describes exactly and concisely what Mr. Fell and Mr. Lee did in killing the Rutland victims." (*Id.* at 40–41.)

"It is not improper for the court to read the indictment in its entirety or portions thereof to the jury." *United States v. Press*, 336 F.2d 1003, 1016 (2d Cir. 1964). "Similarly, it is not error to give the indictment to the jury for use during its deliberations." *Id.* Rule 7(d) provides that, "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Mulder*, 273 F.3d 91, 99 (2d Cir. 2001) (quoting *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990)). "[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." *Scarpa*, 913 F.2d at 1013 (quoting *United States v. DePalma*, 461 F. Supp. 778, 797 (S.D.N.Y. 1978)).

Paragraph 1 could be read as charging that Fell himself wielded the knife used to kill Debra Fell. In its Bill of Particulars, the Government concedes that Donald Fell did not actually kill Debra Fell. (*See* Doc. 689 at 1–2 ("[I]n a joint attack on the two victims in the apartment's small living room, Fell killed Charles Conway by slashing his throat and stabbing him, and Lee killed Debra Fell by slashing her throat and stabbing her.").) The "prejudice" to which Fell refers is that paragraph 1 suggests (or could be read to suggest) that he was Debra Fell's actual murderer, when in fact it was Lee who actually killed that victim.

The court rejects the Government's contention that paragraph 1 "describes exactly and concisely what Mr. Fell and Mr. Lee did in killing the Rutland victims." (Doc. 658 at 41.) If

that were so, the court would not have granted Fell's motion for a bill of particulars as to that paragraph. Nevertheless, the court cannot conclude that paragraph 1 is so "inflammatory and prejudicial" that it should be stricken under Rule 7(d). The language is ambiguous about who actually killed which Rutland victim. The evidence at trial will resolve any such ambiguity, and since the Government is bound by the Bill of Particulars—*United States v. Murray*, 297 F.2d 812, 819 (2d Cir. 1962)—the shape of that evidence is predictable. To the extent the jury might, after hearing the evidence on this point, be confused by the ambiguous language in paragraph 1, the court will entertain a request for an appropriate limiting instruction.

## Conclusion

For the reasons stated above, Fell's Rule 12(b)(3)(B)(v) Motion to Dismiss and Rule 7(d) Motion to Strike (Doc. 632) are DENIED.

Dated at Rutland, in the District of Vermont, this _30_ day of _March_, 2016.

_____
Geoffrey W. Crawford, Judge
United States District Court

30