U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 APR 18 PM 2:48

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 5:01-cr-12-01 |
| ) | |
| DONALD FELL ) | |

**OPINION AND ORDER**
(Doc. 672)

Defendant Donald Fell seeks to dismiss or strike the Amended Notice of Intent to Seek Penalty of Death (Doc. 609), arguing that a provision of the Federal Death Penalty Act (FDPA), 18 U.S.C. § 3596(a),[1] fails to provide courts in non-death penalty states like Vermont guidance for choosing the manner or procedure of execution, and cannot constitutionally be implemented in this case. (Doc. 672.) He also contends that the Amended Notice should be stricken because the Department of Justice (DOJ) has failed to establish adequate procedures to ensure compliance with the state law that might be chosen by the sentencing court. (Doc. 672-1 at 20.)

The Government opposes the Motion, asserting that Fell's claims "are being brought both too late and too early." (Doc. 720 at 90.) The claims are too late, says the Government,

---

[1] Section 3596(a) provides (with emphasis added):

A person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence. When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed. *If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law.*

"because these issues were previously raised and resolved by Judge Sessions." (*Id.*) They are too early, according to the Government, "because Mr. Fell is not currently under a sentence of death." (*Id.*) The Government also argues that Fell's claims lack merit. (*Id.* at 92.) Fell maintains that the issue is ripe for review for the reasons stated in *United States v. Quinones*, 313 F.3d 49 (2d Cir. 2002). (*See* Doc. 750 at 43.)

I.  **Ripeness**

The court begins with the question of ripeness. In *Quinones*, the Second Circuit stated that "constitutional challenges by defendants to a particular punishment 'are *generally* not ripe until the imposition, or immediately impending imposition, or a challenged punishment or fine.'" *Quinones*, 313 F.3d at 58 (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir. 1995)). "But, in addressing and all ripeness challenges, courts are required to make a fact-specific determination as to whether a particular challenge is ripe by deciding whether (1) the issues are fit for judicial consideration, and (2) withholding of consideration will cause substantial hardship to the parties." *Id.*

In *Quinones*, defendants were indicted on charges including murder in aid of racketeering activity and murder in connection with a drug trafficking crime—both death-eligible offenses. Before trial, but after the government had filed notices of intent to seek the death penalty, the defendants moved for an order to strike the death penalty notices, arguing that the FDPA is unconstitutional on its face because DNA testing had demonstrated that innocent people had been convicted of capital crimes. The district court held that the question was ripe for review, and that, in light of DNA testing and exoneration evidence, the FDPA violated substantive and procedural due process. *United States v. Quinones*, 205 F. Supp. 2d 256, 257–59 (S.D.N.Y. 2002).

The Second Circuit agreed with the district court that the constitutional issue was ripe for decision. *Quinones*, 313 F.3d at 59. The court reasoned that it "clearly was fit for adjudication" because it was a facial attack on the constitutionality of a criminal statute, and thus a pure question of law. The court further reasoned that withholding consideration would cause a substantial hardship to the defense for a variety of reasons, including the differences in procedures that apply in capital cases, and the impact on the defense's pretrial and trial tactics when capital punishment is on the table. *See id.* (noting that the defense gets more peremptory challenges than the government in a non-capital case; that a defendant facing the death penalty might use tactics designed to avoid the death penalty but that make conviction more likely; and that the possibility of capital punishment induces defendants to enter into plea agreements).[2]

Fell asserts that the reasoning in *Quinones* on the ripeness issue applies equally to this case. (Doc. 750 at 43.) The Government contends that federal courts (even in the context of post-conviction litigation under 28 U.S.C. § 2255) have denied pretrial challenges to the constitutionality of federal execution procedures on ripeness grounds. (Doc. 720 at 91 n.28.)

A.  **Whether Issues are Fit for Judicial Consideration**

Fell raises three issues in the pending Motion. He contends that 18 U.S.C. § 3596(a) cannot constitutionally be implemented in his case because Vermont law does provide for implementation of a sentence of death,[3] but Vermont's capital punishment statute is void and

---

[2] The district court had also noted that the composition of the jury might be quite different in capital cases, since in a capital case a "significant class" of otherwise fit jurors is excluded to achieve a "death-qualified" jury. *Quinones*, 205 F. Supp. 2d at 258. The Second Circuit ultimately reversed the district court on the substantive constitutional issue, holding that "to the extent the defendants['] claim relies upon the Eighth Amendment, it is foreclosed by the Supreme Court's decision in *Gregg v. Georgia*, [428 U.S. 153 (1976)]," and that "the FDPA does not violate the Due Process Clause of the Fifth Amendment." *Quinones*, 313 F.3d at 70.

[3] *See* 13 V.S.A. § 7101–7107.

unlawful, with the net result being that "Congress has mandated that in Vermont the Court is to use an unconstitutional method of execution." (Doc. 672-1 at 22.) In some tension with that argument, Fell also contends that the last sentence of § 3596(a) denies due process and violates the Eighth Amendment because it "contains no standard or criteria to guide the court in choosing the state where the execution will take place and whose laws will control the method of execution." (Doc. 672-1 at 15.) Finally, he argues that the DOJ has failed to establish adequate procedures to ensure compliance with the state law that might be chosen by the sentencing court, amounting to a due process and Eighth Amendment violation. (*Id.* at 20.)

