UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 APR 20 PM 1:50

CLERK

BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 5:01-cr-12-01 |
| | ) | |
| DONALD FELL | ) | |

**ORDER ON MOTION FOR DISCLOSURE OF CERTAIN GRAND AND PETIT JURY INFORMATION**
(Doc. 664)

Defendant Donald Fell has filed a Motion (Doc. 664) seeking disclosure of grand jury information relating to the Superseding Indictment returned on July 8, 2002 (Doc. 57), and also information relating to how the petit jury will be empaneled for trial in 2017. These requests (enumerated as requests "A" through "I" in the Motion) can be summarized as requests for:

1. Information about the selection and composition of the grand jury or the future petit jury;

2. Information about the vote for indictment; and

3. Information about proceedings before the grand jury.

These three areas of inquiry present different questions. The court will consider each separately.

**I.     Information about the Selection and Composition of the Grand Jury or Petit Jury**

The specific requests are for:

(A) Any orders or records reflecting the beginning, end, or extension of the term of the indicting grand jury, or reflecting any substitution of grand jurors;

(F) All records reflecting the methods or procedures by which the indicting grand jury was impaneled and the petit jury will be impaneled;

(G) All grand jury qualification questionnaires;

(H) Copies of all jury lists involved in the selection of the grand jury or that will be involved in the selection of the petit jury; and

(I) All JS-12 or AO-12 forms completed by the Clerk of Court from April 20, 2005 to present.

The court begins analysis of these requests with Rule 6 of the Federal Rules of Criminal Procedure and the Jury Selection and Service Act, 28 U.S.C. §§ 1861–1869. Rule 6(b)(1) provides: "Either the government or a defendant may challenge the grand jury on the ground that it was not lawfully drawn, summoned, or selected, and may challenge an individual juror on the ground that the juror is not legally qualified." Such a challenge may be advanced when the grand jury is empaneled or following indictment.

As the Advisory Committee Notes make clear, such challenges are rare, but they are not non-existent. During the nineteenth century the Supreme Court heard two cases involving challenges to the composition of grand juries when large portions of the population were disqualified by statute. *See United States v. Gale*, 109 U.S. 65 (1883) (members of the Confederacy); *Clawson v. United States*, 114 U.S. 477 (1885) (persons in favor of polygamy). Grounds for disqualification today are less controversial but hardly rare. These include insufficient age, lack of residency in the district, foreign citizenship, illiteracy and an inability to speak and understand English, mental and physical infirmity, and prior convictions. 28 U.S.C. § 1865.

In addition to the qualifications of individual grand jurors, there are statutory requirements for the random selection of jurors for service. No juror may be excluded for reasons of race, color, religion, sex, national origin, or economic status. *See* 28 U.S.C. §§ 1862–1864. A challenge to compliance with these procedures is governed by 28 U.S.C. § 1867(a), which permits the defendant to move to dismiss the indictment prior to jury selection or "within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds [for dismissal.]"

Disclosure of records of the jury selection process to a defendant preparing a motion under Rule 6 is required by 28 U.S.C. § 1867(f), which provides in part that "[t]he parties in such a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion." Public disclosure is governed by 28 U.S.C. § 1868, which permits inspection "for the purpose of determining the validity of the selection of any jury" after the jurors no longer appear on the master jury wheel.

From these general rules, the court reaches several conclusions. First, all general orders, plans for summoning jurors, and JS-12 reports (examinations of the juror lists to determine racial and gender inclusion) are ministerial matters subject to disclosure. Similarly, information about the random selection process employed in 2001 is public and will be provided. Court policies and records of steps undertaken in developing the master jury list are entirely public. Much of this information was disclosed by letter from Clerk Jeffrey Eaton dated April 28, 2015 (Doc. 664-3). The defense seeks post-indictment JS-12 forms for the period 2005 to present. These will be provided. The court emphasizes that nothing regarding the process of developing the master juror wheel, selecting potential jurors from it, summoning jurors, or excusing jurors for reasons of hardship before they are summoned is secret.

The master jury wheel listing the names of all potential jurors residing within the Southwestern Jury Division which was used to create the grand jury which returned the Superseding Indictment no longer exists. Neither do the individual jury questionnaires. These were destroyed in 2009 pursuant to 28 U.S.C. § 1868 and the Guide to Judiciary Policy, Vol. 4, Ch. 3, § 355.10 (Juror Selection Records). The order impaneling the grand jury which returned the superseding indictment exists and will be provided. The only record reflecting the method or procedures of impaneling the grand jury in 2001-02 is the version of the jury plan in effect at that time. The master jury wheels exist for the period 2011 and forward. The District's current jury plan describes the procedures for impaneling any future petit jury.

