U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 AUG 22 PM 12: 03

CLERK

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                       ) | Case No. 5:01-cr-12-01 |
| ) | |
| DONALD FELL              ) | |

### OPINION AND ORDER REGARDING:
### OBJECTIONS TO PROFFER OF FUTURE DANGEROUSNESS EVIDENCE AND MOTIONS SEEKING EXCLUSION OF QUESTIONS ABOUT OR EVIDENCE OF FELL'S RELIGIOUS OR OTHER BELIEFS
### (Docs. 1503, 1504, 1510)

The defense has filed a sealed set of objections (Doc. 1510) to the government's sealed proffer of future dangerousness evidence (Doc. 1135). In addition to that wide-ranging list of objections, the defense has filed two separate sealed motions seeking exclusion of evidence or questions about Fell's beliefs or alleged beliefs, including religious beliefs or practices. (Docs. 1503, 1504.) The government has filed a sealed response to the objections (Doc. 1546) and a sealed "omnibus" response to the "beliefs" motions (Doc. 1544).

Most recently, the government filed a "Supplemental Response" regarding the "beliefs" motions, stating that the government will not seek to admit in its penalty-phase case-in-chief any evidence supporting the non-statutory aggravating sub-factor outlined in paragraph 13(c) of the Second Amended Notice of Intent to Seek Penalty of Death. (Doc. 1633 at 1.) The court therefore considers the two defense "beliefs" motions to be largely moot, and addresses the sealed defense objections in this sealed order.[1]

---

[1] The court will unseal this ruling at the conclusion of the case. It is sealed at this time because the inflammatory content of the government's proffer, if reported in the press, will greatly increase the difficulty of drawing an unbiased jury.

## **Procedural Background**

In its September 8, 2015 Amended Notice of intent to seek the death penalty, the government stated its intent to prove multiple non-statutory aggravating factors. (Doc. 609 at 3–5.) One factor relates to future dangerousness, asserting that Fell:

> Is a continuing danger to the lives and safety of other persons and defendant Donald Fell is likely to commit criminal acts of violence in the future as evidenced by, at least:
>
> A low potential for rehabilitation as demonstrated by repeated violent criminal acts both outside of, and inside of, institutional and correctional settings;
>
> A willingness to take human life and attempt to take human life and engage in violent acts and threating conduct and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made, and affirmative actions he took and did, following his commission, or his participation in the commission, of such acts and other conduct; and
>
> His embrace of, and adherence to, beliefs and ends [sic] culture that promote and glorify violence, torture, and murder . . . .

(*Id.* ¶ 18.)

On January 20, 2017, the Court ordered the government to file a sealed proffer on the topic of future dangerousness and an amended notice of intent. (Doc. 1100 at 23.) The government filed its Second Amended Notice of intent to seek the death penalty on February 17, 2017. It includes a future-dangerousness aggravator substantially similar to that in the September 2015 Amended Notice. (*See* Doc. 1223 ¶¶ 13–14.) Paragraph 13 is the "future dangerousness" aggravator; sub-paragraph 13(c) alleges Fell's "embrace of, and adherence to, beliefs that promote and glorify violence, torture, and murder." (*Id.* ¶ 13(c).)

The government filed its sealed proffer on January 24, 2017. (Doc. 1135.) The government's sealed proffer of future dangerousness evidence lists 18 categories of evidence that the government seeks to introduce in support of its future dangerousness allegation.

2

## Introduction

In light of the government's recent Supplemental Response (Doc. 1633), it appears that most of the issues in Documents 1503 and 1504 are moot. The court therefore focuses here on the 18 areas on which the prosecution has submitted a proffer, and the defense objections in Document 1510.