The issue of the DOJ's procedures is not fit for judicial consideration at this time. The court can examine the regulations that appear at 28 C.F.R. §§ 26.1–26.5, and can observe that those regulations were issued before the FDPA was enacted, and that the regulations do not appear to establish procedures designed to ensure compliance with state law. But the defense asserts only that "[t]o our knowledge, the DOJ has likewise failed to take other steps to adopt and implement procedures in a form other than regulations." (Doc. 672-1 at 21.) Thus, in short, the issue of the DOJ's procedures is not a pure question of law. It requires a factual inquiry into actual practices. The claim by Defendant of specific, fact-based shortcomings in DOJ procedures for implementing a death sentence in another state removes that issue from the class of purely legal questions now ripe for consideration. Moreover, capital cases and appeals take a long time; the regulations and procedures might be different by the time any execution protocol is ultimately considered.

The remaining issues that Fell raises require only legal analysis. The court therefore concludes that those issues are fit for judicial consideration.

### B. Whether Withholding of Consideration Will Cause Substantial Hardship

*Quinones* outlines multiple reasons why a capital defendant would experience substantial hardship—"practical and legally-cognizable disadvantages"—if his constitutional challenge to the particular punishment is not resolved before trial. *Quinones*, 313 F.3d at 59. The Government does not argue that those disadvantages are not present here. Because of the procedural differences between capital and non-capital cases, if Fell's arguments are meritorious, he would be prejudiced if the court did not rule on those arguments prior to trial. The cases upon which the Government relies are not persuasive; they are from outside the Second Circuit and supply no analysis of the issues discussed in *Quinones*.

## II. Merits

### A. Whether § 3596(a) Can Be Constitutionally Implemented in Vermont

As stated above, Fell claims that § 3596(a) cannot constitutionally be implemented in his case because Vermont law does provide for implementation of a sentence of death, but Vermont's capital punishment statute is void and unlawful, with the net result being that "Congress has mandated that in Vermont the Court is to use an unconstitutional method of execution." (Doc. 672-1 at 22.) The court rejects that argument because the law of Vermont does not provide for the implementation of a sentence of death.

It is true that several Vermont statutory provisions appear "on the books" and contemplate the sentence and implementation of capital punishment. *See* 13 V.S.A. §§ 7101–7107.[4] However, all parties concede that §§ 7101–7107 are void and unlawful. This court has reached the same conclusion previously in this case. (Doc. 242 at 3 (recognizing that Vermont has not amended any part of its death penalty statute to bring it into compliance with *Furman v.*

---

[4] In Vermont, treason is the only crime for which capital punishment is even nominally available. *See id.* § 3401.

*Georgia*, 408 U.S. 238 (1972), or the rest of the Supreme Court's substantial body of contemporary Eighth Amendment jurisprudence).) Four Supreme Court Justices have made the same observation. *See Thompson v. Oklahoma*, 487 U.S. 815, 828 n.29 (1988) (plurality opinion) ("Vermont is frequently counted as a 15th State without a death penalty, since its capital punishment scheme fails to guide jury discretion . . . and has not been amended since our decision in *Furman* . . . holding similar statutes unconstitutional."). Thus, "the law" of Vermont does not provide for implementation of a sentence of death because it consists of statutory provisions which are unconstitutional on their face and no longer in use.[5]

### B. Constitutionality of the Last Sentence of § 3596(a)

The last sentence of § 3596(a) reads:

> If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law.

That provision, argues Fell, is unconstitutional because it "contains no standard or criteria to guide the court in choosing the state where the execution will take place and whose laws will control the method of execution." (Doc. 672-1 at 15.) According to Fell, the statute unconstitutionally vests the court with "absolute discretion" to choose "for any reason or no reason, any of the 31 states that authorize the death penalty." (Doc. 672-1 at 15.) He argues that the discretion undermines uniformity, and that the court's selection has important consequences. The Government maintains that the court's discretion in choosing the forum for implementing a

---

[5] The last execution in Vermont conducted under state law occurred in 1954. During the 20th century only eight defendants were executed in Vermont. *See* M. Watt Espy & John Ortiz Smykla, *Executions in the United States, 1608–2002: The ESPY File* (4th ICPSR ed. 2004), *available at* http://doi.org/10.3886/ICPSR08451.v4 (free user account required) (Codebook Appendix B shows number of executions by state by time period).

capital sentence is limited, is a purely procedural decision, and imposes no burden on Fell, much less a burden of constitutional dimensions. (Doc. 720 at 93–95.)

The court rejects Fell's argument because—even though § 3596(a) does not itself list specific factors for a court to consider when making a selection—the court's decision (if Fell is convicted and sentenced to death) would not be unbounded or arbitrary. As the court previously observed (Doc. 242 at 4), a useful model can be found in Judge Wolf's thorough consideration of how to make the selection in *United States v. Sampson*, 300 F. Supp. 2d 278 (D. Mass. 2004), *new trial granted*, 820 F. Supp. 2d 151 (D. Mass. 2011). The court would be guided by factors including: whether the selected state is within the Second Circuit, which state has the closest connection to Fell's alleged crimes, and convenience for counsel and others. (*See* Doc. 242 at 4–5.) As this court's prior decision designating Indiana indicates, the court would also consider whether there might be reasons that a particular state would be unsuitable. (*See id.* at 7–8 (discussing uncertainty surrounding New York's death penalty).) And if there are other relevant factors, the court is confident that the defense will raise and argue them.

## Conclusion

For the reasons stated above, Fell's Motion to Dismiss and/or Strike the Amended Notice of Intent to Seek Penalty of Death (Doc. 672) is DENIED.

Dated at Rutland, in the District of Vermont, this 18 day of April, 2016.

Geoffrey W. Crawford, Judge
United States District Court

7