The records which exist concerning the summoning and impaneling of the grand jury which returned the superseding indictment are:

1. Order dated January 7, 2002, authorizing the summoning of 150 people for grand jury service;

2. Certification dated January 8, 2001 showing the selection by lot of the number used to establish the starting point for selection of jurors from the master jury wheel.

3. Pool Selection Report showing the selection of 150 potential jurors. The names of the jurors have been redacted:

4. Pool Excused/Disqualified Report showing jurors excused prior to jury selection. The names of the jurors have been redacted;

5. Panel Selection Report printed from computer records showing that 30 potential jurors remained for service after jury selection on March 11, 2002, before Magistrate Judge Jerome Niedermeier.

Records no longer exist of which of the 30 potential jurors were selected to serve as members of the grand jury and which as alternates. The only records remaining are juror pay records reflecting their attendance. The court has conducted an in camera review of juror pay records which shows that 23 jurors were present on July 8, 2002. These records remain sealed in order to protect the secrecy of the grand jury process. The records have been filed as a sealed exhibit to this decision for purposes of appellate review.

To avoid the obvious awkwardness that arises when the court answers counsel's questions about court practices, the Clerk has prepared a second letter describing the practices and the various documents referenced in this decision. The letter will be filed in this case. The court emphasizes that any follow-up inquiry is welcome and that a review of the process – while limited by the destruction of records over time – is seen as entirely appropriate.

## II.     Information about the Vote for Indictment

The specific request (B) is for any records reflecting whether at least twelve grand jurors voted to return the Superseding Indictment.

In the same way that Fell is entitled to investigate the manner in which the grand jury was composed, he is entitled to know whether a sufficient number of grand jurors voted in favor of returning the Superseding Indictment. This is a requirement under Rule 6 and a violation could support a motion to dismiss. On the other hand, the long-standing secrecy of these proceedings protects both parties as well as the grand jury process, and the court wishes to minimize any impact on jurors in a future trial. The court has followed the defense suggestion of an in camera review. The result is as follows:

      The grand jury concurring sheet for the Superseding Indictment remains on file with the court. It shows that the requisite number of grand jurors (at least 12) voted in favor of the Superseding Indictment. The exact count remains secret.

For purposes of an appeal, the court will place copies of the records it reviewed in a sealed portion of the record unavailable to anyone except upon further order of the court. These records are the juror pay records for July 8, 2002, and the grand jury concurring sheet showing the actual vote.

### III.   Information about Proceedings Before the Grand Jury

      The specific requests are for:

      (C) A copy of all grand jury subpoenas for documents or testimony issued in this case, as well as the dates materials obtained from these subpoenas were returned to the grand jury and a list of all exhibits or documentary evidence presented to the grand jury;

      (D) All records of disclosure of names of persons receiving information about matters occurring before the grand jury; and

      (E) All instructions, advice, or comments, written or oral, delivered to the indicting grand jury.

      The court continues to maintain the secrecy of the grand jury proceedings themselves. Transcripts of witness testimony may largely be in the hands of the defense already through disclosure at the first trial. But legal instructions offered by the judge who provided an initial orientation or by prosecutors who offered instructions prior to any vote will remain secret. Even if a legal error occurred in the enumeration of the elements of the offense or in some other area, these are not properly the subject of a motion to dismiss the indictment. A defendant is not entitled to review the record of the grand jury proceedings to determine if he disagrees with

points expressed in a closed proceeding by the prosecution. *See United States v. Smith*, 105 F. Supp. 3d 255, 259 (W.D.N.Y. 2015) (noting presumption of regularity that attaches to grand jury proceedings, resulting in the rule that a defendant seeking disclosure of grand jury minutes or legal instructions given to the grand jury must show a "particularized need").

There are limits to such a rule. Allegations of governmental misconduct would be subject to disclosure and judicial review. *See United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994) ("A review of grand jury minutes should not be permitted without concrete allegations of Government misconduct."). But none are raised in this case. In the absence of any specific complaint about the conduct of the Government or the grand jury, the court is not willing to open up its deliberations to review by the defense. The grand jury is entitled to a presumption of regularity, *Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974), which protects its proceedings against routine disclosure and review. The defense must make some showing of "particularized need." *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959). The court cannot open the grand jury minutes in response to a general inquiry about whether some error occurred.

The court declines to release copies of grand jury subpoenas (request C), names of persons privy to grand jury testimony and evidence (D), and legal instructions (E).

## Conclusion

Fell's Motion for Disclosure of Certain Grand and Petit Jury Information (Doc. 664) is GRANTED IN PART and DENIED IN PART as described above.

Dated at Rutland, in the District of Vermont, this 20th day of April, 2016.

_____
Geoffrey W. Crawford, Judge
United States District Court