In discussing these areas, the court considers whether the substance of the information is admissible to prove future dangerousness. This decision does not address the manner in which the information is introduced. For example, the substance of the alleged assault on Eike in 2000 is admissible. But that does not answer the question of the reliability of the hearsay or other information offered. The rulings here on substance do not foreclose later consideration of the manner in which the prosecution seeks to prove a fact. This procedure is consistent with the court's August 8, 2018 Order (Doc. 1605), in which the court required the disclosure in advance of trial of hearsay and information from witnesses who may derive personal advantage from their testimony. The court's primary concern in this ruling is whether the subject of the information is admissible to prove future dangerousness; a reliable manner of proof is assumed for present purposes.

## Rulings on the Government's Eighteen Circumstances Supporting Future Dangerousness

In Documents 1510 and 1546, the court and the parties return to the issue of future dangerousness, which was addressed in broad terms in Document 1100 and, more recently, and still in general terms, in Document 1607.

In Document 1100, the court recognized that future dangerousness has long been accepted as an aggravating factor in capital cases and reserved judgment on the manner of proof. In the meantime, the prosecution has indicated that it does not intend to offer expert

psychological testimony on the issue. As noted above, pursuant to the court's order in Document 1100, the government has provided a detailed proffer of 18 categories of evidence which it seeks to introduce. (Doc. 1135.)

Before considering these categories individually, it is necessary to frame the issue under consideration. That issue is not whether Fell was a dangerous person in the past. The issue for the jury to decide will be whether in the future in a life confined within a federal prison, he represents a danger to others. (*See* Doc. 1607 at 9.) Similarly, the issue is not whether he holds beliefs about racial supremacy or satanism. The issue is whether the prosecution can prove that he will act in a violent manner in the future.[2]

In ruling on the specific categories of information in the government's proffer, the court has sought to draw a line between beliefs and actions. The government has now drawn essentially the same line and does not seek to introduce information about beliefs. The court will allow the admission of information about violent actions in the past since these are predictive of violence in the future. The remaining category concerns Fell's statements about actions which he never carried out. Examples include his statements to Lynn Roberts that he wished to "go out

---

[2] The defense reiterates its objection to future-dangerousness evidence on the grounds that jurors cannot possibly predict future dangerousness. (Doc. 1510 at 10.) The court has considered and rejected that argument, most recently in its August 9, 2018 Order on Document 1155. (*See* Doc. 1607 at 7 n.3.) The defense also contends that it would violate his rights for a death-qualified jury that has just convicted Fell to consider future-dangerousness evidence where almost none of that evidence involves conduct that has been reduced to a conviction. (Doc. 1510 at 17–18.) The court has held that non-statutory aggravating factors need not be independent crimes. (Doc. 1607 at 10.) It follows that aggravators need not be adjudicated crimes, either. *See United States v. Basciano*, 763 F. Supp. 2d 303, 356 (E.D.N.Y. 2011) ("In the penalty phase of a capital trial, the Government may rely on unadjudicated conduct in presenting its case to the jury."). Finally, the defense asserts that most of the government's future-dangerousness evidence is not relevant because it involves out-of-prison conduct. (Doc. 1510 at 26.) The court rejected that argument in a prior Order. (Doc. 1607 at 7–9.) The court has considered the defense's remaining arguments on these preliminary matters; they are rejected.

with a bang" or that he considered killing police officers. The court will allow such statements even though they pre-date the crimes charged in this case. The statements may have been made to impress or for effect, but the government is entitled to argue to the jury that a person who makes threats and statements of this nature is more likely to act violently than someone who does not.

After drawing this distinction between Fell's thoughts and his future actions, the court must also consider the issue of balancing the probative value of the information against its prejudicial impact. *See* 18 U.S.C. § 3593(c). Many of the beliefs and practices attributed to Fell by the prosecution are highly offensive to most jurors. These would include his alleged belief that he is "superior to blacks," his embrace of satanic beliefs and symbols, and his preference for death metal music. (Doc. 1135.)

The court will consider the 18 categories within the government's proffer.[3] In general, the court finds no reason to conduct an evidentiary hearing on the substance of the proffer. Except as otherwise indicated below, the nature of the proffered information is clear enough.[4]

### 1.    The 2012 Stabbing Incident

The Roane incident occurred while Fell was incarcerated in a maximum security setting. It happened six years ago. It is clearly admissible as information which tends to support the government's proof on future dangerousness.

---

[3] The following rulings relate to the evidence as proffered at the penalty phase to prove future dangerousness. The government should notify the court and the defense in advance if the government concludes that any of the evidence discussed below is necessary at an earlier stage of the case for a purpose other than to prove future dangerousness.

[4] Except as otherwise noted, the court rejects the defense's repeated assertions that the proffered evidence is so vague that the court cannot exercise its "gatekeeping" function and that the defense lacks sufficient notice.

The court rejects the defense arguments against this proffered evidence. The defense objects to the manner of the government's proof, suggesting that there should be restrictions on the presentation of a video of the incident, and that Roane is an unreliable witness. If there is a particular objection to the video, the court will consider it at the appropriate time. The court has also considered the defense representations regarding Roane's reliability as a witness. (Doc. 1510 at 32.) According to the defense, Roane is on the government's witness list. (*Id.*) To the extent that the government intends to offer Roane's testimony, the government should indicate so by the September 4, 2018 deadline established in the court's August 8, 2018 Order. (*See* Doc. 1605 at 4.)

### 2. The Facts and Circumstances of the Three November 2000 Murders

The murder of Ms. King will already be before the jury, as will the murders of Ms. Fell and Mr. Conway. All three are relevant to the guilt/innocence phase of the trial. The murder of Ms. Fell and Mr. Conway are relevant to the statutory aggravator of multiple killings, 18 U.S.C. § 3592(c)(16). The facts and circumstances of the charged crime itself and the antecedent murders which the government contends led to its commission may reasonably be considered by the jury in assessing future dangerousness.

Relying on the prior testimony of Dr. Thomas Reidy in this case, the defense argues that the evidence of the two Rutland murders is prejudicial and has little or no probative value on the issue of future dangerousness in prison. (Doc. 1510 at 34–35.) This argument is a reprise of the defense's general attack on the "future dangerousness" non-statutory aggravator. It is rejected as to this and all of the proffered future dangerousness evidence for the reasons stated above and in the court's prior decisions.

### 3. Altercations in Pre-Trial Detention

Since the issue is conduct within the prison setting, these incidents, like the Roane incident, provide information about how Fell has behaved in prison. These may be considered as information relevant to future dangerousness.

If there is a particular objection to any video of these events, the court will consider it at the appropriate time. The defense correctly points out that the altercations in pre-trial detention occurred over a decade ago. (Doc. 1510 at 37.) Still, because they occurred within the prison setting, the court concludes that their probative value exceeds their prejudicial impact.

### 4. Information from "GS"

The information provided by GS will be the subject of a separate hearing. (*See* Doc. 1648.) This information also implicates Fell's First Amendment right of association, in particular, his interest in joining or membership in the Aryan Brotherhood. The court will address that—and the issue of Fell's alleged racist beliefs—together with the other information from GS.

### 5. Lack of Remorse

As the court's August 9, 2018 ruling indicated, lack of remorse can be relevant to future dangerousness. (*See* Doc. 1607 at 13–15.) The court accordingly rejects the defense assertion to the contrary. However, the court also ruled that it would not permit information that Fell was silent or did not volunteer statements of remorse. (*Id.* at 15.) Fell has the constitutional right to remain silent at all times when speaking with law enforcement. Permitting testimony about things he did not say when he spoke with private persons such as GS only invites speculation by the jury about his true feelings. The court will not permit the prosecution to introduce evidence of a lack of statements of remorse. An affirmative statement by Fell that he lacked remorse

7

would be treated differently, but it does not appear from the proffer that the prosecution has such statements. The court will accordingly exclude the "lack of remorse" proffer as it currently stands.

### 6.   Assault in 2000

The court will admit information about an assault in 2000 prior to Fell's incarceration on the issue of future dangerousness. The prosecution seeks to introduce evidence of violent conduct. Even with the passage of 18 years, such violence is relevant to the issue of whether Fell will be violent again, especially since the prosecution's case is supported by other violent episodes, including some which occurred in prison.

The defense suggests that, at the first trial, the prosecution improperly characterized the seriousness of the assault on Mr. Eike. (*Id.* at 55.) The court will examine the information offered concerning the Eike assault separately for reliability. Since this incident led to a criminal charge, the court expects that proof of what happened will be well-documented and will not consist of hearsay accounts from witnesses with no firsthand involvement in the investigation.

### 7.   Conduct in Wilkes-Barre, Pennsylvania Involving Bethany Brashears and Lynn Roberts

The government offers testimony from Bethany Brashears and Lynn Roberts that Fell and Lee kidnapped the two young women in early 2000 and held them against their will. The court has considered the fact that this conduct occurred more than 15 years ago and that it was not adjudicated. But this is violent conduct, consistent with the later offense in this case. It is admissible on the issue of future violence.

The proffer suggests the government's intent to introduce contemporaneous unspecified "statements" by Fell relating to the kidnapping / false imprisonment. (*See* Doc. 1135 at 2.) The defense asserts that the government should be required to satisfy the "corpus delicti" (or

"corroboration") rule before being allowed to introduce the statements. (Doc. 1510 at 57–58; *see also* Doc. 1481 at 11.)

The corpus delicti rule applies to the proof of the elements of an offense. In order to guard against false, mistaken and coerced confessions, American courts have long imposed a requirement that an out-of-court confession, offered as an admission, be corroborated by independent proof that a crime has occurred. "It is a long-settled principle that 'an accused may not be convicted on his own uncorroborated confession.'" *United States v. Bryce*, 208 F.3d 346, 354 (2d Cir. 1999) (quoting *Smith v. United States*, 348 U.S. 147, 152 (1954)). "This rule has been extended to require corroboration of a defendant's inculpatory admissions . . . including those made outside of the interrogation room." *Id.* (footnote and citations omitted). "[T]he modern corroboration rule requires only that there be 'substantial independent evidence which would tend to establish the trustworthiness of the statement.'" *Id.* (quoting *Opper v. United States*, 348 U.S. 84, 93 (1954)).

The corpus delicti rule relates only to the issue of conviction and then only to the evidence establishing the elements of the offense. In the absence of legislation, the doctrine does not apply to proof of facts which enhance the seriousness of the offense. The Second Circuit's decision in *Bryce* suggests as much, since it refers to the rule's application only with regard to conviction (not sentencing). Other courts are in accord; the rule has no application to sentencing enhancements. *See United States v. Huffman*, 461 F.3d 777, 787 (6th Cir. 2006) (corroboration rule is not applicable at the sentencing stage); *People v. Howard*, 749 P.2d 279 (Cal. 1988) (corpus delicti requirement does not apply to special circumstances of murder for hire); *People v. Johnson*, No. E037144, 2006 WL 2147698, at *4 (Cal. Ct. App. 2006) ("Because the corpus delicti rule applies to the elements of a crime, it has no application to sentencing criteria . . . .").

9

The corpus delicti rule does not impose a general requirement that admissions offered at sentencing be accompanied with corroboration. Instead, it serves a more narrow purpose, which is to screen out criminal prosecutions when a crime may not have occurred at all. *Warszower v. United States*, 312 U.S. 342, 347 (1941). For these reasons, the court will not apply the corpus delicti rule to statements by Fell offered in a penalty phase.

### 8. Statements by Lynn Roberts

The government has indicated that it will not seek to introduce in its penalty phase case-in-chief any statements about Fell's interest in Satan, Fell's tattoos, his musical preferences, or his anti-social beliefs. (*See* Doc. 1633.)

The statement that Fell wanted to go on a killing spree meets the court's standard for words which may illuminate or explain violent conduct. Similarly, testimony that Fell talked about "going out with a bang" and killing police officers is relevant to future dangerousness.

The incident in which Fell "dry-fired" a shotgun at Ms. Brashears's head is admissible.

### 9. Statements by Bethany Brashears

The government has indicated that it will not seek to introduce in its penalty phase case-in-chief any statements about Fell's interest in Satan, Fell's tattoos, his musical preferences, or his anti-social beliefs. (*See* Doc. 1633.)

Regarding Ms. Brashears's testimony of being kidnapped and Fell's conduct "dry-firing" a shotgun at her head, the court's ruling is the same as for (7) and (8) above.

The defense asserts that Ms. Roberts and Ms. Brashears are both unreliable witnesses due to histories of alcoholism and mental health as well as inconsistencies in their testimony. (Doc. 1510 at 53.) Both will apparently testify in person about their interactions with Fell and Lee. The defense does not claim that either will derive any personal advantage from testifying.

10

(Ms. Brashears has already appeared in court and was visibly reluctant to take part.) These are not the type of witnesses for whom reliability demands a prior hearing.

### 10. Tattoos

The government has indicated that it will not seek to introduce in its penalty phase case-in-chief any statements about Fell's interest in Satan, Fell's tattoos, his musical preferences, or his anti-social beliefs. (*See* Doc. 1633.)

### 11. The SLAYER T-shirt

Same ruling as (10), above.

### 12. Pentagram Drawn on TV Screen

Same ruling as (10).

### 13. Fell's Satanic Bible

Same ruling as (10).

### 14. Music Tapes

Same ruling as (10).

### 15. Adolescent Mistreatment of Animals and Threats to Fell's Mother

The court understands that the government will not seek to introduce Matthew Cunningham's statements about Fell's tattoos or his religious and other beliefs or interests. (*See* Doc. 1633.)

Mistreatment of animals is deeply upsetting to most of us as are threats against a boy's mother. For that reason, these statements are far more prejudicial than probative. The court has indicated that evidence of specific acts of violence are reasonable indicators of current risk. Threats and boasts made at age 15 and earlier are not a reasonable indication of current risk.

11

### 16. Work at the Carnival

Fell's refusal to take direction is irrelevant. The incident involving the cat is excluded because it is both second-hand hearsay—Jesse Williams is apparently repeating what another employee told the fair manager—and highly unreliable and because harm to an animal is more prejudicial than probative.

The chain-saw incident is admissible as an example of specific violent conduct which fits within a narrative of similar events which have occurred as recently as the Roane incident in 2006.

### 17. Threats to Teachers

The court will need more detail about Fell's age and the circumstances of these threats. The prosecution shall provide a detailed summary of the information it intends to offer at the penalty phase on this issue within 14 days of the issuance of this order.

### 18. "Serial Violence as a Juvenile"

For purposes of establishing that Fell is a danger at age 38, his "serial violence as a juvenile" is too vague a category to permit ruling. At some point, childhood conduct is not a predictor of adult violence in prison. The court is inclined to draw the line at age 16, but before doing so, the court will need a more specific proffer of exactly what is offered. Incidents of vandalism at any age are not predictors of future dangerousness. The prosecution shall provide a detailed summary of the information it ends to offer regarding "serial violence as a juvenile" within 14 days of the issuance of this order.

### **Conclusion**

The court's rulings on Defendant's Objections to the Government's Sealed Proffer of Future Dangerousness Evidence (Doc. 1510) are set forth above.

Defendant's Motion to Exclude Evidence of Mr. Fell's Beliefs or Alleged Beliefs (Doc. 1503) and Defendant's Motion to Preclude Questions About or Evidence of Mr. Fell's Religious Beliefs or Interest in Religious Beliefs or Practices (Doc. 1504) are DENIED as moot. The court is reserving ruling on introduction of evidence relating to Fell's racist beliefs or his association with the Aryan Brotherhood until after the hearing set for August 29–30.

Dated at Rutland, in the District of Vermont, this ___ day of August, 2018.

_____
Geoffrey W. Crawford, Chief Judge
United States District Court